<sup>≈</sup>.JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PLEASE SEE ATTACHED (EXHIBIT A) | The Honorable Eric H. Holder, Jr. |
| **(b)** County of Residence of First Listed Plaintiff  Barone-Bucks County <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) <br> PLEASE SEE ATTACHED (EXHIBIT B) | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury - Med. Malpractice <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R.R. & Truck <br> ☐ 650 Airline Regs. <br> ☐ 660 Occupational Safety/Health <br> ☐ 690 Other <br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt.Reporting & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 875 Customer Challenge 12 USC 3410 <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information Act <br> ☐ 900 Appeal of Fee Determination Under Equal Access to Justice <br> ☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **IMMIGRATION** | | |
| ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 444 Welfare <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence <br> **Habeas Corpus:** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition | ☐ 462 Naturalization Application <br> ☐ 463 Habeas Corpus - Alien Detainee <br> ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Plaintiffs challenge the constitutionality of 18 U.S.C. §§2257, 2257A and their implementing regulations.

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  10-7-09                    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PLAINTIFFS

1.  Free Speech Coalition, Inc.

2.  American Society of Media Photographers, Inc.

3.  Michael Barone

4.  David Conners a.k.a Dave Cummings

5.  Thomas Hymes

6.  Townsend Enterprises, Inc. d.b.a. Sinclair Institute

7.  C 1 R Distribution, L.L.C. d.b.a. Channel 1 Releasing

8.  Barbara Alper

9.  Carol Queen

10. Barbara Nitke

11. David Steinberg

12. Marie L. Levine a.k.a. Nina Hartley

13. Dave Levingston

14. Betty Dodson

15. Carlin Ross

EXHIBIT A

I.(c)    **Attorneys**

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200


J. MICHAEL MURRAY (Ohio 0019626)†
LORRAINE R. BAUMGARDNER (Ohio 0019642)†
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245

† subject to admission pro hac vice

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC.,; AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS, INC.; MICHAEL BARONE; DAVID CONNERS a.k.a DAVE CUMMINGS; THOMAS HYMES; TOWNSEND ENTERPRISES, INC. d.b.a. SINCLAIR INSTITUTE; C 1 R DISTRIBUTION, L.L.C. d.b.a. CHANNEL 1 RELEASING; BARBARA ALPER; CAROL QUEEN; BARBARA NITKE; DAVID STEINBERG; MARIE L. LEVINE a.k.a. NINA HARTLEY; DAVE LEVINGSTON; BETTY DODSON; and CARLIN ROSS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE |
| Plaintiffs, | ) ) ) ) ) | **COMPLAINT FOR A DECLARATORY JUDGMENT AND FOR A PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION** |
| -vs- | ) ) | |
| THE HONORABLE ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States | ) ) ) ) | |
| Defendant. | ) ) ) | |

## PRELIMINARY STATEMENT

1.      Plaintiffs challenge the constitutionality of 18 U.S.C. § 2257 and 18 U.S.C. § 2257A,

two federal criminal statutes that impose record keeping and labeling requirements on

constitutionally protected visual expression depicting actual or simulated sexually explicit conduct,

and the regulations implementing them. 28 C.F.R. § 75, *et seq.* The statutes make it a crime: (1) to

produce any visual depiction of sexually explicit expression without first obtaining a government-

issued photo identification card for each person depicted in the expression; (2) to fail to maintain

records that include a copy of the photo identification card, a copy of the depiction, and other

personal information for each person depicted in that expression; (3) to fail to imprint all sexually explicit expression with a label identifying the location where the records can be found; (4) to disseminate any sexually explicit expression that does not bear the requisite label, notwithstanding the fact that the expression is constitutionally protected, or (5) to refuse to permit inspection by the government of the requisite records. The statutes apply to all visual depictions of actual or simulated sexually explicit conduct–without regard to the clear and obvious maturity of the adults depicted, without regard to the artistic or educational purposes of such depictions, and without regard to the private and intimate uses for which the depictions are intended and whether produced for commercial or non-commercial purposes. The statutes impose substantial restrictions and burdens on a vast quantity of protected expression, and consequently, burden, chill and, in some cases, as a practical matter, suppress its production and dissemination. Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A are unconstitutional under the First, Fourth, and Fifth Amendments to the United States Constitution, both on their face and as applied to Plaintiffs.

2.      Plaintiffs represent a broad array of producers and distributors of expression that has as its theme, the "great and mysterious motive force in human life...[which] has indisputably been a subject of absorbing interest to mankind through the ages," that being, sex. *Roth v. U.S.*, 354 U.S. 476, 487 (1957). Their production of and access to constitutionally protected expression has been and is being affected by 18 U.S.C. §§ 2257, 2257A. Plaintiffs include artists, sex educators, photographers, performers, commercial producers of adult expression, and persons engaged in the dissemination of sexually explicit materials. The statutes violate the First Amendment rights of Plaintiffs, their members and audiences, and millions of similarly situated adults who create and share visual depictions of simulated or actual sexually explicit conduct or candid displays of genitalia in the course of private communication with one another.

2

3.      The statutes apply to all visual depictions of actual human beings–including any photograph, picture, videotape, film, digitally produced image, or computer-manipulated image and include depictions published in books, magazines, periodicals, films, and on the Internet as part of a computer service, web site or otherwise.  Therefore, the statutes sweep within their regulation a vast amount of protected expression.

## JURISDICTION AND VENUE

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331. Jurisdiction is also conferred upon this Court by 28 U.S.C. § 2201, this being an action to declare the rights of the parties before it.

5.      This Court also has jurisdiction under 28 U.S.C. § 1346(a)(2), where, as here, a defendant is sued in his official capacity as an officer of the Government of the United States, and the complainants do not seek monetary damages in excess of $10,000.00.

6.      The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

7.      Plaintiffs bring this action against Defendant Eric H. Holder, Jr. who, as the Attorney General of the United States, is the chief law enforcement officer of the federal government and responsible for the nationwide enforcement of the federal laws, including the statutes and regulations challenged in the instant complaint.

8.      Plaintiff Michael Barone resides in Perkasie, Bucks County, Pennsylvania.  No real property is involved in this action. Venue is, therefore, proper in this district pursuant to 28 U.S.C. § 1391 (e).

