# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREE SPEECH COALITION, INC., et al.    ) CASE NO.
                                        )
            Plaintiffs,                 ) JUDGE
                                        )
        -vs-                            )
                                        )
THE HONORABLE ERIC H. HOLDER, JR.,      )
            Attorney General,           )
                                        )
            Defendant.                  )
                                        )
                                        )

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
    & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

J. MICHAEL MURRAY (0019626)†
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)†
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

†Subject to admission pro hac vice

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE AND OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    LEGISLATIVE HISTORY AND ORIGINAL VERSION OF 18 U.S.C. § 2257 . . . . . . . . . . . . . . . 2

II.   THE EVOLUTION OF AND CURRENT VERSION OF 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A AND THEIR IMPLEMENTING REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  JUDICIAL EVALUATION OF 18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   THE EFFECT OF THE LEGISLATION ON PLAINTIFFS' EXPRESSION . . . . . . . . . . . . . . . . . . 18

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.    THERE IS A REASONABLE PROBABILITY THAT PLAINTIFFS WILL SUCCEED ON THEIR CLAIMS THAT 18 U.S.C. § 2257, 18 U.S.C. § 2257A, AND THEIR IMPLEMENTING REGULATIONS ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED UNDER THE FIRST, FIFTH AND FOURTH AMENDMENTS . . . . 20

      A.   TITLE 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A ARE UNCONSTITUTIONAL REGULATIONS OF SPEECH ON THEIR FACE AND AS APPLIED UNDER INTERMEDIATE SCRUTINY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           1.   Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A Do Not Advance an Important Governmental Interest and Are Not Narrowly Tailored . . . . . . . . . . . . . . . . . . . . . 21

           2.   Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A Are Overinclusive and Burden More Speech Than Is Necessary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      B.   TITLE 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A ARE UNCONSTITUTIONALLY OVERBROAD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      C.   TITLE 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A ARE CONTENT-BASED REGULATIONS OF SPEECH AND ARE UNCONSTITUTIONAL UNDER STRICT SCRUTINY . . . . . . . . . . . . . 33

           1.   Both Statutes Single Out a Particular Category of Expression Based on Its Content and Impose Restrictions on Its Production and Dissemination . . . . . . . . . 33

i

# TABLE OF CONTENTS (cont'd)

2. Title 18 U.S.C. § 2257 Must Be Evaluated as a Content-Based Regulation of Speech as a Result of 18 U.S.C. § 2257A's Differentiation in Treatment of Commercially Produced Expression Containing Simulated Sexually Explicit Depictions or Lascivious Displays of the Genitals or Pubic Region. . . . . . . . . . . . 34

3. The Statutes Are Not Narrowly Tailored to Further a Compelling Government Interest, Nor Are They the Least Restrictive Alternative to Advance That Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

D. THE STATUTES UNCONSTITUTIONALLY SUPPRESS ANONYMOUS SPEECH. . . . . . . . . . 37

E. TITLE 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A IMPOSE A PRIOR RESTRAINT ON PROTECTED EXPRESSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

F. THE STATUTES UNCONSTITUTIONALLY IMPOSE STRICT LIABILITY FOR FAILING TO CREATE AND MAINTAIN THE REQUISITE RECORDS AND THEREBY RESTRICT FREE EXPRESSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

G. THE STATUTES VIOLATE THE GUARANTEE TO EQUAL PROTECTION OF LAWS OF THE FIFTH AMENDMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

H. THE STATUTES AND THEIR IMPLEMENTING REGULATIONS AUTHORIZE UNCONSTITUTIONAL WARRANTLESS SEARCHES AND SEIZURES OF HOMES AND BUSINESSES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

II. THE PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE EVENT AN INJUNCTION DOES NOT ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

III. THE DEFENDANT WILL SUFFER NO HARM IF INJUNCTIVE RELIEF IS GRANTED. . . . . . . . . . . 56

IV. THE PUBLIC INTEREST WILL BE SERVED BY THE ISSUANCE OF INJUNCTIVE RELIEF. . . . . . . 57

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

ii

# **TABLE OF AUTHORITIES**

**CASES**                                                                 Page

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996)............................20

*A Quantity of Copies of Books v. Kansas*,
    378 U.S. 205 (1964)..........................................................49, 55

*Abel v. United States*, 362 U.S. 217 (1960)...................................53

*ACLU v. Black Horse Pike Reg'l Bd. of Educ.*,
    84 F.3d 1471 (3d Cir.1996)...............................................20

*Allegheny Energy v. DOE, Inc.*, 171 F.3d 153 (3ʳᵈ Cir. 1999)...............20

*American Civil Liberties Union v. Mukasey*,
    322 F.3d 240 (3ʳᵈ Cir. 2003)............................................20

*American Civil Liberties Union v. Mukasey*,
    534 F.3d 181 (3ʳᵈ Cir. 2008)................................20, 31, 32, 36

*American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994)
    *cert denied* 515 U.S. 1158 (1995)..................................12, 15

*American Library Association v. Reno*, 47 F. 3d 1215 (D .C. Cir. 1995)...........13

*American Library Association v. Thornburgh*, 713 F. Supp. 2d 469 (D.D.C. 1989)........4, 5

*Annex Books, Inc. v. City of Indianapolis*, 333 F. Supp. 2d 773
    (S.D. Ind. 2004) *reversed on other grounds*, __ F.3d __,
    2009 WL 2855813 (7ᵗʰ Cir. 2009).........................................52

*Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004)................20, 38

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)........................28

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)..................................31

*Camara v. Municipal Court*, 387 U.S. 523 (1967)............................50

## TABLE OF AUTHORITIES (cont'd)

*Center for Democracy & Technology v. Pappert,*
337 F.Supp.2d 606 (E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24, 31, 40

*City of Indianapolis v. Edmond,* 531 U.S. 32 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Conchatta, Inc. v. Miller,* 458 F.3d 258 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Connection Distributing Co. v. Holder,*
557 F.3d 321 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24, 25, 28, 29, 32, 33, 39, 56

*Connection Distributing Co. v. Keisler,* 505 F.3d 545 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . 15

*Connection Distributing Co. v. Reno,* 46 Fed. Appx. 837,
2002 WL 31119685, 2002 U.S. App. LEXIS 20440 (6th Cir. 2002) . . . . . . . . . . . . . . . . . 15

*Connection Distributing Co. v. Reno,* 154 F.3d 281 (6th Cir. 1998)
*cert denied,* 526 U.S. 1087 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 40

*Council of Alternative Political Parties v. Hooks,*
121 F.3d 876 (3rd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Deja Vu v. Union Township,* 326 F.3d 791 (6th Cir. 2003)
*reheard en banc,* 411 F.3d 777 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Denver Area Consortium v. F.C.C.,* 518 U.S. 727 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 20, 38

*Donovan v. Dewey,* 452 U.S. 594 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Dunn v. Blumstein,* 405 U.S. 330 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Elrod v. Burns,* 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . 40

*Free Speech Coalition v. Gonzales,*
406 F. Supp. 2d 1196 (D. Colo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Free Speech Coalition, et al. v. Gonzales,*
Case No. 05-01126 (D.Colo) (Miller, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

iv

## TABLE OF AUTHORITIES (cont'd)

*Freedman v. Maryland*, 380 U.S. 51 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Grayned v. City of Rockford*, 408 U.S. 104 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hamling v. United States*, 418 U.S. 87 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Hill v. Scranton*, 411 F.3d 118 (3rd Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*J.L. Spoons v. City of Brunswick*, 49 F. Supp. 2d 1032 (N.D. Ohio 1999). . . . . . . . . . . . . 51

*Lambert v. California*, 355 U.S. 225 (1957. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*LaMont v. Postmaster*, 381 U.S. 301 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Lawrence v. Texas*, 539 U.S. 572 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Leary v. United States*, 395 U.S. 6 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636 (1968). . . . . . . . . . . . . . . . . . . . . . . 49, 55

*Marcus v. Search Warrants*, 367 U.S. 717 ( 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 55

*Marshal v. Barlow's Inc.*, 436 U.S. 307 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995). . . . . . . . . . . . . . . . . . . 31, 37

*Miller v. Penn Manor School District*,
   588 F.Supp. 2d 606 (E.D. Pa. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56, 57

*New York Times v. United States*, 403 U.S. 713 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . 56

*New York v. Burger*, 482 U.S. 691 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50-54

*Northwest Municipal Util. Dist. v. Holder*,  U.S.  ,
   129 S.Ct. 2504 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Playboy Entertainment Group, Inc.*, 30 F.Supp.2d 702 (D. Del. 1998). . . . . . . . . . . . . . . 22

