IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| Plaintiffs, | )<br>) Judge Michael M. Baylson<br>) |
| v. | )<br>) DEFENDANT'S REPLY IN SUPPORT |
| THE HONORABLE ERIC H. HOLDER, JR.,<br>  Attorney General, | ) OF MOTION TO DISMISS<br>) |
| Defendant. | )<br>) |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iv

INTRODUCTION .............................................................................................................1

ARGUMENT ....................................................................................................................4

I.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE
     AGE VERIFICATION AND RECORDKEEPING REQUIREMENTS
     VIOLATE THE FIRST AMENDMENT ................................................................4

     A.   The Requirements Are Facially Valid Under Intermediate Scrutiny .............4

          1.   The Government Has Presented a Sufficient Evidentiary
               Basis for Upholding the Requirements ...........................................5

          2.   The Requirements Qualify as Narrowly Tailored Because
               Their Effectiveness Would Be Impaired By Exceptions
               Made on a Subjective Basis .........................................................11

          3.   Plaintiffs Cannot Establish the Requirements' Facial Invalidity
               Based on the Contention that the Requirements Apply to
               Images Made Privately for Private Use ........................................14

     B.   Plaintiffs Fail to State an As-Applied Challenge, and Their Emphasis
          on the Chilling Effect of Criminal Penalties Is Relevant Only to
          Standing, Not to the Merits of Constitutional Validity .............................17

     C.   The Requirements Are Not Unconstitutionally Overbroad ........................20

     D.   The Requirements Are Properly Viewed As Content Neutral ...................21

     E.   The Requirements Do Not Unconstitutionally Restrict Anonymous
          Speech ....................................................................................................24

     F.   The Requirements Do Not Establish an Unconstitutional Prior
          Restraint ..................................................................................................26

     G.   The Requirements Cannot Be Held Facially Invalid on the Basis
          That They Impose Strict Liability ............................................................27

II.	PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE
	AGE VERIFICATION AND RECORDKEEPING REQUIREMENTS
	VIOLATE THE EQUAL PROTECTION CLAUSE ..........................................29

III.	PLAINTIFFS' FOURTH AMENDMENT CHALLENGE IS UNRIPE
	TO THE EXTENT IT RELIES ON THE IMAGINED APPLICATION
	OF THE RECORDS INSPECTION SCHEME TO SPECIFIC PLAINTIFFS
	AND FAILS TO STATE A PLAUSIBLE CLAIM THAT THE SCHEME
	 IS FACIALLY INVALID ................................................................................30

CONCLUSION ............................................................................................................38

## TABLE OF AUTHORITIES

**CASES**

Am.-Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600 (6th Cir. 2005) .........28

Am. Future Sys., Inc. v. Pa. State Univ., 752 F.2d 854 (3d Cir. 1984) .......................................12

Am. Library Ass'n v. Reno ("ALA III"),
    33 F.3d 78 (D.C. Cir. 1994) ...................................................................6, 7, 10, 12, 18, 25

Ankele v. Hambrick, 286 F. Supp. 2d 485 (E.D. Pa. 2003) ...........................................................4

Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002) ...................................................................21

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ............................................................................11, 25

Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963) .............................................................26, 27

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ..................................................................11

Brown v. City of Pittsburgh, 586 F.3d 263 (3d Cir. 2009)  ..............5, 9, 10, 11, 17, 19, 22, 23, 30

Cal. Bankers Ass'n v. Shultz, 416 U.S. 21 (1974) .......................................................................33

Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288 (1984) .................................................12

Connection Distrib. Co. v. Holder ("Connection III"), 557 F.3d 321 (6th Cir. 2009)
    (en banc), cert. denied, 77 U.S.L.W. 3658 (U.S.
        Oct. 5, 2009) (No. 08-1449) ......................6, 9, 10, 13, 14, 16, 20, 22, 24, 25, 25-26

D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256 (M.D. Pa. 1999) .....................................4

Florida Bar v. Went For It, Inc., 515 U.S. 618 (1995) ..................................................................7

Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46 (1989) .............................................................18

Free Speech Coal. v. Gonzales ("FSC I"),
    406 F. Supp. 2d 1196 (D. Colo. 2005) ...................................................6, 7, 8, 10, 21, 27

Freedman v. Maryland, 380 U.S. 51 (1965) ................................................................................26

Hill v. Colorado, 530 U.S. 703 (2000) ........................................................................................22

Lambert v. California, 355 U.S. 225 (1957) ......................................................................28

Langford v. City of Atlantic City, 235 F.3d 845 (3d Cir. 2000) ...................................11

Mangual v. Rotger-Sabat, 317 F.3d 45 (1st Cir. 2003) ..............................................18

Matthews v. Freedman, 128 F.R.D. 194 (E.D. Pa. 1989) ...........................................4

McGuire v. Reilly, 260 F.3d 36 (1st Cir. 2001) ..........................................................30

McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1995) ........................................26

Miller v. Skumanick, 605 F. Supp. 2d 643 (M.D. Pa. 2009) ......................................15

Minnesota v. Carter, 525 U.S. 83 (1998) ...................................................................34

Minnesota v. Olson, 495 U.S. 91 (1990) ....................................................................34

Morissette v. United States, 342 U.S. 246 (1952) ......................................................29

Nami v. Vauver, 82 F.3d 63 (3d Cir. 1996) ................................................................11

Nat'l Cable & Telecomm. Ass'n v. FCC, 555 F.3d 996 (D.C. Cir. 2009) ....................8

New York v. Burger, 482 U.S. 691 (1987) .............................................33, 35, 36, 37

New York v. Ferber, 458 U.S. 747 (1982) ..................................................................23

N.Y. State Liquor Auth. v. Bellanca, 452 U.S. 714 (1981) ......................................7, 8

Professional Dog Breeders Advisory Council, No. 09-0258, 2009 WL 2948527
    (M.D. Pa. Sept. 11, 2009) .................................................................................36, 37

Rakas v. Illinois, 439 U.S. 128 (1978) ......................................................................34

Sibron v. New York, 392 U.S. 40 (1968) ....................................................................31

Smith v. California, 361 U.S. 147 (1959) ...................................................................28

Staples v. United States, 511 U.S. 600 (1994) ..........................................................29

St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481 (8th Cir. 2006) ........18

The Nationalist Movement v. City of York, 481 F.3d 178 (3d Cir. 2007) ....................................18

Thomas v. Chicago Park Dist., 534 U.S. 316 (2002) ....................................26

Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180 (1997) ....................................7

United States v. Fumo,  565 F. Supp. 2d 638 (E.D. Pa. 2008) ....................................34

United States v. King, No. 09-1434, 2010 WL 438417 (3d Cir. Feb. 8, 2010) ..........................34

United States v. Leary, 846 F.2d 592 (10th Cir. 1988) ....................................35

United States v. Nat'l Treasury Employees Union ("NTEU"), 513 U.S. 454 (1995) ....................8

United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000) ....................................9

United States v. Pollard, 326 F.3d 397 (3d Cir. 2003) ....................................22

United States v. Sheehan, 512 F.3d 621 (D.C. Cir. 2008) ....................................29

United States v. Whitted, 541 F.3d 480 (3d Cir. 2008) ....................................34

United States v. Williams, 128 S. Ct. 1830 (2008) ....................................20

Ward v. Rock Against Racism, 491 U.S. 781 (1989) ....................................9, 11

Warshak v. United States, 532 F.3d 521 (6th Cir. 2008) (en banc) ....................................31

Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483 (1955) ....................................23

## STATUTES

18 U.S.C. § 2257 ....................................................................................................................passim

18 U.S.C. § 2257A ..................................................................................................................passim

## LEGISLATIVE MATERIALS

152 Cong. Rec. S8012-02, S8027 (daily ed. July 20, 2006) (statement of Sen. Leahy),
available at 2006 WL 2034118 ....................................30

## **REGULATIONS**

28 C.F.R. § 75.2 ................................................................................................31, 32

28 C.F.R. § 75.4 ....................................................................................................31

28 C.F.R. § 75.5 ..................................................................................31, 32, 35, 37

28 C.F.R. § 75.6 ....................................................................................................19

28 C.F.R. § 75.7....................................................................................................19

## **ADMINISTRATIVE MATERIALS**

Department of Justice ("DOJ"), Final Rule, 70 Fed. Reg. 29607 (May 24, 2005) .....14, 32, 33, 37

DOJ, Final Rule, 73 Fed. Reg. 77432 (Dec. 18, 2008) ....................................................14, 15, 16

## INTRODUCTION

In their opposition to defendant's Motion to Dismiss, plaintiffs continue to assert their claims under a multitude of constitutional theories, but their arguments fail to raise their claims to the plausible level necessary to survive a motion to dismiss.  In regard to their First Amendment claim, the requirements that producers of sexually-explicit visual materials verify the ages of their performers and maintain records documenting that these performers are adults and not children, as set forth in 18 U.S.C. §§ 2257 and 2257A and implementing regulations, do not, as a matter of law, place an impermissible restriction on protected speech, given the undeniably compelling interest in protecting children from exploitation as performers in images of sexual conduct, the fact that the requirements apply only to images that, if they were made using child performers, would be child pornography – a form of speech that receives no First Amendment protection at all – and the fact that producers remain free to create, publish, or distribute any images of adults engaged in sexual conduct as long as they adhere to the statutory and regulatory scheme designed to ensure that these performers *are* adults.

