IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC., et al., | : | Civil Action No. 2:09-4607 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | JUDGE MICHAEL M. BAYLSON |
| | : | |
| THE HONORABLE ERIC H. HOLDER, JR., | : | |
| Attorney General, | : | |
| | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OF *AMICUS CURIAE*
<u>AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA</u>

Fred T. Magaziner (23332)
Kristina C. Evans (93265)
DECHERT LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104-2808
(215) 994-4000
(215) 994-2222 (Fax)
fred.magaziner@dechert.com
kristina.evans@dechert.com

Mary Catherine Roper (71107)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x116 (Telephone)
(215) 592-1343 (Fax)
mroper@aclupa.org

Attorneys for American Civil Liberties Union of
Pennsylvania, *Amicus Curiae*

I.      INTEREST OF AMICUS CURIAE .................................................................1

II.     INTRODUCTION ..........................................................................................1

III.    OVERVIEW OF THE STATUTE AND REGULATIONS .............................4

    A.    Pictures and Videos of Actual Sex .....................................................4

    B.    Pictures and Videos of Simulated Sex ...............................................4

    C.    Lascivious Exhibition of the Genitals or Pubic Area..........................5

    D.    Application to Photos and Videos That Are not Commercially
          Distributed.........................................................................................5

    E.    The Regulations and the Preamble .....................................................6

IV.     ARGUMENT .................................................................................................6

    A.    The Constitutionality of the Statute Must Be Determined on the Basis
          of the Statute Itself, not on the Basis of the DOJ's Regulatory
          Preamble .............................................................................................6

          1.    Introduction ..............................................................................6

          2.    The Plain Language of the Statute and Regulations Extends the
                Scope of the Statute Well Beyond "Pornography Intended for Sale
                or Trade." .................................................................................7

          3.    The Court Must Determine Whether the Statute Is Overbroad as
                Written, not as the Government Has Tried to Rewrite It...........8

          4.    The Preamble Itself Shows That the Statute Does not in Fact Apply
                Only to "Pornography Intended for Sale or Trade." ...............10

          5.    The Government's Intention not to Prosecute Individuals Engaging
                in Some Non-Commercial Uses Does not Save the Statute From its
                Overbreadth............................................................................11

    B.    The Statute Applies to Pictures and Videos Created by Millions of
          Ordinary Americans...........................................................................12

          1.    Pictures and Videos with a Sexual Purpose............................14

                a.  Couples filming themselves ...........................................14

                b.  Social networking pictures.............................................14

          2.    Photos and Videos with a Non-Sexual Purpose.......................15

                a.  Journalism .....................................................................16

                b.  Education and Therapy ..................................................17

                c.  Art .................................................................................18

    C.    The Statute Impinges on the Right to Speak Anonymously ...............19

    D.    The Statute Intrudes on the Private Intimate Conduct of Millions of
          Ordinary Americans...........................................................................21

E.      The Statute Is Neither the Least Restrictive Means of Protecting
        Children From Sexual Exploitation nor Even Narrowly Tailored to
        Serve the Government's Legitimate Interests ....................................................23

V.      CONCLUSION..........................................................................................................24

### TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU v. Mukasey,*
   534 F.3d 181 (3d Cir. 2008) ........................................................................3, 13

*Ashcroft v. Free Speech Coalition,*
   535 U.S. 234 (2002) ..............................................................................................3

*Bartnicki v. Vopper,*
   532 U.S. 514 (2001) ..............................................................................................2

*Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.,*
   467 U.S. 837 (1984) ..............................................................................................9

*Citizens United v. Fed. Elec. Comm'n,*
   558 U.S. _____, slip op. (2010) ....................................................................3, 8, 9

*Cohen v. California,*
   403 U.S. 15 (1971) ................................................................................................2

*Conchatta, Inc. v. Miller,*
   458 F.3d 258 (3d Cir. 2006) ...............................................................................12

*Connection Distributing Co. v. Holder,*
   557 F.3d 321 (6th Cir. 2009) ........................................................................23, 24

*Eisenstadt v. Baird,*
   405 U.S. 438 (1972) ............................................................................................22

*Joseph Burstyn, Inc. v. Wilson,*
   343 U.S. 495 (1952) ..............................................................................................2

*Lamont v. Postmaster General,*
   381 U.S. 301 (1965) ........................................................................................2, 13

*Lawrence v. Texas,*
   539 U.S. 558 (2003) ......................................................................1, 12, 21, 22, 23

*Miller v. California,*
   413 U.S. 15 (1973) ........................................................................................16, 19

*Planned Parenthood of Southeastern Pa. v. Casey,*
   505 U.S. 833 (1992) ............................................................................................22

*Procunier v. Martinez,*
    416 U.S. 396 (1974) ..................................................................................... 2, 3

*Reliable Consultants, Inc. v. Earle,*
    517 F.3d 738 (5th Cir. 2008) ............................................................................. 22

*Roth v. U.S.,*
    354 U.S. 476 (1957) ........................................................................................ 16

*Sec. Indus. Assoc. v. Bd. of Governors of the Fed. Res. Sys.,*
    468 U.S. 137 (1984) .......................................................................................... 9

*Simon & Schuster v. Crime Victims Bd.,*
    502 U.S. 105 (1991) .......................................................................................... 2

*Stanford v. Texas,*
    379 U.S. 476 (1965) .......................................................................................... 3

*Stanley v. Georgia,*
    394 U.S. 557 (1969) ............................................................................... 3, 13, 22

*Stewart v. Washington,*
    301 F. Supp. 610 (D.D.C. 1969) ........................................................................ 9

*Thomas v. Collins,*
    323 U.S. 516 (1945) .......................................................................................... 3

*Triplett Grille, Inc. v. City of Akron,*
    40 F.3d 129 (6th Cir. 1994) ............................................................................. 16

*U.S. v. Brown,*
    381 U.S. 437 (1965) ........................................................................................ 22

*U.S. v. Playboy Entertainment Group, Inc.,*
    529 U.S. 803 (2000) .......................................................................................... 3

*U.S. v. Villard,*
    885 F.2d 117 (3d Cir. 1989) ....................................................................... 15, 16

*U.S. v. Walter Dunlap & Sons, Inc.,*
    800 F.2d 1232 (3d Cir.1986) ............................................................................. 9

*Virginia Phamaracy Bd. v. Virginia Citizens Consumer Council,*
    425 U.S. 748 (1976) ........................................................................................ 13

*Watchtower Bible and Tract Soc. of N.Y., Inc. v. Village of Stratton,*
    536 U.S. 150 (2002) ............................................................................... 2, 19, 20

*Wyeth v. Levine*,
129 S. Ct. 1187 (2009) ................................................................. 10

**STATUTES**

18 U.S.C. § 2256 ................................................................ passim

18 U.S.C. § 2257 ................................................................ passim

18 U.S.C. § 2257A ............................................................. passim

**REGULATIONS**

73 Fed. Reg. 77432 ........................................................... passim

28 C.F.R. § 75.5(c) ...................................................................... 4

**OTHER AUTHORITIES**

*Declaration of Independence* [¶ 2] (1776) ................................... 2

History of Art: Erotica in Art, *available at* http://www.all-
art.org/er_in_art/001contents.html ........................................... 18

