# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSLYVANIA

_____

)
**FREE SPEECH COALITION, INC.,**  )
)
PLAINTIFFS,  )
**v.**  )
)   **No. 09-4607**
)
**HON. ERIC H. HOLDER, JR.,** *et al.*,  )
Attorney General  )
)
DEFENDANT.  )
_____ )

**PROPOSED BRIEF AMICI CURIAE OF**
**UNITED STATES CONGRESSMEN THADDEUS MCCOTTER, TODD AKIN, ROB BISHOP, DAN BURTON, JASON CHAFFETZ, MICHAEL CONAWAY, JOHN FLEMING, RANDY FORBES, PHIL GINGREY, LOUIE GOHMERT, BOB INGLIS, STEVE KING, ROBERT LATTA, DON MANZULLO, KENNY MARCHANT, JERRY MORAN, MIKE PENCE, JOE PITTS, BILL POSEY, TOM ROONEY, JEAN SCHMIDT, JOHN SHIMKUS, TODD TIAHRT AND THE AMERICAN CENTER FOR LAW AND JUSTICE**
**IN SUPPORT OF DEFENDANT**

James N. Clymer
CLYMER, MUSSER, BROWN,
   & CONRAD
ID No.: 27151
408 West Chestnut St.
P.O. Box 1766
LANCASTER, PA 17608
(717) 299-7101, (717) 299-5115 (Fax)

Laura B. Hernandez*
AMERICAN CENTER FOR
   LAW & JUSTICE
1000 Regent University Dr.
Virginia Beach, VA 23464
(757) 226-2489

Jay Alan Sekulow*
Colby M. May, Sr.*
Stuart J. Roth*
AMERICAN CENTER FOR
   LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
(202) 546-8890

\* - Not admitted in this court

*Attorneys for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................. i

TABLE OF AUTHORITIES ..................................................... ii

INTEREST OF AMICI .................................................................. 1

ARGUMENT .................................................................................. 2

I.   THE AGE VERIFICATION AND RECORD-KEEPING
     REQUIREMENTS OF 18 U.S.C. §§ 2257 AND 2257A POSE NO
     THREAT TO PLAINTIFFS' FIRST AMENDMENT RIGHTS..... 2

     A.   Sections 2257 and 2257A Are Narrowly Tailored Because they
          Burden No Speech Protected Under the First Amendment..... 3

     B.   Sections 2257 and 2257A Are No More Constitutionally
          Significant Than Numerous Other Age Verification And
          Record-Keeping Requirements Imposed Under Federal Law. 5

II.  PLAINTIFFS' FOURTH AND FIFTH AMENDMENT CLAIMS
     ARE FORECLOSED BY THE SUPREME COURT'S DECISION
     IN *CALIFORNIA BANKERS ASS'N V. SHULTZ*. ......................... 10

CONCLUSION ............................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Am. Library Assoc. v. Reno*, 33 F.3d 78 (D.C. Cir. 1994)........................... 2, 3

*Associated Press v. Labor Board*, 301 U.S. 103 (1937)................................. 9

*Associated Press* v. *United States*, 326 U.S. 1 (1945)................................. 9

*Bd. of Trustees v. Fox,* 492 U.S. 469 (1989) ................................................ 4

*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ........................ 10–13

*Connection Dist. Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009) .............. 2–3, 5

*First Nat'l Bank v. United States*, 267 U.S. 576 (1925)............................... 13

*Mabee v. White Plains Publ'g Co.*, 327 U.S. 178 (1946)........................... 8–9

*McLaughlin v. McGee Bros. Co.*, 681 F. Supp. 1117
    (W.D.N.C. 1988) ...................................................................................... 5

*New York  v. Ferber*, 458 U.S. 747 (1982)..................................................... 4

*Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946)...................... 8

*Shapiro v. United States*, 335 U.S. 1 (1948)............................................... 12

*United States v. Albertini*, 472 U.S. 675 (1985)........................................... 3

*United States v. Darby*, 312 U.S. 100 (1941).............................................. 9

*United States v. Williams*, 128 S. Ct. 1830 (2007) ...................................... 4

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)................................. 3–4

*Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603 (5th Cir. 1966) ............ 5

