IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| Plaintiffs, | ) Judge Michael M. Baylson |
| v. | ) |
| | ) DEFENDANT'S SUPPLEMENTAL |
| THE HONORABLE ERIC H. HOLDER, JR., Attorney General, | ) BRIEF IN SUPPORT OF MOTION TO ) DISMISS |
| Defendant. | ) |

# **TABLE OF CONTENTS**

1. The Supreme Court's Decision in Playboy Entm't Was Fully Analyzed, and Rejected as Inapplicable, in the Connection Case ..............................................................1

2. Third Circuit Authority Places the Burden on Plaintiffs to Show Facial Invalidity ............2

3. The Government Has Provided Sufficient Justification for the Requirements ....................7

4. Third Circuit Authority Does Not Support Plaintiffs' Fourth Amendment Claim ...............9

5. Res Judicata Bars the Claims of Free Speech Coalition and David Connors ...................10

## TABLE OF AUTHORITIES

ACLU v. Ashcroft, 322 F.3d 240 (3d Cir. 2003) ...............................................................................2

ACLU v. Mukasey, 534 F.3d 181 (3d Cir. 2008) .............................................................................4

Am. Library Ass'n v. Reno ("ALA III"), 33 F.3d 78 (D.C. Cir. 1994) ........................................6, 8

Ashcroft v. ACLU, 535 U.S. 564 (2002) ..........................................................................................5

Ashcroft v. ACLU, 542 U.S. 656 (2004) ..........................................................................................4

Borden v. Sch. Dist. of Tp. of E. Brunswick, 523 F.3d 153 (3d Cir. 2008) .....................................5

Broadrick v. Oklahoma, 413 U.S. 601 (1973) .................................................................................5

Brown v. City of Pittsburgh, 586 F.3d 263 (3d Cir. 2009) ......................................................2, 3, 9

City of Erie v. Pap's A.M., 529 U.S. 277 (2000) .............................................................................8

City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002) .................................................7

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986) .......................................................7

Conchatta Inc. v. Miller, 458 F.3d 258 (3d Cir. 2006) ....................................................................6

Connection Distrib. Co. v. Holder ("Connection III"),
    557 F.3d 321 (6th Cir. 2009) (en banc) ...............................................................1, 2, 5, 6

Connection Distrib. Co. v. Reno, No. 00-4149, 2002 WL 31119685 (6th Cir. Sept. 24, 2002) .....1

Connection Distrib. Co. v. Gonzalez,
    No. 95-1993, 2006 WL 1305089 (N.D. Ohio May 10, 2006) ............................................1

Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169 (3d Cir. 2009) .................................................3

Fla. Bar v. Went For It, Inc., 515 U.S. 618 (1995) .........................................................................7

Free Speech Coal. v. Gonzales ("FSC I"), 406 F. Supp. 2d 1196 (D. Colo. 2005) .....................6, 8

Free Speech Coal. v. Gonzales ("FSC II"), 483 F. Supp. 2d 1069 (D. Colo. 2007) .....................10

Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215 (3d Cir. 2004) .....................5, 6

Haagensen v. Pa. State Police, No. 08-727, 2009 W L 3834007 (W.D. Pa. Oct. 22, 2009) ............5

In re Central R. Co. of New Jersey, 485 F.2d 208 (3d Cir. 1973) ......................................................1

Lewis v. Smith, No. 08-3800, 2010 WL 226499 (3d Cir. Jan. 21, 2010) ......................................10

Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001) ...................................................................7

Magill v. Lynch, 560 F.2d 22 (1st Cir.1977) ..................................................................................5

Mariani v. United States, 212 F.3d 761 (3d Cir. 2000) ..................................................................7

Naser Jewelers, Inc. v. City Of Concord, 513 F.3d 27 (1st Cir. 2008) .......................................3, 4

NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182 (3d Cir. 2006) ................................9

N.Y. State Club Ass'n., Inc. v. City of New York, 487 U.S. 1 (1988) ............................................5

Phillips v. Borough of Keyport, 107 F.3d 164 (3d Cir. 1997) (en banc) ........................................3

R.A.V. v. City of St. Paul, 505 U.S. 377 (1992) ..............................................................................2

