IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01126-WDM-BNB

FREE SPEECH COALITION, INC., et al.

Plaintiffs,

v.

ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States,

Defendant.

_____

**AMENDED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND
12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
_____

**TABLE OF CONTENTS**

PAGES

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND
REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOMF") . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      18 U.S.C. § 2257 AND 28 C.F.R. PART 75 DO NOT VIOLATE
        THE FIRST AMENDMENT (CLAIMS 1-7, 17-18, 25-28) . . . . . . . . . . . . . . . . . 4

        A.      THE STATUTE AND REGULATIONS ARE SUBJECT TO
                INTERMEDIATE SCRUTINY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      2257 AND THE REGULATIONS SATISFY THE REQUIREMENTS OF
                INTERMEDIATE SCRUTINY AS A MATTER OF LAW . . . . . . . . . . 7

II.     28 C.F.R. PART 75 PROPERLY IMPLEMENTS 18 U.S.C. § 2257
        (CLAIMS 8, 10, 19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.      SECTION 2257 APPLIES TO SECONDARY PRODUCERS
                (CLAIM 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      THE REGULATIONS GOVERNING PROPER
                IDENTIFICATION DOCUMENTS  AND
                LABELING CORRECTLY IMPLEMENT THE STATUTE
                (CLAIMS 10, 19) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    PLAINTIFFS' OVERBREADTH AND VAGUENESS CLAIMS
        ARE MERITLESS (CLAIMS 11-16, 20-22, AND 24) . . . . . . . . . . . . . . . . . . . . 14

        A.      CLAIM 11: FOREIGN-GOVERNMENT ISSUED IDs . . . . . . . . . . . . . 15

        B.      CLAIM 12: PICTURE IDENTIFICATION CARD
                REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.    CLAIM 13: "SADISTIC OR MASOCHISTIC ABUSE" ............ 15

D.    CLAIM 14: "PORTRAYED IN SUCH A DEPICTION
      AFTER JUNE 23, 2005" ....................................... 16

E.    CLAIM 15: "A COPY OF ANY URL ASSOCIATED WITH
      THE DEPICTION" ........................................... 16

F.    CLAIM 16: "A COPY OF THE DEPICTION" .................... 17

G.    COUNT 20: "DATE OF PRODUCTION ........................ 18

H.    COUNT 21: LOCATION OF THE REQUIRED STATEMENT
      ON A WEBSITE ............................................. 18

I.    COUNT 22: LOCATION OF REQUIRED
      STATEMENT IN COMPILATIONS .......................... 19

J.    COUNT 24: "ASSISTING" IN "ACTUAL SEXUALLY EXPLICIT
      CONDUCT ................................................. 19

IV.   PLAINTIFFS CHALLENGE REQUIREMENTS THAT DO NOT
      EXIST (CLAIMS 9, 17-18) ........................................ 20

V.    PLAINTIFFS' FIFTH AMENDMENT CLAIM IS BOTH UNRIPE
      AND UNAVAILING (CLAIM 23) .................................... 21

VI.   PLAINTIFFS HAVE NO VALID RIGHT OF PRIVACY CLAIM
      AND ALSO LACK STANDING TO ASSERT THE CLAIM
      (CLAIMS 29-30) .................................................. 24

VII.  THE STATUTE AND REGULATIONS DO NOT VIOLATE THE
      FOURTH AMENDMENT (CLAIM 31) ............................... 27

VIII. PLAINTIFFS' INTERNATIONAL LAW CLAIM IS MERITLESS
      (CLAIM 32) ...................................................... 29

CONCLUSION ............................................................ 30

# TABLE OF AUTHORITIES

**PAGES**

## CASES

*Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965) . . . . . . . . . . . . . . . . . . . . 22

*ALA v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*A.L.A. v. West Valley City*, 26 F.3d 989 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*American Federation of Gov't Employees, AFL-CIO v. Perry*, 118 F.3d 786
    (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Anobile v. Pelligrino*, 303 F.3d 107 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Arakawa v. Sakata*, 133 F. Supp. 2d 1223 (D. Haw. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Babbitt v. United Farm Workers*, 442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Balelo v. Baldrige*, 724 F.2d 753 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Baltimore Dep't of Social Services v. Bouknight*, 493 U.S. 549 (1990) . . . . . . . . . . . . . . . . . . . 24

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bear v. Patton*, 364 F. Supp. 2d 1242 (D. Kan. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bell v. Fur Breeders Agricultural Cooperative*, 348 F.3d 1224 (10th Cir. 2003) . . . . . . . . . . . . 4

*Braswell v. United States*, 487 U.S. 99 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*California v. Byers*, 402 U.S. 424 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

*Catron County Bd. Of Commissioners v. U.S. Fish & Wildlife Service*,
    75 F.3d 1429 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Central Hudson Gas & Electric Corp. v. Public Service*
    *Comm'n of New York*, 447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chavez v. Martinez*, 538 U.S. 760 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) . . . . . . . . . . . . . . . . . . . . . . . 28

*Colorado v. Right to Life Committee*, 2005 WL 2450157 (D. Col. 2005) . . . . . . . . . . . . . . . . 14

*Condon v. Reno*, 155 F.3d 453 (4th Cir. 1998), *vacated on other grounds,*
    *Reno v. Condon*, 528 U.S. 141 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) . . . . . . . . . . . . . . . . . passim

*Crosby v. Paulk*, 187 F.3d 1339 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Donovan v. Dewey*, 452 U.S. 594 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297 (10th Cir. 2001) . . . . . . . . . . . 4, 15

*Eastwood v. Dep't of Corrections of the State of Oklahoma*, 846 F.2d 627
    (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Falvo v. Owasso Independent School District*, 233 F.3d 1203 (10th Cir. 2000) ,
    *rev'd on other grounds, Owasso Indep. School District v. Falvo,*
    233 F.3d 1203 (2002), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Faustin v. City and County of Denver, Colorado*, 423 F.3d 1192 (10th Cir. 2005) . . . . . . . . . 14

*Flanagan v. Munger*, 890 F.2d 1557 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Grand Jury Subpoena Duces Tecum to John Doe*, 368 F. Supp. 2d 846
    (W.D. Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Grosso v. United States*, 390 U.S. 62 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Haynes v. United States*, 390 U.S. 85 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Heideman v. South Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . 5, 6

*Herring v. Keenan*, 218 F.3d 1171 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hill v. Colorado*, 530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 14, 15

*Howell v. Roberts*, 656 F. Supp. 1150 (N.D. Ga. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Livsey v. Salt Lake County*, 275 F.3d 952 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mangels v. Pena*, 789 F.2d 836 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Marchetti v. United States*, 390 U.S. 39 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

*New York v. Burger*, 482 U.S. 691 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29

*Nilson v. Layton City*, 45 F.3d 369 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Peterman v. Coleman*, 764 F.2d 1416 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Pryor v. Reno*, 171 F.3d 1281 (11th Cir. 1999), *vacated on other grounds*,
    *Reno v. Condon*, 528 U.S. 141 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Renne v. Geary*, 501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sheets v. Salt Lake County*, 45 F.3d 1383 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989) . . . . . . . . . . . . . . . . . 28

*Slayton v. Willingham*, 726 F.2d 631 (10th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144
    (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Sundance Assocs., Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sutton v. United Airlines, Inc.*, No. 96-S-121, 1996 WL 588917 (D. Col. 1996) . . . . . . . . . . . . 4

*Travis v. Reno*, 12 F. Supp. 2d 921 (W.D. Wis.), *rev'd on other grounds*,
    163 F.3d 1000 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States Securities and Exchange Commission v. Fehn*, 97 F.3d 1276
    (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Biswell*, 406 U.S. 311 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States v. Flores*, 753 F.2d 1499 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Fort*, 248 F.3d 475 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Lamb*, 945 F. Supp. 441 (N.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Long*, 831 F. Supp. 582 (W.D. Ky. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Roeder*, 526 U.S. 736 (10th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Stirling*, 571 F.2d 708 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. X-Citement Video*, 982 F.2d 1285 (9th Cir. 1992),
     *rev'd on other grounds*, 513 U.S. 64 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.2d 1248
     (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Ward v. Utah*, 398 F.3d 1239 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Whiteside & Co. v. SEC*, 883 F.2d 7 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## **STATUTES**

18 U.S.C. § 1028 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 2256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

P.L. 100-568, 102 Stat. 2853 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

P.L. 100-690, 102 Stat. 4487 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

P.L. 101-647, 104 Stat. 4816 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

P.L. 108-21, 117 Stat. 650, 685 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

## **REGULATIONS**

28 C.F.R. Part 75, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

57 Fed. Reg. 15017 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 13, 18

## LEGISLATIVE AND ADMINISTRATIVE MATERIALS

148 Cong. Rec. S4391-01, 4392 (May 15, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14

S. Rep. No. 108-2, 1st Sess., at 9 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

69 Fed. Reg. 35547 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

70 Fed. Reg. 29607 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## REPORTS

*Final Report of the Attorney General's Commission on Pornography* (July 1986) . . . . . . 1, 7, 10

## LAW REVIEW ARTICLE

Robert P. Mosteller, *Simplifying Subpoena Law: Taking the Fifth Amendment Seriously*, 73 Va. L. Rev. 1 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## INTRODUCTION

Plaintiffs' 32-count challenge to 18 U.S.C. § 2257 and its implementing regulations establishes only that the number of claims in a complaint does not reflect their merit. Plaintiffs' claims include a First Amendment challenge that two courts of appeals have already rejected, and over ten unavailing constitutional vagueness claims that feign mystification over the meaning of such terms as "homepage." Further, plaintiffs erroneously assert that a right to "privacy" in basic driver's license information of individuals who have sex for money on camera trumps basic protections designed to protect children from sexual exploitation. Plaintiffs also add Fourth and Fifth Amendment claims that ignore the limited nature of the inspections that the statute authorizes, as well as their basic regulatory purpose. Not content to challenge the regulations as they are, plaintiffs also assail provisions that do not exist and erroneously challenge other regulations as *ultra vires*. The Court also lacks jurisdiction to consider many of the claims that they raise, including their claims related to privacy and the Fifth Amendment.

