## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.  05-CV-1126-WDM-BNB

FREE SPEECH COALITION, INC.,          :
*et al.*,
                                      :
       Plaintiffs,
                                      :
       v.
                                      :
ALBERTO GONZALES,
                                      :
       Defendant.
                                      :

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO AMENDED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(b)(1) AND 12(b)(6) OR , IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    STATEMENT OF UNDISPUTED MATERIAL FACTS RESPONSE . . . . . . . . . . . . . 1

II.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PLAINTIFFS STATE CLAIMS FOR RELIEF THAT 18 U.S.C. SECTION 2257
      AND 28 C.F.R. PART 75 VIOLATE THE FIRST AMENDMENT
      (CLAIMS 1-7, 17-18, 25-28) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    18 U.S.C. Section 2257 Is A Content Based Restriction On Protected
            Speech That Is Overbroad And Fails To Advance The Government
            Interest Of Controlling Child Pornography And Imposes Heavy
            Impermissible Burdens On Plaintiffs' Expression. . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Genuine Issues Of Fact Exist As To Whether Section 2257 And The
            Regulations Satisfy Intermediate Level Scrutiny. . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.   PLAINTIFFS STATE CLAIMS FOR RELIEF WITH REGARD TO 28 C.F.R.
      PART 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    PLAINTIFFS VAGUENESS AND OVERBREADTH CHALLENGES
      STATE MERITORIOUS CLAIMS OVER WHICH THIS COURT HAS
      JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.   THE VAGUENESS CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Claim 11:  Vagueness Of The Phrase "When . . . Located Outside the
            United States" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Claim  12:    Overbreadth  Of  The  Picture  Identification  Card
            Requirement Of 28 C.F.R. 75.2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Claim 13:  Vagueness Of The Phrase "Sadistic or Masochistic Abuse" . . . . . . . 13

      D.    Claim 14:  Vagueness Of The Phrase "Portrayed In Such A Depiction
            After June 23, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

E.      Claim 15:   Vagueness Of The Phrase "A Copy Of Any URL Associated With The Depiction" ...................................... 16

F.      Claim 16:  Vagueness Of The Phrase "A Copy Of The Depiction" .......... 17

G.      Claim 20:   Vagueness Of The Phrase "Date Of Production, Manufacture, Publication, Duplication, Reproduction, Or Reissuance Of The Matter." ..................................................... 18

H.      Claim 21:   Vagueness Of Terms Related To The Location Of Required Statements On A Website. ................................... 19

I.      Claim 22:  Vagueness Of The Location Of The Required Statement In Compilations. ................................................... 20

J.      Claim 24:  Vagueness Of The Phrase "'Assisting Another Person To Engage In Actual Sexually Explicit Conduct". .......................... 21

VII.    PLAINTIFFS STATE A VALID FIFTH AMENDMENT CLAIM THAT SHOULD NOT BE DISMISSED. ......................................... 23

A.      Plaintiffs Have Standing To Assert A Fifth Amendment Violation. .......... 23

B.      Plaintiffs' Fifth Amendment Claim Has Merit And Should Not Be Dismissed ..................................................... 25

VIII.   PLAINTIFFS STATE A VALID RIGHT OF PRIVACY CLAIM. ................ 27

IX.     CONCLUSION ....................................................... 30

CERTIFICATE OF SERVICE ................................................ 31

ii

# TABLE OF AUTHORITIES

<u>Page</u>

*American Library Association v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . 26

*American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 1

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Baggett v. Bullitt* (February 21, 2006), 377 U.S. 360 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bailey v. Alabama*, 219 U.S. 219 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*California v. Byers*, 402 U.S. 424 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27

*Chavez v. Martinez*, 538 U.S. 760 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) . . . . . . 10, 12, 15, 17, 21

*City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126 (1926) . . . . . . . . . . . . 11, 23

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . 1, 5

*Doe v. Cahil*, 884 A.2d 451 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Freedom v. Maryland*, 380 U.S. 51 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grosso v. United States*, 390 U.S. 62 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Heideman v. South Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 1, 4

*Humanitarian Law Project v. Reno*, 205 F.3d 1130 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 14

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . 28

*In Re Grand Jury Subpoena Duces Tecum to John Doe 1*, 368 F.Supp.2d 846
    (W.D. Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27

*Kowalski v. Stewart*, 220 F.R.D. 599 (D. Ariz. 2004) ................................. 29

*Lanzetta v. New Jersey*, 306 U.S. 451 (1939) ....................................... 11

*Mainstream Marketing Services, Inc. v. Fed. Trade Comm'n*, 358 F.3d 1228 (10th Cir. 2004) . 29

*Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983) ..... 4

*Miranda v. Arizona*, 384 U.S. 436 (1966) .......................................... 25

*Montgomery v City of Ardmore*, 365 F.3d 926 (10th Cir. 2004) ....................... 9, 13

*Movie & Video World, Inc. v. Bd. of County Comm'ns of Palm Beach County*,
     723 F.Supp. 695 (S.D. Fla. 1989) ............................................. 29

*Murphy v. Matheson*, 742 F.2d 564 (10th Cir 1984) .................................. 11

*People v. Freeman*, 758 P.2d 1128 (Cal. 1988) ..................................... 5

*Simon and Schuster v. New York Crime Victim's Bd.*, 502 U.S. 105 (1991) ........... 2, 3, 5

*Smith v. Goguen*, 415 U.S. 566 (1974) ............................................ 11

*Speiser v. Randall*, 357 U.S. 513 (1958) .......................................... 3

*Sundance Associates v. Reno*, 139 F.3d 803 (10th Cir. 1998) ....................... 5, 9

*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999) ........ 9

*United States v. Corrow*, 119 F.3d 796 (10th Cir. 1997) ........................... 13

*United States v. Eichman*, 496 U.S. 310 (1990) ................................... 5

*United States v. Extreme Associates, Inc.*, 431 F.3d 150 (3d Cir. 2005) ............ 24

*United States v. Goalie Entertainment Holdings, Inc.* No. 3:05-CR-43
     (N.D. Tex. March 11, 2005) .................................................. 24

*United States v. Roeder*, 526 F.2d 736 (10th Cir. 1975) ........................... 5

*United States v. X-Citement Video*, 513 U.S. 64 (1994) ........................... 5, 6

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) . . . . . . . . . 11

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wells v. City and County of Denver*, 257 F.3d 1132 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 12

*Wilson v. United States*, 221 U.S. 361 (1911) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## STATUTES

28 CFR Section 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11, 15, 16, 17, 19, 21, 27

18 U.S.C. Section 2256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. Section 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. Section 2725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Admit that without documentation it may not be possible to determine a performers' age, but deny as to "often."

2.    Deny that there is a "sizable" market.

3.    Admit that numerous websites contain images of young adults engaged in various sexually explicit activities.  The listing of specific sexual acts is irrelevant.  Deny the characterization of explicitly pandering.

4.    Deny.  A very small percentage of the domain names make such a reference.  Pl. Resp. Interog. 5.

5.  Deny.  This is not a fair representation of the cited response.  Supp. Resp. Interog. No. 15.

6.    Deny.  The attached exhibit makes no mention of identification or the belief of the police officers.

7.    Admit.

8.    Admit.

9.    Admit, that a portion of the adult entertainment industry offers content with young adult performers, but this does not necessarily mean they are catering to "vast demand" for young looking performers.

10.    Admit.

11.    Admit.

12.    Deny, as conclusory the assertion that the cross indexing requirement imposes a significant burden. Friedlander Decl. ¶¶ 20-24; Douglas Aff. ¶¶ 28, 29.

