IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civ. No. 05-cv-01126-WDM-BNB

FREE SPEECH COALITION, INC., et al.

Plaintiffs,


v.

ALBERTO R. GONZALES, in his official capacity as Attorney General of the United States,


Defendant.

_____

**REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
AMENDED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND
12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
_____

# INTRODUCTION

Plaintiffs' opposition does nothing to undermine and much to reinforce defendant's motion to dismiss, which established that their claims are meritless and that the Court lacks jurisdiction over certain of those claims. Plaintiffs' First Amendment claims fail because the requirements of 18 U.S.C. § 2257 and the implementing regulations are an obvious means of ensuring that underage performers do not appear in pornographic movies; in addition, the immense success of the pornography industry during the decade that the statute has been in effect alone establishes that the statute and regulations do not foreclose any (let alone all) alternative avenues of communication for sexually explicit speech. Defendant's uncontradicted evidence concerning the low cost of electronically storing sexually explicit depictions and the market for sexually explicit depictions of young-looking models, only confirms that plaintiffs' First Amendment claims must be dismissed.

Plaintiffs fare no better in addressing defendant's motion to dismiss their other claims. Their opposition generally disregards the basic rules governing facial First Amendment vagueness challenges, and their specific criticisms identify no ambiguity in the regulations, let alone ambiguities that approach constitutional dimensions. Also, for each of their constitutional claims, plaintiffs show a disregard for precedent by, *inter alia*, misstating the holdings of Supreme Court decisions, ignoring Tenth Circuit precedent in the vagueness and privacy contexts, and ignoring various decisions from other circuits that specifically hold that there is no constitutional right to privacy in basic driver's license information. Finally, plaintiffs fail to offer any response to defendant's motion to dismiss their Fourth Amendment and international law claims and their First Amendment claims related to labeling.[1]

---

[1] Plaintiffs' response to defendant's statement of undisputed facts denies only defendant's characterizations, but does not dispute or offer countervailing evidence to any evidence cited by defendant, including evidence related to: the pornography industry's success while section 2257 has been in effect, SOMF 10-11, the cost of electronic storage of and cross-indexing of records, SOMF 12, 14, the fact that producers seldom delete the content they produce, SOMF 13, and the market for sexually explicit depictions of teens and young-looking models in various media (SOMF 2-5, 7-9).

# ARGUMENT

I.    **18 U.S.C. § 2257 AND 28 C.F.R. PART 75 DO NOT VIOLATE THE FIRST AMENDMENT AS A MATTER OF LAW**

Nothing in plaintiff's opposition calls into question the Court's prior holding, and the holding of two courts of appeals, that intermediate scrutiny is the applicable standard for evaluating section 2257 and the regulations.  Plaintiffs again rely mistakenly on *Simon & Schuster v. New York Crime Victim's Bd.*, 502 U.S. 105 (1991), *see* Plaintiffs' Response in Opposition to Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, for Summary Judgment ("Pls' Opp.") at 3, which is inapplicable because the statute in that case reached a "wide range of literature" that did not implicate the interests of the statute.  Order on Plaintiffs' Motion for Preliminary Injunction ("Order") at 12 n.6 (*quoting Simon & Schuster*, 502 U.S. at 121-22); *ALA v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994).  By contrast, "a universal requirement of age disclosure, regardless of the apparent age of an individual in a visual depiction, is critical to the government's interest in ensuring that no minors are depicted in actual sexual conduct."  *Connection Distributing Co. v. Reno*, 154 F.3d 281, 292 (6th Cir. 1998); *see also ALA v. Reno*, 33 F.3d at 90.  Plaintiffs also persist in a vain effort to characterize section 2257 as a prior restraint, ignoring the Supreme Court's statement in *Hill v. Colorado*, 530 U.S. 703, 735 (2000), that previously invalidated prior restraints have, unlike this statute, given "public officials the power to deny use of a forum in advance of actual expression."  *See* Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the Alternative, for Summary Judgment ("Def. Motion") at 6.[2]  Plaintiffs' continued arguments that strict scrutiny applies also ignore the Court's prior recognition that "erotic materials" fall, at best, at the outer

_____

[2]  Moreover, the evidence in the record conclusively establishes that section 2257 and the regulations are not a de facto ban on speech, and plaintiff still has not presented the Court with any authority stating that even "de facto" bans should be analyzed "with the level of scrutiny required for a law that actually forbids expression."  *See* Order at 12; Def. Motion at 8-9.  Indeed, an actual de facto ban would be accounted for by the fourth element of the intermediate scrutiny test.

perimeters of the First Amendment.  Order at 23; Def. Motion at 6-7.  This recognition applies with even greater force to the material regulated by section 2257, which, in general, equates to little more than filmed or photographed prostitution.[3]

