# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC., et al.** | ) | **Civil Action No. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.,** | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFFS' SUPPLEMENTAL BRIEF

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
    & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     THE UNCONSTITUTIONAL APPLICATIONS OF 18 U.S.C. § 2257 RECOGNIZED BY THE MAJORITY IN *CONNECTION DISTRIBUTING CO. v. HOLDER*, 557 F.3d 321 (6TH Cir. 2009) (*EN BANC*) PROVIDE SUPPORT FOR PLAINTIFFS' CLAIM THAT THE STATUTES ARE UNCONSTITUTIONALLY OVERBROAD . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    COLLATERAL ESTOPPEL DOES NOT APPLY TO PRECLUDE ADJUDICATION OF PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    *Connection Distributing* Has No Preclusive Effect on Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    *Free Speech Coalition, et al. v. Gonzales* Has No Preclusive Effect on Plaintiffs' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.   THE GOVERNMENT BEARS THE BURDEN OF PROVING THE CONSTITUTIONALITY OF A REGULATION OF SPEECH BY ADDUCING EVIDENCE ESTABLISHING THE CONSTITUTIONAL REQUISITES UNDER THE RELEVANT LEVEL OF SCRUTINY . . . . . . . . 5

IV.   PLAINTIFFS' CHALLENGES TO 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A AS UNCONSTITUTIONAL REGULATIONS OF SPEECH UNDER THE FIRST AMENDMENT REQUIRE THIS COURT TO HOLD AN EVIDENTIARY HEARING TO ALLOW THE DEVELOPMENT OF AN EVIDENTIARY RECORD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    The Congressional Findings on Child Pornography and Case Law Deferring to Such Findings Do Not Obviate the Need for an Evidentiary Hearing to Evaluate the Constitutionality of 18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    If This Court Declines to Determine That the Statutes Are Unconstitutionally Overbroad as a Matter of Law Under the First Amendment, Then It Must Afford Plaintiffs the Opportunity to Create a Full and Complete Evidentiary Record on Their Overbreadth Challenge . . . . . . . . . . . . . . . . . . . . . . . . . 11

i

**TABLE OF CONTENTS (cont'd)**

**Page No.**

V.      PLAINTIFFS' FOURTH AMENDMENT CHALLENGES TO THE
        REGULATORY INSPECTION SCHEME PERMITTING WARRANTLESS
        SEARCHES AND SEIZURES ARE RIPE FOR REVIEW  . . . . . . . . . . . . . . . . 14

VI.     PLAINTIFFS HAVE A LEGITIMATE EXPECTATION OF PRIVACY IN
        THE RECORDS SUBJECT TO INSPECTION  . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.    PLAINTIFFS HAVE NOT WAIVED THE OTHER CHALLENGES TO
        THE STATUTES CONTAINED IN THEIR COMPLAINT  . . . . . . . . . . . . . . 24

VIII.   PLAINTIFFS' PROPOSED DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*A Quantity of Copies of Books v. Kansas*, 378 U.S. 205 (1964) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Abilene Retail No. 30, Inc. v. Board of Com'rs of Dickinson County, Kan.*
   492 F.3d 1164, *reh. en banc denied,* 508 F.3d 958 (10th Cir. 2007)
   *cert. denied*, 128 S .Ct. 1762 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965) . . . . . . . . . . . . . . . . . . . 24

*Allen v. McCurry*, 449 U.S. 90 (U.S. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*American Civil Liberties Union v. Ashcroft,* 322 F.3d 240
   (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*American Civil Liberties Union v. Gonzales,* 478 F.Supp. 2d 775 (E.D. Pa. 2007) . . . . . . . . . . 12

*American Civil Liberties Union v. Mukasey*, 534 F.3d 181 (3rd Cir. 2008) . . . . . . . . . . . . . . 6, 12

*American Civil Liberties Union v. Reno*, 217 F.3d 162 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . 12

*American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 1

*Annex Books, Inc. v. City of Indianapolis*, 673 F.Supp. 23 750 (S.D. Ind. 2009) . . . . . . . . . . . 8

*Annex Books, Inc. v. City of Indianapolis*, 333 F.Supp.2d 773 (S.D. Ind. 2004) . . . . . . . . . . . 18

*Annex Books, Inc. v. City of Indianapolis,* 581F.3d 556 (7th Cir. 2009) . . . . . . . . . . . . . . . . 8, 18

*Ashcroft v. American Civil Liberties Union,* 542 U.S. 656 (2004) . . . . . . . . . . . . . . . . . . . . . . 2, 6

*Ashcroft v. Free Speech Coalition,* 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Borden v. School District of the Township of East Brunswick,*
   523 F.3d 153 (3rd Cir.  2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brown v. City of Pittsburgh*, 586 F.3d 263 (3rd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Page No.**

**Cases (cont'd)**

*Center for Democracy & Technology v. Pappert*, 337 F.Supp.2d 606 (E.D. Pa. 2004) . . . . . . . . 7

*City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002) . . . . . . . . . . . . . . . . . . . . 8-10

*Conchatta, Inc. v. Miller*, 458 F.3d 258 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 12

*Connection Distributing  Co. v. Holder,* 557 F.3d 321 (6th Cir. 2009) (*en banc*) . . . . . . . . 1-3, 12

*Connection v. Holder, sub. nom. Ashcroft*, Case No. 95 CV 1993 (N.D. Ohio) . . . . . . . . . . . . . 3

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Deja Vu of Cincinnati, L.L.C. v. Union Tp. Bd. of Trustees*, 326 F.3d 791 (6th Cir. 2003)
    *rev'd on other grounds* 411 F.3d 777 (6th Cir. 2005) (*en banc*) . . . . . . . . . . . . . . . . . . . 18

*DeJohn v. Temple University*, 537 F.3d 301 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Democratic Party of the United States v. National Conservative Political Action Committee*,
    578 F.Supp. 797 (E.D. Pa. 1983) *aff'd in part, rev'd in part,* 470 U.S. 480 (1985) . . . . 13

*Denver Area Consortium v. F.C.C.*, 518 U.S. 727 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Doe v. Prosecutor of Marion County,* 566 F.Supp.2d 862 (S.D. Ind. 2008) . . . . . . . . . . . . . . . . 18

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196 (D. Colo. 2005) . . . . . . . . . . . . . . . . 4

*Free Speech Coalition v. Gonzales*, Case Nos. 06-1044, 06-1073 (10th Cir.) . . . . . . . . . . . . . . 4

*Free Speech Coalition, et al. v. Gonzales*, Case No. 05-01126 (D.Colo) . . . . . . . . . . . . . . . . . . 3

*Gibson v. Mayor and Council of the City of Wilmington*,
    355 F.3d 215 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Grosso v. United States*, 390 U.S. 62 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES (cont'd)**

