Case 2:09-cv-04607-MMB   Document 55   Filed 04/26/10   Page 1 of 23

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| | ) |
| Plaintiffs, | )  Judge Michael M. Baylson |
| | ) |
| v. | ) |
| | ) DEFENDANT'S SECOND |
| THE HONORABLE ERIC H. HOLDER, JR., | ) SUPPLEMENTAL BRIEF  IN SUPPORT |
| Attorney General, | ) OF MOTION TO DISMISS |
| | ) |
| Defendant. | ) |
| | ) |

———————————————————————

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................iv

RESPONSES TO QUESTIONS LISTED IN COURT'S ORDER OF MARCH 17, 2010

    1.     NO EVIDENTIARY HEARING IS NECESSARY ...............................................1

          a. ............................................................................................................................1

               i.  Application of Intermediate Rather Than Strict Scrutiny ......................1

               ii.  Narrow Tailoring Under Intermediate Scrutiny ....................................1

               iii.  As-Applied Challenge ..........................................................................2

               iv.  Overbreadth Challenge .........................................................................3

          b. ............................................................................................................................4

          c. ............................................................................................................................4

          d. ............................................................................................................................7

    2.     OTHER ADMINISTRATIVE RECORD INSPECTION SCHEMES ARE
          EITHER ANALOGOUS OR GO BEYOND 2257/2257A BY AUTHORIZING
          INSPECTION OF PREMISES AND RECORDS OTHER THAN
          THOSE STATUTORILY REQUIRED TO BE MAINTAINED ...........................7

          Food and Drug Manufacturer Records .................................................................7

          Consumer Product Records ..................................................................................8

          Wage and Hour Records ......................................................................................9

          Mine Safety Records ..........................................................................................10

          Firearm Dealer Records .....................................................................................10

          Occupational Safety Records..............................................................................10

    3.     (no response from defendant requested)

4.      PLAINTIFFS' FOURTH AMENDMENT CLAIM IS UNRIPE BECAUSE
        THE COURT CANNOT DETERMINE IN A FACIAL CHALLENGE
        WHETHER A PRODUCER WOULD HAVE A REASONABLE
        EXPECTATION OF PRIVACY IN ANY PREMISES THAT MIGHT
        BE ENTERED ..................................................................................................11

5.      COURTS DO NOT RECOGNIZE A REASONABLE EXPECTATION
        OF PRIVACY IN STATUTORILY REQUIRED RECORDS .............................14

6.      Discovery ...............................................................................................................15

## **TABLE OF AUTHORITIES**

### **CASES**

Am. Library Ass'n v. Reno ("ALA III"), 33 F.3d 78 (D.C. Cir. 1994) .......................................1, 2

Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002) ......................................................................5

Broadrick v. Oklahoma, 413 U.S. 601 (1973) ................................................................................5

Brown v. City of Pittsburgh, 586 F.3d 263 (3d Cir. 2009) ...........................................................13

Conchatta Inc. v. Miller, 458 F.3d 258 (3d Cir. 2006) ...................................................................6

Connection Distrib. Co. v. Holder ("Connection III"),
    557 F.3d 321 (6th Cir. 2009) (en banc) .................................................................1, 2, 3, 4

DeJohn v. Temple Univ., 537 F.3d 301 (3d Cir. 2008) ....................................................................6

Donovan v. Dewey, 452 U.S. 594 (1981) .................................................................................10, 13

Free Speech Coal. v. Gonzales ("FSC I"), 406 F. Supp. 2d 1196 (D. Colo. 2005) ........................1

Garner v. Lambert, 558 F. Supp. 2d 794 (N.D. Ohio 2008) .........................................................14

Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215 (3d Cir. 2004) ....................5, 6

In re Establishment Inspection of: Wedgewood Vill. Pharmacy, Inc.,
    270 F. Supp. 2d 525 (D.N.J. 2003) .......................................................................................8

Marshall v. Barlow's Inc., 436 U.S. 307 (1978) ...........................................................................11

Marshall v. Donofrio, 465 F. Supp. 838 (E.D. Pa. 1978) ............................................................10

Maryland v. Macon, 472 U.S. 463 (1985) .....................................................................................12

Matter of Establishment Inspection of Skil Corp., 846 F.2d 1127 (7th Cir. 1988) ........................9

Miller ex rel. Miller v. Penn Manor Sch. Dist., 588 F. Supp. 2d 606 (E.D. Pa. 2008) ..................6

New York v. Ferber, 458 U.S. 747 (1982) .......................................................................................1

Okla. Press Pub. Co. v. Walling, 327 U.S. 186 (1946) .............................................................9, 10

Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251 (11th Cir. 2003).......2

Philips v. Borough of Keyport, 107 F.3d 164 (3d Cir. 1997)...........................................................2

Policemen's Benev. Ass'n of N.J., Local 318 v. Wash. Tp., 850 F.2d 133 (3d Cir. 1988) ...........13

Renne v. Geary, 501 U.S. 312 (1991) ...............................................................................................10

Saxe v. State Coll. Area School Dist., 240 F.3d 200 (3d Cir. 2001) ...............................................6

Shoemaker v. Handel, 795 F.2d 1136 (3d Cir. 1986) .....................................................................13

Sibron v. New York, 392 U.S. 40 (1968) ..........................................................................................12

Skinner v. Ry. Labor Executives Ass'n, 489 U.S. 602 (1989) ........................................................13

Tinker v. Des Moines Ind. Cmty. Sch. Dist., 393 U.S. 503 (1969) ...................................................6

United States v. 5 Unlabeled Boxes, 572 F.3d 169 (3d Cir. 2009) ...................................................4

United States v. Blocker, 104 F.3d 720 (5th Cir. 1997) .................................................................14

United States v. Blue Diamond Coal Co., 667 F.2d 510 (6th Cir. 1981) .......................................14

United States v. Chuang, 897 F.2d 646 (2d Cir. 1990) ..................................................................14

United States v. Cormier, 220 F.3d 1103 (9th Cir. 2000) ..............................................................15

United States v. Miller, 425 U.S. 435 (1976) .................................................................................15

United States v. Salerno, 481 U.S. 739 (1987) ..............................................................................13

United States v. Williams, 553 U.S. 285 (2008) ...............................................................................5

Ward v. Rock Against Racism, 491 U.S. 781 (1989) ........................................................................1

Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442 (2008) ................................13

Wedgewood Vill. Pharmacy, Inc. v. United States, 421 F.3d 263 (3d Cir. 2005) ...........................8

Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands, 385 F.3d 801 (3d Cir. 2004) .............11

## **STATUTES**

15 U.S.C. § 2065 ......................................................................................................8

18 U.S.C.A. § 923 ............................................................................................10, 14

18 U.S.C. 2256 ........................................................................................................7

18 U.S.C. § 2257 ...............................................................................................*passim*

18 U.S.C. § 2257A ............................................................................................*passim*

21 U.S.C. § 331 ......................................................................................................8

21 U.S.C. § 333 ......................................................................................................8

21 U.S.C. § 350a .....................................................................................................7

21 U.S.C. § 360i .....................................................................................................8

21 U.S.C. § 373 ......................................................................................................7

21 U.S.C. § 374 ......................................................................................................8

29 U.S.C. § 209 ......................................................................................................9

29 U.S.C. § 211 ......................................................................................................9

29 U.S.C. § 215 ......................................................................................................9

29 U.S.C. § 216 ......................................................................................................9

29 U.S.C. § 657 .................................................................................................10, 11

30 U.S.C. § 813 ....................................................................................................10

Pub. L. No. 100-690, § 7513(a), 102 Stat. 4181 (1988) .........................................6

Pub. L. No. 101-647, § 311, 104 Stat. 4789 (1990) ...............................................7

Pub. L. No. 109-248, § 501(1)(A)-(B), 120 Stat. 587 (2006) ................................7

**<u>REGULATIONS</u>**

16 C.F.R. § 1118.2 ................................................................................................8

20 C.F.R. § 655.122 ..............................................................................................9

20 C.F.R. § 655.202 ..............................................................................................9

28 C.F.R. § 75.4 ..............................................................................................12, 13

28 C.F.R. § 75.5 ..................................................................................................13

29 C.F.R. § 516.7 ..................................................................................................9

Defendant submits this second supplemental brief to respond to the additional questions

set forth in the Court's fax of March 17, 2010, proceeding according to the Court's numbering:

## 1.    NO EVIDENTIARY HEARING IS NECESSARY

**a.**    The Court need not rely on any plaintiff-specific evidentiary findings in <u>Connection</u>

<u>Distrib. Co. v. Holder</u> ("<u>Connection III</u>"), 557 F.3d 321 (6th Cir. 2009) (en banc), in order for the

court's decision in that case to qualify as persuasive authority, and in order for this Court to

grant defendant's Motion to Dismiss without an evidentiary hearing or trial.  <u>Connection III</u> set

forth a number of guiding principles that did not rely on evidentiary findings:

**i.  <u>Application of Intermediate Rather Than Strict Scrutiny</u>:** Intermediate scrutiny

applies because the age verification and recordkeeping requirements at issue are "'justified

without reference to the content of the regulated speech.'"  <u>Connection III</u>, 557 F.3d at 328

(quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989)) (recognizing that

"Congress's 'unanimous concern' in enacting [18 U.S.C. § 2257] was to deter the production and

distribution of child pornography" and that this object was "independent of the content of the

regulated speech").  The Sixth Circuit reached this conclusion as a matter of law without citing

any evidentiary material, relying instead on legislative history, Supreme Court decisions

including <u>Ward</u> and <u>New York v. Ferber</u>, 458 U.S. 747 (1982), and the persuasive authority of a

prior Sixth Circuit panel and two other courts, <u>Am. Library Ass'n v. Reno</u> ("<u>ALA III</u>"), 33 F.3d

78, 85-86 (D.C. Cir. 1994); <u>Free Speech Coal. v. Gonzales</u> ("<u>FSC I</u>"), 406 F. Supp. 2d 1196,

1205-06 (D. Colo. 2005).  <u>See</u> <u>Connection III</u>, 557 F.3d at 329.

**ii.  <u>Narrow Tailoring Under Intermediate Scrutiny</u>:** The requirements' *universal*

application is narrowly tailored to advance the government's compelling interest in protecting

- 1 -

children from sexual exploitation.  See Connection III, 557 F.3d at 329-30 (listing "several

reasons" that the requirement directly advances the government's interest in a "reasonably

tailored way").  The Sixth Circuit did not rely on any evidentiary findings for this conclusion –

which essentially holds the requirements facially constitutional under intermediate scrutiny – but

instead relied on the prior decisions of the D.C. Circuit in ALA III and a Sixth Circuit panel, as

well as the Final Report of the Attorney General's Commission on Pornography.  Id. at 330.[1]

The court then proceeded to consider the plaintiffs' as-applied challenge.

      **iii.  As-Applied Challenge:** A plaintiff cannot state a viable as-applied challenge to the

age verification and recordkeeping requirements unless the plaintiff alleges facts that indicate

why establishing an exception from the otherwise uniform application of the requirements for

anyone with that plaintiff's characteristics would not risk introducing subjectivity or allowing

circumvention of the statutory scheme.  See Connection III, 557 F.3d at 331 (rejecting an

exception for performers who appear sufficiently old – the plaintiff-specific proposal that the

Connection plaintiffs advanced in their as-applied challenge – because it would inject "'an

ineffectual subjectivity' into the proof-of-age requirement" and would allow circumvention).

The Court may apply that principle to plaintiffs' as-applied challenge here and conclude that

plaintiffs have not alleged facts that, if true, could establish that allowing exceptions in any of

their specific situations (i.e., for those who purport to be photojournalists, sex educators, or

---

[1]The Sixth Circuit's reliance on these sources shows the distinction between this case and
that considered by the Third Circuit in Philips v. Borough of Keyport, 107 F.3d 164 (3d Cir.
1997), which concluded that, in the absence of pre-enactment support for an ordinance
purporting to regulate secondary effects, a local government may offer such evidence to the
district court.  See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 337 F.3d 1251,
1267-68 (11th Cir. 2003) (recognizing issue in Philips was whether post-enactment evidence
could be used, while recognizing that pre-enactment evidence may be sufficient).  Here, the pre-
enactment record that was before Congress is sufficient to uphold the requirements.

artists) would be as effective as applying the requirements uniformly.  Indeed, it is clear that establishing exceptions of the kind invited by plaintiffs' as-applied challenge would introduce an extreme degree of subjectivity into the requirements and could lead to widespread circumvention by allowing any producer who wishes to avoid the requirements to do so by claiming to be a sex educator, photojournalist, or artist.

     **iv.  Overbreadth Challenge:** A plaintiff cannot mount a viable overbreadth challenge to the age verification and recordkeeping requirements based on the argument that the requirements apply to purely private conduct between intimate associates, where the government does not interpret the requirements to apply in that context, and where the requirements clearly comport with the First Amendment when applied to the typical producer of sexually-explicit imagery, which is the setting where the requirements will apply in the "overwhelming majority" of circumstances.  See Connection, 557 F.3d at 339-40 (concluding that, *even if* the requirements applied to images made by private couples solely for their private use, and *even if* there were evidence that a large number of private couples would be affected if the requirements did apply in that context, an overbreadth challenge *still* fails where the Attorney General "has taken the position" that the requirements do not apply in that context *and* where the "overwhelming majority of applications" of the requirements are constitutional).  Thus, even if it might be appropriate in some cases to afford a plaintiff an opportunity to present evidence to meet the plaintiff's burden of establishing substantial overbreadth, here the Sixth Circuit's reasoning is persuasive in explaining why any evidence that plaintiffs might submit regarding the requirements' potential applicability to private couples could not ultimately affect the

- 3 -

overbreadth analysis.[2]  In addition, the recognition in <u>Connection III</u> and other decisions that a fundamentally important feature of the requirements is their universal applicability also militates against proceeding with an evidentiary hearing or discovery unless plaintiffs can first identify some category other than private couples that could reasonably be excluded from the requirements' application without introducing subjectivity and the risk of circumvention.  As indicated above, plaintiffs have not identified any such category.[3]

b.      In sum, as explained above, <u>Connection III</u> and the persuasive authority of other courts entirely foreclose the need for an evidentiary hearing in this case because those decisions make clear that the plaintiffs here have not raised a facial or as-applied First Amendment claim that could prevail even if they were to prove the factual allegations set forth in their Complaint. Because none of the plaintiffs here were parties in the <u>Connection</u> case, defendant does not contend that collateral estoppel applies.  <u>United States v. 5 Unlabeled Boxes,</u> 572 F.3d 169, 173 (3d Cir. 2009).

c.      In keeping with the fact that an overbreadth claim is a facial challenge, courts typically

---

[2]As discussed below, courts typically conduct overbreadth analyses without relying on evidence presented by the parties, looking first to the statutory language and the types of speech restricted by that language, and conducting a common sense assessment of the relative scope of permissible applications of the statute compared to potentially impermissible applications.

[3]The only category other than private couples that the <u>Connection III</u> court addressed as potentially beyond the reach of the requirements was the "hypothetical pornography magazine or sex manual that involves only the middle-aged and the elderly."  <u>Connection III</u>, 557 F.3d at 340. However, the <u>Connection</u> plaintiffs were not able to identify any such publication.  In order for plaintiffs to establish that the requirements are substantially overbroad on that basis, they would have to prove that *most* publications containing sexually-explicit images depict only middle-aged and elderly performers.  That notion is implausible on its face and directly contradicts the findings of Congress and the Commission on Pornography at the time of the requirements' original enactment.  Moreover, plaintiffs have never suggested this to be the case, either in their Complaint, in their briefing, or at oral argument.

- 4 -

conduct overbreadth analyses by analyzing the statutory language, without citing evidentiary material. Thus, in <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 618 (1973), the Supreme Court upheld a state law against an overbreadth challenge based on the Court's review of the state statute itself and the state's rules and attorney general opinions interpreting the statute. <u>Id.</u> at 618.[4]

Similarly, in <u>United States v. Williams</u>, 553 U.S. 285 (2008), the Supreme Court upheld a federal statute that criminalized the pandering of child pornography against an overbreadth challenge by first "constru[ing] the challenged statute" and then considering "whether the statute, as we have construed it, criminalizes a substantial amount of protected expressive activity." <u>Id.</u> at 293, 297. The Court conducted the latter step primarily by responding to "an endless stream of fanciful hypotheticals" offered by the defendant and amici in their attempt to show that the statute was likely to reach a large amount of protected speech. <u>Id.</u> at 301-03. Essentially, the Court relied on its own practical assessment of how realistic these hypotheticals actually were, and how substantial they were relative to the statute's legitimate sweep; the Court did not cite any evidentiary findings of a lower court on these issues. <u>See id.</u>

Where the Supreme Court struck down a definition of child pornography as unconstitutionally overbroad, it again did so without citing evidentiary findings, but based on a discussion of matters that it appeared to regard as generally known, taking judicial notice of published articles, Shakespeare, and contemporary film. <u>Ashcroft v. Free Speech Coal.</u>, 535 U.S. 234, 246-48 (2002) (discussing *Romeo and Juliet* and recent movies, and reflecting on society's "empathy and enduring fascination with the lives and destinies of the young").

Because a case may involve issues other than overbreadth, the fact that an evidentiary

---

[4]While there had been a hearing at the district court level in <u>Broadrick</u>, <u>id.</u> at 602, the Court did not cite any evidentiary findings of the district court in its analysis or decision.

hearing has occurred, or that a case was decided on summary judgment, does not necessarily suggest that the court considered evidentiary material to be relevant to an overbreadth analysis. Indeed, in Gibson v. Mayor & Council of City of Wilmington, 355 F.3d 215 (3d Cir. 2004), the Third Circuit recognized that overbreadth was "a purely legal issue" and thus upheld the district court's sua sponte grant of summary judgment to the defendant, who was a non-moving party. Id. at 224.  The Third Circuit then affirmed the district court's rejection of the overbreadth challenge based on an analysis of the text of a police department directive, together with the court's realistic assessment of whether any possible unconstitutional applications were substantial relative to the directive's legitimate sweep.  See id. at 226-27.[5]  As another example, in Conchatta Inc. v. Miller, 458 F.3d 258 (3d Cir. 2006), the evidentiary hearing apparently addressed whether the plaintiffs would suffer irreparable harm in the absence of a preliminary injunction, whereas the court's overbreadth discussion relied on an analysis of statutory language as well as judicial notice of the types of venues that might be affected.  See id. at 266.[6]

---

[5]The type of evidence that the plaintiff attempted to offer in support of overbreadth in that case – consisting of deposition testimony from the city's mayor and chief of police, "who were asked to opine on an array of imaginary situations," id. at 227 n. 5 – could simply have been presented through legal argument.  Indeed, the Third Circuit gave little weight to this "evidence," stating that its conclusion was "unaffected by [the plaintiff's] enumeration of . . . hypothetical scenarios" that were pure speculation on his part.  Id. at 227.

[6]Likewise, in DeJohn v. Temple Univ., 537 F.3d 301, 306 (3d Cir. 2008), the district court had allowed discovery in order to give the defendant university a chance to show that its sexual harassment policy comported with the applicable "substantial disruption" test under Tinker v. Des Moines Ind. Cmty. Sch. Dist., 393 U.S. 503 (1969).  The Third Circuit ultimately affirmed the district court's overbreadth holding based only on a textual analysis of the policy itself.  537 F.3d at 320; see also Saxe v. State Coll. Area School Dist., 240 F.3d 200, 217 (3d Cir. 2001) (reversing district court's grant of motion to dismiss, and holding school policy was unconstitutionally overbroad, based on textual review of the policy); Miller ex rel. Miller v. Penn Manor Sch. Dist., 588 F. Supp. 2d 606, 627-28 (E.D. Pa. 2008) (holding some parts of school district policy were unconstitutionally overbroad while others were not, but limiting its analysis to the text of the student handbook within the context of other school district policies).

- 6 -

**d.**     The same findings and common sense inferences that establish Congress's justification

for enacting 18 U.S.C. § 2257 also justify § 2257A.[7]  Moreover, in the years after § 2257's

original enactment in 1988, when Congress relied on the 1986 Report of the Attorney General's

Commission on Pornography and the 1998 Senate hearings, Congress has repeatedly considered

the need for these and similar provisions.  See Def. Op. Br. (dkt. #17) at 24-25 (discussing

Congress's findings in support of 2003 PROTECT Act, including the fact that modern

technology allows performers' identities to be obscured by digitally altering their appearances).

In 2006, when § 2257A was enacted, Congress again found that child pornography was harmful

to children, and that a "substantial interstate market in child pornography exists."  Pub. L. No.

109-248, § 501(1)(A)-(B), 120 Stat. 587 (2006).  It further found that the "vast majority of child

pornography prosecutions today" involve computer images.  Id. § 501(2)(A).  Congress's

reasoning that the demand for youthful-looking performers in sexually explicit images creates a

risk that underage performers might be used, and that the age verification requirement would

reduce that risk, is equally valid whether the sexually explicit conduct is actual or simulated.

**2.**     **OTHER ADMINISTRATIVE RECORD INSPECTION SCHEMES ARE EITHER
          ANALOGOUS OR GO BEYOND 2257/2257A BY AUTHORIZING INSPECTION
          OF PREMISES AND RECORDS OTHER THAN THOSE STATUTORILY
          REQUIRED TO BE MAINTAINED**

          **Food and Drug Manufacturer Records:**  The Federal Food, Drug, and Cosmetic Act

("FDCA") authorizes the FDA to have access "at reasonable times" to records that the FDCA

---

[7]Congress's original findings also encompassed visual depictions of actual lascivious
exhibition of the genitals or pubic area, and § 2257 as originally enacted applied to this category
of depictions.  See Pub. L. No. 100-690, § 7513(a), 102 Stat. 4181 (1988) (defining "actual
sexually explicit conduct" to include all five subsections of the definition of child pornography
in 18 U.S.C. § 2256).  The 1990 amendment omitted reference to the relevant subsection of §
2256, Pub. L. No. 101-647, § 311, 104 Stat. 4789 (1990), but the reference was re-inserted in
2006, Pub. L. No. 109-248, § 502(a)(4), 120 Stat. 587 (2006).

requires be maintained, including carrier records, 21 U.S.C. § 373, and records relating to the

manufacture of infant formula, see 21 U.S.C. § 350a(b)(4)(B) (requiring that such records "be

made available" to the FDA "for review and duplication upon request" unless the manufacturer

is subject to regularly scheduled audits); id. § 374(a)(3) (authorizing inspection of such records

during the course of an otherwise-authorized inspection of factory or warehouse premises).  The

FDCA also authorizes inspection upon request, "at all reasonable times," of records required to

be maintained by manufacturers and importers of devices intended for human use.  See id. §

374(e) (cross-referencing 21 U.S.C. § 360i).  The refusal to permit access to these records is

prohibited under the Act, 21 U.S.C. § 331(e), and may result in a fine and imprisonment, id. §

333(a).  Courts have observed that although § 374, which authorizes inspections of premises as

well as records, does not require a warrant, the FDA sometimes chooses to obtain an ex parte

administrative warrant prior to an inspection.  See Wedgewood Vill. Pharmacy, Inc. v. United

States, 421 F.3d 263, 266 (3d Cir. 2005) ("Although the FDCA does not require the FDA to

obtain a warrant for an administrative inspection, the FDA chose to request a warrant [in this

case]"); In re Establishment Inspection of: Wedgewood Vill. Pharmacy, Inc., 270 F. Supp. 2d

525, 536-37 (D.N.J. 2003) (declining to address hypothetical warrantless search).

**Consumer Product Records**: The Consumer Product Safety Act imposes recordkeeping

requirements on consumer product manufacturers, labelers, and distributors, and requires that the

Consumer Product Safety Commission ("CPSC") be allowed to inspect any relevant records

"[u]pon request" in order to determine compliance with the Act's requirements.  15 U.S.C. §

2065(b).  The CPSC's regulation implementing this provision states that, if a firm that has been

presented with a notice of inspection refuses entry, the inspector may then seek a search warrant.

- 8 -

16 C.F.R. § 1118.2(d).  However, a significant distinction between the CPSC scheme and the 2257/2257A records inspections is that, as one court has observed,  the CPSC inspections may extend to "documents [a firm] retains on its own initiative, rather than documents that the agency requires it to keep."  Matter of Establishment Inspection of Skil Corp., 846 F.2d 1127, 1134 (7th Cir. 1988) (upholding the district court's grant of injunction compelling firm's compliance with inspection warrant).  In contrast, a 2257/2257A records inspection is limited to the very records a producer is required to maintain, separate from its regular business records.

**Wage and Hour Records:**  The Fair Labor Standards Act ("FLSA") requires all employers subject to its provisions to make and keep records of their employees' wages, hours, and conditions of employment and to submit any requested information from these records to the Wage and Hour Division ("WHD").  29 U.S.C. § 211(c).  WHD inspectors must be given access to these or any other records as "necessary or appropriate to determine whether any person has violated any provision of th[e] [FLSA], or which may aid in the enforcement of the provisions of th[e] FLSA."  Id. § 211(a).  The failure to comply with § 211(c) is a prohibited action subject to fines and imprisonment.  Id. §§ 215(a)(5), 216(a).  Subpoenas are not necessary in order to inspect those records that are statutorily required.  See 29 C.F.R. § 516.7 (employers must make any FLSA-required records available upon 72 hours' notice by the WHD).[8]  However, like the CPSA scheme, and unlike the 2257/2257A scheme, the records subject to inspection under the FLSA include any relevant records, not just those that the FLSA requires be maintained.  The agency is authorized to seek a subpoena to compel production of any such records relevant to the question of whether an employer is subject to the FLSA or has violated its provisions.  See id. §

---

[8]Similar regulatory requirements apply to employers of aliens with certain categories of work visas.  See 20 C.F.R. §§ 655.122(j), .202(b)(7).

209; Okla. Press Pub. Co. v. Walling, 327 U.S. 186, 200 & nn. 23-24 (1946). Against that backdrop, the Supreme Court held that the only Fourth Amendment restriction on a FLSA subpoena was that the "documents sought [be] relevant to the inquiry" at issue, and the particularity with which the records are described. Id. at 209. It also held that this inquiry could not be made in the abstract, but depended on the circumstances of each case. Id. (holding that the subpoenas in that case "more than meet" Fourth Amendment requirements).

**Mine Safety Records:** The Mine Safety Act requires the Department of Health & Human Services to conduct periodic warrantless administrative inspections of mines. 30 U.S.C. § 813. The Act also requires that various records be maintained and made available to HHS and/or the public, including records of accident investigations and employee exposure to toxic materials. See id. § 813(c), (d), (h). The Supreme Court upheld the warrantless premises inspection provision after the government sued for an injunction prohibiting a company from refusing to allow inspectors entry. Donovan v. Dewey, 452 U.S. 594, 602-03 (1981) (reversing district court and upholding warrantless mine inspections pursuant to 30 U.S.C. § 813); accord Marshall v. Donofrio, 465 F. Supp. 838, 843 (E.D. Pa. 1978) (granting government an injunction prohibiting mine operators from refusing access to their mine for purposes of inspection).

**Firearm Dealer Records:** The Bureau of Alcohol, Tobacco, and Firearms ("ATF") has authority to conduct periodic warrantless inspections of records that firearms dealers are statutorily required to maintain for the purpose of ensuring compliance with the recordkeeping requirement. 18 U.S.C.A. § 923(g)(1)(B)(ii).

**Occupational Safety Records:** Employers must keep certain occupational safety records. 29 U.S.C. § 657(c). The statute authorizes inspection not only of records, but also of

- 10 -

workplace premises. Id. § 657(a). It was the inspection of the workplace, not of records, that the Supreme Court held required a warrant. Marshall v. Barlow's Inc., 436 U.S. 307, 310 (1978).

**4.      PLAINTIFFS' FOURTH AMENDMENT CLAIM IS UNRIPE BECAUSE THE COURT CANNOT DETERMINE IN A FACIAL CHALLENGE WHETHER A PRODUCER WOULD HAVE A REASONABLE EXPECTATION OF PRIVACY IN ANY PREMISES THAT MIGHT BE ENTERED**

A plaintiff bears the burden to establish a court's subject matter jurisdiction, including the ripeness of the claim asserted. Renne v. Geary, 501 U.S. 312, 315-16 (1991) (recognizing that the question of ripeness "go[es] to the power of the federal courts to entertain disputes, and to the wisdom of their doing so," and that "[w]e presume that federal courts lack jurisdiction" unless the plaintiff establishes otherwise). The Third Circuit directs courts to consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," and instructs that a dispute is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands, 385 F.3d 801, 806 (3d Cir. 2004) (internal quotation omitted).

In some cases, ripeness may depend on whether a plaintiff raises a facial or an as-applied Fourth Amendment challenge. Plaintiffs' Complaint asserts both facial and as-applied challenges. Comp. ¶¶ 73. However, their opposition brief did not contest defendant's assertion that their as-applied Fourth Amendment challenge was unripe.[9] See Pl. Opp. (dkt. #25) at 38. Rather, plaintiffs limited their response to the contention that the Court could review the statutory and regulatory inspection scheme on its face, id. ("Numerous decisions . . . have addressed facial challenges . . . ."), evidently abandoning any as-applied challenge.

_____

[9] Plaintiffs' Complaint does not assert that any plaintiff has been subject to an inspection. As described in defendant's response to plaintiffs' motion for leave to amend, plaintiffs' proposed Amended Complaint also fails to state a viable as-applied Fourth Amendment claim.

- 11 -

However, this concession does not help plaintiffs in this case because, under Wyatt, even

plaintiffs' facial Fourth Amendment challenge is unripe. A facial Fourth Amendment challenge

must rely on the threshhold assumption that a 2257/2257A inspection will always implicate

producers' reasonable expectation of privacy, but that assumption is unwarranted. The Supreme

Court's caution that "[t]he constitutional validity of a warrantless search is pre-eminently the sort

of question which can only be decided in the concrete factual context of the individual case,"

Sibron v. New York, 392 U.S. 40 (1968), is relevant here. Because, as explained in prior

briefing and in section 5 below, producers have no legitimate expectation of privacy in

statutorily-required records, the only relevant privacy interest would relate to the premises that

an inspector might enter – but the nature of those premises, and the reasonableness of a

producer's expectation of privacy, depends on the particular case. For example, where an

inspection occurs at the premises of a third-party custodian – a possibility that is expressly

contemplated in DOJ regulations, 28 C.F.R. § 75.4 – no expectation of privacy of the producer

could be affected. Similarly, where inspectors merely enter a public area of a business during

regular business hours, no expectation of privacy is implicated. Maryland v. Macon, 472 U.S.

463, 469 (1985) (holding that a bookseller had no reasonable expectation of privacy "in areas of

the store where the public was invited to enter and to transact business"). Plaintiffs do not

contend otherwise, but instead claim to mount a "facial" Fourth Amendment challenge based on

hypothetical as-applied situations. However, before an inspection actually occurs, a court cannot

predict whether an inspector's entry will or will not implicate any reasonable expectation of

privacy of a producer, nor can it assess the reasonableness of any particular inspection.

The fact that many applications of the 2257/2257A inspection scheme will not implicate

the Fourth Amendment at all distinguishes it from those cases where courts have conducted pre-enforcement reviews of administrative inspection schemes on their face. Indeed, most such cases have involved warrantless drug testing schemes, where individuals' expectation of privacy was clear. E.g., Skinner v. Ry. Labor Executives Ass'n, 489 U.S. 602, 611-12 (1989); Policemen's Benev. Ass'n of N.J., Local 318 v. Wash. Tp., 850 F.2d 133, 134-35 (3d Cir. 1988); Shoemaker v. Handel, 795 F.2d 1136, 1139 (3d Cir. 1986).

Even if plaintiffs' facial challenge were ripe, it could not prevail because "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)); accord Brown v. City of Pittsburgh, 586 F.3d 263, 269 (3d Cir. 2009).[10] The 2257/2257A inspection scheme cannot be held facially invalid under this standard because, as just explained, in many cases, the inspections carried out pursuant to

_____

[10]Plaintiffs' argument that the scheme is facially invalid relies to a large extent on their claim that, in a particular case, inspectors might enter an individual's home. However, the inspection scheme cannot be held *facially* invalid based on the assertion that some producers choose to keep records at their homes rather than at business premises or at the premises of a third-party custodian. To the extent plaintiffs seek to raise a kind of hybrid pre-enforcement facial/as-applied challenge by carving out certain categorical situations where they claim inspections would always be unconstitutional, such a notion is inconsistent with the Salerno standard. Indeed, the Supreme Court rejected a similar argument in Donovan, refusing to limit its holding to the constitutionality of an inspection scheme "as applied to warrantless inspections of stone quarries" because "the Act makes no distinction as to the type of mine to be inspected." Donovan, 452 U.S. at 597 n.4. The Court did so even though the category of "stone quarries" fit squarely within the Act's textual authorization of "mine" inspections. See id. Here, it would be even more inappropriate to consider the potential application of the 2257/2257A inspection scheme to "homes" on a preenforcement categorical basis because the inspection scheme does not refer to entry of "homes"; rather, the scheme contemplates that inspections occur at a producer's "place of business or at the place of business of a non-employee custodian of records." 28 C.F.R. § 75.5(c)(1) (cross-referencing 28 C.F.R. § 75.4).

- 13 -

the scheme will not only be reasonable, but will not implicate the Fourth Amendment at all.

**5.     COURTS DO NOT RECOGNIZE A REASONABLE EXPECTATION OF PRIVACY IN STATUTORILY REQUIRED RECORDS**

When records are statutorily required to be kept and made available for inspection, those who hold the records have no reasonable expectation of privacy in their content.  The Sixth Circuit has held that the inspection of records required to be kept under the Mine Safety Act did not qualify as a "search" because the company had no expectation of privacy in the records. United States v. Blue Diamond Coal Co., 667 F.2d 510, 517-18 (6th Cir. 1981) (holding that entry into a mine office for purposes of obtaining the records was, in the post-enforcement circumstances of that case, a search, but upholding the search as reasonable).  Another court has noted that a firearms dealer failed to demonstrate a reasonable expectation of privacy with respect to records that he was required to maintain under 18 U.S.C. § 923.  Garner v. Lambert, 558 F. Supp. 2d 794, 804 n.11 (N.D. Ohio 2008) (upholding warrantless inspection of records).

Indeed, even where specific records are not required to be kept, the fact that records are statutorily subject to inspection may alone eliminate a reasonable expectation of privacy.  See, e.g., United States v. Blocker, 104 F.3d 720, 728 (5th Cir. 1997) (insurance company and its officers have no reasonable expectation of privacy in records that are expressly subject to inspection under state auditing laws); United States v. Chuang, 897 F.2d 646, 650-51 (2d Cir. 1990) (holding bank employee had no reasonable expectation of privacy in bank documents that were "subject to periodic examination," and suggesting the employee's expectation of privacy in his own office may also be diminished to the extent such records are kept there).

If anyone *might* reasonably claim an expectation of privacy in the 2257/2257A records, it would more likely be the performers whose images appear, and whose identities are recorded,

- 14 -

not the producers who are statutorily required to collect and maintain this information.

However, even if plaintiffs had standing to assert the privacy interests of performers (which they

do not), performers have no reasonable expectation of privacy at stake in the situation presented

by 2257/2257A inspections because they have no possessory or ownership interest in these

records. United States v. Miller, 425 U.S. 435, 440 (1976) (depositor has no reasonable

expectation of privacy in bank records); United States v. Cormier, 220 F.3d 1103, 1108 (9th Cir.

2000) (motel guest has no reasonable expectation of privacy in motel registration records).

**6. Discovery:** Should the Court deny the government's Motion to Dismiss, the government

would seek discovery regarding the nature of the production of sexually-explicit visual

depictions by individual plaintiffs and by organizational plaintiffs' members, the nature of their

age verification and recordkeeping activities, and how each of the plaintiffs claims to be affected

by the age verification and recordkeeping requirements. The government would likely seek to

depose each identified plaintiff or plaintiff member.

April 22, 2010                                      Respectfully submitted,

                                                    TONY WEST
                                                    Assistant Attorney General
                                                    MICHAEL L. LEVY
                                                    United States Attorney
                                                    VINCENT M. GARVEY
                                                    Deputy Branch Director

                                                    /s/ Kathryn L. Wyer
                                                    KATHRYN L. WYER
                                                    U.S. Department of Justice, Civil Division
                                                    20 Massachusetts Avenue, N.W.
                                                    Washington, DC 20530
                                                    Tel. (202) 616-8475 / Fax (202) 616-8470
                                                    kathryn.wyer@usdoj.gov
                                                    *Attorneys for Defendant*

- 15 -

### CERTIFICATE OF SERVICE

      Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Second Supplemental Brief has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.

Dated: April 22, 2010                 /s/ _____
                              Kathryn L. Wyer