## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREE SPEECH COALITION, INC., et al.** ) | **CASE NO.  2:09-4607** |
| ) | |
| Plaintiffs, ) | **JUDGE MICHAEL M. BAYLSON** |
| ) | |
| -vs- ) | |
| ) | **PLAINTIFFS' MOTION TO ALTER OR** |
| **THE HONORABLE ERIC H. HOLDER, JR.,** ) | **AMEND JUDGMENT PURSUANT TO** |
| Attorney General, ) | **RULE 59(e), FEDERAL RULES OF CIVIL** |
| ) | **PROCEDURE WITH MEMORANDUM IN** |
| Defendant. ) | **SUPPORT** |
| ) | |

Plaintiffs, by and through counsel, respectfully move this Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend its Opinion (Doc. 66) and Order (Doc. 67) of July 27, 2010, granting Defendant's Motion to Dismiss.

The grounds for Plaintiffs' motion are described in the brief which accompanies this motion pursuant to Rule 7.1 (c) of the Local Rules of Civil Procedure, United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Date: August 24, 2010

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

(signature block continued on next page)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO    GORDON    ALFANO
BOSICK & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES
Three First National Plaza
70 West Madison Street, Suite 400
Chicago, Illinois 60602
(312) 558-6427

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC., et al.** | ) | **Civil Action No. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.,** | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e), FEDERAL RULES OF CIVIL PROCEDURE

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
    & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES
Three First National Plaza
70 West Madison Street, Suite 400
Chicago, Illinois 60602
(312) 558-6427

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE COMPLAINT STATES A CLAIM BECAUSE, UNDER THE FIRST
     AMENDMENT, NO RECORD KEEPING REQUIREMENT DERIVED FROM THE
     GOVERNMENT'S INTEREST IN SUPPRESSING CHILD PORNOGRAPHY MAY
     SUBSTANTIALLY BURDEN THE CIRCULATION OF EXPRESSION WHICH
     IS NOT CHILD PORNOGRAPHY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   The Government's Interest May Not Shift Between the 'Significant Interest'
          and the 'Narrow Tailoring' Inquiries.  It Is of No Consequence that a
          Challenged Restriction on Speech May Be Narrowly Tailored to a Restated
          Government Interest Which Is Insignificant or Illegitimate . . . . . . . . . . . . . . . . 4

     B.   The Challenged Statutes Are Not Narrowly Tailored to Any Significant
          Government Interest.  The Only Interest to Which the Statutes Are Narrowly
          Tailored Is – Perhaps Subtly – Illegitimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.   A Prophylactic Record Keeping Rule Is Available to the Government Which
          Does Not Impermissibly Reverse Constitutional Presumptions Concerning
          Expression and Which Imposes Only Minimal Burdens upon Commercial
          Producers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.  THE FREE SPEECH COALITION AND CONNERS DO NOT SEEK TO
     RELITIGATE THE FOREGOING CLAIM.  NO COURT – INCLUDING THE *FSC
     II* COURT – HAS EVER REACHED AND DECIDED THIS CLAIM . . . . . . . . . . . . . 16

     A.   No Court Upholding The Challenged Statutes Has Ever Even Noticed, Let
          Alone Decided, the Foregoing Claim.  The Only Court to Consider the
          Constitutional Presumption Struck the Original Section 2257 Down as
          Unconstitutional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     B.   The Foregoing Claim Is Presented in the Instant Complaint, and Very Little
          Factfinding Is Necessary for Its Disposition . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page

**CASES**

*Allen v. McCurry*, 449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*American Library Association v. Reno*, 33 F.3d 78 (D.C. Cir. 1994) . . . . . . . . . . . .  6, 8, 9, 14, 17

*American Library Association v. Thornburgh*,
     713 F. Supp. 469 (D. D.C. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 18

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . 1, 3, 8-12, 14, 17

*Blount v. Rizzi*, 400 U.S. 410 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
     447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Connection Distributing Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009) . . . . . . . . . . . . . . . . . .  6, 17

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Fort Wayne Books, Inc. v. State of Indiana*, 489 U.S. 46 (1989) . . . . . . . . . . . . . . . . . . . . . . .  7, 12

*Free Speech Coalition v. Gonzales*,
     406 F. Supp. 2d 1196 (D. Colo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 16, 17

*Heller v. State of New York*, 413 U.S. 483 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*In re Winship*, 397 U.S. 358 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Miller v. State of California*, 413 U.S. 15 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*M'Culloch v. State of Maryland*, 17 U.S. (4 Wheat.) 316 (1819) . . . . . . . . . . . . . . . . . . . . . . .  4

*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) . . . . . . . . . . . . . . . . . . . . . . . .  3

*Semtek International Inc. v. Lockheed Martin Corp.*,
     531 U.S. 497 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

## TABLE OF AUTHORITIES (cont'd)

Page

*Simon & Schuster, Inc. v. Members of the New York State*
  *Crime Victims Board*, 502 U.S. 105 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 8, 19

*Speiser v. Randall*, 357 U.S. 513 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State of New York v. Ferber*, 458 U.S. 747 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Grace*, 461 U.S. 171 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) . . . . . . . . . . . . . . . 9

*United States v. Williams*, 553 U.S. 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

## CONSTITUTIONAL PROVISIONS

United States Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 5, 7, 8, 10-12, 14, 17-19

## STATUTES, RULES AND REGULATIONS

7 U.S.C. § 136f(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8 U.S.C. § 1324a(e)(5) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

18 U.S.C. § 2251(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2252(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12, 15-18

18 U.S.C. § 2257(f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

18 U.S.C. § 2257A (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 11022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES (cont'd)

Page

28 U.S.C. § 11023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

40 C.F.R. Part 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

40 C.F.R. Part 80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

40 C.F.R. Part 98 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

40 C.F.R. § 26.115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

40 C.F.R. § 33.501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**MISCELLANEOUS**

Steven Schwartzman, *The Words of Mathematics* at 213
        (Mathematics Ass'n of America 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tussman and tenBroek, *The Equal Protection of the Laws*, 37 Cal. l. Rev. 341 (1949) . . . . . . . . 7

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' RULE 59 MOTION

For the purpose of the instant motion (without more generally waiving any other argument supported by the complaint), the Plaintiffs accept that the challenged statutes, 18 U.S.C. §§ 2257, 2257A (2006), are properly subject only to intermediate First Amendment scrutiny.[1]  The argument detailed *infra* relies only upon the intermediate scrutiny test and does not invoke strict scrutiny at all.

The Plaintiffs most respectfully submit that this Court has thus far overlooked a subtle but critical point:  that the comprehensive record keeping interest to which the challenged statutes are narrowly tailored is meaningfully *different* than the Government's significant – indeed compelling – interest in suppressing child pornography.  *See* Complaint (Doc. 1) at ¶ 60(A), (B). That difference matters.  *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 118-19 (1991).  Since the record keeping scheme, as implemented here, potentially criminalizes the communication of an overwhelming amount of otherwise lawful expression (which remains fully protected by the First Amendment), *see*, *e.g.*, 18 U.S.C. § 2257(f)(4), it cannot withstand even intermediate constitutional scrutiny.  The burdens which it imposes upon speakers who produce or reproduce no child pornography at all and, even more importantly, on expression which is not, in fact, child pornography are very serious; and Congress may not substantially burden protected expression merely because it may resemble unprotected expression.  *Cf. Ashcroft v. Free Speech*

---

[1]  The Supreme Court may have suggested at least one reason, not previously addressed by this Court, why the statutes might be subject to strict scrutiny.  In *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105 (1991), that Court appeared to suggest that a statute's overinclusiveness might be so substantial as to subject it to strict scrutiny even if content neutral.  *Id.* at 122 n.* ("Because the Son of Sam law is so overinclusive, we need not address the Board's contention that the statute is content neutral . . ..").  On the other hand, the Court may have been noting that substantial overinclusiveness may doom a statute even under intermediate scrutiny.  On either account, the Court's observation is apt here because, as argued *infra*, the statutes challenged here, when properly evaluated, are considerably more overinclusive than the Son of Sam law invalidated in that case.

*Coalition*, 535 U.S. 234, 255 (2002); *see* Pl. Mem. in Op. Mtn to Dismiss (Doc. 25) at 25-27.

On the other hand, a limited prophylactic rule requiring the person most responsible for the planned, commercial creation of an image of sexually explicit conduct to examine an identification document of each and every performer – no matter how old or how well known to the responsible person – and, further, to make and keep a record of that examination is constitutionally permissible so long as it merely imposes administrative sanctions only on the responsible individual. *Cf.* 8 U.S.C. § 1324a(e)(5) (2006)(imposing duty upon employers to examine identification documents for every hired employee and administrative penalties for failure to create and preserve I-9 forms and associated records, but *not* criminalizing otherwise lawful employment). But any scheme which suppresses constitutionally protected expression as a sanction for a record keeping failure is unconstitutional because it effectively reverses the First Amendment's presumption that expression is constitutionally protected unless and until it is shown to be otherwise in a particular instance. *See* Complaint (Doc. 1) ¶ 60(A), (B); Pl. Mem. in Sup. Mtn. for Prelim. Inj. (Doc. 3) at 40-41. In other words, the fundamental constitutional question in this case is not whether Congress may impose *some* comprehensive age-check rule. It is, rather, whether specific failures to check age or to make and keep records of having done so may seriously criminalize the circulation of constitutionally protected expression.

## ARGUMENT

### I.   THE COMPLAINT STATES A CLAIM BECAUSE, UNDER THE FIRST AMENDMENT, NO RECORD KEEPING REQUIREMENT DERIVED FROM THE GOVERNMENT'S INTEREST IN SUPPRESSING CHILD PORNOGRAPHY MAY SUBSTANTIALLY BURDEN THE CIRCULATION OF EXPRESSION WHICH IS NOT CHILD PORNOGRAPHY.

Under the intermediate First Amendment scrutiny developed to evaluate legislation and other government action which regulates merely the time, place, and manner in which expression may be disseminated, challenged restrictions on expression will be held unconstitutional unless the

government can show that they are narrowly tailored to serve a significant governmental interest and leave open ample alternate avenues for the regulated expression. *United States v. Grace*, 461 U.S. 171, 177 (1983); *cf. Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986)(citing cases where government bears burden, including an intermediate scrutiny case). Whether the challenged statutes and their associated administrative regulations leave open ample avenues of expression not subject to impermissible burdens is addressed briefly *infra* at 19. To begin with, the Plaintiffs focus on the narrow tailoring requirement. Critical to that analysis, however, is *very* close attention to the precise governmental interest against which the challenged legislation is to be measured.

This question is more subtle than courts have heretofore recognized. This Court, for instance, has quite properly determined that the Government's proper interest is in combating "the use of children in the production of pornography," thereby "fighting against the sexual exploitation of children." Opinion, July 27, 2010 (Doc. 66) at 4, 11, 17, 18. To be sure, legislation may directly implement narrower, derivative interests: suppressing child pornography serves the broader interest of protecting against exploitation the children who would be depicted, and banning even false advertising of child pornography serves the broader interest by promoting the ban on child pornography, *United States v. Williams*, 553 U.S. 285, 299 (2008), and so on. Each of these narrower interests may properly serve as the gauge against which narrow tailoring is measured, but *only* if it is a legitimate derivative of the primary interest. A subsidiary interest may fail as a proper derivative if it too remotely related to the primary interest or, as here, if it runs afoul of a clear constitutional prohibition. *Compare Williams*, 553 U.S. at 299 (upholding ban of false advertising of child pornography), *with Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 257-58 (2002)(striking down ban on *expression* which had been falsely advertised as child pornography: "Materials falling within the proscription are tainted and unlawful in the hands of all who receive it, though they bear

3

no responsibility for how it was marketed, sold, or described").   As detailed *infra* at 6-12, the only interest to which the challenged statutes are narrowly tailored – requiring producers to prove that their expression is not child pornography – fails as a constitutionally legitimate, let alone significant, government interest.  The Government's primary interest remains, of course, but it is *that* interest – suppressing child pornography – against which the challenged statutes must be measured.  *See* Pl. Mem. in Op. to Mtn. to Dismiss (Doc. 25) at 4.

A.   **The Government's Interest May Not Shift Between the 'Significant Interest' and the 'Narrow Tailoring' Inquiries.  It Is of No Consequence that a Challenged Restriction on Speech May Be Narrowly Tailored to a Restated Government Interest Which Is Insignificant or Illegitimate.**

Different 'levels' of general constitutional review have been articulated; and the formulations of strict, intermediate, and rational basis scrutiny largely parallel one another when articulated under the First Amendment.  Each level of First Amendment scrutiny[2] concentrates, at least in principal part, upon the long-standing American constitutional concerns with the government's objectives and with the 'fit' between those objectives and the chosen means of furthering them.  *Cf. M'Culloch v. State of Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819)("Let the end be legitimate . . . and all means which are . . . plainly adapted to that end, which are not prohibited . . . are constitutional").  Narrow tailoring analysis, then – at any level – is designed to examine where the challenged regulatory burdens fall with respect the respect to a governmental interest, which, as a logical matter, has already been found sufficient.  When faced with a sharp difference between a legitimately targeted class of expression and the burdened class, defenders of a challenged speech restriction are often tempted to restate the government's interest in an effort to bring it more closely into line with the

---

[2]   Certain specialized formulations of First Amendment scrutiny may vary slightly, *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 564 (1980)(commercial speech), or sometimes focus upon entirely different issues, *e.g. Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992)(prior restraint scrutiny).

4

imposed burdens.  Often, this restatement will take the form of an apparent refinement of or derivation from the governmental interest which, *ex hypothesi*, has already been justified under the logically prior interest prong of the applicable First Amendment scrutiny.

So, for instance, having established a compelling interest in providing compensation to crime victims from the assets of those who had been convicted of harming them and in preventing criminals from profiting from their crimes, *cf. Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 118-19 (1991), the New York State Crime Victims Board had to confront the narrow tailoring question whether its statute drawing such compensation only from the proceeds of the convicts' books, *Id.* at 116, was impermissibly underinclusive.  So "[t]he Board attempt[ed] to define the State's interest more narrowly, as 'ensuring that criminals do not profit from storytelling about their crimes before their victims have a meaningful opportunity to be compensated for their injuries.'"  But the Supreme Court quite perceptively recognized that "the Board ha[d] taken the *effect* of the statute and posited that effect as the State's interest."  *Id.* at 120 (emphasis in original).  It then explained why such a move is impermissible:

> If accepted, this sort of circular defense can sidestep judicial review of almost any statute, because it makes all statutes look narrowly tailored.  As Judge Newman pointed out in his dissent from the opinion of the Court of Appeals, such an argument 'eliminates the entire inquiry concerning the validity of content-based discrimination.  Every content-based discrimination could be upheld by simply observing that the state is anxious to regulate the designated category of speech.' 916 F.2d [777] at 785 [(2nd Cir. 1990)]

502 U.S. at 120.  At bottom, the Supreme Court insisted that any restated government interest *itself* be subjected to the appropriate interest inquiry.  Even though a generalized compensation interest was compelling, the more limited compensation goal had to pass constitutional muster on its own.  And this it could not do.  *Id.* at 119-20, 120-21 ("the State has a compelling interest in compensating victims from the fruits of the crime, but little if any interest in limiting such compensation to the proceeds of the wrongdoer's speech about the crime").  For this reason, the so-called Son of Sam

Law was unconstitutional.

*Simon & Schuster* thus demonstrates that the *exact same* interest must satisfy *both* the significant interest *and* the narrow tailoring inquiries.  If the interest shifts for narrow tailoring purposes after another interest (or even what seems to be merely another *version* of that interest) has been found sufficient, the reformulated interest must again be subjected to sufficiency analysis.  And if that interest – no matter how well it fits the imposed burdens – is found wanting, the challenged statute cannot survive.

     **B.**     **The Challenged Statutes Are Not Narrowly Tailored to Any Significant Government Interest.  The Only Interest to Which the Statutes Are Narrowly Tailored Is – Perhaps Subtly – Illegitimate.**

This Court has quite properly determined that the Government's interest in suppressing child pornography is substantial.  Opinion, July 27, 2010 (Doc. 66) at 50, *quoting Connection Distributing Co. v. Holder*, 557 F.3d 321, 328 (6th Cir. 2009).  The Plaintiffs fully agree.  Indeed, if it mattered, that governmental interest could properly be characterized as compelling.  This Court has, relying on *Connection* at 557 F.3d at 329; *American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994); *Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196, 1206-1207 (D. Colo. 2005), also concluded that the challenged statutes are narrowly tailored to the Government's interest in having all producers establish that their expression is not child pornography, regardless of the value of the expression, the apparent age of the performers, or any other matter.  Opinion (Doc 66) at 64-67.  Indeed, that is precisely the intent behind and the effect of the challenged statutes.  The problem, we respectfully submit, arises from the fact that the interest to which the statutes are narrowly tailored is *different* than the interest which is properly regarded as substantial (even compelling).  As detailed *supra*, the Supreme Court has cautioned against any unrecognized shifting of the governmental interest between evaluation of its force and evaluation of the challenged legislation's fit.  *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105,

120 (1991).  In this case, the interest to which the statutes are narrowly tailored amounts to nothing more than a reversal of the First Amendment's presumption that expression is constitutionally protected.  *Cf. Fort Wayne Books, Inc. v. State of Indiana*, 489 U.S. 46, 67 (1989)("presumption [is] that expressive materials are protected by the First Amendment"); *see also* Complaint (Doc. 1) ¶ 60(A), (B); Pl. Mem. In Sup. of Mtn. for Prelim. Inj. (Doc. 3) at 40-41.  Since a statute may not reverse a constitutional presumption, the Plaintiffs respectfully submit that the only interest to which the challenged statutes are narrowly tailored is – perhaps very subtly – illegitimate.[3]  When *properly* measured against the Government's remaining compelling interest in suppressing pornography depicting *actual* children, the challenged statutes are unconstitutionally overinclusive, even by the looser intermediate scrutiny narrow tailoring standard carefully detailed by the Supreme Court.  *Cf.* Pl. Mem. In Op. To Mtn to Dismiss (Doc. 25) at 15.

The mischief[4] at which the Government properly aims is child pornography, and it may

---

[3]  At oral argument on the Defendant's Motion to Dismiss, this Court asked whether, in the context of sexually explicit depictions including minors, there is a "governmental interest in requiring" producers of sexually explicit expression "to keep records of the age of anybody who is involved."  Plaintiffs' counsel explained that:

> [T]he one interest the government has is in applying this statute to child pornography. But . . . the reason it isn't narrowly tailored, is because it applies to vast quantities of protected material involving adults which is not child pornography, and *the government is shifting the burden* to these innocent Americans to prove that their material is protected when it's the government who should bear the burden of proving that it's *un*protected.

Tr. Oral Arg., March 12, 2010 (Doc. 46) at 110-11 (emphasis added).

[4]  The seminal work concerning under- and overinclusiveness in constitutional law spoke of the "mischief" legitimately targeted by the government and the "trait" selected by the legislature for regulation; and it presented diagrams which help to visualize narrow tailoring questions in those terms.  Tussman and tenBroek, *The Equal Protection of the Laws*, 37 Cal. l. Rev. 341, 347 (1949). The fourth of those diagrams – a small M circle lying entirely within a much larger T circle – illustrates the overinclusiveness which is the principal problem addressed here.

properly target all such expression.  Yet here, Congress has targeted a much larger category of expression:  what this Court, quoting Judge Buckley's majority opinion in *American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994), has referred to as sexual "depictions of all performers who might conceivably have been minors at the time they were photographed or videotaped," Opinion (Doc. 66) at 65, *i.e.* any actual person.  This class of what "might conceivably . . . be[]" child pornography is vastly larger than the category of child pornography itself. Conceivable child pornography is to actual child pornography what the group of all drivers is to the set of drunk drivers or, more aptly, the class of all reputation-damaging criticism (whether true or false) is to actionable defamation.[5]  Because the First Amendment does not permit Congress to require that speakers *dis*prove "conceivabl[e]" *non*protection, the burdens imposed by the statutes challenged here must be narrowly tailored to the set of all *actual* child pornography rather than to this broadest possible superset of all "conceivable child pornography."  Taking actual child pornography as the reference point, it is readily apparent here, as it was in *FSC I*, that the challenged statutes apply to a "significant universe of speech which is neither obscene under *Miller* [*v. State of California*, 413 U.S. 15 (1973)] nor child pornography under [*State of New York v.*] *Ferber*, [458 U.S. 747 (1982)]."  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002).  Even if characterized – after Judge Buckley – as the class of *conceivable* child pornography, the class of expression covered here (which is, in fact, even larger than the class improperly targeted in *FSC I*) is many, many times larger than the class of *actual* child pornography.  *See* at 18, *infra*, concerning what facts the Plaintiffs have alleged in the complaint and stand ready to establish on summary judgment or prove at trial.  Although it is somewhat looser than under strict scrutiny, *cf. Simon &*

---

[5]    In each case, the former class forms a superset of the legitimately targeted subset.  *See* Steven Schwartzman, *The Words of Mathematics* at 213 (Mathematics Ass'n of America 1994)(term "superset" is correlative to the term "subset").

*Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 122 n. * (1991), *narrow* tailoring – not Judge Buckley's "reasonably broad brush," *cf.* Opinion (Doc. 66). at 65, *citing American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994) – is still required under intermediate scrutiny; and statutes which "burden substantially more speech than is necessary to further the government's legitimate interests" cannot stand. *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989); *cf.* Pl. Mem. in Sup. of Mtn. for Prelim. Inj. (Doc. 3) at 21. Taking actual child pornography as the legitimately targeted speech category, as it was in *FSC I*, "a substantial portion of the [challenged statutes'] burden on speech does not serve to advance the [Government's constitutionally proper] goals." *Ward*, 491 U.S. at 799. This is why the challenged statutes are so deeply constitutionally flawed. *See* Pl. Mem. in Sup. of Mtn. for Prelim. Inj. (Doc. 3) at 21.

The Supreme Court has already dealt with the category of 'what might conceivably be child pornography,' expressly holding in just this context that "[p]rotected speech does not become unprotected speech merely because it resembles the latter." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). With respect to a superset of child pornography – indeed, a narrower superset than that burdened here – the Court concluded that "[t]he Government may not suppress lawful speech as the means to suppress unlawful speech." *Ibid.* The Plaintiffs respectfully submit that the same proposition applies to substantial burdens on protected speech as well. *See United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 812 (2000)("It is of no moment that the statue does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree").

Consideration of other possible statutes – not all entirely hypothetical but not presently before this Court, will highlight the problem. The Government asserts here that – like many lines

9

dividing protected from unprotected expression – the line defining child pornography is in some ways "dim and uncertain." *Cf. Blount v. Rizzi*, 400 U.S. 410, 416 (1971)("Government is not free to adopt whatever procedures it pleases" in censoring obscenity from mail (internal quotation marks omitted)); *see also Speiser v. Randall*, 357 U.S. 513, 521-22 (1958)(tax exemption scheme which placed burden on taxpayer to disprove unlawful political advocacy imposed unconstitutional burden on speech). Congress might respond to this concern by altogether eliminating the depiction of actual minors as an element of the offense of child pornography. Indeed, Congress did just that; unsuccessfully. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 256 (2002). Congress might instead leave the child pornography statutes just as they are, but provide that, as to the age of the performers, the burden of proof shifts to the defense. Even apart from First Amendment considerations, the Supreme Court long ago established that such a provision would be unavailing. *In re Winship*, 397 U.S. 358, 364 (1970)("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Undeterred, Congress might choose to erect a rebuttable presumption that the performers are minors, subject to rebuttal by records kept by the producers in a specified form. As this Court has recognized, Opinion (Doc. 66) at 15 n.3, Congress tried that too; and the only court to rule on that effort struck it down as unconstitutional. *American Library Association v. Thornburgh*, 713 F. Supp. 469, 480-82 (D. D.C. 1989)(original version of Section 2257 unconstitutional because it established presumption rebuttable by records); *see also FSC I* at 255 ("The Government raises serious constitutional difficulties by seeking to impose on the defendant the burden of proving his speech is not unlawful"). It is thus well settled that Congress can neither omit performer age as an element, nor shift the burden of proof as to that element, nor even erect a rebuttable presumption regarding that element of the offense of child pornography. The

Plaintiffs respectfully submit that, under these circumstances, Congress may not make it a separate crime *to be unable to rebut* that impermissible presumption.

Yet this is *precisely* what the challenged statutes do.  The failure of a photographer or, perhaps, a video director to check each and every performer's official identification document at the outset does not, of course, convert sexually explicit images created immediately thereafter into child pornography.  The same is true of similar images with respect to which the required records were not properly created, maintained, or transferred or which do not bear the required disclosure statement.  Yet the challenged statutes impose serious criminal penalties upon the dissemination, republishing, and circulation of all such images.[6]  *E.g.* 18 U.S.C. §§ 2257(f)(4); 2257A(f)(4).  Similarly, publishers who wish to reprint or republish any of these images or post them to a World Wide Web site cannot do so if the records were not created or maintained – unless, perhaps, they can accomplish the virtually impossible task of creating records for themselves after the fact, *cf. American Library Association v. Thornburgh*, 713 F. Supp. 469, 475 (D. D.C. 1989).  But unless these outlawed images are, in fact, child pornography – a matter entirely independent of whether identification documents were examined and the required records created and maintained – they remain constitutionally protected.  *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 251 (2002)("where . . . speech is neither obscene nor the product of [child] sexual abuse, it does not fall outside the protection of the First Amendment").  The Supreme Court has already expressly rejected

---

[6]    Whether the challenged statutes, in this Court's words, "reduce protected expression to unprotected expression," Opinion (Doc. 66) at 75, is in some respects a purely semantic question. It is axiomatic that statutes *cannot* alter the contours of constitutional protections.  What is critical here is that the challenged statutes improperly *treat* constitutionally protected expression – that which is not child pornography yet is not properly documented as such – as unprotected by criminalizing it.  That is precisely what Congress did in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 257-58 (2002), but carefully, and successfully, avoided doing in *United States v. Williams*, 553 U.S. 285, 299 (2008).  *See supra* at 3-4 and *infra* at 14 n. 9.

11

the Government's argument that 'conceivable child pornography' should be a broader category of unprotected expression. *Id.* 246, 254-56 (recognizing that broader category of unprotected expression was necessary to sustain statute expanding child pornography prohibitions but invalidating statute because no such broader category exists, even given proof difficulties raised by child pornography definition).[7]

A statute criminalizing the publishing or republishing of a letter to the editor disparaging and very sharply criticizing government officials unless the author first creates and transfers to the publisher and republisher written proof of the truth of the facts asserted (elaborately cross-referenced and maintained for seven years) and unless the published letter openly discloses the location of that written proof would – for reasons which lie at the very heart of our constitutional commitments – hardly last a day in this country. That is because the First Amendment fully protects expression until it crosses the line into a recognized unprotected category and because the burden is always on one claiming that such a line has, in fact, been crossed to prove it in a particular case. So it is here. There is no unprotected category of 'conceivable child pornography,' and the Supreme Court has made it unmistakably clear that even sexually explicit expression is entitled to the First Amendment's presumption of protection. *Fort Wayne Books, Inc. v. State of Indiana*, 489 U.S. 46, 62-64 (1989); *Heller v. State of New York*, 413 U.S. 483, 493 n. 11 (1973). The challenged statutes would reverse that presumption by criminalizing expression simply because it is not provably protected. They cannot stand in their present form.

---

[7]     If a record keeping scheme could have legitimately assisted the Government in meeting its proof difficulties, the *FSC I* Court would most likely have mentioned this possibility. It is thus quite telling that the Supreme Court did not cite Section 2257 – which had then been on the books, in one form or other, for nearly a decade and a half – when discussing, and rejecting, the Government's argument that child pornography proof difficulties warranted legislative focus on a broader superset of expression.

12

C.   **A Prophylactic Record Keeping Rule Is Available to the Government Which Does Not Impermissibly Reverse Constitutional Presumptions Concerning Expression and Which Imposes Only Minimal Burdens upon Commercial Producers.**

The force of the foregoing fundamental constitutional argument is that no failure to comply with a comprehensive age-check requirement converts constitutionally protected expression into unprotected expression and that, therefore, no statute may seriously criminalize the dissemination, republication, or circulation of insufficiently documented expression which is not, in fact, child pornography.   The problem is not that the challenged statutes' age-check requirement is comprehensive, it is that the age-check and burdensome record keeping are required to permit the circulation of constitutionally protected expression.   The thrust of the challenged record keeping scheme – requiring those who disseminate any sexually explicit image to prove that it is constitutionally protected – dictates its unconstitutional features:  principally, its application to those not directly responsible for the initial creation of an image, its extraordinarily burdensome overdocumentation provisions, and its serious criminalization of undocumented expression.   But a simple, comprehensive age-check rule (*i.e.* one requiring the single person most responsible for creating a sexually explicit image to check identification documents establishing the age of *all* performers – no matter how old or how well known to the image creator – does not raise these problems directly; and it would therefore not  be unconstitutional *per se*.   At least with respect to commercial producers who plan their photography in advance, such a limited prophylactic rule would impose burdens which are little more than *de minimis*.   When creating sexually explicit images, such producers essentially follow similar precautions already, not only in order to avoid the serious crimes connected with child pornography but also to make sure that critical intellectual property releases signed by their performers are fully valid and enforceable.

13

Thus if it were not motivated by an effort to reverse a critical First Amendment presumption, it would be easy for Congress to promulgate a comprehensive age-check requirement which avoids the unconstitutional results present here.  Congress could plausibly conclude that a comprehensive age-check rule would serve the prophylactic purposes of helping to prevent inadvertent creation of child pornography (through ignorance or recklessness) and of making it more difficult for underage persons who wish to perform to deceive the creators of sexually explicit images.[8]  Congress could also conclude that a limited record production and preservation requirement – *i.e.* limited to the initial creator of each image and not otherwise burdening or tainting constitutionally protected expression – would serve the purposes of enforcing this prophylactic rule.   This sort of comprehensive age-check requirement is *preventative*; it necessarily looks to the present or to the immediate future when a sexually explicit image is to be created.[9]

Indeed, as this and previous courts have noted, Congress has previously enacted just such a prophylactic rule:   the requirement that all employers check for every hired employee an

---

[8]   Where such a concern really motivates legislation imposing an age-check rule, one might expect a prohibition on the use of false identification documents and provisions ensuring reasonable privacy of the age-check records.  The absence of any such provisions in legislation which Congress has repeatedly modified over two decades further suggests that Congress intended to burden sexually explicit expression rather than to prevent the inadvertent creation of new child pornography.

[9]     In stark contrast, the challenged statutes look overwhelmingly to the past – often to the quite distant past.  In this regard the grammatical tense of Judge Buckley's justification, quoted by this court is quite telling:  "The Government must be allowed to paint with a reasonably broad brush if it is to cover depictions of all performers who *might* conceivably *have been* minors at the time they were photographed or videotaped."  *American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994)(emphasis added).  Furthermore, the distinction developed here is analogous, in relevant respects, to the distinction between banning expression which had been falsely advertised as child pornography, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 257-58 (2002)  (unconstitutional), and banning false advertising of child pornography (but not tainting the falsely advertised expression itself), *United States v. Williams*, 553 U.S. 285, 299 (2008)(permissible:  "The constitutional defect we found in the pandering provision at issue in *Free Speech Coalition* was that it went *beyond* pandering to prohibit possession of material that could not otherwise be proscribed. 535 U.S. at 258" (emphasis in *Williams*)).  *See supra* at 3-4.

14

identification document which establishes that employee's immigration status as it relates to the employment.  *See, e.g.,* Opinion (Doc. 66) at 3-4.  But a comparison between the prophylactic rule put in place to prevent inadvertent hiring of ineligible aliens and the comprehensive record keeping scheme challenged here reveals their profound differences.  In the first place, of course, the record keeping scheme challenged here operates against the specific constitutional protections afforded to expression, whereas the immigration laws do not.  But even beyond this, some of the critical differences are elucidated by considering just what the immigration law requirement would look like if it were truly analogous to the record keeping scheme challenged here.  An employer failing to examine identification documents and keep records even concerning United States citizens would be subject to a federal felony conviction, years of incarceration, and very stiff fines (all of the same order of magnitude as the penalties for *actually hiring* an *ineligible* alien).[10]  In the same vein, the otherwise legal employment of those – citizens and eligible aliens – with every right to work here would become seriously illegal on account of a mere failure to check a driver's license or to complete a form and file it away.  Moreover, keeping things fully analogous, every U.S. employer would be required to issue to each employee a government prescribed identification badge to be

---

[10]     The fact that the challenged statutes provide penalties on the same order of magnitude as those applying to actual child pornography offenses, *compare* 18 U.S.C. § 2252(b) (punishing knowing distribution of child pornography by a term of imprisonment of not less than five years and not more than 20 years); 18 U.S.C. § 2251(e) (punishing sexual exploitation of a child by a term of imprisonment of not less than 15 years and not more than 30 years), *with* 18 U.S.C. § 2257 (punishing record keeping violation with prison term of not more than five years and punishing subsequent violation with term of imprisonment of not more than ten years but not less than two years), itself provides reason to believe that Congress viewed them as a substitute child pornography enforcement mechanism which effectively relieves the Government of its burden of proof.  On the other hand, penalties on the order of what the immigration laws provide for what is called a "paperwork violation," 8 U.S.C. § 1324a(e)(5) (punishing person who fails to secure or record specified proof of lawful resident status by civil penalty of not less than $100 and not more than $1000), would go a long way toward showing the Government's limited interest in promulgating a common-sense prophylactic rule.

worn openly by the employee, and it would be a serious federal felony for anyone to do business with an employee not displaying this badge.[11]   The fact that Congress did not go nearly so far under the immigration laws demonstrates, by comparison, that its efforts in promulgating the statutes challenged here were directed not at prescribing a prophylactic rule but at burdening sexually explicit expression or all of those who deal in it.   In any event, the rules and procedures surrounding the I-9 forms, as actually enacted, would provide Congress with an appropriate guide when replacing the unconstitutional statutes challenged here.

## II.   THE FREE SPEECH COALITION AND CONNERS DO NOT SEEK TO RELITIGATE THE FOREGOING CLAIM. NO COURT – INCLUDING THE *FSC II* COURT – HAS EVER REACHED AND DECIDED THIS CLAIM.

The Plaintiffs respectfully disagree with this Court's conclusion that collateral estoppel precludes consideration of certain of the constitutional challenges of the Free Speech Coalition and Conners, and they respectfully submit that this Court has erred in that regard.   *See Allen v. McCurry*, 449 U.S. 90, 94-95 (1980); *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-506 (2001); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990).   But even beyond this, a frank comparison between the foregoing constitutional arguments and the previous ruling regarding Section 2257, including that of the United States District Court for the District of Colorado, reveals that no court has yet considered the issues presented *supra*.   Thus, far from seeking to relitigate issues which they have already presented, the Plaintiffs Free Speech Coalition and Conners now press for these most fundamental constitutional challenges to be recognized, addressed, and resolved

---

[11]     Environmental record keeping requirements are also sometimes cited by analogy, *see, e.g.,* 40 C.F.R. § 26.115; 40 C.F.R. § 33.501; 40 C.F.R. Part 63; 40 C.F.R. Part 80; 40 C.F.R. Part 98; *see also* 28 U.S.C. §§ 11022, 11023, but they present similarly inapt analogies.   They may well require, for instance, comprehensive documentation of the manufacture, transport, and use of pesticides. *See, e.g.,* 7 U.S.C. § 136f(a).   But, although some pesticides are white granular solids, the environmental laws do not require supermarkets selling sugar to maintain records showing that the sugar is not any sort of pesticide even though, on visual inspection, it just might *conceivably* be.

16

for the first time.  The complaint fully supports the arguments advanced in this motion, Complaint (Doc. 1) ¶ 60(A), (B), and there is no reason why FSC and Conners cannot participate with the other challengers in pressing them here.

A.      **No Court Upholding The Challenged Statutes Has Ever Even Noticed, Let Alone Decided, the Foregoing Claim.  The Only Court to Consider the Constitutional Presumption Struck the Original Section 2257 Down as Unconstitutional.**

The Plaintiffs respectfully submit that in moving from the Government's unquestionably significant – indeed compelling – interest in suppressing child pornography to an interest in requiring producers to prove that their *conceivable* child pornography is not, in fact, *actual* child pornography, this Court has overlooked both a critical First Amendment presumption and the extent to which the challenged statutes criminalize the dissemination of constitutionally protected expression merely because it is not fully documented.   Opinion (Doc. 66). at 66 (placing age verification requirements on expression which "would constitute child pornography if [it] were to involve minors" is constitutionally permissible).  Each of the courts upholding Section 2257 engaged in similar reasoning, and none has even recognized – let alone resolved – the constitutional burden-shifting difficulties.  *Connection Distributing Co. v. Holder*, 557 F.3d 321, 329 (6th Cir. 2009); *American Library Association v. Reno*, 33 F.3d 78, 90 (D.C. Cir. 1994); *Free Speech Coalition v. Gonzales*, 406 F. Supp. 2d 1196, 1206-1207 (D. Colo. 2005).  Similarly, no court has recognized that a different comprehensive, prophylactic age-check rule and limited record keeping requirement can operate *without* restricting the dissemination of constitutionally protected but undocumented expression as the challenged statutes do.  For that matter, none has fully worked through the analogies which might be drawn from the immigration or environmental laws.  Thus, while a number of courts have now rejected a host of *different* challenges to Section 2257, none has focused any attention at all on the argument presented here and now.  In fact, the only court to consider

Section 2257 against the First Amendment's presumption that expression is protected struck the first version of that statute down because the first version of that statute expressly articulated the opposite presumption. *American Library Association v. Thornburgh*, 713 F. Supp. 469, 480-82 (D. D.C. 1989).   Unfortunately – and erroneously, we submit – the 1990 amendment removed the constitutional presumption from consideration because it appeared to create an entirely independent crime. As detailed *supra* at 6-12, however, that amendment merely made it a separate crime not to be able to rebut the unconstitutional presumption previously enshrined in the statute. The gist of the foregoing argument is that while the 1990 amendment may have buried the presumption problem for a time, it never really eliminated it.

> **B.** **The Foregoing Claim Is Presented in the Instant Complaint, and Very Little Factfinding Is Necessary for Its Disposition.**

The foregoing constitutional arguments are presented in the complaint.  They rely upon two narrow sets of facts, both of which are expressly alleged in the complaint, Complaint (Doc. 1)  ¶¶ 1, 55, 60(A), (B), and neither of which is likely to be the subject of extended dispute.   In the first place, for narrow tailoring purposes, the respective sizes of the class of all expression covered by the challenged statutes (called "conceivable child pornography" and the "superset" *supra*) and the class of all child pornography (*i.e.* actual child pornography) presents a relevant factual question. If, for instance, ninety-eight percent of the images to which the challenged statutes apply were, in fact, unprotected child pornography, then it could hardly be said, in the end, that "a substantial portion of the [challenged statutes'] burden on speech does not serve to advance the [Government's constitutionally proper] goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).  But in fact, the respective size of the two relevant categories is decidedly reversed.  Whether the number of distinct images is counted and compare or the total number of (multiple) copies of image is considered, the amount of constitutionally protected expression which is substantially burdened by

the challenged statutes (*i.e.* the superset of "conceivable child pornography") is larger than the set of legitimately targeted expression (*i.e.* actual child pornography) by much, much more than a factor of ten.[12]

The second set of relevant facts concerns the burdens imposed by the challenged statutes upon those who do not produce any child pornography at all. If those burdens were *de minimis*, the foregoing constitutional argument might well be entirely beside the point. But they are not. Producers who have never had anything at all to do with child pornography are required, on pain of a federal felony conviction, to invest very substantial time, effort, and resources in an extremely elaborate and pervasive record keeping scheme. Many of them – so-called "secondary producers" – have never actually created a sexually explicit image at all and never will. All of them devote substantial resources to record keeping which would otherwise be available to fill the demand for more expression. Still others are so chilled by the elaborate requirements and the serious criminal penalties that they refrain from creating or reproducing any sexual expression at all. And although third party record keepers may now be a theoretical alternative to relieve some of the associated burdens, the Government's express warning that each primary and secondary producer will remain culpable for any failure on the part of a third party record keeper, currently chills reasonable producers from relying upon them. Complaint (Doc. 1) ¶ 55. Even with respect to a purely prophylactic rule, these issues are important, under intermediate First Amendment scrutiny because, short of producing an entirely different sort of expression, the challenged statutes leave no unburdened alternate avenues of expression. While these factual issues are relevant, it is unlikely that they will be seriously disputed. It may well be that this Court will be able to resolve the

---

[12]   This overinclusiveness lies at the very heart of the challenged statutes. It is thus considerably more serious than the overinclusiveness, illustrated by a relative few but well-known literary examples, which was fatal to the Son of Sam law in *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 121-22 (1991).

constitutional question presented here on cross motions for summary judgment.

## CONCLUSION

For all of the foregoing reasons, this Court should reconsider its recent rulings, and it should now deny the Government's motion to Dismiss the Complaint Under Rule 12(b)(1) and (6), at least insofar as the complaint presents the challenge asserted *supra*.  This Court should further set this case down for a prompt disposition of the few relevant factual issues unless the parties can eliminate them by stipulation.

Respectfully submitted,

Date:   August 24, 2010

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
 55 Public Square, Suite 2200
 Cleveland, Ohio  44113-1949
(216) 781-5245 / (216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200 / (215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES
Three First National Plaza
70 West Madison Street, Suite 400
Chicago, Illinois 60602
(312) 558-6427

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC., et al.** | ) | **CASE NO. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | **JUDGE MICHAEL M. BAYLSON** |
| | ) | |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.,** | ) | **ORDER** |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

AND NOW this _____ day of _____, 2010, upon consideration of Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Rule 59(e), Federal Rules of Civil Procedure, it is hereby **ORDERED** and **DECREED** that Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Rule 59(e), Federal Rules of Civil Procedure is **GRANTED**.


_____

**HON. MICHAEL M. BAYLSON**

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2010, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES