# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:09-4607 |
| vs. ) | |
| ) | JUDGE MICHAEL M. BAYLSON |
| HON. ERIC R. HOLDER, JR., Attorney General, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFFS' REPLY MEMORANDUM
### IN SUPPORT OF PLAINTIFFS' RULE 59 MOTION

The Plaintiffs filed their Rule 59(e) motion to alter or amend the judgment on August 24, 2010. The Government replied on September 7, 2010. Pursuant to §C.4, of *Judge Baylson's Pretrial and Trial Procedures-Civil Cases*, the Plaintiffs now file the following reply memorandum in support of their motion.

### ARGUMENT

In support of the instant motion, the Plaintiffs focus exclusively upon their most fundamental constitutional challenge. That argument is that although the Government has a substantial (indeed compelling) interest in suppressing child pornography, the challenged statutes are not narrowly tailored to that interest because they substantially burden so much expression which is not child pornography (and which thus remains constitutionally protected). *See* Pl. Mem. at 7-9 (*citing Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989), and noting that since actual child pornography is the proper target, a substantial portion of the challenged statutes' burden on speech does not serve to advance the Government's permissible goals). On the other hand, the challenged statutes *are* narrowly tailored to a governmental objective:

making those responsible for disseminating sexually explicit expression – primary producers, secondary producers, and distributors[1] – prove (or "ensure" *cf.* Def. Mem. at 7) that it is not child pornography; but *that* interest is illegitimate because it is forbidden by the First Amendment. Pl. Mem. at 9-12.

I.     **SUBSTANCE**

The Government begins its response by agreeing that it has a significant interest in protecting children against exploitation by suppressing child pornography. Def. Mem. at 4 ("the relevant governmental interest is the interest in protecting children from the sexual exploitation that occurs when they are used in the production of depictions of actual or simulated sexually explicit conduct" (internal quotation marks and Government's brackets omitted)). For the sake of clarity, let us refer to this interest as the "basic interest." But the government never proceeds to demonstrate narrow tailoring directly with respect to *this* interest, because it could not succeed in doing so. Instead it quietly moves to the interest to which the challenged statutes are narrowly tailored, Def. Mem. at 6-7 (the challenged "requirements permit secondary producers (who rarely will know the performers) to ensure that the individuals depicted in their publications are of age" ), and it reiterates what it and other courts have previously explained: that there is a sensible relationship between the basic interest and this interest, Def. Mem. at 7-8, which, for the sake of brevity, we can refer to as the"derived interest." The Government assumes that it need do nothing more than draw a sensible[2] line between the basic interest and the derived interest and

---

[1]   Indeed, if the term "transfer" as used in subsection (f)(4), 18 U.S.C. 2257(f)(4), 2257A(f)(4), includes the act of obtaining from another, the impermissible burden shift may extend all the way to the end users, *i.e.* the final audience for the covered expression.

[2]   Since intermediate First Amendment scrutiny is at issue here, the logical and empirical connection between the basic interest, on the one hand, and derived interests or chosen ends, on the
(continued...)

then demonstrate narrow tailoring with respect to the derived interest. But this is *precisely* what the Supreme Court has always cautioned against. *Cf. Simon & Schuster, Inc. v .Member of the New York Crime Victims Board*, 502 U.S. 105, 118-121 (1991); *M'Culloch v. State of Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819). The Government overlooks the requirement – an express part of basic constitutional law for very nearly two hundred years – that its ends as well as its derived interests must not only be "plainly adapted" to its basic interest but also "not prohibited." *Ibid*. That is, the derivation from basic interest to derived interest must not only be sensible, it must also be *permissible*. And *that* is where the Government's derivation fails in this case. Pl. Mem. at 7. At least with respect to the statutes challenged here, the Government has always overlooked this requirement, as articulated by *Simon & Schuster* and *M'Culloch*, in its reasoning, so it is little surprise that it cannot bring itself even to *mention* them in its response.

Thus, far from addressing, let alone refuting, the basic problem identified by the Plaintiffs here, the Government's response – once again – *demonstrates* that problem. It claims that the challenged statutes will deter the dissemination of actual child pornography and ease the Government's prosecution of cases involving actual child pornography. Def. Mem. at 7. But it said the same thing – rightfully so, as far as the Government's limited attention to constitutional concerns goes – of the original version of Section 2257, invalidated in *American Library Association v. Thornburgh*, 713 F. Supp. 469, 480-82 (D. D.C. 1989), *vacated as moot*, *ALA v.*

---

(...continued)
other, must be more than merely rational. The term "sensible," in this context thus has its strongest meaning in a strict scrutiny setting and weakens progressively as the scrutiny moves down the constitutional ladder. But here this Court need not determine its precise strength under intermediate scrutiny, since, for the purposes of this argument, the Plaintiffs challenge not the strength of the Government's derived interest or of its relationship to the basic interest but rather its categorical permissibility.

*Barr*, 956 F.2d 1178 (D.C. Cir. 1992).³ And it said the same thing of the statute invalidated in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 252-53 (2002). Indeed, it could with equal logical and empirical plausibility say the same thing of a statute reversing the trial burden of proof with respect to the age of performers depicted as engaging in sexually explicit conduct. *Cf*. Pl. Mem. at 9-11. In fact, each and every respect in which the Government claims the challenged statutes serve its basic interest, Def. Mem. at 7 (permitting secondary producers to ensure that expression is not child pornography, preventing those who did not create expression to disclaim knowledge of its origin, preventing producers from claiming that they did not create expression), focuses directly on the expression (rather than upon the process of creating that expression) and more specifically on who must establish whether or not that expression depicts children. The challenged statutes thus further the Government basic interest *only* by the indirect and impermissible intermediate step of altering a fixed constitutional presumption.⁴ That the

---

³ The Government's observation, Def. Mem. at 6, that the original version of Section 2257 applied its invalid presumption to secondary producers as well as primaries is apparently intended to suggest that the prophylactic rule discussed by the Plaintiffs could so apply as well. It does not establish that. The Government's observation merely reflects the fact that the statute at issue in *Thornburgh* was invalid for (at least) two independent reasons, as a plain reading of the opinion shows. *Id*. at 475-78 (Part III-C, D, addressing secondary producer coverage), 480-82 (Part IV, addressing presumption).

⁴ The challenged statutes impose very substantial burdens upon an enormous amount of constitutionally protected expression, Complaint [Doc. 1] ¶ 60(B), in connection with this reversed presumption. The Plaintiffs' use of "superset" and "subset" in this context is directly prefigured by the use of Venn diagrams in one of the most famous and influential law review articles of all time, cited at Pl. Mem. at 7 n. 4. The Government's reference for these terms, Def. Mem. at 8 n. 4, is as accurate as the Plaintiffs', Pl. Mem. at 8 n. 5; and the Government is correct in suggesting that "iff" means "if and only if" – a very standard usage in formal logic. There is nothing mysterious here: as the Plaintiffs have said, the relation between superset and subset is the relation between drivers and drunk drivers. It is often easier to identify a superset than it is to isolate the precise, appropriately targeted set at issue, as for instance in the Plaintiffs' example, Pl. Mem. at 12 (which the Government altogether ignores): it is easier to determine just by looking at it whether expression is disparaging than it is to conclude whether it is true or false. The Government does not even *try*
(continued...)

statutes' means are indirect is not the problem. That they are impermissible *is*. The Government must act only through *constitutionally permissible* means in pursuing its goals, no matter how weighty; and that it has failed to do here, precisely as it has failed to do in the past.

Part of the Government's problem is that it does not understand how a proper, limited prophylactic rule would operate in a situation such as this. By definition, a prophylactic rule *prevents* something: in this case, the careless or inadvertent creation of child pornography. The Plaintiffs agree that a such a limited rule – imposing only *de minimis* burdens *before* expression is created – would not run afoul of the First Amendment's presumption that expression is protected. One might imagine prevention more broadly,[5] of course, but when the Government does so here, it runs directly into that constitutional presumption. *That* is the fundamental constitutional problem posed by the challenged statues. We are confident that, just as it did with its closely related pandering concerns, *compare United States v. Williams*, 553 U.S. 285, 299 (2008)(upholding regulation of conduct relating to sexually elicit expression), *with Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 258 (2002)(striking down closely related regulation applying directly to constitutionally protected expression), the Government will understand the relevant distinctions by the time it is necessary to defend an appropriately narrow prophylactic rule which Congress might enact to replace the facially invalid Section 2257 and 2257A.

For present purposes, however, the Government is mistaken to the extent that it means to

---

(...continued)
to argue that this situation would justify record keeping requirements analogous to those challenged here.

[5]   The Plaintiffs are well aware that children depicted in child pornography are harmed by its circulation as well as by their exploitation implicit in its creation. That fact, however, did not justify the effective burden shifting in *Thornburg* or the burden elimination in *FSC I*, and it cannot justify a statutory shifting of the constitutional presumption here.

suggest, Def. Mem at 5 n.1, 7, that the Plaintiffs' challenge is an as-applied one restricted to impositions on secondary producers and transferors. That a true primary producer might be bothered to check each and every performer's identification document in order to prevent the inadvertent creation of child pornography does not justify the burdensome and Byzantine record keeping requirements imposed on him or her. Nor, more importantly, does it justify restricting the *expression* itself, once created, in the primary's hands any more than in anyone else's. Again the *Williams*/*FSC I* distinction is dispositive here. Even though *Williams* shows that there was room for Congress to narrow and redirect the pandering concerns which first arose in *FSC I*, facial invalidation of the broader and improperly directed earlier statute was nevertheless both proper and required in *FSC I*. Similarly, the fact that the Government may implement a concern in one way for a different and very limited purpose but is categorically forbidden to employ it for the immediate purpose it has chosen does not implicate least restrictive means analysis, *cf.* Def. Mem. at 8, as properly understood. Neither *Williams* nor *FSC I* characterized the Government's eventual solution as a less restrictive means. In this case, the final analysis, the Government simply *cannot* do what it has attempted here *whether or not* there happens to be a way of implementing a comprehensive age check requirement without impermissibly shifting the constitutional presumption. Just as in *FSC I*, then, facial invalidation is necessary here.

## II.   PROCEDURE

Since it does not refute the Plaintiffs' central constitutional argument, the Government plainly hopes to avoid it. Even here, however, the Government seems confused about whether this argument is a "rehash" of rejected theories, Def. Mem. at 2, 3, 7, 8, or something altogether "new," *Id*. at 5-6, 8;  *see*, *e.g*., *Id*. at 8 ("Again, plaintiffs failed to raise these arguments in prior briefing. At the same time, plaintiffs raise these arguments here simply as a means of restating their other arguments that they have previously made, and that this Court has properly

rejected").[6]  In fact, what the Plaintiffs have done here is to isolate their central constitutional challenge in order to make sure that it does not get lost in the host of other issues raised by the challenged statutes and administrative regulations and in order to give this Court an opportunity to address directly what will be the thrust of the Plaintiffs' argument on appeal – regardless of the ultimate outcome in this Court.

It is unclear, except for the very short term, what the Government hopes to accomplish by its waiver argument.  If it were to succeed in avoiding the issue here, it will face it on appeal; and even if it were to succeed in avoiding it there, the Government will eventually have to deal with it in the next unavoidable challenge to these federal statutes.  Since neither the Government nor this Court can banish a constitutional argument not yet squarely decided, even the Government's own longer term interest would seem to favor adjudication here.  This case has attracted the attention of many *amici*, and this Court has already immersed itself in the surrounding constitutional analysis.  Whichever side is ultimately disappointed here is likely to take the issue up on appeal.  The Plaintiffs thus most respectfully submit that it is particularly appropriate that this Court weigh in on the essence of the Plaintiffs' fundamental constitutional challenge.  The procedural precedents which the Government cites, plainly leave this Court free to do so.

In the first place, the Plaintiffs *have* – as a matter of fact – presented the instant argument at every stage of this litigation.  By any measure, of course, this litigation is at an early stage: the Government has moved to dismiss the complaint.  But the complaint – the only thing which

---

[6] Whatever its precise position concerning the arguments previously advanced here, the Government makes no suggestion that the instant arguments were passed upon by the United States District Court in the Colorado litigation in which Plaintiffs Free Speech Coalition and Conners previously participated.  It makes no effort, beyond the hope that this Court will ignore the present argument entirely – a matter addressed *infra* – to defend this Court's dismissal of FSC and Conners under Rule 12(b)(1).

has yet been at issue – plainly asserts the instant argument. Paragraphs 60 (A) and (B) expressly state:

> A. Title 18 U.S.C. §§ 2257, 2257A and their companion regulations, 28 C.F.R. 75, et seq. cannot survive intermediate scrutiny because they are not, either individually or collectively, narrowly tailored to serve an important governmental interest, because they burden more speech than necessary to serve any such interest, and because they leave no alternate avenues that are not substantially and impermissibly burdened for the expression at issue here;
>
> B. Title 18 U.S.C. § 2257, 18 U.S.C. § 2257A, and their companion regulations, 28 C.F.R. Part 75, are unconstitutionally overinclusive because, in an effort to combat child pornography, they seriously and deliberately burden a vast amount of expression which is not that and which is thus constitutionally protected. In addition, the statutes and regulations, expressly or implicitly, shift the burden of proving constitutional protection *vel non* to the speaker, instead of leaving it on the party contesting such protection, which is where the First Amendment places it.

Thus, at the very outset of the proceedings, the Plaintiffs identified and articulated the precise argument that they now bring to this Court's attention.

The parties also briefed the Plaintiffs' Motion for Preliminary Injunction, although this Court consolidated consideration of that motion with the ultimate merits. There too, the Plaintiffs presented the argument they isolate here:

> Ironically, this particular suffocating effect of the statute [that being, the prohibition of publishing expression for which the publisher is unable to obtain photo identification] arose from Congress's attempt to salvage the original version of the law after the D.C. District Court determined that it created an unconstitutional criminal presumption. As explained above, in the original version of 18 U.S.C. § 2257, failure to comply with its record keeping obligations gave rise to a presumption in a criminal prosecution involving that expression that the person depicted in it was a minor. The defendant could rebut that presumption, however, by showing that the person depicted was, in fact, an adult.
>
> In response to the D.C. District Court's determination, Congress got rid of the presumption and instead simply made it an outright crime for anyone to create expression depicting sexually explicit conduct without securing and maintaining age verification records for the persons depicted in that expression. In doing so, Congress eliminated the presumption with which the First Amendment shelters all

8

> expression – namely, that it is constitutionally protected, *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) – and saddled the creators of such expression with the burden of proving that their expression is constitutionally protected, before publishing it, by requiring them to obtain and keep records proving the protected status of that expression.
>
> The statutes, therefore, effect a far more onerous burden on the exercise of First Amendment rights than the original version of 18 U.S.C. § 2257 did. They unconstitutionally dissolve the presumption of protection afforded by the First Amendment, shift the burden to the creators of expression to demonstrate that it is constitutionally protected by acquiring and maintaining proof of age as a precondition of publishing their expression and impose a prior restraint on them if they cannot meet that burden.

Pl. Mem. in Support of Mtn for Prelim. Inj. [Doc. 3] at 40-41. *See also*, *Id.* at 6 ("Congress, in 1990, amended 18 U.S.C. § 2257 to effectively shift the burden of keeping age verification records on all producers of sexually explicit expression – not just those producers whose materials depicted performers who might be confused as minors and therefore might be required to rebut the presumption created by the statute that the models were minors in a prosecution for child pornography offenses."); *Id.* at 24 (discussing Judge Moore's dissent in *Connection Distributing v. Holder,* 557 F.3d 321, 363 (6th Cir. 2009) (en banc)); *Id.* at 35-36 (discussing *Simon & Schuster v. Members of N.Y. Crime Victims Bd.*, 502 U.S. 105 (1991)).

Moreover, in responding to the Government's Motion to Dismiss, Plaintiffs identified the constitutional deficiencies with the Government's conflation of protected sexually explicit expression depicting adults with actual child pornography:

> Rather than justifying the the statutes' demands as a regulation of child pornography as unprotected expression that incidentally implicates protected expression depicting adults, [the Government] argues that the statutes' regulation is focused on the "spectrum of speech" which, if it depicted children, would be unprotected expression. It writes:
>
>> Here, the spectrum of speech that is affected by the age verification and recordkeeping requirements, as set forth in the statutory definitions, is precisely the same spectrum of speech that would constitute child pornography, which is not protected speech, ***if the performers in visual depictions in question were children*** . . ..

9

> The requirements therefore cannot be said to have an overbroad sweep because, in fact, there is a perfect fit between the requirement's sweep and the goal of insuring that performers in visual depictions of sexually explicit conduct are not children.

*Defendant's Memorandum*, p. 33. (Emphasis added).

Its argument rests on the premise that if an adult depicted in constitutionally protected sexually explicit expression were actually a child, the expression would be unprotected child pornography. From this premise – that there is no constitutional impediment to regulating child pornography – the government concludes that it is perfectly reasonable to burden constitutionally protected sexually oriented expression that is not child pornography.

That same reasoning could justify regulating almost any expression, without limitation. If a newspaper article contained deliberately false, damaging statements, it would be unprotected libel; therefore, it is perfectly reasonable, under the government's "spectrum of speech" theory, to impose restrictions on all newspaper articles because if their accurate statements were replaced by damaging falsehoods, they would not be protected by the First Amendment. If a speech by a political activist included language that immediately and intentionally incited her audience to riot, then it would be unprotected speech; therefore, it is perfectly reasonable to impose restrictions on all speech by political activists because they are part of "the spectrum of speech" that include unprotected incitement to riot. The list could go on.

The Supreme Court rejected similarly misguided reasoning several years ago in *Free Speech Coalition* – finding that the provisions of the child pornography statutes criminalizing virtual depictions of child pornography were unconstitutionally overbroad in suppressing protected expression that the government had argued "resembled" unprotected speech. The Court wrote:

> The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse. "[T]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . .." *Broadrick v. Oklahoma*, 413 U.S., at 612, 93 S.Ct. 2908. The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.

535 U.S. at 255. The same conclusion obtains here with even greater force. The expression at issue here involving adult images bears no resemblance to child pornography in the first place.

10

> By attempting to obscure the boundaries between protected and unprotected expression and consequently lumping them together, the government tries to side step the inescapable conclusion that the statutes intrude far into the territory of protected expression in imposing their burdens on speech.

Pl. Mem. in Opposition to Mtn to Dismiss [Doc. 25] at 25-26.

And finally, in oral argument to this Court, Plaintiffs' counsel clearly and emphatically reiterated the argument set forth in the Complaint and Plaintiffs' briefing. In response to this Court's question about whether, in the context of sexually explicit depictions including minors, there was a "governmental interest in requiring" producers of sexually explicit expression "to keep records of the age of anybody who is involved," Plaintiffs' counsel explained:

> The answer is, that's precisely my point, Your Honor. The . . . one interest the government has is in applying this statute to child pornography. But the problem is, the reason it's overinclusive, the reason it's overbroad, the reason it isn't narrowly tailored, is because it applies to vast quantities of protected material involving adults which is not child pornography, and ***the government is shifting the burden*** to these innocent Americans to prove that their material is protected when it's the government who should bear the burden of proving that it's ***un***protected.

Tr. Oral Arg., March 12, 2010 [Doc. 46] at 110-11 (emphasis added).

Thus, the issue which the Plaintiffs isolate here for the Court's consideration in evaluating whether their Complaint states a claim *was* expressly set forth in the Complaint, *was* advanced by the Plaintiffs in briefing, and *was* presented in oral argument to this Court. It is, therefore, properly before the Court for review under Rule 59.

The Government cannot have been surprised that the Plaintiffs complain that the challenged statutes burden constitutionally protected expression. The Plaintiffs have made this claim in connection with an overbreadth argument and others as well. It cannot pretend to any surprise that the Plaintiffs complain that, under some circumstances, the challenged statutes *prohibit* the dissemination of constitutionally protected expression. They have already advanced

that claim in connection with what they have previously characterized as a prior restraint challenge. While the Government takes some pause at talk of "supersets" and "subsets," the use of set concepts in narrow tailoring analysis is hardly new to constitutional law, as noted *supra*. In the final analysis, the Government can only complain that the Plaintiffs have previously raised the instant issue in close connection with First Amendment analyses which they now omit for the sake of clarity. None of the Rule 59 cases which the Government cites involves such a situation. The case on which it principally relies, for instance, involved a jury verdict and an express waiver arising from a request for a jury instruction which was inconsistent with the argument later advanced on a Rule 59 motion. *McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 667 (2009)(front pay vs. reinstatement in employment discrimination context).

While the Government's cases do articulate the governing standard, and while the Government is correct in recognizing that the instant motion seeks to correct a clear error of law, it cites no case addressing the real question presented under Rule 59 here: when will a previously made argument allow for a somewhat different subsequent presentation, articulation, elaboration, or refinement? On this question, the law is clear. As recently as this year, the Supreme Court recognized that "once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Citizens United v. Federal Election Commission*, 130 S.Ct. 876, 893 (2010)(internal quotation marks and indication of slight alteration of quote by Court omitted).[7] While it is

---

[7] There the question was whether a facial First Amendment challenge articulated in a count which the challenger had agreed to dismiss nevertheless survived on review of a decision on an as-applied challenge. Although that context involved different levels of adjudication, so will this case. So unless the Government can establish that the Plaintiffs have waived the instant argument for all time, its objection amounts to nothing more than a refusal to allow this Court to consider its final judgment in light of an argument which might prove dispositive on appeal.

certainly not the case that one constitutional argument will lay a basis for *all* others, it is clear that closely related constitutional arguments may be advanced in support of claims previously asserted under a slightly different analysis or under a distinct rubric. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992), cited in *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2618 (2008), upon which the Government relies here, is illustrative. The challenger had asserted a physical taking claim in attacking a rent control ordinance and later sought to assert a substantive due process claim and an administrative takings claim as well. The earlier claim did not support the due process challenge, *Yee*, 503 U.S. at 533, but "Petitioners' arguments that the ordinance constitutes a taking in two different ways, by physical occupation and by regulation, are not separate *claims.* They are, rather, separate *arguments* in support of a single claim – that the ordinance effects an unconstitutional taking. Having raised a taking claim in the state courts, therefore, petitioners could have formulated any argument they liked in support of that claim here." *Id.* at 534-35 (emphasis in original). Here, the difference between the instant argument and some of those which the Plaintiffs previously advanced in connection with what they characterized as overbreadth or prior restraint challenges is less than that between a physical takings and an administrative takings claim. Given the nuances of First Amendment law – with distinctions between overinclusiveness and overbreadth, for instance – the rule could hardly be otherwise, especially at this early stage in the litigation and where, as here, the complaint (and not even a count *dismissed* on stipulation, as in *Citizens United*) plainly asserts the instant argument. The Plaintiffs have always asserted that the challenged statutes restrict too much constitutionally protected expression and burden it too deeply. They remain focused here upon the same expression and upon the same burdens. The Government has no complaint if this Court, in advance of appellate review, passes upon all of the Plaintiffs' arguments on that score.

13

## CONCLUSION

For all of the foregoing reasons, this Court should reconsider its recent rulings, and it should now deny the Government's Motion to Dismiss the Complaint Under Rule 12(b)(1) and (6), at least insofar as the Complaint presents the challenge asserted *supra*. This Court should further set this case down for a prompt disposition of the few relevant factual issues unless the parties can eliminate them by stipulation.

Respectfully submitted,

Date: September 14, 2010         /s/ J. Michael Murray
                                 J. MICHAEL MURRAY (0019626)
                                 jmmurray@bgmdlaw.com
                                 LORRAINE R. BAUMGARDNER (0019642)
                                 lbaumgardner@bgmdlaw.com
                                 BERKMAN, GORDON, MURRAY & DeVAN
                                  55 Public Square, Suite 2200
                                  Cleveland, Ohio  44113-1949
                                 (216) 781-5245 / (216) 781-8207 (Facsimile)

                                 KEVIN E. RAPHAEL (72673)
                                 KER@Pietragallo.com
                                 J. PETER SHINDEL, JR. (201554)
                                 JPS@Pietragallo.com
                                 PIETRAGALLO GORDON ALFANO BOSICK
                                  & RASPANTI, LLP
                                 1818 Market Street, Suite 3402
                                 Philadelphia, Pennsylvania 19103
                                 (215) 320-6200 / (215) 981-0082 (Facsimile)

                                  Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES
Three First National Plaza
70 West Madison Street, Suite 400
Chicago, Illinois 60602
(312) 558-6427

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2010, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                    /s/ J. Michael Murray
                    J. MICHAEL MURRAY (0019626)
                    LORRAINE R. BAUMGARDNER (0019642)
                    BERKMAN, GORDON, MURRAY & DeVAN

                    KEVIN E. RAPHAEL (72673)
                    J. PETER SHINDEL, JR. (201554)
                    PIETRAGALLO GORDON ALFANO BOSICK
                     & RASPANTI, LLP

                    Attorneys for Plaintiffs

Of Counsel:
REED LEE (06189908)
J. D. OBENBERGER AND ASSOCIATES