IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC., et al. | : | CIVIL ACTION |
| v. | : | |
| HONORABLE ERIC H. HOLDER, JR. | : | NO. 09-4607 |

### ORDER DENYING PLAINTIFFS' POST-JUDGMENT MOTION

Plaintiffs' Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) (Doc. 71) will be denied. On October 7, 2009, Plaintiffs brought the instant suit, raising multiple challenges to the constitutionality of 28 U.S.C. §§ 2257 and 2257A and their implementing regulations. (Doc. 1.) On July 27, 2010, after oral argument and multiple rounds of briefing, the Court issued a Memorandum and Order granting Defendant's Motion to Dismiss Plaintiffs' claims. Free Speech Coal. v. Holder, Civ. A. No. 09-4607, 2010 WL 2982985 (E.D. Pa. July 27, 2010). On August 24, 2010, Plaintiffs filed the present Motion; Defendant filed a Memorandum in Opposition to this Motion on September 7, 2010 (Doc. 72).

Plaintiffs' Motion focuses on this Court's analysis and disposition of certain of their First Amendment challenges to §§ 2257 and 2257A. In particular, Plaintiffs challenge the Court's determination that the statutes satisfy intermediate scrutiny. In summary, the Court found that, as applied to Plaintiffs: the government had a significant interest in preventing the sexual exploitation of children that occurs when such children are used in the production of depictions of actual and simulated sexually explicit conduct; the statutes advance this significant interest in a narrowly tailored fashion; and the statutes leave open adequate channels of communication. See Free Speech Coal., 2010 WL 2982985, at *29–36. The Court also determined that the

1

statutes were facially constitutional under the First Amendment.  See id. at *36–41.

Plaintiffs supported their Motion with a Reply to Response to Motion (Doc. No. 73).  Plaintiffs insist that although the government may have a compelling interest in suppressing child pornography, the challenged statutes are not narrowly tailored to that interest because they substantially burden so much expression, including many expressions which are not child pornography, and thus remain constitutionally protected.

As the Third Circuit has made clear, "[a] proper motion to alter or amend judgment must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."  N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and alteration marks omitted); see Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.").  "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008) (internal quotation marks omitted); see, e.g., McNeal v. Maritank Phila., Inc., Civ. A. No. 97-0890, 1999 WL 80268, at *4 (E.D. Pa. Jan. 29, 1999) ("A motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments that could have been made in support of the original motion.").

In their Motion, Plaintiffs do not cite this legal standard controlling motions under Rule 59(e), and do not specify any of the "three major grounds" as providing the basis for their request

2

to alter or amend the judgment.  See N. River Ins. Co., 52 F.3d at 1218.  Plaintiffs do not point to any intervening change in law or newly available evidence.  Plaintiffs' Motion does not identify any clear error of law or manifest injustice.  Plaintiffs largely seek "to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment."  Exxon Shipping Co., 128 S. Ct. at 2617 n.5.

First, Plaintiffs contend that the Court's intermediate-scrutiny analysis "overlook[s] a subtle and critical point: that the comprehensive record keeping interest to which the statutes are narrowly tailored is meaningfully different than the Government's significant—indeed compelling—interest in suppressing child pornography." (Doc. 71 at 1.)  According to Plaintiffs, the Court "concluded that the challenged statutes are narrowly tailored to the Government's interest in having all producers establish that their expression is not child pornography," (Doc. 71 at 1); this interest, Plaintiffs maintain, is not the same as the interest the Court found to be significant, and it is improper for the government interest in question to "shift" in this manner between the "significant interest" and "narrow tailoring" inquiries.

Plaintiffs mischaracterize the Court's analysis and conclusion in this regard.  As noted above, the Court identified the prevention of the sexual exploitation of children in the production of sexually explicit material as the significant government interest served by §§ 2257 and 2257A, and undertook the narrow-tailoring inquiry with that interest in mind; Plaintiffs may disagree with the Court's determination that the statutes are narrowly tailored to that interest, but contrary to Plaintiffs' assertion, there was no shift in the nature of government interest in question over the course of the Court's intermediate-scrutiny analysis.

Plaintiffs further offer that "[w]hen properly measured against the Government's

3

remaining compelling interest in suppressing child pornography depicting <u>actual</u> children, the challenged statutes are unconstitutionally overinclusive." (Doc. 71 at 7.)  In support, Plaintiffs point to the alleged difference in "the respective sizes of the class of all expression covered by the challenged statutes . . . and the class of all child pornography," and the burdens these statutes place upon producers of sexually explicit material that is not, in fact, child pornography.  (Doc. 71 at 7, 18–19.)  This, however, is simply a restatement of Plaintiffs' prior arguments regarding the scope of the statutes' coverage, which the Court has duly considered and rejected.  See <u>Free Speech Coal.</u>, 2010 WL 2982985, at *30, 34–35, 39–40  (addressing why the reach of the statutes is necessary to their effectiveness in serving the government's interest).

According to Plaintiffs, "[t]he force of the . . . fundamental constitutional argument [in their Motion] is that no failure to comply with a comprehensive age-check requirement converts constitutionally protected expression into unprotected expression and that, therefore, no statute may seriously criminalize the dissemination, republication, or circulation of insufficiently documented expression which is not, in fact, child pornography." (Doc. 71 at 13.)  Plaintiffs stress that the statutes "reverse th[e] presumption [that expression is constitutionally protected] by criminalizing expression simply because it is not provably protected." (Doc. 71 at 12.)  The Court, however, does not understand the statutes to have any such effect.  The statutes impose criminal penalties for the failure of certain producers of sexually explicit material to abide by the statutes' age-verification requirements in the production of that material; the statutes do not, as the Court has explained, criminalize any form of expression, nor do they cause, or presume, any protected expression to be unprotected.  See <u>Free Speech Coal.</u>, 2010 WL 2982985, at *40 (noting that "§§ 2257 and 2257A do not ban any form of speech based upon the harms that may

flow from its content, nor do they reduce protected expression to unprotected expression; rather, they impose content-neutral regulations on the production of certain expression in order to prevent the sexual exploitation of children" (citation omitted)).[1]

Plaintiffs argue that "if it were not motivated by an effort to reverse a critical First Amendment presumption, it would be easy for Congress to promulgate a comprehensive age-check requirement which avoids the unconstitutional results here." (Doc. 71 at 14.) Specifically, Plaintiffs analogize to the immigration-law context and suggest that

> a limited prophylactic rule requiring the person most responsible for the planned, commercial creation of an image of sexually explicit conduct to examine an identification document of each and every performer—no matter how old or how well known to the

---

[1] In the same vein, plaintiffs assert that the statutes "make it a separate crime to be <u>unable to rebut</u> [the] impermissible presumption" that performers appearing in depictions covered by the statutes are minors. (Doc. 71 at 11.) This "impermissible presumption" refers to a provision contained in the original version of § 2257, which the provided that, in a prosecution for other child-pornography offenses, failure to comply with the statute's requirements would result in a "rebuttable presumption" that certain performers appearing in the depictions in question were minors. In 1989, the United States District Court for the District of Columbia determined the statute's imposition of this presumption was unconstitutional, <u>Am. Library Ass'n v. Thornburgh</u>, 713 F. Supp. 2d 469, 480–82 (D.D.C. 1989), prompting Congress to amend § 2257 in 1990 to remove the presumption and introduce direct criminal penalties for noncompliance with the statute's age-verification requirements. According to plaintiffs,"while the 1990 amendment [and its imposition of direct criminal penalties for noncompliance] may have buried the presumption problem for a time, it never really eliminated it." (Doc. 71 at 18.)
 Plaintiffs have not previously advanced this argument that the statutes' imposition of criminal penalties for noncompliance has somehow preserved the constitutional infirmities of the "rebuttable presumption" set forth by in an earlier version of § 2257; as noted above, a Rule 59(e) motion is not the proper vehicle for developing new arguments such as this that could have been raised prior to judgment. Furthermore, the Court finds plaintiffs' characterization of the statutes' criminal penalties in this regard to be imprecise. The statutes penalize noncompliance with their record keeping, labeling, and inspection requirements; while a producer's compliance with these age-verification requirements would presumably aid that producer in rebutting the sort of presumption § 2257 previously contained, the statutes do not create any particular presumption as to the age of the performers appearing in a given depiction, nor do they criminalize the inability to rebut such a presumption.

responsible person—and, further, to make and keep a record of that examination is constitutionally permissible so long as it merely imposes administrative sanctions only on the responsible individual.

(Doc. 71 at 1.)

Plaintiffs did not advance this "limited prophylactic rule," or the arguments that seemingly inform it, in their prior submissions regarding the constitutionality of §§ 2257 and 2257A. For instance, Plaintiffs appear to suggest that the requirements imposed by §§ 2257 and 2257A are unconstitutional due to their application to "secondary producers" of sexually explicit material, and due to the fact that they impose a criminal rather than civil penalty; Plaintiffs, however, have not previously raised or developed these particular legal theories regarding the constitutionality of the statutes, and may not now attempt to do so post judgment through Rule 59(e). See, e.g., Exxon Shipping Co., 128 S. Ct. at 2617 n.5; McNeal, 1999 WL 80268, at *4. Furthermore, as the Court has stated, "in enacting a content-neutral proof-of-age requirement, Congress need not employ the least speech-restrictive means of advancing the Government's interests but must show only that the government's interest would be achieved less effectively absent the regulation and that the measure does not burden substantially more speech than is necessary." Free Speech Coal., 2010 WL 2982985, at *35 (internal quotation marks and alteration marks omitted). The Court has found that the statutes—including their scope, their penalties, and their application to both primary and secondary producers—satisfy this standard; the fact that Plaintiffs can now conjure a potentially less restrictive alternative to the statutes does not undermine this determination.

Lastly, Plaintiffs assert that the arguments raised in their Motion have not been previously addressed by this Court or by other courts evaluating § 2257, and thus they do not "seek[] to

relitigate issues which they have already presented."[2] (Doc. 17 at 16.) As the discussion above indicates, however, the Court disagrees; many of the arguments and issues raised by Plaintiffs in the present Motion are restatements or recharacterizations of contentions previously rejected in the Court's Memorandum granting Defendant's Motion to Dismiss.

Plaintiffs' reply brief takes a different tack. Plaintiffs assert that the government has a "basic interest" in protecting children from sexual exploitation, but fails to demonstrate how the statute is narrowly tailored directly with respect to this interest. In contrast, Plaintiffs refer to another interest, which they call the "derived interest," i.e., to insure that the individuals depicted in the Plaintiffs' publications are adults and not children. Plaintiffs concede the statutes are narrowly tailored to address this interest. Plaintiffs assert the Supreme Court cases require that Congress must recognize not only a "sensible relationship" between the basic interest and the derived interest and a narrow tailoring with respect to the derived interest, but also "the derivation from the basic interest to the derived interest must not only be sensible, it must also be permissible." (Reply Br., p. 3). Plaintiffs cite Simon & Schuster v. Member of the New York Crime Victims Board, 502 U.S. 105, 118-121 (1991).

The Simon & Schuster decision had nothing to do with child pornography or record keeping. Although Plaintiffs have cited it previously, the Court has not found it applicable. The Court's original Memorandum went to great lengths to show that the prevention of child

---

[2] As such, plaintiffs "respectfully disagree with this Court's conclusion that collateral estoppel precludes consideration of certain of the constitutional challenges of [plaintiffs] the Free Speech Coalition and [David] Conners, and they respectfully submit that this Court has erred in this regard." (Doc. 71 at 16.) As with the other claims raised in their Motion, however, Plaintiffs fail to demonstrate that their disagreement with this aspect of the Court's analysis warrants an alteration or amendment under Rule 59(e). Plaintiffs cite no Supreme Court or Third Circuit precedent to which the Court overlooked or incorrectly interpreted.

pornography has a special place in the constitutional cosmos. Simon & Schuster held that New York's "Son of Sam" law, which imposed a higher penalty on a convicted criminal from profiting from his writings describing his crime, than from other sources, was unconstitutional. Specifically, in the page references cited by Plaintiffs, the Court held that although a state has a compelling interest in precluding convicted criminals from profiting from the fruits of their crimes, the Son of Sam law was not narrowly tailored.

Simon & Schuster is not controlling. These statutes are narrowly tailored, and are solely about keeping records. The constant theme of Plaintiffs' contentions in this case is that keeping records is so burdensome that it amounts to suppression of free speech, i.e., the right of Plaintiffs to publish their sexually oriented material without the allegedly over-burdensome obligation to keep records of the age of their performers, as the statute requires. Plainly, record keeping requirements have long been held "permissible" to satisfy a perceived governmental interest. Despite Plaintiffs attempting to disguise the limited record keeping purpose of this statute, and arguing that it reaches over into content, Plaintiffs have raised nothing new.

As for the new arguments raised by plaintiffs, all "could have been raised prior to the entry of judgment." Exxon Shipping Co., 128 S. Ct. at 2617 n.5. New or old, none of Plaintiffs' arguments provides a viable basis for alteration or amendment of the Court's judgment under Rule 59(e): they do not identify any "intervening change in controlling law," do not point to "the availability of new evidence not available previously," and do not demonstrate "the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co., 52 F. 3d at 1218. Thus, while Plaintiffs may disagree with the Court's determinations that the statutes satisfy intermediate scrutiny and do not violate the First Amendment, plaintiffs have failed to establish

that such disagreement warrants the relief they presently seek. Accordingly, their Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) is DENIED.

BY THE COURT:

s/Michael M. Baylson

Date: 9/17/10

Michael M. Baylson, U.S.D.J.

O:\CIVIL 09-10\09-4607 Free Speech v. Holder\Free Speech - Mot Alter Judgment.wpd