IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| | ) |
| Plaintiffs, | ) Judge Michael M. Baylson |
| | ) |
| v. | ) |
| | ) DEFENDANT'S MOTION TO |
| THE HONORABLE ERIC H. HOLDER, JR., | ) DISMISS IN PART |
| Attorney General, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendant hereby respectfully

moves this Court to dismiss Count Four of plaintiff's Amended Complaint in the above-

captioned action in its entirety, together with the related part of Count Six, for lack of subject

matter jurisdiction, for the reasons set forth in the accompanying memorandum in support of this

motion

August 20, 2012

Respectfully submitted,
STUART F. DELERY
Acting Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| | ) |
| Plaintiffs, | ) Judge Michael M. Baylson |
| | ) |
| v. | ) |
| | ) MEMORANDUM IN SUPPORT |
| THE HONORABLE ERIC H. HOLDER, JR., | ) OF DEFENDANT'S MOTION TO |
| Attorney General, | ) DISMISS IN PART |
| | ) |
| Defendant. | ) |
| | ) |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY, AS RELEVANT TO THIS MOTION . . . . . . . . . . . . . . . . . . . . . . 2

RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      PLAINTIFFS LACK STANDING TO PURSUE THEIR FOURTH AMENDMENT
        CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Because There Is No Prospect of Inspections Taking Place in the Immediate
                Future, Plaintiffs Cannot Establish an Injury-in-Fact Sufficient to Warrant
                Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      To the Extent FSC Alleges that Past Inspections of Its Members Violated the
                Fourth Amendment, It Lacks Representational Standing Because the
                Participation of Those Members Would Be Required to Challenge Those
                Past Inspections, and Injunctive Relief Would Not Redress Past Injuries . . . . . . 10

II.     GIVEN THE ABSENCE OF AN ONGOING INSPECTION PROGRAM AND THE
        UNCERTAINTY OF FUTURE INSPECTIONS, PLAINTIFFS' FOURTH
        AMENDMENT CLAIM IS UNRIPE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **TABLE OF AUTHORITIES**

## **CASES**

*Abbott Labs. v. Gardner,* 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Am. Postal Workers Union v. Frank*, 968 F.2d 1373 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . 10

*Birdman v. Office of the Governor*, 677 F.3d 167 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 8

*Connection Distrib. Co. v. Keisler*, 505 F.3d 545 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Connection Distrib. Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009) (en banc) . . . . . . . . . . . . . . . . 6

*Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127 (5th Cir. 2009) . . . 12

*Davis v. FEC,* 554 U.S. 724 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. Thornburgh*, 903 F.2d 212 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Free Speech Coal., Inc. v. Holder* ("*Free Speech Coal. I* ),
      729 F. Supp. 2d 691 (E.D. Pa. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Free Speech Coal, Inc. v. Holder* ("*Free Speech Coal. II* ),
      677 F.3d 519 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 13, 16

*Friends for Am. Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575 (5th Cir. 2002). 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000). . . . . . . . . 8

*Georgia v. Randolph*, 547 U.S. 103 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . 10

*Marcavage v. Nat'l Park Serv.*, 666 F.3d 856 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mayfield v. United States*, No. 07-35865, 2010 WL 1052341 (9th Cir. Mar. 24, 2010) . . . . . . 10

*McBride v. Cahoone*, 820 F. Supp. 2d 623 (E.D. Pa. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Medelius Rodriguez v. U.S. Citizenship & Immigration Serv.*,
    605 F. Supp. 2d 142 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182 (3d Cir. 2006) . . . . . . . . . . . . . . 14

*Pa. Bd. of Probation & Parole v. Scott,* 524 U.S. 357 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pa. Prison Soc'y v. Cortes*, 508 F.3d 156 (3d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.,*
    280 F.3d 278 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*Roe v. Operation Rescue,* 919 F.2d 857 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663 (E.D. Pa. 2005) . . . . . . . . . . . 7

*Sibron v. New York*, 392 U.S. 40 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . 7

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 7

*Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . 7

*Thompson v. Horsham Tp.*, 576 F. Supp. 2d 681 (E.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . 15

*Toll Bros., Inc. v. Tp. of Readington*, 555 F.3d 131 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. McArthur v. Rundle*, 402 F.2d 701 (3d Cir. 1968) . . . . . . . . . . . . . . . . . . 14

*United States v. Jones*, 132 S. Ct. 945 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 16

*United States v. Price*, 558 F.3d 270 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **STATUTES**

Administrative Procedure Act, 5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"),
    Pub. L. No. 109-248, § 501(1)(B), 120 Stat. 587 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 6

## **REGULATIONS**

28 C.F.R. Part 75 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

28 C.F.R. § 75.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 C.F.R. § 75.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **ADMINISTRATIVE MATERIALS**

Department of Justice, Final Rule, 70 Fed. Reg. 29607 (May 24, 2005) . . . . . . . . . . . . . . . . . . . 6

Department of Justice, Final Rule, 73 Fed. Reg. 77432 (Dec. 18, 2008) . . . . . . . . . . . . . . . . . . . 6

## <u>INTRODUCTION</u>

The Third Circuit has remanded certain claims to this Court for further factual development. In one such claim, plaintiffs raise a Fourth Amendment challenge to the inspections authorized by 18 U.S.C. §§ 2257 and 2257A, of age verification records that producers of sexually-explicit videos and photographs are required to maintain. In prior proceedings, defendant argued that plaintiffs' Fourth Amendment claim was unripe and that the organizational plaintiff Free Speech Coalition ("FSC") lacked standing to challenge inspections of its members. However, in raising those defenses, defendant limited his arguments to the face of plaintiffs' pleadings and otherwise addressed only the facial validity of the inspection scheme as set forth in Department of Justice ("DOJ") regulations. Now, given the Third Circuit's holding that plaintiffs' Fourth Amendment challenge requires a fact-specific inquiry into the specific details of particular inspections, defendant is compelled to bring to this Court's attention certain facts that conclusively demonstrate that the Court lacks subject matter jurisdiction over plaintiffs' Fourth Amendment claim.

The most pertinent fact in this regard, which requires no discovery to establish, is that the FBI is currently not engaged in conducting inspections pursuant to 18 U.S.C. §§ 2257 and 2257A and in fact ceased its previous inspection program, conducted pursuant to a previous version of § 2257, over five years ago, before plaintiffs in this case filed suit. While the initial catalyst for this cessation was a 2007 ruling by a panel of the Sixth Circuit holding § 2257 invalid, inspections did not resume even after the Sixth Circuit sitting en banc reversed its panel decision and upheld the statute's validity. Rather, the team that had been assembled to conduct inspections was disbanded, and since that time no funding has been allocated to assemble a new team or initiate

inspections under the current statutory framework. Given the passage of time and changes in circumstance, both as a factual and a legal matter, any inspections of unidentified FSC members that might have occurred over five years ago cannot provide the "concrete factual context   that the Third Circuit held was necessary for evaluating a Fourth Amendment challenge today. Indeed, since plaintiffs seek only injunctive relief, they cannot establish a real, immediate, and direct threat of injury given the uncertainty of future inspections, and an injunction would not redress any claims based on assertions of injury in the past. Moreover, given the Third Circuit's emphasis on factual detail, the participation of the FSC members that were allegedly inspected would be required, precluding FSC itself from pursuing a claim on its members' behalf. Plaintiffs therefore lack standing to assert their Fourth Amendment claim, and any such claim is unripe. Accordingly, plaintiffs' Fourth Amendment claim should be dismissed for lack of subject matter jurisdiction.

## PROCEDURAL HISTORY, AS RELEVANT TO THIS MOTION

This case involves a challenge to 18 U.S.C. §§ 2257 and 2257A and their implementing regulations, which impose age verification and recordkeeping requirements on producers of films and photographs that, if they involved child performers, would be child pornography. Plaintiffs filed their original Complaint on October 7, 2009. *See* Compl. (ECF No. 1). Among other things, plaintiffs raised a Fourth Amendment claim, contending that the records inspection scheme set forth in the statutes and regulations authorized unconstitutional warrantless searches and seizures. *See* Compl. ¶ 73. Plaintiffs' original Complaint did not contend that any plaintiff's records had ever been inspected under this scheme. In responding to plaintiffs' Fourth Amendment challenge, defendant argued that because there was no allegation that any inspection

- 2 -

of plaintiffs' records had occurred, plaintiffs' claim should be dismissed as unripe based solely on the pleadings. *See* ECF No. 17, at 44. Defendant also argued that, to the extent the DOJ regulations implementing the 2257/2257A inspection scheme were considered on their face, the scheme should be upheld as reasonable. *See id.* at 45-48. Plaintiffs responded to defendant's ripeness argument by seeking to amend their Complaint to assert that certain unidentified members of one plaintiff, FSC, previously had been subject to inspections, and that third parties who were not FSC members had also been inspected. *See* ECF No. 49. Defendant, in turn, argued that FSC lacked representational standing to assert Fourth Amendment claims on behalf of its members or its nonmembers. *See* ECF No. 53 at 3-10.

In its memorandum opinion addressing the parties' motions, this Court recognized that "the amended complaint  proposed by plaintiffs "would likely still retain the same questions of ripeness and standing that exist in the initial Complaint.  *Free Speech Coal., Inc. v. Holder* ("*Free Speech Coal. I* ), 729 F. Supp. 2d 691, 745 (E.D. Pa. 2010). However, the Court did not rest its decision granting defendant's motion to dismiss plaintiffs' Fourth Amendment claim, and denying plaintiffs' motion for leave to amend, on ripeness or standing grounds. Instead, it concluded that plaintiffs had no reasonable expectation of privacy in the records that they were required to maintain pursuant to 18 U.S.C. §§ 2257 and 2257A. *See Free Speech Coal. I*, 729 F. Supp. 2d at 751. In the alternative, the Court held that warrantless inspections pursuant to the framework set forth by the statutes and regulations would qualify as reasonable under the administrative search exception to the warrant requirement. *Id.* at 757.

Considering plaintiffs' Fourth Amendment claim on appeal, the Third Circuit first noted that, after this Court issued its order in this case, the Supreme Court had decided *United States v.*

*Jones*, 132 S. Ct. 945 (2012), holding that there is a "search" within the meaning of the Fourth

Amendment when the government has committed "common-law trespass. *See Free Speech*

*Coal, Inc. v. Holder* ("*Free Speech Coal. II*"), 677 F.3d 519, 543 (3d Cir. 2012). The Third

Circuit indicated that a remand would allow this Court to consider whether *Jones* had any impact

on this case. *Id.* at 542. It then reversed the district court's dismissal and denial of leave to amend

because "[c]ourts generally must consider the concrete factual context when determining the

constitutional validity of a warrantless search. *Id.* at 543.[1] In reaching this conclusion, the court

cited *Sibron v. New York*, 392 U.S. 40 (1968), which "declin[ed] to hold whether a particular

statute was facially invalid under the Fourth Amendment because the 'constitutional validity of a

warrantless search is preeminently the sort of question which can only be decided in the concrete

factual context of the individual case.' *Free Speech Coal. II*, 677 F.3d at 543 (quoting *Sibron*,

392 U.S. at 59). While the Third Circuit acknowledged that plaintiffs sought to assert both facial

and as-applied Fourth Amendment claims, *id.* at 542, and it relied on *Sibron*'s refusal to consider

a facial challenge when holding that a "concrete factual context" was required, *id.* at 543, the

Third Circuit did not expressly distinguish between facial and as-applied challenges when

ordering the remand of plaintiffs' Fourth Amendment challenge.

Following remand, the Court granted plaintiffs leave to file their Amended Complaint,

---

[1]In particular, the Third Circuit held that factual development was necessary regarding "which specific members of FSC were searched; when and where the searches of the FSC members and others occurred (i.e., offices or homes); and the conduct of the government during the search (e.g., what specific information the government reviewed and whether the government exceeded its authority under the applicable regulations), *id.* at 543-44, as well as "the frequency and extensiveness of the alleged searches; whether the alleged searches occurred exclusively on commercial premises; and whether the Plaintiffs who were subjected to the alleged searches were engaged in commercial activities within a particular industry, *id.* at 544-45.

and plaintiffs did so on June 29, 2012. *See* Amended Complaint ("Am. Compl.,   ECF No. 84).

Plaintiffs' Amended Complaint includes the allegation that "[s]everal of F[SC]'s members have

been subjected to inspections pursuant to 18 U.S.C. § 2257 and its implementing regulations.

Am. Compl. ¶ 20. The Amended Complaint does not provide names or other identifying

information regarding the FSC members allegedly subjected to inspections.

## RELEVANT FACTUAL BACKGROUND

In prior briefing in this case, defendant's arguments in regard to plaintiffs' Fourth

Amendment claim focused on the jurisdictional defects of plaintiffs' pleadings, and on the

inspection scheme on its face, as set forth in 18 U.S.C. §§ 2257 and 2257A and their

implementing regulations at 28 C.F.R. Part 75. In light of the Third Circuit's decision, however,

it has become important to bring certain facts regarding the inspection program to the Court's

attention because those facts have significant ramifications for the Court's jurisdiction. These

facts demonstrate that only a small number of inspections have ever taken place; that the

inspections that did take place in the past occurred over five years ago, under previous versions

of 18 U.S.C. § 2257 and DOJ regulations, and focused only on a distinct subset of producers;

that the FBI program through which inspections were coordinated is no longer in operation; and

that there is no plan, nor is there funding, to establish a new program that would conduct

inspections under the current statutory and regulatory framework.

As explained in the declaration of FBI Special Agent Alan Nanavaty, attached hereto, the

FBI did conduct a total of 29 inspections, all of which occurred over a fourteen-month period

between July 2006 and October 2007. Declaration of Special Agent Alan S. Nanavaty

("Nanavaty Decl.,   attached hereto) ¶ 8. These inspections thus did not occur under the current

DOJ regulations that were promulgated to implement the statutory amendments set forth in the

Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-

248, § 501(1)(B), 120 Stat. 587 (2006), because those regulations were not issued until

December 18, 2008. *See* DOJ, Final Rule, 73 Fed. Reg. 77432 (Dec. 18, 2008). Rather, the

inspections occurred under a prior version of DOJ regulations that, among other things, did not

include visual depictions of simulated sexually-explicit conduct, or of actual lascivious

exhibition of the genitals or public area, in the scope of materials subject to the age verification

or recordkeeping requirements. *See* DOJ, Final Rule, 70 Fed. Reg. 29607 (May 24, 2005). Those

regulations also did not allow for third-party custodians of producers' records. *See id.*

The inspections that occurred also took place when the FBI inspection team that had been

established was still in the early stages of compiling a database of producers subject to

inspection. Special Agent Nanavaty explains that the list that had been compiled at the time these

inspections took place, and, as a result, the inspections that occurred, focused solely on for-profit

producers that were openly advertising for sale videos or other publications that contained

images portraying actual sexually-explicit conduct. Nanavaty Decl. ¶¶ 6, 8. At the time, the

definition of "actual sexually-explicit conduct" for purposes of 18 U.S.C. § 2257 did not include

lascivious displays of the genitals. *See* Nanavaty Decl. ¶ 5.

The FBI's 2257 inspection program ceased operation in 2007, after the Sixth Circuit

panel decision in *Connection Distrib. Co. v. Keisler*, 505 F.3d 545 (6th Cir. 2007), ruled that 18

U.S.C. § 2257 was invalid on First Amendment grounds. Nanavaty Decl. ¶ 9. That panel decision

was reversed by the Sixth Circuit sitting en banc in February 2009. *See Connection Distrib. Co.*

*v. Holder*, 557 F.3d 321 (6th Cir. 2009) (en banc). However, no new inspection program has

been initiated. Nanavaty Decl. ¶ 10. The team that had been assembled to conduct the inspections

was disbanded, and no funding is currently allocated for the purpose of conducting inspections

pursuant to the current version of the DOJ regulations at 28 C.F.R. Part 75. Nanavaty Decl. ¶¶

10-11. Thus, no inspections have occurred for over five years, nor is there any prospect of such

inspections occurring in the immediate future.

## STANDARD OF REVIEW

Defendant's arguments regarding plaintiffs' standing and the ripeness of plaintiffs' Fourth

Amendment claim are "appropriately brought as a motion to dismiss for lack of subject matter

jurisdiction. *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa.

2005). "'[T]he district court is not limited to the face of the pleadings in deciding such a

motion.' *Id.* (quoting *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 n.7 (3d Cir.

1993)). Where a defendant raises a factual challenge to jurisdiction, "[t]he district court is the

ultimate finder of fact on the jurisdictional question and is thus entitled to draw inferences in

favor of the defendant if it determines that the evidence warrants such inferences. *S.R.P. ex rel.*

*Abunabba v. United States*, 676 F.3d 329, 343 (3d Cir. 2012). When subject matter jurisdiction is

challenged under Rule 12(b)(1), the plaintiff "bear[s] the burden of persuasion. *Symczyk v.*

*Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011) (internal quotation omitted).

## ARGUMENT

I.   **PLAINTIFFS LACK STANDING TO PURSUE THEIR FOURTH AMENDMENT CLAIM**

   A.   **Because There Is No Prospect of Inspections Taking Place in the Immediate Future, Plaintiffs Cannot Establish an Injury-in-Fact Sufficient to Warrant Injunctive Relief**

Plaintiffs seek, through their Fourth Amendment claim, to enjoin any future inspections pursuant to 18 U.S.C. §§ 2257 or 2257A. Because no inspection program is in operation, however, plaintiffs cannot establish the necessary standing to assert such a claim. In order to establish standing, a plaintiff must show that (1) plaintiff has suffered an "injury in fact,  (2) the injury is "fairly traceable  to some conduct of the defendant, and (3) the injury is "redressable because "it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit.  *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009) (internal quotation omitted). A plaintiff "'must demonstrate standing separately for each form of relief sought.'  *Toll Bros., Inc. v. Tp. of Readington*, 555 F.3d 131, 138 n.5 (3d Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

Where injunctive relief is sought, a plaintiff must show a likelihood of *future* injury. *See Roe v. Operation Rescue,* 919 F.2d 857, 864 (3d Cir. 1990). The threat of such a future injury must be "real, immediate, and direct.  *Davis v. FEC,* 554 U.S. 724, 734 (2008). Thus, in *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983), the Court held that the plaintiff failed to establish a threat of "real and immediate  injury that could confer standing, despite his claim that he had previously been seized in violation of the Fourth Amendment, because the prospect that

the same injury would recur in the future was merely speculative. *See id.* at 105. (plaintiff's assertion of past injury "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense,   that would necessarily lead to a repeat of the same injury he alleged had occurred in the past).

Here, plaintiffs assert facial and as-applied Fourth Amendment claims for injunctive relief based on the prospect that they (or their members) will be subject to inspections pursuant to 18 U.S.C. §§ 2257 or 2257A, which they allege will be conducted in an unconstitutional manner. As of October 2007, however, there has not been any mechanism in place for any inspections pursuant to 18 U.S.C. §§ 2257 or 2257A to occur at all, and at present there is no funding allocated for the purpose of conducting inspections. *See* Nanavaty Decl. ¶¶ 9-11.

Moreover, the Third Circuit has emphasized that the inspections at issue in this case cannot be evaluated in the abstract, but that a court must take the concrete factual context of a particular inspection into account. *Free Speech Coal. II*, 677 F.3d at 543. This case therefore presents a situation different from that in *McBride v. Cahoone*, 820 F. Supp. 2d 623 (E.D. Pa. 2011), where the challenge did not involve a Fourth Amendment claim, and the court held that the existence of an "official policy   in connection with a state's ongoing operation of an electronic home monitoring program distinguished the case from *Lyons*. *See id.* at 635. Here, there is no ongoing program at all, much less any official policy that could be said to govern it. Rather, the prospect of future inspections, and the manner in which they might occur, is a matter of pure speculation. Plaintiffs face no real, immediate, or direct threat of being subject to an inspection pursuant to 18 U.S.C. §§ 2257 or 2257A. The injury-in-fact requirement is therefore not satisfied with respect to plaintiffs' Fourth Amendment claim for injunctive relief.

**B.      To the Extent FSC Alleges that Past Inspections of Its Members Violated the Fourth Amendment, It Lacks Representational Standing Because the Participation of Those Members Would Be Required to Challenge Those Past Inspections, and Injunctive Relief Would Not Redress Past Injuries**

While plaintiffs' Amended Complaint asserts that certain unidentified members of FSC have been subject to inspections in the past, those inspections cannot themselves suffice to vest FSC with standing to proceed with a Fourth Amendment claim here. In order for an organization to assert representational standing on behalf of its members, three requirements must be met: (1) the organization's members "must have standing to sue on their own,  (2) "the interests the organization seeks to protect  must be "germane to its purpose,  and (3) "neither the claim asserted nor the relief requested  can "require[] individual participation by its members.  *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 162 n.10 (3d Cir. 2007) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

The first requirement is not satisfied here. An FSC member that had been subject to an inspection in the past could not itself establish standing here because any Fourth Amendment violation that might have occurred in the past could not be redressed by an injunction. Indeed, courts have squarely held that an illegal search or seizure that has occurred in the past cannot be "cured  by future equitable relief. *Pa. Bd. of Probation & Parole v. Scott,* 524 U.S. 357, 362 (1998) (exclusion of evidence does not cure a Fourth Amendment violation); *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1377 (1st Cir. 1992) (union lacked standing to seek to enjoin mandatory drug testing of job applicants because alleged injuries of union members occurred in the past, when they were applicants, and could not be redressed by injunctive relief); *Mayfield v. United States*, No. 07-35865, 2010 WL 1052341, at *6 (9th Cir. Mar. 24, 2010) (no "substantial

likelihood that a declaratory judgment would redress the Fourth Amendment injury that plaintiff alleged even where the government continued to possess items seized from plaintiff); *see also Medelius Rodriguez v. U.S. Citizenship & Immigration Serv.*, 605 F. Supp. 2d 142, 146 (D.D.C. 2009) ("A declaratory judgment that the defendant violated plaintiff's rights would not provide any redress for plaintiff's claimed injuries of the USCIS's past violations of his privacy and due process rights. ).

Again, the situation here is no different from that in *Lyons*, particularly given the fact that the FBI has not conducted any inspections pursuant to 18 U.S.C. § 2257 for over five years and has no immediate plans – or funding – to initiate a new inspection program. Indeed, even if the FBI were to establish such a new program, it is far from clear that the new program would be identical to the one that operated between 2006 and 2007. For one thing, previous inspections were limited to those authorized under the former version of § 2257, and indeed, the scope of those inspections was limited even further, focusing only on for-profit producers that openly advertised their productions for sale. See Nanavaty Decl. ¶ 8. A new inspection program may not adhere to those same contours. For example, potentially, any such program could include producers of material containing images that qualify as either actual or simulated "sexually-explicit conduct under the revised definitions in §§ 2257 and 2257A. *See* 18 U.S.C. §§ 2257(h)(1); 2257A(g); 28 C.F.R. § 75.1(c). The third-party custodian provision has also been added since the time that the prior inspections occurred. *See* 28 C.F.R. § 75.4. Moreover, given the change in the statutory and regulatory framework, together with the fact that the prior inspections occurred over five years ago, the FBI would no doubt go through a process of evaluating any changes in applicable law, and the possibility of different factual contexts, before

making a determination regarding any future inspection procedures. Thus, any FSC member that might have been subject to an inspection in the past cannot claim any likelihood that, in the absence of injunctive relief, it would be subject to a similar inspection in the future, or any inspection at all. A conclusion that a past inspection was unreasonable under the Fourth Amendment would therefore be nothing more than an advisory opinion, and injunctive relief could not redress the injury that the Court would have identified.[2]

The third requirement for representational standing is also lacking. Where "the claim asserted  requires "individual participation  by an organization's members, representational standing is inappropriate. *Pa. Prison Soc'y*, 508 F.3d at 162 n.10. Normally, claims seeking damages have been held to require individual participation. *See Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.,* 280 F.3d 278, 284 (3d Cir. 2002). However, individual participation may also be necessary based on "the nature of the claims asserted.  *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 n.5 (5th Cir. 2009). Thus, the Fifth Circuit has held that claims seeking injunctive relief based on allegations of Free Exercise Clause violations required individual participation in order to establish the element of coercion for each

---

[2]It is appropriate to apply a standing analysis here, rather than mootness, because the defects in the justiciability of plaintiffs' Fourth Amendment claim existed at the time plaintiffs filed their Amended Complaint. Indeed, they also existed at the time plaintiffs filed their original Complaint on October 7, 2009. Thus, this is not a situation where the Court's lack of jurisdiction rests on the government's voluntary cessation of the challenged conduct during the course of litigation. *Cf. Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 862 & n.1 (3d Cir. 2012); *see also Davis v. Thornburgh*, 903 F.2d 212, 222 (3d Cir. 1990) ("this is not a case where [plaintiff's claim is barred as moot. Rather, . . . [plaintiff] has never had standing  ). As explained in the FBI's declaration, the inspection program here ceased operating in 2007, before plaintiffs filed this suit. That fact has simply become determinative at this point due to the Third Circuit's ruling that plaintiffs' Fourth Amendment claim could not be resolved based on the statutory and regulatory texts, and instead required consideration of the concrete factual context of individual inspections.

individual claim. *See id.* at 134. A similar conclusion was reached in regard to claims of tortious

interference. *See Friends for Am. Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575,

577 (5th Cir. 2002). And the Third Circuit, while reasoning that a need for only "limited

individual participation" by "some members" would not bar an organization's standing, has

agreed that representation (which it called "associational") standing "would be improper for

claims requiring a fact-intensive-individual inquiry." *Pa. Psychiatric Soc'y*, 280 F.3d at 286.

      In this case, the Third Circuit has already concluded that the Fourth Amendment claims at

issue here require consideration of "the concrete factual context" of the particular inspections

being challenged. *Free Speech Coal. II*, 677 F.3d at 543. It is clear from the court's decision that

the details of each search at issue would have to be explored. *See id.* at 543 (listing relevant

details as including "which specific members of FSC were searched; when and where the

searches of the FSC members and others occurred (i.e., offices or homes); and the conduct of the

government during the search (e.g., what specific information the government reviewed and

whether the government exceeded its authority under the applicable regulations)"). Indeed, the

court relied on *Sibron v. New York*, 392 U.S. 40 (1968), where the Supreme Court refused to

consider the facial constitutionality of the statutory provision in question at all. *Id.* at 62. Instead,

holding that the "constitutional validity of a warrantless search is preeminently the sort of

question which can only be decided in the concrete factual context of the individual case," the

Court "confine[d] [its] review" to the as-applied context, considering only "the reasonableness of

the [particular] searches and seizures which underlie" the defendants' convictions.[3] *Id.* at 59, 62;

---

      [3]In light of *Sibron*, it is difficult to understand the Third Circuit's decision here as
providing any basis for considering plaintiffs' "facial" Fourth Amendment claim. Although the
court did not expressly reject plaintiffs' facial challenge in so many words, its conclusion, that a

*see also United States v. Price*, 558 F.3d 270, 278 n.6 (3d Cir. 2009) ("Fourth Amendment tests

nearly always involve examination of the totality of the circumstances, because the Amendment

'recognizes that no single set of legal rules can capture the ever changing complexity of human

life.' (quoting *Georgia v. Randolph*, 547 U.S. 103, 125 (2006) (Breyer, J., concurring))); *United

States ex rel. McArthur v. Rundle*, 402 F.2d 701, 704-05 (3d Cir. 1968) (evaluation of

warrantless search must consider "the concrete factual context  of the search in question). This is

not a situation, therefore, where only "limited individual participation  would be required.

Rather, every FSC member that alleged an unconstitutional inspection would have to participate

in regard to the specific details of that inspection.[4]

---

factual inquiry into the details of particular inspections was necessary, strongly suggests that only
as-applied challenges would be appropriate. Such a conclusion would also be consistent with the
fact that, as defendant has previously argued before this Court, a facial challenge to the DOJ
regulations that set forth the inspection requirements would be governed by the Administrative
Procedure Act, 5 U.S.C. § 706, which limits a court's review to the administrative (or here,
rulemaking) record. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 185 (3d Cir.
2006).

[4]The difficulty of proceeding based on FSC's asserted representational standing is
particularly apparent because FSC has repeatedly refused to identify any of its members,
including those who have allegedly been subject to past inspections. Indeed, in the prior case in
which FSC was a plaintiff, in the District of Colorado, the parties' initial agreement to suspend
any inspections of FSC members required that a Special Master be appointed so that defendant
would "not be provided with the names of  FSC members. *See* Order of June 24, 2005, *Free
Speech Coal., Inc. v. Gonzales*, No. 1:05-cv-1126 (D. Colo.) (attached hereto as Exhibit A), at 2.
Here, similarly, FSC has declined to identify the members that allegedly have been subject to
past inspections in its Amended Complaint, even in response to defendant's argument that
identifying a specific member was required in order to establish standing. And when undersigned
counsel for defendant requested, following remand, that FSC provide the identities of those
members in initial disclosures, FSC again refused, suggesting that instead defendant should
identify all subjects of past inspections to FSC. But of course, FSC lacks standing to assert any
claim based on asserted injuries of nonmembers. *See Pa. Psychiatric Soc'y*, 280 F.3d at 287
("Because the patients are not members of, or otherwise directly associated with, the
Pennsylvania Psychiatric Society, the Society does not have associational  standing to assert their
claims.  ). FSC's refusal to identify the members on whose behalf it purports to raise Fourth

Again, because FSC seeks only injunctive relief, it cannot rely on past inspections of its members for purposes of standing in any event because past violations are not redressable by injunctive relief. However, to the extent past inspections might otherwise be relevant, FSC would also lack standing because the individual participation of those members that alleged they had been subject to inspections would be required.

## II.   GIVEN THE ABSENCE OF AN ONGOING INSPECTION PROGRAM AND THE UNCERTAINTY OF FUTURE INSPECTIONS, PLAINTIFFS' FOURTH AMENDMENT CLAIM IS UNRIPE

For similar reasons, plaintiffs' Fourth Amendment claim based on the currently-uncertain prospect of future inspections is also unripe. "The ripeness doctrine serves to determine whether a party has brought an action prematurely. *Thompson v. Horsham Tp.*, 576 F. Supp. 2d 681, 691 (E.D. Pa. 2008). "If a dispute is not yet ripe, a court should abstain from ruling until the dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine. *Id.* The ripeness analysis requires an evaluation of "'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' *Birdman v. Office of the Governor*, 677 F.3d 167, 173 -174 (3d Cir. 2012) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967)). In the Fourth Amendment context, in particular, "[c]oncerns about the premature resolution of legal disputes have particular resonance  because of the fact-specific inquiry that is involved. *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008).

The Third Circuit's opinion here underlines that very point. Indeed, as noted above, even if the court did not say so directly, the crux of its ruling is that any Fourth Amendment claims

---

Amendment claims is problematic, to say the least, and only further demonstrates why FSC should not be allowed to proceed with these claims on a theory of representational standing.

that plaintiffs might have should be resolved on an as-applied, rather than facial basis. And an as-applied challenge requires that the specific details regarding the challenged search or searches be available. *See Free Speech Coal. II*, 677 F.3d at 543.

Here, no such details are available because no inspection scheme is currently in place. Plaintiffs' Fourth Amendment claims cannot be evaluated in the absence of an ongoing inspection program because there is simply no "concrete factual context  here to examine. Moreover, for the same reasons that the 29 inspections that occurred over five years ago cannot vest FSC with representational standing to seek to enjoin any inspections that might occur in the future, those 29 inspections also do not render plaintiffs' Fourth Amendment challenge to future inspections ripe. As explained above, the program that was in place for approximately fourteen months between 2006 and 2007 provides no basis for evaluating the specific details of any future inspections that might occur. The reasons for this include the facts that those inspections were limited to for-profit producers of sexually-explicit videos that were openly advertised for sale; and that those inspections occurred under a different statutory and regulatory framework than is currently in place, with different definitions of sexually-explicit conduct and different provisions in regard to third-party custodian.

Moreover, the length of time that has passed since those inspections occurred would alone suggest that, should the FBI ever allocate funding to establish a new inspection program in the future, the procedures for any inspections that might occur would be formulated anew, taking into account any potentially relevant legal developments that have occurred since the former program ended. Indeed, the Third Circuit mentioned one such potential development, citing the possible impact of the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012).

Because no inspection program has been in place for over five years, the FBI has not had any occasion to consider whether or how any of these changes might affect its procedures for conducting inspections pursuant to 18 U.S.C. §§ 2257 or 2257A. It would therefore be mere speculation at this point to assume that the FBI would conduct a particular inspection in a particular way. Again, the "concrete factual context  that the Third Circuit deemed necessary for a court to examine before it could evaluate plaintiffs' Fourth Amendment challenge is not present here.

Prudential concerns also weigh against deeming plaintiffs' Fourth Amendment claim ripe. To litigate plaintiffs' Fourth Amendment claim now would likely involve a costly and time-consuming exploration of past inspections through depositions and other discovery mechanisms, but such efforts would, in the end, prove nothing regarding the conduct of future inspections, for the reasons already explained. On the other hand, a holding that plaintiffs' claim is premature would not cause any hardship to plaintiffs because, in the absence of an ongoing inspection program, they face no current prospect of being subject to inspections pursuant to 18 U.S.C. §§ 2257 or 2257A. All told, the Court should hold plaintiffs' Fourth Amendment claim unripe.

## CONCLUSION

For the reasons set forth above, this Court should dismiss Count Four of plaintiffs' Amended Complaint, together with the related part of Count Six, for lack of subject matter jurisdiction.

August 20, 2012                           Respectfully submitted,

                                          STUART F. DELERY

- 17 -

Acting Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Memorandum has been

filed electronically and is available for viewing and downloading from the ECF system.  I further

certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the

above-captioned case.


Dated: August 20, 2012                          /s/
                                               Kathryn L. Wyer