IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) <br> ) Civil Action No. 2:09-4607 <br> ) <br> ) Judge Michael M. Baylson <br> ) <br> ) <br> ) DECLARATION OF SPECIAL AGENT <br> ) ALAN S. NANAVATY <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | |
| v. | |
| THE HONORABLE ERIC H. HOLDER, JR., Attorney General, | |
| Defendant. | |

I, Alan S. Nanavaty, declare as follows:

(1) I am Chief of the Crimes Against Children ("CAC") Unit at Federal Bureau of Investigation ("FBI") Headquarters in Washington, D.C., and have served in this capacity since August 2006. My responsibilities in this capacity include national oversight over investigative matters within the CAC subprogram, including child abductions and child exploitation. Prior to this assignment, I served first as a Special Agent and later as a Supervisory Special Agent at the FBI's Washington Field Office from 1995 to 2006. As a Supervisory Special Agent, I had responsibility for investigative matters within Washington, D.C. and Northern Virginia in the areas of crimes against children, violent crime, organized crime and violent gangs.

(2) As part of my duties as Chief of the CAC Unit, I was responsible for supervising a program that operated between 2006 and 2007 through which inspections were conducted pursuant to 18 U.S.C. § 2257 and 28 C.F.R. Part 75 and am therefore familiar with the history, operation, and cessation of that program. The statements contained in this declaration are based upon my personal knowledge and upon information obtained in the course of my official duties.

(3) In 2005, the Director of the FBI was tasked by the United States Attorney General to establish an operational Regulatory Inspection program to conduct inspections authorized under 18 U.S.C. § 2257 and 28 C.F.R. Part 75. The program would focus on inspecting the records of entities within the adult entertainment industry that produced video, print, or electronic images that portrayed actual sexually-explicit conduct within the meaning of 18 U.S.C. § 2257, as it existed at the time. To this end, the FBI allocated funds sufficient to cover the cost of conducting inspections during a two-year period in fiscal years 2006 and 2007. The Regulatory Inspection program was initiated on July 5, 2006.

(4) The Regulatory Inspection program, also called the 2257 program, consisted of an inspection team within the FBI's CAC Unit. The team was based in Van Nuys, California. Two Supervisory Special Agents were appointed to the team, together with four to eight non-agent contractors, to carry out the inspections. As Unit Chief of the CAC Unit at FBI Headquarters in Washington DC, I was responsible for supervising the 2257 program.

(5) The 2257 program that was established in 2006 was intended to focus on records inspections of print publishers, film producers, and webmasters who published materials containing images of actual sexually-explicit conduct, which was limited to actual, not simulated sexual intercourse, and did not include lascivious displays of the genitals. The FBI initially estimated that there were around 425 such producers, in total, based primarily in Southern California. The program's goal was eventually to conduct approximately 150 inspections per year.

(6) As an early step in implementing the 2257 program, the inspection team began compiling a database of producers of sexually-explicit images. The database originally identified

313 producers and had expanded to include approximately 1237 producers by August 2007. The producers that were added to the database in 2006 and 2007 were those that could be identified as for-profit producers who were publicly advertising for sale materials containing images of actual sexually-explicit conduct.

(7) The inspection team periodically identified producers to be inspected by using a random number generator or other process to select entries randomly from the producer database.

(8) Twenty nine (29) inspections took place between July 24, 2006 and September 19, 2007. All of these inspections were of businesses that had been identified as for-profit producers of materials that contained images of actual sexually-explicit conduct. According to inspection team reports, no producer that was contacted by the team regarding an inspection denied the team access to records or requested that the team obtain a warrant prior to the inspection.

(9) On or about October 23, 2007, I was made aware that a panel of the Sixth Circuit Court of Appeals issued a decision deeming 18 U.S.C. § 2257 unconstitutional. The following day, it was decided by FBI management and the United States Department of Justice that no more inspections would be conducted until further notice.

(10) Despite a decision of the en banc Sixth Circuit that reversed the panel ruling, the 2257 program did not resume at any time after October 24, 2007. Rather, the inspection team was disbanded. Contract staff were released, and the two Supervisory Special Agent positions that had been dedicated to the team were reassigned to other FBI programs.

(11) Since the time that the 2257 program ceased operations, no funding has been provided for the FBI to initiate a new inspection program. Currently, there is no funding allocated to conduct inspections under 18 U.S.C. §§ 2257 or 2257A or their implementing regulations at 28 C.F.R. Part 75.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this  17  day of August, 2012.

Alan S. Nanavaty
Chief, Crimes Against Children Unit
FBI Headquarters, Washington, D.C.