## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC., et al.** | ) | **Civil Action No. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.,** | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS IN PART

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
    & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

STATEMENT OF THE CASE AND FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   THE STATUTES AND REGULATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PRE-APPEAL LITIGATION OF PLAINTIFFS' FOURTH AMENDMENT CLAIM. . . . . . . . . . . . . . 3

III. PLAINTIFFS' APPEAL.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.  THE THIRD CIRCUIT'S OPINION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.   DEFENDANT'S PENDING MOTION TO DISMISS IN PART. . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.   THE MANDATE RULE PRECLUDES DISMISSAL OF PLAINTIFFS' FOURTH AMENDMENT
     CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12 (B)(1), FED.
     R. CIV. PRO.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.  DEFENDANT'S ARGUMENTS ON STANDING AND RIPENESS FAIL ON THE MERITS. . . . . . . 12

     A.   Plaintiffs Have Standing to Prosecute Their Claims Under the Fourth
          Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     B.   Plaintiff Free Speech Coalition Has Associational Standing to Challenge the
          Statutes and Implementing Regulations under the Fourth Amendment. . . . . . . 17

     C.   Plaintiffs' Fourth Amendment Claims Are Ripe for Adjudication. . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

Page

**CASES**

*Adarand v. Contructors, Inc. v. Mineta,* 534 U.S. 103 (2001). . . . . . . . . . . . . . . . . . . . . . . . 6, 11

*Ashcroft v. American Civil Liberties Union*, 535 U.S. 564 (2002). . . . . . . . . . . . . . . . . . . . . . . 13

*Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943 (3d Cir.1985). . . . . . . . . . . . . . . . . 9

*Barrows v. Jackson,* 346 U.S. 249 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boyce's Ex'rs v. Grundy*, 34 U.S. (9 Pet.) 275, 9 L.Ed. 127 (1835). . . . . . . . . . . . . . . . . . . . . . 9

*Briggs v. Pa. R. Co.*, 334 U.S. 304 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. Entertainment Merchants Association*,131 S.Ct. 2729 (2011). . . . . . . . . . . . . . . . . . . 13

*California Bankers Association v. Shultz*, 416 U.S. 21 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Casey v. Planned Parenthood*, 14 F.3d 848 (3d Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Chamber of Commerce v. FEC*, 69 F.3d 600 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Connection Distributing Co. v. Keisler,* 505 F.3rd 545 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . 7

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 17

*Craig v. Boren,* 429 U.S. 190 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*De Funis v. Odegaard*, 416 U.S. 312 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Doe v. Bolton*, 410 U.S. 179 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ex parte Sibbald v. United States,* 37 U.S. (12 Pet.) 488,
    9 L.Ed. 1167 (1838). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>**TABLE OF AUTHORITIES (cont'd)**</u>

*Free Speech Coalition, Inc. v. Attorney General of the United States*,
  677 F.3d 519 (2012)................................................ 5, 7, 10, 11, 17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
  528 U.S. 167 (2000)................................................ 15

*Hays v. City of Urbana*, 104 F.3d 102 (7th Cir. 1997)................................. 16

*Heffner v. Murphy*, 590 F.Supp.2d 710 (M.D. Pa. 2008)............................... 4

*Himely v. Rose*, 5 Cranch 313, 3 L.Ed. 111 (1809)..................................... 9

*Holder v. Humanitarian Law Project*, 130 S.Ct. 2705 (2010)......................... 13

*Hosp. Council v. City of Pittsburgh*, 949 F.2d 83 (3rd Cir. 1991)..................... 20

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)................... 17, 18, 20

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895)................................. 9

*International Union, United Automobile, Aerospace and
  Agricultural Implement Workers of American v. Brock*,
  477 U.S. 274 (1986)................................................ 20

*Katz v. United States*, 389 U.S. 347 (1967)........................................ 6

*Lewis v. Alexander*, 685 F.3d 325 (3rd Cir. 2012)........................ 6, 11, 13, 21, 22

*Marcavage v. National Park Service* , 666 F.3d 856 (3rd Cir. 2012)..................... 16

*McCauley v. University of Virgin Islands*, 618 F.3d 232 (3rd Cir. 2010)................ 6, 11

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3rd Cir. 2012)......................... 15

*Pennsylvania Psychiatric Society v. Green Spring
  Health Services, Inc.*, 280 F.3d 278 (3rd Cir. 2002)...................... 17, 18, 20

*Policemen's Benev. Ass'n of New Jersey, Local 318 v.
  Washington Tp.*,850 F.2d 133 (3rd Cir. 1988)................................... 3

**TABLE OF AUTHORITIES (cont'd)**

*Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997)............................ 13

*Shoemaker v. Handel,* 795 F.2d 1136 (3rd Cir. 1986).................................... 3

*Singleton v. Wulff,* 428 U.S. 106 (1976). ............................................. 13

*Skinner v. Railway Labor Executives' Association,* 489 U.S. 602 (1989)..................... 3

*Steffel v. Thompson,* 415 U.S. 452 (1974)............................................. 15

*Sullivan v. Little Hunting Park,* 396 U.S. 229 (1969).................................... 13

*The Santa Maria,* 23 U.S. (10 Wheat.) 431, 6 L.Ed. 359 (1825)........................... 9

*Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131 (3d Cir. 2009). ...................... 6

*United States v. Concentrated Phosphate Exp. Ass'n.,*
393 U.S. 199 (1968)................................................................. 15

*United States v. Grape,* 549 F.3d 591 (3rd Cir. 2008).................................. 16

*United States v. Jones* 132 S.Ct. 945 (2012). ......................................... 6

*United States v. Kennedy,* 682 F.3d 244 (3rd Cir. 2012)................................. 9

*United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803 (2000). ................ 13

*United States v. Stevens,* 130 S.Ct. 1577 (2010). ................................ 16, 17, 22

*Virginia v. American Booksellers Association,* 484 U.S. 383 (1988). ................... 13, 16

*Warth v. Seldin,* 422 U.S. 490 (1975). ............................................... 20

**CONSTITUTIONAL PROVISIONS**

United States Const., amend IV................................................ *passim*

United States Const., amend. I.......................................... 3, 5, 7, 18

**TABLE OF AUTHORITIES (cont'd)**

**STATUTES, RULES AND REGULATIONS**

18 U.S.C. § 2257. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 7, 8, 15, 17-19

18 U.S.C. § 2257(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257(e)(1).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257(f)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8, 15, 18, 19

18 U.S.C. § 2257A(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(f)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2257A(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Adam Walsh Child Protection Safety Act of 2006. PL 109-248. . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. Pro., Rule 12(b)(1),. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 9-11

Fed. R. Civ. Pro., Rule 12(b)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 C.F.R. § 75.5.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

28 C.F.R. § 75.5 (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

## <u>TABLE OF AUTHORITIES (cont'd)</u>

28 C.F.R. § 75.5 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

73 FR 77432-72. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

73 FR 77436. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

73 FR 77470. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

77 FR 17501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## MISCELLANEOUS

Charles A. Wright et al., 18 *Federal Rules and Practice* § 4478 (1981). . . . . . . . . . . . . . . . . . . . 12

http://www.justice.gov/oig/reports/FBI/a0908/chapter4.htm . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE CASE AND FACTS

### I.   THE STATUTES AND REGULATIONS

Title 18 U.S.C. § 2257 and 18 U.S.C. § 2257A require producers of visual depictions of sexual imagery to create, acquire, and maintain various records, including photo identification, for the persons appearing in their expression.  Both statutes require producers to maintain these records and "make such records available to the Attorney General for inspection at all reasonable times." 18 U.S.C. § 2257(c); 18 U.S.C. § 2257A(c).  They both make it a crime punishable by a term of imprisonment (up to five years under 18 U.S.C. § 2257(i) and up to one year under 18 U.S.C. § 2257A(i)(1)) to "refuse to permit the Attorney General or his or her designee to conduct an inspection...." 18 U.S.C. § 2257(f)(5); 18 U.S.C. § 2257A(f)(5).

Both statutes direct the Attorney General to promulgate regulations implementing the statutory mandates.  18 U.S.C. § 2257(c), (e)(1), (g); 18 U.S.C. § 2257A(c), (e)(1), (3).  Additionally, 18 U.S.C. § 2257A(k) requires the Attorney General to submit a report to Congress "concerning the enforcement of this section and section 2257 by the Department of Justice during the previous 12-month period...including...the number of inspections undertaken pursuant to this section and section 2257."

The current versions of 18 U.S.C. § 2257 and 18 U.S.C. § 2257A were enacted in 2006 as part of the Adam Walsh Child Protection Safety Act of 2006. PL 109-248.[1]  On December 18, 2008, the Department of Justice published regulations implementing the statutes. 73 FR 77432-72. The

---

[1]  As set forth in ¶ 9 of Plaintiffs' Amended Complaint (Doc. No. 84), 18 U.S.C. § 2257 was enacted in 1988 and has been variously amended–the most recent amendment having been effected by the Adam Walsh Child Protection Act.  Title 18 U.S.C. § 2257A was  passed in 2006 as part of the same act and was to become effective 90 days after the publication of final regulations implementing it were published in the Federal Register. 18 U.S.C. § 2257A(i)(3).  The final rules were published on December 18, 2008.  Title 18 U.S.C. § 2257A, therefore, became effective on March 18, 2009.

regulations implementing 18 U.S.C. § 2257 took effect on January 20, 2009 while the regulations implementing 18 U.S.C. § 2257A took effect on March 18, 2009.  One set of regulations implements the two statutes.  73 FR 77436.  The new regulations did not materially amend or alter the inspection regime set forth in 28 C.F.R. § 75.5, although a few amendments were made to their provisions.  73 FR 77470.  As under the prior regulations implementing 18 U.S.C. § 2257,  the Attorney General's designees were authorized to enter producers' premises without a warrant to inspect the records pertaining to their sexually explicit expression.  As recently as March 26, 2012, the Department of Justice published a notice in the Federal Register seeking information regarding the" inspection of records relating to visual depictions of simulated sexually explicit performances."  77 FR 17501.

The regulations implementing the statutes require all producers of expression containing sexual imagery, on pain of criminal prosecution, to maintain the requisite records and to make them available for inspection by the Attorney General or his or her designee any time "during working hours and at other reasonable times." 28 C.F.R. § 75.5 (a).  They further provide that inspections shall take place between 9 a.m. to 5 p.m., local time, Monday through Friday, or any time that the producer is conducting business. *Id.* at 75.5 (c). Those producers who do not maintain at least 20 normal business hours per week are required to  provide notice to the inspecting agency of the hours during which the records will be available for inspection, which "in no case may be less than 20 hours per week." *Id.*  The Attorney General's designated inspectors are authorized to enter each and every location where such records are maintained–be it studio, home, or office–without notice or delay to inspect those records.  Again, producers of sexually explicit expression must comply with these inspection provisions or face the risk of criminal prosecution.

## II.   PRE-APPEAL LITIGATION OF PLAINTIFFS' FOURTH AMENDMENT CLAIM

In their complaint, Plaintiffs alleged, among other things:

> Plaintiffs are subject to repeated warrantless searches of their premises by government investigators who are empowered to appear without advance notice and demand entrance to the premises–whether office, studio, or private home–to inspect and copy the records that the statutes require to be maintained and are subject to seizure of anything on the premises that the government investigators believe is related to a commission of a felony, without a warrant.

Complaint (Doc. No. 1) at ¶ 56.  They alleged that the statutes and regulations, therefore, violated their rights under the First and Fourth Amendments.  *Id.* at ¶ 74.

Defendant sought to dismiss Plaintiffs' Fourth Amendment claim under Rule 12(b)(1), Fed. R. Civ. Pro., arguing that Plaintiffs were mounting a "purely abstract facial challenge," that their claim was unripe, and that this Court lacked subject matter jurisdiction. Defendant's Memorandum in Support of Motion to Dismiss (Doc. No. 17) at 11, 41-42; Defendant's Reply in Support of Motion to Dismiss (Doc. No. 33) at 30-33; Defendant's Supplemental Brief in Support of Motion to Dismiss (Doc. No. 48) at 9; Defendant's Second Supplemental Brief (Doc. No. 55) at 11-14.

Plaintiffs responded by pointing out that numerous decisions had addressed facial challenges to regulatory schemes allowing warrantless searches under the Fourth Amendment, even though the plaintiff had not been subjected to an actual search under its provisions. *See e.g., Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989) (review of federal railroad alcohol and drug testing program); *California Bankers Association v. Shultz*, 416 U.S. 21 (1974) (review of Bank Secrecy Act's foreign and domestic reporting requirements); *Shoemaker v. Handel*, 795 F.2d 1136 (3rd Cir. 1986) (review of random urine testing requirement of jockeys established by the New Jersey Racing Commission); *Policemen's Benev. Ass'n of New Jersey, Local 318 v. Washington*

3

*Tp.*,850 F.2d 133 (3rd Cir. 1988) (review of township drug testing policy of police force); *Heffner*

*v. Murphy*, 590 F.Supp.2d 710, 720 (M.D. Pa. 2008) (challenge by funeral directors to warrantless

searches authorized by state funeral law).  Plaintiffs' Memorandum in Opposition to Defendant's

Motion to Dismiss (Doc. No. 25) at 38.  Moreover, they sought leave to amend their Complaint to

include the following allegation:

> Several of Free Speech Coalition's members have been subjected to inspections
> pursuant to 18 U.S.C. § 2257 and its implementing regulations.  In each instance, a
> team of FBI agents came to the member's private business premises, without a
> warrant or prior notice, gained access under authority of 18 U.S.C. § 2257 and its
> implementing regulations, entered areas of the business premises not open to the
> public, searched through the business's files and records owned and possessed by the
> member pertaining to its sexually explicit expression and made copies of certain
> records.  The agents also took photos of the interior areas of the business
> premises–again, all without a warrant.  Inspections have also been made by FBI
> agents of producers who are not members of Plaintiff Free Speech Coalition, and in
> two instances, upon information and belief, inspections were conducted at private
> residences of the producers because that is where their records were maintained.

Plaintiffs' Motion for Leave to Amend Complaint (Doc. No. 49) at 2.

Defendant opposed the Motion for Leave to Amend Complaint on the standing and ripeness

grounds raised in its current Motion to Dismiss in Part. Defendant's Memorandum in Opposition to

Plaintiffs' Motion for Leave to Amend Complaint (Doc. No. 53) at 3-11.

This Court granted Defendant's Motion to Dismiss Plaintiffs' Fourth Amendment claim

under Rule 12(b)(1) and denied Plaintiffs' Motion for Leave to Amend Complaint. Order (Doc. No.

67) .  The Court articulated Defendant's arguments regarding ripeness and standing, Opinion and

Order (Doc. No. 66) at 90-91, and credited them in denying Plaintiffs' Motion for Leave to Amend

Complaint, noting that "the amended complaint thus would likely still retain the same questions of

ripeness and standing that exist in the initial Complaint." *Id.* at 93.  Additionally, this Court noted

that while it was not ruling on the organizational and third-party standing issue, " under the related standing doctrines of organizational and third-party standing, there is nothing to indicate that Free Speech Coalition, or any other plaintiffs in this case, would have standing to assert claims on behalf of these unidentified producers." *Id.* at 103, n.23.  This Court ultimately determined that Plaintiffs' Fourth Amendment claim failed on the merits. *Id.* at 112.

### III.   PLAINTIFFS' APPEAL

Plaintiffs appealed this Court's dismissal of their complaint under Rule 12(b)(6) and Rule 12(b)(1), Fed. R. Civ. Pro, as well as the denial of their Motion for Leave to Amend Complaint. Amended Notice of Appeal (Doc. No. 77).  On appeal, Plaintiffs argued that they had presented a viable Fourth Amendment claim and that this Court had erred in denying their Motion for Leave to Amend Complaint. Appellants' Br. at 48-58*, Free Speech Coalition v. Attorney General of the United States,* Case No. 10-4085.

In response, Defendant, in addition to arguing that Plaintiffs' Fourth Amendment claim failed on the merits, argued that their challenge on these grounds was unripe.  Appellee's Br. at 57; *see also* Appellee's Br. at 60 (noting that this Court had declined to rule on standing and ripeness grounds).

### IV.   THE THIRD CIRCUIT'S OPINION

On April 16, 2012, the Third Circuit Court of Appeals vacated those portions of this Court's judgment dismissing Plaintiffs' First and Fourth Amendment claims and remanded this case for further proceedings. *Free Speech Coalition, Inc. v. Attorney General of the United States,* 677 F.3d 519 (2012).

In its opinion, the Third Circuit summarized the procedural background–noting that "[t]he government moved to dismiss Plaintiffs' complaint in its entirety for failure to state a claim under

5

Fed.R.Civ.P. 12(b)(6), and with respect to Plaintiffs' Fourth Amendment claim, for lack of subject

matter jurisdiction on ripeness and standing grounds under Fed.R.Civ.P. 12(b)(1)." *Id.* at 525. The

court of appeals found that Plaintiffs had, in fact, presented a viable claim under the Fourth

Amendment and therefore vacated the portion of this Court's judgment dismissing that claim with

prejudice.[2]  The court directed:

> We will vacate the District Court's order with respect to Plaintiffs' claims under the
> Fourth Amendment, and remand for the development of the record.

*Id.* at 542. After discussing relevant Fourth Amendment precedent–in particular *Katz v. United*

*States,* 389 U.S. 347 (1967) and the recently decided *United States v. Jones* 132 S.Ct. 945 (2012)–the

court emphasized the need for the development of a "concrete factual context":

> This factual context is necessary for determining whether the government's conduct
> was a "search" under the Fourth Amendment pursuant to either the reasonable-
> expectation-of-privacy test set forth in *Katz* or the common-law-trespass test
> described in *Jones*.  As to the *Katz* analysis, we cannot conclude on this record
> whether plaintiffs have an objective expectation of privacy in the searched areas and
> effects unless the contours of the alleged searches are more fully delineated.
> Likewise, an analysis under *Jones* would benefit from a more developed record
> because the court must conclude whether a common-law trespass occurred during
> any of the alleged searches, which is traditionally a fact-intensive inquiry.
>
> Moreover, further development of the record is necessary to determine whether the
> administrative search exception to the expectation-of-privacy test is applicable.

*Id.* at 544. Citing *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131 (3d Cir. 2009), a case

addressing the very standing issues raised here and relied on by the government in its recent Motion

to Dismiss in Part, Defendant's Memorandum in Support of Motion to Dismiss in Part (Doc. No.

---

[2]   As discussed more fully below, the Third Circuit has acknowledged its independent
obligation to evaluate issues of standing, even if–unlike here–the issue has not been raised by the
parties. *Lewis v. Alexander*, 685 F.3d 325, 338 n. 10 (3rd Cir. 2012) *quoting Adarand v. Contructors,
Inc. v. Mineta,* 534 U.S. 103, 110 (2001);  *McCauley v. University of Virgin Islands*, 618 F.3d 232,
238 (3rd Cir. 2010).

92) at 8, the Third Circuit vacated this Court's order denying Plaintiffs' motion for leave to amend their complaint to add allegations addressing the government's claim that Plaintiffs' Fourth Amendment claims were not ripe for review. *Id.* at 545. The court of appeals found that "with the proposed amendment"–the very amendment added in response to Defendant's claim that Plaintiffs' complaint failed to allege the factual predicate to support their standing to raise the Fourth Amendment claim–Plaintiffs' Fourth Amendment claim "would withstand a motion to dismiss." *Id.*

## V.   DEFENDANT'S PENDING MOTION TO DISMISS IN PART

Defendant has now attempted to reargue its challenges to Plaintiffs' Fourth Amendment claim on ripeness and standing grounds. In doing so, it has produced the declaration of an FBI Agent that confirms that between July 24, 2006 and September 19, 2007, the FBI did, indeed, perform a total of 29 inspections under 18 U.S.C. § 2257, Declaration of Special Agent Nanavaty at ¶ 8, – an ample supply of inspections to permit the development of a record to answer all the factual questions posed by the Third Circuit. *Free Speech Coalition*, 677 F.3d at 543-44. The declaration goes on to state, however, that no inspections have been conducted since October 24, 2007[3] when the Sixth Circuit Court of Appeals struck down the statute as unconstitutional. Declaration of Special Agent Nanavaty at ¶¶ 9-10. It further states that currently no funding has been allocated for that purpose. *Id.* at ¶11. From this, Defendant argues that Plaintiffs face no cognizable harm arising out of the inspection regime authorized by the statutes and implementing regulations, and thus, there is no live case or controversy before the court for resolution.

---

[3] A report of an FBI audit by the Inspector General indicates after "the U.S. Court of Appeals for the Sixth Circuit decided in *Connection Distributing Co., et al v. Keisler,* 505 F.3rd 545 (6th Cir. 2007) that 18 U.S.C. § 2257 was 'overbroad and therefore violates the First Amendment,'... the FBI suspended the inspection program in ***February 2008***."   http://www.justice.gov/oig/reports/FBI/a0908/chapter4.htm (emphasis added).

Defendant's argument, as will be discussed more fully below, is completely untenable. Inspections of the records are mandated by 18 U.S.C. § 2257 and 18 U.S.C. § 2257A. The statutes require the Attorney General to promulgate regulations governing the inspections and to submit annual reports to Congress about them. The Attorney General, following the statutory mandate, has, in fact, promulgated regulations and has executed 29 inspections pursuant to them. Nothing whatsoever prevents the Attorney General from directing his designees (whether FBI agents or other employees of the Justice Department) to conduct warrantless inspections of the Plaintiffs and others tomorrow.[4] And, as outlined above, Plaintiffs must comply with the statutes and regulations–maintaining the requisite records, making them available for inspection at their premises in conformance with the provisions governing hours for such inspection, and providing requisite notice of their availability for inspection to the Attorney General if they do not maintain at least 20 normal business hours per week. 28 C.F.R. § 75.5.

That the FBI has not performed inspections recently, nor currently allocated funds for its inspection program does not relieve Plaintiffs of their obligation to maintain records as required by the statutes and to make them available for inspection pursuant to the regulations' terms. Failure to do so is punishable by imprisonment. Therefore the harm imposed by the statutes and regulations is immediate, concrete, direct, and ongoing.

---

[4] Nothing in the statutes or regulations requires that special funding be allocated for that purpose before inspections can be carried out. Nothing prevents FBI agents or other designees from being assigned, as part of their regular duties, to carry out inspections without any allocation of special funds. For that matter, nothing prevents the allocation of funds tomorrow for that purpose, if that is necessary.

**ARGUMENT**

I.    **THE MANDATE RULE PRECLUDES DISMISSAL OF PLAINTIFFS' FOURTH AMENDMENT CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12 (B)(1), FED. R. CIV. PRO.**

The Third Circuit Court of Appeals recently explained the mandate rule with particular eloquence and clarity. *United States v. Kennedy*, 682 F.3d 244 (3rd Cir. 2012). The court wrote:

> From the earliest days of the republic, and continuing through today, the Supreme Court has "consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) (citing *Ex parte Sibbald v. United States,* 37 U.S. (12 Pet.) 488, 9 L.Ed. 1167 (1838); *Boyce's Ex'rs v. Grundy*, 34 U.S. (9 Pet.) 275, 9 L.Ed. 127 (1835); *The Santa Maria*, 23 U.S. (10 Wheat.) 431, 6 L.Ed. 359 (1825); *Himely v. Rose*, 5 Cranch 313, 3 L.Ed. 111 (1809)); *see also* 28 U.S.C. § 2106; *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895). As the Court explained in *Ex parte Sibbald v. United States*,
>
>> Whatever was before the court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.
>
> 37 U.S. at 492. The principle, as firmly ingrained as it is fundamental to our hierarchical system of justice, "has remained essentially unchanged in nearly one hundred fifty years." *Casey v. Planned Parenthood of Se. Pa.*, 14 F.3d 848, 857 (3d Cir.1994). By now, "[i]t is axiomatic that on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Trust Co. v. Bethlehem Steel Corp.,* 761 F.2d 943, 949 (3d Cir.1985). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.*

*Id.* at 252-53.

This Court, then, is duty bound to implement both the letter and the spirit of the Third Circuit's mandate vacating the grant of Defendant's Motion to Dismiss Plaintiffs' Fourth

9

Amendment under Rule 12(b)(1), Fed. R.Civ.Pro., finding that the Fourth Amendment claim as set forth in Plaintiffs' Amended Complaint "withstand[s] a motion to dismiss," and remanding the case for development of a record on that claim. *Free Speech Coalition*, 677 F.3d at 542, 545. There is no ambiguity about the Court's mandate:

> We will vacate the District Court's order with respect to Plaintiffs claims under the Fourth Amendment, and remand for development of the record.

*Id.* at 542. The Court identified with specificity some of the factual issues that it wished developed in this Court, including facts regarding past inspections and facts relevant to the administrative search exception. *Id.* at 543-44. It did not remand for relitigation of Defendant's Motion to Dismiss on standing or ripeness grounds.

Indeed, it specifically determined that with ***the addition of the allegations regarding the existence of inspections of Plaintiff Free Speech Coalition's members***–the very allegations Plaintiffs sought to add to meet Defendant's arguments that Plaintiffs lacked standing and which made clear that Plaintiff Free Speech Coalition asserted these claims on its members' behalf–the Amended Complaint presented a viable complaint under the Fourth Amendment. *Id.* at 545.

Yet Defendant urges this Court to dismiss Plaintiffs' Fourth Amendment claim in direct contradiction to the appellate court's mandate. This Court would err in doing so.

Defendant advanced these very standing and ripeness arguments regarding Plaintiffs' Fourth Amendment claim in the extensive briefing on the issue before this Court and in the Third Circuit. Defendant's Memorandum in Support of Motion to Dismiss (Doc. No.17) at 11, 41-42; Defendant's Reply in Support of Motion to Dismiss (Doc. No. 33) at 30-33; Defendant's Supplemental Brief in Support of Motion to Dismiss (Doc. No. 48) at 9; Defendant's Memorandum in Opposition to

10

Plaintiffs' Motion to Amend Complaint (Doc. No. 53) at 3-11; Defendant's Second Supplemental

Brief (Doc. No. 55) at 11-14; Appellee's Br. at 57, 60.

The Third Circuit acknowledged these arguments. *Free Speech Coalition*, 677 F.3d  at 525

("The government moved to dismiss...Plaintiffs' Fourth Amendment claim, for lack of subject matter

jurisdiction on ripeness and standing grounds under Fed.R.Civ.P. 12(b)(1)."); *See also, id.* at 544,

n.22 ("The government argues that Plaintiffs' as-applied Fourth Amendment claim is legally

groundless, but does not assert that this claim—as potentially amended—is factually insufficient.

See Def.'s Br. at 60–69.)"). And it rejected them.

Indeed, the Third Circuit had an independent obligation to raise and decide any issues

regarding the Plaintiffs' standing *sua sponte*, before considering the merits and viability of Plaintiffs'

Fourth Amendment claim.  *Lewis v. Alexander,* 685 F.3d 325, 338 (3rd Cir. 2012) ("Because

constitutional standing is a jurisdictional requirement, "[w]e are obliged to examine standing *sua*

*sponte* where standing has been erroneously assumed below." *citing Adarand Constructors, Inc. v.*

*Mineta,* 534 U.S. 103, 110 (2001)); *McCauley v. University of Virgin Islands*, 618 F.3d 232, 238

(3rd Cir. 2010) (finding that because of obligation "to raise issues of standing *sua sponte* if such

issues exist," appellate court was required to first consider those issues before addressing merits).[5]

The court acknowledged Defendant's standing and ripeness claims and proceeded to decide the

Fourth Amendment claim on its merits–finding that Plaintiffs' Amended Complaint presented a

viable claim.

The Third Circuit's mandate allows no room for re-opening the record on standing and

---

[5] Judge Smith, the author of both the opinions in *Lewis* and *McCauley*, was the author of the
Third Circuit's opinion in this case as well.

ripeness nor relitigating the issues. *Casey v. Planned Parenthood,* 14 F.3d 848 (3rd Cir. 1994).  The

court in *Casey* stressed:

> Law of the case rules have developed "to maintain consistency and avoid
> reconsideration of matters once decided during the course of a single continuing
> lawsuit." Charles A. Wright et al., 18 *Federal Rules and Practice* § 4478 (1981). ***Of
> these rules, the most compelling is the mandate rule.***  This fundamental rule binds
> every court to honor rulings in the case by superior courts. As the Supreme Court has
> stated, "In its earliest days this Court consistently held that an inferior court has no
> power or authority to deviate from the mandate issued by an appellate court." *Briggs
> v. Pennsylvania R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403
> (1948).

*Id.* at 856 (footnote omitted) (emphasis added).  The Third Circuit stressed that the district court was

bound to proceed in accordance with the mandate–both in letter and spirit–being mindful of the

appellate court's opinion and the circumstances it embraced.  *Id.* at 857.  While acknowledging

plaintiffs' arguments that there are exceptions to the law of the case doctrine, the court emphasized

that those exceptions are "necessarily cabined by the mandate rule." *Id.* at 862. The Third Circuit

concluded that the district court had breached the mandate rule when it reopened the case for the

purpose of allowing the plaintiffs to adduce new evidence on issues that had been resolved.

Defendant invites this Court to commit this same error here.

## II.   DEFENDANT'S ARGUMENTS ON STANDING AND RIPENESS FAIL ON THE MERITS.

### A.    Plaintiffs Have Standing to Prosecute Their Claims Under the Fourth Amendment.

Defendant argues that Plaintiffs lack standing to prosecute their claims under the Fourth

Amendment because they have not sustained an "injury-in-fact" sufficient to present a case or

controversy.  Memorandum in Support of Defendant's Motion to Dismiss (Doc. No. 92) at 8-9.

Specifically, the government claims that Plaintiffs cannot establish a threat of "real and immediate

injury" because according to the declaration of Special Agent Nanavaty, the FBI has not conducted inspections under the statutes since October 2007 and currently, there is no funding to conduct additional inspections. *Id.* at 9. It concludes, therefore, that there is no threat of future injury sufficient to support the issuance of injunctive relief. *Id.*

Defendant's argument collapses, however, under the well-established precedent that holds the injury-in-fact requirement of standing is met when a plaintiff is required to take significant measures to comply with a law, or risk sanction. *Virginia v. American Booksellers Association*, 484 U.S. 383, 392 (1988); *Craig v. Boren,* 429 U.S. 190, 194 (1976) ("This Court repeatedly has recognized that such injuries establish the threshold requirements of a 'case or controversy' mandated by Art. III. *See e.g. Singleton v. Wulff*, [428 U.S. 106], 113 [(1976)]....*Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969); *Barrows v. Jackson,* [346 U.S. 249], 255-56 [(1953)]."); *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Lewis v. Alexander*, 685 F.3d 325, 338-40 (3rd Cir. 2012); *see also, Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2717 (2010). *See e.g., Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491 (1985); *Reno v. American Civil Liberties Union,* 521 U.S. 844 (1997); *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803 (2000); *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564 (2002); *Brown v. Entertainment Merchants Association*,131 S.Ct. 2729 (2011).

Here, that showing is handily met. In order to comply with the challenged statutes and regulations, Plaintiffs, on pain of criminal prosecution, must maintain the requisite records and make them available for inspection by the Attorney General or his or her designee any time "during working hours and at other reasonable times." 28 C.F.R. § 75.5 (a). To that end, they must be available to allow such inspection between 9 a.m. to 5 p.m., local time, Monday through Friday, or

any time they are conducting business. *Id.* at 75.5 (c).  Plaintiffs who do not maintain "regular business hours" must constantly remain in proximity to their records, while those producers who do not maintain at least 20 normal business hours per week are required to provide notice to the inspecting agency of the hours during which the records will be available for inspection, which "in no case may be less than 20 hours per week." *Id.*  Thus, all of Free Speech Coalition's members must stand ready at all times to make the records available for inspection.  Every producer of adult films, every adult web site operator, every producer of adult magazines must be available during normal business hours–at least 20 hours a week–to allow a warrantless inspection of their records. Nowhere in its brief does the government state that any of the Plaintiffs are relieved of these obligations under the statutes and regulations because inspections are not currently being conducted. Indeed, the government could not suggest that.

All of the Plaintiffs in this case are burdened on an ongoing basis by the statutory scheme's warrantless inspection regime.  For instance, Plaintiff Conners is a sole proprietor who operates his business from his home and does not maintain regular business hours as defined by the regulations. Amended Complaint (Doc. No. 84)  at  ¶ 27. Therefore, in compliance with 28 C.F.R. § 75.5 (c), he has notified the government that his records are available for inspection at his home between the hours of 1:00 p.m. and 5:00 p.m., Monday through Friday, throughout the year and, as the regulations require, must arrange his schedule so that he is always at home during these hours. *Id.*

And those producers, like many of Plaintiff ASMP's members who keep regular hours, but not during the times designated as "normal business hours" must nevertheless be in proximity to their records at all times during that those hours. *Id.* at  ¶ 22.

Plaintiff Levingston provides yet another example of the significant impact of the obligations

14

imposed by the warrantless inspection scheme on the conduct of those who create expression subject to 18 U.S.C. §§ 2257, 2257A.  Levingston travels all around the country for his photography and therefore cannot be available at least 20 hours per week for government inspection of his records at his studio.  *Id.* at ¶ 49.  For that reason, he has stopped creating photographs that might trigger the recordkeeping requirements to avoid the risk of prosecution for non-compliance.  *Id.*  The same is true of ASMP's photojournalist members who are on the road for months at a time.  *Id.* at ¶ 22.

The statutes and regulations, therefore, exact very demanding obligations on each of the Plaintiffs in connection with their expression on an ongoing basis. They must take significant measures to comply with them.  Under the well-established premise that standing's injury-in-fact requirement is satisfied when a plaintiff must employ significant effort to comply with a law's mandates or face the risk of prosecution or sanction, Plaintiffs unquestionably have standing to challenge the statutes and regulations under the Fourth Amendment.

That the FBI is not currently performing inspections under the statutes and has not allocated funds to do so makes no difference.[6]  Plaintiffs' obligations to keep the records and make them

---

[6] Defendant takes pains to argue that it is not relying on mootness as a ground for dismissal "because the defects in justiciability of plaintiffs' Fourth Amendment claim existed at the time plaintiffs filed their Amended Complaint." Memorandum in Support of Defendant's Motion to Dismiss (Doc. No. 92) at 12 n.2.  It is clear, however, that a case must remain justiciable throughout the litigation and not just at the moment when the complaint is filed. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). In these circumstances, "the difference between 'standing' and 'mootness' is essentially a semantic one." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 227 n.17 (3rd Cir. 2012).

It is also clear why Defendant wants to avoid examination of Plaintiffs' claims under the mootness doctrine.  The standard used to analyze whether a case is moot based on the voluntary conduct of a party–here the Defendant's voluntary suspension of enforcement and funding of inspections–is whether "subsequent events [make] ***it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.***" *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (*quoting United States v. Concentrated Phosphate Exp. Ass'n.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d

available for inspection are not in any way relieved or excused by that fact.  Importantly, the government has not suggested or represented that it will no longer enforce the statutes and regulations. *See American Booksellers Association, Inc.*, 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit.  The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Hays v. City of Urbana*, 104 F.3d 102, 103 (7th Cir. 1997) ("The City Attorney has not announced that the amended ordinance is a dead letter, never to be enforced.").  To the contrary, Defendant has conducted 29 warrantless inspections and has vigorously defended the statutes and regulations and the legitimacy of its inspection scheme.  It has every right–indeed a duty[7]–to perform inspections under the statutes and their implementing regulations.  *See Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995) (finding  even though the FEC was split three-three, and plaintiffs were "not faced with any present danger of an enforcement proceeding," plaintiffs had standing to challenge regulation because "[n]othing, however, prevents the Commission from enforcing its rule at any time with, perhaps, another change of mind of one of the Commissioners.  The rule constitutes the purported legal norm that binds the class regulated by the statute.") As the Court noted in *United States v. Stevens*, a statutory threat to constitutional rights cannot be left to the mercy of the government's

---

344 (1968);  *Marcavage v. National Park Service* , 666 F.3d 856, 861 (3rd Cir. 2012). "Under this doctrine, mootness is not presumed if the respondent has stopped the offending action, but may resume it at any time. *De Funis v. Odegaard*, 416 U.S. 312, 318, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974)." *United States v. Grape*, 549 F.3d 591,  597 (3rd Cir. 2008). *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287-88 (2000) (finding live controversy even though operator of adult establishment challenging an ordinance regulating nudity had ceased operation, sold its building, and its sole shareholder, who was 72 years old, had no intention of owning or operating a nude dancing establishment in the future)*.* Defendant certainly has not made and cannot make that showing here.

[7] That is, assuming that the statutes are otherwise valid, which Plaintiffs, of course, do not.

*noblesse oblige* in promising to enforce it responsibly. 130 S.Ct. 1577, 1591 (2010). *See Free Speech Coalition*, 677 F.3d at 539 n.15 (noting that assurances of prosecutorial discretion "may one day be modified by the executive branch to permit the exercise of the Statutes' full authority, which is the very concern at the heart of *Stevens*").

> **B.    Plaintiff Free Speech Coalition Has Associational Standing to Challenge the Statutes and Implementing Regulations under the Fourth Amendment.**

The Sixth Circuit in *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998), found that the plaintiff magazine had *jus tertii* standing to challenge 18 U.S.C. § 2257 and its implementing regulations on behalf of its subscribers and readers.   Here, the Third Circuit likewise found that, with the amendment to Plaintiffs' complaint alleging that several members of Free Speech Coalition had been subjected to inspections under the regulatory inspection scheme–an amendment made to address Defendant's claims that Plaintiffs lacked standing–Plaintiffs had presented a viable Fourth Amendment claim.   *Free Speech Coalition*, 677 F.3d at 545.  That ruling necessarily included a determination that Plaintiff Free Speech Coalition had standing to adjudicate that claim on its members' behalf.

To satisfy the requirements for associational standing,

> An association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

*Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3rd Cir. 2002).

An association's ability to invoke standing on behalf of its members depends in large part

on the measure of relief sought.  *Hunt*, 432 U.S. at 343.  Associational standing is proper in cases seeking injunctive and declaratory relief, *id.,* which is the relief sought by Plaintiffs here.  In contrast, claims for monetary relief require individual participation of an association's members, making them ill-suited for associational standing. *Pennsylvania Psychiatric Society*, 280 F.3d at 284.

As the Third Circuit necessarily found, Plaintiff Free Speech Coalition satisfies the requirements for associational standing.

First, its members produce sexually explicit material and thus are subject to warrantless inspection of their records under 18 U.S.C. § 2257 and 18 U.S.C. § 2257A and their implementing regulations.  Amended Complaint (Doc. No. 84) at ¶ 19.  Several of Free Speech Coalition's members have, in fact, been subjected to warrantless inspections under the statutory and regulatory scheme. *Id.* at ¶ 20.  Its members, therefore, would have standing to sue in their own right.

Second, Free Speech Coalition represents more than 1,000 businesses and individuals throughout the United States engaged in the production of non-obscene adult material and is dedicated to assisting its members in the exercise of their First Amendment rights and in defense of those rights against censorship.  *Id.* at ¶ 18. The inspection scheme threatens its members' First and Fourth Amendment rights.  Amended Complaint (Doc. No. 84) at  ¶ 74. Thus, the interests Free Speech Coalition seeks to protect are germane to its purpose.

Third, assertion of the Fourth Amendment claim on its members' behalf does not involve "an inappropriate level of individual participation." *Pennsylvania Psychiatric Society*, 280 F.3d. at 284. Defendant argues that Plaintiffs cannot satisfy this requirement of associational standing on the theory that the members who were subject to inspection would have to come forward and be witnesses to establish the details of those inspections. Memorandum in Support of Defendant's

Motion to Dismiss in Part (Doc. No. 92) at 14.[8]  But that's actually not true.  The primary evidence

that will flesh out what happened during the inspections will be the testimony of the FBI agents who

performed them and the records they created in connection with those inspections.  To be sure, the

small number of the Coalition's more than 1,000 members who were subject to warrantless

inspections *may* also be asked to testify about those searches.  However, their testimony is by no

---

[8]  In advancing this claim, Defendant makes a troubling accusation: "[W]hen undersigned counsel for defendant requested, following remand, that FSC provide identities of those members in initial disclosures, FSC again ***refused***, suggesting instead defendant should identify all subjects of past inspections to FSC." Memorandum in Support of Motion to Dismiss in Part (Doc. No. 92) at 14 n.4 (emphasis added).

The exchange between counsel for Defendant and counsel for Plaintiffs shows otherwise. In an email sent on July 9, 2012, counsel for Defendant wrote: "Thanks again for sending the drafts last week. In regard to discovery issues, I am wondering first of all if plaintiffs will supplement their initial disclosures to identify the individuals that plaintiffs allege were subject to 2257/2257A inspections, and if so, when I can expect to receive that information."  Plaintiffs' counsel responded in a letter dated July 17, 2012: "You begin by asking us to supplement our initial disclosures to identify individuals who were subject to 2257 inspections. ***We, of course, will provide full discovery of the information you seek as well as other discovery relevant to pending issues.*** We are reminded, however, that you never provided us with your initial disclosures. Specifically, we ask that you promptly provide us with your initial disclosures and that you include in your disclosures, the names of the agents and others who have been involved in the 2257 inspection process and a list of the organizations and individuals who have been subject to inspection. This will assist us in providing complete information in response to your request."

The declaration of Agent Nanavaty states that the FBI has performed 29 inspections, Declaration of S.A. Nanavaty at ¶ 8; Plaintiffs' simple request that Defendant identify the subjects of these 29 inspections was neither burdensome nor unreasonable. With the list of those businesses and individuals who had been subject to inspection, Plaintiff could be certain that it was providing complete and accurate information to the Defendant regarding which of its 1,000 members had been inspected. Defendant did not respond to Plaintiffs' request, however.

Plaintiffs served their initial disclosures on Defendant on March 11, 2010; Defendant has provided none to Plaintiffs.  The parties have entered into a stipulation, at Defendant's request, that all discovery–including initial disclosure obligations–regarding the Fourth Amendment claim be stayed pending resolution of Defendant's Motion to Dismiss in Part. Stipulation to Stay Discovery. (Doc. No. 94).

means essential.  Rather, the testimony of the searching agents will likely be sufficient to illuminate

every detail of the warrantless searches.   Just as importantly, even if a small number of the

Coalition's members are asked to testify at deposition or trial about the inspections that occurred at

their premises, that would in no way defeat the Coalition's associational standing. As the Third

Circuit explained:

> In *Warth* [*v. Seldin*], 422 U.S. [490] at 511, 95 S.Ct. [2197]at 2211-12 [(1975)]
> (emphasis added), the Court wrote:
>
>> [S]o long as the nature of the claim and of the relief sought does not
>> make the individual participation of ***each injured party indispensable***
>> to proper resolution of the cause, the association may be an
>> appropriate representative of its members entitled to invoke the
>> court's jurisdiction.
>
> The Court quoted and relied upon this statement in *Hunt*, 432 U.S. at 343, 97 S.Ct.
> at 2441, and [*International Union*, *United Automobile*, *Aerospace and Agricultural
> Implement Workers of American v.*] *Brock*, 477 U.S. [274]at 282, 106 S.Ct. [2523]at
> 2528-29 [(1986)]. ***Accordingly, it appears that an association may assert a claim
> that requires participation by some members.***
>
> Here, the claims asserted by the Council would require some participation by some
> Council members. This case, unlike many prior associational standing cases, does not
> involve a challenge to a statute, regulation, or ordinance, but instead involves a
> challenge to alleged practices that would probably have to be proven by evidence
> regarding the manner in which the defendants treated individual member hospitals.
> Adjudication of such claims would likely require that member hospitals provide
> discovery, and trial testimony by officers and employees of member hospitals might
> be needed as well. Nevertheless, since participation by "each [allegedly] injured
> party" would not be necessary, we see no ground for denying associational standing.

*Hosp. Council v. City of Pittsburgh*, 949 F.2d 83, 89-90 (3rd Cir. 1991) (emphasis added).  *See also*

*Pennsylvania Psychiatric Society*, 280 F.3d at 283. ( "The need for some individual participation,

however, does not necessarily bar associational standing under this third criterion.")

20

**C.      Plaintiffs' Fourth Amendment Claims Are Ripe for Adjudication.**

The foreground discussion regarding standing applies with equal force to defeat the government's argument that Plaintiffs' Fourth Amendment challenge is not ripe for review. A recent Third Circuit case addressing ripeness makes the frailty of Defendant's argument even more apparent. *Lewis v. Alexander*, 685 F.3d 325 (3rd Cir. 2012).

*Lewis* reiterated the "most important factors" in considering whether a case is ripe: "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."   *Id.* at 341 (citations omitted).  At issue was a challenge by trustees and trust beneficiaries to a state Medicaid statute that conflicted with the federal Medicaid Act with regard to the eligibility criteria for special needs trusts.

In addressing defendants' arguments that plaintiffs' claims were not ripe, the court evaluated plaintiffs' claims under the three factors identified above.  With regard to adversity of the interest of the parties, it stressed that"[a]dversity require[d] opposing legal interests." *Id.* This requirement, the court found, was easily met: Defendants "have an obligation to enforce [the challenged statute] and Plaintiffs seek to evade its strictures." *Id.* The exact same adversity of interest is present here: Defendant is obligated to enforce the statute and regulations including the inspection regimen while Plaintiffs here must comply with that inspection scheme, which they challenge as unconstitutional.

With regard to the second factor of "conclusiveness of judgment," the court explained that "[c]onclusivity depend[ed] on the ability of a decision to 'define and clarify the legal rights or relations of the parties.'" *Id.* (citations omitted). Again, the court found that plaintiffs satisfied this requirement, finding that  "[a] decision here would establish whether the statute can be enforced against the Plaintiffs, so it would define and clarify Plaintiffs' legal rights." *Id.* The same is true here.

Lastly, with regard to the third factor requiring an evaluation of the utility of a judgment on the matter, the court found that a decision would also be of practical utility–allowing the plaintiffs to make informed decisions about the administration of their trusts and the state law's effect upon them. *Id.*  Again, the same is true here.

After evaluating the ripeness of plaintiffs' claims under what it identified as the most important factors, the court in *Lewis* addressed the defendants' separate arguments against ripeness. Defendants had argued that because the agency administering the state Medicaid program had not made any authoritative interpretations of the statute with regard to the eligibility criteria and had unresolved issues regarding its enforcement, the case was not ripe. The court rebuffed that contention, finding that "the statutory text has its own freestanding meaning and imposes requirements on trusts even without agency interpretation." *Id.*  And, the court added that any representation by the agency that it would not enforce the statute in an unconstitutional way would be insufficient to save it. *Id. citing United States v. Stevens*, 130 S.Ct. 1577 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.") The court also noted that the record showed that the defendants had attempted to enforce the provisions of the challenged statute and had circulated a document addressing the requirements of the statute. *Id.* 341-42. It, therefore, concluded that the plaintiffs were entitled to an examination of the statute for the purpose of having their rights and obligations clarified and that the plaintiffs' claims were ripe for adjudication. *Id.* at 342.

Here, as explained above, Plaintiffs have had to alter their conduct and lives to comply with the very requirements of the inspection regime–a regime that they challenge as unconstitutional under the Fourth Amendment and under which the government has conducted 29 inspections.  Their

22

claims are ripe for adjudication.

## CONCLUSION

The standing and ripeness arguments made in Defendant's Motion to Dismiss in Part should

be rejected as inconsistent with the Third Circuit's mandate and on their merits.

Respectfully submitted,


Date: September 14, 2012              /s/ J. Michael Murray
                                      J. MICHAEL MURRAY (0019626)
                                      jmmurray@bgmdlaw.com
                                      LORRAINE R. BAUMGARDNER (0019642)
                                      lbaumgardner@bgmdlaw.com
                                      BERKMAN, GORDON, MURRAY & DeVAN
                                      55 Public Square, Suite 2200
                                      Cleveland, Ohio  44113-1949
                                      (216) 781-5245 / (216) 781-8207 (Facsimile)

                                      KEVIN E. RAPHAEL (72673)
                                      KER@Pietragallo.com
                                      J. PETER SHINDEL, JR. (201554)
                                      JPS@Pietragallo.com
                                      PIETRAGALLO GORDON ALFANO BOSICK
                                       & RASPANTI, LLP
                                      1818 Market Street, Suite 3402
                                      Philadelphia, Pennsylvania 19103
                                      (215) 320-6200 / (215) 981-0082 (Facsimile)

                                      Attorneys for Plaintiffs

23

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2012, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs