IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC. et al., | ) | Civil Action No. 2:09-4607 |
| | ) | |
| Plaintiffs, | ) | Judge Michael M. Baylson |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT'S REPLY IN SUPPORT |
| THE HONORABLE ERIC H. HOLDER, JR., | ) | OF MOTION TO DISMISS |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    THE THIRD CIRCUIT HAS NEITHER CONSIDERED NOR RULED
        UPON THE JURISDICTIONAL ARGUMENTS RAISED IN DEFENDANT'S
        MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    PLAINTIFFS FAIL TO ESTABLISH THEIR STANDING TO RAISE A
         FOURTH AMENDMENT CHALLENGE TO INSPECTIONS THAT ARE
         NOT TAKING PLACE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Plaintiffs Have Not Identified an Imminent Injury-in-Fact that Could
            Be Redressed by the Injunctive Relief that They Seek . . . . . . . . . . . . . . . 6

        B.    Plaintiff FSC Lacks Standing to Assert a Fourth Amendment Claim on
            Behalf of Its Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    III.    PLAINTIFFS FAIL TO SHOW THAT THEIR FOURTH AMENDMENT
         CLAIM SATISFIES ESTABLISHED RIPENESS STANDARDS . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Abbott Labs. v. Gardner,* 387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*A.O. Smith Corp. v. FTC,* 530 F.2d 515 (3d Cir.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ass'n of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp.*,
 210 F.2d 623 (3d Cir. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) . . . . . . . . . . . . . . . . . . . . . . 8

*Birdman v. Office of the Governor*, 677 F.3d 167 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 13

*Boliden Metech, Inc. v. United States*, 695 F. Supp. 77 (D.R.I. 1988) . . . . . . . . . . . . . . . . . . . 11

*Craig v. Boren*, 429 U.S. 190 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Freeman v. Corzine*, 629 F.3d 146 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gould Elec. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hosp. Council v. City of Pittsburgh*, 949 F.2d 83 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Navy Chaplaincy*, 534 F.3d 756 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.,* 475 F.3d 1228 (11th Cir. 2007) . . . . . . . . . . . . 4

*Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . 8

*McKay v. Heyison*, 614 F.2d 899 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977) . . . . . . . . . . . . . . . . . 3

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pub. Serv. Co. v. U.S. EPA*, 509 F. Supp. 720 (D. Ind. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rakas v. Illinois,* 439 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Jones*, 132 S. Ct. 945 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Kennedy*, 638 F.3d 159 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kennedy*, 682 F.3d 244 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Shaefer, Michael & Clairton Slag, Inc.*, 637 F.2d 200 (3d Cir. 1980) . . . . . . . . 8

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Warth v. Seldin,* 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>STATUTES</u>

18 U.S.C. § 2257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## <u>REGULATIONS</u>

28 C.F.R. § 75.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 C.F.R. § 75.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 15

## INTRODUCTION

Through their Fourth Amendment claim, plaintiffs seek to enjoin government inspections that are not occurring, based on an inspection program that existed over five years ago under previous versions of the applicable statutes and regulations, and that had only just begun before it was discontinued. No funding has been allocated for a new inspection program since that time, and even if inspections pursuant to the current versions of 18 U.S.C. §§ 2257 and 2257A, of age verification records kept by producers of sexually-explicit material, were to take place in the future, their scope, targets, and procedures – and indeed, even the question of whether administrative warrants might be sought – are a matter of pure speculation at this point.

Given this state of affairs, defendant has explained that it would be not only contrary to jurisdictional principles but also simply impossible to litigate plaintiffs' claim according to the terms specified by the Third Circuit. Of course, when the Third Circuit remanded plaintiffs' Fourth Amendment claim, it was unaware that the inspections alleged in plaintiffs' proposed amended complaint could only have taken place through a past inspection program that had ended over five years ago, or that no similar program was currently in operation. Plaintiffs are therefore misguided in their attempt to rely on the "mandate rule" for the notion that this Court is precluded from even considering the jurisdictional import of these facts. Not only does this Court have the authority to address its jurisdiction, under the circumstances, the Third Circuit's decision only reinforces the conclusion that plaintiffs' Fourth Amendment claim cannot proceed.

The Third Circuit's decision made clear that plaintiffs' Fourth Amendment claim could not be resolved in the absence of information about the "concrete factual context" of the inspections that plaintiffs seek to enjoin. But without an inspection program currently in operation, there are no concrete facts available to provide such a context. Moreover, without any

1

concrete prospect of inspections, plaintiffs cannot identify a cognizable and redressable injury

for purposes of their Fourth Amendment claim. Plaintiffs are simply wrong in their

characterization of a regulatory provision as subjecting producers of sexually-explicit film and

photographs to criminal sanction if they are not in physical proximity to their age verification

records 20 hours per week. Instead, the statutes only make unlawful the refusal to allow

inspections – something that could not happen if no inspections are initiated in the first place.

      Finally, even if plaintiffs had standing to pursue their Fourth Amendment claim, at this

point it should be dismissed as unripe. The Fourth Amendment issues that plaintiffs raise are not

fit for judicial resolution when the contours of any future inspections are entirely unknown, and

plaintiffs face no hardship if this issue is deferred until a new inspections are initiated under the

current versions of the statutes, should that ever happen. In light of the fact that no inspection

program is in operation, this Court is faced with the prospect of either issuing a purely advisory

opinion regarding a discontinued inspection program that ended over five years ago, or deciding

whether to enjoin future inspections based on nothing more than pure speculation regarding how

those inspections might be conducted. Rather than undertake either of those futile tasks, the

Court should dismiss plaintiffs' Fourth Amendment claim for lack of subject matter jurisdiction.

<u>**ARGUMENT**</u>

## I.    THE THIRD CIRCUIT HAS NEITHER CONSIDERED NOR RULED UPON THE JURISDICTIONAL ARGUMENTS RAISED IN DEFENDANT'S MOTION

      Plaintiffs contend that the Third Circuit's decision somehow precludes defendant from

moving to dismiss the Fourth Amendment claim in plaintiffs' newly-filed Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs are wrong. The Third Circuit did not address

jurisdiction, nor could it possibly have settled the question of this Court's jurisdiction over

2

claims that had not yet been filed, based on information that was not in the record.

      As explained in defendant's opening memorandum, all of the briefing in this case prior to the Third Circuit appeal addressed plaintiffs' pleadings solely on their face. In contrast, the instant motion addresses the jurisdictional defects of plaintiffs' Fourth Amendment claim as a factual matter, relying on the declaration testimony of FBI Special Agent Alan Nanavaty. *See Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a factual attack, the court may consider evidence outside the pleadings."); *see also Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977). Significantly, plaintiffs do not dispute the facts reported by Special Agent Nanavaty – including the fact that no inspection program is currently in place and that no inspections have occurred since October 2007. Nor do plaintiffs dispute that these facts were not in the record on appeal before the Third Circuit.

      Given that the factual basis for defendant's current Motion was not even in the record at the time the Third Circuit issued its opinion, plaintiffs' suggestion that the Third Circuit has somehow already implicitly resolved the jurisdictional questions that defendant has now raised in this Motion is far-fetched, to say the least. Indeed, if anything, the Third Circuit's decision strengthens the basis for dismissing the Fourth Amendment claim in plaintiffs' Amended Complaint as unripe and for lack of standing. For, in the absence of any ongoing inspection program, it is impossible, as a practical matter, to engage in the factual development that the Third Circuit held would be necessary in order to evaluate plaintiffs' Fourth Amendment challenge. Nothing in the mandate rule, as described in *United States v. Kennedy*, 682 F.3d 244, 252-53 (3d Cir. 2012), upon which plaintiffs rely, requires a district court, on remand, to retain jurisdiction over a claim after new evidence is presented demonstrating that jurisdiction is lacking (especially where, as here, the same facts that show the absence of jurisdiction also show

the impossibility of resolving plaintiffs' Fourth Amendment claim on the merits in accord with the appellate court's ruling). Indeed, *Kennedy* did not involve any jurisdictional issues; rather, it involved a criminal case that had been remanded solely for purposes of resentencing, and held that, given the limited scope of the remand, the district court was unjustified in vacating one count of the defendant's conviction. *Id.* at 254. Defendant has not asked this Court to undertake any similar expansion of the issues before it.

Plaintiffs' invocation of the mandate rule is misguided in other respects as well. For one thing, the Third Circuit simply never addressed jurisdiction in its decision. Even if defendant had not provided additional information with the instant Motion that was not in the record on appeal, this Court should hesitate to infer a binding holding from the Circuit court's silence. *Ass'n of Westinghouse Salaried Emp. v. Westinghouse Elec. Corp.*, 210 F.2d 623, 629 (3d Cir. 1954) (where jurisdiction "was passed sub silentio," a court's decision was "not binding precedent on the issue of jurisdiction"); *see also In re Navy Chaplaincy*, 534 F.3d 756, 764 (D.C. Cir. 2008) ("It is a well-established rule that cases in which jurisdiction is assumed *sub silentio* are not binding authority for the proposition that jurisdiction exists." (internal quotation omitted)); *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.,* 475 F.3d 1228, 1231 (11th Cir. 2007) ("If jurisdictional holdings are explicit they must be followed, not so if they are only implicit.").

Indeed, while plaintiffs cite a court's independent obligation to consider jurisdiction before addressing the merits of a filed claim, they ignore the procedural posture of their Fourth Amendment claim on appeal. The issue that the Third Circuit primarily addressed was not whether plaintiffs' Fourth Amendment claim should survive as filed, but whether plaintiffs should be permitted to amend that claim by filing a new complaint. The question of jurisdiction over the original claim was thus not a determinative issue, and there is no similar judicial

4

obligation to address jurisdiction over potential claims that have not yet actually been filed. Of course, after an amended complaint is filed, the Federal Rules provide a defendant a renewed opportunity to raise a defense under Rule 12(b) – including the defense that the Court lacks subject matter jurisdiction over plaintiffs' claim based on facts outside the pleadings. *See* Fed. R. Civ. P. 12(b), 15(a). Nothing in the Third Circuit's decision can be construed to bar defendant from raising such a defense regarding an issue that the Third Circuit never expressly addressed.

Plaintiffs' notion that standing and ripeness have forever been resolved in this case is also contrary to well established precedent regarding a plaintiff's jurisdictional burdens. The Supreme Court has recognized that those burdens increase as a case progresses, to match "'the manner and degree of evidence required'" at "'successive stages of the litigation.'" *Miller v. Rite Aid Corp.*, 334 F.3d 335, 344 (3d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Again, even if the Third Circuit had addressed jurisdiction (which it did not), its decision, at a stage when only a facial 12(b)(1) motion and a responsive motion to amend were at issue, cannot override plaintiffs' continuing obligation in this regard. Unlike a facial 12(b)(1) motion, a factual 12(b)(1) motion, such as the Motion that defendant has filed here, provides a mechanism for bringing undisputed facts that bear on jurisdiction to the Court's attention even when the plaintiffs have omitted such facts from their pleadings. The Court may then dispose of a case or claim at an earlier stage before the parties and the Court expend resources on a discovery process that would turn out to be pointless. Of course, even if defendant had not brought a motion raising these jurisdictional arguments now, the Court would eventually, at some later stage of the litigation, have to face the jurisdictional import of the fact that no inspection program is currently in operation.

II.     **PLAINTIFFS FAIL TO ESTABLISH THEIR STANDING TO RAISE A FOURTH AMENDMENT CHALLENGE TO INSPECTIONS THAT ARE NOT TAKING PLACE**

A.      **Plaintiffs Have Not Identified an Imminent Injury-in-Fact that Could Be Redressed by the Injunctive Relief that They Seek**

As explained in defendant's opening brief, plaintiffs lack standing to assert their Fourth Amendment claim for injunctive relief because, in the absence of any ongoing inspection program, or any prospect of inspections occurring in the foreseeable future, plaintiffs cannot establish a real, immediate, or direct threat of injury caused by the Fourth Amendment violation that they allege, nor would their asserted injury be redressed by injunctive relief. Def. Mem. at 8-9. Plaintiffs' attempt in their opposition brief to prove otherwise is unavailing. Indeed, in their effort to establish standing, plaintiffs confuse two entirely separate things – the searches that are the subject of their challenge (which, defendant has explained, are not taking place), and a regulation that describes the timing of such searches (which plaintiffs misconstrue to impose an independent obligation, but which in any event does not itself effectuate a search or seizure).

In particular, plaintiffs' Fourth Amendment claim states a challenge to *allegedly unreasonable inspections* conducted pursuant to 18 U.S.C. §§ 2257 and 2257A and their implementing regulations. Yet plaintiffs would now have the Court conclude that their *standing* to assert a Fourth Amendment claim derives, not from the entirely uncertain prospect of future inspections, but from the regulatory provision that states that "[i]nspections shall take place during normal business hours" and that, to the extent a producer "does not maintain at least 20 normal business hours per week, the producer must provide notice to the inspecting agency of the hours during which records will be available for inspection, which in no case may be less than 20 hours per week." 28 C.F.R. § 75.5(c)(1). According to plaintiffs, this provision causes an

6

"injury" that establishes their standing to raise a Fourth Amendment claim. Pl. Opp. at 13-14.

There are numerous problems with plaintiffs' argument on this point. First, plaintiffs' description of the requirement set forth at § 75.5(c)(1) is inaccurate. Contrary to their characterization, nothing in the regulation states that producers of sexually-explicit material must "be in proximity to their records at all times," Pl. Opp. at 14, during business hours. Indeed, producers need not keep 2257/2257A records at their place of business at all but may instead use a third-party custodian. *See* 28 C.F.R. § 75.4. Second, while § 75.5(c)(1) addresses the times during which inspections may take place, it does not itself effectuate a search or seizure. The only "searches" or "seizures" that plaintiffs have identified as the subject of their Fourth Amendment challenge are the inspections themselves. If, as defendant has explained is the case, no inspections are occurring, a regulatory description of the timing of those nonexistent inspections cannot, by itself, possibly be deemed to inflict a cognizable injury. Even the notification requirement – which applies only to producers that do not maintain regular business hours and to which only one plaintiff, David Connors, claims to be subject – does not qualify as a search or a seizure, and plaintiffs have not contended otherwise. That requirement thus cannot impose an "injury" fairly traceable to the Fourth Amendment violation that plaintiffs allege.

The injury-in-fact requirement of standing to raise a particular claim "turns on the nature and source of the claim asserted." *Warth v. Seldin,* 422 U.S. 490, 500 (1975). For purposes of plaintiffs' Fourth Amendment claim, the only injury that could satisfy the injury-in-fact requirement would be one related to the "legally protected interest" at issue – the Fourth Amendment right to be free from unreasonable searches and seizures. *Cf. Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010). Thus, where a search has already taken place, the standing of an individual raising a Fourth Amendment challenge turns on whether that individual had a

7

reasonable expectation of privacy in the property searched – a question that courts have recognized is bound up with the merits of the Fourth Amendment analysis. *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011) (citing *Rakas v. Illinois,* 439 U.S. 128, 140 (1978)); *accord United States v. Shaefer, Michael & Clairton Slag, Inc.*, 637 F.2d 200, 203 (3d Cir. 1980). In other words, without a reasonable expectation of privacy in the searched area, an individual could not have suffered an injury-in-fact fairly traceable to the challenged search; nor would there be a Fourth Amendment "search" at all, with respect to that individual.

Where, as here, plaintiffs seek to enjoin searches that have not yet occurred, their asserted injury must be "certainly impending" in order to qualify as "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 243 (3d Cir. 2012) (internal quotation omitted). But again, plaintiffs misstate the law when they suggest that the "certainly impending" injury for purposes of their Fourth Amendment claim could be anything other than the search itself, or the threat of sanction for failing to undergo the search. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298-99 (1979); *McKay v. Heyison*, 614 F.2d 899, 903-04 (3d Cir. 1980).[1]

The nebulous "burdens" that plaintiffs claim to suffer here, as a result of the description

---

[1] The cases that plaintiffs cite do not support their theory of standing. *See* Pl. Opp. at 13. None of these cases address a Fourth Amendment challenge to the prospect of a search; rather, plaintiffs in these cases sought to challenge provisions that imposed affirmative obligations or prohibitions on their activities. *See, e.g., Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (plaintiffs had standing to raise First Amendment challenge where they would "have to take significant and costly compliance measures" to comply with the challenged requirement "or risk criminal prosecution"); *Craig v. Boren*, 429 U.S. 190, 194 (1976) (plaintiff had standing to raise equal protection claim where she was forced either to incur a "direct economic injury" by complying with the challenged provision or suffer "sanctions and perhaps loss of license" if she failed to comply (internal quotation omitted)). None of these cases suggest that standing can be established simply by alleging a need to take some action in order to prepare for the uncertain prospect of a future government inspection, particularly where the law in question neither requires such action nor imposes any sanction for failure to undertake it.

in 28 C.F.R. § 75.5(c)(1) of when searches might occur, Pl. Opp. at 14, are a far cry from an imminent threat of criminal sanction. Indeed, the statutes make clear that the relevant "unlawful" conduct subject to criminal sanction is the "refus[al] to permit the Attorney General or his or her designee to conduct an inspection under subsection (c)." 18 U.S.C. §§ 2257(f)(5); 227A(f)(5). To be sure, if an inspection program were currently in effect, there *might* be circumstances where a producer without regular business hours, who failed to notify the Government regarding the times when records would be available, could be deemed to have refused to permit inspection, in violation of §§ 2257(f)(5) or 2257A(f)(5). Again, however, in the absence of any inspection program, nothing in the description of timing of inspections, set forth in 28 C.F.R. § 75.5(c)(1), could possibly result in criminal sanction. Plaintiffs have failed to establish any imminent threat of injury as a result of the inspection provisions of 18 U.S.C. §§ 2257 or 2257A, and they therefore lack standing to raise a Fourth Amendment challenge to those provisions.

### B.    Plaintiff FSC Lacks Standing to Assert a Fourth Amendment Claim on Behalf of Its Members

Plaintiffs have likewise failed to establish that Free Speech Coalition, Inc. ("FSC") has associational standing to seek injunctive relief based on alleged inspections of certain members (who remain unidentified) during the brief period, over five years ago, when an inspection program existed. As explained in defendant's opening brief, even if one or more members of FSC were among the 29 producers whose records were inspected over five years ago, those members would not have standing to seek injunctive relief in their own right, so FSC cannot seek injunctive relief on their behalf. Any past injuries that those members may have sustained cannot be redressed by the injunctive relief that plaintiffs seek.

Plaintiffs do not attempt to argue that FSC members' asserted past injuries are

redressable through this action. Instead, they simply ignore the redressability requirement altogether, and repeat the notion (which defendant has already refuted above) that the Third Circuit has already ruled on this issue. Of course, even if the Third Circuit's silence on jurisdictional issues were the equivalent of a jurisdictional holding, the Third Circuit did not and could not have ruled on how the absence of any ongoing inspection program might affect FSC's associational standing because that fact was not in the record on appeal before the Third Circuit.

As defendant has explained, the fact that the prior inspection program is no longer in operation necessarily means that the injunction plaintiffs seek could not possibly redress any injuries that FSC members might assert as a result of inspections that occurred while that program was in effect. Even if the parties went through discovery regarding those past inspections, and the Court concluded that every one of those inspections was in violation of the Fourth Amendment, the Court's ruling would be nothing more than an advisory opinion regarding inspections that occurred well in the past, under a now-discontinued program that operated pursuant to prior versions of the statutes and regulations.[2]  Those past inspections have no relevance to the manner in which a hypothetical future inspection program might be conducted. Indeed, even plaintiffs' contention that the past inspection program conducted

---

[2] While plaintiffs attempt in passing to minimize the differences in the prior versions of these provisions, *see* Pl. Opp. at 2, the regulations in effect at that time did not include visual depictions of simulated sexually-explicit conduct, or of actual lascivious exhibition of the genitals or pubic area, nor did they allow for third-party custodians of producers' records. *See* Def. Mem. at 6. Such changes could well impact who would be subject to inspection. Moreover, other developments in the law, such as the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), could also affect how the Government might conduct inspections in the future, should it ever initiate a new inspection program. *See* Def. Mem. at 16-17. Indeed, plaintiffs' suggestion that a future inspection program might involve "FBI agents or other designees" carrying out inspections "as part of their regular duties," without any separate program with specially-allocated funding, Pl. Opp. at 8 n.4, though pure speculation on plaintiffs' part, only makes clear that any future inspection program could well take place in an entirely different "factual context" from those that occurred in the past.

"warrantless" inspections has no bearing on the manner in which a future inspection program might be carried out. As defendant has explained, if the Government were to initiate a new inspection program in the future, it would have to consider the scope of the inspections it intended to conduct, pursuant to the current version of the statutes and regulations, in light of current legal authority. If the Government determined that it would be appropriate to obtain ex parte administrative warrants in some circumstances, nothing would prevent it from doing so. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 316 (1978) (holding that, absent an employer's consent, government must secure administrative warrants to conduct inspections of businesses under OSHA but indicating that inspection program may continue without revising statutes or implementing regulations); *Boliden Metech, Inc. v. United States*, 695 F. Supp. 77, 81 (D.R.I. 1988) (recognizing EPA's authority under Toxic Substances Control Act to obtain ex parte administrative warrants even though statute was silent on the question); *Pub. Serv. Co. v. U.S. EPA*, 509 F. Supp. 720, 723 (D. Ind. 1981) (same, in regard to Clean Air Act). Such a possibility highlights the purely advisory nature of any ruling this Court might enter regarding past inspections. The asserted injuries of FSC members are thus not redressable through this action.

Defendant has further explained that FSC lacks associational standing based on alleged past inspections of its members because the participation of those members would be required in order to conduct the fact-intensive inquiry that the Third Circuit deemed necessary to evaluate plaintiffs' Fourth Amendment claim. Plaintiffs now suggest that FSC members who were allegedly subject to inspections need not participate at all because the "primary evidence" in regard to those inspections could be found in the possession of defendant. Pl. Opp. at 19. Plaintiffs further suggest that, even though some FSC members "may" testify, that would not change the standing analysis. *Id.* at 19-20 (citing *Hosp. Council v. City of Pittsburgh*, 949 F.2d

11

83, 89-90 (3d Cir. 1991)).

Plaintiffs' approach would evidently leave the decision of FSC member participation entirely up to plaintiffs' own discretion. However, the Third Circuit's description of the evidentiary development that would be necessary (which it presumably provided on the incorrect premise that the inspections that plaintiffs alleged had occurred were in the recent past, and were part of what it likely assumed was a continuing, ongoing inspection program) makes clear that the facts of *each* challenged inspection would be necessary and did not limit the source of those facts to the Government. *E.g.*, *Free Speech Coal, Inc. v. Holder* ("*FSC II*"), 677 F.3d 519, 543-44 & n.22 (3d Cir. 2012) (referencing plaintiffs' "as-applied" Fourth Amendment challenge and indicating that the "concrete factual context" would be necessary to evaluate those Fourth Amendment claims). Plaintiff have therefore failed to establish that individual participation by those FSC members who claim to have been subject to inspections would be unnecessary, even if plaintiffs otherwise had standing to assert a Fourth Amendment claim based on past inspections.

## III. PLAINTIFFS FAIL TO SHOW THAT THEIR FOURTH AMENDMENT CLAIM SATISFIES ESTABLISHED RIPENESS STANDARDS

Finally, as explained in defendant's opening brief, the absence of any current inspection program, as well as the lack of any funding or plan to reinstate any such program, together with the Third Circuit's unequivocal ruling that the evaluation of any Fourth Amendment claim would require an examination of the concrete factual context of the inspections subject to challenge, all lead to the inescapable conclusion that plaintiffs' Fourth Amendment claim is unripe. In their opposition, plaintiffs rely entirely on a single Third Circuit decision, *Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012), that addressed ripeness principles in broad terms, in a context that had nothing to do with the Fourth Amendment. Plaintiffs simply ignore the more familiar and

well established standard that generally governs a ripeness analysis – requiring analysis of the
"fitness of the issues for judicial decision" and "the hardship to the parties of withholding court
consideration." *See* Def. Mem. at 15 (quoting *Birdman v. Office of the Governor*, 677 F.3d 167,
173-74 (3d Cir. 2012)). In regard to the fitness of the Fourth Amendment issue for decision,
defendant has explained that there is simply no "concrete factual context" at present from which
to evaluate a §§ 2257/2257A inspection program that does not currently exist. Given that the
Third Circuit considered such a factual context necessary, there would be no way to decide
plaintiffs' Fourth Amendment claim unless there were currently an inspection program in place.
Plaintiffs simply ignore this difficulty. While they appear to assume that the 29 inspections that
did occur in 2006 and 2007 would suffice, entirely missing from plaintiffs' argument is any
explanation of how inspections that occurred over five years ago, under a program that is no
longer in operation, and under previous versions of the statutes and regulations at issue, could
possibly provide a concrete factual context from which to evaluate an inspection program that, at
present, does not actually exist. As explained above, there is no basis to assume that, even if
inspections were to resume at some point in the future, they would be identical either in scope or
in procedures to the inspections that occurred in the past.[3]

      Perhaps of greatest significance is the fact that, as mentioned above, nothing in the
statutes or regulations would prevent the Government from seeking an administrative search
warrant if it were to conclude that doing so were appropriate. Such a conclusion would remove
any adversity of interests between the parties – the factor emphasized in *Lewis*, 685 F.3d at 341,
the case upon which plaintiffs rely – since plaintiffs' only quarrel with past inspections appears
to be that they were conducted without warrants. It is simply premature at this point to assume

---

[3] *See supra* note 2 and accompanying text; *see also* Def. Mem. at 6, 16-17.

that any future inspections that might take place would occur in any particular manner. The issues raised by plaintiffs' Fourth Amendment claim are thus not fit for review given the Third Circuit's specific description of what would be necessary to evaluate them.

In regard to the "hardship" analysis, both the Supreme Court and the Third Circuit have repeatedly explained that, when plaintiffs seek to enjoin enforcement of a law on a prospective basis, the relevant "hardship" must stem from enforcement of the same provision that they seek to enjoin. In other words, the provision must place plaintiffs on the "horns of a dilemma," such that they must either take immediate action to comply with a requirement, or risk sanction for failing to do so. *E.g.*, *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (observing that "agency regulations can sometimes force immediate compliance through fear of future sanctions"); *Abbott Labs. v. Gardner*,  387 U.S. 136, 153 (1967) (a claim is ripe "where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs *with serious penalties attached to noncompliance*" (emphasis added)); *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 524 (3d Cir.1976) ("[O]ne seeking discretionary relief may not obtain pre-enforcement judicial review of agency action if there is no *immediate* threat of sanctions for noncompliance, or if the potential sanction is de minimis." (emphasis added)). As the Third Circuit explained in *A.O. Smith*, the prospective use of an enforcement mechanism, sufficiently imminent to require immediate action in order to avoid it, is essential to establish an actual case or controversy in the context of pre-enforcement review because it is the prospect of enforcement that may place a plaintiff "on the horns of a dilemma" (to comply or not to comply) and may thereby raise an imminent threat of injury. *Id.*; *accord Wearly v. FTC*, 616 F.2d 662, 667 (3d Cir. 1980) (plaintiffs' claim was unripe because they failed to establish that they had been placed "on the horns of a dilemma").

14

Plaintiffs cannot meet that standard here because, as explained above, the statutes provide for sanctions only *after* the Government has attempted to perform an inspection but was prevented from doing so. *See* 18 U.S.C. §§ 2257(g)(5), 2257A(g)(5). Where no inspection program is in operation, there is no prospect of sanctions under this provision. Simply put, no plaintiff can "refuse" to allow an inspection that no one is trying to conduct. It necessarily follows that no plaintiff can be on the "horns of a dilemma" with respect to their Fourth Amendment claim. Again, plaintiffs' suggestion to the contrary relies on their misreading of 28 C.F.R. § 75.5(c)(1). For the same reasons explained above, that provision does not actually require producers to "alter their conduct and lives," Pl. Opp. at 22, nor does it subject plaintiffs to sanctions for failure to do so. In sum, the issues raised by plaintiffs' Fourth Amendment claim are not fit for decision at present, nor would a delay subject plaintiffs to any hardship. Plaintiffs' Fourth Amendment claim should therefore be dismissed as unripe.

## CONCLUSION

For the reasons set forth above and in defendant's opening brief, Count Four of plaintiffs' Amended Complaint should be dismissed for lack of subject matter jurisdiction.

October 5, 2012

Respectfully submitted,
STUART F. DELERY
Acting Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director

/s/ Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Washington, DC
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

15

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Memorandum has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.


Dated: October 5, 2012                           <u>/s/</u>
                                                 Kathryn L. Wyer