# EXHIBIT 3

**Berkman, Gordon, Murray & DeVan**
**Attorneys and Counselors at Law**
55 PUBLIC SQ., STE 2200
CLEVELAND, OH 44113-1949

J. MICHAEL MURRAY
LORRAINE R. BAUMGARDNER
MARK R. DeVAN
STEVEN D. SHAFRON
BROOKE F. KOCAB
RAYMOND VASVARI
NANCY C. MARCUS
WILLIAM C. LIVINGSTON

BERNARD A. BERKMAN
(1929-1985)

(216) 781-5245
www.bgmdlaw.com

Fax (216) 781-8207
lbaumgardner@bgmdlaw.com

January 24, 2013

***Via email and regular mail***

Kathryn L. Wyer
U. S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington D.C. 20530

Re: *Free Speech Coalition, et al., v. Holder*,
Case No. 2:09-4607

Dear Kathy,

I am responding to your letter of January 22, 2013 regarding our objections to the discovery you propounded and other issues you raise with regard to our responses, in an effort to bridge our disagreements.

**Objections based on Privacy Concerns**

Interrogatory No. 15 and Requests for Production of Document Nos. 5 and 6 request that Plaintiffs provide personal information to the government about third parties depicted in their expression. We have proposed that the production of such information be made subject to the same procedures put in place to allow production of information by the government "regarding individuals appearing in visual depictions of sexually-explicit conduct"–namely, "the redaction of personally-identifying information ...including names, aliases, and addresses of those individuals." Agreed Protective Order at ¶2. We also proposed that the information be produced subject to the Agreed Protective Order that you drafted.

The privacy concerns of these third parties are compelling. The policies of the Privacy Act recognize as much. Plaintiffs' concern with the statutes' intrusion into their models' privacy underlies their claims. See Amended Complaint (Doc. No. 84) at ¶¶24, 36, 39, 41, 47, 51. *See Malibu Media, LLC v. John Does 1-16*, CIV.A. 12-2078, 2012 WL 4717893 (E.D. Pa. Oct. 3, 2012) (Baylson, J).

As an additional matter, at least one of the principal primary producers from whom Sinclair

Institute obtains content (Wicked) has granted Sinclair Institute access to its 2257 records on the express condition that Sinclair Institute warrants it will only permit "persons authorized by 18 U.S.C. 2257 and 28 C.F.R. Part 75 to have access to the information" contained in those records and requires Sinclair Institute to indemnify it for allowing access to persons not so authorized. Thus, Sinclair Institute requires some measure to assure that it is not in breach of this agreement in providing 2257 records to you.

You have only agreed to treat the actual names and driver's licenses as Protected Information under the Protective Order. We do not believe this goes far enough. We believe that the entirety of the model releases and 2257 records be designated as Protected Information since they pertain to third parties who are not before the court–with the exception of the models' ages and dates of birth. Copies of any visual depictions in which these third parties appear that you wish to bring to the court's attention can be filed under seal. See Agreed Protective Order at ¶3.2.

Moreover, those Plaintiffs who are able, should be permitted to redact names and personally identifying information–again, save for ages or dates of birth.

You have proposed and we have agreed to a Protective Order that sets forth a reasonable and straightforward mechanism for the protection of private information. I believe it should cover the private information sought by your discovery.

**Objections based on Burdensomeness**

I will detail the burdens that your discovery requests poses for each particular plaintiff. Based on this information, I ask that you narrow the scope of your request to a representative sample of these records. After reviewing a representative sample, we can discuss the need for production of additional records–a procedure that you proposed, but ultimately did not adopt, in producing the FBI inspection reports.

**Michael Barone**: As indicated in his answers to Defendant's Second Set of Interrogatories, Barone has taken a full time job as a commercial photographer. He has been a professional photographer for thirty years, so has hundreds of model releases which are not organized by the content of the expression in which the models appear and thus it would be nearly impossible for him to isolate which of his releases pertain only to sexually explicit expression. Barone also has accumulated a substantial number of 2257 records during the course of his career. They are all kept in hard copy format on paper. He has no employees and is also dealing with a family illness. You claimed in response to our interrogatory asking you to identify the number of certifications received by the Attorney General, that our request was too burdensome because it would require someone in the government to "go through paper files" and manually count the certifications collected for the

two years during which certifications were kept in paper files. By that definition of burdensome, asking Barone to copy and produce paper documents accumulated since 1978 clearly meets it. Barone will agree to produce redacted copies of a representative sample of his records, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Barbara Nitke:** Nitke, like Barone, is a professional photographer with no staff. Nitke has roughly 1,000 pages of 2257 records in paper format. She has created a large body of sexual work involving about 425 people since 1982 in addition to her other work. Like Barone, her model releases are not organized by the content of expression. Nitke will agree to allow inspection of a representative sample of her records at her apartment, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**David Levingston:** Levingston has no 2257 records. He has accumulated model releases throughout the course of his career, but like the other plaintiffs, has not organized the releases based on the content of the expression in which the models appear. Thus, he is unable to segregate those releases that pertain to work with sexual imagery. Levingston will agree to produce redacted copies of all model releases that are readily available to him, providing that you agree that they are subject to the Agreed Protective Order.

**David Steinberg:** Steinberg also keeps his 2257 records and releases in paper format and does not organize his model releases based on the content of the expression in which his models appear. The task of copying all the records responsive to your request would take a substantial number of man-hours. Like the other plaintiffs, Steinberg employs no staff. He will agree to produce redacted copies of a representative sample of his records, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Marie Levine**: Levine has scanned her records into digital format. She will agree to produce a representative sample of her records, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Carol Queen:** Queen has roughly 1,000 pages of 2257 records in paper format. She will agree to produce redacted copies of a representative sample of her records, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Betty Dodson and Carlin Ross**: Dodson and Ross will also agree to produce a representative sample of their records, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Sinclair Institute:** You have narrowed your request to seek 2257 records pertaining to 200

performers in the 18-20 year old category and 200 performers in the over-50 age group, but have not narrowed your request seeking all model releases since 1978. Sinclair Institute does not organize its 2257 records by the age of the performer, nor are they searchable by performer's age. Thus, to produce the records that you've requested, it would have to search through the volumes of records it maintains to verify the age of the performer in order to identify responsive documents. So while I appreciate the effort on your part to attempt to narrow this request, it still is unreasonably burdensome. I propose that Sinclair Institute produce 2257 records and model releases for the DVDs that we produced in response to Request No. 2, Defendant's First Set of Requests for Production plus 2257 records for an additional twenty-five different visual depictions produced by Sinclair Institute, providing you agree that they are subject to the Agreed Protective Order in their entirety.

**Requests Propounded on Free Speech Coalition and American Society of Media Photographers**

Free Speech Coalition and American Society of Media Photographers do not have possession, custody, or control over the documents of their members. Your discovery requests asking them to produce documents and information regarding their members is misplaced. *Sherwin-Williams v. Spitzer*, 2005 WL 2128938 (N.D. N.Y. 2005); *Rocky Mountain Farmers Union v. Goldstene*, 2011 WL 1403379 (E.D. Calif. 2011). Sinclair Institute and Nina Hartley are both members of Free Speech Coalition and have offered to produce the requested records in consonance with the conditions identified above. You already have 2257 records in your possession from those members who were inspected by the FBI. We will additionally agree to produce 2257 records and model releases of FSC member David Conners, subject to the conditions regarding privacy outlined at the beginning of my letter.

You have asked Free Speech Coalition and American Society of Media Photographers to produce their full member lists in lieu of responding to the above discovery requests. Free Speech Coalition and American Society of Media Photographers are voluntary associations formed to advocate on behalf of their members. Each is particularly committed to preserving the First Amendment rights of its members. Their membership lists are private and protected by the First Amendment. *Marrese v. American Academy of Orthopedic Surgeons,* 706 F.2d 1488 (7th Cir. 1983); *American Charities for Reasonable Fundraising Regulation, Inc. v. Gundersen,* 2011 WL 652477 (D. Utah, Feb. 15, 2011). Compelling them to disclose their membership to the government threatens the confidentiality that is essential to the mission of both organizations.

You have asked for the production of ASMP's full membership list. Only a portion of its members produces sexually explicit expression. Thus, your request is overbroad as to ASMP. A number of members of the American Society of Media Photographers who do produce sexually explicit expression have declined to be identified for purposes of this lawsuit. Their reasons are

varied: some have expressed fear of reprisal by the government for producing controversial expression and potential prosecution while others have refused to participate to protect the privacy of their models who are depicted in such expression. These are the very circumstances where disclosure of membership implicates the right of association protected by the First Amendment. *Nat'l Ass'n for Advancement of Colored People v. Button,* 371 U.S. 415, 445 (1963).

**Objection to information regarding gross revenues**

We disagree that plaintiffs' gross revenues from the production of sexually explicit expression is relevant to the claims or defenses in this litigation or likely to lead to admissible evidence. Nowhere in the statutes or regulations is commercial activity or distribution defined with reference to gross revenues. In fact, the government in insisting that the statutes do not apply to private expression–a premise rejected by the Third Circuit–has defined commercial activity as offering material for sale or trade.

Notwithstanding our objection, we have provided you with information regarding the revenues generated by most of the plaintiffs from the production of their sexually explicit expression.

Sinclair Institute is a privately held corporation. Their financial information is not available to the public and disclosure of the information could affect its competitive edge in the market place. *Goldenberg v. Indel, Inc.*, 2012 WL 15909 (D. N.J. 2012). The amount of its gross revenues from sexually explicit expression is wholly unnecessary to establish that it engages in the commercial distribution of this expression. As for gauging the costs imposed by the recordkeeping statutes, the raw figures are sufficient to establish the burden; but for the statutes and regulations, Sinclair Institute would not have to expend these funds to comply, no matter what the amount of its gross revenues.

**Objection to Production of Income Tax Returns**

Plaintiffs contend that the information contained in their respective income tax returns is not relevant to the burdens the statutes impose. Most of the plaintiffs have explained that they do not have any costs associated with the statutes, save for their own time devoted to comply with them on penalty of prosecution. Sinclair Institute has provided you with information and documentation of the costs it incurs in complying with the statute. We will not provide this information unless ordered by the Court.

**Responses to Interrogatories and Requests for Production that Specify that Plaintiffs Produce a Certain Number of Visual Depictions**

A number of your discovery requests have demanded that we identify or produce a specified number of visual depictions. The numbers you have chosen are arbitrary and function more to harass than to gather information relevant to this lawsuit. In response to Defendant's First Set of Discovery, Plaintiffs provided 10 photos from Barbara Alper, 10 photos from Michael Barone together with the citation to his website where additional examples of his work were published, 10 DVDs from David Conners and information regarding the ages of performers in more than 40 of Conners' productions and identified his two websites, 3 DVDs and 6 visual depictions from Betty Dodson and Carlin Ross and identified their website where additional depictions can be found, the citation to Marie Levine's website where numerous depictions are published, a photo from Dave Levingston and identified a book of his depictions, 10 photos from Barbara Nitke and citation to her website where other examples of her work is published, 7 examples of Carol Queen's work and the websites on which they could be found, 10 photos from David Steinberg, 10 DVDs from Sinclair Institute and citations to two websites where additional expression is published, and 100 examples of expression or related articles and the citations where they are published in support of Plaintiffs' overbreadth claim.

We also identified the website of Craig Morey, moreystudio.com, where representative depictions of a member of ASMP could be located. It was fully operating when we identified it in October. According to Mr. Morey, the website recently had a temporary service interruption, but is functioning properly now. Mr. Morey's work is also included in David Steinberg's book, *Photo Sex*, which we sent to you via Federal Express on January 16, 2013.

In response to your request, we supplemented this discovery by identifying 9 urls where Dave Levingston's work could be viewed and provided information about his book, *The Figure in Nature*. We also provided you with a journal article which you had difficulty accessing and excerpts from *Our Bodies, Ourselves* with information about its availability in a nearby public library.

Thus, we complied in a timely manner with your discovery requests and provided you with a sizeable body of information about and examples of the Plaintiffs' expression.

In your second set of discovery, you have asked each Plaintiff to identify "by creator, producer, title, date of creation, date of publication, publisher, URL, distributor," 50 examples of nine categories of expression–or put another way, have asked the plaintiffs to identify anywhere from 450 to nearly 6,000 depictions, depending on how your request is interpreted. On top of that, you have asked each individual plaintiff to produce 20 depictions of their expression that include the label and have asked FSC and ASMP to produce 20 such depictions from ten of their members for

a total of more than 1,500 depictions.

We have responded in good faith and have provided you with a representative sampling of each category of expression in response to Interrogatory No. 23 and have likewise provided you with another representative sampling of visual depictions responsive to Request for Production No. 7, including David Steinberg's book, *Photo Sex*, referenced above. For many of the categories set forth in Interrogatory No. 23 (see a., g.), we were able to easily identify more than 50 depictions. For others (b.,c.,e.), we explained that because of the private nature of the expression, depictions were not readily available but provided sources verifying their existence. As for those categories for which plaintiffs did not identify 50 depictions, we provided several examples that we found after a good faith effort to respond to your request. That does not mean, however, that plaintiffs are unable to locate additional depictions to satisfy the number that you specified. Rather, the effort to locate a list of depictions to meet the arbitrary number you've selected exceeds what is reasonable.

**Responses to Requests for Documents Pertaining to Specified FSC Members**

FSC produced documentation that it was able to locate verifying the membership status of each of the entities specified. It will perform an additional search to verify that there are no additional documents responsive to this request. It will produce any additional documentation that it finds.

**Specific Citations to Laws or Other Legal Requirements**

Plaintiffs will supplement their answers once their research is complete.

**Government's Responses to Interrogatory Nos. 9-11, Plaintiffs' First Set of Interrogatories**

On January 8, 2013, I agreed to your proposals for responding to Interrogatory Nos. 9-11. Please indicate when we will be receiving your answers.

We are reviewing your responses to our Second Set of Discovery and will address any issues we have with them in separate correspondence.

Very truly yours,

BERKMAN, GORDON, MURRAY & DeVAN

Lorraine R. Baumgardner