## LEGISLATIVE HISTORY

9.      Congress originally passed the Child Protection and Obscenity Enforcement Act on October 21, 1988, which created 18 U.S.C. § 2257, the statute at issue here.  Pub. L. 100-690.  The

United States District Court for the District of Columbia found the original statute to be unconstitutional in several respects. *American Library Association v. Thornburgh,* 713 F. Supp. 469 (D. D.C. 1989). In response, on or about October 27, 1990, Congress enacted, and on or about November 29, 1990, the President signed into law, Pub. L. 101-647, the Crime Control Act of 1990, amending 18 U.S.C. § 2257. Title III of that Act is entitled the "Child Protection Restoration and Penalties Enhancement Act of 1990." In at least one critical respect, the 1990 amendments concealed rather than resolved a fatal constitutional defect. In another respect, they resolved a constitutional difficulty which Congress has since reintroduced by subsequent amendment. Beginning in 1995, the Defendant's predecessors were free to enforce 18 U.S.C. § 2257, but they conducted no inspections under the record keeping scheme, and prosecuted violations only in very rare cases and always in connection with actual child pornography charges. In 2003, 18 U.S.C. § 2257 was amended by the "Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003" which was signed into law by the President on April 30, 2003. Pub. L. 108-21. On June 23, 2005, new regulations implementing the amended statute were promulgated. 28 C.F.R. Part 75. On or about July 20, 2006, Congress enacted, and on or about July 27, 2006, the President signed into law, Pub. L. 109-248, "Adam Walsh Child Protection and Safety Act of 2006," which further amended 18 U.S.C. § 2257 and enacted a companion statute, 18 U.S.C. § 2257A, which was to take effect 90 days after regulations implementing it were published in the Federal Register. Regulations implementing 18 U.S.C. § 2257, as amended, and 18 U.S.C. § 2257A were published in the Federal Register on December 18, 2008 and took effect 30 days thereafter. Compliance with 18 U.S.C. § 2257A and its implementing regulations was required beginning on March 18, 2009.

4

## STATUTORY AND REGULATORY PROVISIONS

10.     Title 18 U.S.C. § 2257, *inter alia*, requires anyone who produces a visual depiction of actual sexually explicit conduct or lascivious exhibition of genitals to gather and maintain a record for each person depicted.  For each such depiction, a record must be created and maintained that includes a copy of government-issued photo identification for the persons depicted, a copy of the depiction,  and must  include any and all names previously used by the person depicted and the date of the depiction's original production.  18 U.S.C. § 2257,  28 C.F.R. § 75.2(a). The record keeping requirements apply universally – without regard to the age of the persons depicted or the forum or venue in which the visual depiction is to be published or displayed.  They apply to "any book, magazine, periodical, film, videotape, digital image, digitally- or computer-manipulated image of an actual human being  or other matter" and include depictions on the Internet. 18 U.S.C. § 2257(a).

11.     Generally, 18 U.S.C. § 2257A requires that the same type of records be created and kept for visual depictions of *simulated* –as opposed to actual–sexually explicit conduct.  Title 18 U.S.C. § 2257A, unlike 18 U.S.C. § 2257, provides an exemption for compliance with its record keeping and labeling requirements for commercially produced visual depictions of simulated sexually explicit conduct or for compliance with 18 U.S.C. § 2257's requirements pertaining to commercially produced visual depictions of lascivious exhibition of the genitals, if certain prescribed conditions are met. 18 U.S.C. § 2257A(h).

12.     The regulations implementing 18 U.S.C. §§ 2257, 2257A differentiate *primary* producers of visual depictions of simulated or actual sexually explicit conduct from *secondary* producers.  A primary producer actually films, videotapes or photographs a visual depiction of simulated or actual sexually explicit conduct. 28 C.F.R. § 75.1(c)(1). A secondary producer

5

assembles, manufactures, publishes, duplicates, reproduces or reissues a book, magazine, periodical, film, videotape or other matter intended for commercial distribution that contains a visual depiction of simulated or actual sexually explicit conduct. 28 C.F.R. § 75.1(c)(2). The requirements of 18 U.S.C. §§ 2257, 2257A apply to both types of producers.

13.    Title 18 U.S.C. §§ 2257, 2257A also require producers to label their media containing visual depictions of simulated or actual sexually explicit conduct or lascivious exhibition of the genitals with a statement describing the precise location where the producer maintains records regarding the identification of those persons appearing in visual depictions of simulated or actual sexually explicit conduct. 18 U.S.C. § 2257(e); 18 U.S.C. § 2257A(e).

14.    Records required to be created and kept under both statutes may be used in prosecuting violations of federal obscenity laws.

15.    The regulations implementing the statutes require that all records must be categorized and retrievable according to all names of each performer, including any alias, maiden name, nickname, stage name or professional name of the performer and according to the title, number or other similar identifier of each book, magazine, periodical, film, videotape, or other matter. 28 C.F.R. § 75.2. The primary producer must create a record of the date of original production of the depiction. 28 C.F.R. § 75.2(a)(4). The records must be organized alphabetically, indexed, and cross-referenced by names, aliases and titles and must contain a copy of the government-issued photo identification for each person depicted together with a copy of the depiction itself. 28 C.F.R.§§ 75.2; 75.3.

16.    Investigators authorized by the Attorney General can demand entrance to the premises where the records are maintained without notice or warrant to inspect the records mandated by 18 U.S.C. §§ 2257, 2257A.  28 C.F.R. §75.5. They may copy the records and seize any material

which they believe is evidence of a commission of a felony without a warrant, 28 C.F.R. § 75.5(g), and may exercise any otherwise lawful investigative prerogatives during the inspection–again, without a warrant. 28 C.F.R. § 75.5(f). Neither the statues nor the associated regulations provide those subject to inspection with any method for determining who is legitimately authorized to inspect the records or who may be attempting to do so without authorization for illegitimate purposes such as identifying the whereabouts of those who perform in sexually explicit expression. This lack of guidance is particularly egregious in that the statutes, as amended, expressly make it a serious crime to refuse to permit a legitimate inspection. 18 U.S.C. § 2257(f)(5); 18 U.S.C. § 2257A(f)(5).

17.    Failure to comply with any of 18 U.S.C. § 2257's mandates constitutes a felony and is punishable by a fine and/or term of imprisonment of up to five years, while a second offense carries a prison term of up to ten years. 18 U.S.C. § 2257(i). Violation of 18 U.S.C. § 2257A's provisions is punishable by a fine and/or  term of imprisonment up to one year. 18 U.S.C. § 2257A(i).

## PLAINTIFFS AND THE FACTS GIVING RISE TO THEIR CLAIMS

18.    Plaintiff Free Speech Coalition, Inc. is a trade association founded in 1991 and organized under the laws of and incorporated in the State of California with its principal place of business in Canoga Park, California. Plaintiff represents more than 1,000 businesses and individuals throughout the United States engaged in the production, distribution, sale and presentation of non-obscene, adult-oriented materials that include visual depictions of adults engaged in actual and/or simulated sexually explicit conduct and/or candidly displaying their genitals. The mission of the Free Speech Coalition is to assist its members in the exercise of their First Amendment rights and in the defense of those rights against censorship. *See Free Speech Coalition v. Ashcroft*, 535 U.S.

7

234 (2002). Neither it nor its members tolerate the production or distribution of child pornography, and they have actively assisted in its eradication.

19.    The Free Speech Coalition sues on behalf of its members, who as producers of sexually explicit material are subject to the onerous administrative and financial burdens imposed by 18 U.S.C. §§ 2257, 2257A. The Coalition and its members, as commercial producers of sexually explicit expression, are not involved in the production of child pornography and actively employ measures to assure that minors simply do not appear in their expression. The Coalition's members, nonetheless, shoulder costly and laborious record keeping and labeling burdens in the name of combating child pornography. The statutes, in fact, impose strict criminal liability for failure to create and maintain the prescribed records for each and every visual depiction of sexual imagery. Thus, a simple mistake can result in a five year prison term. The statutes also demand that retailers and distributors who disseminate sexually explicit expression verify that all such material contains the requisite label. The statutes impose substantial and unnecessary burdens on Plaintiff's members' expression.

20.    Plaintiff American Society of Media Photographers, Inc., ("ASMP") is organized under the laws of and incorporated in the State of New York with its principal place of business in Philadelphia, Pennsylvania. It is the leading trade association for photographers who photograph for publication. The ASMP, founded in 1944, is the oldest and largest organization of photographers in the world; it has approximately 7,000 members. Its membership includes all manner of professional photographers who create photographic images for publication including books, magazines, newspapers, web uses, corporate reports, publicity, and advertising. In the course of pursuing their profession, ASMP's members produce photographs that document the range of human experience and interests–including those involving sexual content. For example, photojournalists

8

document the atrocities of rape and sexual abuse in war-torn areas of the world for publication in American news media; fine art photographers create sexual and erotic art for publication in monographs or collections; still other ASMP members create visual depictions of actual or simulated sexually explicit conduct in connection with independent film productions and adult entertainment. There is no exception under either statute for newsworthy or political expression. In each instance, the record keeping and labeling provisions of 18 U.S.C. §§ 2257, 2257A are implicated.

21.    Plaintiff ASMP sues on behalf of its members, who as producers of visual depictions that contain simulated or actual sexually explicit conduct or contain depictions of the genitals or pubic area, are subject to the demands of the statutes and regulations that impose financial, administrative and other burdens on them in producing their expression. Many of ASMP's members are one or two-person operations. Not only do they produce photographic images, but they are responsible for the administrative and financial obligations attendant to running a business. The additional burdens meted out by 18 U.S.C. §§ 2257, 2257A and their implementing regulations are particularly difficult for them to fulfill. Photojournalists who are on the road for months at a time are simply unable to maintain and categorize the records as the statutes and regulations require. The regulatory provision requiring producers, like many members of ASMP, who do not maintain regular business hours, to identify when their records are available for inspection, which in no case can be less than 20 hours per week, throughout the entire year, requires them to be forever in proximity to their records or face criminal sanction. The statutes exact enormous demands on ASMP's members that restrict and chill their expression.

22.    Plaintiff Michael Barone is an artist and accomplished professional photographer who creates commercial and fine art works. He received his BFA in photography from the University of Delaware, where he studied under Byron Shirtleif and John Weiss. In the course of his twenty-

9

five year career, Barone has been the recipient of numerous awards for his photography and has participated in a number of solo exhibitions and juried shows including at the Philadelphia Center for the Photographic Image. In pursuing his art, Barone visually explores the human form in intimate and candid ways to reveal the variety of the human condition, from joy to despair, from sensual to erotic–seeking to prompt the viewer of his art to confront the complexity of human nature. He is also commissioned by individuals and couples to create erotic portraits as part of their intimate relationship. A body of Barone's work, therefore, contains candid visual depictions of the genitals and the pubic region as well as simulated sexually explicit conduct. He displays his work at public galleries and on the Internet; his commissioned erotic portraits are created for private use.

23.    In order to comply with the recordkeeping and labeling requirements imposed on his photography that depicts simulated sexually explicit conduct or genitalia, Barone must collect and maintain photo identification for his models in connection with the hundred of images he creates for each photo shoot in his home, from which he operates his studio, and must likewise keep records and properly label all such images on his websites. Compliance with the statute, therefore, imposes substantial burdens in the creation and presentation of his expression. Moreover, he believes that those couples who commission him to create an erotic image of themselves for their own private use will refuse to provide photo identification to be made available for government inspection as a condition of the creation of this expression, and thus, Barone will be prohibited from creating that expression as part of his work as a photographer. Concomitantly, the couples will be deprived of their right to create this private, protected expression. The inspection regimen also poses the risk of a warrantless intrusion into his home.

24.    Barone has numerous erotic images made over the course of twenty years which he would like to publish in a compilation with photographs created after March 18, 2009. He will be

prohibited from including many of his prior photographs in the compilation, however, because he will be unable to obtain the requisite photo identification for his prior work; in at least one instance, a couple who served as models for his erotic art, moved overseas a number of years ago. He is therefore barred from publishing this constitutionally protected artistic expression of adults by 18 U.S.C. § 2257A and its implementing regulations.

25.    Plaintiff David Conners a.k.a. Dave Cummings ("Cummings") has a B.S. in Economics and an M.A. in Public Administration and served for more than 25 years in the military. Plaintiff Cummings produces and performs in videotapes and digital video discs (DVDs) that contain visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals. He operates his small business as a sole-proprietorship known as Dave Cummings Productions from his private home. He also operates two computer web sites that contain visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals.

26.    Plaintiff Cummings has produced 42 sexually explicit videos. He has substantially curtailed his production of sexually explicit expression, however, because of the record keeping burdens imposed by the statutes and out of fear that one administrative misstep in complying with the requirements will subject him to criminal prosecution. Moreover, Cummings, is a sole proprietor who operates his business from his home and does not maintain regular business hours as defined by 28 C.F.R. § 75.5. Therefore, 28 C.F.R. § 75.5(c) requires him to provide notice to the government identifying those hours when his records are available for inspection, which in no case may be less than 20 hours per week. Cummings has notified the government that his records are available for inspection at his home between the hours of 1:00 p.m. and 5:00 p.m., Monday through Friday, throughout the year, and thus he must arrange his schedule so that he is always at home

11

during these hours as the regulations require.

27.    As a performer in sexually explicit expression, Cummings fears the theft of his identity and personal information contained in the requisite records. Plaintiff Cummings has little or no control in insisting on and receiving assurance that his personal information is kept secure.

28.    Plaintiff Thomas Hymes is a journalist who has worked as a writer and as an editor for major media outlets in the adult industry and has studied and reported on the industry for ten years. He has participated and organized seminars on legal issues facing the industry, including the effect of 18 U.S.C. § 2257. Hymes currently operates a web site, www.dailybabylon.com, that chronicles society, culture and politics, in a broad sense, and as they relate to the adult industry, in particular. The website contains news reports and features on politics and law, culture and society, arts and the media, technology, and money. It also hosts a blog. The website displays advertising, including advertising from producers of sexually explicit expression.

29.    In publishing the content of his website, www.dailybabylon.com, Plaintiff Thomas Hymes carefully reviews and evaluates all visual depictions to assure that they do not trigger record keeping and labeling requirements under 18 U.S.C. § 2257 and 18 U.S.C. § 2257A. As a website that reports on and provides information about the adult industry and other related issues, this self-censorship inhibits the visual depictions on the website both in connection with news stories and commentary as well as advertising, from which it derives its revenues. Hymes cannot afford the administrative costs required to be devoted to compliance with 18 U.S.C. § 2257 and 18 U.S.C. § 2257A and also fears criminal prosecution under the statutes should he make a record keeping or labeling error in connection with a visual depiction displayed on his website. He would like to include such depictions on his website and would also like to include a separate portion of the website devoted to expression depicting adults engaged in simulated or actual sexually explicit

12

conduct, but the administrative costs of compliance and threat of prosecution under the statutes prevent him from doing so.

30.    Plaintiff Townsend Enterprises, Inc. d.b.a. Sinclair Institute ("Sinclair Institute") was organized under the laws of and incorporated in the State of North Carolina with its principal place of business in Hillsborough, North Carolina.  Sinclair Institute was founded eighteen years ago for the purpose of educating adults about sexual health and sexual fulfillment.  In furtherance of that purpose, it produces and distributes materials containing visual depictions of adults of all ages and ethnicities engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals that address the concerns and needs of healthy individuals and couples who want to enhance their intimacy.  Sinclair Institute has developed a comprehensive library of sex education videos, made in consultation with physicians, psychologists, sex educators and therapists from all over the world.  Its materials have received awards from numerous organizations including The Society for the Scientific Study of Sexuality, National Council on Family Relations, and International Health & Medical Media (Time, Inc. Health).  It has sold more than 4 million copies of its award-winning "Better Sex" video series.

31.    As the catalogue of educational materials it offers has grown, Plaintiff Sinclair Institute has found the task of complying with the record keeping and labeling requirements to be burdensome.  When it began compliance, it assigned the task to its office manager–one of 16 employees, who manually organized and maintained records and devoted numerous hours to this responsibility in addition to her other duties.  With the growth of its library, however, Sinclair Institute was forced to explore and transition to storing the requisite records electronically.  The transition and compliance have been costly and continue to be so.  The statute has also shaped its artistic and marketing decisions in creating and distributing its educational and therapeutic

13

expression.

32.     Plaintiff C 1 R Distribution, L.L.C. d.b.a. Channel 1 Releasing ("Channel 1 Releasing") is organized under the laws of the State of California as a limited liability company with its principal place of business in West Hollywood, California.   Channel 1 Releasing produces and offers for sale DVDs containing visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals, and operates an Internet web site that allows subscribers to pay to view videos containing visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals and to view adults engaged in simulated or actual sexually explicit conduct live or candidly displaying their genitals, and operates a brick and mortar retail store.  It has more than 2,000 titles that are offered for sale through its website and at its retail store and has between 3,000 and 4,000 memberships allowing access to live chat areas and performances on its website.  The performers who appear in the DVDs produced by Channel 1 Releasing are mature actors who are well-known in the industry.

33.     Title 18 U.S.C. § 2257 requires Channel 1 Releasing to maintain thousands of records on its large library of adult titles, which is continually growing.  It maintains a full-time employee at an annual salary of $50,000.00 to assure compliance with the statute's record keeping and labeling requirements.  The records are kept on a separate server with a separate room devoted to compliance with the statute and regulations. It has become increasingly difficult to keep up with the record keeping and labeling demands as Channel 1 Releasing's business has grown.  At one point, Channel 1 Releasing changed the covers on many of the DVDs offered for sale to avoid potential prosecution under the statute. Moreover, as a distributor and retailer of sexually explicit expression which it has not produced, it bears the burden of verifying that the expression is imprinted with the requisite label.

34.     Plaintiff Barbara Alper is a recognized commercial photographer whose fine art photography hangs in Victoria & Albert Museum, London; The Samuel Wagstaff Collection at the Getty Museum; Bibliotheque Nationale de France; The Brooklyn Museum; Harry Ransom Humanities Research Center, University of Texas; International Center of Photography; Lehigh University, Pennsylvania; Maison Européenne de la Photographie; Museum of Fine Arts Houston, Texas; The New York Public Library; and The Polaroid International Collection. She is a member of Plaintiff American Society of Media Photographers, Inc. Alper has been a regular contributor to the *New York Times;* her work frequently appears in a range of other publications including *Barron's, Parade, Time, Newsweek,* the *Wall Street Journal* and the *Los Angeles Times.* Her camera has focused on news, portraits, food, fashion, gardens, orchids, underwater shoots, and she has documented various lifestyles including sexual subcultures. This latter subject includes photographs depicting adults engaged in simulated and actual sexual conduct and candidly displaying their genitals which have been published in a compilation of fine art photography titled, *Photo Sex*, have been purchased by the New York Public Library for its collections and have been exhibited at the Australian Centre for Photography in Sydney, Australia.

35.     Plaintiff Barbara Alper plans to publish a book of her work that depicts actual and simulated sexually explicit conduct and candid display of the genitals. Many of the photographs she wishes to include in her book were created prior to July 3, 1995 and thus subject to the exemption set forth in 28 C.F.R. § 75.7. However, she wishes to create new erotic photographs and include her current material with her earlier work, and therefore, by operation of the statute and regulations, Alper will be required to obtain and maintain records from the persons depicted not only in the current material but also in her early photos in order to publish this body of work. Alper will be simply unable to locate and obtain photo identification from the models depicted in her early work

15

in the 1980s, however.  But even if she were able to locate the persons depicted, those depicted might well be expected to refuse to provide her with the requisite identification documents in the interest of protecting their privacy.  In either instance, Alper therefore will be absolutely precluded from publishing any such compilation because she will be unable to comply with the record keeping requirements for these depictions.  She will also be encumbered by the record keeping and labeling requirements in creating new photographs and  is concerned that the record keeping and labeling provisions will discourage a publisher from publishing  her expression.

36.    Plaintiff Carol Queen is a sociologist, sexologist and feminist sex educator who has authored a substantial number of sexuality-related articles, essays and books.  Her work contains commentary, academic history, how-to guides, analyses, and erotica, and has been translated into German, Japanese, Chinese and Dutch.  Queen has been an editor for many compilations and anthologies on human sexuality and has produced films, events and speaking appearances worldwide.  Her publications, including *Real Live Nude Girl: Chronicles of Sex-Positive Culture, Pomosexuals*, and *Exhibitionism for the Shy,* are taught in university and clinical settings, and she has written for juried journals and compendiums such as The Journal of Bisexuality and The International Encyclopedia of Human Sexuality.  She also has published her memoirs and a series of personal essays.  Queen has performed as a sex instructor in films, including the "Bend Over Boyfriend" instructional series about female-to-male anal sex and has helped design professional level sexual education programs for professionals and lay persons at the Center for Sex and Culture and Good Vibrations, a San Francisco-based sex toy retailer.  Much of Queen's work contains visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals.

37.    As part of her educational mission, Plaintiff Carol Queen produces web-streamed

16

(live images on the internet) "masturbata-thons," the purpose of which is to decrease the stigma surrounding sexuality and masturbation. Plaintiff Queen has been careful to ensure that she complies with the requirements of 18 U.S.C. § 2257, as she collects and stores the requisite identifications and records from all who participate in the masturbata-thons, which imposes a burden on her work and expression. However, because the images are "live-streamed," i.e., only displayed temporarily as live images and not stored permanently for future viewing on a website, she is not able to label them as a more permanent image could be labeled. In these and other educational events that she hosts to help adults with their sexuality, Plaintiff Queen fears prosecution despite her compliance with § 2257 to the best of her ability.

38.    Moreover, in the adult-only events that Plaintiff Queen has hosted, she has observed members of the media either being hampered by 18 U.S.C. § 2257 in their coverage of the events or being unaware of the statute's requirements, with those photographers who do not in the regular course of their work cover sexually explicit material tending to lack information about 18 U.S.C. § 2257. Plaintiff Queen has also witnessed the chilling effect of 18 U.S.C. § 2257 on potential participants in her photography classes, with some individuals being afraid to participate once they are informed that their participation cannot be anonymous due to 18 U.S.C. § 2257. Plaintiff Queen has also been chilled in her plans for future publication, as there are a number of images that she would publish as part of her work were it not for the requirements of 18 U.S.C. § 2257.

39.    Plaintiff Barbara Nitke, who is on the faculty of the School of Visual Arts in New York City, is an internationally known photographer who specializes in the subject of human sexual relations. Hailed by *The Village Voice* for her quest "to find humanity in marginal sex," Nitke has gained worldwide attention for her affecting and powerful photographs chronicling relationships between consenting adults engaged in sadomasochistic activities. She also worked for many years

17

as a behind-the-scene photographer on the shoots of hundreds of adult films; she has compiled thousands of sexually explicit photographs in that role. Her work has been exhibited and collected for more twenty years and has been the subject of one-woman exhibitions in New York, New Orleans, Baltimore, Provincetown, and Philadelphia. It has been included in a number of books and other publications. She is the author of the monograph, *Kiss of Fire: A Romantic View of Sadomasochism*. Much of Ms. Nitke's photography depicts adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals.

40.    Plaintiff Nitke has created and continues to create serious, artistic photographs depicting mature adults engaged in actual and simulated sexually explicit conduct and candidly exhibiting their genitals, which she publishes on her web site. In order to comply with 18 U.S.C. § 2257, she makes triplicate copies of all required forms and identification, which she keeps in her home. Each time she alters the order of the images or content on her website, she must re-organize the identification files. Compliance with the statute, therefore, imposes substantial burdens in the creation and presentation of her expression. The inspection regimen poses the risk of a warrantless intrusion into her home. Moreover, the statutes put Nitke in the position of potentially subjecting her art models to invasions of their privacy and the resulting disruption of their lives. Because her photography involves sadomasochism, which has a large amount of stigma attached to it, Nitke fears that every time she photographs a model and then collects his or her identification as statutorily required, she potentially puts the model at risk of being exposed and stigmatized for being involved in such work.

41.    Nitke is planning on publishing a compilation of her photographs taken on the sets of adult films from 1982 to the present which depict actual sexually explicit conduct. While many of the photographs she wishes to include in her book were created prior to July 3, 1995 and thus

subject to the exemption set forth in 28 C.F.R. § 75.7, a number of the photographs she wishes to include in her book were produced after that date, and therefore, by operation of the statute and regulations, Nitke will be required to obtain and maintain records from the persons depicted in her pre-1995 photos as well as post-1995 photos in order to publish the body of her work spanning 25 years. She simply is unable to locate and obtain photo identification from the models depicted in her pre-1995 work–some of whom are deceased. Nitke therefore will be absolutely precluded from publishing any such compilation because she will be unable to comply with the record keeping requirements for these depictions. She is also concerned that the record keeping and labeling provisions will discourage a publisher from publishing her expression.

42.    Moreover, while much of Nitke's past photography has involved images of sadomasochistic activities, she wants to expand her work to include pictures of fashion associated with sadomasochism, such as pictures of people in corsets or rope, without any sexual activity being depicted. Because of the sweeping and vague language of 18 U.S.C. § 2257 and 18 U.S.C. § 2257A, Nitke is uncertain about which types of images constitute sadomasochism that trigger the panoply of the statutes' record keeping and labeling requirements.

43.    Plaintiff David Steinberg is an acclaimed photographer who received a Bachelor of Arts degree in mathematics from Oberlin College and did graduate work in political science at Princeton University. Mr. Steinberg began writing about sexual issues in 1985, and his writings on sex and gender have been published in a wide variety of print and online journals, including *Salon*, *Playboy*, *Boston*, *Phoenix*, *Los Angeles Weekly*, *SF Weekly*, *San Jose Metro*, *Arts and Opinion*, *Sexuality and Culture*, *The Sun*, *Libido*, *Cupido*, *The Gay and Lesbian Review*, *Transgender Tapestry*, *Clean Sheets*, *Scarlet Letters*, and *The Realist*. In 1999, Steinberg began taking fine art photographs of couples in long-term, loving relationships engaged in actual and simulated sexually

explicit conduct and candidly displaying their genitals. He is committed to photographing as broad a range of adults as possible, to challenge the common notion that sex and sexual desirability are reserved for the young, thin, glamorous people seen in advertising, in film, and on television. He has photographed people ranging in age from 19 to 73, heavy people as well as thin, disabled as well as abled, of all genders, ethnicities, sexual orientations, and sexual inclinations. Additionally, Steinberg has edited two books of erotic photography, *Erotic by Nature* and *Photo Sex*, and edited and published a third book, *Divas of San Francisco*. He is the American Coordinating Editor of *Cupido*, a Norwegian journal of erotic art and prose.

44.    David Steinberg obtains the information and maintains the records which 18 U.S.C. § 2257 and its implementing regulations require, a fact which imposes a considerable burden on him as an individual artist and photographer who has photographed hundreds of individuals engaged in actual sexual conduct or in a state of nudity in which their genitals were plainly visible. He has also been chilled in his efforts to distribute *Cupido*, a Norwegian journal of erotic art and prose, for which he acts as the North American editor and representative, in the United States because that publication contains the erotic photographs of European photographers who do not comply with the statute and therefore does not bear the requisite label.

45.    Plaintiff Marie L. Levine a.k.a. Nina Hartley ("Hartley") has appeared in more than 650 adult films and starred in the critically acclaimed Hollywood feature, *Boogie Nights*. In addition to her career as an actress, Ms. Hartley is a registered nurse–graduating *magna cum laude* from San Francisco State University's school of nursing, has created a 40-volume educational series on human sexuality, has published *Nina Hartley's Guide to Sex*, which not only provides instruction on sexual practices, but delves into sexual ethics and psychology, and speaks to film, media, women's studies classes about women in pornography and other related issues throughout the country. Ms. Hartley

operates a website, www.ninahartley.com, that features her films and offers live shows to persons who purchase a membership to the site.

46.     Plaintiff Hartley maintains records for performers depicted on the live-show portion of her website at her home, and she has assumed the various burdens imposed on her as custodian of records. The requisite label on her website lists her home address and, as a popular performer, she feels vulnerable in making such information public. Similarly, Ms. Hartley fears that the personal information on identification documents that she must submit to the producers of the films in which she appears, and over whom she has no control, will be made available to the public and will threaten her privacy and safety.

47.     Plaintiff Dave Levingston received his degree in photojournalism from Ohio University and worked as a photojournalist for several newspapers and the federal government. He worked as a civilian employee of the Newark, Ohio Air Force Base as its chief public affairs officer and later, at the Air Force Materiel Command at Wright Patterson Air Force Base in Dayton, Ohio as deputy chief for media relations. Throughout his career, Levingston has maintained a studio and has pursued the art of photography. Since his retirement from government service in November 2006, he has devoted himself to the creation of his art. His particular interest is in the figure in nature. A portion of his art depicts adults in erotic and sexual settings. His work is displayed at the Kinsey Institute and is featured on a number of websites. He has published a book, *The Figure in Nature*, and the publication of another book containing his art is pending.

48.     Plaintiff Dave Levingston is simply unable to comply with the record keeping requirements as an artist who creates photographic expression, not for commercial purposes, but for its own sake. For each shoot, he takes between 2,000 and 3,000 photos. The cost of maintaining copies of each image and an index and cross-reference as required by the regulations is prohibitive.

Nor can Plaintiff Levingston, who travels all over the country for his photography, be available at least 20 hours per week for government inspection of his records at his studio. Thus, in the face of the record keeping requirements, Levingston has stopped creating photographs that might trigger the record keeping and labeling requirements. And thus, each time that he picks up his camera, Levingston is forced to consider whether the image will be subject to the legislation. Levingston has also deleted an award-winning photo from a website for fear that its publication will subject him to criminal prosecution for the display of his art.

49.    Plaintiff Betty Dodson is an octogenarian sexologist, sex educator, author, and artist, who holds a Ph.D. from the Institute for the Advanced Study of Human Sexuality for her research work on female sexuality. In addition to academic research, Dodson's work has included sexually explicit artwork, sex coaching and advocacy to help people with sexuality issues for more than four decades. She has also hosted sexuality workshops, hosted a public access cable television program in New York City, written several books on sexuality, and produced six DVDs on female sexuality, including four sexual instructional videos. She has also appeared in numerous documentaries about sexuality. Much of Dodson's work includes visual depictions of adults engaged in actual and simulated sexually explicit conduct and candidly displaying their genitals.

50.    Plaintiff Betty Dodson together with Plaintiff Carlin Ross host a website that addresses issues of sexuality and genitalia. The website includes a "genital art gallery" created by Dodson, the purpose of which was to help adult men and women work through shame related to the look of their genitalia, by providing a forum for individuals to post images of and essays about their genitalia and to do so anonymously. It was also an important means for Dodson to collect data for her research studying the variations in male and female genitalia. The Genital Art Gallery allowed adults to submit photos of their genitalia, anonymously. When, in order to comply with 18 U.S.C.

22

§ 2257's requirements, Plaintiffs Dodson and Ross began requiring all the women and men who submitted photographs to the gallery to send in copies of photo identification, people stopped submitting photographs. Plaintiffs were forced to eliminate roughly 2,000 images of genitalia submitted by adults to the gallery for which Plaintiffs could not secure the necessary photo identification to allow the publication of this expression. The statute therefore wholly suppressed this valuable and socially significant body of expression.

51.    As set forth in the paragraphs above,  18 U.S.C. §§ 2257, 2257A unconstitutionally restrict and burden a vast amount of constitutionally protected expression that Plaintiffs produce, wish to produce, disseminate and wish to disseminate.  Plaintiffs cannot produce any visual depiction of adults engaged in simulated or actual sexually explicit conduct or candidly displaying genitalia for which they cannot secure the requisite government-issued photo identification. They likewise cannot disseminate or display any expression containing visual depictions of adults engaged in simulated or actual sexually explicit conduct that does not bear a label identifying the records' location.

52.    The statutes prohibit Plaintiffs who appear in visual depictions of simulated or actual sexually explicit conduct or  exhibiting their genitals as well as performers used by the producer Plaintiffs from publishing or displaying their expression anonymously.

53.    In all cases where Plaintiffs are involved with producing or disseminating expression involving the candid display of human genitals, they legitimately fear that the Defendant will treat their expression as involving the lascivious display of the genitals or pubic region within the meaning of 18 U.S.C. §§ 2257, 2257A and 28 C.F.R. Part 75.

54.    The record keeping requirements impose administrative burdens on Plaintiffs who produce  expression depicting adults engaged in simulated or actual sexually explicit conduct or

23

candidly displaying their genitals in keeping and categorizing records as conditions of creating and publishing their expression. Both statutes require all expression depicting adults engaged in simulated or actual sexually explicit conduct or candidly displaying their genitals to be imprinted with a prominent label identifying the place where the records are located, which in some instances, is the producer's home.

55.    There is presently no realistic market for third party record keeping services because the Defendant's predecessors long delayed in providing for them and because the Defendant and his predecessors insist on articulating a strict liability standard for producers concerning any failing, however minor or unforeseeable, on the part of a third party record keeper whom they might employ. So long as it stands, such a strict liability standard will substantially inhibit the development of third party record keeping services.

56.    Plaintiffs are subject to repeated warrantless searches of their premises by government investigators who are empowered to appear without advance notice and demand entrance to the premises—whether office, studio, or private home—to inspect and copy the records that the statutes require to be maintained and are subject to seizure of anything on the premises that the government investigators believe is related to a commission of a felony, without a warrant.

57.    The records required by both statutes can be used as evidence against Plaintiffs in any prosecution for violations of the federal obscenity laws.

58.    The statutes and regulations, therefore, are unconstitutional under the First, Fourth and Fifth Amendments on their face and as applied to the Plaintiffs.

## COUNT ONE

59.    The allegations contained in paragraphs 1 through 58 are incorporated as if fully rewritten herein.

24

60.     Title 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*, are unconstitutional on their face and as applied to the Plaintiffs under the First Amendment to the United States Constitution for each of the following reasons:

A.     Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.* cannot survive intermediate scrutiny because they are not, either individually or collectively, narrowly tailored to serve an important governmental interest, because they burden more speech than necessary to serve any such interest, and because they leave no alternate avenues that are not substantially and impermissibly burdened for the expression at issue here;

B.     Title 18 U.S.C. § 2257, 18 U.S.C. § 2257A, and their companion regulations, 28 C.F.R. Part 75, are unconstitutionally overinclusive because, in an effort to combat child pornography, they seriously and deliberately burden a vast amount of expression which is not that and which is thus constitutionally protected.  In addition, the statutes and regulations, expressly or implicitly, shift the burden of proving constitutional protection *vel non* to the speaker, instead of leaving it on the party contesting such protection, which is where the First Amendment places it.

C.     Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*, are content-based regulations of speech that cannot survive strict scrutiny because they are not the least restrictive means of accomplishing a compelling governmental purpose and do not advance a compelling governmental purpose;

D.     Title 18 U.S.C. § 2257 is an unconstitutional content-based regulation of

25

expression in that it treats protected visual depictions of actual sexually explicit conduct more harshly than visual depictions of simulated sexually explicit conduct because it provides no exemption from burdensome compliance for certain producers as does 18 U.S.C. § 2257A(h) and because it punishes violations of its provisions substantially more harshly than 18 U.S.C. § 2257A punishes violations of its provisions.

E.   For the reason described in subparagraph D hereof, 18 U.S.C. § 2257 is subject to strict constitutional scrutiny.   In addition, because of their extraordinary degree of overinclusiveness, 18 U.S.C. § 2257, 18 U.S.C. § 2257A, and their companion regulations, 28 C.F.R. Part 75, are subject to strict constitutional scrutiny.  For the reasons recited above, *a fortiori*, they cannot survive strict scrutiny.  In addition, 18 U.S.C. § 2257 cannot survive strict scrutiny because the provisions of 18 U.S.C. § 2257A(h) provide a substantially less restrictive burden upon depictions of simulated sexually explicit conduct.  Furthermore 18 U.S.C. § 2257, 18 U.S.C. § 2257A, and their companion regulations, 28 C.F.R. Part 75, individually and collectively, fail strict scrutiny because there are alternatives to each that are very substantially less restrictive of protected expression.

F.   Title 18 U.S.C.§§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.* are unconstitutionally overbroad;

G.   Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.,* stand as unconstitutional prior restraints upon the dissemination of protected expression; as such, they permit the suppression of expression

by imposing serious criminal penalties merely for failure to comply with prescribed procedures– notwithstanding the fact that expression itself is fully protected by the First Amendment;

H.    Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*–including but not limited to 18 U.S.C. §§ 2257(f)(1); 2257A(f)(1) and 18 U.S.C. § 2257(e); § 2257A(e)– unconstitutionally chill protected speech;

I.    Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.* violate the right to communicate anonymously;

J.    Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*, are unconstitutionally vague–including but not limited to their reference to expression containing actual or simulated sadistic or masochistic abuse, actual or simulated; actual or simulated lascivious exhibition of the genitals or pubic region; and simulated masturbation;

K.    Title 18 U.S.C. § 2257 (f)(1) and 18 U.S.C. § 2257A(f)(1) are unconstitutional under the First Amendment because they impose strict criminal liability for failure to create or maintain records in connection with the production of expression.

61.    Plaintiffs are therefore entitled to a declaration that the laws and regulations are unconstitutional under the First Amendment on their face and as applied.

## COUNT TWO

62.    The allegations contained in paragraphs 1 through 61 are incorporated as if fully rewritten.

63.     Title 18 U.S.C. § 2257A(h) exempts producers of visual depictions of simulated sexually explicit conduct and lascivious exhibition of the genitals that is intended for commercial distribution from compliance with record keeping and labeling requirements if they meet certain conditions.

64.     No exemption is afforded to producers of visual depictions of simulated sexually explicit conduct or lascivious exhibition of the genitals that are *not* intended for commercial distribution. Moreover, 18 U.S.C. § 2257 affords no such exemption to producers of visual depictions of actual sexually explicit conduct–whether intended for commercial or non-commercial distribution.

65.     Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*, are, therefore, unconstitutional under the Fifth Amendment to the United States Constitution on their face and as applied because they violate Plaintiffs' guarantee of equal protection to all citizens under the law.

66.     Plaintiffs are therefore entitled to a declaration that the laws and regulations are unconstitutional under the Fifth Amendment on their face and as applied.

## COUNT THREE

67.     The allegations contained in paragraphs 1 through 66 are incorporated as if fully rewritten herein.

68.     Separate and apart from the foregoing constitutional breaches described above that render the statutes unconstitutional in their entirety, certain applications of the regulations promulgated to implement 18 U.S.C. §§ 2257, 2257A, 28 C.F.R. § 75 *et seq.* are unconstitutionally overbroad and vague–in particular, 28 C.F.R. §§ 75.1(c)(1); 75.2(a)(4); 75.6 (a).

69.     Plaintiffs are therefore entitled to a declaration that the above-regulations are

28

overbroad, vague and/or otherwise unconstitutional, on their face and as applied.

### COUNT FOUR

70.     The allegations contained in paragraphs 1 through 69 are incorporated as if fully rewritten herein.

71.     Title 18 U.S.C. § 2257(f)(5) and 18 U.S.C. § 2257A(f)(5) impose criminal sanctions on anyone who refuses to permit government inspection of the required records.

72.     The implementing regulations authorize the government to conduct searches and seizures of persons' homes, studios and/or offices–*without* warrant or notice.  The government inspectors are authorized to copy any of the records and to seize any evidence of a felony–*without* limitation on the scope of the search or seizure.

73.     Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et seq.*, are unconstitutional under the First and Fourth Amendments to the United States Constitution, on their face and as applied, because they authorize unreasonable warrantless searches and seizures.

74.     Plaintiffs are therefore entitled to a declaration that the laws and regulations are unconstitutional under the First and Fourth Amendments.

### COUNT FIVE

75.     The allegations contained in paragraphs 1 through 74 are incorporated as if fully rewritten.

76.     Title 18 U.S.C. §§ 2257, 2257A compel the creation and maintenance of records to be made available for government inspection on penalty of criminal sanction.  The statutes specifically provide that information or evidence obtained from the records may be used in criminal prosecutions for violations of the federal obscenity laws.

77.     Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, *et*

29

*seq.*, are, therefore, unconstitutional under the Fifth Amendment to the United States Constitution on their face and as applied because they violate Plaintiffs' privilege against self-incrimination.

78.    Plaintiffs are therefore entitled to a declaration that the laws and regulations are unconstitutional under the Fifth Amendment on their face and as applied.

### COUNT SIX

79.    The allegations contained in paragraphs 1 through 78 are incorporated as if fully rewritten herein.

80.    Title 18 U.S.C. §§ 2257, 2257A and the regulations appearing at 28 C.F.R. § 75 *et seq.* deprive and threaten to deprive Plaintiffs of their rights guaranteed by the First Amendment to the United States Constitution for the reasons described in the preceding paragraphs, which have caused and threaten to cause in the future, irreparable harm to the Plaintiffs for which there is no adequate remedy at law.

81.    For the reasons set forth in ¶ 68, the regulations appearing at 28 C.F.R. § 75 *et seq.* deprive and threaten to deprive Plaintiffs of their rights guaranteed by the First Amendment to the United States Constitution for the reasons set forth in the preceding paragraphs, and have caused irreparable harm and threaten to cause in the future, irreparable harm to the Plaintiffs for which there is no adequate remedy at law.

82.    The statutes and regulations also deprive and threaten to deprive Plaintiffs of their rights guaranteed by the Fifth Amendment to the United States Constitution for the reasons described in the preceding paragraphs, which have caused and threaten to cause in the future, irreparable harm to the Plaintiffs for which there is no adequate remedy at law.

83.    They also deprive and threaten to deprive Plaintiffs of their right guaranteed by the Fourth Amendment to be free of unreasonable searches and seizures for the reasons described in the

preceding paragraphs, which have caused and threaten to cause in the future, irreparable harm to the Plaintiffs for which there is no adequate remedy at law.

84.    By reason of the statute's threatened enforcement and the irreparable harm Plaintiffs have suffered and will continue to suffer, Plaintiffs are entitled to a preliminary injunction, and after final hearing, a permanent injunction demanded hereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

(A)    A judgment declaring that 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their companion regulations, 28 C.F.R. § 75, *et seq.*, are unconstitutional on their face and as applied under the First Amendment to the United States Constitution;

(B)    A judgment declaring that 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their companion regulations, 28 C.F.R. § 75, *et seq.,* are unconstitutional on their face and as applied under the Fourth Amendment to the United States Constitution;

(C)    A judgment declaring that 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their companion regulations, 28 C.F.R. § 75, *et seq.,* are unconstitutional on their face and as applied under the equal protection clause of the Fifth Amendment to the United States Constitution;

(D)    A judgment declaring that 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their companion regulations, 28 C.F.R. § 75, *et seq.,* are unconstitutional on their face and as applied under the Fifth Amendment's privilege against self-incrimination to the United States Constitution;

(E)    A judgment declaring that certain applications of 28 C.F.R. § 75 *et seq.* are overbroad, vague and/or otherwise unconstitutional, on their face and as applied;

(F)    A preliminary and permanent injunction enjoining Defendant, his agents or employees from enforcing 18 U.S.C. § 2257 , 18 U.S.C. § 2257A and their companion regulations,

28 C.F.R. § 75 *et seq.*,  against Plaintiffs, and their members, officers, agents, employees or others who distribute their expression;

    (G)    Such other legal and equitable relief to which Plaintiffs may appear entitled; and

    (H)    The costs of this action including reasonable attorney's fees, pursuant to 28 U.S.C.

§ 2412.

Respectfully submitted,

Date: 10/7/09

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

J. MICHAEL MURRAY (Ohio 0019626)†
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (Ohio 0019642)†
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

Attorneys for Plaintiffs

† subject to admission *pro hac vice*