## <u>TABLE OF AUTHORITIES (cont'd)</u>

*Police Department of the City of Chicago v. Mosley,*
   408 U.S. 92 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Reed v. Reed,* 404 U.S. 71 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Riley v. National Federation of the Blind,* 487 U.S. 781 (1988). . . . . . . . . . . . . . . . . . 40

*Roaden v. Kentucky,* 413 U.S. 496 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 55

*Ross v. Meese,* 818 F.2d 1132 (4th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Sable Communication v. F.C.C.,* 429 U.S. 115 (1989). . . . . . . . . . . . . . . . . . . . . 20, 36

*Showers v. Spangler,* 957 F. Supp. 584 (M.D. Pa. 1997). . . . . . . . . . . . . . . . . . . 54, 55

*Showers v. Spangler,* 182 F.3d 165 (3rd Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Shuttlesworth v. Birmingham,* 394 U.S. 147 (1969). . . . . . . . . . . . . . . . . . . . . . . . . 40

*Simon & Schuster v. Members of N.Y. Crime Victims Bd.,*
   502 U.S. 105, 122, n. (1991). . . . . . . . . . . . . . . . . . . . . . . . . . 21, 29, 34-36

*Smith v. California,* 361 U.S. 147 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-44

*Stanford v. Texas,* 379 U.S. 476 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 55

*Sundance Assoc., Inc. v. Reno,* 139 F.3d 804 (10th Cir. 1998). . . . . . . . . . . . . . . . . . 13

*Teitel Film Corp. v. Cusack,* 390 U.S. 139 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Turner Broad. Sys. v. FCC,* 512 U.S. 622 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*U.S. v. 4,432 Mastercases of Cigarettes, More or Less,*
   448 F.3d 1168 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*United States v. Engler,* 806 F.2d 425 (3rd Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Johnson,* 994 F.2d 740 (10th Cir.1993). . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Knox,* 32 F.3d 733 (3rd Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . 28, 36

*United States v. Playboy Entertainment Group, Inc.,*
   529 U.S. 803 (2000). . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23, 24, 25, 31, 36

vi

## <u>TABLE OF AUTHORITIES</u> (cont'd)

*United States v. Stevens,* 533 F.3d 218 (3rd Cir. 2008)
   *cert. granted* __ U.S. __, 129 S.Ct. 1984 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24, 31

*United States v. United States District Court,*
   858 F.2d 534 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Weiler,* 458 F. 2d 474 (3rd Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Williams,* __ U.S. __; 128 S. Ct. 1830 (2008) . . . . . . . . . . . . . . . . . . . . . 26, 31

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 33

*Watchtower Bible & Tract Society of N.Y., Inc.,*
   536 U.S. 150 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 38

*Watson v. Abington Township,* 478 F.3d 144 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 52

*Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 45

*Wooley v. Maynard,* 430 U.S. 705 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Zurcher v. Stanford Daily,* 436 U.S. 547 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## CONSTITUTIONAL PROVISIONS

United States Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

United States Const., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 49-52, 56, 57

United States Const., amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19, 20, 44, 46, 57

## STATUTES, ACTS, RULES AND REGULATIONS

18 U.S.C. § 1467 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 36

18 U.S.C. § 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

vii

## <u>TABLE OF AUTHORITIES (cont'd)</u>

18 U.S.C. § 2252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2252A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

18 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

18 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

18 U.S.C. § 2256 (2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

18 U.S.C. § 2256(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2257 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

18 U.S.C. § 2257 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

18 U.S.C. §2257 (d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2257 (e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. §2257(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2257 (f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 41

18 U.S.C. § 2257 (f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18 U.S.C. §2257 (f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 2257 (f)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 49

18 U.S.C. § 2257 (h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

18 U.S.C. § 2257 (h)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 2257 (h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES (cont'd)

18 U.S.C. §2257 ( i ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2257A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2257A (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 U.S.C. § 2257A (e)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 2257A (f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 41

18 U.S.C. § 2257A (f)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18 U.S.C. § 2257A (f)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

18 U.S.C. § 2257A (f)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 42

18 U.S.C. § 2257A (f)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 49

18 U.S.C. § 2257A (h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 28, 29, 35

18 U.S.C. § 2257A (h)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 45, 46

18 U.S.C. § 2257A (h)(1)(B)( i ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

18 U.S.C. § 2257A ( i ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

18 U.S.C. § 2258. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2258A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2258C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2259. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2260. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 2260A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Pub. L. 100-690. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. 101-647. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF AUTHORITIES (cont'd)

28 C.F.R. § 75. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

28 C.F.R. § 75.1 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 C.F.R. § 75.1 (c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. § 75.1 (n). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 C.F.R. § 75.1 (o). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 C.F.R. § 75.2 (a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

28 C.F.R. § 75.2 (a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. § 75.2 (a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. § 75.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 C.F.R. § 75.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 47

28 C.F.R. § 75.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 47, 55

28 C.F.R. § 75.5 (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 48, 53, 55

28 C.F.R. §.75.5 (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 48, 55

28 C.F.R. § 75.5 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R.  § 75.5 (d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R.  § 75.5 (e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 48

28 C.F.R. § 75.5 (f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 48, 55

28 C.F.R .§ 75.5 (g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 48, 55

28 C.F.R. § 75.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 C.F.R. §.75.6 (e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES (cont'd)

28 C.F.R. § 75.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

73 FR 77432. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.C. COLO. L. Civ. Rule 41.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. 4472 § 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

## MISCELLANEOUS

Attorney General's Commission on Pornography, Final Report,
     July 1986, p. 618, Recommendation 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

"Combating Child Pornography" November 2002, data demonstrating growth in
     child pornography prosecutions between 1989 and
     2002) http://www.gao.gov/new.items/d03272.pdf. . . . . . . . . . . . . . . . . . . . . . 26

Commercial Traffic in Sexually Oriented Materials in the
     United States, 3 Technical Report of the Commission
     on Obscenity and Pornography, 1, 186 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hearing Before the Committee on the Judiciary,
     United States Senate, 100th Cong. Second Session,
     on S. 703, S. 2033, June 8, 1988, p. 402. . . . . . . . . . . . . . . . . . . . . . 2-4, 7, 24, 25

Review of Child Pornography and Obscenity Crimes Report Number I-2001-07
     July 19, 2001; http://www.usdoj.gov/oig/reports/plus/e0107/results.htm. . . . . . . . . . . . . 26

http://www.fbi.gov/publications/innocent.htm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREE SPEECH COALITION, INC., et al.    )   CASE NO.
                     )
        Plaintiffs,            )   JUDGE
                     )
   -vs-                     )
                     )
THE HONORABLE ERIC H. HOLDER, JR., )   **MEMORANDUM IN SUPPORT OF**
   Attorney General,          )   **PLAINTIFFS' MOTION FOR**
                     )   **PRELIMINARY INJUNCTION**
       Defendant.           )
                     )
                     )

## STATEMENT OF THE CASE AND OF THE FACTS

Plaintiffs challenge the constitutionality of 18 U.S.C. § 2257 and 18 U.S.C. § 2257A, federal criminal statutes, and their implementing regulations that impose record keeping and labeling obligations on expression depicting sexual conduct and/or genitalia.

Title 18 U.S.C. § 2257, and its younger companion, 18 U.S.C. § 2257A, require all producers of expression containing a depiction of sexual imagery to collect photo identification from the subjects of that expression and to maintain dossiers on those persons for inspection by their government. They must affix a label to their photographs, films, magazines, artwork, or websites identifying the location of the records. Failure to comply with the record keeping or labeling provisions is punishable by a fine and/or a prison term of up to five years, if the expression depicts actual sexual conduct or a "lascivious" display of genitals or pubic region, and up to one year, if it depicts simulated sexually explicit conduct.

## I.    LEGISLATIVE HISTORY AND ORIGINAL VERSION OF 18 U.S.C. § 2257

Title 18 U.S.C. §2257 evolved from a recommendation by the Attorney General's Commission on Pornography that called for the enactment of a statute requiring "the producers, retailers or distributors of sexually explicit visual depictions to maintain records containing consent forms and proof of performers' ages." *Attorney General's Commission on Pornography, Final Report, July 1986,* p. 618, Recommendation 37. The Commission explained that record keeping requirements would allow "law enforcement officers to ascertain whether an individual in a film or other visual depiction [was] a minor" and therefore would promote "the safety and well-being of children." *Id.* at 618-19.

While the Commission identified the adult film industry's trend toward using young-looking models in their productions as one of the impetuses for its recommendation, *id.*,[1] the report acknowledged, nevertheless, that "the bulk of child pornography traffic is non-commercial," that its production is "clandestine in character," that "traffic in child pornography went underground after 1978," and that the "sexual exploitation of children has retreated to the shadows." *Id.* at 604-09; *See also Hearing Before the Committee on the Judiciary,* United States Senate, 100th Cong. Second Session, on S. 703, S. 2033, June 8, 1988, p. 402 ("As many spokespersons for the producers and distributors of [sexually explicit material] have stated, they do not want to use underage performers in the material.") (Footnote omitted).    In fact, the Commission found that the "absence of commercial motives" for child pornography made it a particularly troubling problem for the legal community to address. *Id.* at 610.

---

[1]    The Commission noted that the emphasis on youthful looking performers in sexually explicit films developed some time after World War II. *Id.* at 855, n.968. "Before then models who appeared in what were at that time know[n] as 'stag films' were in their late twenties or thirties." *Id.* citing *Commercial Traffic in Sexually Oriented Materials in the United States,* 3 *Technical Report of the Commission on Obscenity and Pornography,* 1, 186 (1971).

2

In the aftermath of the Meese Commission's report, Congress convened legislative hearings and thereafter enacted the Child Protection and Obscenity Enforcement Act of 1988, which included Title 18 U.S.C. §2257 as a measure to effectuate the Meese Commission's recommendation that legislation be enacted to provide law enforcement officers with a ready means to distinguish between minors and youthful looking adults. *Hearing Before the Committee on the Judiciary*, United States Senate, 100th Cong. Second Session, on S. 703, S. 2033, June 8, 1988, p. 38.

Title 18 U.S.C. § 2257 required producers of visual depictions of actual sexually explicit conduct to keep records of "the actual age and identity of each performer" and to affix a statement to each depiction "indicating where these records [were] located." (Pub. L. 100-690 attached). However, no criminal or civil penalties punished non-compliance with the statute's provisions; rather the only consequence for failing to comply with the legislation's record keeping or labeling provisions was a "rebuttable presumption...that the performer shown in the material was a minor" in a prosecution for a violation of 18 U.S.C. § 2251(a), prohibiting child pornography. *Id.* The presumption was to facilitate the prosecution of not only commercial producers of sexually explicit materials who might use underage performers, but more importantly, to facilitate the prosecution of non-commercial producers of child pornography who had "retreated to the shadows" and had no "commercial motives" for its production, and threatened to evade prosecution based on lack of proof that the person depicted was underage. The law's record keeping burdens were intended to fall on "producers of material which...[posed] a risk of serious harm to children." *Id.* at 53, 61.

In the legislative hearings on the original legislation, Alan Sears, Executive Director of the Attorney General's Commission on Pornography, explained:

The record keeping requirements in this section are ***not*** (emphasis in original) unduly burdensome. Producers of material depicting "actual sexually explicit conduct" *who use only performers appearing over eighteen are not going to face prosecution for sexual exploitation of children and, so, may disregard this section's requirements.* In

the unlikely event that a prosecution began because some performers' ages appeared questionable and the presumption of minority was used, the presumption could easily be rebutted by the introduction of each performers' birth certificate or other indication of age or identity. *Also, the requirement only applies to when* **actual** (emphasis in original) *sexually explicit conduct is depicted. There is no record keeping requirement for film or other works depicting only simulated sexually explicit activity. Therefore, the only producers 'burdened' by this record keeping are those who create 'hard core' sexually explicit material* **and** (emphasis in original) *employ performers who could be underage.*

*Senate Hearing* at 266. (Emphasis added, except where noted).

According to the Commission's Executive Director, the legislation was supposed to focus only on material for which there was some question about the age of a youthful-looking performer and was to apply only to "hard core' sexually explicit materials" depicting actual conduct that depicted performers "who could be underage." *Id.* The original legislation allowed a producer who was accused of using underage performers in sexually explicit expression and had not maintained the requisite age verification records or affixed the requisite label, to overcome the consequence of his non-compliance–that being, the presumption that persons depicted were minors–by producing evidence that the performers were, in fact, adults.

The original version of 18 U.S.C. § 2257 also provided that "no information or evidence obtained from records required to be created or maintained" by its provisions, shall "be used directly or indirectly, as evidence against any person with respect to any violation of law"–a provision the Department of Justice considered necessary to avoid violating the self-incrimination clause of the Fifth Amendment. *Id.* at 90-91.

Notwithstanding Mr. Sears' claims about the statute's minimal burdens on speech, the United States District Court for the District of Columbia struck down 18 U.S.C. § 2257 as unconstitutional under the First and Fifth Amendments in *American Library Association v. Thornburgh*, 713 F. Supp. 2d 469 (D.D.C. 1989). The district court began by identifying the particular legal conundrum

4

presented by sexually explicit expression:

> If the model in [sexually explicit imagery] is at least 18 years old, the producers and distributors are protected by the full range of rights under the First Amendment, unless the image falls into the narrow category of "obscenity." By contrast, if the model has *not* (emphasis in original) reached the age of eighteen, producers and distributors of the image are subject to criminal punishment.

*Id.* at 472. (Footnote omitted). The court underscored that in evaluating the constitutionality of 18 U.S.C. § 2257, it was "clear that much of the material" subject to the record keeping requirements was protected by the First Amendment. *Id.* at 473. The question to be answered, the court determined, was whether the strong public policy against child pornography justified the hefty burdens imposed by the statute on all such protected materials. *Id.* The court determined that it did not–finding the record keeping requirements "extraordinarily burdensome," and their breadth "remarkable." *Id.* at 477.

Additionally, the district court in *Thornburgh* found that the criminal presumptions raised by non-compliance violated due process since there was no "substantial assurance that the presumed fact [was] more likely than not to flow from the proved fact on which it [was] made to depend." *Id.* at 480, 482 (*quoting Leary v. United States,* 395 U.S. 6, 36 (1969)).[2]

In response to the district court's ruling, Congress amended the statute. Among other things– and most important to the issues presented here–Congress deleted the statutory rebuttable presumption that arose if a producer of sexually explicit expression did not comply with the record keeping and labeling provisions of the Act held unconstitutional by the court in *Thornburgh,* and, instead, enacted direct criminal sanctions for the failure to keep such records and affix the requisite label–for ***all*** sexually explicit expression–without regard to the clear and obvious maturity of the

---

[2] The court also ruled that some of the civil and criminal forfeiture provisions of 18 U.S.C. §§ 1467, 2253, and 2254 were unconstitutional under the First Amendment. *Id.* at 484, 488.

person depicted or the use or context in which the depiction occurred. The other statutory provisions that the district court found unconstitutional under the First Amendment remained, for the most part, the same.

In the years following Congress's transformation of 18 U.S.C. § 2257 from a statute raising a rebuttable presumption for non-compliance into one that directly imposes serious criminal penalties for non-compliance on producers of sexually explicit expression, Congress has set about expanding its breadth and scope and the severity of its criminal sanctions. The statute has been amended three times, has been implemented by three sets of regulations and has been augmented by a companion statute–each of which has broadened its scope by leaps and bounds and increased its toxic effect on free speech. The very attributes that its proponents highlighted as keeping the record keeping and labeling requirements within constitutional boundaries now lie on the threshing room floor.

## II.    THE EVOLUTION OF AND CURRENT VERSION OF 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A AND THEIR IMPLEMENTING REGULATIONS

As noted above, Congress, in 1990, amended 18 U.S.C. § 2257 to effectively shift the burden of keeping age verification records on *all* producers of sexually explicit expression–not just those producers whose materials depicted performers who might be confused as minors and therefore might be required to rebut the presumption created by the statute that the models were minors in a prosecution for child pornography offenses. The amended statute punished non-compliance by criminal penalty including a term of imprisonment of up to two years. An author or publisher of a medical textbook depicting octogenarians engaging in sexual intercourse, a photographer creating an artistic erotic portrait, or a middle-aged husband and wife creating a photograph of an intimate moment between them in their bedroom faced criminal prosecution if they did not create and maintain the requisite records or did not attach the requisite label. The term, *producer*, was defined

6

to include, not only those who created the original depiction, but also anyone who duplicated, reproduced or reissued the depiction.  18 U.S.C. § 2257 (h)(3); *See also,* 28 C.F.R. § 75.1(c).  In contrast to the original statute, it was no defense to the amended statute's criminal sanctions that the persons depicted were mature adults.  It was thus no longer true that the statute's burdens fell only on those who "employ[ed] performers who could be underage." *Senate Hearing* at 266.

In 2003, Congress amended 18 U.S.C. § 2257 to expand its scope and effect still further.[3]  The statute was amended to apply to visual depictions on the internet and to soften its proscription against use of information or evidence from the records it compelled to be maintained in criminal prosecutions.  Under the amended statute, information from the records could be used as evidence in prosecuting obscenity and child pornography offenses.  Congress also increased the penalty for violating the statute from a term of imprisonment of up to two years to a term of imprisonment of up to *five years*–with penalties for subsequent offenses increased from five years to *ten years*.

Regulations enacted to implement the amended statute established, among other things, an inspection regimen that allowed government agents to appear unannounced on the premises of a producer of sexually explicit expression and to conduct warrantless searches and seizure of property.  28 C.F.R. § 75.5.

Three years later, in 2006, Congress expanded 18 U.S.C. § 2257's application to not only actual sexually explicit conduct, but also to "lascivious exhibition of the genitals" and enacted a companion statute, 18 U.S.C. § 2257A, that imposed the same record keeping and labeling requirements on expression depicting *simulated* sexually explicit conduct.[4]    It also enacted a

---

[3] Congress amended the statute in 1994 to correct the results of an error in directory language in § 311 of Pub. L. 101-647.

[4] *Simulated sexually explicit conduct* is defined to mean "conduct engaged in by performers
(continued...)

provision criminalizing the refusal to allow warrantless searches and seizures pursuant to the inspection regimen established in 28 C.F.R. § 75.5. 18 U.S.C. § 2257 (f)(5); 18 U.S.C. § 2257A (f)(5).

New regulations implementing the statute as amended in 2006 and implementing the newly enacted 18 U.S.C. § 2257A were published on December 18, 2008 and took effect 30 days thereafter, with compliance for 18 U.S.C. § 2257A and its implementing regulations required by March 18, 2009. 73 FR 77432.

Specifically, this is what the law now requires of our artists, our educators, our film makers, and our citizens who create private, erotic expression in their bedrooms.

The producer of sexual imagery must first demand a government-issued photo identification document such as a driver's license or passport from the person to be filmed, photographed or otherwise to be visually depicted and must make a copy of the identification card. 28 C.F.R. § 75.2(a)(1). If anyone depicted in the picture refuses to produce a copy of his or her driver's license or passport– even if he or she fully consents to being photographed or even if he or she has requested or offered to pay to be photographed–the creation of the sexually explicit picture is forbidden. 18 U.S.C. §2257(f). Indeed, publication of a single message without the requisite documentation places the producer at risk of a term of imprisonment of up to five years for a visual depiction of actual

---

[4](...continued)
that is depicted in a manner that would cause a reasonable viewer to believe that the performers engaged in actual sexually explicit conduct, even if they did not in fact do so. It does not mean not (sic) sexually explicit conduct that is merely suggested." 28 C.F.R. § 75.1(o).

*Sexually explicit conduct* is defined to mean: "( i ) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; ( ii  ) bestiality; ( iii ) masturbation; ( iv ) sadistic or masochistic abuse; or ( v ) lascivious display of the genitals or pubic area of any person." 18 U.S.C. § 2257 (h)(1); 28 C.F.R. § 75.1(n); 18 U.S.C. § 2256 (2)(A).

sexual conduct[5]–with any subsequent violation being punishable by a term of imprisonment of not less than two years and not more than ten years. 18 U.S.C. §2257( i ).

The photographer, artist or lover must maintain a copy of the photo identification of each person depicted in the sexually explicit expression together with all other names used by the person, *e.g.* maiden name, aliases, nicknames, stage names, professional names, together with a copy of the depiction and its date of production. 18 U.S.C. § 2257 (b); 28 C.F.R. § 75.2 (a)(1), (a)(4). The records must be organized alphabetically by the legal name of the person depicted and must be indexed or cross-referenced to each other name used and to the title or identifying number of the depiction, 28 C.F.R. § 75.2 (a)(3), and retrievable by name or title. 28 C.F.R. § 75.3.

Anyone who publishes the depiction in a book, magazine, on film or inserts the depiction on a computer website or service–even though he is not the original creator of the depiction–must likewise comply with the record keeping and labeling requirements by acquiring copies of photo identification and labeling the material with the location of the records. 18 U.S.C. § 2257(a), (h) (2); 28 C.F.R. § 75.1 (c)(2).

Information from this documentation can be used by their government as evidence in prosecuting them for violations of federal obscenity law and other offenses. 18 U.S.C. §2257(d)(2).

The records must be maintained for seven years from the date of their creation. 28 C.F.R. § 75.4.

The government is empowered to appear, without advance notice and without a warrant, and demand entrance to the place where the records are maintained "without delay and at reasonable times...during regular working hours and at other reasonable times" to inspect the records. 28 CFR

---

[5] A visual depiction of *simulated* sexual conduct without the requisite documentation carries a prison term of one year. 18 U.S.C. § 2257A ( i ).

9

§75.5(a), (b), (d). If the producer of the depiction "does not maintain at least 20 normal business hours per week," then the producer must provide notice to the government "of the hours during which records will be available for inspection, which in no case may be less than 20 hours per week." 28 C.F.R. § 75.5(c). Thus, the artist or photographer, who does not maintain "regular business hours," must provide notice to the Department of Justice of the times when the records pertaining to their expression are available for inspection–"which in no case" can be less than 20 hours per week. Refusal to permit the inspection is a felony. 18 U.S.C. § 2257(f)(5); 18 U.S.C. § 2257A(f)(5).

The government investigators are authorized to copy any document subject to inspection, without a warrant–including driver's licenses or passports– and without restriction, and may seize any evidence they believe is related to the commission of a felony–again without a warrant–while conducting an inspection, whether related to their purpose for being on the premises or not. 28 C.F.R § 75.5(e), (g). The regulations secure to the investigators "otherwise lawful investigative prerogatives" while conducting their inspections–presumably meaning they can interview witnesses, take photos, and make notes of their observations during the inspection, among other things. 28 C.F.R §75.5(f).

All photographers, artists, film makers, book or magazine publishers, and website operators who produce expression containing sexually explicit imagery must affix to their expression a label that is "prominently displayed" and that identifies the address where the identification records can be found. 18 U.S.C. § 2257(e)(2); 18 U.S.C. § 2257A(e)(2); 28 CFR §§75.6, 75.8. The label must be printed in no less than 12-point type or no smaller than the second largest typeface on the material in a color that contrasts with its background. 28 CFR §75.6(e). On electronic material, the notice must be displayed for a sufficient duration and be of sufficient size that it is capable of being read

10

by the average reader. *Id.* As with their obligation to maintain government-issued photo identification records, failure to affix this label is punishable by a term of imprisonment of up to five years. 18 U.S.C. §2257(f)(4).[6] And what is more, retailers bear the burden of checking the materials they disseminate to verify that they have the requisite label, for they are subject to criminal sanction for distributing sexually explicit material without the label.  18 U.S.C. § 2257(f)(4); 18 U.S.C. § 2257A(f)(4).

Title 18 U.S.C. § 2257A, unlike 18 U.S.C. § 2257, contains a provision that allows *commercial* producers of expression that contains *simulated* sexually explicit depictions or "lascivious exhibition of the genitals" to be exempted from the record keeping and labeling obligations imposed by the legislation. 18 U.S.C. § 2257A (h).[7] Non-commercial producers are not

---

[6] Failure to affix the label to expression depicting simulated sexual conduct is punishable by a prison term up to one year. 18 U.S.C. § 2257A ( i ).

[7] Section (h) of 18 U.S.C. § 2257A provides:

(1)  The provisions of this section and section 2257 shall not apply to matter, or any image therein, containing one or more visual depictions of simulated sexually explicit conduct, or actual sexually explicit conduct as described in clause (v) of section 2256(2)(A), if such matter–

(A) (i) is intended for commercial distribution;

(ii) is created as a part of a commercial enterprise by a person who certifies to the Attorney General that such person regularly and in the normal course of business collects and maintains individually identifiable information regarding all performers, including minor performers, employed by that person, pursuant to Federal and State tax, labor, and other laws, labor agreements, or otherwise pursuant to industry standards, where such information includes the name, address, and date of birth of the performer; and

(iii) is not produced, marketed or made available by the person described in clause (ii) to another in circumstances such than (*sic*) an ordinary person would conclude that the matter contains a visual depiction that is child

(continued...)

11

entitled to the exemption, nor are any producers of expression depicting *actual* sexual conduct–whether commercial or non-commercial– entitled to the exemption.

## III.    JUDICIAL EVALUATION OF 18 U.S.C. § 2257

The constitutionality of 18 U.S.C. § 2257 has been the subject of judicial debate at the federal appellate court level for more than 15 years. In 1994, after the statute had been amended to enforce its record keeping requirements by direct criminal sanction–but before its expansive amendments in 2003 and 2006–the D.C. Circuit Court of Appeals wrestled with some of the thorny constitutional issues it raised. *American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) *cert. denied*, 515 U.S. 1158 (1995). Two members of the panel found that 18 U.S.C. § 2257 was a constitutional content-neutral regulation of speech–while acknowledging that several of its applications "exceeded constitutional boundaries"; they declined, however, to address the issue of the statute's overbreadth because of their concern that the record before them failed to present "concrete facts that would

---

[7](...continued)
    pornography as defined in section 2256(8); or

    (B)(i) is subject to the authority and regulation of the Federal Communications Commission acting in its capacity to enforce section 1464 of this title, regarding the broadcast of obscene, indecent or profane programming; and

    (ii) is created as a part of a commercial enterprise by a person who certifies to the Attorney General that such person regularly and in the normal course of business collects and maintains individually identifiable information regarding all performers, including minor performers, employed by that person, pursuant to Federal and State tax, labor, and other laws, labor agreements, or otherwise pursuant to industry standards, where such information includes the name, address, and date of birth of the performer.

(2) Nothing in subparagraphs (A) and (B) of paragraph (1) shall be construed to exempt any matter that contains any visual depiction that is child pornography, as defined in section 2256(8), or is actual sexually explicit conduct within the definitions in clauses (i) through (iv) of section 2256(2)(A).

12

enable [the court] to test the limits" of the statute. *Id.* at 83, 90, 94.

The third member of the panel dissented, finding that the statute should be struck down as unconstitutionally "overbroad, chilling" and an "unwarranted intrusion into...First Amendment rights." *Id.* at 94-95. The concerns of the dissent were later echoed by two members of the D.C. Circuit, dissenting from that court's denial of rehearing *en banc*; they identified the "difficult dilemma" the statute "imposes upon speakers" and its potentially significant impact on speech. *American Library Association v. Reno*, 47 F. 3d 1215, 1217 (D.C. Cir. 1995). The Supreme Court subsequently declined review. 515 U.S. 1158 (1995).

The debate was resuscitated several years later in the Sixth Circuit Court of Appeals. *Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) *cert. denied*, 526 U.S. 1087 (1999).[8]

---

[8] The statute also came under review by the Tenth Circuit in *Sundance Assoc., Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998), in which the court held that one of the implementing regulations was invalid to the extent its definition of "producer" failed to exclude those not involved in hiring, contracting for, managing, or otherwise arranging for participation of performers depicted in sexually explicit material. The court affirmed the district court's summary judgment finding portions of the regulations to be invalid for that reason.

In 2005, after the statute had been amended and new regulations implementing it were issued, the Plaintiff Free Speech Coalition filed suit in the United States District Court for the District of Colorado, challenging the statute and newly issued regulations, once again, on the ground that the regulations exceeded the scope of the statute and raising other challenges to the amended statute and regulations. *Free Speech Coalition, et al. v. Gonzales*, Case No. 05-01126 (D.Colo) (Miller, J.). The district court in ruling on Plaintiffs' Motion for Preliminary Injunction, found that there was a likelihood that Plaintiffs would prevail on their claim that the regulations exceeded the statutory scope and therefore enjoined their enforcement against secondary producers, citing *Sundance*; it also found that Plaintiffs would likely succeed in showing that certain applications of the regulations were unconstitutionally burdensome; it, nevertheless, determined that Plaintiffs had not demonstrated a likelihood of success with regard to their other attacks on the constitutionality of the statute. *Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196 (D. Colo. 2005). Both parties appealed.

During the pendency of the appeal, 18 U.S.C. § 2257 was amended once again, and new implementing regulations were, once again, to be issued. In light of the amendment, both parties
(continued...)

13

Connection Distributing Co., the publisher of magazines for those who engage in "swinging," an alternative lifestyle that espouses sexual freedom among mature, committed couples, brought suit challenging 18 U.S.C. § 2257 under the First Amendment. Connection's magazines were composed of messages comprised of sexually candid photos and text submitted by persons who wished to meet others who shared their belief in sexual freedom–a sincerely held, but unquestionably stigmatizing philosophy. *Id.* at 285. The magazines served as a private and confidential forum where swingers could meet one another. *Id.* Importantly, the evidence established that swingers, as a whole, and those depicted in Connection's magazines, in particular, were overwhelmingly middle-aged adults, who could not be confused as minors. *Id.* at 286-87 .

The enactment of 18 U.S.C. § 2257 silenced swingers' communications to one another, however. Fearing the stigma and potentially life-changing retaliation threatened by discovery by their government, their family, their employers and their communities of their participation in swinging, swingers stopped submitting messages to Connection because of the statutory demand that they submit photo identification of themselves for inspection by the government as a condition of publishing their expression. Connection sought injunctive relief against 18 U.S.C. § 2257's enforcement. The district court denied preliminary injunctive relief, and Connection appealed.

The Sixth Circuit panel in *Connection* affirmed the district court's denial of preliminary injunctive relief and remanded for further proceedings. Subsequently, Plaintiffs' constitutional challenge to 18 U.S.C. § 2257 came before the Sixth Circuit two more times on review of the district

---

[8](...continued)
dismissed their respective appeals. *Free Speech Coalition v. Gonzales*, Case Nos. 06-1044, 06-1073 (10th Cir.). On remand, the district court administratively closed the case, while new regulations implementing the amended statute as well as its new companion statute, 18 U.S.C. § 2257A, were being drafted. *See, D.C. COLO. L. Civ. Rule 41.2.* Ultimately, on April 13, 2009, the district court granted Plaintiffs' Unopposed Motion to Dismiss without Prejudice, without reaching the merits.

14

court's grants of summary judgment in the government's favor. In the second appeal, the Sixth Circuit reversed–remanding the case for consideration in light of a series of recent Supreme Court cases in the first instance. *Connection Distributing Co. v. Reno*, 46 Fed. Appx. 837, 2002 WL 31119685, 2002 U.S. App. LEXIS 20440 (6th Cir. 2002).[9]

In the third appeal, the Sixth Circuit struck down 18 U.S.C. §2257 on its face as an unconstitutionally overbroad regulation of expression under the First Amendment. *Connection Distributing Co. v. Keisler*, 505 F.3d 545 (6th Cir. 2007). All three members of the panel agreed that the statute and its implementing regulations were unconstitutionally overbroad. One member of the panel, concurring, additionally concluded that the statute was unconstitutional under the First Amendment as applied to the Plaintiffs. *Id.* at 572. The third member, concurring in part and dissenting in part, agreed with "much of the majority's thoughtful opinion" finding 18 U.S.C. §2257 to be overbroad, *id.* at 572, but determined that the statute could be salvaged by severing a portion of it. *Id.* at 574.

The government sought rehearing *en banc* of the panel's decision.

The Sixth Circuit granted the government's petition, and a court of seventeen judges sitting *en banc* continued the debate that began in the D.C. Circuit Court of Appeals in 1994. On February 20, 2009, a splintered court affirmed the district court's grant of summary judgment. The majority found, over the dissent of six judges expressed in four separate opinions, that 18 U.S.C. § 2257[10] was not unconstitutional as applied to the plaintiffs in that case and that it was not unconsitutionally

---

[9] By this time, 18 U.S.C. § 2257 had been amended to expand its breadth and scope beyond the version first evaluated by the D.C. Circuit Court of Appeals in *American Library Association*–which the D.C. Circuit acknowledged exceeded constitutional boundaries in applications not presented on the record before it.

[10] The court did not review the constitutionality of 18 U.S.C. § 2257A, which was enacted after the plaintiffs in *Connection* had filed their appeal.

15

overbroad. *Connection Distributing Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009) (*en banc*).[11]

While the majority of the court in *Connection* found that 18 U.S.C. § 2257 survived constitutional scrutiny, it acknowledged–as the D.C. Circuit Court had–that several applications of the statute were problematic. For instance, the majority admitted that one of the dissents made a convincing case "why [18 U.S.C. § 2257] would have difficulty withstanding an as-applied attack by a mature-adults-only magazine that included photographs only of readily identifiable mature adults."[12] *Id.* at 334, 336. As for application of the statute to "a couple who produced, but never distributed, a home video or photograph of themselves engaging in sexually explicit conduct," and "the hypothetical pornography magazine or sex manual that involves only the middle-aged and the elderly," the majority found that such application did not justify invalidation of 18 U.S.C. § 2257 because of the "contextual vacuum" and "law-enforcement vacuum" on the record before it. *Id.* at 339, 340. The court–declaring these applications too abstract–declined to invalidate the statute under the overbreadth doctrine. *Id.* at 341.

The six dissenting judges roundly disagreed and, in four opinions, meticulously laid bare the constitutional defects in the statute.

Judge Kennedy, joined by Judges Martin, Moore, Cole, Clay and White, articulated point-by-point the constitutional analysis requiring invalidation of the statute under the overbreadth doctrine. She began with the premise that, contrary to the majority's rationale that it should not reach the issue because of the "law-enforcement vacuum," "enforcement has never been the touchstone of

---

[11] Plaintiffs filed a petition for a writ of certiorari in the United States Supreme Court on May 20, 2009. Case No. 08-1449. The Court denied the petition on October 5, 2009.

[12] Plaintiffs in Connection maintained that Connection's magazines were precisely that. The majority found, however, that because the published photos were sometimes cropped to remove identifying features to preserve anonymity, the age verification procedures were necessary to assure that the persons depicted in the published cropped photos were not minors. *Id.* at 331, 336.

overbreadth inquiry." *Id.* at 343. Rather, the dissent explained, the overbreadth doctrine was specifically designed to allow an injured party, such as Connection, to assert the unconstitutional applications on behalf of others not before the court, such as the private couple or the authors of a sex manual for the elderly, whose expression was threatened to be chilled by an unconstitutional regulation of speech, but who would be reticent to seek judicial relief–particularly in the context of anonymous speech. *Id.* at 345.

The dissent pointed to the body of law that recognized the importance of protecting the privacy of communication and the right to speak anonymously in preserving First Amendment rights and the goring of those protections inflicted by registration laws and identification laws like 18 U.S.C. § 2257. *Id.* at 346-47. Title 18 U.S.C. § 2257, it found, posed these very same dangers, and its inhibitions on "protected speech, under circumstances far flung from the underlying purposes of the statute," could not survive constitutional scrutiny under the overbreadth doctrine. *Id.* at 358. She also found that the statute was unconstitutional as applied to Plaintiffs. *Id.* at 360-61.

Judge Moore, joined by Judges Martin and Cole, also concluded that 18 U.S.C. § 2257 was unconstitutional as applied to the Plaintiffs. Judge Moore explained:

> Given the alarming breadth of the universal age-verification requirement at issue, I must conclude that § 2257 burdens substantially more speech than is necessary to further the government's interest in preventing the sexual exploitation of minors....The regulation at issue in this case, § 2257, does not apply solely to child pornography. It applies to a class of materials much broader than those depicting what Congress ultimately seeks to prevent....

*Id.* at 362. Finding that the evidence in the record demonstrated that "the vast majority of swingers [were] middle-aged and accordingly not at risk of being mistaken for minors," the dissent found that the application of the statute's record keeping requirements simply did not advance the government's interest in preventing child pornography while imposing a burden on "protected speech without any corresponding benefit." *Id.* at 365.

It bears repeating that even though the D.C. Circuit Court of Appeals and the Sixth Circuit Court of Appeals were divided in their conclusions about the fate of 18 U.S.C. § 2257, the majorities each agreed with their dissenting brethren that the statute was constitutionally flawed in a number of its applications.

## IV.   THE EFFECT OF THE LEGISLATION ON PLAINTIFFS' EXPRESSION

Plaintiffs represent a broad array of producers and users of sexually explicit expression. They include the Free Speech Coalition, a group of more than 1,000 individuals and entities affiliated with the adult entertainment industry devoted to upholding the First Amendment against assault, (*Complaint*, ¶ 18), the American Society of Media Photographers and its members and other acclaimed photographers, (*Complaint*, ¶¶ 20, 22, 34, 39, 43, 47), leaders in the field of sex education and therapy, (*Complaint*, ¶¶ 30, 36, 49), a journalist documenting the adult industry and sexual issues, (*Complaint*, ¶ 28) and various representatives of the adult entertainment industry, (*Complaint*, ¶ 25, 32, 45).

Their expression spans a lively and diverse landscape. It includes serious, artistic and political imagery, educational and instructional material, and material designed simply to entertain. None of it, however, depicts children, nor could it be confused as child pornography.

In particular, the adult industry is and has been unalterably opposed to child pornography. The expression which it creates and distributes to millions of Americans who find it entertaining, depicts adults–and only adults.  The use of minors in commercially produced sexually explicit expression is all but non-existent. *See* p.25, n.15, *infra*.

Nonetheless, each Plaintiff labors under the heavy yoke of record keeping and labeling mandates of 18 U.S.C. § 2257, 18 U.S.C. § 2257A and their implementing regulations in creating and publishing their expression–facing the threat of imprisonment if they stumble in fulfilling the

duties they impose. Indeed, 18 U.S.C. § 2257 (f)(1) and 18 U.S.C. § 2257A (f)(1) impose strict liability on anyone who fails to create and maintain the requisite records.

For the sake of brevity, the allegations regarding the statutes' effect on Plaintiffs' rights to free speech will not be recounted here with the specificity with which they are laid out in the Complaint. *Complaint,* ¶¶ 18-50. Those allegations demonstrate, as will Plaintiffs' testimony at evidentiary hearing, the following harms, among others, they have suffered: they have been forced to self-censor and to cease the production of as well as the dissemination of protected expression in the face of the statutory and regulatory record keeping demands (*Complaint,* ¶ 48, 50); they have incurred enormous administrative and economic expense in complying with those demands which has had the effect of diminishing the amount of speech they produce; *Id.* at ¶¶ 31,33; they have experienced a reduction in speech which they can disseminate as a result of the refusal by the subjects of their expression to produce the requisite photo identification; *Id.* at ¶¶ 38, 50; they have had their confidentiality and security threatened as a result of the invasion of privacy worked by the statutory demands; *Id.* at ¶¶ 27, 46; and they have suffered the stigmatizing effect of being required to affix a label to their artwork in conformance with the statutes' labeling requirements. *Id.* at ¶¶ 35, 40.

The expansive net cast over a wide and diverse body of important, protected expression by 18 U.S.C.§§ 2257 and 2257A cannot survive scrutiny under the First Amendment.

Additionally, the statutes and their implementing regulations violate the Fifth and Fourth Amendments.

## ARGUMENT

Each of the four factors warranting the grant of a preliminary injunction is present in the case at bar:

(1) ...the movant has shown a reasonable probability of success on the merits; (2) ... the movant will be irreparably harmed by denial of the relief; (3) ...granting preliminary

19

relief will not result in even greater harm to the nonmoving party; and (4) ...granting the preliminary relief will be in the public interest.

*American Civil Liberties Union v. Mukasey*, 322 F.3d 240, 250 (3rd Cir. 2003) *quoting Allegheny Energy v. DOE, Inc.*, 171 F.3d 153, 158 (3rd Cir. 1999) (citing *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc)).

Each of these factors shall be discussed below.

I.     **THERE IS A REASONABLE PROBABILITY THAT PLAINTIFFS WILL SUCCEED ON THEIR CLAIMS THAT 18 U.S.C. § 2257, 18 U.S.C. § 2257A, AND THEIR IMPLEMENTING REGULATIONS ARE UNCONSTITUTIONAL ON THEIR FACE AND AS APPLIED UNDER THE FIRST, FIFTH AND FOURTH AMENDMENTS.**

A.     TITLE 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A ARE UNCONSTITUTIONAL REGULATIONS OF SPEECH ON THEIR FACE AND AS APPLIED UNDER INTERMEDIATE SCRUTINY.

There is no dispute that the record keeping statutes regulate speech. Their provisions mandate certain record keeping and labeling requirements as conditions of publishing defined sexually explicit expression.

When a law regulates speech, the government bears the burden of demonstrating the regulation's constitutionality. *Sable Communication v. F.C.C.*, 429 U.S. 115, 126 (1989); *Denver Area Consortium v. F.C.C.*, 518 U.S. 727, 754-55 (1996); *Ward v. Rock Against Racism*, 491 U.S. 781, 789 (1989); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812-13 (2000); *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 660 (2004); *American Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3rd Cir. 2008).

If a law is content-based, then it must satisfy strict scrutiny, which requires that the regulation must be narrowly tailored to promote a compelling governmental interest and be the least restrictive means of accomplishing that interest. *Playboy Entertainment Group, Inc.*, 529 U.S. at 813. If, on

20

the other hand, a law is deemed to be content-neutral, its constitutionality depends on a showing by the government, under intermediate scrutiny, that it advances an important governmental interest, is narrowly tailored to serve that interest, does not burden substantially more speech than is necessary and leaves open ample alternative avenues of communication. *Ward*, 491 U.S. at 791.

Plaintiffs contend that 18 U.S.C. § 2257 and 18 U.S.C. § 2257A are content-based regulations of expression that should be evaluated under strict scrutiny. *See* pp. 31-35, *infra*. Nevertheless, even under intermediate scrutiny, the statutes are so overinclusive they cannot satisfy the demands of the First Amendment because they do not advance an important governmental interest, are not narrowly tailored and burden more speech than is necessary. *See Simon & Schuster v. Members of N.Y. Crime Victims Bd.*, 502 U.S. 105, 122, n. (1991).

1. **Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A Do Not Advance an Important Governmental Interest and Are Not Narrowly Tailored.**

The first step in assessing the constitutionality of a regulation of speech under intermediate scrutiny is determining whether it advances an important governmental interest. Here, the government claims that the laws were enacted to combat child pornography–or more precisely, to aid law enforcement in proving that a person depicted in a photo, video or other visual depiction is a minor–making the expression illegal–as opposed to an adult, making the expression constitutionally protected.

Plaintiffs do not dispute that combating child pornography is an important, indeed compelling, governmental interest. They are universally and unqualifiedly opposed to the exploitation and abuse that child pornography represents. But intermediate scrutiny requires more than just an evaluation of whether the regulation involves an important interest; it requires a showing that the regulation at issue **advances** that particular interest "in a direct and material way." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664 (1994); *United States v. Stevens*, 533 F.3d 218, 234-35 (3rd Cir. 2008)(*en banc*), *cert.*

*granted* __U.S.__, 129 S.Ct. 1984 (2009); *Center for Democracy & Technology v. Pappert*, 337 F.Supp.2d 606, 655 (E.D. Pa. 2004); *Playboy Entertainment Group, Inc.*, 30 F.Supp.2d 702, 715-16 (D. Del. 1998).

The question presented by this statutory scheme is whether the record keeping and labeling burdens that it imposes upon constitutionally protected expression depicting **adults** alleviates a problem in prosecuting child pornography. Plaintiffs maintain it does not.

The circumstance is akin to that presented in *Playboy Entertainment Group*. At issue there was a federal statute that prohibited the broadcast of sexually explicit adult expression during certain hours of the day if the broadcaster could not fully block or scramble the sexually explicit images in transmissions to homes that did not subscribe to such broadcasts. One of the justifications offered by the government in support of the statute was that it was necessary for the protection of children from viewing "signal bleed"–portions of a broadcast in which such images were visible because they were not fully scrambled or blocked.

There was no dispute that the protection of children from viewing sexually explicit images was a compelling governmental interest. Proof that signal bleed posed such a problem and that time restrictions were the least restrictive means of achieving that interest was another matter, however. The Court wrote:

> There is little hard evidence of how widespread or how serious the problem of signal bleed is. Indeed, there is no proof as to how likely any child is to view a discernible explicit image, and no proof of the duration of the bleed or the quality of the pictures or sound. To say that millions of children are subject to the risk of viewing signal bleed is one thing; to avoid articulating the true nature and extent of the risk is quite another....The First Amendment requires a more careful assessment and characterization of an evil in order to justify a regulation as sweeping as this.

529 U.S. at 819.

The Court also found that rather than mandating a time restriction on the broadcast limiting

22

adults access to this expression, parents could arrange to have such broadcasts blocked from their home by requesting and having their cable service install a blocking device at no charge—thus, securing the interest of protecting children without burdening expression for adults. This means of protecting children from signal bleed, the Court found, was less restrictive than the time limitation—thus rendering the time restrictions unconstitutional. *Id.* at 827.

The Third Circuit, *en banc*, reached a similar conclusion in determining that a federal statute prohibiting depictions of animal cruelty was unconstitutional because the government could not support its burden of showing that the statute was a "necessary or even effective means of prosecuting the underlying acts of animal cruelty." *Stevens*, 533 F.3d at 234-35.

And, this Court in *Center for Democracy & Technology*, found likewise in determining that a Pennsylvania statute also enacted to address child pornography could not survive scrutiny as a regulation of speech under the First Amendment. The statute required Internet Service Providers to remove or disable child pornography accessible through their respective services after notification by the Pennsylvania Attorney General. 337 F.Supp. 2d at 610. Failure to do so constituted a crime.

The problem was, in responding to statutory notification by the Attorney General, Internet Service Providers "overblocked"—disabling access to more than one million web sites containing fully protected constitutional expression. *Id.* at 611.

The court in a comprehensive and considered opinion determined that the statute was an unconstitutional regulation of expression—whether evaluated under strict or intermediate scrutiny. It found that the State's claim that the statute reduced the sexual exploitation and abuse of children was simply not supported by any evidence. *Id.* at 655. While it found that the statute blocked some access to child pornography, the court found that much of the material was available to Internet users by other methods. *Id.* Moreover, it found that the State had neither investigated the entities

producing and distributing the child pornography nor had any child pornographers been prosecuted as a result of the statute's enforcement. *Id.* It therefore concluded that the considerable burdens imposed on constitutionally protected speech could not withstand the First Amendment.

*Playboy Entertainment, Stevens* and *Center for Democracy & Technology* all reinforce the proposition that as a threshold issue in justifying a regulation of constitutionally protected expression involving adults, the government must establish the existence of a problem *posed by that expression and must establish that the regulation at issue alleviates that problem in a direct and material way.* The government cannot meet that dual burden in justifying 18 U.S.C. § 2257 and 18 U.S.C. § 2257A.

If the purpose of the statute is to combat child pornography, the government must demonstrate that applying record keeping and labeling requirements to that which is *not* child pornography furthers that goal. But as Judge Moore explained in her dissent in *Connection*:

> The regulation at issue in this case, § 2257, does not apply solely to child pornography. It applies to a class of materials much broader than those depicting what Congress ultimately seeks to prevent, and therefore does not seek to advance Congress's ultimate goal directly, or even as directly as § 2252's prohibitions on distribution, receipt, and possession of child pornography.

*Connection*, 557 F.3d at 363; *See also, Id.* at 355 (Kennedy, J.,dissenting).

If Congress's purpose in enacting the record keeping and labeling requirements was to provide law enforcement with a ready mechanism for distinguishing between youthful-looking adults and minors in visual sexually explicit images in response to the Meese Commission's concern regarding the adult film industry's trend toward using younger looking models, *Senate Hearing* at 38,[13] some proof of "the true nature and extent of the risk," *Playboy*, 529 U.S. at 819,was required. Simply positing the claim that the adult industry's trend was to use younger looking models did not establish

---

[13] *See* p. 5, *supra.*

that there was a problem with underage performers appearing in those films—[14] just as its claim that millions of children were at risk of being exposed to signal bleed could not suffice to justify the regulation at issue in *Playboy*. No evidence establishes that the use of under-age performers was or is a problem in the adult entertainment industry; to the contrary, the evidence is otherwise.

The Meese Commission as well as Congress heard evidence that "the bulk of child pornography traffic is non-commercial," that its production was "clandestine in character," that "traffic in child pornography went underground after 1978," and that the "sexual exploitation of children has retreated to the shadows." *Id.* at 604-09. *See also, Senate Hearing* at 110. It also established that producers and distributors of sexually explicit material in the adult industry had stated that they did not want to use underage performers in their expression. *Senate Hearing* at 402.[15]

Thus, the statutes as applied to this body of expression do not advance the prosecution of child pornography in any substantial or material way—for, there is no evidence that there is a problem with minors appearing in adult films, either advertently or inadvertently.

As for applying record keeping requirements to all sexually explicit expression to address

---

[14] In this regard, it is important to note that the government rests its thesis on evidence that is more than 20 years old and may no longer support the statute's design and purpose. *See Northwest Municipal Util. Dist. v. Holder,* _U.S._, 129 S.Ct. 2504, 2512 (2009); *Connection,* 557 F.3d at 354 ("This is a lot of weight to put on evidence from the 1980s (1986 and 1988 respectively....)(Kennedy, J., dissenting).

[15] Those representations have been borne out by experience. The one example cited of the adult industry's use of a minor in adult films is Traci Lords, who with her agent "perpetrated a massive fraud on...the adult entertainment industry...in...an artful, studied and well-documented charade whereby Lords successfully passed herself off as an adult." *United States v. United States District Court,* 858 F.2d 534, 536 (9th Cir. 1988). Adding to the irony is the fact that given Ms. Lords' elaborate fraud, the statute's record keeping provisions would not have prevented her appearance in adult films. There is no evidence that the adult industry has acted negligently—much less recklessly—in assuring that its performers are adults.

25

weaknesses and hurdles in the government's efforts in prosecuting child pornography in general, the statistics do not support that theory either. Justice Souter in dissent in *United States v. Williams*, _U.S.__; 128 S. Ct. 1830, 1857, n.4 (2008) described the state of federal prosecutions for child pornography offenses:

> According to the U.S. Department of Justice Bureau of Justice Statistics, in the 1,209 federal child pornography cases concluded in 2006, 95.1% of defendants were convicted. Bureau of Justice Statistics Bulletin, Federal Prosecution of Child Sex Exploitation Offenders, 2006, p. 6 (Dec.2007), online at http:// www. ojp. usdoj. gov/ bjs/ pub/ pdf/ fpcseo06.pdf (as visited May 8, 2008, and available in Clerk of Court's case file). By comparison, of the 161 child pornography cases concluded in 1996, 96.9% of defendants were convicted. *Ibid.* Of the 2006 cases, 92.2% ended with a plea. *Ibid.* The 4.9% of defendants not convicted in 2006 was made up of 4.5% whose charges were dismissed, and only 0.4% who were not convicted at trial. *Ibid.*

> Nor do the statistics suggest a crisis in the ability to prosecute. In 2,376 child pornography matters concluded by U.S. Attorneys in 2006, 58.5% of them were prosecuted, while 37.8% were declined for prosecution, and 3.7% were disposed by a U.S. magistrate. *Id.*, at 2. By comparison, the prosecution rate for all matters concluded by U.S. Attorneys in 2006 was 59%. *Ibid.* Nor did weak evidence make up a disproportionate part of declined prosecutions. Of the child pornography cases declined for prosecution, 24.3% presented problems of weak or inadmissible evidence; 22.7% were declined for lack of evidence of criminal intent; and in 18.7% the suspects were prosecuted on other charges. *Id.*, at 3.

*See also,* http://www.usdoj.gov/oig/reports/plus/e0107/results.htm (last visited October 5, 2009)(Review of Child Pornography and Obscenity Crimes Report Number I-2001-07 July 19, 2001: "In 89 percent of the cases, the defendants either pled guilty or were found guilty at trial. Of the remaining cases, approximately 8 percent were dismissed, 3 percent were terminated for other reasons, and 0.5 percent resulted in acquittals." Table 3.); http://www.gao.gov/new.items/d03272.pdf (last visited October 5, 2009) ("Combating Child Pornography" November 2002, data demonstrating growth in child pornography prosecutions between 1989 and 2002). Thus, federal prosecutions for child pornography offense have grown considerably as have the rates of conviction. *See* http://www.fbi.gov/publications/innocent.htm (last visited October 5, 2009) (pp. 4-5, reporting

26

"exponential increase" in online child pornography/child sexual exploitation prosecutions between 1996-2007: **2,062%** increase in cases opened; **1,404%** increase in convictions and pretrial diversions).

There is simply no support for the government's claim that the record keeping statutes are needed in prosecuting child pornography. To the contrary, Title 18 of the United States Code contains a spate of statutes with which law enforcement is armed for combating child pornography, and as the data show, have provided them with powerful ammunition in prosecuting offenders.[16]

There is little, if any, evidence suggesting that the record keeping statutes have been utilized as an aid to law enforcement in determining whether a young looking model is a child or an adult—no doubt, for the plain reason that those producing child pornography "in the shadows" are not realistically expected to maintain the requisite records establishing that their models are, in fact, children.

In short, the statutes' application to constitutionally protected expression depicting adults simply does not advance nor promote the government's efforts in prosecuting child pornography.

Nor, even if the government *could* demonstrate the existence of an actual problem with underage persons appearing in commercially produced adult films, does § 2257 address the problem in a narrowly tailored way. For if the problem sought to be addressed is assuring that the adult film industry uses only adults in its sexually explicit productions (again, a problem that the government

---

[16] *See,* § 2251, Sexual exploitation of children; § 2252, Certain activities relating to material involving the sexual exploitation of minors; § 2252A, Certain activities relating to material constituting or containing child pornography; § 2253, Criminal forfeiture; § 2254, Civil forfeiture; § 2255, Civil remedy for personal injuries; § 2258, Failure to report child abuse; § 2258A, Reporting requirements of electronic communication service providers and remote computing service providers; § 2258C. Use to combat child pornography of technical elements relating to images reported to the CyberTipline; § 2259, Mandatory restitution; § 2260. Production of sexually explicit depictions of a minor for importation into the United States; § 2260A. Penalties for registered sex offenders.

has not demonstrated actually exists) by requiring it to verify the ages of young-looking performers,[17] Congress itself demonstrated that the problem can be addressed by a more narrowly tailored remedy.

Title 18 U.S.C. § 2257A(h) allows commercial producers of simulated sexually explicit expression to satisfy that obligation by certifying to the Attorney General that they keep other records evidencing the models' ages–thereby assuring that the models are adults– without burdening them with the demands of the record keeping, labeling and inspection scheme.   And if the certification process is sufficient to address any problem of minors appearing in expression containing *simulated* sexually explicit conduct,[18] as Congress apparently found, then it should be perfectly adequate to address the same perceived problem with expression depicting *actual* sexually explicit conduct.

The statutes' application to constitutionally protected expression depicting adults does not advance the government's interest in combating child pornography.  Moreover, the statutes are not narrowly tailored to address any such problem.

### 2.   Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A Are Overinclusive and Burden More Speech Than Is Necessary.

In addition to showing that a regulation of speech is narrowly tailored to advance an important government interest, the government must also show that the regulation does not burden more speech than is necessary to satisfy intermediate scrutiny.

The government cannot make that showing here.

---

[17]   Judge Kennedy in her dissent in *Connection*, further explained her doubts about the constitutionality of the record keeping statutes' application to sexually explicit expression depicting young-looking adults under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), noting the Court's concern with "[p]rotected speech ... becom[ing] unprotected merely because it resembles" unprotected speech, *Free Speech Coalition*, 535 U.S. at 255." 557 F.3d at 355.

[18]   The Third Circuit's decision in *United States v. Knox*, 32 F.3d 733 (3rd Cir. 1994) makes clear that expression depicting *simulated* sexual conduct including non-nudity is on equal footing with expression that depicts actual sexual conduct in terms of the harm inflicted on its child subjects.

Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A, by their plain terms, apply to all visual depictions–both commercial and non-commercial–containing sexually explicit imagery. 18 U.S.C. § 2257 (a), (h); 18 U.S.C. § 2257A (a), (h). Their provisions extend far beyond the discrete problem Congress sought to address and impose their criminal record keeping and labeling requirements on *all* expression containing sexual imagery–no matter how fleeting, no matter how artistic or valuable as political commentary or journalistic documentary, no matter how clear it is that the persons depicted are middle-aged adults. The statutes are, therefore, woefully overinclusive. *Simon & Schuster*, 502 U.S. at 121.

The statutes bring within their sweep the important constitutionally protected expression of the Plaintiffs: the photography of the ASMP's members, and of Barbara Alper, Barbara Nitke, David Steinberg, and Dave Levingston; the educational and political materials of the Sinclair Institute, Betty Dodson and Carlin Ross, and Carol Queen; and the adult entertainment produced by the members of the Free Speech Coalition, Dave Conners, Nina Hartley, Channel 1 Releasing, and Tom Hymes.

The statutes also apply to a vast amount of protected *private* expression between adults: an army wife e-mailing a suggestive photo of herself to her husband stationed far from home, two adults "sexting" messages to one another on their cell phones, and adults privately exchanging sexually candid photos with one another on a social networking website, among others. *See Connection*, 557 F.3d at 338, 344, 370. Each of these messages triggers the record keeping and labeling requirements of the statute and subjects their producers to criminal sanction for non-compliance.

Yet none of the Plaintiffs has any interest in nor any propensity for producing child pornography.

The congregation of Plaintiffs here each has a story to tell about the anchors that the statutes

29