Rather than offering a plausible challenge to these requirements, plaintiffs primarily rely on the notion that the government must come forward with new evidence to support requirements that were enacted over two decades ago.  However, the necessary support for Congress' decision to take action to protect children from exploitation in the pornography industry is already in the record, which clearly indicates Congress' common sense conclusion that the undisputed demand for youthful-looking performers poses a risk that producers of sexually-explicit images may use underage performers in their films, photographs, and online publications.  Plaintiffs' facial First Amendment challenge offers nothing that would warrant imposing any further obligation on the

government to justify the age verification and recordkeeping requirements.  Indeed, three other jurisdictions have already rejected similar challenges to the very same regulatory scheme.

Moreover, plaintiffs' further argument that they should be given an opportunity to present evidence fails because they do not identify any framework under which such evidence could change the analysis.  Certainly, this is true for plaintiffs' facial challenge.  It is also the case for the individual plaintiffs' as-applied challenges because plaintiffs' Complaint does not set forth facts that, if true, would result in the invalidation of the requirements as applied to them.  The government has explained the need to apply the age verification and recordkeeping requirements universally – because allowing producers themselves to choose whether to follow the requirements on a subjective case-by-case basis would open the door to circumvention and error.  Plaintiffs, in turn, concede that the images they produce would qualify as child pornography if their performers were underage.  Plaintiffs have failed to set forth any viable justification for their exemption, or that of their members, from the requirement that they verify performers' ages and maintain appropriate records of having done so.

Plaintiffs rely on a provision of 18 U.S.C. § 2257A for many of their arguments, including their assertion that the recordkeeping requirements must satisfy strict, rather than intermediate, First Amendment scrutiny, and their claim that the requirements violate the Equal Protection Clause.  The provision in question, however, merely provides an option to producers of images of simulated sexually-explicit conduct and lascivious displays of genitals when these producers are already required to verify performers' ages under independently-applicable employment and FCC regulations, labor agreements, and industry standards – allowing such producers to certify that they comply with these other requirements rather than following the § 2257 age verification and

- 2 -

recordkeeping scheme.  18 U.S.C. § 2257A(h).  This subsection does not excuse any producer from the obligation to verify performers' ages, and cannot transform a content-neutral requirement into one that is content based.  The certification option merely reflects Congress' reasonable judgment that producers of other than "hard-core" pornography are more likely to be subject to other restrictions because their productions are more likely to be distributed through mainstream media channels.

Plaintiffs' pursuit of a Fourth Amendment challenge is also fruitless.  Plaintiffs invoke the circumstances of individual plaintiffs, such as the fact that some plaintiffs operate businesses out of their homes, as a means to overturn the records inspection scheme set forth in §§ 2257 and 2257A and implementing Department of Justice ("DOJ") regulations.  However, the statutory and regulatory scheme does not, on its face, contemplate government searches of individuals' homes.  Because plaintiffs do not claim that any inspection has yet occurred, they are limited to a facial Fourth Amendment challenge, and their imagined perception of how such inspections might be implemented in their individual circumstances cannot properly be part of the analysis.

On its face, the inspection scheme merely contemplates the inspection of the very records of age verification that producers are required to create and maintain under the other provisions of §§ 2257 and 2257A.  Plaintiffs cannot claim a reasonable expectation of privacy in these records.  Government  inspection of these records therefore does not qualify as a "search" subject to Fourth Amendment challenge.  Even if the inspection scheme is analyzed under the Fourth Amendment, the government's longstanding concern in this area, and the fact that the inspection scheme provides clear notice of random warrantless inspection of these records, suffice to qualify the scheme for the "administrative search" exception to the warrant requirement.  The details of

the scheme meet the requirements of a valid administrative search scheme, designed to further the government's substantial interest in ensuring that producers of sexually-explicit material verify that their performers are adults, and that their productions are not child pornography.  None of plaintiffs' constitutional claims warrant any further consideration, and this case should accordingly be dismissed.

## ARGUMENT[1]

### I.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE AGE VERIFICATION AND RECORDKEEPING REQUIREMENTS VIOLATE THE FIRST AMENDMENT

#### A.    The Requirements Are Facially Valid Under Intermediate Scrutiny

As explained in defendant's opening brief, the age verification and recordkeeping requirements set forth in 18 U.S.C. §§ 2257 and 2257A and the DOJ's implementing regulations comport with the First Amendment because they serve the important government interest in preventing the exploitation of children, they are narrowly tailored, and there are ample alternative channels of communication.  Def. Op. Br. at 17-31.  The arguments to the contrary in plaintiffs' opposition brief, while spanning several sections with separate headings, implicate only the second prong of the intermediate scrutiny analysis – whether the requirements are narrowly tailored.  It

---

[1]Plaintiffs do not respond to defendant's argument that the claims not addressed in their motion for preliminary injunction should also be dismissed.  See Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Defendant's Motion to Dismiss ("Def. Op. Br.") at 48-49.  These claims are therefore waived and should be dismissed on that basis.  Matthews v. Freedman, 128 F.R.D. 194, 199 (E.D. Pa. 1989); see also Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (plaintiff's failure to address one of defendant's arguments in summary judgment motion constituted waiver of opposition to summary judgment on that ground); D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (plaintiff's failure to address claim in opposition to defendants' motion to dismiss amounted to waiver of that claim); L.R. 7.1(c) (where a plaintiff fails to respond to a motion, the court may grant the motion as uncontested).

should be emphasized at the outset that a statute may be held facially invalid only if it "*cannot* be applied consistently with the Constitution." Brown v. City of Pittsburgh, 586 F.3d 263, 269 (3d Cir. 2009) (emphasis added) (internal quotation omitted).  In other words, plaintiff's facial challenge to the requirements at issue here may only succeed if the requirements are "unconstitutional in every conceivable application," or if they "prohibit such a broad range of protected conduct that [they are] constitutionally 'overbroad.'" Id. (internal quotation omitted). Despite the length of their discussion, plaintiffs fail to cast doubt on the facial validity of the requirements, and indeed, many of their assertions are either irrelevant to the intermediate scrutiny analysis or simply inaccurate.[2]

### 1.    The Government Has Presented a Sufficient Evidentiary Basis for Upholding the Requirements

In their opposition brief, plaintiffs repeatedly argue that the government must provide evidentiary support in order to justify Congressional restrictions on speech.  See, e.g., Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss and Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Pl. Opp.") at 3 (arguing that the government "must put on evidence establishing each component" of the First Amendment analysis); id. at 5-6 (arguing that the government must offer evidence that underage performers are used in the pornography industry).  Defendant does not dispute the government's burden to show that the age verification and recordkeeping requirements comport with the First Amendment.  However, defendant has already presented sufficient support for this purpose, consisting of (1) legislative history showing that Congress enacted these requirements in response

---

[2]Plaintiffs also assert an overbreadth challenge, which is addressed separately below.  See also Def. Op. Br. at 31-34.

to findings that the pornography industry favored younger-looking performers, which presented a risk that underage performers might be used, Def. Op. Br. at 3-7; (2) the "common sense conclusion" that the "extensive demand" for youthful performers in visual depictions of sexually-explicit conduct creates a "substantial risk that performers under the age of 18 will be used in such material," Free Speech Coal. v. Gonzales ("FSC I"), 406 F. Supp. 2d 1196, 1207 (D. Colo. 2005); see also Am. Library Ass'n v. Reno ("ALA III"), 33 F.3d 78, 88 (D.C. Cir. 1994) (concluding that "it seems obvious" that the requirements "advance the abatement of child pornography in fundamental ways"); and (3) the persuasive authority provided by the decisions of other courts upholding these requirements against First Amendment challenge, see FSC I, 406 F. Supp. 2d at 1207 (finding in 2005 that the existence of a "significant market for pornography involving young-looking performers" is "undisputed"); ALA III, 33 F.3d at 89-90 (citing the "fourteen months of investigations" conducted by the Commission on Pornography, which led to the original enactment); Connection Distrib. Co. v. Holder ("Connection III"), 557 F.3d 321, 337 (6th Cir. 2009) (en banc) (discussing legislative history and finding that "[n]othing in the record contradicts . . . the general notion that, when people buy or share pornography, they typically do so with respect to publications or movies involving the young"). Nothing more is required because the record that already exists provides ample support for the government's interest in imposing affirmative obligations on producers to ensure that performers in depictions of sexually-explicit conduct are adults rather than children.

In attempting to convince the Court that something more is needed, plaintiffs suggest that, if this case is allowed to proceed, they will "present evidence demonstrating" that "the inadvertent use of underage performers in adult productions" is "non-existent and has always been so." Pl.

- 6 -

Opp. at 6. Plaintiffs err, first of all, in contending that the government's concern is only with "inadvertent" use of children as performers; rather, the recordkeeping requirements are meant to ensure that children will not be used in such depictions at all, whether inadvertently or intentionally. See ALA III, 33 F.3d at 89 (recognizing that the requirements both "ensur[e] that honest but careless producers secure documentary evidence of a performer's age," and "deny[] unscrupulous producers the defense that they reasonably believed the performer to be of age"). Moreover, the notion that plaintiffs could possibly make an evidentiary showing that there is no risk that underage performers would ever be used in such material, given the recognized demand for youthful-looking performers, is implausible, at best.[3] The government is under no obligation to stand idly by, waiting until it can find examples where older-looking children have been used in visual depictions of sexually-explicit conduct, before it may act to prevent such abuse. Rather, the government may rely on common sense inferences based on what is generally known.

"'In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress.'" FSC I, 406 F. Supp. 2d at 1207 (quoting Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 195 (1997)). Even when applying strict scrutiny, restrictions may be justified "based solely on history, consensus, and simple common sense." Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995) (internal quotation omitted). Indeed, other courts, including the Supreme Court, have expressly credited legislative judgments based on common sense. In N.Y. State Liquor Auth. v. Bellanca, 452 U.S. 714 (1981), for example, the

---

[3]To the extent plaintiffs seek to rely on the allegation that there is only one "well-publicized instance of an underage performer appearing in an adult film," Pl. Opp. at 6, this allegation does not establish that no other such instances have ever occurred, nor that the risk identified by the government does not exist.

Supreme Court recognized a state legislature's authority to prohibit topless dancing in venues that serve alcohol based on its finding that "[c]ommon sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior."  Id. at 718.  Similarly, the D.C. Circuit recently concluded that the FCC did not need to prove that corporate partners of telecommunications companies had ever disclosed private customer information in order to prohibit these companies from disclosing this information to their partners in the first place.  Nat'l Cable & Telecomm. Ass'n v. FCC, 555 F.3d 996, 1001 (D.C. Cir. 2009).  Rather, the court recognized that "common sense supports the [FCC]'s determination that the risk of unauthorized disclosure of customer information increases with the number of entities possessing it."  Id.  Here, plaintiffs have not suggested that the market for youthful-looking performers in sexually-explicit depictions has in any way diminished, nor would such a suggestion be plausible.  Given this undeniable demand, the government may rely on the common sense conclusion that there is a significant risk that underage performers will be used in such depictions.  See FSC I, 406 F. Supp. 2d at 1207.[4]

---

[4]The inference, supported by common sense, that the demand for youthful performers creates a risk that underage children will be used to create pornographic images is far different from the speculative harm to "operational efficiency" that the Court held insufficient to justify a ban on honoraria for articles and speeches by federal employees in United States v. Nat'l Treasury Employees Union ("NTEU"), 513 U.S. 454 (1995), cited by plaintiffs, Pl. Opp. at 7.  In NTEU, the Court pointed out that the notion that the honoraria at issue could cause harm depended on the assumption that government employees would abuse their official position in connection with their receipt of honoraria for articles or talks on topics unrelated to their official duties, but that this assumption was undermined by the statute's exclusion of certain categories of performances from the restriction, and the "powerful and realistic presumption that the federal work force consists of dedicated and honorable civil servants."  Id. at 476.  The Court's holding in NTEU in no way controverts the validity of relying on common sense where, as here, common sense actually supports the government's position, and where no similar "powerful and realistic presumption" can overcome the risk that children may be subjected to exploitation and irreparable harm through their use as pornographic performers.

For their contrary view, plaintiffs continue to rely on United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000).  See Pl. Opp. at 5.  However, as defendant has already pointed out, the Court in Playboy Entm't was analyzing a content-based regulation under strict scrutiny. See Playboy Entm't, 529 U.S. at 816.  The evidentiary inquiry was expressly aimed at the "least restrictive means" requirement that applies in strict scrutiny cases, but does not apply in intermediate scrutiny cases such as this.  See id. (explaining that, in the strict scrutiny context, "[w]hen a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals").  Thus, as defendant has previously explained, Playboy Entm't is inapplicable.

Plaintiffs also suggest that the government has failed to show that the specific individuals and entities that have brought suit in this case are likely to use underage performers.  Pl. Opp. at 6.  However, the intermediate scrutiny analysis does not require the government to prove that every individual affected by a restriction is likely to cause harm if the restriction did not exist. Rather, the validity of a restriction "depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case."  Ward v. Rock Against Racism, 491 U.S. 781, 801 (1989); see also Brown, 586 F.3d at 280 n.17 (recognizing that the plaintiff's own "behavior is not the relevant benchmark for a generally applicable regulation").  As explained in defendant's opening brief, universal application of the age verification and recordkeeping requirements is necessary because allowing exceptions based on subjective judgments would undermine and allow circumvention of the entire scheme.  See Def. Op. Br. at 27-28; Connection III, 557 F.3d at 331-32 (recognizing that exceptions based on subjective determinations made by the regulated parties themselves would

- 9 -

undermine the requirements' purpose); <u>ALA III</u>, 33 F.3d at 90 ("The entire point of the Act is to

prevent subjective determinations of age by implementing a uniform procedure that applies to all

performers.").

Plaintiffs also cite <u>Brown</u> in support of the notion that the government has failed to meet

its burden, and that this Court cannot rely on the decisions of other jurisdictions.  Pl. Opp. at 15-

16.  However, contrary to plaintiffs' implication, there is no indication in <u>Brown</u> that the court

required any new evidence for purposes of its facial constitutional analysis of an ordinance that

established "buffer" and "bubble" zones restricting protest activities at the entrances of health care

facilities.  <u>Brown</u>, 586 F.3d at 271-80 & n.17.  Rather, the court relied largely on Supreme Court

opinions analyzing similar types of restrictions in other places, and simply compared the text of

the ordinance at issue with those restrictions.  <u>See id.</u>  Here, the D.C. and Sixth Circuits and the

District of Colorado have analyzed the exact same requirements that plaintiffs now challenge.

<u>Connection III</u>, 557 F.3d at 325-26 (recognizing that "the record-keeping and labeling

requirements . . . have not materially changed since 1988"); <u>ALA III</u>, 33 F.3d at 81-82; <u>FSC I</u>,

406 F. Supp. 2d at 1199, 1204-05.  While plaintiffs refer in vague and general terms to an

"expansion" of the requirements and to plaintiffs' "discrete and concrete claims" under the current

version of the statutes, they fail to specify how any subsequent statutory and regulatory

amendments affect the First Amendment analysis.  <u>See</u> Pl. Opp. at 15-16.  While this Court

undoubtedly has the authority to conduct its own review, the decisions of these other courts are

entitled to considerable persuasive weight.  Moreover, because plaintiffs have offered nothing new

in their First Amendment challenge, this Court may conclude, in light of the persuasive reasoning

of those decisions as well as applicable controlling authority, that plaintiffs fail to state a claim as a

matter of law.[5]

## 2. The Requirements Qualify as Narrowly Tailored Because Their Effectiveness Would Be Impaired By Exceptions Made on a Subjective Basis

To a large extent, the several variations of plaintiffs' argument that the requirements are not narrowly tailored can be rejected out of hand because they are based on an incorrect legal standard. Plaintiffs repeatedly insist that Congress' choice of means to ensure that producers of sexually-explicit images verify that their performers are adults is invalid because it is not "necessary." See, e.g., Pl. Opp. at 7 (misciting Brown for the proposition that a regulation must be "necessary"); id. at 17-19 (arguing that the requirements are "not necessary" in general or in specific contexts); cf. Def. Op. Br. at 26-27 n.13 (recognizing a similar error in plaintiffs' memorandum in support of their motion for preliminary injunction).

The Third Circuit's decision in Brown does not support plaintiffs' version of the standard. Rather, the court in Brown explains that a content-neutral regulation "may be sufficiently tailored even if it is not 'the least restrictive or least intrusive means of serving the government interests at stake.'" Brown, 586 F.3d at 277 (quoting Ward, 491 U.S. at 798). Thus, a regulation qualifies as narrowly tailored as long as it "'promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id. (quoting Ward, 491 U.S. at 799). In other

---

[5]Plaintiffs' discussion at the beginning of their brief of the standard of review is misleading to the extent it relies on the quote from Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000), which in turn quotes Nami v. Vauver, 82 F.3d 63, 65 (3d Cir. 1996). See Pl. Opp. at 3. These passages in Langford and Nami set forth the "no set of facts" standard of review, which the Supreme Court rejected in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63 (2007). There is no doubt that, under the current standard, a motion to dismiss for failure to state a claim should be granted where the facts set forth in a Complaint fail to give rise to a plausible claim to relief as a matter of law – regardless of a plaintiff's stated desire to present evidence. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

words, "the means chosen" need not be "necessary," in the sense that there can be no other way to achieve the same result (as in the "least restrictive means" standard that applies in the strict scrutiny analysis), but it must not impose burdens on speech that are "substantially broader than necessary" to serve the government's interest.  Id.; see also ALA III, 33 F.3d at 88 ("We conclude that a regulation will meet the Supreme Court's 'narrowly tailored' requirement if a substantial portion of the burden it imposes furthers the Government's interest, even though a less intrusive alternative might also exist."); Am. Future Sys., Inc. v. Pa. State Univ., 752 F.2d 854, 866 (3d Cir. 1984) (recognizing the Supreme Court has rejected the "'view that [a] challenged [content-neutral] regulation is unnecessary, and hence invalid, because there are less speech-restrictive alternatives that could have satisfied the Government interest'" (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 299 (1984))).

Here, as explained in defendant's opening brief, the age verification and recordkeeping requirements are narrowly tailored because they apply only to those depictions that, if they were made using underage performers, would qualify as child pornography.  See, e.g., Def. Op. Br. at 28 (observing that by arguing the requirements apply to them, plaintiffs necessarily concede that the images they produce would qualify as child pornography if they used performers who were not adults); see generally id. at 17-31.  The thrust of plaintiffs' challenge appears to be that the government should make exceptions for certain kinds of material that producers deem to have artistic or social value, or that the certification exception set forth in 18 U.S.C. § 2257A(h) should be extended beyond its current application to certain producers of depictions of simulated sexually-explicit conduct and lascivious displays.  However, neither of these contentions warrant the conclusion that the requirements are facially invalid.  In regard to the first point, defendant has

- 12 -

already explained that to allow exceptions based on a subjective assessment of an image's social or artistic "value" would be impracticable because it would allow widespread circumvention and defeat the purpose of the requirements.  Def. Op. Br. at 27-28.  In regard to the second point, because intermediate scrutiny does not require the government to choose the "least restrictive means" of accomplishing its objective, plaintiffs cannot defeat the requirements' validity simply by asserting that the pornography industry generally verifies performers' ages and that the certification option would be just as effective for them.  See Def. Op. Br. at 25-26.  Plaintiffs' contrary assertion is merely another attempt to superimpose the "least restrictive means" requirement of strict scrutiny onto the intermediate scrutiny framework.  Again, this effort should be rejected.

Plaintiffs thus miss the mark in contending that they can provide evidence that "commercial producers of adult films have always checked identification to verify that their performers are adults."  Pl. Opp. at 8.  But even if there were any standard under which such evidence might be relevant, plaintiffs are in no position to guarantee the conduct of all producers of images of sexually-explicit conduct, nor is the government required to rely on such assurances. Indeed, the Sixth Circuit has recognized that "delegating enforcement" of age requirements to producers themselves was a "problem[] [that] Congress permissibly sought to correct" through the universal age verification and recordkeeping requirements.  See Connection III, 557 F.3d at 331.

Plaintiffs' further argument, that the prospect of criminal sanction under state and federal law for child pornography violations provides sufficient incentive to producers to verify performers' ages, Pl. Opp. at 8, is essentially an extension of their point that producers will make

sure their performers are not underage even without age verification or recordkeeping requirements, and that the government therefore must rely on producers to carry out this function without establishing any scheme to ensure that they do so.  Again, this argument fails because the government may act to serve its compelling interest in preventing the exploitation of children as long as it does so in a way that does not burden substantially more speech than necessary.

> **3.  Plaintiffs Cannot Establish the Requirements' Facial Invalidity Based on the Contention that the Requirements Apply to Images Made Privately for Private Use**

As defendant has explained, the age verification and recordkeeping requirements apply to producers of visual depictions of sexually-explicit conduct for sale or trade.  Def. Op. Br. at 1, 26 n.12, 33-34.  The government has repeatedly confirmed its understanding that the requirements do not apply to purely private expression that is privately produced and exchanged between intimate associates.  Def. Op. Br. at 26 n. 12 (citing DOJ, Final Rule, 73 Fed. Reg. 77432, 77456 (Dec. 18, 2008); Connection III, 557 F.3d at 338-39); see also DOJ, Final Rule, 70 Fed. Reg. 29607, 29611 (May 24, 2005) (explaining that "only commercial transfers are covered and the hypothetical transfer that the commenter posits [of a videotape by mail from a husband to wife] would by the plain meaning of the rule never be covered").  Yet, despite the fact that none of the plaintiffs themselves claim to be private "producers" of this sort, plaintiffs devote over five pages of their opposition brief to the theory that the requirements actually do apply to purely private expression, and are facially invalid on that basis.  Pl. Opp. at 9-14.

Plaintiffs' attempt to erect the straw man threat of an intrusion on purely private expression not only ignores the government's longstanding position, but also relies on a misinterpretation of Department of Justice statements on this issue.  Specifically, plaintiffs assert

that the DOJ has been inconsistent in stating in its Preamble to the 2008 Final Rule that, on the one hand, the age verification and recordkeeping requirements are "limited to pornography intended for sale or trade," 73 Fed. Reg. at 77456, but that on the other hand, the requirements apply to those who post material on social networking websites or on YouTube, id. at 77437, 77439, 77461.  However, these two statements are not inconsistent.  Rather, those who publish visual depictions of sexually-explicit conduct online, with the apparent expectation and hope of attracting public attention and perhaps contact from those who view the images, are properly regarded as engaging in "trade" in some sense, and indeed it is possible that the public "sharing" of such imagery could be used to solicit advertising or business.[6]  In addition, such images "may feature not only [the person posting the image] but other people" as well.  See 73 Fed. Reg. at 77438.  Certainly, such public posting is distinct from purely private creation and sharing of sexually-explicit depictions among spouses or other intimate associates.

Moreover, even if online publication could in some instances reasonably be deemed a "private" activity rather than an activity for "sale or trade," applying the age verification requirements to such publications would not render the requirements "substantially broader than necessary."  Any attempt to distinguish among those who publish images on the internet based on whether they claim to have a commercial purpose would allow producers to circumvent requirements by asserting that their online publication of visual depictions of sexually-explicit conduct was not intended for commercial gain.  As noted above, other courts have recognized

---

[6]The notion that images themselves may be an item of trade is made clear in the recent case cited by plaintiffs, Miller v. Skumanick, 605 F. Supp. 2d 643 (M.D. Pa. 2009), which involved nude or semi-nude images of teenage female students, which "male students had been trading . . . over their cell phones."  Id. at 637.

that the requirements' universal application, regardless of the subjective appearance of a

performer, does not render them invalid because the universal application itself serves legitimate

purposes, such as preventing circumvention and avoiding error.  Connection III, 557 F.3d at 331-

32.  The universal application of these requirements to all online publications by those who meet

the definition of "producer" serves similar purposes, and does not prevent the requirements from

qualifying as narrowly tailored.  See 73 Fed. Reg. at 77461 (stating that, "[t]o the extent that the

final regulation does impose costs on small businesses [such as social networking site operators] .

. . , the [DOJ] believes that these costs are the irreducible minimum costs that Congress imposed"

in order to carry out the purpose of the age verification and recordkeeping requirements).

As noted, the DOJ has taken the position that the requirements do not apply to purely

private expression that is not published online, and that individuals need not adhere to the

requirements in connection with images of themselves privately shared between spouses and other

intimate associates.  However, even if the requirements generally extended to purely private

expression, the possibility of their application in that limited context does not justify overturning

the requirements on a facial challenge as "substantially" overinclusive.[7]  See Connection III, 557

F.3d at 339-40 (holding that the speculative possibility that the requirements might be enforced in

this context – despite the DOJ's contrary assertion – could not invalidate the requirements as

overbroad).  Thus, the requirements on their face are narrowly tailored and satisfy intermediate

scrutiny.

---

[7]As indicated in defendant's opening brief, plaintiffs do not appear to have standing to assert an as-applied challenge to the requirements on this basis.  See Def. Op. Br. at 26 n.12. Plaintiffs' opposition brief does not contend otherwise.

**B.      Plaintiffs Fail to State an As-Applied Challenge, and Their Emphasis on the Chilling Effect of Criminal Penalties Is Relevant Only to Standing, Not to the Merits of Constitutional Validity**

Plaintiffs purport to raise both facial and as-applied First Amendment challenges to the age verification and recordkeeping requirements.  However, their opposition brief makes no distinction between the two.  In order to raise an as-applied challenge, plaintiffs would have to explain why facts specific to their own situations make the requirements invalid as applied to them.  Cf. Brown, 586 F.3d at 289 (addressing the as-applied challenge in that case based on the nature of the specific clinic sites at issue, and a claim of selective enforcement).  Plaintiffs' Complaint is devoid of any facts that could support such an argument.  The government has explained why the requirements must apply universally to all visual depictions of sexually-explicit conduct that are produced for sale or trade.  The justification for the universal requirement is that allowing producers to pick and choose which images are subject to the requirements, based on their assessment of a specific performer's age or of a specific image's artistic or social value, would introduce potential for error and would allow widespread circumvention of the requirements, to the point that they may cease to serve their intended purpose.  Moreover, artistic or socially valuable depictions may qualify as child pornography if they are made using children.  Plaintiffs do not explain how this rationale is inapplicable in the context of their individual situations.  To the contrary, plaintiffs' assertion that they are subject to the requirements suggests that, if they were to use underage performers, the visual depictions that they produce would in fact qualify as child pornography, which is the very result that these requirements seek to avoid.

Rather than focusing on any analysis pertinent to the merits of an as-applied First Amendment challenge, plaintiffs limit their assertions to descriptions of the alleged impact the

requirements have had on their activities.  Specifically, plaintiffs contend that they have been chilled in their production of sexually-explicit images, and that they have been subject to financial or other burdens as a result of their compliance with the requirements.  See, e.g., Pl. Opp. at 20-23.  These effects are relevant to the question of whether the individual plaintiffs have standing to raise a pre-enforcement First Amendment challenge, since none of the plaintiffs allege that they have been threatened or charged with any violation of the requirements.  See The Nationalist Movement v. City of York, 481 F.3d 178, 182 (3d Cir. 2007) (recognizing that plaintiff had standing to assert facial challenge against "statutes which threaten to chill First Amendment speech"); St. Paul Area Chamber of Commerce v. Gaertner, 439 F.3d 481, 487 (8th Cir. 2006) (plaintiff has Article III standing to assert First Amendment challenge if he "must either make significant changes to [his] operations to obey the regulation, or risk a criminal enforcement action by disobeying the regulation," or if he "claims that the statute chills the exercising of its right to free expression" (internal quotation omitted)); Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (standing, in First Amendment context, requires either "a credible threat of prosecution" or an allegation that the plaintiff  "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences" (internal quotation omitted)).

However, plaintiffs fail to explain how any of these assertions are germane to the *merits* of their claim.  There is no absolute bar on laws that chill or burden expressive activity.  See ALA III, 33 F.3d at 87 (recognizing that the "'mere assertion of some possible self-censorship resulting from a statute is not enough to render [a] law unconstitutional'" (quoting Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 60 (1989))).  Instead, for content-neutral regulations subject to

intermediate scrutiny, a chill or burden is constitutionally permissible if the regulation serves an important government interest, is narrowly tailored, and leaves open alternative channels of communication.  Brown, 586 F.3d at 271.  Because plaintiffs fail to explain how the facts asserted in their Complaint relating to the specific circumstances of each plaintiff have any bearing on the intermediate scrutiny analysis, their claims are subject to dismissal for failure to state a claim.

Moreover, in regard to plaintiffs Nitke and Alper, plaintiffs continue to misconstrue the requirements.  See Pl. Opp. at 20-21.  As explained in defendant's opening brief, nothing in the statutes or regulations requires someone seeking to produce a compilation of images, some of which were created before the recordkeeping requirements went into effect, to go back and collect the necessary information to create records for those images.  See Def. Op. Br. at 30.  In their opposition brief, plaintiffs point to 28 C.F.R. § 75.7 as contradicting defendant's position.  Pl. Opp. at 21.  However, that regulation simply sets forth the circumstances under which a producer may indicate that a compilation is entirely exempt from recordkeeping requirements.  28 C.F.R. § 75.7(a)(1).  The exemption is only available where none of the individual images are subject to the requirements.  Thus, where the compilation contains some images that are subject to the requirements and some images that are not, the producer would not be able to indicate that the compilation as a whole was exempt, and would be required to affix a statement indicating the location of records for those images to which the recordkeeping requirements apply.  Cf. id. § 75.6(a).  Presumably, however, this would not present any greater burden than if the compilation were limited to images subject to the requirements.  These plaintiffs' assertion that they are "effectively prohibited from publishing compilations" that cover their entire professional careers thus cannot be credited.

## C.     The Requirements Are Not Unconstitutionally Overbroad

As discussed in defendant's opening brief, a plaintiff asserting that a statutory or regulatory requirement is unconstitutionally overbroad bears the burden of establishing that the requirement "'prohibits a substantial amount of protected speech.'"  See Def. Op. Br. at 31-32 (citing United States v. Williams, 128 S. Ct. 1830, 1838 (2008); Connection III, 557 F.3d at 340). The essence of an overbreadth challenge is that, even though a requirement may be valid in many of its applications, it may sweep so broadly that it affects a significant amount of speech to which the requirement cannot legitimately apply.  A statute's overbreadth must be "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." Williams, 128 S. Ct. at 1838.

Plaintiff's opposition brief fails to explain how the overbreadth doctrine could possibly apply here.  As defendant has previously described, the only images that are subject to the age verification and recordkeeping requirements are those that, if they depicted underage performers, would qualify as child pornography.  See Def. Op. Br. at 32-33.  Thus, the purpose of these requirements is served equally well across the entire spectrum of their application.  In each instance where the requirements apply, the government legitimately seeks to ensure that producers verify in advance that their performers are adults because, if they were not, the production at issue would exploit children and qualify as illegal child pornography.

Plaintiffs' proffered examples do not suggest that the requirements at issue are in any way overbroad.  For instance, plaintiffs suggest the same theory would justify placing a restriction on all newspaper articles based on the fact that, if an article contains a deliberately false, damaging statement it would qualify as unprotected libel.  Pl. Opp. at 26.  However, any such restriction

(assuming it were content-neutral) would have to serve an important government interest, be narrowly tailored, and leave alternative channels for communication available in order to survive intermediate scrutiny. Assuming it survived such scrutiny, there is no reason to assume that the restriction would be facially overbroad.

Plaintiffs' citation to <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234 (2002), is equally unavailing. That case involved a statute that placed a complete ban on images of virtual child pornography. <u>See id.</u> at 254-55. The Supreme Court rejected the government's arguments that a ban on virtual child porn would reduce the demand for pornography using real children, and that the prosecution of child pornography would be easier if the prosecutor did not have to prove that the performer in an image was an actual person, stating that "[t]he Government may not suppress lawful speech as the means to suppress unlawful speech." <u>See id.</u> Here, in contrast, the regulations do not ban any protected speech. <u>See FSC I</u>, 406 F. Supp. 2d at 1204-05 (recognizing the distinction between the law at issue in <u>Ashcroft</u> and the requirements at issue here). Moreover, the government has not established the age verification and recordkeeping requirements solely as a means of reducing demand for or facilitating the prosecution of illegal child pornography; rather, the government seeks to combat the exploitation of real children by ensuring that producers of sexually-explicit images do not use underage performers in the first place. Because the requirements apply only to images that, if they were created using underage performers, would qualify as child pornography, they are not overbroad.

### D.    The Requirements Are Properly Viewed As Content Neutral

Plaintiffs continue to argue that the age verification and recordkeeping requirements should be regarded as content-based regulations and should therefore be subjected to strict

scrutiny analysis.  However, as explained in defendant's opening brief, the requirements are intended primarily to protect children from exploitation, not to express disagreement with any message conveyed by affected producers.  See Def. Op. Br. at 13-16; Brown, 586 F.3d at 270 (recognizing that the "principal inquiry" is "'whether the government has adopted a regulation of speech because of disagreement with the message it conveys'" (quoting Hill v. Colorado, 530 U.S. 703, 719 (2000))).  They are therefore properly regarded as content neutral, as recognized by the Sixth Circuit.  See Connection III, 557 F.3d at 328-29.

In arguing to the contrary, plaintiffs primarily rely on the certification option that is available for producers of visual depictions of simulated sexually-explicit conduct and lascivious displays, but not other forms of actual sexually-explicit conduct, pursuant to 18 U.S.C. § 2257A(h).  But as defendant has previously explained, the certification option does not exempt producers of such material from verifying and keeping records of performers' ages; the option simply allows these producers to do so in a different way, based on Congress' reasonable assessment that such producers are more likely to operate within an industry already subject to tax and labor laws and FCC regulations that require age verification.  See 18 U.S.C. § 2257A(h)(A)(ii) (producer must certify that he "regularly and in the normal course of business collects and maintains individually identifiable information regarding all performers"); id. § 2257A(h)(B)(ii) (same).  The fact that Congress provided for a different mechanism to achieve the same end for such producers cannot transform a content-neutral regulation into one that is content based, any more than the fact that Congress did not extend the requirements to images of simulated sexually-explicit conduct at all until 2006.  Cf. United States v. Pollard, 326 F.3d 397, 409 n.12 (3d Cir. 2003) (recognizing that Congress "may attack a perceived problem in piece-

- 22 -

meal fashion" and in different ways "without running afoul of equal protection guarantees" (citing Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 489 (1955))).

Plaintiffs also misconstrue the Third Circuit's analysis in Brown, where the ordinance at issue excluded certain categories of individuals  – including police, firefighters, and volunteers helping women reach the entrances of medical facilities – from a "buffer zone" designed to keep protests from interfering with these women's ability to enter the facilities.  See Brown, 586 F.3d at 273-74.  The court concluded that the ordinance did not allow even these categories of individuals to demonstrate within the buffer zone, so the ordinance was content neutral.  Id. at 274.  It is true that the court suggested that the exception could have indicated a content-based restriction if construed otherwise – because volunteers helping women reach clinic entrances could be presumed to be "pro-choice," while the demonstrators restricted by the buffer zone were "anti-abortion."  See id.  Thus, an ordinance that allowed the former, but not the latter, to demonstrate within the buffer zone would express the government's disagreement with the message of anti-abortion protestors.  The certification option in § 2257A(h) is in no way analogous to such an exception, and does not demonstrate that the government adopted the age verification and recordkeeping requirements because it disagrees with the message conveyed by images of adults engaged in sexually-explicit conduct.

Plaintiffs' other arguments in favor of strict scrutiny rely on the notion that the requirements are content-based because of their connection to child pornography.  However, child pornography is not speech protected by the First Amendment.  New York v. Ferber, 458 U.S. 747, 764 (1982).  It therefore cannot qualify as "content" for purposes of deciding whether a speech restriction is content-based or content-neutral.  To conclude otherwise would lead to the

absurd result that measures aimed at preventing the exploitation of children in child pornography – such as the age verification and recordkeeping requirements at issue here – would be subject to strict scrutiny even though measures criminalizing child pornography itself do not implicate the First Amendment at all.  The Sixth Circuit's *en banc* majority in <u>Connection III</u>, 557 F.3d at 329, rejected such an untenable result, and its persuasive reasoning should be followed by this Court.[8]

### E.    The Requirements Do Not Unconstitutionally Restrict Anonymous Speech

Plaintiffs continue to press the argument that the age verification and recordkeeping requirements interfere with anonymous speech.  At the outset, it should be noted that plaintiffs themselves do not claim an interest in speaking anonymously; rather, they assert this interest on behalf of performers or potential performers in the photographs, films, and online material that they produce.[9]  <u>See</u> Pl. Opp. at 31.  Neither their opposition brief nor their Complaint identifies any individual who actually claims to view the requirements as interfering with his or her own anonymous speech.  Plaintiffs' expressed concern thus appears to be speculative, at best.  While plaintiffs suggest that they wish to present evidence of this burden at a hearing, they cannot use an evidentiary hearing to overcome defendant's motion to dismiss where their Complaint fails to

---

[8]Even if this Court were to apply strict scrutiny to the requirements, they should be upheld.  It is undisputed that the government's interest in preventing child exploitation is compelling.  In addition, as explained above, a fundamental aspect of the requirements is that they apply universally, rather than allowing producers themselves to decide whether compliance with the requirements is necessary in any particular case.  Any other approach would severely undermine the requirements' effectiveness by opening the door to widespread circumvention and evasion.

[9]Only plaintiffs Connors/Cummings, Queens, and Levine/Hartley assert that they are performers as well as producers.  <u>See</u> Comp. ¶¶ 25, 36, 45.  However, none of these plaintiffs assert that, if not for the age verification and recordkeeping requirements, their productions and their identity as performers would be anonymous.

assert facts that suggest a plausible concern on this point.  See Iqbal, 129 S. Ct. at 1949 (a claim must be "plausible on its face").

Plaintiffs suggest that the decision in Connection III supports their argument.  However, the Sixth Circuit in that case pointed out that the requirements would only allow the government – not the public at large – to view identifying information about performers.  Connection III, 557 F.3d at 330.  The court noted that, to the extent individuals object to their identities being known by the government, "they have no more to complain about than every taxpayer in the country," and that any suggestion that the government might use the information for some improper purpose was completely unsupported.  Id.  The court also observed that the individuals who submitted images to Connection for posting on its networking site were already required to disclose their identities to Connection.  Id.  Similarly here, plaintiffs insist that they already verify ages and identities of their performers.  E.g., Pl. Opp. at 18.  Even at the motion to dismiss stage, plaintiffs' argument can be rejected because plaintiffs fail to assert facts that could conceivably provide "a cognizably reasonable basis" for individuals to hide their identities from "law-enforcement officers for the limited purpose of confirming their age."  Connection III, 557 F.3d at 330; see also ALA III, 33 F.3d at 94 (rejecting the argument that the requirements would invade the privacy of performers when only the government and producers would be privy to performers' identifying information).

Moreover, although plaintiffs assert their argument regarding anonymous speech independently of their other First Amendment arguments, as if there is an absolute "right to anonymous speech," the impact of the requirements on anonymous speech should be considered within the context of the intermediate scrutiny analysis that applies in this case.  See Connection

- 25 -

III, 557 F.3d at 330; see also McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347 (1995)

(examining a restriction on anonymous publication of political pamphlets under a traditional strict

scrutiny framework because the regulation at issue there implicated "core political speech").  In

that context, the minimal burden that the requirements impose on anonymous speech does not

affect the conclusion that the requirements are narrowly tailored.  The requirements serve the

government's interest in ensuring that producers verify that performers in depictions of sexually-

explicit conduct are adults, and the government's access to identifying information about

performers is directly related to that interest.

### F.     The Requirements Do Not Establish an Unconstitutional Prior Restraint

As explained in defendant's opening brief, plaintiffs entirely misconstrue the prior restraint

doctrine when they argue that the age verification and recordkeeping requirements violate the

First Amendment on that basis.  See Def. Op. Br. at 36.  The doctrine only applies to prior

restraints that allow the government to pass judgment on the content of speech before the speech

occurs (or before it is published or distributed), and to prohibit or restrict expression based on this

content-based judgment.  The doctrine has most commonly been invoked in connection with

permit or licensing schemes when such schemes allow the government to deny permission to

engage in expressive activities based on subjective judgments regarding the content of the

proposed expression.  See Thomas v. Chicago Park Dist., 534 U.S. 316, 321 (2002) (describing

the facts at issue in Freedman v. Maryland, 380 U.S. 51 (1965), where a state Board of Censors

reviewed films before they were shown within the state and refused permission to show a film if it

was deemed unacceptable by the Board).  Similarly, in the single case cited by plaintiffs in this

section of their opposition brief, Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963), the

Supreme Court overturned a law that allowed a  Rhode Island Commission to Encourage

Morality in Youth to review books prior to their distribution in the state and to notify the local

distributor when it objected to a particular book's content, including in the Commission's notice a

reminder that the Commission had authority to provide the Attorney General with prosecution

recommendations for "purveyors of obscenity."  Id. at 62.  The Court concluded that because this

system led booksellers to recall and refuse to sell books deemed objectionable, it constituted a

prior restraint.  Id. at 70.

Nothing of the kind is at issue here.  Cf. FSC I, 406 F. Supp. 2d at 1204 (rejecting "prior

restraint" argument).  The age verification and recordkeeping requirements do not provide a

means for the government to review a particular film or photograph and withhold permission for

its publication or distribution based on a judgment regarding its content.  Indeed, rather than

contending that this situation is in any way similar to the facts of Bantam Books, plaintiffs simply

argue that *any* requirement imposed by the government as a condition of engaging in protected

speech qualifies as an unconstitutional prior restraint, even when it has nothing to do with the

speech's content.  Pl. Opp. at 33.  If that were so, of course, local governments could never

require permits as a condition of conducting a public demonstration, and the FCC would have no

authority to regulate telecommunications.  Plaintiffs misrepresent the law, and their argument on

this point should be rejected.

**G.      The Requirements Cannot Be Held Facially Invalid on the Basis That They
          Impose Strict Liability**

Plaintiffs attempt to overturn the age verification and recordkeeping requirements as

facially invalid under the First Amendment because, they allege, these requirements impose strict

liability on producers when either the producer or a third-party custodian fails to create or maintain the required records.  Pl. Opp. at 33.  As argued in defendants' opening brief, this attempt must also fail – primarily because none of the plaintiffs in this case has been charged with a violation of the requirements.

This defect becomes immediately apparent on review of the Supreme Court's decision in Lambert v. California, 355 U.S. 225 (1957).  The criminal defendant in Lambert had been charged and convicted of failing to comply with a state registration law for felons.  The Court held "that the registration provisions of the Code *as sought to be applied here* violate the Due Process requirement of the Fourteenth Amendment."  Id. at 227 (emphasis added).  Thus, Lambert's challenge to the law was as-applied, not facial, and his claim arose under the Due Process Clause, not under the First Amendment.  In Smith v. California, 361 U.S. 147 (1959), the other case on which plaintiffs rely, a First Amendment challenge was raised, but again only after the criminal defendant had been convicted under the law in question.  Id. at 148-50.

Plaintiffs have no ground to raise such an argument when none of them has ever been subject to sanction for failure to comply with the requirements, much less have they been sanctioned despite their alleged lack of knowledge or intent.  For one thing, there is no reason to assume that the government would enforce these requirements on a strict liability basis.[10]  Courts have recognized that because "[s]trict liability is generally disfavored in criminal law, particularly

---

[10]In contrast, in Am.-Arab Anti-Discrimination Comm. v. City of Dearborn, 418 F.3d 600 (6th Cir. 2005), the City had enforced a penalty for participation in a demonstration that had not received a City permit against individuals who did not know that no permit had been issued.  Id. at 603.  Only after it did so did the plaintiffs in that case bring a challenge to the ordinance.  Id. at 604.  The court determined that the ordinance was invalid because its imposition of strict liability on demonstration participants would have a tendency to chill public participation in any demonstration.  Id. at 612.

with respect to cases that implicate the First Amendment," the fact that the statutory text omits a mens rea requirement "'will not be construed as eliminating that element from the crimes denounced.'"  United States v. Sheehan, 512 F.3d 621, 629 (D.C. Cir. 2008) (quoting Morissette v. United States, 342 U.S. 246, 263 (1952)).  Rather, "'some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.'"  Id. (quoting Staples v. United States, 511 U.S. 600, 606 (1994)).  Plaintiffs have not pointed to any indication of such a congressional intent here.  It would violate principles of judicial restraint for the Court to assume a statute imposes strict liability, without any evidence that the government intended to enforce the statute in such a manner, and then to hold it unconstitutional on that basis.

Moreover, while plaintiffs suggest that "millions of Americans" would "be shocked" to learn that their expressive activities are subject to age verification and recordkeeping requirements, they do not explain how the expression of individuals who do not know about the requirements could be chilled as a result of the requirements' existence.  Nor do they explain how those who do know about the requirements are affected differently because the requirements supposedly impose strict liability.  Thus, it is entirely unclear how plaintiffs' characterization of the requirements as "strict liability" is relevant to their First Amendment claim, even if this characterization were accurate.  Plaintiffs again advance an argument that has little or no legitimate support, and that fails to state a viable claim that the requirements violate the First Amendment.

## II.   PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT THE AGE VERIFICATION AND RECORDKEEPING REQUIREMENTS VIOLATE THE EQUAL PROTECTION CLAUSE

Plaintiffs continue to assert a claim under the Equal Protection Clause, repeating their

assertion that the certification option in § 2257A(h) transforms the age verification and

recordkeeping requirements into content-based restrictions.  Pl. Opp. at 36-37.  This section of

their opposition brief offers nothing new in support of this contention, and defendant has already

addressed the same arguments above.  In sum, the requirements are, in fact, content neutral and

survive intermediate scrutiny under the First Amendment.  As a result, they "necessarily survive[]

scrutiny under the Equal Protection Clause."  Brown, 586 F.3d at 283 (internal quotation

omitted) (citing McGuire v. Reilly, 260 F.3d 36, 49-50 (1st Cir. 2001)).[11]

## III.   PLAINTIFFS' FOURTH AMENDMENT CHALLENGE IS UNRIPE TO THE EXTENT IT RELIES ON THE IMAGINED APPLICATION OF THE RECORDS INSPECTION SCHEME TO SPECIFIC PLAINTIFFS AND FAILS TO STATE A PLAUSIBLE CLAIM THAT THE SCHEME IS FACIALLY INVALID

Plaintiffs assert that their Fourth Amendment challenge is not premature because they face

a real and immediate threat of inspection under the scheme set forth in 18 U.S.C. §§ 2257 and

2257A and their implementing regulations.  The problem with plaintiffs' argument, however, is

that their Fourth Amendment challenge goes well beyond the actual scheme that is set forth in the

statutes and regulations and instead depends on their imagined view of how the government

---

[11]The Third Circuit also noted in Brown that, even if it were to conduct an independent analysis under the Equal Protection Clause, after upholding the same regulation under the First Amendment, it would apply rational basis scrutiny.  Brown, 586 F.3d at 293 n.22.  Here, the distinction that plaintiffs emphasize, between those producers that may utilize the certification option and those that may not, certainly survives rational basis review.  The distinction simply reflects Congress' reasonable judgment that depictions of simulated sex or lascivious displays are more likely to appear in mainstream media than depictions of actual sex, and that the production of such depictions is therefore more likely to be governed by other employment laws and FCC regulations.  See, e.g., 152 Cong. Rec. S8012-02, S8027 (daily ed. July 20, 2006) (statement of Sen. Leahy), available at 2006 WL 2034118 (recognizing that "the motion picture industry currently operates under a panoply of laws . . .  governing the employment of children in any production," according to which "[t]hey check work permits, require parents or guardians to be present at all times during production, and in some cases even obtain court approval for the employment of the children in films and television shows").

would implement and enforce the inspection scheme in the particular situations of some of their members, or of individuals not before the Court.

For example, a primary focus of plaintiffs' challenge is that the inspection scheme authorizes the government to conduct an intrusive warrantless search of individuals' homes. E.g., Pl. Opp. at 43 (arguing that the regulations "authorize entry 'without delay' into . . . homes"), 44 (arguing that the administrative search exception "has never been used to excuse a warrantless search of someone's home"). However, the regulations direct producers to keep their records "at the producer's place of business or at the place of business of a non-employee custodian of records." 28 C.F.R. § 75.4. Inspections of these records may occur only at those locations. See id. § 75.5(a) (indicating inspections may be conducted at "any establishment of a producer where records under § 75.2 are maintained"). The possibility that some producers of sexually-explicit material may choose to operate businesses out of their homes and to maintain records at their home-businesses has no bearing on whether the inspection scheme on its face comports with the Fourth Amendment. Rather, to the extent the specific nature of individual producers' business premises are relevant at all, they should await an actual inspection so that a Court may evaluate the reasonableness of the inspection under the totality of the circumstances. See Sibron v. New York, 392 U.S. 40, 59 (1968); Warshak v. United States, 532 F.3d 521, 528 (6th Cir. 2008) (en banc).

Similarly, nothing in the statutes or regulations suggests that inspectors would conduct a full-scale "search" of producers' business premises. Indeed, the regulations do not require producers to grant entry to their business premises at all if the records are maintained by a third-party custodian. 28 C.F.R. § 75.5(a). Even where records are kept at a producer's business

premises, the regulations require the inspector to notify a producer of "the limited nature of the records inspection," 28 C.F.R. § 75.5(c)(2)(ii), and inform the producer of "the records that he or she wishes to inspect," id. § 75.5(c)(2)(iii).[12]  Presumably, an inspector could conduct such an inspection in the entryway or waiting area of a producer's business.  Furthermore, the records created for purposes of complying with the age verification and recordkeeping requirements must be "segregated from all other records, shall not contain any other records, and shall not be contained within any other records."  Id. § 75.2(e).  The DOJ has explained that the segregation requirement was specifically designed to "streamline[] the inspection process" and to "protect[] producers from unbridled fishing expeditions."  70 Fed. Reg. at 29613.

In arguing that the inspection scheme goes beyond records, plaintiffs rely on 28 C.F.R. § 75.5(f) and (g).  See Pl. Opp. at 43.  However, the import of these subsections is simply that the establishment of a records inspection scheme does not change preexisting law enforcement authority:  Subsection (f) states that "[t]hese regulations do not restrict the otherwise lawful investigative prerogatives of an investigator while conducting an inspection."  28 C.F.R. § 75.5(f).  Subsection (g) indicates that, "[n]otwithstanding any provision of this part or any other regulation, a law enforcement officer may seize any evidence of the commission of any felony while conducting an inspection."  Id. § 75.5(g).  These provisions do not grant or expand search or seizure authority; instead, they indicate that the inspection scheme is not intended to reduce whatever authority an inspector might otherwise have.  There is no reason to assume, in a facial

_____

[12]The § 2257 inspection procedures posted on the FBI website, which plaintiffs cite, Pl. Opp. at 43, suggest that specific depictions of sexually-explicit material would be identified and reviewed in advance, and that "[t]he inspection is limited to the 2257 records pertaining to the reviewed materials."  FBI, 2257 Program - Verifying the Age of Performers in Sexually Explicit Matter, http://www.fbi.gov/hq/cid/cac/program2257.htm .

challenge, that an inspector would exercise "otherwise lawful investigative prerogatives" in an unreasonable or unconstitutional manner – or that an inspector would have occasion to exercise such prerogatives at all, in the vast majority of instances.  Any challenge that might arise from a future search or seizure that goes beyond the records inspection contemplated by the inspection scheme is premature, and should await an occasion where such a search or seizure actually occurs.  See, e.g., Cal. Bankers Ass'n v. Shultz, 416 U.S. 21, 55-57 (1974) (holding that, even though some aspects of plaintiffs' Fourth Amendment challenge to the Bank Secrets Act could be adjudicated, the ACLU's challenge based on the possibility that the law could be used to obtain the identities of its contributors was premature because the government had not sought to obtain such information).[13]

That leaves the facial challenge to the records inspection scheme itself.  However, as explained in defendant's opening brief, producers who are required to keep records demonstrating that they have verified the ages of performers in their depictions of sexually-explicit conduct have no reasonable expectation of privacy in the very records that they create in order to fulfill the statutory obligation.  See Def. Op. Br. at 44.  Plaintiffs offer nothing that indicates otherwise. The only privacy interest that plaintiffs invoke is that of the performers themselves.  See Pl. Opp. at 43-44 (arguing that the records contain personal information about performers and therefore "raise issues of privacy of the first order").  However, it is well established that Fourth Amendment rights are personal and cannot be asserted vicariously by a third party who himself

---

[13]The Supreme Court has held, furthermore, that an administrative scheme cannot be deemed "unconstitutional simply because, in the course of enforcing it, an inspecting officer may discover evidence of crimes, besides violations of the scheme itself."  New York v. Burger, 482 U.S. 691, 716 (1987); see also 70 Fed. Reg. at 29609 (recognizing that the "plain-view" doctrine would apply in this circumstance).

has no expectation of privacy at stake.  See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978);

United States v. Fumo,  565 F. Supp. 2d 638, 652 & n.8 (E.D. Pa. 2008); see also United States

v. Whitted, 541 F.3d 480, 488 (3d Cir. 2008) (recognizing that there can be an expectation of

privacy in some areas of a ship but not others, and concluding that a cruise ship passenger could

assert an expectation of privacy in his sleeping quarters).

Other than the interests of performers, plaintiffs offer nothing in support of any legitimate

expectation of privacy in these records.  Instead, plaintiffs suggest that the fact that the records

were created "solely to comply with the statutes" is "not an exception to the warrant or probable

cause requirements of the Fourth Amendment."  Pl. Opp. at 44.  In fact, however, the question of

whether a "search" or "seizure" has occurred is a threshold issue that determines whether the

Fourth Amendment is implicated in the first place, and there can be no "search" with respect to a

plaintiff unless the plaintiff has an expectation of privacy in the item in question (here, the age

verification records of performers in pornographic films and photographs).  United States v. King,

No. 09-1434, 2010 WL 438417, at *5 (3d Cir. Feb. 8, 2010) ("To establish standing, the party

contesting the legality of the search bears the threshold burden of establishing that he or she had a

reasonable expectation of privacy in the property searched and the item seized.") (citing

Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); Minnesota v. Carter, 525 U.S. 83 (1998)).

Plaintiffs have failed to rebut defendant's contention that, because the records inspection scheme

at issue here only contemplates the inspection of records that producers create especially for the

purpose of complying with statutory recordkeeping and inspection requirements, producers have

no reasonable expectation of privacy in these records, with respect to such inspections.

Moreover, the nature of the records – which merely contain identifying information about

performers in producers' films or photographs, including their ages – belies any such expectation. This is not a case involving business records that contain confidential, financial, or proprietary business information, where disclosure might conceivably subject a business to competitive injury, nor is there any suggestion that the records serve any business purpose other than to comply with the statutory and regulatory requirements.  Government inspection of these records simply does not implicate any reasonable expectation of privacy on the part of producers.[14]

Plaintiffs cite New York v. Burger, 482 U.S. 691 (1987), in support of the idea that government inspection of statutorily-required records implicates the Fourth Amendment. However, the inspection scheme for vehicle dismantlers at issue in that case went beyond records, to include "any vehicles or parts of vehicles which are subject to the record keeping requirements of [the statute in question] and which are on the premises."  Id. at 711-12 (quoting statute). Indeed, the plaintiff in Burger could not produce the "police book" that was required pursuant to statute, so the inspection that actually took place in that case did not involve records at all.  Id. at 694.  The Court did, however, consider the statutory obligation to maintain a "police book" as an indication that vehicle dismantling qualified as a "closely-regulated industry" for purposes of

---

[14]The list of cases cited by plaintiffs in their opposition brief are largely inapplicable because they do not concern government inspection of records that are statutorily required to be created and maintained for warrantless government inspection.  See Pl. Opp. at 41.  For example, United States v. Leary, 846 F.2d 592 (10th Cir. 1988), involved a challenge to a search warrant issued to search the business premises of an export company and seize a wide array of business records.  See id. at 594.  The court held that the company had an expectation of privacy in the records because the statutory scheme required a subpoena before records could be inspected or seized without a company's consent.  Id. at 597 ("Neither the export regulations nor the export statutes authorize a warrantless search and seizure of business records, yet the government would have us hold that the regulatory scheme negates the licensed exporter's right to challenge an invalid warrant." (citation omitted)).  Here, in contrast, the inspection scheme provides express notice that the age verification records are subject to warrantless inspection. 28 C.F.R. § 75.5.

evaluating the other aspects of the inspection scheme.  Id. at 704.

Here, if the Court disagrees with defendants and concludes that plaintiff's Fourth

Amendment challenge is ripe and that the Fourth Amendment is implicated by the inspection

scheme set forth in §§ 2257 and 2257A and implementing regulations, the Court should uphold

the inspection scheme as in accord with the administrative search exception to the warrant

requirement.  The government's longstanding concern with protecting children from exploitation

as performers in depictions of sexually-explicit conduct is manifested in the enactment of 18

U.S.C. §§ 2251 et seq. in 1978 and subsequent amendments, including the age verification and

recordkeeping requirements at issue here.  The latter requirements have existed, in some form,

since 1988.  See Pub. L. No. 100-690, § 7513(a), 102 Stat. 4487 (1988).  There can be no doubt

that producers of sexually-explicit materials have long been on notice that the government expects

them to ensure that their performers are adults, that such producers must verify performers' ages

and maintain records of having done so, and that these records are subject to warrantless

inspection.  The industry can therefore be considered "closely regulated."

The pornography or adult entertainment industry is similar, in this respect, not only to the

vehicle dismantling industry considered in Burger, but also to the dog breeding industry

considered in a recent case (cited by plaintiffs, Pl. Opp. at 44), Professional Dog Breeders

Advisory Council, No. 09-0258, 2009 WL 2948527 (M.D. Pa. Sept. 11, 2009).  There, the court

observed that "[i]n Pennsylvania, dog breeders have been on notice since 1982 that their

businesses are subject to random inspections," and that, therefore, "the kennel industry is a

pervasively regulated activity."  Id. at *9.  Courts thus commonly recognize that the fact that an

inspection scheme provides notice that random warrantless inspections may occur leads to the

- 36 -

conclusion that an industry is pervasively regulated, in regard to those inspections.

Moreover, the inspection scheme satisfies the <u>Burger</u> factors. <u>See</u> <u>Burger</u>, 482 U.S. at 702-03; <u>Professional Dog Breeders</u>, 2009 WL 2948527, at *9; Def. Op. Br. at 46-47. Undoubtedly, the inspections serve a "substantial government interest," because they ensure that producers do not use underage performers when producing depictions of sexually-explicit conduct. Warrantless inspections in the absence of advance notice prevent producers from falsifying records. <u>See</u> 70 Fed. Reg. at 29614. Finally, the inspection scheme sufficiently limits the scope of the inspections, restricting them to business hours and indicating they may normally occur only once every four months, and requiring that they be conducted without causing unreasonable disruption, and requires inspectors to explain to producers or their third-party custodians the nature of the inspection and to identify the records that they wish to inspect. <u>See</u> 28 C.F.R. § 75.5(c), (d). Indeed, the inspection scheme at issue here – which authorizes "entry" into business premises for the purpose of inspecting segregated records created specifically for the purpose of complying with the age verification requirements – is limited when compared to that described in <u>Professional Dog Breeders</u>, where inspectors were authorized to "inspect" all kennels and all dogs within the state, as well as required records. <u>See</u> <u>Professional Dog Breeders</u>, 2009 WL 2948527, at *10.

Thus, this Court should reject plaintiffs' Fourth Amendment claim as unripe. In the alternative, the Court should hold that the records inspection scheme does not implicate the Fourth Amendment. Even if the Court rejects both of those conclusions, it should uphold the inspection scheme as consistent with Fourth Amendment requirements.

- 37 -

## CONCLUSION

For the foregoing reasons and those set forth in defendant's opening brief, this case should be dismissed in its entirety.

February 22, 2010                                Respectfully submitted,

                                                 TONY WEST
                                                 Assistant Attorney General
                                                 MICHAEL L. LEVY
                                                 United States Attorney
                                                 VINCENT M. GARVEY
                                                 Deputy Branch Director

                                                 /s/ Kathryn L. Wyer
                                                 KATHRYN L. WYER
                                                 U.S. Department of Justice, Civil Division
                                                 20 Massachusetts Avenue, N.W.
                                                 Washington, DC 20530
                                                 Tel. (202) 616-8475 / Fax (202) 616-8470
                                                 kathryn.wyer@usdoj.gov
                                                 *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Reply has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.

Dated: February 22, 2010                         /s/
                                                 Kathryn L. Wyer