Kinsey Institute – About the Institute, *available at* http://www.kinseyinstitute.org/about/
(last visited Feb. 25, 2010) ...................................................... 17

Kinsey Institute – Library and Special Collections: Photography, *available at*
http://www.kinseyinstitute.org/library/photog.html (last visited Feb. 25, 2010) ............. 17, 18

*Older People Are Now Sexting Each Other*, New York Magazine, Feb. 2, 2010,
http://nymag.com/daily/intel/2010/02/senior_citizens_are_sexting_ea.html ..................... 14

Seth F. Kreimer, *Pervasive Image Capture and the First Amendment: Memory,
Discourse, and the Right to Record*, Univ. of Penn Law School, Public Law Research
Paper No. 10-06, at 6-11 (February 15, 2010), *available at* SSRN:
http://ssrn.com/abstract=1553920 ............................................. 14

*Sexually Transmitted Diseases Prevention*, American Academy of Pediatrics, available at
http://www.healthychildren.org/English/health-
issues/conditions/prevention/pages/Sexually-Transmitted-Diseases-Prevention.aspx
(last visited Mar. 2, 2010) ....................................................... 17

*The State of Sex*, Esquire, Feb. 20, 2007,
http://www.esquire.com/women/sex/ESQ0207stateofsex ........................... 14

Timothy Buzzell, *Demographic characteristics of persons using pornography in three
technological contexts*, Sexuality & Culture, Winter 2005, Vol. 9, Issue 1, 28 (2005) .......... 13

## I.     INTEREST OF *AMICUS CURIAE*

The American Civil Liberties Union (ACLU) is a nationwide, non-partisan organization dedicated to defending and preserving the principles embodied in the Bill of Rights. The ACLU of Pennsylvania is a state affiliate of the ACLU. Since its founding over 85 years ago, the ACLU has been involved in many of the leading First Amendment cases, and has often appeared before this Court, both as direct counsel and as *amicus curiae*.

The ACLU is filing this amicus brief to protect the rights of the millions of ordinary Americans whose expression and communications – sexual and non-sexual – put them at risk of criminal liability under 18 U.S.C. §§ 2256, 2257 and 2257A ("the Statute").

## II.    INTRODUCTION

The ACLU urges the Court to declare the Statute unconstitutional and to enjoin its enforcement.

The ACLU agrees with the Department of Justice that "[p]rotecting children from sexual exploitation is one of government's most important responsibilities." *See* 73 Fed. Reg. 77432, 77432. The Statute is written so broadly, however, that it deprives millions of *adults* of the "substantial protection" that they are entitled to enjoy "in deciding how to conduct their private lives in matters pertaining to sex," *Lawrence v. Texas*, 539 U.S. 558, 572 (2003), penalizing expression and conduct that has nothing at all to do with preventing the sexual exploitation of children.

The Statute directly burdens *adult* sexual expression that is indisputably lawful. The Statute burdens both commercial expression and, of particular importance to the ACLU, non-commercial expression. The Statute infringes the rights of both those who wish to take

pictures or make videos of actual or simulated *adult* sexual conduct and those who wish to look at such pictures and videos. The Statute unlawfully burdens expressions that are created or viewed for sexual enjoyment as well as expressions created for purposes of art, education or therapy. The Statute not only burdens lawful expression but also inhibits the right of adults to engage in the intimate conduct itself.[1]

The Attorney General and a majority of Congress (and for that matter, many Courts) may be offended by visual depictions of genitals, or of adults engaging in actual or simulated sex, but the millions of adult Americans whose "pursuit of Happiness"[2] includes the creation or viewing of such photos or videos are no less entitled to be left alone by the government than those who wish to distribute religious pamphlets anonymously, *see Watchtower Bible and Tract Soc. of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002); to hold private conversations without government surveillance, *see Bartnicki v. Vopper*, 532 U.S. 514, 533 (2001); to publish books recounting their criminal activity, *see Simon & Schuster v. Crime Victims Bd.*, 502 U.S. 105 (1991); to wear jackets displaying the words "Fuck the draft," *see Cohen v. California*, 403 U.S. 15 (1971); to receive "communist political propaganda," *see Lamont v. Postmaster General*, 381 U.S. 301 (1965), or to show "sacrilegious" films, *see Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952). The courts have recognized the rights to correspond with intimate partners verbally, *see Procunier v. Martinez*, 416 U.S. 396, 409 (1974) ("The wife of a prison inmate who is not permitted to read all that her husband wanted to say to

---

[1] For instance, to the extent that the act of photographing or videotaping intimate conduct is a part of the sexual conduct itself, the Statute actively chills such intimate acts. *See* Section IV.D., *infra*.

[2] *Declaration of Independence* [¶ 2] (1776).

2

her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him."),[3] to view other sexualized speech available on film, cable television or the internet, *see Stanley v. Georgia*, 394 U.S. 557 (1969) (film); *U.S. v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) (cable television); *ACLU v. Mukasey*, 534 F.3d 181 (3d Cir. 2008) (internet); and even to create pornographic materials depicting digital renderings of children, *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002).

Even though Congress might disapprove of those who take pictures of their partners' genitalia, Congress cannot require them to keep photo IDs on file for government inspection, any more than Congress can require those who demonstrate for disfavored causes to register with the government. *See Thomas v. Collins*, 323 U.S. 516, 539-40 (1945) (holding that a requirement that a speaker register before making a public speech on a lawful subject "is quite incompatible with the requirements of the First Amendment"); *Citizens United v. Fed. Elec. Comm'n*, 558 U.S. ____, slip op. at 24 (2010) ("Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints . . . The First Amendment protects speech and speaker, and the ideas that flow from each.").

The ACLU joins plaintiffs' thorough discussion as to why strict scrutiny applies to these content-based restrictions and therefore will not address that issue here. The purpose of this brief is to expose how the Statute affects the lives of the millions of adult Americans who create or enjoy sexual images as part of intimacy, in communicating with others, to celebrate

---

[3] *Cf. Stanford v. Texas*, 379 U.S. 476, 485 (1965) (holding that seizure of books and private correspondence is subject to stringent review rooted in First Amendment protection).

beauty, or for a host of other reasons.  The burdens that the Statute places on these expressions

are not narrowly tailored to prevent child pornography.

## III.   OVERVIEW OF THE STATUTE AND REGULATIONS

Plaintiffs' memoranda describe the Statute in some detail.  Set out below is an

overview of the parts of the Statute that are particularly pertinent to the ACLU's concerns.

### A.   Pictures and Videos of Actual Sex

Section 2257 makes it a crime, punishable by as much as five years in prison and

a $25,000 fine, (a) for anyone to create a visual depiction – a photograph, film, video, painting,

drawing, etc. – of "actual sexually explicit conduct" without obtaining a copy of a government-

issued photo ID from each person who is depicted; (b) for anyone who creates such a depiction

to fail to keep copies of those photo IDs on file and available for government inspection at least

20 hours per week;[4] (c) for anyone to create such a depiction without imprinting it with a label

stating the location of the files where the photo IDs are kept; or (d) for anyone to sell "or

otherwise transfer" any such depictions that are not so labeled.

### B.   Pictures and Videos of Simulated Sex

Section 2257A imposes the same onerous recordkeeping, labeling, and inspection

burdens on those who make **non**-commercial photos and videos of "simulated sexually explicit

conduct," *e.g.,* private individuals who create photos or videos of simulated sexual conduct for

their own use.  However, section 2257A grants a free pass for ***commercially*** distributed

---

[4]    In fact, producers of such expression who do not keep regular business hours must send
notice to the government identifying the hours that the records will be available for
inspection which, as noted above, must be at least 20 hours per week.  *See* 28 C.F.R. §
75.5(c).

depictions of simulated sex, *e.g.*, mainstream Hollywood "R" rated movies with sex scenes.

Producers of commercial films with simulated sex scenes need only certify that in the normal

course of their business, they collect ID information for tax and labor law purposes. *See* 18

U.S.C. § 2257(A)(h)(1).

## C.     Lascivious Exhibition of the Genitals or Pubic Area

By cross-reference to 18 U.S.C. § 2256(2)(A)(v), section 2257 imposes the

recordkeeping/labeling/inspection regime on those who take photos or make videos that include

a "lascivious exhibition of the genitals or pubic area," but section 2257A again gives a free pass

to those who create such pictures or films for **commercial** distribution.  Hence, the publisher of

an adult magazine need not comply with section 2257 when taking a photo that includes a

lascivious display of a woman's genitals, but a husband who takes an identical photo of his own

wife must maintain a file with a copy of her driver's license, designate 20 hours per week when

the government can inspect the records, send the government notice of the designated hours, and

label the photo in accordance with section 2257.

## D.     Application to Photos and Videos That Are not Commercially Distributed

Both sections 2257 and 2257A apply the recordkeeping requirements to all

pictures and videos that are "shipped or transported or intended for shipment or transportation in

interstate or foreign commerce," 18 U.S.C. § 2257(a)(2), *e.g.*, all commercially distributed adult

entertainment.  But the Statute goes further.  The Statute also applies to all pictures and videos

that are "produced in whole or in part with materials which have been mailed or shipped in

interstate or foreign commerce." *See id.*  Since every camera and camcorder has been shipped in

interstate or foreign commerce, the Statute thus applies to all privately made photos and videos,

5

even if they are never distributed to anyone. Thus, if an adult woman uses a Sony camcorder to make a sexy video of her adult boyfriend and the video never leaves their home, that video still falls squarely within the Statute.

### E.     The Regulations and the Preamble

The Department of Justice has promulgated lengthy regulations, including a preamble stating that the Statute is "limited to pornography intended for sale or trade." *See* 73 Fed. Reg. at 77456. As shown below, however, the language of the Statute itself, as well as other parts of the preamble and the regulations, make clear that the Statute is not so limited.

## IV.   ARGUMENT

### A.     The Constitutionality of the Statute Must Be Determined on the Basis of the Statute Itself, not on the Basis of the DOJ's Regulatory Preamble.

#### 1.     Introduction

The Government states that:

> The Department of Justice – the agency responsible for administering and enforcing the [Statute] – has clearly stated that the [Statute is] "limited to pornography intended for sale or trade," explaining that §2257 "speaks in terms of participants in the professional pornography industry."

Gov't Mem. at 34 (internal citation omitted). The Government cannot stave off a challenge to an overbroad statute, however, by issuing regulations that purport to narrow its scope. The Statute and Regulations apply on their face to pictures, videos and films that are **not** intended for commercial distribution, and the constitutionality of the Statute must be determined on the basis of what the Statute actually says, not what the DOJ might wish it said. Moreover, other parts of the DOJ's own regulatory preamble are not consistent with the DOJ's assurance that the Statute applies only "to pornography intended for sale or trade," as the DOJ specifically includes as

6

covered by the Statute such non-commercial transmissions as posting photos on a social

networking website or videos on a tube site.[5]

Lastly, even if the DOJ intends to prosecute only those producers who create

"pornography intended for sale or trade," such a prosecutorial policy cannot save the Statute

from being invalidated, particularly in light of the DOJ's express statement that the Statute

applies to social networking sites.

>   **2.**     **The Plain Language of the Statute and Regulations Extends the Scope
>              of the Statute Well Beyond "Pornography Intended for Sale or
>              Trade."**

Although it would have been easy enough to write the Statute to apply only to

"pornography that is intended for sale or trade," that is not how Congress wrote it.  The Statute

applies to "*whoever* produces any . . . videotape . . . or picture . . . [using] in whole or in part

materials which have been shipped in interstate or foreign commerce" (emphasis added), not just

to those who produce such depictions for commercial distribution.  Other provisions of the

Statute are also written without any limiting language, but rather with extremely broad language,

nearly unlimited in scope.  Sections 2257 and 2257A apply to anyone who creates "any book,

magazine, periodical, film, videotape, digital image, digitally- or computer-manipulated image of

an actual human being, picture, or other matter" that contains one or more depictions of actual or

simulated sexual conduct, thus applying to every imaginable type of visual depiction, from

videos to photographs and even to simple drawings.  *See* 18 U.S.C. §§ 2257(a); 2257A(a).

---

[5]     Tube sites, like www.youtube.com, allow internet users to easily upload videos to share
        with friends and other internet users.

Moreover, not only the original creators of the depictions are covered, but so are all those who reissue, digitize, or upload such images. *See* 18 U.S.C. § 2257(h)(2).

In addition to the unlimited breadth of the language, the Statute contains provisions that would make no sense at all if the Statute were truly limited to "pornography intended for sale or trade." If the Statute were so limited, there would be no need for the provision that applies it not only to pictures and videos that are "shipped or transported or [are] intended for shipment or transportation in interstate or foreign commerce," but also to those that are "produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce," *see* 18 U.S.C. §§ 2257(a)(2); 2257A(a)(2), *i.e.,* with any camera or camcorder that any private individual could possibly own. Similarly, if the Statute were truly limited to pornography intended for sale or trade, it would make no sense to distinguish in section 2257A between those pictures and videos that are "intended for commercial distribution" (*i.e.,* intended for sale or trade), *see* 18 U.S.C. § 2257A(h)(1)(a)(i), and those that are not.

3. **The Court Must Determine Whether the Statute Is Overbroad as Written, not as the Government Has Tried to Rewrite It.**

In an effort to avoid this Court's overbreadth analysis of the Statute as written, the Government relies on the statement in the DOJ's regulatory preamble that the Statute applies only to "pornography intended for sale or trade." It is fundamental, however, that the Government cannot magically make an unconstitutional burden on speech constitutional merely "by carving out a limited exemption through an amorphous regulatory interpretation." *See Citizens United*, 558 U.S. ____, slip op. at 7. In *Citizens United*, the Court considered a number of narrower interpretations of a statute based on regulations. Ultimately, it rejected each of those narrower interpretations, noting that "[i]t is not judicial restraint to accept an unsound, narrow

argument just so the Court can avoid another argument with broader implications." *Id.* at 12. Indeed, "it is settled doctrine that a statute trenching on freedom of association or other First Amendment freedoms cannot be rescued from taint of unconstitutionality by administrative patchwork in order to arrive at a new statute." *Stewart v. Washington*, 301 F. Supp. 610, 613 (D.D.C. 1969) (holding a statute unconstitutional, despite attempts by enforcement officials to "rewrite" the statute more narrowly). Here, the Statute expressly creates criminal liability both for violating the Statute itself *and* for violating its implementing regulations, *see* 18 U.S.C. § 2257(f), thereby precluding a binding administrative limitation.

In interpreting a statute, the Court "is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). Interpretative agency statements, *i.e.*, "statements of policy issued by an agency asserting its construction of a statute or regulation," do not "have the force and effect of law." *U.S. v. Walter Dunlap & Sons, Inc.*, 800 F.2d 1232, 1238 (3d Cir.1986). In *Sec. Indus. Assoc. v. Bd. of Governors of the Fed. Res. Sys.*, 468 U.S. 137 (1984), the Supreme Court addressed a challenge to the Federal Reserve Board's adoption of a narrow interpretation of a statutory term. *Id.* at 141. The Court reversed the Board's decision that employed that narrow construction, holding that "an agency's interpretation of a statute only sets the framework for judicial analysis . . .A reviewing court must reject administrative constructions of [a] statute, whether reached by adjudication or by rulemaking, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Id.* at 143 (internal quotations omitted).

9

The DOJ statement that the Statute applies only to "pornography intended for sale or trade" is particularly unavailing.  This statement, which appears not in the regulations themselves but only in the regulatory preamble, resembles the FDA-issued regulatory preamble at issue in *Wyeth v. Levine*, 129 S. Ct. 1187 (2009).  Although an agency's views may sometimes carry weight, the Supreme Court gave no deference to the FDA's preamble in *Wyeth* because of its clear conflict with Congressional intent.  *See id.* 1201-02. (noting that "the preamble is at odds with what evidence we have of Congress' purposes").  Here, likewise, the Government's preamble statement, which directly conflicts with the clear language of the Statute, is due no deference.

**4.    The Preamble Itself Shows That the Statute Does not in Fact Apply Only to "Pornography Intended for Sale or Trade."**

Even if the government could avoid judicial review of an overbroad statute by issuing regulations that narrowed its applicability, the DOJ's own regulations here do not actually support its assurance that the Statute applies only to "pornography intended for sale or trade."  The preamble notes that although hosts of adult social networking sites are exempt under the Statute, users of those sites may not be.[6]  *See* 73 Fed. Reg. at 77437; 77461.  The popularity of such sites has grown enormously in recent years.  Indeed, more than 500 ads are often posted *on a single day* by private individuals seeking "casual encounters" *on a single adult networking site limited to a discrete geographic region* (the Philadelphia area), and over 10% of those ads include a sexually explicit photograph, most of which are apparent "self-portraits."  *See, e.g.,*

---

[6]    Website hosts are "provider[s] of an electronic communication service or remote computing service who do[] not, and reasonably cannot, manage the sexually explicit content of the computer site or service," whereas a user is an individual who posts material on a website. *See* 73 Fed. Reg. at 77437.

Craigslist[7] "Casual Encounters" posts, http://philadelphia.craigslist.org/cas/.  Thus, the preamble

expressly identifies at least one category of photos and videos – those that private individuals

post on adult social networking sites – that are not "pornography intended for sale or trade" but

that the DOJ deems the Statute to cover.  The Government attempts to defend this inconsistency

by drawing a distinction between "private" and "public" uses (which is not the same as the

distinction between commercial and non-commercial uses) and by insisting that users of social

networking sites are engaging in "'trade' in some sense."  *See* Gov't Rep. at 15.  To characterize

those who post explicit photos of themselves on social networking sites as engaging in "trade,"

however, is tantamount to saying that anyone who speaks publicly with the hope of eliciting a

response is engaged in "trade."

     Moreover, the preamble also specifically mentions the potential liability of tube

site users.  *See* 73 Fed. Reg. at 77439.  Even accepting the Government's characterization of

adult social networkers' conduct as "trade," tube site users do not even request anything in

exchange for their posts.  Once more, then, the Government contradicts its own attempt at a

limiting construction.

     **5.**     **The Government's Intention not to Prosecute Individuals Engaging in Some Non-Commercial Uses Does not Save the Statute From its Overbreadth.**

     While it is commendable that the DOJ has apparently never prosecuted a husband

and wife who created a sex video for their own pleasure, or a sex researcher who filmed couples

---

[7]     Craigslist.com serves as a free, internet-based classified ad service, on which users can view and post ads targeted to other users in a particular geographic area; the ads cover everything from furniture sales, to pet adoptions, to those seeking love or "casual encounters."

making love, or – so far – an individual who posted an explicit photo or video on a web journal that she shares with her friends, "the mere fact that an agency does not currently intend to apply a statute in an unconstitutional manner cannot have the effect of an explicit limiting construction." *Conchatta, Inc. v. Miller*, 458 F.3d 258, 265 (3d Cir. 2006). Whether the DOJ has yet brought a prosecution against a private individual who created a visual depiction of the sexually explicit conduct of adults is of no moment, as "[p]ast practice does not constitute a narrowing construction because it does not bind the enforcement agency, which could, at some point in the future, decide to target a broader range of [potential defendants]." *Conchatta*, 458 F.3d at 265. The Supreme Court has not hesitated to strike down laws that, although rarely enforced, still offend basic constitutional rights. *See, e.g., Lawrence*, 539 U.S. at 573 (striking down Texas sodomy law despite the "pattern of nonenforcement" of the statute).

**B.      The Statute Applies to Pictures and Videos Created and Viewed by Millions of Ordinary Americans.**

As discussed above, the Statute applies to the husband and wife who videotape themselves in the privacy of their own home, as well as to the man who posts a self-portrait that could be interpreted as "lascivious" on Craigslist in the hopes of attracting a sexual partner. The Statute sweeps within its scope millions of people whose conduct is completely unrelated to any concerns about the sexual exploitation of children – both people who for sexual enjoyment want to make or look at videos of actual or simulated sex or pictures of naked people, and people who for purposes unrelated to sexual enjoyment wish to make or look at such pictures.

While the Plaintiffs' briefs ably represent the interests of commercial producers, it bears mentioning that the chilling effect on these producers affects not only those seeking to express themselves, but also the potential recipients of that expression. The Supreme Court has

held that the First Amendment right to free speech protects not just the speakers, but also the recipients of that speech. "The right to receive information and ideas, regardless of their social worth, is fundamental to our free society." *Stanley*, 394 U.S. at 564. As many as 25% of men studied in a national survey admitted to visiting a pornographic website in the previous 30 days, and consistently over the last 40 years, roughly a quarter of all survey participants have reported viewing an X-rated movie in the last year. *See* Timothy Buzzell, *Demographic characteristics of persons using pornography in three technological contexts*, Sexuality & Culture, Winter 2005, Vol. 9, Issue 1, 28 (2005). In other words, a substantial number of Americans are active viewers of the adult entertainment covered by the Statute, and this does not even take into account those who wish to view other types of photos or videos covered by the Statute, such as artistic or educational materials. "A statute that effectively suppresses a large amount of speech that **adults have a constitutional right to receive and to address to one another** . . . is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *ACLU*, 534 F.3d at 198[8] (internal quotations omitted; emphasis added). *See also Lamont v. Postmaster General*, 381 U.S. 301 (1965) (holding unconstitutional a statute that inhibited the receipt of "communist political propaganda"); *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 756 (1976) (granting relief in an action by

---

[8]     In *ACLU*, 534 F.3d 181, the Third Circuit Court of Appeals affirmed the district court's decision holding unconstitutional a law that criminalized the posting on the internet for a commercial purpose of material inappropriate for minors. The law provided an affirmative defense to those who maintained a mechanism for age certification, such as requiring the use of a credit card to view an offending website. The court held that taking advantage of such a defense imposed an undue burden on the commercial purveyors and deterred potential viewers, thereby unconstitutionally chilling protected speech. *See id.* at 197-98.

prescription drug consumers challenging ban on advertising by pharmacists which deprived consumers of the information that pharmacists would otherwise convey).

### 1.    Pictures and Videos with a Sexual Purpose

#### a.    Couples filming themselves

In a day and age when even most cell phones include a camera, intimate, yet private, expression via modern technology is more and more common.[9]  In a recent survey conducted by *Esquire* magazine entitled "The State of Sex," 21% of women ages 21 to 49 reported that they have videotaped or photographed sex.  *See The State of Sex*, Esquire, Feb. 20, 2007, http://www.esquire.com/women/sex/ESQ0207stateofsex.  Indeed, "sexting" of lascivious photos is not just for teenagers.  *See Older People Are Now Sexting Each Other*, New York Magazine, Feb. 2, 2010, http://nymag.com/daily/intel/2010/02/senior_citizens_are_sexting_ea.html.  Whatever Congress or the Attorney General may think of the value of such conduct, it is not for the government to intrude into the bedrooms of consenting adults.

#### b.    Social networking pictures

Users of adult social networking sites also fall under the Statute.  Indeed, the DOJ specifically mentions private users of social networking sites in its preamble.  *See* 73 Fed. Reg. at 77437; 77461.  The Attorney General may not approve of people who post explicit pictures

---

[9]     *See* Seth F. Kreimer, *Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record*, Univ. of Penn Law School, Public Law Research Paper No. 10-06, at 6-11 (February 15, 2010), *available at* SSRN: http://ssrn.com/abstract=1553920.

with the hope of attracting sex partners, but the Attorney General cannot burden speech in order to impose his moral code on others.

### 2.      Photos and Videos with a Non-Sexual Purpose

According to the Complaint, Plaintiffs in this case include not only members of the adult entertainment industry but also a broad array of other individuals and organizations: artists, like Michael Barone (*see* Compl. at ¶ 22), Barbara Alper (*see* Compl. at ¶ 34), Barbara Nitke (*see* Compl. at ¶ 39), David Steinberg (*see* Compl. at ¶ 43), and Dave Levingston (*see* Compl. at ¶ 47); journalists, like Thomas Hymes (*see* Compl. at ¶ 28); and educators, like the Sinclair Institute (*see* Compl. at ¶ 30), Carol Queen (*see* Comp. at ¶ 36), and Betty Dodson (*see* Compl. at ¶ 49).  Without belaboring what Plaintiffs have already thoroughly and persuasively covered in their briefs, the ACLU notes that even in the realm of "depictions" that are created as part of a commercial enterprise, the Statute covers a substantially overbroad swath of "producers."  A photographer whom a couple hires to take explicit photographs may be involved in a commercial enterprise, but the photos that he takes are not by any stretch of the imagination "pornography intended for sale or trade" and there is no reason to think that he poses a risk to children.

It is remarkable, in fact, that in writing this Statute, Congress made no attempt at all to except from its reach educational, medical, therapeutic, or artistic pictures of actual or simulated sex.  Although an "exhibition of the genitals or pubic area" falls within the Statute only if it is "lascivious,"[10] no such limitation is included in the definition of "actual sexually

---

[10]   The Third Circuit Court of Appeals has adopted a six-factor "lasciviousness" test, which includes factors such as whether the genitals are the "focal point," whether the depiction is "sexually suggestive," whether the performer's pose suggests "a willingness to engage

explicit conduct" or "simulated sexually explicit conduct." Hence, if a photographer takes

pictures for any reason at all of a couple engaging or pretending to engage in sexual activity – for

educational purposes, for research, for therapy or for art – the criminal provisions of sections

2257 and 2257A apply.

The Supreme Court has long recognized that "in the area of freedom of speech

and press the courts must always remain sensitive to any infringement on genuinely serious

literary, artistic, political, or scientific expression." *Miller v. California*, 413 U.S. 15, 23-24

(1973).

> [S]ex and obscenity are not synonymous.  Obscene material is
> material which deals with sex in a manner appealing to prurient
> interest.  The portrayal of sex, e.g., in art, literature and scientific
> works, is not itself sufficient reason to deny material the
> constitutional protection of freedom of speech and press.  Sex, a
> great and mysterious motive force in human life, has indisputably
> been a subject of absorbing interest to mankind through the ages; it
> is one of the vital problems of human interest and public concern.

*Roth v. U.S.*, 354 U.S. 476, 487 (1957); *cf. Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129,

136 (6th Cir. 1994) (striking down statute banning public nudity as unconstitutionally overbroad

when it did not limit its sweep to expressive conduct associated with the ills it sought to prevent,

but rather captured "live performances with serious literary, artistic, or political value").  And yet

the Statute acknowledges no such distinction.

### a.    Journalism

Even journalists are covered by this law.  A journalist reporting on matters

involving sex could not publish photographs or videos without submitting to the Statute's

---

in sexual activity," and whether the depiction is intended to "elicit a sexual response in
the viewer."  *See U.S. v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

requirements, even if the pictures were redacted or blurred.  If the blurred or pixilated photo or

video portrays actual or simulated sexually explicit conduct, the Statute applies, and journalists

must comply with the recordkeeping/labeling/inspection regime.  *See* 73 Fed. Reg. at 77438.

### b.    Education and Therapy

Sex education has become an important and common part of school curriculum.

Indeed, the growing number of teenagers with STDs illustrates the importance of arming them

with basic knowledge about how to protect their health.[11]  Publishers of textbooks used in such

courses fall under the statute if they include in their books pictures of actual sexual activity.

Adults also seek out education about sexual matters, both purely for pleasure or to

serve a therapeutic need.  A quick glance at the Amazon.com website shows thousands of sex

manuals, many published by mainstream publishers, that feature explicit photographs or

drawings of couples actually having sex.  *See* Ex. A (listing 2,433 results for a search in "health,

mind and body" books for "sex manual").  By its terms, Section 2257 applies to such books.

Moreover, academics study sexual behavior.  For instance, "[t]he Kinsey Institute

at Indiana University promotes interdisciplinary research and scholarship in the fields of human

sexuality, gender, and reproduction."  *See* About the Institute, *available at*

http://www.kinseyinstitute.org/about/ (last visited Feb. 25, 2010).  As part of the continuing

study of sexual behavior, the Institute maintains an extensive collection of photography:  "The

---

[11]    According to the American Academy of Pediatrics, approximately 25% of teenagers will
have an STD by the time they graduate from high school.  *See Sexually Transmitted
Diseases Prevention*, American Academy of Pediatrics, *available at*
http://www.healthychildren.org/English/health-
issues/conditions/prevention/pages/Sexually-Transmitted-Diseases-Prevention.aspx (last
visited Mar. 2, 2010).

bulk of the collection contains photographs both by anonymous and named photographers and studios, as well as by amateur photographers, that serve to document artistic and popular representations of the human body and of variant sexual behaviors." *See* Library and Special Collections: Photography, *available at* http://www.kinseyinstitute.org/library/photog.html (last visited Feb. 25, 2010). The Statute would cover many recently produced submissions to that collection, burdening not only the creators, but the Institute as a secondary producer if it should choose to exhibit the works.

### c.    Art

Artists have been creating erotic art for as long as art has been part of human culture. Unnamed artists in ancient Greece and India created large bodies of erotic art, for example, and in more recent times, such luminaries as Picasso, Degas, and Toulouse-Lautrec have done so. *See* History of Art: Erotica in Art, *available at* http://www.all-art.org/er_in_art/001contents.html (providing an overview of the history of erotic art, and including links to examples of such art produced by various cultures and artists). While the erotic art of the past is safe from the reach of the Statute, the Statute unquestionably burdens those who create such art today. Indeed, if read quite literally, the Statute would apply to Matisse or Picasso if he were alive today and drew a highly stylized, abstract picture of a couple who were actually making love.[12]

---

[12]    Nothing in the Statute exempts stylized or obscured depictions; the Statute applies to **_all_** depictions of "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." *See* 18 U.S.C. § 2256(2)(A). (In order for the ID requirement to make any sense at all, of course, live models would have to be somehow involved in the process.)

The Statute on its face applies not only to photos, films and videos but also to drawings, paintings, prints and sculpture. The Statute covers "any book, magazine, periodical, film, videotape, digital image, digitally- or computer-manipulated image of an actual human being, picture, or other matter . . . which contains a visual depiction . . .[and is] produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce." 18 U.S.C. § 2257(a). Paintings, prints and drawings are certainly encompassed by the very broad term "pictures" and sculpture, as it is a "visual depiction," could certainly fall under the even broader category of "other matter," providing the artist uses art supplies "mailed or shipped in interstate or foreign commerce." (As with cameras, finding art supplies that do not fall into that category is hard to imagine in this day and age, and thus erotic art is more likely to be included than excluded.) The Courts have, for years, recognized the distinction between erotic art, which is protected and culturally valuable expression, and obscenity, *see Miller*, 413 U.S. at 24 (making a "lack[ of] serious literary, artistic, political, or scientific value" one of the necessary criteria for determining whether a work is obscene), but Section 2257 recognizes no such distinction.

## C.   The Statute Impinges on the Right to Speak Anonymously.

The Supreme Court has also affirmed time and again that the First Amendment protects not only the right to speak, but the right to speak anonymously. In *Watchtower Bible & Tract Society of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002), Jehovah's witnesses challenged a statute that required them to complete an application for a permit before canvassing private residences. That the prospective canvassers would clearly be revealing their physical

identities to their audience was of no moment – the Court held that the canvassers still had an interest in preserving their anonymity. *See id.* at 166-67.

The Statute obliterates that right. A person who wishes to express himself by performing in a pornographic video may well have a "fear of economic or official retaliation . . . concern about social ostracism . . . or merely [] a desire to preserve as much of one's privacy as possible," *Watchtower* at 166 (internal quotation omitted), but the Statute makes it impossible to perform anonymously. It impacts even professional adult entertainment actors. An actor or actress must expect that his or her compensation will be reported to the government for tax purposes, of course, but the government does not (and should not) require employers in non-sex related businesses to report the occupations or job duties of their employees.[13] Moreover, if the primary producer shares the pornography with a secondary producer, at least some of the personal information for the performer must be passed on to that secondary producer, and the performer is thereby at risk of quickly losing control over his or her own personal information.

The recordkeeping/labeling/inspection regime is even more obnoxious, perhaps, when applied to private individuals. A couple who might otherwise wish to hire plaintiff Michael Barone to take pictures of their love-making, for example, may well not feel free to do so if Barone is required to keep their photo IDs on file and available for government inspection. But for the Statute, "performers" in private or non-commercial depictions of sexually explicit conduct would not be required to provide to the "producer" a copy of their driver's license or the

---

[13]    Attached as Exhibit B are IRS forms W-2 and 1099, neither of which requires a report of the occupation or job duties of the person whose compensation is being reported.

information contained therein,[14] let alone tell the government that they made a sex tape or posed nude.

For photographs or videos created by private individuals, anonymity is virtually impossible not only for the performers but for the producer, as well. The Statute requires "producers" to affix a label to each sexually explicit image that specifies the location of the required records. This requirement leaves no room for anonymity. Non-commercial producers are unlikely to have any meaningful alternative to using their home addresses. Using the example of users of adult social networking sites, this means posting their own home address online for anyone to see, including their employers, friends, and family, not to mention potential stalkers and harassers.

### D.   The Statute Intrudes on the Private Intimate Conduct of Millions of Ordinary Americans.

In addition to the First Amendment issues that are clearly implicated in every application of this Statute to adults engaging in protected expression, the Statute also intrudes on the most private kind of conduct.

The Supreme Court has time and again acknowledged that the government has no business regulating how consenting adults conduct their sex lives in the privacy of their own homes. *See, e.g., Lawrence*, 539 U.S. at 572 (striking down Texas sodomy law and noting "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to

---

[14]   Take, for example, a model who volunteers to pose nude for a photography class. If the students photograph that model's genitals in a way that the government might deem "lascivious," or if they photograph male and female models together simulating sexually explicit conduct, the model would have to provide each student with a copy of his driver's license to allow the participants of the class to comply with the Statute.

21

conduct their private lives in matters pertaining to sex"); *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 850 (1992) (noting, in the context of a case concerning abortion, that "[o]ur obligation is to define the liberty of all, not to mandate our own moral code"); *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) ("If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."); *Stanley*, 394 U.S. at 565 (striking down a law punishing the private possession of pornographic materials: "Whatever may be the justification for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home."); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008) (striking down as unconstitutional a ban on selling sex toys and holding that such a law "restricts the exercise of the constitutional right to engage in private intimate conduct in the home free from government intrusion").

The Statute does exactly what the courts have held the government cannot do – intrude into the bedrooms of ordinary Americans.  The Statute makes it a felony to fail to comply with the recordkeeping and labeling requirements, even if the "producer" is a husband videotaping himself and his spouse in their own bedroom.  One of the fundamental purposes of a criminal statute is to deter conduct, of course, not merely to punish people after they commit the crime, *see U.S. v. Brown*, 381 U.S. 437, 458 (1965) ("Punishment [of a crime] serves several purposes; retributive, rehabilitative, deterrent – and preventive."), and with this Statute, Congress has deterred a broad swath of conduct between consenting adults – even married couples – that the government has no right to criminalize, and, one would hope, no interest in deterring.  A couple who derives pleasure from filming themselves, for example, is given a choice between

22

complying with extraordinarily burdensome recordkeeping requirements or ignoring the Statute

and committing a felony.  Thus, the Statute not only chills the "speech" – the pictures or

videotapes produced – but it also has a chilling effect on the intimate conduct itself, thereby

impacting "the most private human conduct, sexual behavior, and in the most private of places,

the home." *Lawrence*, 539 U.S. at 566.  Curtailing the sexual activities of consenting adults in

the privacy of their own home in no way assists the government in fighting child pornography.

    **E.**    **The Statute Is Neither the Least Restrictive Means of Protecting Children From Sexual Exploitation nor Even Narrowly Tailored to Serve the Government's Legitimate Interests.**

The statute is not narrowly tailored, let alone the least restrictive means of

protecting the government's interest in preventing the sexual exploitation of children.  Indeed,

there is nothing narrow about this statute – it broadly covers virtually all sexually explicit

photographs, videos, digital images, pictures, etc., produced by anyone, and it punishes the

creation of that speech by forcing people, even private individuals, (1) to stay home 20 hours a

week waiting for the government to drop by unannounced, (2) to hire an employee or third-party

custodian to comply with the inspection requirements, or (3) to run the risk of a felony

conviction and up to five years in prison.  As one of the dissenting judges observed in

*Connection Distributing Co. v. Holder*, 557 F.3d 321, 362-63 (6th Cir. 2009) (Moore, J.,

dissenting) wrote:

> Given the alarming breadth of the universal age-verification requirement at issue, I must conclude that § 2257 burdens substantially more speech than is necessary to further the government's interest in preventing the sexual exploitation of minors . . .

> The regulation at issue in this case, § 2257, does not apply to child pornography.  It applies to a class of materials much broader than

those depicting what Congress ultimately seeks to prevent, and therefore does not seek to advance Congress's ultimate goal directly, or even as directly as § 2252's prohibitions on distribution, receipt, and possession of child pornography.  Instead, Congress seeks to supplement these existing bans by imposing age-verification and record-keeping requirements on all visual depictions of actual sexually explicit activity, regardless of the age of the performers.

Even applying intermediate scrutiny, then, the Statute is substantially overbroad.

## V.    CONCLUSION

For the foregoing reasons, the ACLU urges the Court to grant the Plaintiffs preliminary injunction and deny the Government's motion to dismiss.

Respectfully submitted,

/s/ Fred T. Magaziner
Fred T. Magaziner (23332)
Kristina C. Evans (93265)
DECHERT LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104-2808
(215) 994-4000
(215) 994-2222 (Fax)
fred.magaziner@dechert.com
kristina.evans@dechert.com

Mary Catherine Roper (71107)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 40008
Philadelphia, PA 19106
(215) 592-1513 x116 (Telephone)
(215) 592-1343 (Fax)
mroper@aclupa.org

Attorneys for American Civil Liberties Union of
Pennsylvania, Amicus Curiae

March 5, 2010

# EXHIBIT A

Amazon.com: sex manual Health Mind & Body Books

**New Releases**
**Any New Release**
Last 30 days (1)
Last 90 days (7)
Coming Soon (3)

**Department**
‹ Any Department
  ‹ Books
    **Health, Mind & Body**
Sex (1,019)
Self-Help (633)
Relationships (494)
Personal Health (268)
Men's Health (40)
Psychology & Counseling (727)
Mental Health (79)
Aging (36)
Women's Health (74)
Death & Grief (2)
Healthy Cooking (1)
Exercise & Fitness (221)
Recovery (70)
Alternative Medicine (62)
Reference (12)
Diets & Weight Loss (8)
Disorders & Diseases (48)
Cancer (3)
Beauty & Fashion (15)
Nutrition (4)
Authors, A-Z (8)

**Format**
**Any Format**
Printed Books (2,371)
Audiobooks (24)
Kindle Books (32)

Books › **Health, Mind & Body** › "sex manual"

Showing 1 - 12 of 2,433 Results

Sort
by  Relevance

1.  
    **The Enlightened Sex Manual: Sexual Skills for the Superior Lover** by David Deida (Paperback - Aug. 1, 2007)
    Buy new: $15.95 **$10.85**   35 Used & new from $9.21
    Get it by **Monday, Mar. 8** if you order in the next **18 hours** and choose one-day shipping.
    Eligible for **FREE** Super Saver Shipping.
    ★★★★☆  ˅ (10)
    Other Editions: Hardcover, Paperback
    Excerpt - Front Matter: "... DaVID DeIDa The Enlightened Sex Manual Sexual Skills for the Superior lover SOUNDS TRUE Boulder, colorado ..."
    Surprise me! See a random page in this book.

2.  
    **Sex Instruction Manual: Essential Information and Techniques for Optimum Performance** by Felicia Zopol (Paperback - Apr. 1, 2009) - **Bargain Price**
    Buy new: $16.95 **$6.78**   4 Used & new from $6.33
    Get it by **Monday, Mar. 8** if you order in the next **4 hours** and choose one-day shipping.
    Eligible for **FREE** Super Saver Shipping.
    ★★☆  ˅ (1)
    Other Editions: Paperback

3.  **The Best-Ever Illustrated Sex Handbook: Successful Techniques and New Ideas for Long-Term Lovers** by Judy Bastyra (Paperback - Apr. 25, 2008)
    Buy new: $9.99 **$7.91**   12 Used & new from $7.91
    Get it by **Monday, Mar. 8** if you order in the next **19 hours** and choose one-day shipping.
    Eligible for **FREE** Super Saver Shipping:

4.  **Getting the Sex You Want: Shed Your Inhibitions and Reach New Heights of Passion Together** by Tammy Nelson (Hardcover - Apr. 1, 2008)
    Buy new: $22.95 **$15.61**   32 Used & new from $13.98
    Get it by **Monday, Mar. 8** if you order in the next **18 hours** and choose one-day shipping.
    Eligible for **FREE** Super Saver Shipping.
    ★★★★☆  ˅ (7)
    Other Editions: Kindle Edition

5.  **A Lifetime of Sex: The Ultimate Manual on Sex, Women, and Relationships for Every Stage of a Man's Life** by Stephen C. George, K. Winston Caine, and Men's Health Books (Paperback - May 2000)
    18 Used & new from $18.55
    ★★★★☆  ˅ (6)
    Other Editions: Hardcover

Amazon.com: sex manual Health Mind & Body Books

**Binding**
**Any Binding**
Paperback (1,845)
Hardcover (452)
Board Book (1)
Large Print (1)

**Shipping Option** (What's this?)
**Any Shipping Option**
*Prime* Eligible
Free Super Saver Shipping

**Promotion**
**Any Feature or Promotion**
4-for-3 Books (118)
Bargain Books (14)

**Avg. Customer Review**
**Any Avg. Customer Review**
★★★★ & Up (994)
★★★ & Up (1,237)
★★ & Up (1,294)
★ & Up (1,323)

**Condition**
**Any Condition**
Used (2,164)
New (2,170)
Collectible (256)

Listmania!



Elspeth Potter's Stories: A list
by Victoria Janssen
"victoriajanssen"

6. 
**The Guide to Getting It On, 6th Edition** by Paul Joannides and Daerick Gross Sr.
(Paperback - Jan. 20, 2009)
Buy new: $24.95 **$16.47**   47 Used & new from $10.00
Get it by **Monday, Mar. 8** if you order in the next 4 hours and choose one-day shipping.
Eligible for **FREE** Super Saver Shipping.
★★★★ ⌄ (113)
Other Editions: Paperback, Paperback

7. 
**The Sex Bible: The Complete Guide to Sexual Love** by Susan Crain Bakos
(Paperback - Sept. 2008)
Buy new: $21.99 **$14.95**   31 Used & new from $11.98
Get it by **Monday, Mar. 8** if you order in the next 18 hours and choose one-day shipping.
Eligible for **FREE** Super Saver Shipping.
★★★★ ⌄ (10)
Other Editions: Kindle Edition, Hardcover

8. 
**Gay Sex: A Manual for Men Who Love Men, Second Edition** by Jack Hart and Kent
(Paperback - July 1, 1998)
Buy new: $18.95 **$16.11**   23 Used & new from $4.65
In stock on March 9, 2010
Eligible for **FREE** Super Saver Shipping.
★★★★ ⌄ (15)
Other Editions: Paperback

9. 
**Sensual Sex: A Lover's Manual: Better Pleasure For You And Your Partner: A
Complete Step-By-Step Visual Guide To Enhanced Techniques With Expert
Instruction And 300 Stunning Photographs** by Judy Bastyra (Paperback - July 25, 2007)
16 Used & new from $2.86
Other Editions: Hardcover

10.
**Naughty Tricks and Sexy Tips: A Couple's Guide to Uninhibited Erotic
Pleasure** by Dr. Pam Spurr (Paperback - Apr. 24, 2007)
Buy new: $11.95 **$9.56**   37 Used & new from $6.54
Get it by **Monday, Mar. 8** if you order in the next 18 hours and choose one-day shipping.
Eligible for **FREE** Super Saver Shipping.
★★★★ ⌄ (6)
Other Editions: Paperback
Excerpt - page 129: "... fruit such as lemon or lime, and then giving oral sex, ..."
Surprise me! See a random page in this book.

Amazon.com: sex manual: Health Mind & Body Books



I can be found tucked inside these dirty books...: A list by Sommer Marsden "XOXO Sommer"

▸ Create a Listmania! list

**Search Listmania!**

[          ] GO!

11.   [book cover: LOOK INSIDE!]   **Never Have the Same Sex Twice: A Guide For Couples** by Alison Tyler (**Paperback** - Nov. 1, 2008)
Buy new: $14.95 **$10.17**   34 Used & new from $8.63
Get it by **Monday, Mar. 8** if you order in the next **19 hours** and choose one-day shipping.
Eligible for **FREE** Super Saver Shipping.
★★★★★  (14)
Other Editions: Kindle Edition
Excerpt - Front Matter: "... Rachel Kramer Bussel Alison Tyler talks about sex in such an easy, seductive way. She s a star. Saskia ..."
Surprise me! See a random page in this book.

12.   [book cover: LOOK INSIDE! THE ILLUSTRATED MANUAL OF SEX THERAPY]   **The Illustrated Manual Of Sex Therapy Second Edition** by Helen Singer Kaplan (**Paperback** - Oct. 1, 1988)
Buy new: $34.95 **$28.29**   31 Used & new from $23.20
Get it by **Monday, Mar. 8** if you order in the next **19 hours** and choose one-day shipping.
Eligible for **FREE** Super Saver Shipping.
★★★★☆  (5)
Other Editions: Hardcover, Paperback, Unbound, Unknown Binding
Excerpt - page 169: "... II The Role of Psychodynamics In Sex Therapy As I review this manual of sex therapy I am uneasy because too much stress ..."
Surprise me! See a random page in this book.

P   ...|**Page:1** 2 3 ... |Next »

SPONSORED LINKS (Whats this?)

**Looking for Manual?**
www.Ask.com/Auto  -  Find **Manual** on Ask.com Try Ask.com Now!

**Sexy Rihanna Photos**
VIBE.com/photos  -  See Sexy Rihanna photos! Exclusive Rihanna Photos

Search powered by   A9

**Your Recent History** (What's this?)

After viewing product detail pages or search results, look here to find an easy way to navigate back to pages you are interested in.

· **View and edit your browsing history**

Amazon.com: sex manual Health Mind & Body Books

**Get to Know Us**
- Careers
- Investor Relations
- Press Releases
- Amazon and Our Planet

**Make Money with Us**
- Sell on Amazon
- Join Associates
- Self-publish with Us
- › See all

**Let Us Help You**
- Shipping Rates & Policies
- Amazon Prime
- Returns
- Help

**amazon**.com®

Canada  China  France  Germany  Japan  United Kingdom   . . .   . . . .   AmazonWireless  Askville  Audible  DPReview  Endless  iMDb  Shopbop  Small Parts

SoundUnwound  Warehouse Deals by Amazon  Zappos

Conditions of Use  Privacy Notice

# EXHIBIT B

| a Employee's social security number | | |
|---|---|---|

OMB No. 1545-0008

Safe, accurate,
FAST! Use

irs e~file

Visit the IRS website at
www.irs.gov/efile

| b Employer identification number (EIN) | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
| | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | 7 Social security tips | 8 Allocated tips |
| d Control number | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial    Last name.    Suff. | 11 Nonqualified plans | 12a See instructions for box 12 |
| | 13 Statutory employee   Retirement plan   Third-party sick pay | 12b |
| | 14 Other | 12c |
| | | 12d |
| f Employee's address and ZIP code | | |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| | | | | | | |

Form **W-2** **Wage and Tax Statement**

**2010**

Department of the Treasury—Internal Revenue Service

**Copy B—To Be Filed With Employee's FEDERAL Tax Return.**
This information is being furnished to the Internal Revenue Service.

☐ VOID   ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 **2010** Form **1099-MISC** | **Miscellaneous Income** |
|---|---|---|---|---|
| | | 2 Royalties $ | | |
| | | 3 Other income $ | 4 Federal income tax withheld $ | **Copy 1 For State Tax Department** |
| PAYER'S federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds $ | 6 Medical and health care payments $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation $ | 8 Substitute payments in lieu of dividends or interest $ | |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | |
| City, state, and ZIP code | | 11 | 12 | |
| Account number (see instructions) | | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form **1099-MISC**                                                    Department of the Treasury - Internal Revenue Service

## CERTIFICATE OF SERVICE

I, Kristina C. Evans, do hereby certify that a true and correct copy of the foregoing American Civil Liberties Union of Pennsylvania's Memorandum of *Amicus Curiae* has been served via electronic mail on the following:

J. Michael Murray
Lorraine R. Baumgardner
Berkman, Gordon, Murray & Devan
55 Public Square
2121 The Illuminating Bldg.
Cleveland, OH  44113-1949

Kevin E. Raphael
J. Peter Shindel, Jr.
Pietragallo, Gordon, Alfano, Bosick & Raspanti LLP
1818 Market Street
STE 3402
Philadelphia, PA  19103

*Attorneys for Plaintiffs*

Kathryn Wyer
U.S. Dept. of Justice Civil Div.
20 Massachusetts Avenue
Washington, DC  20530

*Attorney for Defendant*

Carl A. Solano
Schnader, Harrison, Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA  19103

*Attorney for Amicus Curiae Electronic Frontier Foundation*

March 5, 2010                                                     /s/ Kristina C. Evans