**Statutes**

12 U.S.C. § 1829b(a)(2) (LexisNexis 2010) .................................................. 10

12 U.S.C. § 1951 (LexisNexis 2010).......................................................... 10

18 U.S.C. § 2257(a) (LexisNexis 2010) ....................................................... 2

29 U.S.C. § 211(a) (LexisNexis 2010) .......................................................... 7

29 U.S.C. § 212(d) (LexisNexis 2010).......................................................7–8

31 U.S.C. § 1051 (LexisNexis 2010).......................................................... 10

20 C.F.R. § 655.102(b)(7) (2010).................................................................. 8

28 C.F.R. § 75.1–75.9 (2010) ........................................................................ 3

29 C.F.R. § 516.2(a) (2010)........................................................................... 6

29 C.F.R. § 516.5(a) (2010)........................................................................... 6

29 C.F.R. § 516.7 (2010) ..........................................................................6–7

29 C.F.R. § 570.5(b)(1)–(2) (2010) ............................................................. 7

**Other Authorities**

*Final Report of the Attorney General's Commission on Pornography* 134
(1986).............................................................................................................. 5

Internal Revenue Service, Businesses, Employment Tax Recordkeeping,
http://www.irs.gov/businesses/small/article/0,,id=98548,00.html.............. 8

United States Department of Labor, Frequently Asked Questions, What is the
Fair Labor Standards Act, http://webapps.dol.gov/dolfaq/go-dol-
faq.asp?faqid=376&faqsub=The+Fair+Labor+Standards+Act+(FLSA)&fa
qtop=Laws+%26+Regulations (last visited February 10, 2009) ................ 6

iii

Case 2:09-cv-04607-MMB   Document 36-1   Filed 03/09/10   Page 5 of 18

## INTEREST OF AMICI

The American Center for Law and Justice (ACLJ) is a public interest law firm committed to insuring the ongoing viability of constitutional freedoms in accordance with principles of justice. ACLJ attorneys have argued or participated as amicus curiae in numerous cases involving constitutional issues before the Supreme Court of the United States and lower federal courts.

The ACLJ is dedicated to defending families against efforts to undermine their importance, integrity, and well-being. Moreover, the ACLJ is committed to supporting appropriate efforts by Congress and the States toward the creation and sustenance of a social order that supports the important work of families: the rearing and protection of children. The proper resolution of this case is a matter of substantial organizational concern to the American Center for Law and Justice because of the ACLJ's commitment to American families.

This brief is also filed on behalf of United States Congressmen Thaddeus McCotter, Todd Akin, Rob Bishop, Dan Burton, Jason Chaffetz, Michael Conaway, John Fleming, Randy Forbes, Phil Gingrey, Louie Gohmert, Bob Inglis, Steve King, Robert Latta, Don Manzullo, Kenny Marchant, Jerry Moran, Mike Pence, Joe Pitts, Bill Posey, Tom Rooney,

1

Case 2:09-cv-04607-MMB Document 38-1 Filed 03/09/10 Page 6 of 18

Jean Schmidt, John Shimkus, Todd Tiahrt. These amici currently are members of the United States House of Representatives in the One Hundred Eleventh Congress. Amici believe that the age verification requirements of 18 U.S.C. §§2257 and 2257A pose no threat to the First Amendment, and that this Court should follow the Courts of Appeals for the District of Columbia and the Sixth Circuit in upholding them.

## ARGUMENT

**I.   THE AGE VERIFICATION AND RECORD-KEEPING REQUIREMENTS OF 18 U.S.C. §§ 2257 AND 2257A POSE NO THREAT TO PLAINTIFFS' FIRST AMENDMENT RIGHTS.**

As two federal appellate courts have already held, sections 2257 and 2257A are content-neutral regulations that are narrowly tailored to serve an important government interest. *Connection Dist. Co. v. Holder*, 557 F.3d 321, 329-30 (6th Cir. 2009); *Am. Library Assoc. v. Reno*, 33 F.3d 78, 94 (D.C. Cir. 1994). Sections 2257 and 2257A require producers of visual depictions of "actual sexually explicit conduct"[1] to "create and maintain individually identifiable records pertaining to every performer portrayed."[2] Among the requirements imposed upon the producers are (1) to obtain a government-issued photo identification card for each person depicted in the sexually explicit expression before producing the expression; (2) to maintain

---

[1] 18 U.S.C. § 2257(a)(1) (LexisNexis 2010).
[2] *Id.* § 2257(a).

2

Case 2:09-cv-04607-MMB Document 38-1 Filed 03/09/10 Page 7 of 18

records that include a copy of the ID card, a copy of the depiction, and other

personal information; (3) to imprint all sexually explicit expressions with a

label identifying the location where the records can be located; (4) to abstain

from disseminating any sexually explicit expression that does not bear the

requisite label; and (5) to permit the government to inspect the records.[3]

It is, of course, beyond dispute that sections 2257 and 2257A serve the

paramount government interest of eradicating child pornography. *See*

*Connection Dist. Co.*, 557 F.3d at 325; *Am. Library Assoc.*, 33 F.3d at 88.

### A. Sections 2257 and 2257A Are Narrowly Tailored Because they Burden No Speech Protected Under the First Amendment.

Sections 2257 and 2257A are pointedly tailored to eradicate the

exploitation of minors in the pornography industry. A law is narrowly

tailored if it "'promotes a substantial government interest that would be

achieved less effectively absent the regulation.'" *Ward v. Rock Against*

*Racism*, 491 U.S. 781, 799 (1989) (quoting *United States v. Albertini*, 472

U.S. 675, 689 (1985) The Supreme Court has stressed that the "narrowly

tailored" requirement does not require the state to choose the least-restrictive

means or even the most appropriate means of achieving its objective. *Ward*,

491 U.S. at 799–800. Rather, the state must merely avoid choosing means

---

[3] 28 C.F.R. § 75.1–75.9 (2010).

Case 2:09-cv-04607-MMB Document 38-1 Filed 03/09/10 Page 8 of 18

that "'burden *substantially* more speech than necessary to further the government's legitimate interests.'" *Bd. of Trustees v. Fox,* 492 U.S. 469, 478 (1989) (quoting *Ward*, 491 U.S. at 799) (emphasis added). Moreover, the Court has been "loath to second-guess the Government's judgment to that effect." *Id.*

Sections 2257 and 2257A do not burden "substantially more speech than necessary" to achieve the government's purpose. In fact, they burden no constitutionally-protected speech. The age verification and record-keeping provisions of sections 2257 and 2257A merely require plaintiffs to verify that they are not using minors to produce sexually explicit materials. Plaintiffs concede that the use of minors in sexually explicit materials constitutes child pornography. Thus, the only "speech" that sections 2257 and 2257A impact is child pornography. Child pornography is illegal and wholly outside First Amendment protection. *United States v. Williams*, 128 S. Ct. 1830, 1836 (2007); *New York v. Ferber*, 458 U.S. 747 (1982).

Even if it is assumed that sections 2257 and 2257A burden Plaintiffs' free speech rights, the fit between these provisions and the government's paramount interest in ensuring that pornography producers do not exploit minors could hardly be closer. Given the "pornography industry's proclivity for using youthful looking" performers, there is no more effective means of

4

Case 2:09-cv-04607-MMB Document 36-1 Filed 03/09/10 Page 9 of 18

ensuring that the industry does not employ minors. *Connection Dist. Co.*, 557 F.3d at 325 (citing *Final Report of the Attorney General's Commission on Pornography* 134, 138–39 (1986)). As the Sixth Circuit asked, "how else would the government impose a proof-of-age requirement designed to address child pornography?" *Id.* at 329.

> **B.     Sections 2257 and 2257A Are No More Constitutionally Significant Than Numerous Other Age Verification And Record-Keeping Requirements Imposed Under Federal Law.**

Sections 2257 and 2257A do not burden Plaintiffs' free speech rights any more than the record-keeping requirements imposed by numerous other federal laws governing employer/employee relations. When the government wishes to ensure that businesses comply with employment, immigration or tax laws, it requires them to document their compliance through record-keeping and, in some cases, age verification requirements. Such record-keeping requirements are essential to the government's ability to enforce employers' compliance with the substantive provisions of the laws. "Failure to keep accurate records can obscure a multitude of [violations]." *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 607 (5th Cir. 1966) (FLSA standards); *See also McLaughlin v. McGee Bros. Co.*, 681 F. Supp. 1117, 1134 (W.D.N.C. 1988) (same).

Perhaps most similar to sections 2257 and 2257A are the record keeping requirements of the Fair Labor Standards Act of 1938 (FLSA). The FLSA establishes a minimum wage, overtime pay, and recordkeeping requirements for employers, as well as child labor standards.[4] Pursuant to the recordkeeping requirements, employers are required to "maintain and preserve payroll records" containing certain information for each employee.[5] The required information includes: (1) the employee's name, in full, as used for Social Security purposes; (2) the employee's home address; (3) the employee's date of birth, if the employee is under 19; and (4) the employee's sex and occupation.[6] The records must be kept "safe and accessible at the place or places of employment," or at a "central record keeping office"[7] and employers are required to keep payroll records for a minimum of three years.[8] Additionally, the FLSA specifically allows the Administrator (Secretary) to "investigate and gather data regarding the wages, hours, and *other conditions and practices of employment*" and permits him to "enter and inspect such places and such records . . . as he may deem necessary or

---

[4]United States Department of Labor, Frequently Asked Questions, What is the Fair Labor Standards Act, http://webapps.dol.gov/dolfaq/go-dol-faq.asp?faqid=376&faqsub=The+Fair+Labor+Standards+Act+(FLSA)&faqtop=Laws+%26+Regulations (last visited February 10, 2009).

[5] 29 C.F.R. § 516.2(a) (2010).

[6] *Id*. § 516.2(a)(1)–(4).

[7] *Id*. § 516.7(a).

[8] *Id*. § 516.5(a).

appropriate to determine whether any person has violated any provision of
[the] Act."[9] Furthermore, 29 C.F.R. § 516.7 mandates that the records "be
available for inspection."[10]

More significantly, to protect children from exploitative labor, section
212(d) authorizes the Secretary to "require employers to obtain from any
employee proof of age."[11] In response to this provision, the Secretary
recommends that an employer of a prospective minor acquire a Federal or
State "certificate of age," in order to protect himself from unlawfully
employing a child.[12] Thus, for example if the New York Times preferred to

---

[9] 29 U.S.C. § 211(a) (LexisNexis 2010) (emphasis added).
[10] 29 C.F.R. § 516.7(b) (2010).
[11] 29 U.S.C. § 212(d) (LexisNexis 2010).
[12] 29 C.F.R. § 570.5(b)(1)–(2) (2010).

In other contexts as well, Congress has imposed record-keeping
requirements that place no greater burden on plaintiffs than do sections 2257
and 2257A. Under the Immigration and Nationality Act, employers are
required to keep records of the alien's employment record.

> The employer shall keep accurate and adequate records with
> respect to the workers' earnings including field tally records,
> supporting summary payroll records and records showing the
> nature and amount of the work performed; the number of hours
> of work offered each day by the employer (broken out by hours
> offered both in accordance with and over and above the three-
> fourths guarantee at paragraph (b)(6) of this section); the hours
> actually worked each day by the worker; the time the worker
> began and ended each workday; the rate of pay (both piece rate
> and hourly, if applicable); the worker's earnings per pay period;

7

hire very young editorialists, it must be prepared, pursuant to the Fair Labor

Standards Act (FLSA), to obtain documentation proving that its editors are

not minors.[13] Such record-keeping and age-verification requirements do not

burden the Times' First Amendment rights. *Mabee v. White Plains Publ'g*

*Co.*, 327 U.S. 178 (1946) (newspapers' free speech rights are not violated by

FLSA's record-keeping requirements).

In both *Mabee* and in *Oklahoma Press Publ'g Co. v. Walling*, 327

U.S. 186, 194 (1946), the Supreme Court rejected the newspapers'

---

the worker's home address; and the amount of and reasons for
any and all deductions made from the worker's wages.

20 C.F.R. § 655.102(b)(7)(i) (2010).

The regulation further requires that "upon reasonable notice, the
employer shall make available the records . . . for inspection and copying by
representatives of the Secretary of Labor, and by the worker and
representatives designated by the worker." *Id.* § 655.102(b)(7)(iii). The
employer is required to keep all records for at least three years "after the
completion of the work contract." *Id.* § 655.102(b)(7)(iv).

Similarly, the IRS requires employers to keep the following records
"for at least four years after filing the 4th quarter for the year." Internal
Revenue Service, Businesses, Employment Tax Recordkeeping,
http://www.irs.gov/businesses/small/article/0,,id=98548,00.html (last visited
February 10, 2010). The records must include, among other things,
"employer identification number; amounts and dates of all wage, annuity,
and pension payments; amounts of tips reported; the fair market value of in-
kind wages paid; *names, addresses*, social security numbers, and occupations
of employees and recipients . . . ." *Id.* (emphasis added).

[13] *See* 29 U.S.C. § 212(d) (LexisNexis 2010).

8

contention that the FLSA's employee record-keeping requirements violated the First Amendment.

> The broadside assertion that petitioners "could not be covered by the Act," for the reason that "application of this Act to its newspaper publishing business would violate its rights as guaranteed by the First Amendment," is without merit. *Associated Press v. Labor Board*, 301 U.S. 103 [(1937)], and *Associated Press* v. *United States*, 326 U.S. 1 [(1945)]; *Mabee* v. *White Plains Publishing Co*., 327 U.S. 178 [(1946)]. If Congress can remove obstructions to commerce by requiring publishers to bargain collectively with employees and refrain from interfering with their rights of self-organization, matters closely related to eliminating low wages and long hours, Congress likewise may strike directly at those evils when they adversely affect commerce. *United States v. Darby*, 312 U.S. 100, 116, 117 [(1941)]. *The Amendment does not forbid this or other regulation which ends in no restraint upon expression or in any other evil outlawed by its terms and purposes.*

 *Mabee*, 327 U.S. at 192–93 (emphasis added).

Like the FLSA requirements, sections 2257 and 2257A are a content-neutral means of ensuring compliance with federal laws regulating employment. More specifically, like the child labor standards of the FLSA, sections 2257 and 2257A protect against the exploitation of children. If sections 2257 and 2257A burden speech, then all government record-keeping requirements regulating businesses engaged in expressive activity become constitutionally suspect. Sections 2257 and 2257A have no impact on Plaintiffs' free speech rights.

9

## II.   PLAINTIFFS' FOURTH AND FIFTH AMENDMENT CLAIMS ARE FORECLOSED BY THE SUPREME COURT'S DECISION IN *CALIFORNIA BANKERS ASS'N V. SHULTZ.*

Plaintiffs' Fourth and Fifth Amendment Claims are meritless under *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974). In *Schultz*, the Supreme Court upheld the constitutionality of identification and record-keeping requirements where such information was necessary to avert criminal activity. At issue in *Shultz* was the Banker's Secrecy Act of 1970, which imposed "certain recordkeeping and reporting requirements" that "'[had] a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'" *Id.* at 26 (quoting 12 U.S.C. § 1829b(a)(2) (LexisNexis 2010);  12 U.S.C. § 1951 (LexisNexis 2010); 31 U.S.C. § 1051 (LexisNexis 2010)). The problem that Congress sought to address was similar in scope to the problem that sections 2257 and 2257A address—identification information shrouded in secrecy enabled substantial criminal activity:

> Congress was concerned about [the] serious and widespread use of foreign financial institutions, located in jurisdictions with strict laws of secrecy as to bank activity, for the purpose of violating or evading domestic criminal, tax, and regulatory enactments. . . .
>
>         . . . . Secret foreign bank accounts and secret foreign financial institutions have permitted proliferation of 'white collar' crime; have served as the financial underpinning of organized criminal operations in the United States; have been

10

utilized by Americans to evade income taxes, conceal assets
illegally and purchase gold; have allowed Americans and others
to avoid the law and regulations governing securities and
exchanges; have served as essential ingredients in frauds
including schemes to defraud the United States; have served as
the ultimate depository of black market proceeds from Vietnam;
have served as a source of questionable financing for
conglomerate and other corporate stock acquisitions, mergers
and takeovers; have covered conspiracies to steal from the U.S.
defense and foreign aid funds; and have served as the cleansing
agent for 'hot' or illegally obtained monies.

. . . .

The debilitating effects of the use of these secret
institutions on Americans and the American economy are vast.
It has been estimated that hundreds of millions in tax revenues
have been lost. Unwarranted and unwanted credit is being
pumped into our markets. There have been some cases of
corporation directors, officers and employees who, through
deceit and violation of law, enriched themselves or endangered
the financial soundness of their companies to the detriment of
their stockholders. Criminals engaged in illegal gambling,
skimming, and narcotics traffic are operating their financial
affairs with an impunity that approaches statutory exemption.

*Id*. at 27–28 (internal quotation marks omitted).

Among the many requirements of the Banker's Secrecy Act were that

FDIC insured banks maintain records of the "identities of persons having

accounts with them and of persons having signature authority thereover." *Id.*

at 31. The Act also provided for civil and criminal penalties for willful

violations of the recordkeeping requirements. *Id*. at 34–35.

11

Case 2:09-cv-04607-MMB   Document 38-1   Filed 03/05/10   Page 16 of 18

The Court held that its decision in *Shapiro v. United States*, 335 U.S. 1, 32–33 (1948) was controlling. Although "there are limits which the government cannot constitutionally exceed in requiring the keeping of records which may be inspected by an administrative agency and may be used in prosecuting statutory violations committed by the record-keeper himself," those bounds are not overstepped "when there is a sufficient relation between the activity sought to be regulated and the public concern so that the government can constitutionally regulate or forbid the basic activity concerned, and can constitutionally require the keeping of particular records, subject to inspection by the Administrator." *Id.* at 32.

The Court concluded that because there was a "sufficient connection between the evil Congress sought to address and the recordkeeping procedure it required," the Due Process Clause of the Fifth Amendment was not violated. *California Bankers Ass'n*, 416 U.S. at 49.

Rejecting the plaintiff's Fourth Amendment claim, the Court held that "the mere maintenance of the records by the banks under the compulsion of the regulations invaded no Fourth Amendment right of any depositor . . . ." *Id*. at 54. Moreover, the Act did not require disclosure of the records to the

12

government, but rather made specific reference to accessing the documents through the "existing legal process," *Id*. at 52.[14]

In conclusion, the Court noted that it did "not think it [] strange or irrational that Congress, having its attention called to what appeared to be serious and organized efforts to avoid detection of criminal activity, should have legislated to rectify the situation. . . . [T]he fact that a legislative enactment manifests a concern for the enforcement of the criminal law does not cast any generalized pall of constitutional suspicion over it." *Id.* at 77.

The record-keeping requirements of sections 2257 and 2257A are constitutional. They are legally indistinguishable from myriad other record-keeping requirements that businesses must satisfy; they do not burden speech, and they do not implicate any Fourth or Fifth Amendment rights.

---

[14] The Court relied on its previous holdings that "an Internal Revenue summons directed to a third-party bank was not a violation of the Fourth Amendment rights of either the bank or the person under investigation by the taxing authorities." *California Bankers Ass'n*, 416 U.S. at 53 (citing *First Nat'l Bank v. United States*, 267 U.S. 576 (1925)).

Case 2:09-cv-04607-MMB Document 38-1 Filed 03/09/10 Page 18 of 18

## CONCLUSION

Amici therefore respectfully request that Plaintiffs' Motion for Preliminary Injunction Be denied, and their Complaint Dismissed.

Respectfully submitted this of 9th day of March, 2010,

<table>
<tr>
<td>

/s/ James N. Clymer
James N. Clymer
CLYMER, MUSSER, BROWN,
    & CONRAD
ID No.: 27151
408 West Chestnut St.
P.O. Box 1766
LANCASTER, PA 17608
(717) 299-7101, (717) 299-5115 (Fax)

/s/ Laura B. Hernandez
Laura B. Hernandez*
AMERICAN CENTER FOR
    LAW & JUSTICE
1000 Regent University Dr.
Virginia Beach, VA 23464
(757) 226-2489

</td>
<td>

/s/ Jay Alan Sekulow
Jay Alan Sekulow*
Colby M. May, Sr.*
Stuart J. Roth*
AMERICAN CENTER FOR
    LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
(202) 546-8890




* - Not admitted in this court

</td>
</tr>
</table>

*Attorneys for Amicus Curiae*

March 9, 2010.

14