Shimman v. Int'l Union of Operating Eng'rs, Local 18, 744 F.2d 1226 (6th Cir. 1984) ................1

Shoemaker v. Handel, 795 F.2d 1136 (3d Cir. 1986) .....................................................................9

Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008) ..................................................................3

Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622 (1994) ...................................................................3

Turner Broad Sys., Inc. v. FCC, 520 U.S. 180 (1997) .................................................................3, 4

United States v. O'Brien, 391 U.S. 367 (1968) ...............................................................................8

United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000) ...........................................1, 2

United States v. Salerno, 481 U.S. 739 (1987) ............................................................................3, 9

United States v. Sczubelek, 402 F.3d 175 (3d Cir. 2005) ................................................................9

Virginia v. Hicks, 539 U.S. 113 (2003) ...........................................................................................5

Warshak v. United States, 532 F.3d 521 (6th Cir. 2008) ................................................................9

1.  **The Supreme Court's Decision in Playboy Entm't Was Fully Analyzed, and Rejected as Inapplicable, in the Connection Case**

In Connection, both the district court and the en banc Sixth Circuit considered the Supreme Court's opinion in United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000), and concluded that, as a strict scrutiny case, Playboy did not affect the intermediate scrutiny analysis that applies to 18 U.S.C. § 2257. The district court recognized that the Supreme Court had rejected the statutory scheme at issue in Playboy based on the "least restrictive means" prong of the strict scrutiny test – a requirement that does not exist in an intermediate scrutiny case. Connection Distrib. Co. v. Gonzalez, No. 95-1993, 2006 WL 1305089, at *7 (N.D. Ohio May 10, 2006) (stating Playboy's holding that "there were less restrictive means of furthering the government's interests").[1] It thus concluded that Playboy "has no bearing on this case because intermediate scrutiny applies here." Id. In its en banc decision, the Sixth Circuit affirmed that Playboy "do[es] not undermine the holding of" the original Sixth Circuit panel upholding § 2257. See Connection Distrib. Co. v. Holder ("Connection III"), 557 F.3d 321, 333 (6th Cir. 2009) (en banc).[2] Indeed, the Sixth Circuit concluded that Playboy "support[s] the

---

[1] The district court considered Playboy's applicability on remand at the direction of the Sixth Circuit panel considering the plaintiff's appeal from the district court's grant of summary judgment to the government. See Connection Distrib. Co. v. Reno, No. 00-4149, 2002 WL 31119685, at *1 (6th Cir. Sept. 24, 2002).

[2] Contrary to plaintiffs' suggestion at oral argument, law of the case cannot bind an en banc court, and the Sixth Circuit en banc court was therefore not bound by the Circuit panel's prior holding that intermediate scrutiny applied. See Shimman v. Int'l Union of Operating Eng'rs, Local 18, 744 F.2d 1226, 1229 n.3 (6th Cir. 1984); In re Central R. Co. of New Jersey, 485 F.2d 208, 210-11 (3d Cir. 1973). Thus, as its thoughtful analysis suggests, the en banc court made an independent decision in Connection III that intermediate scrutiny properly applies. 557 F.3d at 328-29 (citing the prior panel decision as persuasive authority, together with the similar decisions of the D.C. Circuit and District of Colorado).

application of intermediate scrutiny to this case," by confirming that strict scrutiny is only appropriate where, unlike in the § 2257 scheme, a restriction's *justification* derives from the content of the protected speech at issue.  Id. at 333-34 (citing Playboy Entm't, 529 U.S. at 811, which recognized that the statutory restriction was specifically intended to prevent certain protected content from reaching minors).[3]  Here, in contrast, Congress' purpose in establishing the age verification and recordkeeping system was to prevent the physical, emotional, and psychological abuse of children in the production of sexually-explicit films and photographs.[4]

**2.     Third Circuit Authority Places the Burden on Plaintiffs to Show Facial Invalidity**

The Third Circuit recently addressed the allocation of burdens in a pre-enforcement facial challenge in Brown v. City of Pittsburgh, 586 F.3d 263 (3d Cir. 2009).  The court held that in such cases, the *challenger* (i.e., plaintiff) bears the burden "to 'establish that no set of

---

[3]The Third Circuit has similarly recognized Playboy's focus on strict scrutiny's "least restrictive means" requirement.  ACLU v. Ashcroft, 322 F.3d 240, 262-63 (3d Cir. 2003) ("The [Playboy] Court held that th[e] provision [at issue] failed strict scrutiny because Congress had available to it an effective, less restrictive means of achieving its ends.").  The Third Circuit will thus likely agree with the Connection courts that, because there is no "least restrictive means" requirement in an intermediate scrutiny case, Playboy has no bearing on the analysis here.

[4]The Supreme Court's decision in R.A.V. v. City of St. Paul, 505 U.S. 377 (1992), cited by plaintiffs at the hearing, does not suggest that the enactment of 18 U.S.C. § 2257A could possibly have made the requirements here content based.  While the Court posited that viewpoint discrimination could occur even in regard to unprotected speech, it also recognized that distinctions within a class of proscribable speech are permissible based on "media or markets," the degree of offensiveness of the material, or other grounds, as long as the distinction does not express government disapproval of a particular message.  505 U.S. at 386-88.  Here, the distinction reflects (1) Congress' permissibly incremental approach to preventing the use of underage performers in sexually-explicit films and photographs, (2) the fact that simulated images are more likely to appear in mainstream media where age verification regulations already exist, and (3) the greater harm that might occur when children are used to make actual images of sexual intercourse, sado-masochistic conduct, bestiality, and masturbation (though the same image of actual sexual activity could be edited to create an image of simulated activity).

circumstances exists under which the Act would be valid.'" Id. at 269 (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).  On the other hand, in as-applied or post-enforcement challenges, prior Third Circuit decisions have indicated that the government bears the burden. Startzell v. City of Phila., 533 F.3d 183, 201 (3d Cir. 2008) (stating that the government has the burden "to demonstrate the constitutionality of its actions," and rejecting an as-applied First Amendment challenge to city's removal of plaintiffs from a demonstration area after plaintiffs became disruptive); Phillips v. Borough of Keyport, 107 F.3d 164, 172-73 (3d Cir. 1997) (en banc) (considering post-enforcement First Amendment challenge to zoning ordinance and stating that government has the burden whether strict scrutiny or intermediate scrutiny applies).  These cases suggest that plaintiffs have the burden to show that the requirements here are facially invalid, while the government has the burden to establish the requirements' validity as applied.[5]

Brown's holding is consistent with a recent First Circuit decision, Naser Jewelers, Inc. v. City Of Concord, 513 F.3d 27, 33 (1st Cir. 2008), which similarly suggested that the plaintiff in a facial challenge to a content-neutral regulation properly bears the burden of proof.  Id. at 33 (recognizing that generally in a facial challenge, other than an overbreadth challenge, " it is plaintiff's burden to show that the law has no constitutional application").  Moreover, while the First Circuit cited the Supreme Court plurality in Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 665 (1994), as suggesting that the government bears the burden to prove a regulation is narrowly tailored, Naser Jewelers, Inc., 513 F.3d at 33, the Supreme Court's later Turner Broadcasting decision emphasized that, "[i]n reviewing the constitutionality of a statute, courts must accord

---

[5]Thus, at oral argument, undersigned counsel was mistaken when suggesting that the government bore the burden in a pre-enforcement facial challenge.

substantial deference to the predictive judgments of Congress," and that the Court's "sole obligation" is "to assure that, in formulating its judgments, Congress has drawn reasonable inferences based on substantial evidence." Turner Broad Sys., Inc. v. FCC, 520 U.S. 180, 196 (1997) (internal quotation omitted).  The Court further held that, "[e]ven in the realm of First Amendment questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided and to the remedial measures adopted for that end, lest we infringe on traditional legislative authority to make predictive  judgments when enacting nationwide regulatory policy." Id. at 197.

Even in the as-applied or post-enforcement context, there can be no doubt that the nature of any burden on the government in an intermediate scrutiny case is necessarily of a lesser magnitude than the burden that applies in a strict scrutiny case.  In a strict scrutiny case, such as the COPA cases cited by plaintiffs at the hearing, the government must overcome a *presumption* that the restriction on protected speech is invalid.  ACLU v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (as a content-based restriction, COPA "is presumptively invalid and the Government bears the burden of showing its constitutionality").  No such presumption applies in an intermediate scrutiny case.  To the contrary, "content-neutral statutes continue to enjoy a presumption of constitutionality." Naser Jewelers, Inc., 513 F.3d at 33.  Plaintiffs' reliance on the Third Circuit's COPA decisions is thus misplaced.  Moreover, because there is no "least restrictive means" requirement in intermediate scrutiny, the government does *not* have the burden, as it does in a strict scrutiny case, "to prove that the [plaintiff's] proposed alternatives will not be as effective as the challenged statute." Ashcroft v. ACLU, 542 U.S. 656, 665 (2004).

When it comes to plaintiffs' overbreadth challenge, it is undisputed that *plaintiffs* again

"bear[] the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." Virginia v. Hicks, 539 U.S. 113, 122 (2003) (quoting N.Y. State Club Ass'n., Inc. v. City of New York, 487 U.S. 1, 14 (1988)). Plaintiffs must show that a statute's overbreadth is "'not only . . . real, but substantial as well.'" Ashcroft v. ACLU, 535 U.S. 564, 584 (2002) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)).

The Third Circuit has identified four factors relevant to the overbreadth analysis: "(1) the number of valid applications, (2) *the historic or likely frequency of conceivably impermissible applications*, (3) the nature of the activity or conduct sought to be regulated, and (4) the nature of the state interest underlying the regulation." Borden v. Sch. Dist. of Tp. of E. Brunswick, 523 F.3d 153, 165 (3d Cir. 2008) (emphasis added) (internal quotation omitted); see also Haagensen v. Pa. State Police, No. 08-727, 2009 W L 3834007, at *6-7 (W.D. Pa. Oct. 22, 2009) (applying the four factors and upholding validity of Pennsylvania hunter harassment law). The second factor is a strong indicator that the Third Circuit, like the Sixth Circuit en banc court, would not overturn the requirements at issue here based on the alleged hypothetical application of the requirements to private couples – "a worst-case scenario that . . . has never occurred, that may never come to pass and that has not been shown to involve a materially significant number of people." Connection III, 557 F.3d at 340.

Indeed, the Third Circuit has explicitly made the same point, emphasizing that "'[s]ome sensitivity to reality is needed; an invalid application that is far-fetched does not deserve as much weight as one that is probable.'" Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215, 226-27 (3d Cir. 2004) (quoting Magill v. Lynch, 560 F.2d 22, 30 (1st Cir.1977)). Thus, in Gibson, the court rejected an overbreadth challenge to a police department directive requiring

officers to be "truthful and forthright at all times," even where the plaintiff hypothesized that this language could be applied to a police officer "lying to his son about being sick in order to avoid having to attend the child's little league baseball game," or lying to his wife about having an affair. Id. at 226-27 & n.5. The Third Circuit concluded that "these myriad hypothetical situations, which must be the best [plaintiff's counsel] could come up with, just do not persuade us that the [defendant] has applied, or will apply, the directive impermissibly with any degree of frequency." Id. at 227 n.5. Again, this ruling evinces the same reluctance to apply the "strong medicine" of facial invalidation that the Sixth Circuit en banc court expressed. Connection III, 557 F.3d at 336 (recognizing that Supreme Court authority disfavors overturning a law on its face, even in a First Amendment challenge). The Third Circuit's decision in Conchatta Inc. v. Miller, 458 F.3d 258 (3d Cir. 2006), does not suggest otherwise because there was no doubt, in that case, that the range of alcohol-serving establishments where "lewd entertainment" was banned was *substantial*, including "ordinary restaurants, . . . dinner theaters, comedy clubs, and other venues," as well as "performance spaces that serve alcohol in the lobby during intermission." Id. at 266. In contrast, as recognized by the Sixth Circuit, even assuming the age verification requirements applied to private couples (which the court did not decide), there is no basis for considering this application "substantial." Connection III, 557 F.3d at 338.[6]

---

[6]Plaintiffs fail to make a plausible showing of overbreadth sufficient to warrant evidence on this issue – particularly in light of the government's repeated assertion that the requirements do not apply to private couples. Def. Op. Br. at 14. Outside the context of private couples, the Court should, as a matter of law, uphold the requirements' *universal* application to all images that, if they depict child performers, would be child pornography, due to the government's strong interest in preventing circumvention. Connection III, 557 F.3d at 331-32; Am. Library Ass'n v. Reno ("ALA III"), 33 F.3d 78, 90 (D.C. Cir. 1994); Free Speech Coal. v. Gonzales ("FSC I"), 406 F. Supp. 2d 1196, 1207 (D. Colo. 2005). Evidence cannot show that exempting particular categories of individuals is viable when doing so would allow anyone seeking to avoid the

3.     **The Government Has Provided Sufficient Justification for the Requirements**

The cases plaintiffs cited in support of the government's evidentiary burden do not require discovery or a trial. The Court may reject plaintiffs' First Amendment claim as a matter of law because the government has met any burden that it has to establish that the requirements satisfy intermediate scrutiny. In Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555 (2001), the Court in fact confirmed its prior statement that "'history, consensus, and simple common sense'" could form an adequate basis for a statutory speech restriction, even in a strict scrutiny case. Id. at 555 (quoting Fla. Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995)).[7] Indeed, anything that demonstrates that the legislative body did not act based on "mere speculation and conjecture" is sufficient. See id.; accord Mariani v. United States, 212 F.3d 761, 773-74 (3d Cir. 2000) ("Congress may regulate speech so long as it demonstrates that the recited harms are real, and it may . . . choose to regulate just some part of that speech."). In secondary effects zoning cases, the "harm" at issue is the alleged secondary effect caused by the presence of adult-oriented businesses, but courts have not required a legislature to prove that the harm exists in every neighborhood or city where the law will apply; instead, in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), the Supreme Court held that a legislature "may rely on any evidence that is 'reasonably believed to be relevant,'" including court opinions and studies done years before the enactment or in other geographic locations. City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 438 (2002) (plurality) (quoting City of Renton, 475 U.S. at 51-52). The Supreme Court also did not require Congress to perform a "study documenting instances of draft

---

requirements to claim to be, e.g., a photojournalist or sex therapist.

[7] See Reply at 7-8 (discussing Florida Bar and other cases relying on common sense).

card mutilation or the actual effect of such mutilation on the Government's asserted efficiency interests" before upholding a federal law prohibiting the destruction of draft cards; instead, "the Court permitted Congress to take official notice, as it were, that draft card destruction would jeopardize the system." City of Erie v. Pap's A.M., 529 U.S. 277, 299 (2000) (discussing United States v. O'Brien, 391 U.S. 367 (1968)).

Here, two things are undeniably "real": first, that the use of underage performers in the creation of sexually-explicit images is harmful; and second, that there is a demand for youthful-looking performers in sexually-explicit imagery.[8] These two indisputable facts justify Congress' "predictive judgment" that there is a risk underage performers will be used, in the absence of a universal age verification scheme. See Reply, at 5-10. Other courts facing the exact same argument that plaintiffs make here, that there is no "problem" with producers actually using underage performers, have properly given these arguments short shrift. See ALA III, 33 F.3d at 89 (rejecting argument that "virtually all those engaged in providing sexually explicit materials for commercial markets already require" proof of age from performers); FSC I, 406 F. Supp. at 1206-07 (rejecting argument that "there is no evidence that regulated producers . . . ever create material involving [underage] persons"). In Brown, the Third Circuit similarly rejected a plaintiff's argument that her own protest activities had "always been peaceful" and that the government need not apply demonstration restrictions to her. Brown, 586 F.3d at 279 n.17.

---

[8]Indeed, because plaintiffs concede that the government interest in preventing child pornography is compelling, there can be no disputed factual issue on the first point. Regarding the second, this demand was well documented in the material before Congress at the time it enacted the requirements in 1988, ALA III, 33 F.3d at 89, and was only confirmed in additional evidence submitted in the District of Colorado case, FSC I, 406 F. Supp. 2d at 1207 (concluding "that there is a significant market for pornography involving young-looking performers").

**4.      Third Circuit Authority Does Not Support Plaintiffs' Fourth Amendment Claim**

As far as defendant is aware, the Third Circuit has never invalidated an inspection scheme in a facial pre-enforcement context based on hypothetical invalid *applications* of the scheme, which are properly regarded as unripe. E.g., Shoemaker v. Handel, 795 F.2d 1136, 1143 (3d Cir. 1986) (upholding warrantless urine testing scheme for jockeys but holding jockeys' as-applied privacy claims were unripe). Again, in a facial challenge, plaintiffs face the heavy burden of showing that the records inspection scheme authorized by 18 U.S.C. §§ 2257 and 2257A is unconstitutional *in every conceivable application*. See Brown, 586 F.3d at 269; Warshak v. United States, 532 F.3d 521, 529 (6th Cir. 2008) (both citing Salerno). Here, plaintiffs cannot meet that burden. Indeed, inspections will often not invade a producer's expectation of privacy at all, given that, as previously discussed, the Act itself focuses solely on inspection of records that producers create to comply with the Act and must keep separately from regular business records, and that these records may be kept by third-party custodians.[9]

Moreover, the Third Circuit has also recognized that a warrantless search may be upheld under the "totality of the circumstances," even where it does not qualify as an administrative search. United States v. Sczubelek, 402 F.3d 175, 184-87 (3d Cir. 2005) (concluding that the warrantless DNA testing of a probationer was reasonable because the blood test was a "minimal"

---

[9]To the extent plaintiffs raise a facial Fourth Amendment challenge, rather than an unripe as-applied challenge, the scheme may be upheld as a matter of law, without additional evidence. Indeed, any facial challenge to the DOJ's 2006 Final Rule, and in particular to 28 C.F.R. § 75.5, would be governed by the Administrative Procedure Act, 5 U.S.C. § 706, which limits a court's review to the administrative (or here, rulemaking) record. NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 185 (3d Cir. 2006). Other than the submitted comments, most of this record is already before the Court and indicates that the DOJ carefully tailored the inspection scheme so as to minimize the burden on producers, to the extent possible without compromising the effectiveness of the inspections. See Def. Op. Br. at 43-44 & n.18.

intrusion, the plaintiff probationer had a lowered expectation of privacy, and the government had a compelling interest in the testing scheme). Here, both the administrative search exception and the totality of the circumstances support the scheme's validity, considering the minimal intrusion involved, the reduced expectation of privacy given the clear statutory notice of the inspection scheme, and the government's compelling interest in ensuring producers verify performers' ages.

**5.     Res Judicata Bars the Claims of Free Speech Coalition and David Connors**

Free Speech Coalition and Mr. Connors have already challenged the age verification and recordkeeping requirements in the District of Colorado, and the court issued a final ruling on the merits. See Exhibits A-D (Complaint and briefing in prior case); Free Speech Coal. v. Gonzales, 483 F. Supp. 2d 1069, 1082 (D. Colo. 2007). All claims that these plaintiffs brought or "could have" brought in that action – which include all claims except for those specific to § 2257A – are thus precluded by res judicata. Lewis v. Smith, No. 08-3800, 2010 WL 226499, at *1 (3d Cir. Jan. 21, 2010); Elkadrawy v. Vanguard Group, Inc., 584 F.3d 169, 173 (3d Cir. 2009).

March 26, 2010                                                      Respectfully submitted,

                                                  TONY WEST
                                                  Assistant Attorney General
                                                  MICHAEL L. LEVY
                                                  United States Attorney
                                                  VINCENT M. GARVEY
                                                  Deputy Branch Director

                                                  /s/ Kathryn L. Wyer
                                                  KATHRYN L. WYER
                                                  U.S. Department of Justice, Civil Division
                                                  20 Massachusetts Avenue, N.W.
                                                  Washington, DC 20530
                                                  Tel. (202) 616-8475 / Fax (202) 616-8470
                                                  kathryn.wyer@usdoj.gov
                                                  *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

      Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Supplemental Brief has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.

Dated: March 26, 2010                     /s/_____
                                                   Kathryn L. Wyer