## STATUTORY AND
## REGULATORY BACKGROUND

Defendant has previously explained the background and nature of the statute and regulations. *See* Defendant's Opposition to Motion for Temporary Restraining Order ("Def. Opp.") at 3-7.[1]

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOMF")[2]

1.   Absent documentation, it is often not possible to determine a performer's age. *ALA v. Reno*, 33 F.3d 78, 85, 89 (D.C. Cir. 1994); *Connection Distributing Co. v. Reno*, 154 F.3d 281, 290

---

[1]   The Report of the Attorney General's Commission on Pornography ("Final Report"), discussed *id*. at 3-4, may be accessed at www.porn-report.com. Defendant adds only that plaintiffs repeatedly mislabel as "dossiers" the limited information that producers must maintain. *See*, *e.g.*, Amended Complaint ("Am. Compl.") ¶¶ 2, 33-39, 45-47, 294-95. A "dossier" is "a file of papers containing a *detailed* report or *detailed* information." Webster's Ninth New Collegiate Dictionary (1990) (emphasis added). Required records only must include a performer's driver's license information, any additional names used by the performer, and a copy of the sexually explicit depiction. 18 U.S.C. § 2257(b); 28 C.F.R. § 75.2(a)(1).

[2]   Defendant's 12(b)(1) and 12(b)(6) motions do not rely on this statement or exhibit 1.

292 (6th Cir. 1998); Defendant's Preliminary Injunction Hearing Exhibits ("Def. PI Exs.") A, Website Compilation; Def. PI Exs. D-F, Advertising Fliers of Plaintiff New Beginnings, Inc. ("Advertising Fliers"); Def. PI Ex. G, Excerpt from New Beginnings Buyers Guide ("Buyers Guide").

2.      There is a sizeable market for sexually explicit depictions of "teens" and individuals with less mature physical characteristics.  Def. PI Ex. A, Website Compilation; Def. PI Ex. B, Plaintiffs' Response to Interrogatory ("Resp. To Interrog.") No. 5; Def. PI Ex. C, Plaintiffs' Second Supplemental Response ("Supp. Resp.") to Interrog. No. 15.  *See also* SOMF No. 9.

3.      Numerous websites contain images of young-looking performers engaged in various sexually explicit activities, including depictions of heterosexual sex and lesbian and homosexual sex between young-looking subjects, depictions of sadomasochism and purported incest involving young-looking subjects, and have names that explicitly pander in the name of the site itself to the desire to see sexually explicit depictions of teens.  Def. PI Ex. A, Website Compilation.

4.      A significant percentage of the domain names owned by plaintiff David Conners, by their names alone, cater to such demand.  *Id*. (File 17);  Def. PI Ex. B, Resp. to Interrog. No. 5.

5.      A significant percentage of the relatively few number of websites that plaintiffs claim have had to or will have to shut down as a result of section 2257, by their names alone, seek to attract viewers with reference to sexually explicit depictions involving young performers, and most of the others could easily include such content.  Def. PI Ex. C, Supp. Resp. to Interrog. No. 15.

6.      A young-looking woman named "Holly" (who is featured in sexually explicit depictions on plaintiff Conners' website) was previously asked for identification by police officers based on their belief that she could be under 18.  Exhibit 1 to Defendant's Motion for Summary Judgment ("Ex. 1"), Excerpt from www.davecummings.com, November 7, 2005.

7.      Plaintiff Conners had to remove "thousands of pieces of photographic content from the free websites," because such content was provided by "secondary producers who are unable or unwilling

2

to provide picture identification cards or other identifying documents" for the performers in the images. Defendant's Trial Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, ("Def. Trial Br.") Ex. 2, Pls' Resp. to Interrog. No. 7, at 34.

8.      Mr. Conners and/or his partners removed and permanently deleted much of the pornographic content from his websites *after* the filing of the lawsuit.  Defendant's Designations from Deposition of David Conners ("Conners Dep.") at 87:24-88:19.

9.      The sexually explicit film industry also caters to the vast demand for pornography with young-looking performers.  Def. PI Exs. D-F, Advertising Fliers; Def. PI Ex. G, Buyers Guide.

10.     During the period that the prior regulations were in effect, *see* 57 Fed. Reg. at 15021-22, plaintiff David Conners made 41 sexually explicit films, and plaintiff New Beginnings sold over 1 million such films, and potentially well over that number.  Def. Desigs. From Leonard Friedlander Deposition at 39:14-20; Pls' PI Ex. 1, Conners Dec. at ¶ 6; Def. Ex. B, Pls' Resp. To Interrog. No. 4.

11.     The availability of sexually explicit speech on the Internet significantly increased during the period when the prior regulations were in effect, with plaintiffs estimating that there are now 500,000 U.S. based websites with sexually explicit depictions.  Def. Desigs. From Jeffrey Douglas Deposition ("Douglas Dep.") at 102:16-20.

12.     The cross-indexing required by the regulations can be accomplished inexpensively and efficiently using basic database software, and does not impose a significant burden.  70 Fed. Reg. 29607, 29613 (2005); Declaration of Howard Schmidt, August 4, 2005 ("Schmidt Dec.") at ¶¶ 14-15.

13.     The requirement that secondary producers maintain a copy of each sexually explicit depiction is not burdensome because secondary producers seldom delete the content they produce, and thus have an independent commercial reason for storing the content.   Douglas Dep. at 112:1-17.

14.     Even if the regulations required secondary producers to retain content that they would otherwise delete, the storage requirements would not be significant.  Schmidt Dec. at ¶¶ 5, 11.

## STANDARD OF REVIEW

The "plaintiff carries the burden of proving jurisdiction." *Bear v. Patton*, 364 F. Supp. 2d 1242, 1244 (D. Kan. 2005). Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (internal citation and quotation marks omitted). A Rule 12(b)(6) motion should be granted if "the plaintiff can prove no set of facts that would entitle it to relief, even when all well-pleaded allegations" are "accepted as true and construed in the light most favorable to the plaintiff." *Sutton v. United Airlines, Inc.*, No. 96-S-121, 1996 WL 588917, *1 (D. Col. 1996). A court need not accept conclusory allegations in evaluating a 12(b)(1) or 12(b)(6) motion. *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1306 (10th Cir. 2001); *Bear*, 364 F. Supp. 2d at 1244. "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bell v. Fur Breeders Agricultural Cooperative*, 348 F.3d 1224, 1230 (10th Cir. 2003).

## ARGUMENT

**I.     18 U.S.C. § 2257 AND 28 C.F.R. PART 75 DO NOT VIOLATE THE FIRST AMENDMENT (CLAIMS 1-7, 17-18, 25-28)**

Plaintiffs' First Amendment claims fail as a matter of law. Both the statute and regulations require only that producers of sexually explicit depictions ensure that the performers in those depictions are above the age of majority, and that they maintain certain records as proof of their compliance. As two courts of appeals have previously found, this framework prohibits no speech and is narrowly tailored to advance the government's compelling interest in protecting children from sexual exploitation.

A.     THE STATUTE AND REGULATIONS ARE SUBJECT TO INTERMEDIATE SCRUTINY

Counts 1-3 of plaintiffs' amended complaint deny the applicability of the intermediate scrutiny standard for several unavailing reasons. *First*, plaintiffs mischaracterize the statute and misread the

Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), in alleging that section 2257 is unconstitutional because it attaches a "presumption of unlawfulness" to presumptively protected speech. Am. Compl. ¶¶ 30-39; Supplemental Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order ("Supp. Mem.") at 5. In fact, section 2257 penalizes a producer's failure to take a basic precaution – *i.e.*, checking to make sure performers are at least 18. It criminalizes no speech, and does not require the producer to prove that the speech was lawful. What is illegal is the failure to take the precaution and maintain records that the precaution was taken. Further, unlike the statute in *Ashcroft*, 535 U.S. at 255-56, section 2257 does not apply to possessors or distributors. 18 U.S.C. § 2257(a), (h)(3); 28 C.F.R. § 75.1(c)(1)-(2), (4)(ii). It was also critical to the Court's decision in *Ashcroft* that defendants could establish the lawfulness of their speech "only after prosecution [had] begun" where defendants had to prove that the speech was not child pornography against an evidentiary burden that the Court held was "not trivial." *Ashcroft*, 535 U.S. at 255-56. By contrast, a producer may ensure that it is in compliance with section 2257 by maintaining the required records and ensuring that they are properly labeled.

*Second*, notwithstanding the prior contrary decisions of the D.C. and Sixth Circuits, plaintiffs allege that section 2257 is "content-based." Am. Compl. ¶ 43. *ALA*, 33 F.3d at 86; *Connection*, 154 F.3d at 290-91. Intermediate scrutiny, however, applies to statutes "not only if they are content neutral in the classic sense, but also if the government's regulatory purpose is not based upon the communicative impact of the speech." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1192-93 (10th Cir. 2003); *Hill v. Colorado*, 530 U.S. 703, 719-20 (2000) (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Here, "it is clear that Congress enacted the Act not to regulate the content of sexually explicit materials, but to protect children by deterring the production and distribution of child pornography." *ALA*, 33 F.3d at 86.

*Third*, section 2257 and the implementing regulations do not impose a prior restraint on speech as alleged in paragraphs 54-61 of plaintiffs' amended complaint. The regulations that the Court has "found invalid as prior restraints have had this in common: they gave *public officials* the power to deny use of a forum in advance of actual expression." *Hill*, 530 U.S. at 735 (*quoting Ward*, 491 U.S. at 795) (additional citation and internal quotation marks omitted) (emphasis in original). Section 2257 involves no licensing or preclearance system nor does it require speakers to obtain the permission of public officials prior to speaking. The mere fact that a regulation requires that a party take some action in association with communicating a message does not transform the regulation into a prior restraint.[3]

The Supreme Court has further held that while the First Amendment "will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate . . . ."[4] If anything, the category of materials at issue here – *i.e.*, depictions of actual sexual activity – stretches the limits of the First Amendment even further than the activity at issue in *Barnes* and *American Mini Theatres*. An agreement to perform sex acts for money

_____

[3]  If it did, the requirement that music performers use a city's sound system prior to performing, *Ward*, 491 U.S. at 793 and n.5, that abortion protesters obtain the consent of pedestrians outside an abortion clinic before approaching the pedestrian, *Hill*, 530 U.S. at 735 n.42, or indeed, any time, place, and manner restriction would be subject to prior restraint analysis. Such restrictions, however, are not prior restraints. Even licensing systems that apply only to adult businesses are constitutional if they contain administrative deadlines and objective criteria unrelated to the content of the expression, so long as ordinary judicial review procedures are available. *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 781-83 (2004). Content-neutral permit requirements are also constitutional so long as they contain adequate standards to guide official discretion, and provide for judicial review. *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.2d 1248 (10th Cir. 2004).

[4]  *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70 (1976). *See also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565 (1991) (stating that nude dancing "is expressive conduct within the outer perimeters of the First Amendment" though "only marginally so"); *Heideman*, 348 F.3d at 1190 ("For First Amendment purposes, the important point is that the Plaintiffs are able to convey their chosen message – not that they are able to do so in a state of undress.").

is the definition of prostitution, which is illegal everywhere in the country except parts of Nevada.[5] *See* Final Report, Part Four, Chapter 2, Conclusions and Recommendations (terming it "abundantly clear" that the bulk of commercial pornographic modeling (that is, all performances which include actual sexual intercourse), is a form of prostitution.). The illegality of the Act that must take place to create the material at issue is an additional reason that intermediate scrutiny applies. *Cf. Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 563-64 (1980) (holding that there is no First Amendment right to advertise illegal activity).

> **B.     SECTION 2257 AND THE REGULATIONS SATISFY THE REQUIREMENTS OF INTERMEDIATE SCRUTINY AS A MATTER OF LAW**

Section 2257 and the regulations satisfy the requirements of intermediate scrutiny. *See* Def. Opp. at 9-13; Def. Trial Br. at 3-15; Reply to Plaintiffs' Pre-Hearing Brief ("Def. Reply") at 5-9. The parties agree that the "public interest in protecting actual children from participation in pornography is substantial and compelling," Supp. Mem. at 6, *Connection*, 154 F.3d at 290; *ALA*, 33 F.3d at 88, and it is "obvious" that the requirements of section 2257 and the regulations "advance the abatement of child pornography in fundamental ways." *Id*. at 88-90; *see also Connection*, 154 F.3d at 292.[6] Section 2257 "ensures that primary producers actually confirm that a prospective performer is of age" and "deters children from attempting to pass as adults." *ALA*, 154 F.3d at 88-89. Moreover, "it creates the only mechanism by which secondary producers (who by definition have no contact with performers)

---

[5]  *See*, *e.g.*, Colo. Rev. St. § 18-7-201 ("Any person who performs or offers or agrees to perform any act of sexual intercourse, fellatio, cunnilingus, masturbation, or anal intercourse with any person not his spouse in exchange for money or other thing of value commits prostitution."); *see also United States v. Roeder*, 526 U.S. 736, 738-39 (10th Cir. 1975) (Mann Act's prohibition on interstate transportation of a woman or girl "for the purpose of prostitution" could be constitutionally applied to a filmmaker's transportation of a woman across state lines for the purpose of producing a pornographic movie).

[6]  In determining that a statute will support the government's stated interest, the government may "rely on any evidence that is 'reasonably believed to be relevant,'" and courts "'must accord substantial deference to the predictive judgments of Congress.'"  *See* Def. Reply Br. at 7 notes 1-2.

can be required to verify the ages of the individuals pictured in the materials they will be producing." *Id*. at 89. *See also* 148 Cong. Rec. S4391-01, 4392 (May 15, 2002) (Sen. Hatch). Congress also had the benefit of the results of the Attorney General Commission's comprehensive study of the pornography industry, which "after fourteen months of investigation" recommended the verification and record-keeping requirements that became section 2257. *See ALA*, 33 F.3d at 89.[7] The Act's 2257's labeling requirements are also narrowly tailored to fulfilling the goals of the Act because they ensure that the required records can be located, *ALA*, 33 F.3d at 92, and "provide[] a significant benefit to those who only wish to possess or distribute pornography that depicts only youthful-looking adults or virtual children." S. Rep. No. 108-2, 1st Sess., at 9 (2003). Section 2257 also satisfies the final element of the intermediate scrutiny standard in that it leaves open ample alternative means of communication. Indeed, section 2257 forecloses *no* means of communication. *See also* 148 Cong. Rec. S4391-01, 4392 (May 15, 2002) ("These record keeping requirements are unobjectionable since they do not ban anything."). It requires only that a producer check and maintain a copy of performers' identification.

Counts 25-27 of plaintiffs' amended complaint assert that certain regulations "unduly burden" the plaintiffs' speech. Am. Compl. ¶¶ 260-281. The challenged regulations, however, are important components that are narrowly tailored to achieve the goals of the statute. The cross-indexing

---

[7] In Count 6 of their amended complaint, plaintiffs assert that the statute and regulations do not advance the statute's interest in reducing child pornography because they do not require that the records or required statement contain the date of original production, Am. Compl. ¶¶ 80-88, and thus, according to plaintiffs, "will not guarantee that the Government is able to ascertain whether all performers in regulated visual depictions were adults on the date of production." Am. Compl. ¶ 85. Inspections, however, primarily ensure that producers take the basic step of ascertaining the ages of performers in the sexually explicit depictions that they produce, manufacture, or publish. The original date of production is unnecessary to achieving this goal. Indeed, during the first decade of the statute's existence, information obtained during inspections could not be used in a child pornography prosecution, *see* P.L. 100-690, 102 Stat. 4487 (1990) – demonstrating that the statute's principal purpose was not to enable inspectors to detect child pornography. Plaintiffs' allegation also makes clear that the records will be useful in many instances for determining the age of performers. If anything, exempting secondary producers from having to use the date of production in their statements accommodates the interests of secondary producers and further reflects DOJ's narrow tailoring of the regulations.

requirements, referred to in paragraph 266 of plaintiffs' amended complaint, have been in place for well over a decade, *see* 57 Fed. Reg. 15017, 15021 (1992) (formerly 28 C.F.R. § 75.3), and were previously upheld by the D.C. Circuit Court of Appeals in *ALA*, 33 F.3d at 91. DOJ justifiably concluded that the requirements remain important and can be accomplished efficiently using computer software. 70 Fed. Reg. 29607, 29613 (2005). Plaintiffs also challenge the requirement that copies of works be maintained with the records. Am. Compl. ¶ 265. There are, however, many reasons why this requirement is important and not unduly burdensome. *See* 70 Fed. Reg. at 29613.

Plaintiffs have failed even to establish their standing to challenge the requirement that producers make records available for 20 hours each week because plaintiffs have made no allegation that the requirement imposes unconstitutional burdens on any of the plaintiffs. Am. Compl. ¶ 267. Regardless, the requirement that records be available for an amount of time equal to half a work week, reasonably balances producers' nontraditional hours with the government's need for an effective inspection regime. 70 Fed. Reg. at 29613. There is also no basis to plaintiffs' challenge to the length of time that records must be maintained. Am. Compl. ¶ 268. The challenge, at a minimum, is unripe because plaintiffs have not established that any plaintiff's speech was unduly burdened by this requirement at the time plaintiffs filed their amended complaint. The regulation balances the interests of producers with the Department's interest in requiring the maintenance of records for a period commensurate with the increased child pornography statute of limitations. *See ALA*, 33 F.3d at 91 (upholding a five-year requirement based on the statute of limitations that was then in effect); 70 Fed. Reg. at 29614.

Even were the Court unable to conclude based solely on the amended complaint that the plaintiffs' claim should be dismissed, defendant would be entitled to summary judgment. The factual record confirms the importance of section 2257 to reducing child pornography. Discovery, for example, has confirmed the demand that exists for young-looking models and that "'[p]erhaps the single most common feature of models is their relative, and in the vast majority of cases, absolute youth,'" *ALA*, 33

F.3d at 89-90 (*quoting Final Report* at 855). *See* SOMF Nos. 2-9 and cited material. In pointing to certain performers who are obviously over 18, such as plaintiff Conners, plaintiffs miss the point that an alternative standard based on obvious maturity would not be as effective at ensuring that no children are used in sexually explicit depictions as the bright-line rule that the Attorney General's Commission recommended and Congress adopted. *Connection*, 154 F.3d at 292. If anything, plaintiff Conners and his websites reinforce the Act's importance. SOMF Nos. 4, 6-8.

Discovery also has confirmed that section 2257 has had no noticeable impact on the quantity of sexually explicit speech, whether in the form of movies, magazines, or Internet depictions. SOMF Nos. 10-11. Discovery has also confirmed that the requirement that copies be maintained and the cross-indexing requirement are not unduly burdensome. SOMF Nos. 12-14. Moreover, unlike in *Ashcroft*, 535 U.S. at 247-48, where the plaintiffs identified important works that were potentially burdened by the statute, plaintiffs have not identified any works that cannot be produced, published or distributed as a result of section 2257, let alone a sufficient number to justify the conclusion that section 2257 fails to leave ample channels of communication. Instead, plaintiffs refer to the material at issue in only general terms – presumably aware that hard-core pornography, even if not obscene, cannot seriously be described as having "serious literary, artistic, political, or scientific value." *Id*. at 246. Plaintiff Conners, for example, describes the scenes of his films as containing a "30-to-60 second plot" that is merely the "setup for the sex scene." Conners Dep. at 15:9-16:15, 21:15-19.

## II.     28 C.F.R. PART 75 PROPERLY IMPLEMENTS 18 U.S.C. § 2257 (CLAIMS 8, 10, 19)

### A.     SECTION 2257 APPLIES TO SECONDARY PRODUCERS (CLAIM 8)

The text, structure, purpose, and history of section 2257, the congressional acquiescence doctrine, and the principle of deference to reasonable agency interpretations all demonstrate that the definition of "produces" in 18 U.S.C. § 2257(h)(3) encompasses secondary producers. Def. Opp. at 14-24; Trial Br. at 15-17; Reply Br. at 2-5. The application of the record-keeping requirements of section

2257 to secondary producers reasonably interprets the "but does not include" exclusion relied on by plaintiffs to modify only the words "and includes the duplication, reproduction, or reissuing of any such matter," rather than also qualifying the words "produce, manufacture, or publish." By contrast, plaintiffs' interpretation would reduce the introductory verbs "produce, manufacture or publish and includes duplication, production, or reissuing" to a small subset of their commonly understood meaning and render them virtually redundant.

Congress also resolved any doubt about the meaning of section 2257 by modifying the definition of "produces" in section 2257(h) against the backdrop of DOJ's longstanding interpretation of that provision as set forth in the regulations. This Circuit determines whether Congress has ratified a longstanding administrative interpretation by examining whether there is abundant evidence that Congress contemplated and authorized the interpretation. *Catron County Bd. Of Commissioners v. U.S. Fish & Wildlife Service*, 75 F.3d 1429, 1438 (10th Cir. 1996). In addition, "the congressional acquiescence theory applies only where Congress has revisited the language subject to the administrative interpretation." *Id*. The acquiescence, however, need not be "specifically embodied in a statutory mandate." *Id*. (citation and internal quotation marks omitted). Here, Congress revisited and specifically clarified the definition of "producer" without in any way contradicting or questioning DOJ's longstanding regulatory interpretation. P.L. 108-21, 117 Stat. 650, 685 (2003).

There is also incontrovertible evidence that Congress was aware of the regulatory definition of "producer" when it enacted the PROTECT Act. The statute specifically contemplates inspections "of *any producer of materials regulated pursuant to* section 2257 of title 18, United States Code, *and section 75 of title 28 of the Code of Federal Regulations*." P.L. 108-21, Section 511(b), 117 Stat. 650, 685 (2003) (emphasis added). Indeed, it is difficult to imagine how Congress could not have been aware of the basic regulatory framework that had implemented the statute for the decade prior to the PROTECT Act. The framework, after all, was not intricate, but rather occupied only two pages of the

11

Federal Register.  Congress was also aware at the time of enactment of the D.C. Circuit's decision in *ALA*, 33 F.3d 78 (D.C. Cir 1994), *see* S. Rep. No. 108-2 at 9 (2003), which extensively discussed, and upheld the constitutionality of, the application of the requirements to secondary producers.  At the same time, nothing in the statute or legislative history suggests that Congress was aware that DOJ's interpretation was in any way controversial.  In addition, the Act's legislative findings demonstrate Congress' belief in the importance of controlling downstream Internet trafficking of child pornography, P.L. 108-21, Secs. 501(2), (6), 117 Stat. 650, 677-78 (2003), and its desire to "protect children to the greatest extent possible without crossing [the constitutional] line."  148 Cong. Rec. S4391-01, S4394.  Congress simply did not intend to protect purveyors of hard-core pornography in a way that was not required by the Constitution, that was contrary to the way that it knew the Department had been interpreting the law for more than a decade, and that would undermine the purposes of section 2257.

*Sundance Assocs., Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998), thus does not control this case because (1) it addressed a different construction of the statute and (2) it preceded by five years Congress' approval of the Department's application of the statute to secondary producers and the Department's considered effort to implement Congress' intent in a new round of rule-making that followed the PROTECT Act and relied on its "detailed legislative findings."  70 Fed. Reg. at 29608.

**B.    THE REGULATIONS GOVERNING PROPER IDENTIFICATION DOCUMENTS AND LABELING CORRECTLY IMPLEMENT THE STATUTE (CLAIMS 10, 19)**

Plaintiffs incorrectly assert that DOJ has adopted regulations inconsistent with the statutory requirements as to the identification that producers may use to verify the age of performers.  Am. Compl. ¶¶ 131-148.  The regulations provide that the legal name and date of birth of performers must be "obtained by the producer's examination of a 'picture identification card.'"  28 C.F.R. §§ 75.1(b), 75.2(a)(1).  18 U.S.C. § 2257(b)(1) provides that producers must "ascertain, by examination of an identification document containing such information," as defined in 18 U.S.C. § 2257(h)(2), "the

performer's name and date of birth, *and require the performer to provide such other indicia of his or her identity as may be prescribed by regulations*." Thus, even assuming that the regulations require additional identification, Congress expressly authorized DOJ to do so.

Further, the regulations do not reference 18 U.S.C. § 1028(d) (which is incorporated in section 2257(h)(2)) because it "is redundant in light of the final rule's defined term picture identification card." 70 Fed. Reg. at 29616. The amended complaint also does not establish that the plaintiffs are adversely affected by a discrepancy between the definitions, and plaintiffs thus lack standing even to assert the claim. Moreover, both statutes include identifications issued by the United States or its political subdivisions, and plaintiffs identify no situation where a foreign performer could legally work in the United States without having a United States-issued employment authorization document. Plaintiffs appear to contend that producers who keep their section 2257 records in the United States cannot film foreign performers abroad unless the foreign performers have American-issued identification. Am. Compl. ¶ 144. If so, plaintiffs are incorrect. *See infra* at 15.

28 C.F.R. § 75.6(b)(1) requires a statement to be affixed to sexually explicit material that includes the "title of the" depiction unless the title is set out elsewhere. Under section 75.6(b)(2)-(3), the statement must contain the date of production, manufacture, publication, duplication, reproduction, or reissuance of the matter, and the street address where the records may be located. These requirements are unchanged from the 1992 version of the regulations. 57 Fed. Reg. at 15022 (former 28 C.F.R. § 75.6(a)). Plaintiffs contend that the first two requirements exceed DOJ's authority under the statute. In fact, requiring the title and date are minor requirements that are within the Attorney General's authority to "issue appropriate regulations" to carry out the section. 18 U.S.C. § 2257(g). Section 2257(e)(1) of the statute, moreover, requires that producers shall affix "in such manner and in such form as the Attorney General shall prescribe, a statement describing where the records required by this section with respect to all performers depicted in that copy of the matter may be located." Because the title or

identifying number is one way of locating the records, requiring the title in the label specifically relates to determining where the records "may be located" under section 2257(e)(1). 28 C.F.R. § 75.2(a)(3); *see* 28 C.F.R. § 75.2(a)(2) (requiring that performers' names be indexed by title).

## III.  PLAINTIFFS' OVERBREADTH AND VAGUENESS CLAIMS ARE MERITLESS (CLAIMS 11-16, 20-22, AND 24)

A provision is unconstitutionally vague if "'it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'" or "'if it authorizes or even encourages arbitrary and discriminatory enforcement.'" *Faustin v. City and County of Denver, Colorado*, 423 F.3d 1192, 1201-02 (10th Cir. 2005) (*quoting Hill v. Colorado*, 530 U.S. at 732). Courts "must be vigilant in applying a most exacting analysis to'" facial challenges. *Faustin*, 423 F.3d at 1199 (*quoting Ward*, 398 F.3d at 1247). "A plaintiff may challenge a statute as overly vague where the statute's deterrent effect on legitimate expression is both 'real and substantial' and the statute is not 'readily subject to a narrowing construction by the [] courts,'" *Faustin*, 423 U.S. at 1202, and where "it is impermissibly vague in all its applications." *Colorado v. Right to Life Committee*, 2005 WL 2450157 at *5 (D. Col. 2005) (*citing Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005)).

Plaintiffs ignore the plain language of the challenged provisions, the official commentary, and defendants' response to their earlier requests for clarification of certain provisions. Joint PI Ex. 1, Letter from Kaplan to Sirkin and Kinsley ("7/18/05 Letter") at 1-2. Further, as plaintiffs own amended complaint demonstrates, the challenged provisions would be readily susceptible to a narrowing construction to resolve any posited ambiguity. Also, because the challenged restrictions prohibit no speech but at most require the collection and maintenance of records, ambiguity would at worst lead a producer to keep records unnecessarily, and thus could not even arguably implicate the basic reason for permitting facial challenges in the First Amendment context – *i.e.*, to prevent the substantial deterrence of the speech of others not before the Court. *See Hill*, 530 U.S. at 731.

A.      CLAIM 11: FOREIGN-GOVERNMENT ISSUED IDs:  Plaintiffs first challenge 28 C.F.R. § 75.1(b), which permits producers to verify the ages of foreign performers by examining "a foreign government-issued" identification "when both the person who is the subject of the picture identification card and the producer maintaining the required records are located outside the United States."  Am. Compl. ¶¶ 149-155  Plaintiffs incorrectly assert that this formulation is "impermissibly vague" as to "whether the 'located outside the United States' requirement means permanently or temporarily or at the time the visual depiction is produced."  Am. Compl. ¶¶ 152-53.

The words "located outside the United States" include producers who are outside the United States at the time of production.  Any other interpretation would read in a "permanence" restriction that is not in the language of the definition.   Moreover, because even plaintiffs agree that the provision is, at a minimum, "readily subject" to that narrowing construction, the provision cannot be unconstitutionally vague.  *See also* Joint PI Ex. 1, 7/18/05 Letter.

B.      CLAIM 12: PICTURE IDENTIFICATION CARD REQUIREMENTS:  Plaintiffs assert in conclusory fashion that the picture identification requirement in 28 C.F.R. § 75.2 is "substantially overbroad insofar as it burdens a substantial amount of protected expression without justification."  Because the claim consists of only a conclusory legal allegation, plaintiffs have failed to state a claim or establish the Court's jurisdiction to consider the claim.  *E.F.W.*, 264 F.3d at 1306.

C.      CLAIM 13: "SADISTIC OR MASOCHISTIC ABUSE":   Plaintiffs fail even to attempt to explain what is vague about  the words "sadistic or masochistic abuse" in the statutory definition of "sexually explicit conduct."  *See* 18 U.S.C. § 2256(2).  Nor do plaintiff allege that the words are "impermissibly vague in all" applications or that a narrowing construction would be unavailable.  Further, as various courts have held, these words are not vague.[8]

---

[8] *United States v. X-Citement Video*, 982 F.2d 1285, 1287-88 (9th Cir. 1992), *rev'd on other grounds*, 513 U.S. 64 (1994) (upholding 18 U.S.C. § 2256(2) against vagueness challenge); *United*

D.    CLAIM 14: "PORTRAYED IN SUCH A DEPICTION AFTER JUNE 23, 2005":

Plaintiffs assert that the requirement that producers maintain copies of sexually explicit depictions for performers "portrayed in such a depiction after June 23, 2005," "can be interpreted to apply to only a visual depiction actually made after June 23, 2005, or . . . to any publication or reproduction after June 23, 2005, of a visual depiction actually made prior to that date."  Am. Compl. ¶¶ 171-75.  The requirement referred to by plaintiffs applies only to works in the former category.  The word "portrayed" refers to the creative process.  A subject of a painting is "portrayed" in a painting at the time the painting is made, not at the time that copies of it are sold in a museum gift shop or published in a book.  Plaintiffs also effectively admit that this provision is subject to a narrowing construction, *see* Am. Compl. ¶ 172.

E.    CLAIM 15:  "A COPY OF ANY URL ASSOCIATED WITH THE DEPICTION":

28 C.F.R. § 75.2(a)(1)(ii) requires that for any performer portrayed in a sexually explicit depiction on the Internet, the producer must maintain "a copy of any URL associated with the depiction."  Plaintiffs assert the word "copy" "can be equally interpreted to mean a record of purely the textual information contained in the URL designation, or a record containing a live link of the URL to the image on the Internet, or a record containing a URL-designated link to a copy of the image on a hard drive not connected to the Internet."  Am. Compl. ¶ 183.

The words refer to the "textual information in the URL designation."  A "uniform resource locator" is the Internet address of a particular website on the World Wide Web.  The latter two interpretations proposed by plaintiffs are not "equally" plausible, but rather are striking examples of plaintiffs' determined effort to find fault with the regulations.  Plaintiffs, moreover, again concede the

---

*States v. Lamb*, 945 F. Supp. 441, 450 (N.D.N.Y. 1996) (same); *United States v. Long*, 831 F. Supp. 582, 587 (W.D. Ky. 1993) (same and specifically noting that the "ordinary meaning of the words" "sadistic," "masochistic," and "abuse" "gives adequate notice of the conduct proscribed by the scope of the Act      . . . ."); *United States v. Rearden*, 349 F.3d 608 (9th Cir. 2003) (rejecting as-applied vagueness challenge to the word "sadistic" in Sentencing Guidelines).

availability of a narrowing construction that would resolve any ambiguity, *see* Am. Compl. ¶ 183 (stating that the term "can be equally interpreted as . . . ").  Plaintiffs assert that it is unclear whether the phrase "associated with the depiction" encompasses "millions" of "automatically generated URLs."  Am. Compl. ¶ 181.  The commentary explains, however, that the words require that the "indexing also include *any static URLs* associated with depictions of that performer," but not "dynamically generated URLs."  70 Fed. Reg. 29607, 29617 (2005) (emphasis added).  Moreover, plaintiffs again admit that a narrowing construction would be available even if there were any ambiguity.

      F.    <u>CLAIM 16: "A COPY OF THE DEPICTION"</u>: 28 C.F.R. § 75.2(a)(1)(i) requires that producers maintain a "copy" of sexually explicit depictions with the required records.  The word "copy" when  used "in reference to a sexually explicit depiction means the sexually explicit image itself (*e.g.*, a film, an image posted on a web page, an image taken by a webcam, a photo in a magazine, etc.)."  28 C.F.R. § 75.1(e)(2).  Contrary to plaintiffs' contention, the definition does not "appear[] to require that the producer keep the original depiction in his records, not a copy of the original depiction."  Am. Compl. ¶ 190.  The word "copy" does not mean "original."  The definition permits "a photo in a magazine" to be used, and thus makes clear that the original photographic proofs do not need to be in the records.  DOJ included the definition only to make clear in response to a comment that the term encompasses copies of all sexually explicit images, including images from magazines and films. 70 Fed. Reg. 29607, 29610 (2005).  The original proposed rule had not defined the word copy when used in reference to sexually explicit depictions. 69 Fed. Reg. 35547, 35551 (2004).  Plaintiffs also assert that the rule "does not explain how a producer keeping hard copy records related to Internet content will manage to keep 'the sexually explicit image itself' in the hard copy record."  Am. Compl. ¶ 191.  The answer is that the producer could print the image out and put it in the file.  The commentary also contemplates "files consisting of both" digital and hard copies.  70 Fed. Reg. 29607, 29613 (2005).

G. <u>COUNT 20: "DATE OF PRODUCTION . . ."</u>: 28 C.F.R. § 75.6(b)(2) requires that producers affix a statement to copies of sexually explicit depictions that contains, the "date of production, manufacture, publication, duplication, reproduction, or reissuance of the matter." Plaintiffs do not even attempt to explain why this language is impermissibly vague. The language is disjunctive and permits any of the various dates to be used. For a primary producer, the relevant date will be the date of creation. For a secondary producer, the relevant date will be the earliest date, or the date of the action that makes the individual or entity a secondary producer. *See* 70 Fed. Reg. 29607, 29611 (2005). Plaintiffs can also hardly claim that the regulation is vague when it has been in place for more than a decade. 57 Fed. Reg. 15017, 15022 (1992). Also, while plaintiffs have not explained why the provision is vague, any ambiguity could presumably be corrected with a narrowing construction.

H. <u>COUNT 21: LOCATION OF THE REQUIRED STATEMENT ON A WEBSITE</u>: 28 C.F.R. § 75.8(d) provides that statement required by the statute and regulations concerning the location of the records shall be located on a website's "homepage, any known major entry points, or principal URL (including the principal URL of a subdomain), or in a separate window that opens upon the viewer's clicking a hypertext link that states '18 U.S.C. 2257 Record-Keeping Requirements Compliance Statement.'" 28 C.F.R. § 75.8(d). Plaintiffs complain that the words "homepage," "major known entry point," "principal URL," and "principal URL of a subdomain" are vague although they do not explain why, or assert that the terms will be unclear in all applications. Am. Compl. ¶¶ 234-236. In fact, these terms are commonly understood Internet terms. A homepage is the first page on an Internet website – *i.e.*, the page that is accessed when the principal URL is entered into an Internet browser. Some Internet websites draw traffic to their sites through links to other pages on the website other than the homepage. Such pages are "major known entry points." A "principal URL" is the main Internet address of a site that accesses the homepage, and the term "subdomain" refers to additional address information preceding the domain address – *i.e.*, www.subdomain.domain.com. *See also* 28

C.F.R. at 29612 (explaining the term "subdomain"). Plaintiffs also complain that the regulation "does not describe the required location of the hypertext link referred to in the phrase 'separate window that opens upon the viewer's clicking a hypertext link.'" Am. Compl. ¶ 237. The absence of a specified location does not, however, mean the statute is vague; it means that there is no required location.

I.     COUNT 22: LOCATION OF REQUIRED STATEMENT IN COMPILATIONS:

Plaintiffs complain that the "final rules adopted by the Attorney General do not specify the appropriate method of labeling compilation videotapes. . . . " Am. Compl. ¶ 244. The rules, however, are clear: if a film or videotape contains end credits, the required statement "shall be presented at the end of the end titles or final credits and shall be displayed for a sufficient duration to be capable of being read by the average viewer. . . . Any other film or videotape shall contain the required statement within one minute from the start of the film or videotape, and before the opening scene, and shall display the statement for a sufficient duration to be read by the average viewer." 28 C.F.R. § 75.8(b)-(c). The fact that the film or videotape is a compilation is irrelevant. *See* PI Hearing Joint Exhibit 1. Plaintiffs also again make clear that a narrowing construction would be available even if there were any ambiguity.

J.     COUNT 24: "ASSISTING" IN "ACTUAL SEXUALLY EXPLICIT CONDUCT":

Plaintiffs' meritless vagueness claims conclude with the assertion that the words "assisting another person to engage in" in the definition of "performer" are "limitless." Am. Compl. ¶¶ 252-259. As an initial matter, plaintiffs do not allege that the words would be vague in all instances or that a narrowing construction is unavailable. The most they say is that "this vagueness *may* chill the expression of those who do not understand its scope." Am. Compl. ¶ 258 (emphasis added). Regardless, the scope of the category is narrow, not "limitless," because the person "assisting" must be a "performer" – *i.e.*, actually in the movie or depiction at issue. Moreover, performers who engage in sexually explicit activities and assist others to do so are already covered by the statute by virtue of their sexually explicit activities. The word "assist" thus only comes into play at all for those performers who do not themselves engage in

sexually explicit activities but who assist others to do so.  The word would apply, for example, to a performer who used a sexual aid on another performer.

## IV.   PLAINTIFFS CHALLENGE REQUIREMENTS THAT DO NOT EXIST (CLAIMS 9, 17-18)

Claim 9 wrongly challenges the application of regulations governing required documentation and information to depictions created prior to the effective date.  Am. Compl. ¶¶ 120-130.  The new documentation requirements, however, do not apply to depictions created prior to that date.  So long as the records maintained for a depiction created prior to June 23, 2005, complied with the documentation requirements that were in effect at the time, they will remain in compliance without the need for additional documentation.  *See* Def. Opp. at 26-27 and PI Hearing Joint Ex. 1 at 3.

In addition, 28 C.F.R. § 75.2(a)(1)(i)-(ii) provides that for any performer portrayed in a sexually explicit depiction after June 23, 2005, the records shall include "a copy of the depiction" and "a copy of any URL associated with the depiction."  The records must thus contain a copy of the depiction and copies of the URLs (*i.e*, Internet addresses) where the depiction was published.  Plaintiffs seek to create burdens where none exist by inexplicably arguing that this language "would require an individual producer to keep hundreds or thousands of copies of the same visual depiction, even when all of the performers in such a depiction are unquestionably adults."  Am. Compl. ¶¶ 195-96, 199, 209.  Nothing in the regulations supports this characterization.  If a picture is published at more than one URL, a producer need only keep one copy of the depiction with a list of the static URLs where it was published.

# V.   PLAINTIFFS' FIFTH AMENDMENT CLAIM IS BOTH UNRIPE AND UNAVAILING (CLAIM 23)

Prior to 2003, section 2257(d)(2) permitted 2257 records to be used only in prosecutions for violating section 2257 or laws prohibiting false statements. *See* P.L. 101-647, 104 Stat. 4816 (1990). In 2003, Congress amended the statute to permit such records to be used in child pornography and obscenity prosecutions. 18 U.S.C. § 2257(d)(2). Plaintiffs assert that, because of this amendment, the statute and regulations "violate[] the constitutional protection against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution."[9] Am. Compl. ¶¶ 246-251.

To establish standing, the plaintiff must establish a threat of injury that is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation and internal quotation marks omitted). In challenging a criminal provision, this means that the plaintiff must intend to engage in a course of conduct that is "proscribed by a statute" and face a "credible threat of prosecution." *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979). As stated *supra*, it is plaintiffs' burden to establish the Court's jurisdiction.

Plaintiffs have failed to show a "real and immediate" threat that they will be required to produce records to the government that will incriminate them in a child pornography prosecution or in an obscenity prosecution. Far from it, plaintiffs state only that "[t]here is an actual controversy between the parties" without any specific allegations. Am. Compl. ¶ 247. The Supreme Court, moreover, recently held that a Fifth Amendment violation does not ripen until the incriminating information is used against a defendant "in a criminal case," which according to the Court "at the very least required the

---

[9] Plaintiffs erroneously seek to use the 2003 amendment as a vehicle for declaring the entire statute unconstitutional, even though the modification permitting the use of 2257 records in child pornography and obscenity prosecutions is plainly severable from the remainder of the statute. Indeed, the basic 2257 requirements have been in place for well over a decade, during which time they could not be used in such prosecutions.

initiation of legal proceedings." *Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003).[10] Here, there has been no initiation of legal proceedings, no assertion of privilege, and no required production of records to the government. Plaintiffs also fail to establish that they face an immediate risk that they would be subject to a child pornography or obscenity prosecution that would be aided by 2257 records. To the contrary, they allege that the "Free Speech Coalition and its members do not advocate or tolerate the production or distribution of child pornography . . . ." Am. Compl. ¶ 9. *See also* Declaration of Leonard Friedlander in Support of Plaintiffs' Motion for a Temporary Restraining Order ("Friedlander Dec.") ¶ 9; Conners Dec. ¶ 3 (same). It is thus pure speculation to assert that any of the plaintiffs would produce records that would be used to incriminate them in a child pornography or an obscenity prosecution. Instead they emphasize that their speech is legal. Am. Compl. ¶¶ 3, 9. For all of these reasons, plaintiffs lack standing to raise their Fifth Amendment claim.

Plaintiffs have also failed to state a claim. Compulsory reporting requirements implicate the Fifth Amendment where they are "'directed at a highly selective group inherently suspect of criminal activities'" in "'an area permeated with criminal statutes where response to any of the . . . questions in context might involve the petitioners in the admission of a crucial element of the crime.'" *California v. Byers*, 402 U.S. 424, 429 (1971) (plurality) (*quoting Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70, 79 (1965)) (ellipses in original).[11] Courts have upheld statutes requiring drivers

---

[10] The quoted language is from a portion of the opinion authored by Justice Thomas and joined by three other justices. Justice Souter separately concurred that the Fifth Amendment "focuses on courtroom use of" compelled testimony" and that a coerced confession did not violate the Fifth Amendment, absent use of the statement against the defendant. *Id*. at 777-778 (Souter, J., concurring).

[11] Thus, the Court has struck down mandatory registration requirements for members of the Communist party where party membership was itself a basis for prosecution under the law in place at the time, *id*. at 77-79; payment of occupational and excise taxes on wagering where gambling was "very widely prohibited under both federal and state law," *Marchetti v. United States*, 390 U.S. 39, 44 (1968), *Grosso v. United States*, 390 U.S. 62, 66-68 (1968); and registration requirements related to the possession of firearms that generally applied where the possessor had acquired the firearms in violation of other provisions, *Haynes v. United States*, 390 U.S. 85, 96 (1968).

involved in motor vehicle accidents to stop and provide their name and addresses); disclosure requirements in connection with the issuance and sale of securities; and a statute requiring prior written notice to a carrier before shipping firearms.[12]  While the disclosures posed some risk of incrimination in each of these cases, "the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here."  *Byers*, 402 U.S. at 428.

Unlike admitting to gambling or, at the time, membership in the Communist Party, and like admitting to driving a car that has been in an accident or shipping firearms, by admitting to producing sexually explicit materials, a producer will not be admitting to a crime.  *Contrast Flores*, 753 F.2d at 1504 (noting that the statutes at issue in the "*Marchetti* line of precedent were carefully drafted to obtain evidence from persons involved in illegal activities for use in their prosecution").[13]  The purpose of inspections is not to generate evidence to prosecute obscenity and child pornography but rather to ensure that producers perform a basic preventative act – *i.e.*, verifying the ages of performers in sexually explicit depictions.  The purpose could not have been to produce evidence of criminal activity inasmuch as the statute was in place for more than a decade during which the records could not be used

---

[12]  *California v. Byers*, 402 U.S. at 425 (plurality); *United States Securities and Exchange Commission v. Fehn*, 97 F.3d 1276, 1289 (9th Cir. 1996), *Whiteside & Co. v. SEC*, 883 F.2d 7, 10 (5th Cir. 1989), and *United States v. Stirling*, 571 F.2d 708, 728 (2nd Cir. 1976); *United States v. Flores*, 753 F.2d 1499 (9th Cir. 1985).

[13]  A federal district court recently held that a grand jury subpoena for 2257 records violated the Fifth Amendment.  *In re Grand Jury Subpoena Duces Tecum to John Doe*, 368 F. Supp. 2d 846 (W.D. Tenn. 2005).  In that case, the Court applied the wrong test, ignoring the balancing test set forth in *Byers.  See id.*, 402 U.S. at 428; *see also* Robert P. Mosteller, *Simplifying Subpoena Law: Taking the Fifth Amendment Seriously*, 73 Va. L. Rev. 1, 65 and note 227 (1987) (explaining that *Byers* expanded the required records exception to apply to cases where the records at issue would not otherwise have been created).  The Court also wrongly concluded that the purpose of section 2257 was to generate evidence of criminal activity, *In re Grand Jury Subpoena*, 368 F. Supp. 2d at 851-52, without addressing, for example, the fact that 2257 was in place for many years when the records could not be used in obscenity and child pornography prosecutions.  For reasons explained in the text, the Court also erred in likening the producers of sexually explicit materials with the "highly selective groups" in the *Albertson*, *Marchetti*, and *Haynes* line of cases where the required disclosure was tantamount to confessing a crime.  *See In re Grand Jury Subpoena*, 368 F. Supp. 2d at 853.

23

for such purposes.  The "Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws."  *Baltimore Dep't of Social Services v. Bouknight*, 493 U.S. 549, 556 (1990).

The Supreme Court in *Byers* also independently held that the required disclosure of a name and address by a person involved in a car accident did not violate the Fifth Amendment because it was not testimonial.  *Byers*, 402 U.S. at 431-34.  The Fifth Amendment "privilege is a bar against compelling communications or testimony, but . . . compulsion which makes a suspect or accused the source of real or physical evidence does not violate it."  *Byers*, 402 U.S. at 432 (ellipses in original) (citation and internal quotation marks omitted).  The only information that must be maintained by the producer under the statute or regulations that would potentially be helpful in enforcing the obscenity laws is the copy of the depiction itself, which the producer has already made available to the public.  Unlike in the *Marchetti* line of cases where the statute at issue compelled the disclosing party to communicate information that effectively admitted criminal liability, section 2257 requires no disclosure of any communicative or testimonial content.  At most, it makes the producer the source of physical evidence.

Finally, corporations and other collective entities have no Fifth Amendment privilege against self-incrimination.  *See Braswell v. United States*, 487 U.S. 99, 105-07 (1988).  Plaintiffs Lenjo, Inc. and the Free Speech Coalition thus fail to state a claim for this reason as well.

## VI.    PLAINTIFFS HAVE NO VALID RIGHT OF PRIVACY CLAIM AND ALSO LACK STANDING TO ASSERT THE CLAIM (CLAIMS 29-30)

Plaintiffs lack standing to assert their invasion of privacy claim, Am. Compl. at ¶¶ 287-306, because the amended complaint contains no specific allegations of injury to any of the plaintiffs.  *Contrast ALA*, 33 F.3d at 94 (claim that restrictions resulted in invasion of privacy raised as an as-applied challenge).  Plaintiffs also fail to establish that the alleged invasions of privacy are "fairly traceable" to the government as opposed to the "independent action of some third party not before the

court." *See Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Primary producers determine the number and identity of secondary producers to whom they will disclose the information, and performers are responsible for determining the primary producers with whom they will work. Moreover, primary producers may redact the addresses and months and days of birth in copies of driver's licenses provided to secondary producers. *See ALA*, 33 F.3d at 91 (relying on Department's interpretation of regulation). Plaintiffs lack standing to challenge a hypothetical regime that prohibits the redaction of such information.

Plaintiffs have also failed to state a claim. Am. Compl. ¶¶ 287-298. *See ALA v. Reno*, 33 F.3d at 94 (rejecting the argument that the privacy burdens of the statute violated the First Amendment).[14] *First*, apart from the fact that most driver's license information may be redacted, courts in other circuits have specifically found that driver's license information is not protected by the right of privacy.[15] Likewise, this court and other Circuits have held that the right protects only information that is "so highly personal or intimate that" it falls "within the zone of constitutional protection," *Falvo v. Owasso Independent School District*, 233 F.3d 1203, 1209 (10th Cir. 2000), *rev'd on other grounds*, *Owasso Indep. School District v. Falvo*, 233 F.3d 1203 (2002) (*quoting Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 2000)), and has cautioned in this context that "even the Supreme Court 'must . . . exercise the utmost care' when asked to announce a new substantive due process right." *Falvo*, 233 F.3d at

---

[14] Plaintiffs falsely assert that, as a result of the statute, secondary producers "will have access to" such information as "Social Security numbers," "home and business telephone numbers" as well as other unspecified "very sensitive personal information." Am. Compl. ¶ 295. Neither the statute nor the regulations require this information to be provided to primary or secondary producers.

[15] *See Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999), *vacated on other grounds*, *Reno v. Condon*, 528 U.S. 141 (2000); *Condon v. Reno*, 155 F.3d 453, 464-65 (4th Cir. 1998), *vacated on other grounds*, *Reno v. Condon*, 528 U.S. 141 (2000) (same); *Travis v. Reno*, 12 F. Supp. 2d 921, 925 (W.D. Wis.), *rev'd on other grounds*, 163 F.3d 1000 (7th Cir. 1998). *See also Arakawa v. Sakata*, 133 F. Supp. 2d 1223, 1229 (D. Haw. 2001) (stating that drivers' licenses are regularly disclosed to third parties such as store clerks (when cashing a check) or credit card companies, and do not contain the types of personal information generally protected from disclosure (such as medical records)").

1209 (*quoting Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)) (ellipses in original).[16] To date, this Circuit has limited this category to intimate information about a party's medical or sexual history.[17] The information at issue here is certainly not the kind of "highly personal or intimate" information that is entitled to constitutional protection and indeed is far less so than information this Circuit has found not to be protected.[18]

*Second*, the government is not disclosing the information at issue, and plaintiffs do not challenge the required disclosure of information to primary producers. Nor is the government "mandating the disclosure" of the information to any secondary producers, let alone to "thousands" of them. Am. Compl. ¶ 296. Unlike where the government discloses the information, the performer may decide the identity of the primary producers to whom the performer discloses the information at issue. The performer may choose to deal only with primary producers who are their own secondary producers (*i.e.*,

---

[16]   *See also Pryor v. Reno*, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999) (limiting the scope of the right to "*intimate personal information given to a state official in confidence*") (emphasis in original); *American Federation of Gov't Employees, AFL-CIO v. Perry*, 118 F.3d 786, 791 (D.C. Cir. 1997) ("expressing" the Court's "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information").

[17]   *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994); *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000) (both HIV status); *Sheets v. Salt Lake County*, 45 F.3d 1383, 1388 (10th Cir. 1995) (plaintiff's wife's diary entries about their marital relationship); *Lankford v. City of Hobart*, 27 F.3d 477, 479 (10th Cir. 1994) (medical records); *Eastwood v. Dep't of Corrections of the State of Oklahoma*, 846 F.2d 627, 631 (10th Cir. 1988) (information regarding personal sexual matters); *Slayton v. Willingham*, 726 F.2d 631 (10th Cir. 1984) (potential right in "highly sensitive, personal, and private" photographs depending upon the nature of the photographs).

[18]   This Circuit has excluded from the category information about a deceased husband's sexual behavior that "arguably reflected" on his relationship with his wife, *Livsey v. Salt Lake County*, 275 F.3d 952, 956 (10th Cir. 2001); reasons for resignation, employee evaluations, and allegations of unproven crimes regardless of accuracy, *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1155 (10th Cir. 2001); children's grades, *Falvo v. Owasso Indep. School Dist.*, 233 F.3d 1203, 1208-09 (10th Cir. 2000) (stating that "to hold otherwise would trivialize the Fourteenth Amendment"); an expunged conviction and arrest records, *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995); information about reprimands of public employees, which was protected from disclosure by state law, *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir. 1989); and an internal report indicating that the plaintiffs had used illegal drugs notwithstanding prior assurances of confidentiality offered by government officials, *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986).

who publish their own material), or who deal with responsible secondary producers.[19]  Moreover, primary producers such as movie producers and magazine publishers do not need to provide any information to secondary producers in order to obtain sales outlets for their material, because mere distributors are not secondary producers and do not have to maintain any information.  In all of these respects, this case is unlike the cases in this circuit addressing the right of informational privacy, which involve government dissemination of private information.  *See* notes 17-18 and cited cases.

Moreover, requiring secondary producers to verify the ages of participants by examining copies of the records and maintaining the records as proof of verification is the "only mechanism" to ensure that secondary producers deny child pornographers a market for their material.  *See ALA*, 33 F.3d at 89.  It would be perverse to privilege the "privacy" rights in basic driver's license information of those who make their living by performing sexual acts on camera for widespread distribution over protections that are important to protecting children from sexual exploitation.

## VII.  THE STATUTE AND REGULATIONS DO NOT VIOLATE THE FOURTH AMENDMENT (CLAIM 31)

Claim 31 of plaintiffs' amended complaint incorrectly asserts that section 2257 and the implementing regulations violate the Fourth Amendment because they authorize warrantless inspections of 2257 records.  Am. Compl. ¶¶ 307-312.  While the warrant and probable clause requirements generally "fulfill the traditional Fourth Amendment standard of reasonableness for a government search," in cases of "special need, where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth

---

[19]  Plaintiffs also elevate rhetoric over adequate pleading in repeatedly referring to the "thousands of secondary producers" in the pornography industry as a whole, instead of the likely extent of dissemination for any individual performer.  Am. Compl. ¶¶ 291, 292, 294, 296.

Amendment." *New York v. Burger*, 482 U.S. 691, 702 (1987) (citation omitted).[20]  A business falls

into this category when, as here, "the federal regulatory presence is sufficiently comprehensive and

defined that the owner of commercial property cannot help but be aware that his property will be subject

to periodic inspections undertaken for particular purposes." *Donovan v. Dewey*, 452 U.S. 594, 600

(1981).[21]

    In such instances, the government need not obtain a warrant to conduct a search provided that

three factors are satisfied:  "First, there must be a 'substantial' government interest that informs the

regulatory scheme pursuant to which the inspection is made.  Second, the warrantless inspections must

be necessary to further the regulatory scheme." *New York v. Burger*, 482 U.S. at 702-03 (internal

citations and quotation marks omitted).  Third, the inspection program "must perform the two basic

functions of a warrant:  it must advise the owner of the commercial premises that the search is being

made pursuant to the law and has a properly defined scope, and it must limit the discretion of the

inspecting officers." *Id*. at 703.  The regulations at issue here satisfy these three elements.  *First*,

defendant has previously explained the compelling interest that the government has, and the important

---

[20]  Plaintiffs refer to the reasonable expectation of privacy in producers' homes, Am. Compl. ¶ 309, but any inspection that could occur at a home would result only from the producer's voluntary decision to transform his or her home into a pornography business.

[21]  The section 2257 framework has been in place for more than a decade, and is as defined and comprehensive as, while less intrusive than, other similar inspection regimes that courts have upheld. *See United States v. Biswell*, 406 U.S. 311, 312 (1972) (upholding warrantless searches of gun dealers to search for firearms stored on the premises, and to search records that the statute required dealers to maintain); *Donovan v. Dewey*, 452 U.S. 594, 596, 605 (1981) (upholding warrantless inspections for stone quarries, which had been regulated by the federal government for eleven years at the time the inspections were authorized); *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989) (drug testing of railroad employees); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 77 (1970) (liquor sellers); *Anobile v. Pelligrino*, 303 F.3d 107 (2d Cir. 2002) (search of horse racing facilities for certain controlled substances for horses); *United States v. Fort*, 248 F.3d 475, 480 (5th Cir. 2001) (safety inspections of commercial trucks) (citing various cases); *Crosby v. Paulk*, 187 F.3d 1339, 1346 (11th Cir. 1999) (ID checks at nightclubs); *Balelo v. Baldridge*, 724 F.2d 753 (9th Cir. 1984) (commercial fishing); *Howell v. Roberts*, 656 F. Supp. 1150, 1153 (N.D. Ga. 1987) (*citing Peterman v. Coleman*, 764 F.2d 1416 (11th Cir. 1985)) (pawn shops and second-hand dealers required to maintain a register of transactions).

role that section 2257 plays, in preventing child pornography.  *Second*, "if inspection is to be effective

and serve as a credible deterrent," regular unannounced inspections are necessary.  *Biswell*, 406 U.S.

at 316; *Burger*, 482 U.S. at 710; *Donovan*, 452 U.S. at 600.

 *Third*, section 2257 and the regulations "perform[] the two basic functions of a warrant."  *New

York v. Burger*, 482 U.S. at 702.  DOJ has narrowly tailored the inspection regulations to ensure that

searches are limited in scope and pose a minimal intrusion upon privacy.  The regulations require that

inspectors "advise the owner of the commercial premises that the search is being made pursuant to the

law and has a properly defined scope."  *Id*. at 703, 711.  *See* 28 C.F.R. 75.5(c)(2).  In addition, the

regulations "limit the discretion of the inspecting officers."  *New York v. Burger*, 482 U.S. at 703.  The

"inspections shall be conducted so as not to unreasonably disrupt the operations of the producer's

establishment," 28 C.F.R. § 75.5(c)(3), and the records to be inspected "shall be segregated from all

other records, shall not contain any other records, and shall not be contained within any other records."

28 C.F.R. § 75.2(e).  This requirement "not only streamlines the inspection process but protects

producers" by ensuring that inspectors search only 2257 records.  70 C.F.R. at 29613.

## VIII. PLAINTIFFS' INTERNATIONAL LAW CLAIM IS MERITLESS (CLAIM 32)

 Plaintiffs' erroneously assert that sections of the regulations violate the Berne Convention or the

law of Canada and the European Union.  The law of Canada and the European Union do not trump

United States law, *see* Const. Art. VI, and plaintiffs also again mischaracterize the privacy implications

of section 2257.  Am. Compl. ¶ 318; *see supra* at 25-27.  The Berne Convention is irrelevant because

nothing in the regulations affects the recognition afforded to foreign copyrights.  The Convention also

is "not self-executing under the Constitution and laws of the United States;" rather, the obligations of

the United States "may be performed only pursuant to appropriate domestic law."  P.L. 100-568, 102

Stat. 2853, Sec. 2(1)-(2) (1988).  Plaintiffs identify no domestic legislation that is inconsistent with the

regulations; instead, they claim only that the regulations "violate international law."  Am. Compl. ¶

319. Plaintiffs are also wrong that the narrowing of the situations where foreign-issued identification cards may be used to verify a performer's age and identity prevents foreign pornographers who could otherwise legally work here from creating works in the United States. *Id*. at ¶ 317. *See supra* at 13.

## CONCLUSION

For the foregoing reasons, defendant's motion should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

WILLIAM J. LEONE
United States Attorney

KURT BOHN
Assistant United States Attorney

VINCENT M. GARVEY
Deputy Branch Director


/s/_____
SAMUEL C. KAPLAN
Trial Attorney
U.S. Department of Justice, Civil Division
P.O. Box 883
Washington, D.C. 20044
(202) 514-4686 (phone)
(202) 616-8202 (fax)

Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2005, the foregoing Amended Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/</u>                     
Samuel C. Kaplan

# EXHIBIT 1



# Name: Holli Miles | Age: 20 | Movie: 33 Mintues | Pics: 162 | Class: Amateur



Holli Miles is young, cute and innocent looking, which is probably why she's always a favorite of mine. Her enthusiasm when fucking and sucking my cock is noteworthy and a strong indication that she loves what she does. She also has the most perfect young clean shaved pussy you'll ever see.

Holli was giving me a blow job in a San Diego park when all of a sudden three cops jumped out of the bushes. Once they determined that Holli was indeed at least 18 years old, they calmed down and let us off! Holli's the All-American girl!  --Dave