13.    Deny, as conclusory that the requirement is burdensome as applied to secondary producers and the internet.  Schmidt Depo. at 143; Douglas Aff. ¶¶ 22-29.

14.     Deny as conclusory.  Schmidt Depo. at 143; Douglas Aff. ¶¶ 22-29.

## II.    INTRODUCTION

The Government filed an amended motion to dismiss or in the alternative for summary judgment on December 22, 2005.  The Court, on December 28, 2005, issued its order granting in part and denying in part Plaintiffs' motion for preliminary injunction.   In light of the Court's subsequent order, much of the Government's motion is simply not operative.  Indeed, implicit in the Court's ruling on the merits of  the motion for preliminary injunction is that Plaintiffs have, in fact, stated valid claims for relief in the Amended Complaint.  Moreover, the Court's ruling in favor of Plaintiffs on three separate issues raised in the pleadings would require denial of any motion to dismiss on those issues.  The Court's substantive rulings in denying other portions of Plaintiffs' motion for preliminary injunction further reveal that Plaintiffs raise legally cognizable claims that require further factual development beyond the preliminary injunction phase of this case.  *See, e.g., Heideman v. South Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003).

## III.    PLAINTIFFS STATE CLAIMS FOR RELIEF THAT 18 U.S.C. SECTION 2257 AND 28 C.F.R. PART 75 VIOLATE THE FIRST AMENDMENT , 25-28).

### A.    18 U.S.C. Section 2257 Is A Content Based Restriction On Protected Speech That Is Overbroad And Fails To Advance The Government Interest Of Controlling Child Pornography And Imposes Heavy Impermissible Burdens On Plaintiffs' Expression.

In its Order of December 28, 2005, the Court applied intermediate level scrutiny in determining Plaintiffs' challenge to § 2257 and the implementing regulations relying upon the decisions of  *American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994), cert denied 515 U.S. 1158 (1995), and *Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998), remanded for further consideration 46 Fed.Appx. 837, 2002 WL 31119685 (6th Cir. 2002).  Both of these decisions analyze § 2257 under an intermediate level of scrutiny.

In the amended complaint, Plaintiffs assert that 18 U.S.C. § 2257 is a content based restriction on protected speech that should be evaluated under strict scrutiny analysis. The statute challenged in this case regulates expressive materials that contain "visual depictions" of "actual sexually explicit conduct." The statute imposes heavy burdens on a broad category of protected speech, namely sexually explicit images, based solely on the basis of the content of that speech. *See Simon & Schuster v. New York Crime Victim's Bd.*, 502 U.S. 105 (1991).

In its order, the Court distinguished *Simon & Schuster* from Plaintiffs' challenge in the instant case because it dealt with an overinclusive statute that "'reached a wide range of literature that does not enable a criminal to profit from his crime while a victim remains uncompensated,' and which was therefore outside the state's compelling interest." Order, p. 12 n.6. As the Supreme Court stated in *Simon & Schuster*, 502 U.S. at 123::

> We conclude simply that the Son of Sam law singled out speech on a particular subject for a financial burden that it places on no other speech and no other income. The state's interest in compensating victims from the fruits of crime is a compelling one, but the Son of Sam law is not narrowly tailored to advance that objective.

Plaintiffs' amended complaint alleges the challenged provisions reach a vast amount of protected speech that not even arguably involve children and which are outside the Government's interest in controlling child pornography. Amended Complaint ¶¶ 37-38, 44-49, 50, 67, 70, 75-78, 86-87, 96, 158. Plaintiffs' complaint further alleges that § 2257 and the regulations are overbroad and not narrowly tailored to advance the government interest of protecting children. Amended Complaint ¶¶ 44, 48-51, 70, 75, 77-78, 87, 96, 158. At the very least, Plaintiffs have stated a claim under *Simon & Schuster* and should be provided the opportunity to present evidence of the reach of the statute and regulations that far exceeds the legitimate reach of the government objective.

The Government contends that § 2257 does not criminalize otherwise constitutionally protected speech and "does not require the producer to prove that the speech was lawful" but rather makes "illegal ... the failure to take the precaution and maintain records that the precaution was taken." Motion, p.5.[1]  The Government implies that compliance with the stature and regulations imposes a minimal burden unlike the "not trivial" burden imposed by the affirmative defense rejected in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234 (2002).

The Government  is seeking to do indirectly what it may not do directly.  "The Government may not suppress lawful speech as the means to suppress unlawful speech."  *Free Speech Coalition*, 535 U.S. at 255.  In *Speiser v. Randall*, 357 U.S. 513 (1958), the Supreme Court struck down a provision of the California Constitution that imposed a condition precedent of nonadvocacy of the unlawful overthrow of the government prior to obtaining a tax exemption:

> The man who knows that he must bring forth proof and persuade another of the lawfulness of his conduct must necessarily steer far wider of the unlawful zone than if the State must bear those burdens ....  In its practical operation, therefore, this procedural device must necessarily produce a result which the State cannot command directly. It can only result in a deterrence of speech which the Constitution makes free.  It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment.  The power to create presumption is not a means of escape from constitutional restrictions.

*Id*. (internal citations omitted).

Likewise, § 2257 imposes a condition precedent of maintaining detailed records prior to the expression of protected speech without any recourse through the judiciary.  In the absence of such records, protected expression is conclusively criminalized even where there is no question that the participants in the expression are well over the age of majority.

---

[1]References to "Motion" are to the Government's Amended Motion to Dismiss.

The Government asserts the challenged provisions are not content based because "the government's regulatory purpose in not based upon the communicative impact of the speech." However, "even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment." *Simon & Schuster*, 502 U.S. at 117 (quoting *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592 (1983)).

The Government goes on to contend that § 2257 does not impose a prior restraint on expression because it involves " no licensing or preclearance system nor does it require speakers to obtain the permission of public official prior to speaking." Motion, p. 6. In its order, the Court determined that § 2257 did not constitute the traditional prior restraint. Order, p. 11. However, as set forth in the Amended Complaint, § 2257 imposes significant conditions prior to the utterance of protected expression. In the absence of compliance with these record keeping conditions precedent to expression, protected expression is conclusively prohibited. Indeed, the threat to the First Amendment freedoms is even greater than that imposed by the time, place, and manner of cases cited in the Government's brief because under § 2257, in the absence of the required records, protected expression cannot be offered at any time, in any place, or in any manner without being a criminal act. Moreover, unlike the licensing cases cited in the Government's brief, there exists absolutely no avenue for judicial review even where there is no question that the proscribed constitutionally protected expression involves only adults. Thus, there is a grave risk that protected expression will be erroneously denied by the failure to meet the requirement of documentation to prove the legality of the expression without any avenue for judicial review. See *Freedman v. Maryland*, 380 U.S. 51 (1965). Based upon the allegations in the complaint, Plaintiffs have stated a claim that imposition of such a condition precedent to expression of protected speech violates the First Amendment.

Not until the conclusion of its first argument does the Government advance the notion that the expression sought to be regulated under § 2257 is entitled to a lesser degree of First Amendment protection. Motion, p. 6. As the Supreme Court unequivocally stated in *United States v. X-Citement Video*, 513 U.S.64 (1994), "non-obscene, sexually explicit materials involving persons over the age of 17 are protected by the First Amendment."[2] Thus, as acknowledged by this Court, the level of First Amendment protection is not dictated by the content of the regulated material. Later in its motion, at p. 10, the Government contends that the regulated speech "cannot seriously be described as having 'serious literary, artistic, political or scientific value.'" This unsupported value judgment by the Government contradicts Justice O'Connor's statement in *Simon & Schuster*, "[i]f there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Simon & Schuster*, 502 U.S. at 118 (quoting *United States v. Eichman*, 496 U.S. 310 (1990)).

As set forth in the Amended Complaint, the challenged statute and regulations impose an affirmative heavy burden on Plaintiffs and condition the legality of protected speech upon maintenance of detailed records and labeling. There is no recourse in the event records do not exist. Much narrower alternative means exist to protect children and create incentives (than already exist in laws forbidding child pornography) to obtain identification of the performers of constitutionally

---

[2] The Government's assertion that the speech regulated by § 2257 is the product of prostitution would not merit any serious response except for its inflammatory nature. First, it is irrelevant since § 2257 makes absolutely no distinction between expression involving compensation and that not involving compensation. Second, it is not supported in fact since two of the federal appellate decisions dealing with § 2257 involved "swingers" publications that did not involve compensated performers. *See Sundance Associates v. Reno*, 139 F.3d 804 (10th Cir. 1998); *Connection Dist.*, 154 F.3d 281 (6th Cir. 1998). Third, the only appellate court to directly address the issue found that: 1) the paid performance of actors in sexually explicit films did not constitute prostitution under the state statute; and 2) the application of the prostitution statute to performance in non obscene films would violate the First Amendment. *People v. Freeman*, 758 P.2d 1128 (Cal. 1988) (distinguishing *United States v. Roeder*, 526 F.2d 736 (10th Cir. 1975)).

6

protected sexually explicit speech. As stated by the Supreme Court in *United States v. X-citement Video*, 513 U.S. 64,73 (1994), "one would reasonably expect to be free from regulation when trafficking in sexually explicit, though not obscene materials involving adults." However, this reasonable expectation is nullified by the challenged provisions that makes the expression of protected speech a criminal offense "merely because it resembles [unprotected speech]. The Constitution requires the reverse." *Free Speech Coalition*, 535 U.S. at 255. Plaintiffs have stated a claim that the challenged provisions violate the First Amendment and should be afforded an opportunity to present evidence in support of their claims recognized as serious by this Court.

**B.    Genuine Issues Of Fact Exist As To Whether § 2257 And The Regulations Satisfy Intermediate Level Scrutiny.**

In its order, the Court applied intermediate level scrutiny and determined that Plaintiffs had established a substantial probability of success of the merits concerning the application of 28 C.F.R. § 75(a)(1)(i) to the operation of internet chatrooms and the application of 28 CFR§ 75.2(a)(1)(ii) to websites outside the control of producers. With regard to other claims, the Court found that Plaintiffs failed to demonstrate a substantial likelihood that the statute and regulations fail to "leav[e] the quantity and accessibility of speech substantially intact." Order, p.19 (quoting *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 449 (2002) (Kennedy, J. concurring).

As refined by *Alameda Books*, intermediate level scrutiny imposes a burden on the Government to justify regulations of protected speech and expressly contemplates an opportunity for persons to challenge the methodology and evidence behind these justifications. By its very nature, intermediate level scrutiny involves an evaluation of facts presented by the parties after an opportunity for discovery. As such, the Court's previous determination and the Government's concession that, at a minimum, intermediate scrutiny of the challenged statute and regulations are the proper standard would definitely suggest denial of the Government's motion at this early stage

of the case before an answer has even been filed.  This seems particularly true where the Court has already determined that Plaintiffs have established a substantial probability of success on the merits with regard to three important issues.

The Government asserts the statute and regulations satisfy intermediate scrutiny as a matter of law.  The primary justification for this position is that there is a compelling government interest in protecting actual children from participation in pornography.  However, the Government "must advance some basis to show its regulation has the purpose and effect of suppressing secondary effects." *Alameda Books*, 535 U.S. at 449.  In this regard, the Government has advanced only conclusory assertions that § 2257 and the challenged regulations have limited any child pornography.  As recognized by the Court, the Government has not conducted a single inspection in the 17 years since § 2257 was enacted.  Order, p. 17 n.9.  At this point there remain genuine issues concerning the efficacy of the challenged statute and regulations in prohibiting child pornography.

Likewise, there are serious questions whether the challenged provisions are narrowly tailored to serve the government interest.  To be narrowly tailored a regulation must not "burden substantially more speech than is necessary to further the Government's legitimate interests.  Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  The vast majority of the burden is placed upon protected speech does not advance the goals of § 2257 in the least.  Material that clearly involves persons far older than 18 is subject to the statute without any recourse if the required records are not kept in perfect order.  Issues exist with regard to placing extra burdens on persons clearly over the age of 18 for engaging in constitutionally protected expression does not do anything to limit pornography involving persons under the age of 18.

In its brief, the Government makes conclusory statements that the requirements of cross referencing and maintenance of all copies to be maintained with records are narrowly tailored without any supporting evidence. Indeed, the Court enjoined the requirements that copies of internet chatrooms be maintained as well as copies of any URL not under the control of the producer. The Government also asserts in conclusory fashion that the requirement that the records be available 20 hours per week and length of time are narrowly tailored and not unduly burdensome. However, at this early stage of litigation, Plaintiffs have stated a legal claim for relief on these issues. Certainly these requirements impose novel and unprecedented requirements on individuals, such as Plaintiff David Connor, particularly with regard to expression over the emerging "uniquely democratizing medium" of the internet. *Doe v. Cahill*, 884 A.2d 451, 455 (Del. 2005). As such, the parties should have an opportunity to engage in discovery and provide evidentiary support for these specific claims.

Plaintiffs have already provided evidence that numerous producers and websites have reduced their speech in response to the newly enacted regulations. *See* Douglas Depo.; Connors Depo, p. 48 lines 17-19; Friedlander Depo., p. 44 line 11 - p. 46 line 3; Hartman Depo., p. 19 lines 10-14. Based upon the evidence presented to this Court, the motion to dismiss should be denied.

## IV.  THE INCLUSION OF SECONDARY PRODUCERS IN 28 C.F.R. PART 75  IS CONTRARY TO SUNDANCE ASSOCIATES v. RENO,  139 F.3d 1499 (10th Cir. 1998)

In its order, the Court determined that it was bound by the Tenth Circuit decision in *Sundance Associates v. Reno*, 139 F.3d 1499 (10th Cir. 1998), and enjoined the enforcement of the statute and regulations with regard to "secondary producers." As such, the motion to dismiss should be denied.

## V.  PLAINTIFFS' CHALLENGES STATE MERITORIOUS CLAIMS OVER WHICH THIS COURT HAS JURISDICTION.

The Government erroneously contends that Plaintiffs' vagueness and overbreadth challenges do not state meritorious claims and urges dismissal of those claims under Fed. R. Civ. P. 12(b)(6).

9

Accepting as true "all well-pleaded factual allegations" and viewing them in the light most favorable

to Plaintiffs, the non-moving parties, the Government's motion should be denied. *Montgomery v.*

*City of Ardmore*, 365 F.3d 926 (10th Cir. 2004) (quoting *Sutton v. Utah State Sch. for the Deaf &*

*Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (holding a Rule 12(b)(6) motion "should not be granted

unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which

would entitle him to relief"). Plaintiffs' vagueness and overbreadth challenges unquestionably

advance legitimate claims concerning the constitutional invalidity of § 2257 and 28 C.F.R. Part 75.

In several instances, the Government has offered narrowing constructions in response to

Plaintiffs' complaint and asks for dismissal of those claims. To the extent that such narrowing

constructions do not represent binding judicial or administrative determinations or well-established

official practices, Plaintiffs contend that the proper way to dispose of such disputes is for either the

Government to offer partial judgment on the claims that are dependent on its narrowing construction

for survival or the Court to grant summary judgment on the claims in Plaintiffs' favor. *See, e.g., City*

*of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 (1988) (refusing to assume that

mayor would "adhere to standards absent from the ordinance's face," because the void-for-vagueness

doctrine "requires that the limits the city claims are implicit in its law be made explicit by textual

incorporation, binding judicial or administrative construction, or well-established practice").

## VI.    THE VAGUENESS AND OVERBREADTH CLAIMS.

### A.    Claim 11:  Vagueness Of The Phrase "When . . . Located Outside
### the United States"

28 C.F.R. § 75.1(b) and 28 C.F.R. § 75.2(a)(1) allow a producer to ascertain the legal name

and date of birth of a foreign performer who does not have a picture identification card issued by an

American Government listed in 28 C.F.R. § 75.1(b) only from examination of "a foreign

Government-issued equivalent of any of the documents listed above when both the person who is the

subject of the picture identification card and the producer maintaining the required records are located outside the United States." However, the regulation does not specify whether that extra-territorial status can be temporary-an important consideration given that American producers often shoot films in foreign countries, then return to the United States after production.

"Due process requires that all 'be informed as to what the State commands or forbids,' and that 'men of common intelligence' not be forced to guess at the meaning of the criminal law." *Smith v. Goguen*, 415 U.S. 566 (1974) (internal citations omitted). "Perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Inc.*, 455 U.S. 489 (1982); *see also Murphy v. Matheson*, 742 F.2d 564 (10th Cir. 1984).

The phrase "when both the person who is the subject of the picture identification card and the producer maintaining the required records are located outside the United States," is impermissibly vague because it does not temporally restrict its application. The average person reading 28 C.F.R. § 75.1(b) of the Attorney General's final rules cannot determine whether the phrase "when both the person who is the subject of the picture identification card and the producer maintaining the required records located outside the United States" requirement means permanently or temporarily or at the time the visual depiction is produced. A producer cannot determine whether a production company with its place of business in the United States would violate the rule by ascertaining, while in a foreign country, the legal name and date of birth of a foreign performer from examination of a foreign government-issued equivalent of a U. S. Government-issued picture identification card, and then returning to the United States where it keeps its § 2257 records. Consequently, American producers may abstain from making films outside the United States, a chilling effect of this vague rule.

The Government excuses the regulation's vagueness, maintaining that it is construed to "include producers who are outside the United States at the time of production." Motion, p. 15. Of course, this Court must consider the sufficiency of "limits that are 'made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice.'" *Wells v. City and County of Denver*, 257 F.3d 1132, 1151 (10th Cir. 2001) (quoting *Plain Dealer Pub. Co.*, *supra*). Since none of those events have occurred in this case in a binding fashion, the Government's proposed construction does not diminish the validity of Plaintiffs' void-for vagueness claim.

## B.    Claim 12:  Overbreadth Of The Picture Identification Card Requirement Of 28 C.F.R. 75.2(a)(1)

28 C.F.R. 75.2(a)(1) requires that, for every regulated visual depiction of actual sexually explicit conduct made after July 3, 1995, a producer shall, for each performer portrayed in such a visual depiction, create and maintain records containing, *inter alia*, the legal name and date of birth of each performer, obtained by the producer's examination of a picture identification card.  For any performer portrayed in such a depiction made after July 3, 1995, the records shall also include a legible copy of the identification document examined and, if that document does not contain a recent and recognizable picture of the performer, a legible copy of a picture identification card.

The requirement that producers must examine and usually retain a copy of a picture identification card is overbroad in violation of the First Amendment.  The Government's purported purpose in regulating adult expression under § 2257 is "protecting children from sexual exploitation." Motion, p. 4.  The regulation, however, applies the picture identification card examination and copying requirement to all performers, regardless of age or obvious adulthood.

Under First Amendment overbreadth analysis,  a showing that a law burdens "a substantial amount of protected speech, judged in relation to the statute's plainly legitimate sweep, suffices to invalidate all enforcement of that law, until and unless a limiting construction or partial invalidation

12

so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Faustin v. City and County of Denver*, 423 F.3d 1192 (10th Cir. 2005) (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2004) (quotation omitted). "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 605 (1973).

In the instant case, the picture identification card examination and copying requirement is patently overbroad. In a purported effort to prevent minors from performing in sexually explicit visual depictions, the Government requires picture identification to be obtained from all performers, regardless of whether they are 18 or 40 or 60. The regulation imposes the significant burdens and costs of maintaining copies of picture identifications in a record-keeping system (as well as indexing and cross-referencing all names the performers have ever used) even upon producers who do not utilize the "young-looking performers" the government claims is the focus of the statute and its regulations. Motion, p. 2. A trial in this matter will show that thousands of performers in the adult entertainment industry are long past the "young-looking" performer designation for which the government professes concern, and that a substantial portion of producers do not create or disseminate expressive content involving young-looking performers. Consequently, it is clear that the sweep of the requirement that producers keep copies of picture identification cards for all performers in regulated depictions made after July 3, 1995 is far broader than necessary to meet the government interest offered to justify the record-keeping system. Since it cannot be said that beyond doubt plaintiff can prove no set of facts in support of his claim which would entitle him to relief, the Government's motion to dismiss this overbreadth claim should be denied.

C.    **Claim 13:  Vagueness of the Phrase "Sadistic or Masochistic Abuse"**

18 U.S.C. § 2256(2)(A)(i) defines actual "sexually explicit conduct" to include, *inter alia*, "sadistic or masochistic abuse." Neither term is defined in the statute or the regulations and Plaintiffs contend that the phrase is unconstitutionally vague. The Government maintains that "sadistic or masochistic abuse" is not vague and that Plaintiffs did not plead that the phrase is impermissibly vague in all applications or that a narrowing construction would be unavailable. Motion, p. 15.

First, Plaintiffs need not plead that the challenged language is impermissibly vague in all circumstances. That test applies to claims that do not involve speech or protected conduct, unlike the instant case. *See United States v. Corrow*, 119 F.3d 796, 803 (10th Cir. 1997) ("in a facial challenge raising no First Amendment or other claim that the act reaches constitutionally protected conduct, the complainant 'must demonstrate that the law is impermissibly vague in all of its applications'"). Second, Plaintiffs are not required to plead the unavailability of a limiting construction. It is sufficient to plead due process deprivations related to lack of notice and/or the awarding of undue discretion to government officials. *See Grayned v. City of Rockford*, 408 U.S. 104 (1972). That is exactly how Plaintiffs pleaded the thirteenth claim. Amended Complaint, ¶¶ 160-168. The availability or not of a narrowing construction is simply a factor that may affect a litigant's reliance on third-party standing principles; it is not an element of a void-for-vagueness claim for Rule 12(b)(6) purposes.

Finally, viewing the pleadings in the light most favorable to Plaintiffs, the Government certainly has not demonstrated beyond doubt that Plaintiffs can prove no set of facts in support of their claim. "Sadistic abuse" and "masochistic abuse" are terms that, left undefined, have disparate and myriad meanings that are not sufficiently specific and objective to pass muster under the Constitution. "Sadism" – defined as "the tendency to derive sexual gratification or general pleasure from inflicting pain, suffering, or humiliation on others" – and "masochism" – meaning "the tendency to derive pleasure, especially sexual gratification, from one's own pain or humiliation" – are root

terms describing a range of human behavior that encompasses an equally wide range of protected expression. These broad terms are nuanced, but not necessarily narrowed, by the use of their derivatives in conjunction with "abuse," "sadistic abuse," or "masochistic abuse," begging the question: when in that range of human expression does respectful sadism or healthy masochism become abusive? *See, e.g., Humanitarian Law Project v. Reno,* 205 F.3d 1130 (9th Cir. 2000) (finding the terms "personnel" and "training" in the Anti-Terrorism and Effective Death Penalty Act of 1996 void-for-vagueness under the First Amendment); *see also Baggett v. Bullitt,* 377 U.S. 360, (1964) (loyalty oath provision requiring teachers and state employees to swear that they are not "subversive persons" declared unduly vague). Plaintiffs succinctly pose the constitutional infirmity of a regulation that throws such uncertainty into the decision-making process of a person who must somehow determine when the scale tips from unregulated sadistic or masochistic expression to regulated "sadistic abuse" or "masochistic abuse" expression. Consequently, Plaintiffs' vagueness claim in this regard is well-pleaded and survives the Government's motion.

**D.    Claim 14:  Vagueness Of The Phrase "Portrayed In Such A Depiction After June 23, 2005**

28 C.F.R. 75.2(a)(1)(i) requires that producers governed by § 2257 keep a copy of any depiction of a performer "portrayed in a visual depiction of actual sexually explicit conduct after June 23, 2005." In response to Plaintiffs' vagueness challenge to the temporal breadth of "portrayed," i.e., that a reasonable person cannot tell whether the requirement is intended to apply only to a visual depiction made after June 23, 2005 rather than a reproduction or publication after June 23, 2005, the Government maintains that the challenged phrase governs only the former because "the word 'portrayed' refers to the creative process." Motion, p. 16.

The Government's argument is self-serving and reductive. 28 C.F.R. 75.2(a)(1)(i) is unduly vague on its face and the proffer of a homemade definition of "portrayed" without even a dictionary

reference does not diminish the merits of Plaintiffs' argument.  Indeed, even the Oxford English
Dictionary defines "portray" consistently with Plaintiffs' interpretation of the term: "depict in a work
of art or literature."  The regulation is not temporally restricted by the use of the term "portrayed;"
consequently, Plaintiffs have properly pleaded the claim that producers cannot tell from the language
of the regulation whether they will violate the law by failing to keep copies of regulated visual
depictions that were created before June 23, 2005 and reproduced or published thereafter.  The Court
may pass judgment on the sufficiency of the narrowing construction offered by the Government if it
does not wish to rule on those terms, but the mere offer of a construction that has not been established
as binding on the Government does not invalidate the basis of Plaintiffs' claim. *See, e.g., Plain Dealer
Publishing Co.*, *supra* at 770 n.11 ("when a state law has been authoritatively construed ... or a
well-understood and uniformly applied practice has developed that has virtually the force of a judicial
construction, the state law is read in light of those limits. But we have never held that a federal litigant
must await ... the development of an established practice before bringing the federal suit").

E.    **Claim 15:  Vagueness Of The Phrase "A Copy Of Any URL Associated
      With The Depiction"**

28 C.F.R. 75.2(a)(1)(ii) requires that, for any performer portrayed on an Internet computer site
in a visual depiction of actual sexually explicit conduct after June 23, 2005, the producer must keep
"a copy of any URL associated with the depiction or, if no URL is associated with the depiction,
another uniquely identifying reference associated with the location of the depiction on the Internet."
"URL" stands for "uniform resource locator," 28 C.F.R. 75.1(h), and designates where the associated
imagery may be found.  The regulation does not, however, specifically describe what it means to
"copy" a URL.  This can be interpreted equally to mean: 1) a copy of purely the textual information
contained in the URL; 2) an electronic copy of the URL that includes the graphic data which it
references; or 3) a copy of the electronic URL-designated link to the regulated image where it is

16

stored. The Government states that "copy" in this context means only the "textual information in the URL designation," and dismisses Plaintiffs' concerns out-of-hand (which is curious given that later in its motion the Government conflates "principal URL" with the "homepage" of a website). Motion, p. 16. However, determining what constitutes a copy of a URL associated with a visual depiction of sexually explicit conduct is a matter of serious concern for Plaintiffs, and the Government ignores the fact that failing to specifically define "copy" in this circumstance leaves them to choose among competing alternatives, none of which clearly stand out as the answer. The Court is obviously free to accept the narrowing construction offered in response to Plaintiffs' vagueness complaint, but, again, the Government's belated acknowledgment of a construction more precise than its regulation does not warrant dismissal of Plaintiffs' claim.

**F.      Claim 16:  Vagueness Of The Phrase "A Copy Of The Depiction"**

Plaintiffs also contend that the 28 C.F.R. 75.2(a)(1)(i) requirement that a producer maintain a "copy of the depiction" of any performer portrayed in actual sexually explicit conduct is unconstitutionally vague because the regulation's definition of "copy" makes little sense: "copy" ... when used in reference to a sexually explicit depiction means the sexually explicit image itself (e.g., a film, an image posted on a web page, an image taken by a webcam, a photo in a magazine, etc.)." 28 C.F.R. 75.1(e)(2). On its face, the language of the regulation makes no reference to "copy" meaning "a duplicate" or "an identical reproduction." Instead, the definition selected by the Government refers to keeping "the sexually explicit image itself," which is not only confusing, but creates practical difficulties for those trying to comply with the regulation. For instance, a producer keeping hard copy records instead of digital for his regulated website content would have great difficulty keeping the sexually explicit website image "itself" when his record-keeping system is in paper format, but the regulated image is in an electronic format. In response to Plaintiffs' complaint,

the Government now states that, despite the wording of 28 C.F.R. 75.1(e)(2), "copy" does not mean "original." Motion, p. 17. This belated explanation does not undermine Plaintiffs' claim.

### G.    Claim 20:  Vagueness Of The Phrase "Date Of Production, Manufacture, Publication, Duplication, Reproduction, Or Reissuance Of The Matter"

28 C.F.R. 75.6(b)(2) requires that the label affixed to matter containing visual depictions of sexually explicit conduct pursuant to § 2257(e)(1) contain "the date of production, manufacture, publication, duplication, reproduction, or reissuance of the matter."  Plaintiffs contend that this provision does not provide the constitutionally required notice as to which date must be declared by a producer and, further, that the native imprecision of this regulation does not adequately restrain the discretion of government officials charged with its enforcement.  The Government responds that "the language is disjunctive and permits any of the various dates to be used." Motion, p. 18.

While the choice is clear for those who engage only in primary producer activities – use the original date of production – it is much less certain for those who engage in both primary and secondary producer activities with respect to the same film, magazine, or photo shoot.  Indeed, the only date truly relevant to establishing whether a performer was an adult at the time she engaged in a performance of actual sexually explicit conduct is the date on which the performance occurred. The dates of later reproduction and duplication of a visual depiction containing the performance are irrelevant to establishing whether a performer had reached the date of majority before the sexual performance took place.  Yet, a primary producer of a film who re-releases that film years later under a different title is left to choose what he thinks is the legally appropriate date, with no exemption given for making the wrong choice among the six alternatives given in the regulation.

Moreover, critical questions exist as to when "production, manufacture, publication, duplication, reproduction, or reissuance" are deemed to occur.  For example, is a DVD "manufactured" when the movie on it is shot?  Or is it manufactured when the DVD is mastered?

18

Or does manufacturing occur when the DVD master is duplicated into copies?  Similarly, when a videotape box cover contains visual depictions of actual sexually explicit conduct, when is it considered "produced" for the purposes of establishing a date of production?  When the images were originally filmed?  When the box cover is created by the producer's art department?  When the box cover is printed by the printing company?  The vagueness of the "date of production, manufacture, publication, etc.," provision is readily apparent.  For the Government to say that the language is in the disjunctive recognizes the obvious, but does not solve the serious interpretation problems the regulation creates for producers trying to comply with the law.

### H.     Claim 21:  Vagueness Of Terms Related To The Location Of Required Statements On A Website.

28 C.F.R. 75.8 requires that a website containing a visual depiction of actual sexually explicit conduct present a statement describing the location where § 2257 records are kept.  28 C.F.R. 75.8(d) provides that a website "shall contain the required statement on its homepage, any known major entry points, or principal URL (including the principal URL of a subdomain), or in a separate window that opens upon the viewer's clicking of a hypertext link...."  The regulation does not define "homepage," "known major entry points," "principal URL," and "principal URL of a subdomain."  It also fails to detail the required location of the hypertext link referred to in the regulation.

Plaintiffs contend that the failure to define these important terms renders the labeling requirement of 28 C.F.R. 75.8 unconstitutionally vague.  In response to Plaintiffs' complaint, the Government offers constructions of these terms, defining "homepage" to mean "the first page on an Internet website, i.e., the page that is accessed when the principal URL is entered into an Internet browser," and states that the "principal URL" is "the main Internet address of a site that accesses the homepage." Motion, p. 18.  Consequently, the Government has now defined "homepage" to mean "principal URL," and while it is clear how a label can be placed on the "homepage," it is quite unclear

how the Government expects a website operator to put a label on the "principal URL" given the

Government's insistence that URL refers only to "textual information," and does not include the

content of the web page to which the URL refers.  Motion, p. 16.  The vagueness of the regulation

is patent in this regard, and Plaintiffs' claim should not be dismissed.

Moreover, the Government observes that "[s]ome Internet websites draw traffic to their sites

through links to other pages on the website other than the homepage."  Such pages are "major known

entry points."  Motion, p. 18.  This construction itself raises new questions.  For instance, what does

the Government mean by "draw traffic?"  Does "drawing traffic" refer only to efforts to attract new

visitors or customers, or does it include links set up solely for ease of access by visitors who are

already subscribers to the website?  If a link to a web page other than the homepage "draws traffic,"

but only to pages of the website that do not contain visual depictions of actual sexually explicit

conduct (which for instance could be accessed only after showing proof of age, paying a subscription

fee, and observing the required label on another web page), is that link a "major known entry point?"

Indeed, the adjective phrase "major known entry point" implies that the Government

recognizes that there are "minor known entry points," but webmasters are not told how to tell the

difference.  The Government's construction suggests that the answer turns on the specific intent

element imported into the labeling requirement by the "drawing traffic" analysis, leaving open the

question of whether entry points that draw little or no traffic despite the hopes of the website operator

are "major" known entry points.  These questions demonstrate the patent vagueness of the label

location requirement, and Plaintiffs' claim in this regard should not be dismissed.

### I.    Claim 22:  Vagueness Of The Location Of The Required Statement In Compilations.

In their twenty-second claim, Plaintiffs assert that the film or videotape labeling rules of 28

C.F.R. 75.8(b) and (c) are vague insofar as they do not give notice of how to label "compilation"

films, videotapes, and DVDs that contain multiple excerpts of visual depictions of actual sexually explicit conduct from different movies. The regulation requires that a producer placed the required label either within one minute of the start of the film or videotape, 28 C.F.R. 75.8(c) or at the end of the end titles or final credits. 28 C.F.R. 75.8(b). This leaves open the question of how a producer must label a compilation video containing multiple movies or multiple excerpts of movies, i.e., must the producer place the required statement before or after each movie or excerpt on the compilation?. The Government maintains that whether a film or videotape is a compilation is irrelevant, which presumably means that a producer does not have to place the required label before or after every film or excerpt contained in the compilation as long as the information pertinent to each film or excerpt is found in a statement at the beginning or end of the compilation film. The Court, of course, may adopt the construction offered by the Government in response to Plaintiffs' complaint, but this recent interpretation does not warrant dismissal of Plaintiffs' properly pleaded vagueness claim.

**J.    Claim 24: Vagueness Of The Phrase "'Assisting Another Person To Engage In Actual Sexually Explicit Conduct"**

18 U.S.C. 2257(h)(4) defines "performer" to include "any person portrayed in a visual depiction engaging in, or assisting another person to engage in, actual sexually explicit conduct." However, the statute does not define what is meant by "assisting another person to engage in actual sexually explicit conduct." The Government first maintains that Plaintiffs have not alleged that the challenged phrase would be vague in all instances. As noted above, because First Amendment interests are at stake in this case, Plaintiffs are not required to allege that 18 U.S.C. 2257(h)(4) is vague in all instances. *See Corrow*, *supra*.

Second, the Government claims that the definition of performer is not vague because "the person 'assisting' must be a performer, i.e., actually in the movie or depiction at issue," and that "the word 'assist' thus only comes into play at all for those performers who do not themselves engage in

21

sexually explicit activities but who assist others to do so." Motion, pp. 19-20. Frankly, the Government's explanation of the definition of "performer" is as confusing as it is circular. Assuming, arguendo, that defendant intends to exclude directors, photographers, and caterers, from the definition of "performer," it still has not answered the basic and obvious question posed by Plaintiffs in their complaint: what actions by an actor in a sexually explicit movie constitute "assisting another to engage in" actual sexually explicit conduct? If an actor is not engaged in actual sexually explicit conduct during the filming of a scene, then what does he or she have to do in order to be considered "assisting" another actor to engage in such activities? Does the actor's mere presence in the scene constitute "assistance"? If an actor is a spectator to sexual conduct, but roots for the other actors participating in sexual activity, is she assisting by providing verbal support? Or does that non-participating actor "assist" by engaging in provocative, but not actual sexually explicit, conduct either before, while, or after other actors have engaged in actual sexual activity?

The challenged "assisting another to engage in" provision is the epitome of a law that is void-for-vagueness. It is so barren of notice concerning what it proscribes that even the Government cannot clearly state what it means. The provision is so indefinitely phrased that enforcing officials can substitute their own, subjective judgments concerning whether someone is "assisting" another person to engage in actual sexually explicit conduct. The regulation forces individuals of common intelligence to guess at the meaning of the law and is consequently unconstitutionally vague.

### K.    Validity of Plaintiffs' Challenges in Claims 9, 17, and 18

The Government contends that Plaintiffs' claim alleging the unlawful retroactivity of the 2005 rule amendments requiring that a performer's legal name and date of birth be ascertained only from a picture identification card (as opposed to either a picture identification card or an identification document under the rules in effect prior to the amendments) should be dismissed because a retroactive

application of the law does not exist. Motion, p. 20. However, a fair reading of 28 C.F.R. 75.2(a)(1) demonstrates that the challenged regulation requires examination of only a picture identification card with respect to all regulated visual depictions made after July 3, 1995. If this provision was not intended, on its face, to be applied retroactively, one would assume that it would have been phrased in prospective terms. That the Government now agrees after Plaintiffs have filed suit that the provision will not be enforced retrospectively is a recent construction it has adopted in response to litigation and is not a ground justifying dismissal of Plaintiffs' claim.

Similarly, the Government maintains that Plaintiffs wrongly claim in Claims 17 and 18 that 28 C.F.R. 75.2(a)(1)(i) requires that a copy of every iteration of a regulated depiction be kept in a producer's records. Motion, p. 20. In response to Plaintiffs' complaint, the Government now states that only one copy of each depiction must be maintained in a producer's records, a marked departure from the regulation commentary. *See, e.g.*, 70 C.F.R. 29607 ("the proposed rule required producers to maintain copies of every iteration of a web page in order to create a record of which performers were featured over time"); *id.* at 29610 ("The Department has amended the rule to clarify that there must be copy (sic) of any and every depiction ... without the depictions, inspectors could not confirm that each book, magazine, periodical, film, videotape or other matter has affixed to it a statement describing the location of the records"). Accordingly, Plaintiffs submit that the Government's recently adopted interpretation requiring the keeping of only one copy of each depiction does not diminish the validity and sufficiency of Plaintiffs' claims in this regard.

## VII.   PLAINTIFFS STATE A VALID FIFTH AMENDMENT CLAIM THAT SHOULD NOT BE DISMISSED.

### A.   Plaintiffs Have Standing To Assert A Fifth Amendment Violation.

Plaintiffs challenge the fact that § 2257 permits the Government to use inspected and seized records in obscenity and child pornography prosecutions as Fifth Amendment violation. To counter,

23

the Government argues Plaintiffs lack standing because no § 2257 case has been presented at a criminal trial relying upon *Chavez v. Martinez*, 538 U.S. 760 (2003), for the proposition that pre-trial Fifth Amendment challenges to coerced statements are prohibited.  But, as the Government all but concedes in a footnote, this is an improper reading of the Court's opinion. Motion, p. 22 n.10. Only four justices agreed with a blanket holding that Fifth Amendment claims are unripe absent criminal charges; a five-justice majority of the Court joined Justice Souter's concurring opinion that the Fifth Amendment can be violated by pre-trial conduct. *See id.* at 776 (Souter, J., concurring). Thus, *Chavez* poses no bar to adjudicating Plaintiffs' Fifth Amendment claims here.

The Government also claims that there is no credible threat that Free Speech Coalition's members will be prosecuted for child pornography or obscenity.[3]  This assertion, too, flies in the face of reality.  In 2003, the United States initiated a ten-count obscenity prosecution against Extreme Associates, Inc., one of the country's larger and more high-profile producers of sexually explicit materials. *See United States v. Extreme Associates, Inc.*, 431 F.3d 150 (3d Cir. 2005);   Jake Tapper, *C o u r t   D e a l s   B l o w   t o   U . S .   A n t i - P o r n   C a m p a i g n ,*   a t http://abcnews.go.com/Nightline/Business/story?id=433956&page=1.  More recently, the federal government has charged a well-known adult bookstore chain and its owner with obscenity offenses, as well as also increasing its budget to combat child pornography and obscenity on the Internet. *See United States v. Goalie Entertainment Holdings, Inc.*, No. 3:05-CR-43  (N.D. Tex. March 11, 2005); R e m a r k s   o f   A t t o r n e y   G e n e r a l   J o h n   A s h c r o f t   ( J u n e   6 ,   2 0 0 2 ) ,   a t http://www.obscenitycrimes.org/AshcroftSpeech.cfm.  In addition, the Government's assertion that

---

[3]The Government focuses its standing argument on child pornography prosecutions, which it claims Plaintiffs should not reasonably anticipate given that they are admittedly not in the business of producing sexually explicit material containing minors.  However, § 2257 also authorizes use of the required records in obscenity prosecutions, which is of much greater concern to Plaintiffs given the Department of Justice's stated intent to prosecute obscenity online.

Free Speech Coalitions' membership produces only lawful sexually explicit material contradicts the Government's earlier position that adult works constitute illegal prostitution under state law and the Mann Act and therefore are presumptively *illegal*.  Motion, pp. 6-7, 23.  And the fact that the Department of Justice, itself the prosecutorial arm of Government, recently adopted new implementing regulations bodes well that the record-keeping requirement will be enforced and utilized in subsequent criminal prosecutions.  Thus, it is entirely incorrect to suggest that Plaintiffs face no threat of criminal prosecution.  Instead, Plaintiff Free Speech Coalition's members constitute some of the most heavily targeted businesses by federal law enforcement and therefore legitimately fear the use of § 2257 records in obscenity prosecutions.

**B.     Plaintiffs' Fifth Amendment Claim Has Merit And Should Not Be Dismissed.**

Individuals and sole proprietors retain a Fifth Amendment right to avoid making inculpating statements against themselves in a criminal prosecution.  *See, e.g., Miranda v. Arizona*, 384 U.S. 436 (1966).  A long-standing but narrow exception to this protection exists for Governmentally required records.  *Wilson v. United States*, 221 U.S. 361, 380 (1911).  To be exempt from Fifth Amendment protection, a required record scheme must satisfy a rigid three-part test: 1) the purpose of the record-keeping requirement must be regulatory and not criminal; 2) the records must be of the type customarily kept by the business; and 3) the records must have assumed a public character.  *See California v. Byers*, 402 U.S. 424, 427-28 (1971); *Grosso v. United States*, 309 U.S. 62 (1968).  In addition, where the records requirement is targeted against "highly selective group inherently suspect of criminal activities," the requirement itself suggests that the records are protected from disclosure under the Fifth Amendment.  *Byers*, 402 U.S. at 429-30.[4]

---

[4]The Government suggests that a Fifth Amendment challenge to a records requirement can *only* be sustained when it is directed at a criminally suspicious group.  Motion, p. 22.  *Byers* is clear,

At least one court has applied these considerations to invalidate § 2257 on Fifth Amendment grounds.  *See In Re Grand Jury Subpoena Duces Tecum to John Doe 1*, 368 F.Supp.2d 846 (W.D. Tenn. 2005).  Because the parties in that case stipulated that § 2257 meets the second prong of the required records exception, the court focused its inquiry on whether the record-keeping statute was regulatory or criminal in nature.  *Id*. at 849-50 n.8.  Concluding it was the latter, the court emphasized three important aspects of the records scheme.  First, the court determined that § 2257 is inherently a criminal statute, given that its stated purpose is to combat child pornography, itself a crime.  *Id*. at 851-52.[5]  Next, the court observed that the statute is targeted at a highly selective group inherently suspect of criminal activities, namely producers of sexually explicit works that either contain or appear to contain minors.  *Id*. at 853.[6]  Also indicative of the statute's criminal nature is the fact that those who create sexually explicit works are exposed to criminal liability under state and federal obscenity laws.  *Id*. at 854.  Because these factors rendered the statute criminal and not regulatory, the court need not consider the remaining two prongs of the required records test before determining that the statute impermissibly violated the Fifth Amendment.  *Id*. at 857.

The Government attempts to distinguish *In Re Grand Jury* on the basis that it applied the three-pronged required records test instead of the balancing of interests standard articulated in *Byers*.  Motion, p. 23 n.13.  This argument evidences a patent misreading of *Byers*.  While it is true that the

---

however, that such a requirement presumptively violates the Fifth Amendment, while other, less draconian records-keeping schemes can still be unconstitutional if they satisfy the three-pronged test highlighted above.  *See Byers*, 402 U.S. at 429-30.

[5]The Government concedes throughout its motion, and in fact even affirmatively argues, that the underlying purpose of § 2257 is to protect children and alleviate child pornography.  Motion, p. 5.  This echos the findings of the D.C. Circuit, which, in first analyzing § 2257 fourteen years ago, found that the statute was adopted to "facilitate enforcement of the federal criminal laws aimed at child pornography."  *See American Library Ass'n v. Barr*, 956 F.2d 1178, 1182 (D.C. Cir. 1992).

[6]Section 2257 can also be said to target a highly suspicious group under the theory that all sexually explicit material constitutes prostitution and is therefore illegal.  Motion, pp. 6-7.

*Byers* Court did contemplate balancing the individual right to avoid records disclosure against the Governmental interest in justice, it later advocated use of the three-factor test to ensure that the competing interests were properly balanced. *See Byers*, 404 U.S. at 430. Thus, the court in *In Re Grand Jury* properly applied the three-factor test to § 2257's record-keeping requirement and determined under that standard that the statute violates the Fifth Amendment.

Perhaps conceding as much, the Government contends that information maintained in a producer's § 2257 records would not be helpful in an obscenity prosecution. Motion, p. 24. This overly simplistic argument ignores the realities of what § 2257 requires. Because the record-keeping requirement is triggered when sexually explicit material is produced, and not when it is disseminated, it is possible that the Government would be exposed to a non-published work for the first time on inspection, thereby increasing the likelihood of an obscenity prosecution for works that were created but not published. In addition, the Government could also obtain performers' contact information by conducting a § 2257 inspection and would therefore be more likely to locate witnesses who could confirm the identity of those responsible for creating and distributing the work. In fact, in the context of obscenity, the maintenance of § 2257 records is itself an admission of wrongdoing, for it is only those individuals and entities who create and publish the sexually explicit material at issue that are required to maintain records. Therefore, the fact that an entity has § 2257 records for a particular work is a concession that the entity was involved in its distribution. Given these concerns, coupled with the fact that § 2257 imposes criminal liability on violators and the Government's recent attacks on the adult industry, § 2257 violates the Fifth Amendment.

## VIII.   PLAINTIFFS STATE A VALID RIGHT OF PRIVACY CLAIM.

Contrary to the Government's assertion that Plaintiffs lack standing to mount a privacy challenge, § 2257 and 28 C.F.R. Part 75 impact the privacy rights of Plaintiff Free Speech Coalition's

membership, and FSC therefore has associational standing to assert the rights of its members here. *See Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977). Many of those members are individual performers and producers involved in the creation of sexually explicit works who retain their right of privacy guaranteed by the Constitution. *See* Amended Complaint, p. 5 ¶ 9. Section 2257 works a direct hardship on that right by requiring performers to disclose highly personal information, including date of birth and residential address, as a condition precedent to participating in the creation of adult material. The harm of this disclosure is magnified by the fact that the Attorney General's regulations then implicitly mandate that primary producers provide this information to secondary producers with which the performer has had no contact.[7] In light of the fact that § 2257 and its regulations mandate these disclosures, it is fatuous for the Government to argue that the alleged privacy invasions are not "fairly traceable" to Government action. Motion, pp. 24-25.

It is clear under federal law that an individual retains a privacy interest in his image and personal information, such as date of birth and residential address. This is so clear, in fact, that Congress has expressly labeled an individual's name and address as "personal information" and an individual's photograph as "highly restricted personal information." *See* 18 U.S.C. § 2725(3), (4).[8] In addition, the Tenth Circuit has recognized a privacy right in the home and a Governmental interest in protecting residential contact information from third parties. *See Mainstream Marketing Services, Inc. v. Fed. Trade Comm'n*, 358 F.3d 1228 (10th Cir. 2004) (upholding "do-not-call" registry in part

---

[7]The Court has preliminarily enjoined those portions of the statute and regulations that mandate record-keeping by secondary producers. Order, p. 11. However, absent a permanent injunction, it is possible that the United States will ultimately attempt to prosecute offending secondary producers who have not maintained records during this time period. In fact, in the temporary restraining order agreement that preceded the Court's preliminary injunction order, the Government expressly reserved the right to institute future prosecutions. Stipulation, p. 2 ¶ 3.

[8]Not so ironically, these definitions are found a mere few code sections away from § 2257.

based on Government's interest in protecting the right of privacy in the home).  Courts have also expressed a willingness to protect an individual's personal information, like residential address and date of birth, where release of the data may jeopardize a person's safety.  *See, e.g., Kowalski v. Stewart*, 220 F.R.D. 599 (D. Ariz. 2004).  Applying these principles, courts have specifically recognized the need to protect private information in the context of adult entertainment, where performers often work under pseudonyms to avoid harassment by fans.  *See, e.g., Movie & Video World, Inc. v. Bd. of County Comm'ns of Palm Beach County*, 723 F.Supp. 695 (S.D. Fla. 1989).

Section 2257 and its implementing regulations threaten to jeopardize the personal privacy of performers by mandating disclosure of highly personal information to countless third parties beyond the performers' sphere of influence.  The Government attempts to defeat this claim by arguing that primary producers may redact the month and day of birth as well as the residential addresses of performers from their driver's licenses prior to transferring the records to secondary producers.  Motion, p. 25.  There is nothing in either § 2257 or the implementing regulations that permit such an action.[9]  Rather, the regulations require that all producers maintain and properly index copies of each performer's picture identification card to ensure that the actors are not minors.  Despite the Government's protestations, redacted copies are simply not permitted.

The Government's suggestion that performers limit their business relationships to only those primary producers who often serve as their own secondary producers is equally unworkable.  Motion, pp. 26-27.  As the Affidavit of Jeffrey Douglas makes clear, the adult entertainment industry is comprised of numerous entities in the production chain, each of which engages in a separate but important function. Douglas Aff., pp. 3-4 ¶¶ 8-10.  For example, a magazine company may purchase

---

[9]The Government's inherent concession that a performer may wish to have her address and month and date of birth redacted itself suggests that there is in fact a privacy interest in keeping that information from public or widespread disclosure.

sexually explicit photographs from an independent photographer and combine those with its own images to create a monthly edition, thereby making it both a primary and secondary producer. The company may then contract with a graphic design firm for its layout and printing, making the firm a secondary producer as well. After production, a distributor may then purchase the monthly magazine in bulk and upload its cover onto its website to encourage sales, also triggering the § 2257 record-keeping requirement.[10] In this realistic hypothetical, the performer is four transactions removed from the distributor who ultimately must maintain copies of her private identifying information. If the performer limited her relationship to only the independent photographer, as the Government suggests, she would have no outlet for her expression. Even contracting only with the larger corporate entity, the magazine, would not suffice to protect her right of privacy because the magazine contracts with other secondary producers to create and distribute its product. In the complex world of the adult entertainment industry, it is therefore unrealistic to expect performers to work only for those companies that serve as exclusive primary and secondary producers without assistance from outside entities.

Despite the fact that they engage in their protected right to free expression, performers in sexually explicit works retain a right of privacy that includes their personal information and likeness. The concern for performers' privacy is heightened given the possibility of stalking, harassment, and identity theft. *See* Gelbard Decl.; Hartman Decl. The Government's arguments to the contrary are erroneous and should be rejected.

**IX.    CONCLUSION**        For the foregoing reasons, the Government' Motion to Dismiss or in the alternative for Summary Judgment should be denied.

---

[10]This method of marketing is employed by Plaintiff Lenjo, Inc., a distributor who qualifies as a secondary producer because it maintains a website on which it posts other producers' sexually explicit images. *See* Deposition of Leonard Friedlander.

Respectfully submitted,


＿＿＿＿/s/ Michael W. Gross＿＿＿＿＿＿＿＿＿
Arthur W. Schwartz
Michael W. Gross
Schwartz & Goldberg PC
1225 17th Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 893-2500


H. Louis Sirkin (Ohio Bar No.  0024573)
Jennifer M. Kinsley (Ohio Bar No.  0071629)
Sirkin Pinales & Schwartz LLP
105 West Fourth Street, Suite 920
Cincinnati, Ohio 45202
Telephone: (513) 721-4876


Paul J. Cambria, Jr.
Roger Wilcox
Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria
42 Delaware Avenue, Suite 300
Buffalo, New York 14202-3901
Telephone: (716) 849-1333

Counsel for Plaintiffs

31

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document has been provided via efiling

and transmitted to all attorneys on the 21st day of February, 2006.


_____/s/ Jennifer M. Kinsley_____

Jennifer M. Kinsley

Counsel for Plaintiffs


C:\Documents and Settings\Administrator\My Documents\FSC resp to dismiss FINAL30.wpd