Applying the proper level of scrutiny, it is apparent that this lawsuit should be dismissed. Plaintiffs weakly protest that by "its very nature, intermediate level scrutiny involves an evaluation of facts presented by the parties after an opportunity for discovery."  Pls' Opp. at 7.  In fact, the case for dismissal under Rule 12(b)(6) is quite straightforward.  In enacting section 2257, Congress relied on the results and recommendations of the Attorney General Commission's comprehensive study of the pornography industry, which described the demand for young-looking performers.  *See Connection Distributing Co.*, 154 F.3d at 290 (discussing the Attorney General Report).  Further, as the Court's order noted it is only "common sense" that a demand for young-looking performers "creates a risk of under-age participation which can be prevented or discouraged by disclosure and reporting requirements."  Order at 16.  Taken together, common sense; the Commission Report; the deference that must be accorded to Congress' predictive judgments; Congress' right to rely on common sense and any evidence that is reasonably believed to be relevant, *id.*; and the fact that the Act prohibits no speech, all

---

[3]  While characterizing the observation as "inflammatory," plaintiffs offer no functional difference between the conduct depicted in hard-core pornography and prostitution. Pls' Opp. at 6 n.2. Plaintiffs also take issue with the government's later observation that hard-core pornography generally has no "serious literary, artistic, political or scientific value," Def. Motion at 10, but respond with nothing more than the stock, question-begging recitation of the obvious proposition that the government may not suppress "ideas" simply because it finds them offensive or disagreeable. Pls' Opp. at 6. The questionable entitlement to First Amendment protection of movies such as plaintiff Conners' "Kneepad Nymphos" series, however, derives not from disagreement with their "ideas" but from the absence of ideas conveyed by the mere prurient depiction of performers paid to engage in sexual activity. After all, it is plaintiff Conners, not the government, who described his movies as containing "30-60 second plots" that are merely the "setup for the sex scene." *See* Def. Motion at 10. And unlike in *Ashcroft* where plaintiff Free Speech Coalition highlighted works of redeeming social value that were potentially affected by the statute, plaintiff has identified no such works that fall within the rubric of section 2257.

establish as a matter of law that section 2257 satisfies the requirements of intermediate scrutiny without the need even to resort to the summary judgment mechanism.[4]

In response, plaintiffs offer no new arguments, but instead reiterate their unconvincing argument that the government has not shown that the statute and regulations "have limited any child pornography." Pls' Opp. at 8. Defendant, however, is not obligated to present pornographer declarants willing to admit that they would have engaged in child pornography were it not for section 2257. Plaintiffs fail to account for the considerable deference owed Congress' *predictive* judgments and ignore the "common sense conclusion" that age-verification is a sensible way to prevent or discourage under-age participation. Further, in again asserting that the statute is not narrowly tailored because a large percentage of the affected performers are not under 18, *id*., plaintiffs again miss the points that any standard other than universal age verification would not be as effective in ensuring that no children are used in sexually explicit speech, and that Congress also need not select the least restrictive alternative. *See* Def. Motion at 10; *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).

If the Court does not believe that this case is subject to dismissal under Rule 12(b)(6), defendant is entitled to summary judgment. The uncontradicted evidence shows that there is a significant demand for pornography involving young-looking performers and that section 2257's disclosure and reporting requirements are a sensible and narrowly tailored way of addressing the risk of under-age participation in pornography. Order at 16-17; Statement of Material Facts ("SOMF") 1-9 (and cited material); Response to Statement of Material Facts ("Resp. To SOMF") at 1-3, 7-9; *see also ALA v. Reno*, 33

---

[4]   Moreover, the continued health of the pornography industry while section 2257 has been in effect is a fact that is so well-known as to merit judicial notice. Plaintiff Free Speech Coalition's web-site, for example, estimates that "adult entertainment was estimated to be an $8 billion economic giant" in 1997" and that few doubt that revenues today are much higher. Free Speech Coalition, White Paper 2005, A Report on the Adult Entertainment Industry, Section I, found at *http://www.freespeechcoalition. com/whitepaper05.htm*. The document estimates, for example, that, in 2002, video stores earned $3.95 billion in video rentals/sales, and cable operators earned just under $800 million from adult movie subscriptions and pay-per-view orders. Also, the report estimates that there were up to 10 million paid subscribers to adult web-sites in 2002 and that in 2003, 34 million adults visited such sites.

F.3d at 88-90; *Connection Distributing Co. v. Reno*, 154 F.3d at 291-93.  Further, the uncontradicted

evidence establishes that the statute and regulations leave open ample means of communication.  The

pornography industry thrived during the period that the prior statute and regulations were in effect.  *See*

note 4, *supra*; Order at 17, 19; SOMF Nos. 10-11.[5]  As for the new requirement that producers maintain

copies of sexually explicit depictions, plaintiffs offer no evidence to contradict the affidavit of

defendant's expert that "large numbers of images can be electronically stored by purchasing hard drives

at insubstantial prices," Order at 18 and SOMF 14 (and cited material), or the statement of their own

witness that producers seldom delete the content they produce.  Order at 18 and SOMF 13.  Likewise,

the requirement that producers make records available for inspections for twenty hours per week is

narrowly tailored.  In response to comments offered in response to the NPRM, defendant reduced by

more than 50 percent the hours that a producer must be available.  70 Fed. Reg. 29607, 29613 (2005).

An effective inspection regime requires that producers be available for some substantial period of time

for inspections, and 20 hours is a reasonable compromise between 0 and 50.

Finally, plaintiffs' inexplicable references to the need for further discovery, Pls' Opp. at 7-9, or

to what a trial "will show," without providing supporting affidavits, *id.*, show only that plaintiffs are

ignoring that they are responding to a summary judgment motion.  Where as here defendant has shown

an absence of material fact as to the elements of intermediate scrutiny, plaintiffs must come forward with

affidavits or evidence establishing an issue of material fact.  *See* Fed. R. Civ. P. 56(e).  Plaintiffs have

not filed a Rule 56(f) motion, nor would such a motion be justified inasmuch as (1) plaintiffs have not

---

[5]  In their opposition, the sum total of plaintiffs' evidence is a few unexplained deposition
citations purportedly establishing that "numerous producers and websites have reduced their speech in
response to the newly enacted regulations."  Pls' Opp. at 9.  Other than a general unilluminating
reference to the entire Douglas deposition, the cited depositions refer to (1) requirements that were in
place prior to the new regulations (cross-indexing and labeling) during which time one cited deponent
produced 41 movies and the other sold more than 1 million sexually explicit films, and (2) privacy
concerns that (A) would be irrelevant if the Court holds that the statute may not be applied to secondary
producers and (B) as explained previously and *infra*, do not establish a constitutional violation.

filed any discovery requests since July of 2005, and (2) the parties had the opportunity for significant

discovery at the preliminary injunction stage.  Conclusory statements as to their right to conduct, or

purported need for, more discovery cannot conceal their failure to point to any evidence establishing an

issue of material fact, and thus cannot defeat defendant's entitlement to summary judgment.[6]

## II.   SECTION 2257 APPLIES TO SECONDARY PRODUCERS

This Court previously found that plaintiffs had demonstrated a substantial likelihood of success

on their claim that 18 U.S.C. § 2257 cannot be applied to secondary producers.  Order at 7-11.  The

Court held that because this Circuit held in *Sundance Assocs, Inc. v. Reno*, 139 F.3d 804, 805 (10th

Cir. 1998), that the relevant portion of section 2257 was unambiguous, evidence of congressional

acquiescence in the defendant's interpretation was irrelevant.  Order at 10-11 (noting that congressional

acquiescence theory is a "species of legislative history analysis").  But whereas "the failure to revise,

*unaccompanied by any evidence of congressional awareness of the interpretation*, is not persuasive

evidence," *see Catron v. County Bd. Of Commissioners, New Mexico v. U.S. Fish & Wildlife Service,*

75 F.3d 1429, 1438 (10th Cir. 1996), Congress here specifically referred in *the statute* to the regulatory

definition of "producer," thus conclusively demonstrating "congressional awareness of the

interpretation."  *See* Def. Motion at 11-12.  In this Circuit's understanding, this reference coupled with

the "failure to revise" the interpretation is "persuasive evidence" of Congress' intent that is not

dependent upon the legislative history.  Because this "persuasive evidence" of Congress' intent was not

before the *Sundance* Court, the decision does not bind this Court.  This conclusion is further bolstered

---

[6] Defendant is not at this time moving to dismiss plaintiffs' claims with respect to "chat rooms." (By contrast, plaintiffs' challenge to the "copy of the URL" requirement referenced in the Court's Order at 21 should be dismissed because the regulation at least is reasonably susceptible to defendant's understanding that producers need not maintain copies of URLs they do not control.  *See* Def. Motion at 16-17.)  While defendant believes that prudential concerns dictate that plaintiffs' chat room challenge would be more appropriately handled in a lawsuit with a chat room plaintiff, defendant is at a minimum entitled to dismissal of all of plaintiffs' First Amendment claims except as applied to chat rooms.

by the fact that the Tenth Circuit's statement that the statute was unambiguous came in the context of its discussion of a construction that the defendant does not advance in this case. *Id*. Plaintiffs' *ultra vires* claim must accordingly be dismissed.

## III.    PLAINTIFFS' VAGUENESS AND OVERBREADTH CLAIMS MUST BE DISMISSED

Plaintiffs' vagueness and overbreadth claims are subject to dismissal for two reasons which apply generally to all of those claims, as well as for individual reasons that are specific to particular claims. *First*, because the purported vagueness of the provisions would at most lead a producer to keep records (or, in certain cases, to affix labels) unnecessarily, plaintiffs' claims do not implicate the basic reason for permitting facial vagueness challenges in the First Amendment context – *i.e.*, to prevent the substantial deterrence of the speech of others not before the Court. Def. Mem. at 14. Plaintiffs offer no answer to this point, which disposes of their vagueness and overbreadth claims.

*Second*, plaintiffs' vagueness claims must be dismissed because even they do not deny that the challenged provisions are fairly susceptible to the government's understanding of those provisions. Instead, plaintiffs invent a rule that a facial vagueness challenge should not be dismissed unless a narrowing construction "represent[s] binding judicial or administrative determinations or well-established official practices." Pls' Opp. at 10. Plaintiffs thus ignore the various cases stating that a facial vagueness challenge can only succeed where the challenged provision is not readily susceptible to a narrowing construction, *see* Def. Motion at 14.[7] Because plaintiffs do not deny that the provisions

---

[7]    They also badly misread *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 (1988), which strongly supports defendant's position. *See* Pls' Opp. at 10, 16. The rule cited by plaintiffs applies only to the presumption that the official at issue "will act in good faith and adhere to standards *absent from the ordinance's face*" in administering a permit system that gives an official unbridled discretion to prevent speech in advance of its occurrence. *Id*. (emphasis added). The Court held that it would not "write nonbinding limits into *a silent state statute*." *Id*. (emphasis added). At the same time, a footnote in the opinion that plaintiffs ignore states that "the Court will presume any narrowing construction or practice to which the law is 'fairly susceptible'" – *i.e.*, the principle relied on by defendant and disregarded by plaintiffs. *Id*. at 770 n.11.

at issue are, at a minimum, reasonably susceptible to the interpretations offered by the government, their vagueness and overbreadth claims are subject to dismissal for this reason as well.[8] Further, while plaintiffs' vagueness and overbreadth claims are all subject to dismissal for one or both of the foregoing reasons, the following responds to the particulars of plaintiffs' vagueness and overbreadth claims, which establish nothing but plaintiffs' determination to find confusion where none exists.

A.  <u>LOCATED OUTSIDE THE UNITED STATES (CLAIM 11)</u>:  As stated previously, the absence of a temporal qualifier to the phrase "located outside the United States" means that there is no temporal qualifier.  Def. Motion at 15; Pls' Opp. at 11.

B.  <u>PICTURE IDENTIFICATION CARD REQUIREMENTS (CLAIM 12)</u>:  Plaintiffs' opposition seeks to amend their complaint with nonconclusory allegations well after the deadline for amendment.  This effort is improper but also irrelevant inasmuch as their overbreadth claim only rephrases their assertion (dealt with elsewhere) that the statute and regulations are not narrowly tailored. *Contrast* Pl. Opp. at 12-13 with Am. Compl. ¶¶ 158-59; *see also* Def. Motion at 15.

C.  <u>"SADISTIC OR MASOCHISTIC ABUSE" (CLAIM 13)</u>:  Plaintiffs ignore the cases cited by defendant that have denied vagueness challenges to these terms, which have been part of the U.S. Code for more than 20 years.  *See* P.L. 98-292, 98 Stat. 205 (May 21, 1984); Def. Mem. at 15 n.8. The commonly understood meaning of the terms clearly applies to depictions of men and women being whipped, tied up, and/or beaten for the sexual pleasure of one or both of the participants.  Examples of such depictions include web-sites such as those found in Def. PI Ex. A, Website Compilation, Files 6, 15, 16, 18.  Plaintiffs' opposition offers not even a hypothetical example where the applicability of the

---

[8]  Plaintiffs' own authority supports defendant's position on both points.  In *Movie & Video World, Inc. v. Bd. Of County Comm'rs of Palm Beach County, FL*, 723 F. Supp. 695, 702 (S.D. Fl. 1989), the Court denied a motion for preliminary injunction as to portions of an adult business ordinance because any alleged vagueness did not "serve as a 'real and substantial' deterrent effect" on expression and because the "challenged definitions" were "readily subject to narrowing construction. . . ."

phrase would be unclear, let alone an example that would not satisfy one of the other sections of the definition of "sexually explicit conduct." Accordingly, they have obviously not provided a sufficient number of examples to show that the statute would be vague in more than a small minority of instances.

D. PORTRAYED IN SUCH A DEPICTION AFTER JUNE 23, 2005 (CLAIM 14): Plaintiffs' posited dictionary definition, *see* Pls' Opp. at 15-16, supports defendant's understanding that the operative date is when the subject was "depicted," not the date that copies of the depiction are sold or published. Plaintiffs' failure to appreciate this fact is left unexplained but appears to rest on a misunderstanding of the word "depicted," which like "portrayed" refers to the initial creation of the work, not its subsequent reproduction or publication. *See also* Def. Motion at 16.

E. "A COPY OF ANY URL" (CLAIMS 15, 17-18): The parties agree that a URL refers to the textual Internet address that "designates where the associated imagery may be found." Pls' Opp. at 16; Def. Motion at 16; *see also* http://www.webopedia.com/TERM/U/URL.html (defining a URL as "the global address of documents and other resources on the World Wide Web"). Thus, a copy of a URL is a copy of the textual Internet address.[9] *See also* Def. Motion at 20.

F. "A COPY OF THE DEPICTION" (CLAIM 16): Here, plaintiffs simply reiterate their complaint. Pls' Opp. at 17-18. Other than unjustifiably calling defendant's straightforward observation that the word "copy" does not mean "original" a "belated explanation," *id*. at 18, plaintiffs make no attempt to respond to defendant's discussion of this phrase. Def. Motion at 17.

G. "DATE OF PRODUCTION, MANUFACTURE . . ." (CLAIM 20): Plaintiffs inexplicably assert that the fact that the regulation is in the disjunctive does not solve its alleged "interpretation

---

[9] Plaintiffs' reference to the phrase "principal URL" from later in the regulations ignores the context where it appears. Pls' Opp. at 16. Those words appear in the section on labeling. Given that it is not possible to put a label on a textual designation, *see* Pls' Opp. at 19-20, and given that the words "principal URL" appear as part of a list that includes the words "homepage" and "major entry point," Def. Opp. at 18, it is obvious that the later reference to "principal URL" refers to the page itself, an observation in no way suggests that the earlier reference should not be accorded its plain meaning.

problems." Pls' Opp. at 19. But assuming that a producer would ever truly have difficulty identifying, for example, the date of manufacture (a dubious proposition that need not be addressed) then the producer may use the "original date of production," which even plaintiffs admit is not hard to identify. *Id*. at 18; *see also* Def. Motion at 18.

H. <u>LOCATION OF REQUIRED STATEMENTS (CLAIMS 21 AND 22)</u>: Plaintiffs appear to abandon their claim that the word "homepage" is vague, but instead persist only in complaining about the phrase "known major entry point." Pls' Opp. at 19. Any doubts as to whether a "known entry point" is "major" would at most require the insertion of a hypertext link on pages where it was not required; it would not deter speech. *See supra* at 7; Def. Motion at 21. The fact that the regulations leave open the possibility that there are known minor entry points where a hypertext link would not be required is an accommodation to producers, not a basis for a vagueness claim. There is also nothing unclear about the labeling requirements that creates ambiguities for compilations (Claim 22). If the compilation has end credits, the statement goes in the end credits. If it has no end credits, it goes at the start of the film or videotape. *See* Def. Motion at 22.

I. <u>"ASSISTING ANOTHER PERSON" (CLAIM 24)</u>: Defendant explained that the word "assist" applies only to performers, not to provide a definition of the word as plaintiffs mistakenly suggest, but instead to refute plaintiffs' contention that the phrase is "limitless" – a claim that they now quietly abandon. *See* Def. Motion at 19; Pls' Opp. at 21. As defendant noted without response from plaintiffs, the word "assist" (which has been part of the statute for more than 15 years, *see* P.L. 100-690, 102 Stat. 4488 (Nov. 18, 1988) would apply to someone who used a sexual aid on someone else without engaging in actual sexually explicit conduct.

IV. **PLAINTIFFS' FIFTH AMENDMENT CLAIM IS UNRIPE AND MERITLESS**

Plaintiffs' Fifth Amendment claim is not justiciable. Plaintiffs do not even assert that they have standing to challenge the provision allowing section 2257 records to be used in child pornography

prosecutions, and they also lack standing to challenge the use of 2257 records in obscenity prosecutions. Under *Chavez v. Martinez*, 538 U.S. 760 (2003), a Fifth Amendment violation does not arise until a privileged statement is introduced against the defendant in a criminal proceeding.[10] Here, there has not even been a required production of records to the government, let alone the initiation of legal proceedings where such records would be used. Thus, even if plaintiffs could show an immediate threat that section 2257 records will be seized and used against one of them in an obscenity prosecution (which they cannot) such a claim would be unripe because there would be ample opportunity to bring a lawsuit during the period between the hypothetical seizure of the records and the hypothetical injury.

Moreover, for an injury to occur, there would have to be an inspection, a seizure of records, a subsequent criminal prosecution for obscenity against the record-holder, and the use of the records against the defendant in that prosecution. *See* Def. Motion at 22. Plaintiffs have not shown that plaintiff Conners or any individual member of the Free Speech Coalition faces an imminent threat of this series of events. *See Colorado Taxpayers Union*, *Inc. v. Romer*, 963 F.2d 1394, 1397 (10th Cir. 1992) (an association has standing to raise claims on behalf of members only when "its members would otherwise have standing to sue in their own right") (citation and internal quotation marks omitted). Even a strong likelihood that one if its members will be charged with obscenity in the near future would not establish a likelihood that section 2257 records will be used in the prosecution or that any *particular*

---

[10] Plaintiffs misread *Chavez*. The opinions of Justice Souter and Justice Thomas (the relevant portions of which were joined by a total of six justices) "conclude[d] that a violation of the Self-Incrimination Clause does not arise until a privileged statement is introduced at some later criminal proceeding." *Chavez*, 538 U.S. at 789 (Kennedy, J., concurring in part and dissenting in part). Plaintiff asserts that Justice Souter's concurrence joined by a majority of the Court states that the "Fifth Amendment can be violated by pre-trial conduct" – an assertion that is irrelevant and misleading. Pls' Opp. at 24. The part of Justice Souter's concurrence that was joined by a majority of the Court held only that the beating of a suspect to extract a confession could potentially form the basis for a Fifth Amendment *substantive due process* claim – *not* a Fifth Amendment *self-incrimination* claim, the subject of Claim 23. 538 U.S. at 779-80.

member could establish standing to raise a Fifth Amendment violation.[11]  Plaintiffs cannot establish

associational standing when no individual faces anything more than a speculative claim to injury.

Plaintiffs' response to defendant's 12(b)(6) motion to dismiss their Fifth Amendment claim

ignores one basis for dismissal entirely – *i.e.*, the non-testimonial nature of any information that could

even potentially be helpful in an obscenity prosecution – and offers an entirely inadequate response with

respect to defendant's other points. Def. Motion at 22-24; Pls' Opp. at 25-26. *First*, plaintiffs generally

apply the wrong legal standard, asserting that the Supreme Court's decision in *California v. Byers*, 402

U.S. 424 (1971), "advocated use" of a particular "rigid three-part test." Pls' Opp. at 25. Plaintiffs are

incorrect. The *Byers* Court, for example, never discusses whether the records are "of a type customarily

kept by the business" or whether the records "have assumed a public character." *See* Def. Motion at

23 n.13. Instead, *Byers* requires consideration of other factors in order to answer the larger question

of whether a particular statute poses "substantial hazards of self-incrimination," including whether the

statute is "directed at a highly selective group inherently suspect of criminal activities." *Byers*, 402 U.S.

at 429-31.[12]  Plaintiffs are therefore wrong that the test is "rigid," and about the factors to be considered.

---

[11]    Plaintiffs have also not even shown a likelihood that one of its members will be charged with
obscenity. Plaintiffs have emphasized that they view their speech as legal. Def. Motion at 22. Section
III of Free Speech Coalition's description of the adult-entertainment industry, *see supra* at 4, states that
"only a small percentage of commercial adult entertainment has ever been charged as being obscene; and
of those, few have been convicted."

[12]    *See Pauldino v. United States*, 500 F.2d 1369, 1371 (10th Cir. 1974) ("self-reporting, which
is indispensable to the fulfillment of a legitimate governmental goal, and not designed to produce
incriminating answers, does not violate Fifth Amendment rights"); *United States Securities & Exchange
Comm'n v. Fehn*, 97 F.3d 1276, 1291-92 (9th Cir. 1996) (identifying the *Byers* factors as the relevant
ones to be considered under *Byers* and identifying the question of whether the statute at issue is likely to
cause self-incrimination as the overriding purpose of the analysis); *United States v. Flores*, 753 F.2d
1499, 1501 (9th Cir. 1985) (firearms notification statute did not violate the Fifth Amendment
notwithstanding finding that the transport of firearms was an area "permeated with criminal statutes"
because shipment of firearms to an unlicensed person was not *per se* illegal); *United States v. Dichne*,
612 F.2d 632, 639-40 (2d Cir. 1980) (applying the *Byers* factors and also holding that against "any risk
of incrimination from the Act [] must be balanced the governmental interest in establishing such a
disclosure requirement").

Plaintiffs' analysis thus focuses on the formalistic application of the wrong factors and makes no serious argument that section 2257 poses "substantial hazards of self-incrimination." For example, plaintiffs contend that the statute is "inherently a criminal statute, given that its stated purpose is to combat child pornography, itself a crime." Pls' Opp. at 26.[13] The question for Fifth Amendment purposes is not, however, whether a statute relates in some way to criminal activity, but instead whether it is attempting to detect or generate evidence of criminal activity. Section 2257's purpose is not to generate evidence of a crime, but to ensure that producers verify performers' ages. As stated previously (with no response from plaintiffs), the statute was in place for more than a decade when records could not be used as evidence in obscenity or child pornography prosecutions. Plaintiffs also have maintained that FSC's members are not "inherently suspect" of producing child pornography, and that obscenity prosecutions are rare, *see* note 11, *supra*, and also identify no instance where 2257 records were used to prosecute obscenity. Section 2257 is thus also unlikely to "compel disclosure of information that would surely prove a significant link in a chain of evidence tending to establish guilt." *United States v. Fehn*, 97 F.3d at 1292 (internal quotation marks and citation omitted).

## V.   PLAINTIFFS' RIGHT TO PRIVACY CLAIM SHOULD BE DISMISSED

Plaintiffs make no serious effort to respond to defendant's motion to dismiss their right to privacy claim. Defendant's motion cited various cases specifically holding that driver's license information is not protected by the right to privacy. Def. Motion at 25 and note 15. In addition, defendant explained that the Tenth Circuit protects only information that is "so highly personal and intimate that" it falls

---

[13]   Also characteristic of plaintiffs' faulty analysis is their twice-made assertion that the statute targets a group inherently suspect of illegal activities because "all sexually explicit material constitutes prostitution." Pls' Opp. at 25, 26 n.6 (citing Def. Motion at 6-7). Putting aside the fact that the cited portion of defendant's brief simply pointed out that the speech at issue in this case stretches the limits of the First Amendment even more than erotic dancing, and never stated that sexually explicit materials (as opposed to the act that generally underlies them) are "presumptively illegal," Pls' Opp. at 25, it suffices to point out that section 2257 records may not be used to prosecute prostitution. *See* 18 U.S.C. § 2257(d)(2) (permitting use of records only in prosecutions for the violation of chapters 71 and 110).

"within the zone of constitutional protection," a zone that this Circuit has thus far limited to intimate information about a party's sexual or medical history. Def. Motion at 25-26. Plaintiffs fail to address any of this precedent. Instead, plaintiffs confuse something that they believe to be desirable, with something that is a constitutional right. For example, they cite section 18 U.S.C. § 2725(3), (4), which defines personal information as including driver's license information and which also includes numerous exceptions to the prohibition on disclosure, Pls' Opp. at 28; *see* 18 U.S.C. § 2721. In highlighting these provisions, plaintiffs ignore the difference between a statutory and constitutional right; they further ignore the fact that various federal courts, in evaluating the constitutionality of those federal restrictions, specifically held that the Fourteenth Amendment did not empower Congress to enact this statute because the right to privacy in driver's license information was *not* a constitutional right. *See* Def. Motion at 25 note 15.[14]

Plaintiffs' right to privacy claim is also subject to dismissal because the Court lacks jurisdiction to consider it. As noted in the Court's preliminary injunction order, plaintiffs have failed to "establish a reasonable probability of harm resulting from the regulations," Order at 23, and it is their burden to establish jurisdiction. Performers with safety concerns could also use a passport, which does not contain residential address information, for their identification. *See* 28 C.F.R. 75.1(b). In addition, primary producers may redact non-essential information from the copies of identification that they provide to secondary producers. Order at 24. While plaintiffs deny that this is permitted, they fail to address the language of the picture-identification card requirement which is set forth as a subset of the requirement

---

[14]  None of the cases cited by plaintiffs support their claim of a constitutional right to prevent disclosure of driver's license information. *See Kowalski v. Stewart*, 220 F.R.D. 599, 600 (D. Az. 2004) (inmate could not obtain prison official's home address through an interrogatory); *Mainstream Marketing Services, Inc. v. F.T.C.*, 358 F.3d 1228, 1237-38 (10th Cir. 2004) (the government had a legitimate interest  in protecting individuals from receiving unwanted telemarketing); *Movie & Video World, Inc. v. Bd. Of County Comm'rs of Palm Beach County, FL*, 723 F. Supp. at 703 (no rational connection between requiring disclosure of information about employees and limited partners and stockholders in order to prevent the transmission of disease)

that records contain the "legal name and date of birth of each performer." 70 C.F.R. § 75.2(a)(1). The regulations also do not require primary producers to disclose performer information to any secondary producer. While there may be economic incentives for primary producers to provide such information to secondary producers in certain instances (rather than to act as their own secondary producer), *see* Pls' Opp. at 29-30, primary producers may choose to deal only with responsible secondary producers who do not pose any threat to performer privacy. Def. Motion at 26-27. As a final note, this Court correctly noted that plaintiffs' privacy claim relates entirely to disclosure to secondary producers. Order at 24. Accordingly, while plaintiffs' privacy claim is subject to dismissal, if the Court concludes that plaintiffs' *ultra vires* contention is correct, the Court would not need to reach plaintiffs' right of privacy claim.

## VI.     PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED

Plaintiffs offer no response at all to defendants' motion to dismiss their Fourth Amendment and international law claims. Accordingly, those claims must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion should be granted.

Dated:  March 22, 2006                          Respectfully submitted,

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                WILLIAM J. LEONE
                                                United States Attorney

                                                CARL J. NICHOLS
                                                Deputy Assistant Attorney General

                                                KURT BOHN
                                                Assistant United States Attorney

                                                VINCENT M. GARVEY
                                                Deputy Branch Director

                                                /s/_____
                                                SAMUEL C. KAPLAN

Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
(202) 514-4686 (phone)
(202) 616-8202 (fax)

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      18 U.S.C. § 2257 AND 28 C.F.R. PART 75 DO NOT VIOLATE THE FIRST
        AMENDMENT AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     SECTION 2257 APPLIES TO SECONDARY PRODUCERS . . . . . . . . . . . . . . . . . . . . . 6

III.    PLAINTIFFS' VAGUENESS AND OVERBREADTH CLAIMS MUST BE
        DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    LOCATED OUTSIDE THE UNTIED STATES (CLAIM 11): . . . . . . . . . . . . . . 8

        B.    PICTURE IDENTIFICATION CARD REQUIREMENTS (CLAIM 12): . . . . . . . 8

        C.    "SADISTIC OR MASOCHISTIC ABUSE" (CLAIM 13): . . . . . . . . . . . . . . . . . 8

        D.    PORTRAYED IN SUCH A DEPICTION AFTER JUNE 23, 2005
              (CLAIM 14): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        E.    "A COPY OF ANY URL" CLAIMS 15, 17-18): . . . . . . . . . . . . . . . . . . . . . . . 9

        F.    "A COPY OF THE DEPICTION" (CLAIM 16): . . . . . . . . . . . . . . . . . . . . . . . 9

        G.    "DATE OF PRODUCTION, MANUFACTURE. . . " (CLAIM 20): . . . . . . . . . . . 9

        H.    LOCATION OF REQUIRED STATEMENTS (CLAIMS 21 AND 22): . . . . . . . 10

        I.    "ASSISTING ANOTHER PERSON" (CLAIM 24): . . . . . . . . . . . . . . . . . . . . . 10

IV.     PLAINTIFFS' FIFTH AMENDMENT CLAIM IS UNRIPE AND MERITLESS . . . . . . 10

V.      PLAINTIFFS' RIGHT TO PRIVACY CLAIM SHOULD BE DISMISSED . . . . . . . . . 13

VI.     PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED. . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*ALA v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-5

*California v. Byers*, 402 U.S. 424 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Catron v. County Bd. Of Commissioners, New Mexico v. U.S. Fish & Wildlife Service*,
    F.3d 1429 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chavez v. Martinez*, 538 U.S. 760 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) . . . . . . . . . . . . . . . . . . 7

*Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394 (10th Cir. 1992) . . . . . . . . . . . . . . 11

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . 2, 3, 5

*Hill v. Colorado*, 530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kowalski v. Stewart*, 220 F.R.D. 599 (D. Az. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Mainstream Marketing Services, Inc. v. F.T.C.*, 358 F.3d 1228 (10th Cir. 2004) . . . . . . . . . . . 14

*Movie & Video World, Inc. v. Bd. Of County Comm'rs of Palm Beach County, FL*,
    723  F. Supp. 695 (S.D. Fl. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Pauldino v. United States*, 500 F.2d 1369 (10th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Simon & Schuster v. New York Crime Victim's Bd.*, 502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . 2

*Sundance Assocs, Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States Securities & Exchange Comm'n v. Fehn*, 97 F.3d 1276 (9th Cir. 1996) . . . . 12, 13

*United States v. Dichne*, 612 F.2d 632 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Flores*, 753 F.2d 1499 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATUTES & REGULATIONS

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

18 U.S.C. § 2721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

70 C.F.R. Part 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

70 Fed. Reg. 29607, 29613 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## PUBLIC LAWS

P.L. 98-292, 98 Stat. 205 (May 21, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

P.L. 100-690, 102 Stat. 4488 (Nov. 15, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2006, the foregoing Reply to Plaintiffs' Response to

Defendant's Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in

the Alternative, for Summary Judgment, was filed electronically.  Notice of this filing will be sent to

all parties by operation of the Court's electronic filing system.  Parties may access this filing through

the Court's system.

/s/
Samuel C. Kaplan