**Page No.**

**Cases (cont'd)**

*Haynes v. United States*, 390 U.S. 85 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Heffner v. Murphy*, 590 F.Supp.2d 710 (M.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Huber v. Taylor*, 532 F.3d 237 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*J.L. Spoons, Inc. v. City of Brunswick*, 49 F.Supp.2d 1032
    (N.D.Ohio 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*J.S. ex rel. Snyder v. Blue Mountain School Dist.*,
    593 F.3d 286 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Layshock ex rel. Layshock v. Hermitage School Dist.*,
    593 F.3d 249 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Leary v. United States*, 395 U.S. 6 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lesoine v. County of Lackawanna*, 77 Fed.Appx. 74,
    2003 WL 21940916 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Marchetti v. United States*, 390 U.S. 39 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Marcus v. Search Warrant*, 367 U.S. 717 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Marshall v. Barlow's Inc.*, 436 U.S.307 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 21

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Miller v. Penn Manor School District*, 588 F.Supp. 2d 606 (E.D. Pa. 2008) . . . . . . . . . . . . . . 12

*Naser Jewelers, Inc. v. City of Concord*, 513 F. 3d 27 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . 10

*Philips v. Borough of Keyport*, 107 F.3d 164 (3rd Cir. 1997) (*en banc*) . . . . . . . . . . . . . . . . 7, 10

*Professional Dog Breeders Advisory Council v. Wolff*,
    2009 WL 2948527 (M.D. Pa 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pruett v. Harris County Bail Bond Board*, 499 F.3d 403 (5th Cir. 2007) . . . . . . . . . . . . . . . . . 7

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**TABLE OF AUTHORITIES (cont'd)**

**Page No.**

**Cases (cont'd)**

*Riel v. City of Bradford*, 485 F.3d 736 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sable Communication v. F.C.C.*, 429 U.S. 115 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Saxe v. State College Area School District*, 240 F.3d 200 (3rd Cir. 2001) . . . . . . . . . . . . . 2, 6, 11

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) . . . . . . . . . . . . . . . . 5

*Sibron v. New York*, 392 U.S. 40 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*Stanford v. Texas*, 379 U.S. 476 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sundance Assoc., Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Surrick v. Killon*, 449 F.3d 520 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Turner Broad. Sys. v. FCC,* 512 U.S. 622 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Miller*, 425 U.S. 435 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*United States v. Cormier*, 220 F.3d 1103 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) . . . . . . . . . . . . . . . . 6

*United States v. Sorcher*, 2007 WL 1160099 (E.D. N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Stevens*, 533 F.3d 218 (3rd Cir. 2008) *(en banc),*
     *cert. granted* 129 S.Ct. 1984 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11

*Walter v. United States*, 447 U.S. 649 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wyatt v. Government of Virgin Islands*, 385 F.3d 801 (3rd Cir. 2004) . . . . . . . . . . . . . . . . . 19, 20

*Zurcher v. Stanford Daily,* 436 U.S. 547 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES (cont'd)

**Page No.**

**Constitutional Provisions**

United States Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11, 22

United States Const., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16-18, 20-22

United States Const., amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24


**Statutes, Rules & Regulations**

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 10, 14, 17, 25

18 U.S.C. § 2257 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2257(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 2257 (f)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 14, 17, 20, 25

18 U.S.C. § 2257A(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 C.F.R. § 75.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

28 C.F.R. § 75.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 18, 21

D.C. COLO. L. Civ. Rule 41.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed Rules of Civ. P. 54 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**Miscellaneous**

*Restatement (Second) of Judgments § 27 (1980)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

At the March 12, 2010 hearing on Defendant's Motion to Dismiss and Plaintiffs' Motion for Preliminary Injunction, this Court requested the parties to submit supplemental briefs on several issues.  On March 17, 2010, by letter order, this Court requested that the parties include several additional issues in their supplemental briefs.  Plaintiffs submit this brief in response.

I.    **THE UNCONSTITUTIONAL APPLICATIONS OF 18 U.S.C. § 2257 RECOGNIZED BY THE MAJORITY IN *CONNECTION DISTRIBUTING CO. v. HOLDER*, 557 F.3d 321 (6TH Cir. 2009) (*EN BANC*) PROVIDE SUPPORT FOR PLAINTIFFS' CLAIM THAT THE STATUTES ARE UNCONSTITUTIONALLY OVERBROAD.**

The majority in *Connection v. Holder*, 557 F.3d 321 (6th Cir. 2009) (*en banc*) recognized that various applications of 18 U.S.C. § 2257 were constitutionally impermissible.  Specifically, the majority noted that as applied to a magazine that depicted mature adult models, the record keeping requirements were unconstitutional. *Id.* at 336.  It also acknowledged that as applied to "an illustrated sex manual for the elderly," the record keeping requirements were unconstitutional. *Id.*, *quoting American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994).[1]  The majority furthered recognized the statute's application to "a couple who produced, but never distributed, a home video or photograph of themselves engaging in sexually explicit conduct" was unconstitutional. 557 F.3d at 337-38.  The court in *Connection*, nonetheless, declined to strike the statute down as unconstitutionally overbroad based on these applications because it determined that it had "no record, and therefore no context, for assessing the *substantiality* of this overbreadth problem."[2] *Id.* at 338. (Emphasis in original).

---

[1]    The court in *American Library Association* also noted that application of the statute to appropriationist art–art made by incorporating pre-existing photos and illustrations depicting a model who was not known to the artist, in the work– presented another unconstitutional application of the statute.  33 F.3d at 93.

[2]    The court also cited the "vacuum" regarding enforcement of the statute as another reason for declining to find the statute unconstitutional on overbreadth grounds, *id* at 339–a basis specifically rejected for declining to strike down a law as unconstitutional by the Third Circuit. *Conchatta, Inc. v. Miller*, 458 F.3d 258, 265 (3rd Cir. 2006)

Here, the allegations in Plaintiffs' complaint set forth a number of concrete applications akin to those that the court in *Connection* acknowledged were constitutionally impermissible, but were not presented on the record before it. *See Complaint,* ¶¶ 22, 26, 30, 37, 39, 43, 45, 50. Therefore, the record here allows this Court to reach the issues that the court in *Connection* declined to decide.

In addition to the concrete applications presented by the allegations of the Complaint here, this Court can and should consider the unconstitutional applications recognized by the court in *Connection* in evaluating the statutes' unconstitutional overbreadth. The Supreme Court and the Third Circuit have probed a law's potential impermissible applications to protected expression in measuring its unconstitutional overbreadth. *See e.g., Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 247-48 (2002) (noting impermissible applications of the law to *Romeo and Juliet*; Academy award-nominated, *Traffic*; and Academy award-winner, *American Beauty*); *Conchatta, Inc. v. Miller*, 458 F.3d 258, 266 (3rd Cir. 2006) (noting impermissible applications of the law to plays, musicals, concerts, political satires, comedies, ballets, dramas, singing performances, poetry readings, and art shows); *American Civil Liberties Union v. Ashcroft,* 322 F.3d 240, 267-68 (3rd Cir. 2003) *aff'd and remanded Ashcroft v. American Civil Liberties Union,* 542 U.S. 656 (2004) (noting impermissible applications of the law to a website that displayed a museum's artwork, a website that displayed photography from another museum, a website that displayed educational materials on sexual health); *United States v. Stevens*, 533 F.3d 218, 235, n.16 (3rd Cir. 2008) (*en banc), cert. granted* 129 S.Ct. 1984 (2009) (noting impermissible applications of the law to films depicting hunting or fishing activity out of season or bullfighting in Spain). Indeed, Plaintiffs contend that because of the statutes' demonstrable overbreadth, they should be struck down under the First Amendment as a matter of law. *See, Saxe v. State College Area School District*, 240 F.3d 200 (3rd

2

Cir. 2001). At the very least, Plaintiffs are entitled to present evidence in support of their overbreadth challenge, *see* pp. 11-13, *infra*, as well as on their other claims, as discussed more fully below at pp. 8-9, *infra*.

## II. COLLATERAL ESTOPPEL DOES NOT APPLY TO PRECLUDE ADJUDICATION OF PLAINTIFFS' CLAIMS.

### A. *Connection Distributing* Has No Preclusive Effect on Plaintiffs' Claims.

Plaintiffs are not collaterally estopped from advancing their claims by the court's determinations in *Connection*. None of the Plaintiffs in this case were plaintiffs in *Connection Distributing v. Holder*, 557 F.3d 321 (6th Cir. 2009), nor were they in privity with the *Connection* plaintiffs. *See, Connection v. Holder, sub. nom. Ashcroft*, Case No. 95 CV 1993 (N.D. Ohio), Amended Complaint, https://ecf.ohnd.uscourts.gov/doc1/14111742460, August 20, 2003, Docket No. 103.[3] Thus, *Connection* has no preclusive effect on Plaintiffs' claims here. *Huber v. Taylor*, 532 F.3d 237, 250 (3rd Cir. 2008)

### B. *Free Speech Coalition, et al. v. Gonzales* Has No Preclusive Effect on Plaintiffs' Claims.

Nor are Plaintiffs Free Speech Coalition or David Conners collaterally estopped, as Defendant argues, by the proceedings filed in the United States District Court of Colorado, *Free Speech Coalition, et al. v. Gonzales*, Case No. 05-01126 (D.Colo) (Miller, J.). *Defendant's Supplemental Brief in Support of Motion to Dismiss*, p. 10.

As explained in the Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction at pp. 13-14, n.8, in 2005, after the statute had been amended and new regulations implementing it

---

[3] This Court may take judicial notice of pleadings in prior proceedings in reviewing a challenge based on issue preclusion. *See Toscano v. Connecticut Gen. Life Ins. Co.*, 2008 WL 2909628, at * 1 (3d Cir. July 30, 2008); *Gwynedd Properties, Inc. v. Lower Gwynedd Tp.,* 970 F.2d 1195, 1206, n.18 (3rd Cir. 1992*)*.

were issued, Plaintiff Free Speech Coalition and David Conners filed suit in the United States

District Court for the District of Colorado,[4] challenging the statute and newly issued regulations on

the ground that the regulations exceeded the scope of the statute and raising other challenges to the

amended statute and regulations. The district court, in ruling on Plaintiffs' Motion for Preliminary

Injunction, found that there was a likelihood that Plaintiffs would prevail on their claim that the

regulations exceeded the statutory scope and therefore enjoined their enforcement against secondary

producers, citing *Sundance Assoc., Inc. v. Reno*, 139 F.3d 804 (10th Cir. 1998); it also found that

Plaintiffs would likely succeed in showing that certain applications of the regulations were

unconstitutionally burdensome. The district court, nevertheless, determined that Plaintiffs had not

demonstrated a likelihood of success with regard to their other attacks on the constitutionality of the

statute. *Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196 (D. Colo. 2005).   Both parties

appealed.

During the pendency of the appeal, 18 U.S.C. § 2257 was amended once again, and new

implementing regulations were, once again, to be issued.  In light of the amendment, both parties

dismissed their respective appeals. *Free Speech Coalition v. Gonzales*, Case Nos. 06-1044, 06-1073

(10th Cir.).  On remand, the district court granted partial summary judgment in favor of the

government.  Plaintiffs filed a motion to reconsider.  Without ruling on Plaintiffs' motion to

reconsider, the court administratively closed the case, while new regulations implementing the

amended statute as well as its new companion statute, 18 U.S.C. § 2257A, were being drafted. *See,*

*D.C. COLO. L. Civ. Rule* 41.2.  Ultimately, on April 13, 2009, the district court granted  Plaintiffs'

Unopposed Motion to Dismiss without Prejudice, without reaching the merits.

---

[4]   *See*, https://ecf.cod.uscourts.gov/cgi-bin/ DktRpt.pl?38250698051032-L_534_0-1.

4

That ruling has no preclusive effect here. For res judicata or collateral estoppel to preclude litigation of a party's claim, the prior ruling on which such defense is based must be a final judgment constituting an "adjudication on the merits." *Allen v. McCurry*, 449 U.S. 90, 94-95 (U.S. 1980)(citations partially omitted). *See Restatement (Second) of Judgments § 27* (1980). ("When an issue of fact or law is actually litigated and determined by a valid and ***final judgment***, and the determination is essential to the judgment, the determination is conclusive on a subsequent action between the parties, whether on the same or different claim.") (Emphasis added).

The partial grant of summary judgment did not constitute a final judgment. Rule 54 (b) of the Federal Rules of Civil Procedure expressly states that "any order or other decision...that adjudicates fewer than all claims...does not end the action...and may be revised at any time before the entry of a judgment adjudicating all the claims."

Moreover, the Supreme Court made clear in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), that a"dismissal without prejudice," the ruling rendered by the Colorado federal court, is not an adjudication on the merits for purposes of res judicata or collateral estoppel. *Id.* at 505-06. *See also, Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396 (1990), ("'[D]ismissal ... without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits' . . . . and thus does not have a res judicata effect.") The Colorado proceedings, therefore, have no preclusive effect on the claims of Free Speech Coalition or David Conners.

## III. THE GOVERNMENT BEARS THE BURDEN OF PROVING THE CONSTITUTIONALITY OF A REGULATION OF SPEECH BY ADDUCING EVIDENCE ESTABLISHING THE CONSTITUTIONAL REQUISITES UNDER THE RELEVANT LEVEL OF SCRUTINY.

When a law regulates speech, the government bears the burden of demonstrating the regulation's constitutionality. *Sable Communication v. F.C.C.*, 429 U.S. 115, 126 (1989); *Denver*

5

*Area Consortium v. F.C.C.*, 518 U.S. 727, 754-55 (1996); *Ward v. Rock Against Racism*, 491 U.S. 781, 789 (1989); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812-13 (2000);[5] *Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 660 (2004); *American Civil Liberties Union v. Mukasey*, 534 F.3d 181, 187 (3rd Cir. 2008).

The government attempts to wriggle free of its burdens by advancing two arguments. First, the government, while conceding that it bears the burden of proving a regulation of speech's constitutionality on Plaintiffs' as-applied challenges,  *Defendant's Supplemental Brief* at p.3*,* contends that **Plaintiffs** bear the burden of demonstrating the unconstitutionality of a regulation of speech on its face.  *Id.* at 2-6.  Secondly, Defendant contends that it may satisfy its burden of demonstrating the constitutionality of such regulation under intermediate scrutiny[6] by simply relying on "the predictive judgments of Congress" without adducing any additional evidence.  *Id.* at 4, 7-8. The government is wrong on both counts.

Reviewing a challenge to an ordinance regulating adult bookstores, the Third Circuit  *en*

---

[5]   The government takes great pains to attempt to dismiss *Playboy Entertainment* as having no bearing on this case, on basis that the Court's analysis of the regulation of speech in *Playboy Entertainment* proceeded under strict scrutiny.  *Defendant's Supplemental Brief*, pp. 1-2. *Playboy Entertainment* stands for the premise that any time the government attempts to enact a law that burdens expression, it bears the burden of justifying the regulation's constitutionality–whether the regulation is content-based or content-neutral. As the cases discussed in the argument that follows compellingly demonstrate, although the burdens borne by the government in justifying a regulation of speech may vary according to the level of scrutiny, those burdens, as the Court in *Playboy Entertainment* stated, remain unwaveringly on the government.

[6]   Plaintiffs maintain that the statutes are content-based and should be evaluated under strict scrutiny.  *See, R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 387 (1992) (recognizing that distinctions based on the content of speech even in proscribed categories of expression are subject to review under strict scrutiny); *Saxe v. State College Area School District,* 240 F.3d 200 (3rd Cir. 2001). But in any event, even under intermediate scrutiny, they fail to meet constitutional standards.

*banc*, very clearly and meticulously spelled out the government's burdens in defending against a challenge to a law *on its face under intermediate scrutiny*:

> [W]hen a legislative body acts to regulate speech, *it has the burden, when challenged of showing* either (1) that its action serves a compelling state interest which cannot be served in a less restrictive way, or (2) *that its action serves a substantial content-neutral, state interest, is narrowly tailored to further that substantial state interest, and leaves adequate alternative channels for the regulated speech*.  If the state chooses the second alternative in a setting like the present one, *it most come forward with "evidence* of incidental adverse social effect that provides the important governmental interest justifying reasonable time, place and manner restrictions on speech or expressive conduct." [*Mitchell v. Comm'n on Adult Entertainment Establishments*, 10 F.3d 123, 130 (3rd Cir. 1993)].  Moreover, the legislative body "must... be prepared...to *articulate and support its argument with a reasoned and substantial basis demonstrating the link between the regulation and the asserted governmental interest*."  *Id.* at 132.

*Philips v. Borough of Keyport*, 107 F.3d 164, 172-73 (3rd Cir. 1997) (*en banc*). (Emphasis added).

The court continued:

> On remand, the Borough *must be required* to articulate the governmental interests on the basis of which it seeks to justify the ordinance.  It should then have to *shoulder the burden of building an evidentiary record* that will support a finding that it reasonably believed those interests would be jeopardized in the absence of an ordinance and that this ordinance is reasonably tailored to promote those interests. *It is the Borough that carries the burdens of production and persuasion here, not plaintiffs.* [*City of* ]*Renton* [*v. Playtime Theatres, Inc.*] 475 U.S. 41, 106 S.Ct. 925[1986]; *Schad v. Borough of Mt. Ephraim*, 425 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).  Moreover, *it is the district court*, not the Borough, that *must make findings necessary to determine whether the ordinance is consistent with the First Amendment*. *See id.; Renton*, 475 U.S. 41, 106 S.Ct. 925.

*Id.* at 173. (Emphasis added).  It is hard to imagine a clearer exposition of the burdens borne by the government in defending against a challenge to a regulation of speech under intermediate scrutiny.  *See also*, *Turner Broad. Sys. v. FCC,* 512 U.S. 622, 664 (1994);  *Center for Democracy & Technology v. Pappert*, 337 F.Supp.2d 606, 655 (E.D. Pa. 2004); *Pruett v. Harris County Bail Bond Board*, 499 F.3d 403, 409-10 (5th Cir. 2007). *Philips* makes clear that Defendant here bears the burden of establishing the statutes' constitutionality and must come forward with evidence

establishing each of the elements on which their constitutionality depends.

The Supreme Court provided further guidance on the respective evidentiary burdens under intermediate scrutiny in evaluating a challenge to an ordinance regulating adult bookstores in *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002).   The Court explained that the government bore the burden under intermediate scrutiny of producing evidence demonstrating the problem the regulation was designed to address (adverse secondary effects associated with such businesses)[7] and demonstrating that the ordinance, in fact, advanced the objective of addressing that problem (served as a reasonable measure to reduce adverse secondary effects).  *Id.* at 438. While noting that the City did not have the burden of ruling out every possible theory that is inconsistent with its own, the Court emphasized:

> This is not to say that a municipality can get away with ***shoddy data or reasoning***. The municipality's ***evidence must fairly support the municipality's rationale*** for its ordinance.   If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that ***the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings***, the municipality meets the standard set forth in *Renton*.  If plaintiffs succeed in casting doubt on a municipality's rationale, ***the burden shifts back to the municipality*** to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id.* at 438-39 (citations omitted)(emphasis added).  *See also, Annex Books*, 581 F.3d 556 (7th Cir. 2009); *Annex Books*,  673 F. Supp. 2d 750 (S.D.Ind.2009) *on remand*; *Abilene Retail No. 30, Inc. v. Board of Com'rs of Dickinson County, Kan.,* 492 F.3d 1164, *reh. en banc denied,* 508 F.3d 958 (10th Cir. 2007) *cert. denied*, 128 S .Ct. 1762 (2008).

---

[7] Indeed, evidence establishing the problem that the law is designed to address is critical to the determination of whether the law is to be evaluated under intermediate scrutiny or under strict scrutiny.  *Alameda Books,* 535 U.S. at 440-41.  For without an evidentiary basis showing that the law was designed to address a "content neutral" objective, the presumption is that the law was enacted to regulate speech based on its content.

It is important to emphasize the extent of the government's burden as articulated in *Alameda Books* and the necessity for affording the parties the opportunity to create an evidentiary record on which the statutes' constitutionality is ultimately to be determined.

The government initially shoulders the burden of coming forward with evidence to justify the statutes. But that is not the end of it. Plaintiffs are then entitled to present evidence casting doubt "either by demonstrating that the [government's] evidence does not support its rationale or by furnishing evidence that disputes the [government's] factual findings." *Alameda Books,* 535 U.S. at 438-39. And if Plaintiffs' evidence is sufficient to cast doubt on the government's evidence, then "the burden shifts back to the [government] to supplement the record with new evidence...." *Id.* Given the evidentiary framework set forth by the Supreme Court for evaluating the constitutionality of regulations of expression under intermediate scrutiny, there should be no doubt that Plaintiffs' challenge to the statutes cannot be dismissed as a matter of law. Rather the constitutionality of the statutes must be carefully evaluated on evidence adduced by the parties.

The government nonetheless asks this Court to ignore this precedent and argues that *Brown v. City of Pittsburgh*, 586 F.3d 263 (3ʳᵈ Cir. 2009), stands for the proposition that **Plaintiffs** bear the burden of proving the unconstitutionality of the statutes on their face. Again, the government is just plain wrong.

*Brown*, which was discussed at length in *Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss and Reply to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction*, involved a facial and as-applied challenge to a Pittsburgh ordinance placing restrictions on anti-abortion pickets. The Third Circuit, while finding that the statute **was not** unconstitutional **as applied**, determined that the ordinance **was**, in fact,

unconstitutional *on its face* under intermediate scrutiny.

The court in *Brown*, quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 201 (3rd Cir. 2008), began its analysis by observing: "The burden is on the City to demonstrate the constitutionality of its actions."  586 F.3d at 278. In striking down the ordinance as unconstitutional on its face under the First Amendment, the court found: "As '[t]he burden is on the City to demonstrate the constitutionality of its actions,' *Startzell*, 533 F.3d at 201, we conclude that the Ordinance burdens substantially more speech than is necessary and is thus insufficiently tailored." *Id.* at 279-80.[8]

## IV.   PLAINTIFFS' CHALLENGES TO 18 U.S.C. § 2257 AND 18 U.S.C. § 2257A AS UNCONSTITUTIONAL REGULATIONS OF SPEECH UNDER THE FIRST AMENDMENT REQUIRE THIS COURT TO HOLD AN EVIDENTIARY HEARING TO ALLOW THE DEVELOPMENT OF AN EVIDENTIARY RECORD.

As set forth above, the government bears the burden of "building an evidentiary record" in support of the statutes' constitutionality.  *Philips*, 107 F.3d at 173.

### A.   The Congressional Findings on Child Pornography and Case Law Deferring to Such Findings Do Not Obviate the Need for an Evidentiary Hearing to Evaluate the Constitutionality of 18 U.S.C. § 2257A.

There is no question that the eradication of the sexual exploitation of children and child pornography is a compelling governmental interest.  From the very outset, the parties have been in complete agreement on that premise.  The findings cited in *United States v. Stevens,* 533 F.3d 218,

---

[8] The government also claims that *Naser Jewelers, Inc. v. City of Concord*, 513 F. 3d 27 (1st Cir. 2008), stands for the proposition that Plaintiffs bear the burden of proving the statutes' unconstitutionality on their face.  But the court in *Naser* expressly stated: "We need not resolve here the intricacies of burdens of proof and production. For our purposes, and indeed in many First Amendment cases of content-neutral regulations, the issue of who has the burden of proof will not be important...In this case, no matter who has the burden as to which elements of the test, plaintiff's claim fails." *Id.* at 33.

224-26 (3rd Cir. 2008) (en banc) *cert. granted*   U.S.   , 129 S.Ct. 1984 (2009) simply underscore that point.

What those findings do not establish, however, is the extent of the problem that the statutes ***here***, involving regulation of a vast quantity of protected expression by adults that is ***not*** child pornography, were purportedly designed to address: the inadvertent or intentionally reckless appearance of minors in commercial pornography. *Defendant's Memorandum in Support of Motion to Dismiss,* p. 6; *Defendant's Reply*, p. 7. Nor do those findings offer any support in demonstrating how the record keeping and labeling statutes' restrictions on all protected expression depicting adults, directly and materially advance the government's goal in combating child pornography, nor whether they are narrowly tailored to meet that goal, nor whether they burden substantially more speech than is necessary–critical determinations that the statutes must satisfy to pass constitutional muster.  The Congressional findings cited in *Stevens* regarding the harms posed to children by child pornography do not resolve any of those issues.

> **B.**    **If This Court Declines to Determine That the Statutes Are Unconstitutionally Overbroad as a Matter of Law Under the First Amendment, Then It Must Afford Plaintiffs the Opportunity to Create a Full and Complete Evidentiary Record on Their Overbreadth Challenge.**

Where a law's overbreadth is clear on its face, it may be struck down as unconstitutional on the pleadings, without the necessity of an evidentiary hearing.  Judge Alito, writing for the panel in *Saxe v. State College Area School District*, 240 F.3d 200 (3rd Cir. 2001), reversed a district court's grant of defendant's motion to dismiss plaintiffs' challenge to a school district's anti-harassment policy under the First Amendment, on the pleadings.  The court of appeals, without remanding for any further proceedings, determined that the policy prohibited a substantial amount of protected expression–notwithstanding the fact, as the court noted, that the expression might be admittedly

offensive or disagreeable–and held that the policy was unconstitutionally overbroad on its face. *Id.* at 215, 217.  Similarly, in *Ashcroft v. Free Speech Coalition,* 535 U.S. at 247-48, 258, the Supreme Court struck down two provisions of the federal child pornography law as unconstitutionally overbroad on the basis of hypothetical applications to *Romeo and Juliet* and important and artistic mainstream expression, based on the language of the statute itself.

On the other hand, constitutional challenges to regulations of speech on overbreadth grounds should not be dismissed without first affording the parties an opportunity to create an evidentiary record.  Some courts have held evidentiary hearings.  *See, Conchatta v. Miller,* 458 F.3d 258 (3rd Cir. 2006) (reversing district court judgment and finding state law unconstitutionally overbroad on its face on record developed at evidentiary hearing and on cross-motions for summary judgment); *Miller v. Penn Manor School District*, 588 F.Supp. 2d 606 (E.D. Pa. 2008) (granting preliminary injunction against enforcement of provisions of student handbook found to be unconstitutionally overbroad on basis of pleadings, depositions, stipulations and evidence presented at hearing); *American Civil Liberties Union v. Reno*, 217 F.3d 162, 170, 177 (3rd Cir. 2000) (affirming grant of preliminary injunction enjoining federal statute (Child Online Protection Act) imposing liability on publishers of material harmful to minors as unconstitutionally overbroad after extensive evidentiary hearings); *American Civil Liberties Union v. Gonzales,* 478 F.Supp. 2d 775 (E.D. Pa. 2007) (same); *American Civil Liberties Union v. Mukasey,* 534 F.3d 181 (3rd Cir. 2008) (same). *See also, Connection*, 557 F.3d at 327 (affirming district court's finding that statute was not unconstitutionally overbroad after two evidentiary hearings and remand directing district court to allow the parties to conduct discovery); *Broadrick v. Oklahoma,* 413 U.S. 601 (1973) (affirming decision of three judge panel upholding constitutionality of state statute restricting political activities of employees after

convening evidentiary hearing and argument, 338 F. Supp. 711, 714 (W.D. Okla. 1972)).

Others have evaluated overbreadth challenges on cross-motions for summary judgment, after the parties have been permitted to engage in discovery to develop a factual record. *DeJohn v. Temple University*, 537 F.3d 301, 306, 320 (3rd Cir. 2008) (affirming district court's grant of summary judgment and injunction against facially overbroad policy); *Borden v. School District of the Township of East Brunswick*, 523 F.3d 153, 163 (3rd Cir. 2008) (affirming district court's finding on summary judgment that school district's policy prohibiting student initiated prayer was not unconstitutionally overbroad). *Layshock ex rel. Layshock v. Hermitage School Dist.*, 593 F.3d 249 (3rd Cir. 2010) (affirming district court's finding on summary judgment that school policy was not unconstitutionally overbroad on its face); *J.S. ex rel. Snyder v. Blue Mountain School Dist.*, 593 F.3d 286 (3rd Cir. 2010) (same); *Riel v. City of Bradford*, 485 F.3d 736, 740-41 (3rd Cir. 2007) (affirming district court's determination that sign ordinance was not unconstitutionally overbroad on cross-motions for summary judgment); *Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 219 (3rd Cir. 2004) (affirming district court's grant of summary judgment on a "fully developed" record finding police department policy was not unconstitutionally overbroad).

At least one court has rendered its determination on a stipulated factual record developed by the parties. *See, Democratic Party of the United States v. National Conservative Political Action Committee*, 578 F.Supp. 797, 803 (E.D. Pa. 1983) *aff'd in part, rev'd in part,* 470 U.S. 480 (1985) (Becker, Circuit Judge; Green and Giles, District Judges) (striking down 26 U.S.C. § 9012(f), Presidential Election Campaign Fund Act, as unconstitutionally overbroad on its face).

Plaintiffs contend that while this Court would be fully justified in determining that Plaintiffs have made a sufficient showing that they will likely prevail on the merits of their overbreadth claim

for purposes of a preliminary injunction based on the pleadings, it cannot grant Defendant's motion to dismiss without first allowing the development of a complete factual record.

## V.     PLAINTIFFS' FOURTH AMENDMENT CHALLENGES TO THE REGULATORY INSPECTION SCHEME PERMITTING WARRANTLESS SEARCHES AND SEIZURES ARE RIPE FOR REVIEW.

Title 18 U.S.C. § 2257 (c)[9] provides that "[a]ny person" who is required to keep records under the statutory provisions "shall maintain the records required by this section at his business premises, or at such place as the Attorney General may by regulation prescribe and shall make such records available to the Attorney General for inspection at all reasonable times."  The statute, therefore, provides that the records are to be maintained on the premises where the expression is created and are to be made available for inspection by the government there.  Title 18 U.S.C. § 2257 (f)(5) provides that it is unlawful "for any person" required to keep such records "to refuse to permit the Attorney General or his or her designee to conduct an inspection under subsection (c)."

The regulations implementing the inspections required by 18 U.S.C. §§ 2257, 2257A authorize the government to "***to enter without delay*** and at reasonable times ***any establishment of a producer where records under §75.2 are maintained to inspect*** during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, for the purpose of determining compliance with the record-keeping requirements of the Act and any other provision of the Act."  28 C.F.R. § 75.5 (Emphasis added).  There is no ambiguity here.  The government is authorized to enter private premises without a warrant to search through and copy the papers, documents, files and records of the Plaintiffs, who, as producers of expression with sexual imagery, must maintain certain records as required by the statutes. If Plaintiffs refuse to allow the inspection,

---

[9]  The language of 18 U.S.C. § 2257A is identical to the provisions of 18 U.S.C. § 2257 regarding the inspection scheme.

they are subject to criminal prosecution. Plaintiffs, therefore, satisfy their burden of establishing that their claims are ripe for review. *See, Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat–for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.") (Emphasis in original).

Plaintiffs have moved for leave to amend their complaint to add allegations reflecting that a number of the members of Plaintiff Free Speech Coalition have, in fact, been subject to warrantless inspections pursuant to the statutes and regulations challenged here. *Plaintiffs' Motion for Leave to Amend Complaint,* April 5, 2010. They find themselves in much the same position as the plaintiff in *Marshall v. Barlow's Inc.,* 436 U.S.307 (1978) who was the subject of an attempted search under a statute that, like the statutes and regulations here, permitted warrantless inspections.

At issue in *Barlow's Inc.,* was the Occupational Safety and Health Act, which provided (in language identical to that at issue here) that the government was "authorized ...to enter without delay" any factory or establishment "to inspect and investigate" conditions, equipment and the like, in furtherance of its compelling interest in securing the safety of America's workers. *Id.* at 309, n.1. An agency regulation required the inspector to seek compulsory process if a party refused a requested search. *Id.* at 310, n.3.

Acting pursuant to the statute, an OSHA inspector entered the customer service area of the Plaintiff, showed the business owner his credentials, and advised the owner that he was going to conduct a search of the business's working areas under the Occupational Safety and Health Act. *Id.*

at 309-10. In response to the business owner's inquiry, the inspector explained that no complaint had

been made against the business, but that Barlow's had simply turned up as part of the agency's

"selection process." *Id.* at 310.   The inspector then asked to gain access to nonpublic areas of the

business, and the business owner asked if the inspector had a warrant.   *Id.* When the business owner

learned the inspector had no warrant, he refused the inspector access to the non-public areas of his

business. *Id.*  The Secretary of Labor sought and obtained an order in federal court, compelling the

business owner to admit the inspector.   *Id.*   The business owner once again refused to permit the

inspection and sought injunctive relief in federal court–claiming that the warrantless searches

permitted by the Occupational Safety and Health Act violated the Fourth Amendment.

     The Supreme Court agreed with the plaintiff:

> If the government intrudes on a person's property, the privacy interests suffer
> whether the government's motivation is to investigate violations of criminal laws or
> breaches of other statutory or regulatory standards.  It therefore appears that unless
> some recognized exception to the warrant requirement applies, *See v. Seattle,* [387
> U.S. 541 (1967)] would require a warrant to conduct the inspection in this case.

*Id.* at 312-13.  In finding as it did, the Court rejected the notion–"stoutly argue[d]" by the Secretary

of Labor–that warrantless searches were essential to the administration of OSHA.  *Id.* at 315-16.

Rather, the Court remained "unconvinced...that requiring warrants to inspect will impose serious

burdens on the inspection system or the courts, will prevent inspections necessary to enforce the

statute, or will make them less effective." *Id.* at 316.

     Additionally, the Court rejected the same argument that the government makes here that

warrantless inspections were permitted on the basis that the industries subject to inspection were

"pervasively regulated businesses" that had been "long subject to close supervision and inspection."

*Id.* at 313; *See Defendant's Reply*, pp. 36-37.  The Court emphasized that only where it is established

16

that there is a "long tradition of close government supervision, of which any person who chooses to enter such business must already be aware," might an exception to the Fourth Amendment's warrant requirement be considered.  *Id.* at 313.

The Court therefore held that "Barlow's was entitled to a declaratory judgment that the Act is unconstitutional insofar as it purports to authorize inspections without a warrant or its equivalent and to an injunction enjoining the Act's enforcement to that extent."  *Id.* at 325.

*Barlow's* mandates the same result here.  Section 2257's inspection scheme contains the precise constitutional flaws that the Court in *Barlow's* found could not withstand scrutiny under the Fourth Amendment and held that the statute's authorization of such inspections had to be struck down on its face.

Title 18 U.S.C. § 2257(f) and 18 U.S.C. § 2257A(f) provide on their face that refusal to permit an inspection pursuant to their implementing regulations is a felony.  The regulations leave no room for doubt that the Attorney General or his designees (which, in practice, have been FBI agents) are, like the OSHA inspector in *Barlow's Inc.*, authorized to enter the premises of "any establishment of a producer" of sexually explicit expression–whether a business, studio or residence–without notice, without a warrant, without probable cause, and "without delay" to inspect files and records belonging to that producer. 28 C.F.R. § 75.5.  Under authority of the statute and regulations, the inspectors are authorized to enter areas of the business premises where the public is not permitted–just as the Act did in *Barlow's*.  Moreover, they are authorized to search through and seize records and papers belonging to and in possession of the producer pertaining to the expression that he creates. *Id.*

Just as in *Barlow's Inc.*, each and every warrantless inspection authorized by 18 U.S.C. §§

17

2257 and 2257A and their implementing regulations, 28 C.F.R. § 75.5, is unconstitutional under the Fourth Amendment. *Cf. Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 414-16 (1984) (Contrasting inspections involving entry onto premises with inspections conducted pursuant to an administrative subpoena *duce tecum*–which provides "protection for a subpoenaed employer by allowing him to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it...").

A number of courts have found facial challenges to various laws and regulations on Fourth Amendment grounds ripe for review prior to the occurrence of an actual search. *Annex Books, Inc. v. City of Indianapolis,* 333 F.Supp.2d 773 (S.D.Ind.2004) (finding ordinance's warrantless inspection scheme of adult businesses violated the Fourth Amendment) *rev'd on other grounds,* 581 F.3d 556 (7th Cir. 2009); *J.L. Spoons, Inc. v. City of Brunswick,* 49 F.Supp.2d 1032 (N.D.Ohio 1999) (same); *Deja Vu of Cincinnati, L.L.C. v. Union Tp. Bd. of Trustees,* 326 F.3d 791 (6th Cir. 2003) (same) *rev'd on other grounds* 411 F.3d 777 (6th Cir. 2005) (*en banc*); *Heffner v. Murphy*, 590 F.Supp.2d 710, 720 (M.D. Pa. 2008) (challenge to state statute authorizing warrantless entries of funeral business for purposes of inspection under Fourth Amendment was ripe for review); *Doe v. Prosecutor of Marion County,* 566 F.Supp.2d 862, 875-77 (S.D. Ind. 2008) (preenforcement challenge to Indiana statute that compelled  class of sex offenders to consent to  entry into homes and search of computers under the Fourth Amendment was ripe for review); *Professional Dog Breeders Advisory Council v. Wolff*, 2009 WL 2948527 (M.D. Pa 2009) (review of facial challenge to inspection procedure under state dog breeder's statute).

Plaintiffs' claims are ripe for review under the test for ripeness set forth in *Surrick v. Killon*, 449 F.3d 520, 527 (3rd Cir. 2006) ((1) the fitness of the issues for judicial decision, (2) the hardship

of the parties of withholding court consideration, (3) the adverse nature of the legal interests of the parties; (4) the concreteness of the facts in allowing a conclusive legal judgment, and (5) the usefulness of the judgment to the parties).

The decisions in *Wyatt v. Government of Virgin Islands*, 385 F.3d 801 (3rd Cir. 2004) and *Sibron v. New York*, 392 U.S. 40 (1968) do not alter that conclusion.

*Wyatt* arose from dramatically different facts from those here.  In that case, the plaintiff company required all applicants for employment to sign an agreement to submit disputes between them to arbitration.  385 F.3d at 802. Prospective employees complained to the Virgin Island Department of Labor about that practice, which, in turn, issued two cease and desist letters to the plaintiff company requesting it to cease requiring its employees to enter into such agreements or seeking to enforce them and threatened to seek injunctive relief against the plaintiff company, but never filed suit. *Id.* at 803.

Instead, the company filed suit seeking a declaration that the agreements between it and its applicants were binding and enjoining the Department of Labor from interfering with them. *Id.* at 803-04.  The court noted that plaintiffs had not mentioned any threat of prosecution in their complaint, nor at the hearing on their claims in the district court, nor was there any mention of prosecution in the district court's opinion.  *Id.* at 807.  Moreover, it noted that the Department of Labor had a range of remedies it could exercise without ever filing a prosecution against the plaintiff company wherein it could adjudicate its claims.  *Id.* at 807-08.  On these facts, the court concluded that the plaintiff "merely feared potential future administrative or judicial action." *Id.* at 808.  That situation is a far cry from that presented in this case.

Here, unlike *Wyatt*, there is no uncertainty about the consequences of refusing to permit a

warrantless inspection. In fact, as alleged in the Amended Complaint Plaintiff seeks leave to file,[10] members of Plaintiff Free Speech Coalition have been subject to warrantless inspections during which teams of FBI agents have entered nonpublic portions of their business premises and have searched through their files and papers–without any warrant. *Amended Complaint*, ¶ 20, *attached to Plaintiffs' Motion for Leave to Amend Complaint.*

*Sibron* likewise does not serve as authority to decline review of Plaintiffs' Fourth Amendment challenge to the warrantless inspection regime authorized by 18 U.S.C. § 2257 and 18 U.S.C. § 2257A. *Sibron*, in fact, was decided on the very same day that the Court issued its opinion in *Terry v. Ohio*, 392 U.S. 1 (1968), providing guidance on the constitutionality of "stop and frisks"under the Fourth Amendment.

At issue in *Sibron* was a New York statute "of [a] peculiar sort" specifying certain conduct by law enforcement in various "extraordinarily elastic categories" that were "susceptible of a wide variety of interpretations" deemed not to require a warrant–including "stop and frisks." *Id.* at 60-61. The statute had not yet been interpreted by the Court of Appeals of New York. *Id.* at 61-62. The Supreme Court explained:

> We have held today in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, that police conduct of the sort with which [New York's statute] deals must be judged under the Reasonable Search and Seizure Clause of the Fourth Amendment. The inquiry under that clause may differ sharply from the inquiry set up by the categories of [New York's statute.]

*Id.* at 62. Because of these uncertainties, the Court declined to "pronounce judgment on the words of the statute," and confined its review to the actual searches and seizures before it. *Id.* at 62.

---

[10]   As noted above, on April 5, 2010, Plaintiffs filed a Motion for Leave to Amend Complaint, specifically adding the allegations pertaining to inspections performed at the establishments of the members of Plaintiff Free Speech Coalition.

Here, there are no "elastic categories" nor terms that are "susceptible to a wide variety of interpretation."  Title 28 C.F.R. § 75.5 authorizes inspectors "to **enter** without delay and at all reasonable times any establishment of a producer where records...are maintained."  Warrantless inspections conducted pursuant to the regulations have, in fact, been performed in nonpublic areas of the businesses of some of Plaintiff Free Speech Coalition's members, and during the course of the inspections, F.B.I. agents have searched through and made copies of papers and records belonging to those members.  The uncertainty present in *Sibron* is completely absent here.

## VI. PLAINTIFFS HAVE A LEGITIMATE EXPECTATION OF PRIVACY IN THE RECORDS SUBJECT TO INSPECTION.

The government has responded to Plaintiffs' Fourth Amendment challenges by arguing that Plaintiffs have no legitimate expectation of privacy in the records subject to inspection.  The government is wrong in that regard, but even if it were correct, that fact would not save the constitutionality of the statutes here.  If an FBI agent enters a person's home or business without a warrant and without probable cause, no one would seriously argue that he could defend his warrantless entry on the ground that he was searching for a document belonging to the owner of the premises as to which the owner had no reasonable expectation of privacy.  Similarly, neither can a statutory scheme authorizing warrantless entries onto private premises by government agents be justified on the ground that their purpose is to examine records as to which the owner has no reasonable expectation of privacy.  *See Barlow's*, 436 at 314 (noting "critical fact" that entry is being sought over business owner's objection by a government agent).

It is important to describe exactly what documents and papers are subject to search and seizure by the regulations.  They include: (1) a copy of a government issued photo identification card, such as a driver's license or passport, of each person depicted in expression created by the

producer that contains sexual imagery; (2) a copy of the producer's expression itself, containing the

sexual imagery, and (3) a list created by the producer of any other names used by the person

depicted in the producer's expression.  28 C.F.R. § 75.2.  The producer's required indices of the

records are also subject to search.

The documents subject to search are, in fact, private papers, maintained by the producer and

composed of very personal information about the persons depicted in the expression produced by

him or her as well as the constitutionally protected expression itself. The papers subject to search

here are vastly different, then, from the financial records in possession of the bank documenting the

criminal defendant's commercial transactions in *United States v. Miller*, 425 U.S. 435 (1976).  In

rebuffing the defendant's claim that he had a privacy interest in financial records held by his bank,

the Court in *Miller* drew a careful distinction:

> On their face, the documents subpoenaed here are not respondent's "private papers."
> Unlike the claimant in *Boyd*, respondent can assert neither ownership nor possession.
> Instead, these are business records of the banks.  As we said in *California Bankers
> Assn. v. Shultz*, *supra*, 416 U.S. at 48-49, 94 S.Ct. At 1511, 39 L.Ed.2d at 833,
> "[b]anks are...not...neutrals in transactions involving negotiable instruments, but
> parties to the instruments with a substantial stake in their continued availability and
> acceptance." The records of respondent's accounts like "all of the records (which are
> required to be kept pursuant to the Bank Secrecy Act,) pertain to transactions to
> which the bank was itself a party." *Id.* at 52, 94 S.Ct., at 1513, 39 L.Ed.2d, at 835.

*Id.* at 440.  Here, Plaintiffs can and do assert ownership and possession of the files, documents and

expression subject to inspection. They are collected by Plaintiffs in the course of producing their

expression; they belong to the Plaintiffs, and Plaintiffs are in physical possession of them.

But beyond traditional Fourth Amendment concerns, the protections of the First Amendment

must be weighed in the balance.  *Stanford v. Texas*, 379 U.S. 476, 484-85 (1965); *Marcus v. Search

Warrant*, 367 U.S. 717, 724 (1961) ("The Bill of Rights was fashioned against the background of

knowledge that unrestricted power of search and seizure could also be an instrument for stifling liberty of expression."); *A Quantity of Copies of Books v. Kansas*, 378 U.S. 205 (1964); *Zurcher v. Stanford Daily,* 436 U.S. 547, 564 (1978); *Lesoine v. County of Lackawanna*, 77 Fed.Appx. 74, 2003 WL 21940916 (3rd Cir. 2003).

In *Walter v. United States*, 447 U.S. 649, 654 (1980) (plurality), the Supreme Court determined that while the government was lawfully in possession of boxes containing sexually explicit movies that had been handed over to it by a company to which the boxes had been improperly addressed and delivered, it was prohibited from viewing the films without first securing a warrant authorizing them to do so. The Court wrote:

> Even though the cases before us involve no invasion of privacy of the home, and notwithstanding that the nature of the contents of these films was indicated by descriptive material on their individual containers, we are nevertheless persuaded that the unauthorized exhibition of the films **constituted an unreasonable invasion of their owner's constitutionally protected interest in privacy**. It was a search; there was no warrant; the owner had not consented; and there were no exigent circumstances.

*Id.* at 654. (Emphasis added).

The records subject to search under the record keeping statutes' inspection regime are vastly different from the financial records maintained by banks containing information supplied to them by their customers, *Miller,* name and address information listed on a hotel register, *United States v. Cormier*, 220 F.3d 1103 (9th Cir. 2000), or applications required to be maintained by schools participating in the National School Breakfast and Lunch Program. *United States v. Sorcher*, 2007 WL 1160099 (E.D. N.Y. 2007). They are private papers and protected expression in which the owners of those records have a legitimate expectation of privacy.

## VII.   PLAINTIFFS HAVE NOT WAIVED THE OTHER CHALLENGES TO THE STATUTES CONTAINED IN THEIR COMPLAINT.

Plaintiffs asserted several challenges that were not specifically briefed in their Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction or their Memorandum in Opposition to Defendant's Motion to Dismiss–including a challenge to the statutes on the ground that some of the statutory and regulatory terms are unconstitutionally vague and a challenge to the statute on the grounds that it violates the privilege against self-incrimination secured by the Fifth Amendment. Plaintiffs' complaint sets forth the factual predicates for each of these challenges with specificity. *See Complaint*, ¶¶ 14, 42, 48, 53, 57, 60 (J), 68, 76-77.

Specifically, Plaintiffs challenge the statutory terms, *simulated sadistic or masochistic abuse,* and *simulated masturbation*, on vagueness grounds.  They also challenge the statutes' provisions allowing information from the records that the statutes compel them to keep to be used as evidence against them in certain criminal prosecutions, under *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965); *Marchetti v. United States*, 390 U.S. 39 (1968); *Grosso v. United States*, 390 U.S. 62 (1968); *Haynes v. United States*, 390 U.S. 85 (1968); *Leary v. United States,* 395 U.S. 6 (1969).

As Plaintiffs' counsel indicated at hearing, Plaintiffs intend to offer evidence in support of these claims in support of their motion for injunctive relief.  While Plaintiffs have filed two lengthy memoranda discussing the constitutional issues in this case, they have not waived nor intended to waive challenges to the statutes and regulations on these bases.  Rather these claims have been pled with sufficient specificity and are not subject to dismissal for failure to state a claim.

24

## VIII.   PLAINTIFFS' PROPOSED DISCOVERY

Plaintiffs intend to discover the evidentiary bases that the government claims support the constitutionality of 18 U.S.C. § 2257 and 18 U.S.C. § 2257A, including evidence in support of the problem it claims that the statutes address, their effect in addressing the claimed problem and the scope of the laws' coverage.   Plaintiffs also seek to discover additional data regarding the government's efforts in combating and prosecuting child pornography.   *See Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction,*  pp. 25-27. Additionally, Plaintiffs will seek discovery regarding the inspections conducted pursuant to the statutes and intend to depose some or all of the FBI agents involved in those inspections.

Respectfully submitted,

Date:     April 9, 2010                   /s/ J. Michael Murray
                                          J. MICHAEL MURRAY (0019626)
                                          jmmurray@bgmdlaw.com
                                          LORRAINE R. BAUMGARDNER (0019642)
                                          lbaumgardner@bgmdlaw.com
                                          BERKMAN, GORDON, MURRAY & DeVAN
                                          55 Public Square, Suite 2200
                                          Cleveland, Ohio  44113-1949
                                          (216) 781-5245 / (216) 781-8207 (Facsimile)

                                          KEVIN E. RAPHAEL (72673)
                                          KER@Pietragallo.com
                                          J. PETER SHINDEL, JR. (201554)
                                          JPS@Pietragallo.com
                                          PIETRAGALLO GORDON ALFANO BOSICK
                                           & RASPANTI, LLP
                                          1818 Market Street, Suite 3402
                                          Philadelphia, Pennsylvania 19103
                                          (215) 320-6200 / (215) 981-0082 (Facsimile)

                                          Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 9, 2010, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs