# EXHIBIT 4



**U.S. Department of Justice**

Civil Division, Federal Programs Branch
20 Massachusetts Ave, N.W.
P.O. Box 883 Ben Franklin Station
Washington, D.C. 20530

_____

Kathryn L. Wyer                               Tel: (202) 616-8475
Trial Attorney                                Fax: (202) 616-8470


BY E-MAIL

January 28, 2013

Lorraine Baumgardner
55 Public Sq., Ste. 2200
Cleveland OH  44113
lbaumgardner@bgmdlaw.com

      Re: *Free Speech Coalition v. Holder*, No. 2:09-cv-4607

Dear Lorraine,

      I am writing in response to your letter of January 24, 2013. While it appears that some of our disputes will have to be raised with the Court, I address other issues below in the hope of achieving a resolution.

**Plaintiffs' Privacy-Related and Burdensomeness Objections**

      If I understand correctly, Plaintiffs are refusing to respond to Defendant's Interrogatory No. 15 and Requests for Production Nos. 5 and 6 unless Defendant agrees that Plaintiffs may redact all information identifying the individuals appearing in Plaintiffs' visual depictions, except for ages and dates of birth. In other words, Plaintiffs are not simply seeking to have this information be treated as Protected Information under the Protective Order, but seek to withhold it entirely from the responses they provide to Defendant. Plaintiffs have not identified any privilege that would entitle them to withhold this information. I have already explained that the information and records that Defendant is seeking through this Interrogatory and these Requests are central to the parties' claims and defenses in this case. I have agreed that real names and driver's licenses be treated as Protected Information, and I have repeatedly asked you to identify any other categories of personally-identifying information that might appear on Plaintiffs' 2257/2257A records or model releases that you propose be treated as Protected Information. (I asked you to identify this because, given that Plaintiffs have not responded to these requests, I do not know what information might be contained in these records.) However, you have not explained what information, other than names and driver's licenses, you think qualifies as confidential. I note that, as far as I am aware, most if not all of the Plaintiffs in this case produce their visual depictions of sexually-explicit conduct for public display and distribution, and publicly identify the names or aliases of individuals depicted. The images attached to 2257/2257A records are excerpts of Plaintiffs' work. Your suggestion that Defendant would have to treat these images (which may in many instances already be publicly available) and

aliases that individuals have adopted for the very purpose of public use as Protected Information and could only file this information under seal makes no sense. Indeed, your suggestion is inconsistent with the fact that David Conners already identified the names, aliases, and birth dates of individuals appearing in his videos without requesting that this information be subject to a protective order.

Your invocation of privacy concerns does not entitle Plaintiffs to withhold information from Defendant. We previously agreed that the FBI would redact information about individuals appearing in depictions of sexually-explicit conduct when this information occurred in the reports of FBI inspections. The FBI's redaction of that information was separately addressed in the Protective Order. Redaction of other information, by either party, was not contemplated by the Order. I assume that Plaintiffs agreed to the FBI's proposal, and to the Order as entered, because those individuals' identities have absolutely no relevance to Plaintiffs' claims. The same is not true for Plaintiffs' own 2257/2257A records and model releases, however. Indeed, the individuals who appear in visual depictions that Plaintiffs have produced are potential witnesses in this case. Plaintiffs have put their own production of visual depictions of sexually-explicit conduct squarely at issue through their claims. They cannot now withhold information about their production on privacy grounds.

Finally, the *Malibu Media, LLC v. John Does 1-16* case that you cite has no bearing on this issue. That case addressed third party subpoenas issued by a plaintiff media company to ISPs in order to determine the identities of individuals who may have illegally downloaded material produced by the company. It did not address a plaintiff's obligation to respond to discovery served by defendant.

I emphasize that, to the extent the parties have not reached agreement on which information should be treated as Protected Information, that disagreement does not justify Plaintiffs' continued refusal to produce the requested information and records. Instead, under the procedures that we agreed to in the Protective Order, Defendant would treat any disputed information as Protected until the issue was resolved. I therefore ask that Plaintiffs respond to Interrogatory No. 15 and Requests for Production Nos. 5 and 6 immediately.

In regard to Plaintiffs' burdensomeness objections to RFP Nos. 5 and 6, Defendant is willing to narrow these requests, on a provisional basis, as follows:

**Michael Barone:** You do not indicate how many 2257 records or relevant model releases Barone has, so he has not established an undue burden, given the high relevance of these records. Defendant asks that Barone (1) produce one 2257/2257A record and associated attachments for each individual for whom he has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which he has 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or his best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that he produced most recently before the point at which he began creating 2257/2257A records.

**Barbara Nitke:** You indicate Nitke has around 1000 pages of 2257 records and has used around 425 people in visual depictions of sexually explicit conduct since 1982. Your suggestion that I or co-counsel travel to New York to examine Nitke's records is unreasonable. Simply copying 1000 pages and producing them to Defendant does not impose an undue burden, given the high relevance of these records. In the alternative, Defendant asks that Nitke (1) produce one 2257/2257A record and associated attachments for each individual for whom she has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which she has 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or her best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that she produced most recently before the point at which she began creating 2257/2257A records.

**David Levingston:** You indicate Levingston has no 2257 records and is unable to identify which model releases pertain to visual depictions of sexually explicit conduct. However, Levingston indicated in his response to Defendant's Interrogatory No. 8 that for the past 7 or 8 years, he has retained digital copies of driver's licenses together with digital copies of the visual depictions of sexually-explicit conduct that he produces. Defendant asks that Levingston (1) produce copies of the driver's licenses and associated digital images consisting of visual depictions of sexually-explicit conduct that he has recorded during the past 8 years. If Levingston has more than one image showing a particular individual, the earliest image, together with the driver's license, is sufficient; (2) produce the model release associated with that record.

**David Steinberg:** You do not indicate how many 2257 records or relevant model releases Steinberg has, so he has not established an undue burden, given the high relevance of these records. Defendant asks that Steinberg (1) produce one 2257/2257A record and associated attachments for each individual for whom he has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which he has 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or his best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that he produced most recently before the point at which he began creating 2257/2257A records.

**Marie Levine:** You do not suggest that it would be unduly burdensome for Levine to respond to these requests. Defendant asks that Levine (1) produce one 2257/2257A record and associated attachments for each individual for whom she has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which she has 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or her best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that she produced most recently before the point at which she began creating 2257/2257A records.

**Carol Queen:** You indicate Queen has around 1000 pages of 2257 records. Simply copying 1000 pages and producing them to Defendant does not impose an undue burden, given the high relevance of these records. In the alternative, Defendant asks that Queen (1) produce one 2257/2257A record and associated attachments for each individual for whom she has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which she has 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or her best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that she produced most recently before the point at which she began creating 2257/2257A records.

**Betty Dodson and Carlin Ross:** You do not suggest that it would be unduly burdensome for Dodson and Ross to respond to these requests. Defendant asks that Dodson and Ross (1) produce one 2257/2257A record and associated attachments for each individual for whom they has created such a record, in each instance producing the record and attachments for the earliest-produced depiction of that individual for which they have 2257/2257A records; (2) produce the model release for the individual and depiction associated with that record; (3) identify the total number of 2257/2257A records for each of these individuals (or their best estimate); and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that they produced most recently before the point at which they began creating 2257/2257A records.

**Sinclair Institute/Townsend Enterprises:** You indicate that my proposal to narrow the requests for Sinclair Institute will not work because its 2257/2257A records cannot be searched based on the age of the individual identified in the record. Defendant asks that Sinclair Institute (1) produce 2257/2257A records and associated attachments for all videos containing visual depictions of sexually explicit conduct that it has produced in the past five years, as well as all 2247/2247A records and associated attachments for the videos that Sinclair Institute has already produced; (2) produce the model releases for the individuals and depictions associated with those records; (3) identify the total number of 2257/2257A records, per year, that it has created, since it began maintaining such records; and (4) produce model releases for the twenty individuals appearing in visual depictions of sexually-explicit conduct that it produced most recently before the point at which it began creating 2257/2257A records.

**Objections Specific to Free Speech Coalition and American Society of Media Photographers**

You have indicated that neither Free Speech Coalition ("FSC") nor American Society of Media Photographers ("ASMP") is able to produce 2257/2257A records or model releases of its members. You also indicate that neither FSC nor ASMP is willing to identify any of its members other than the 3 FSC members and 1 ASMP member who filed as named plaintiffs in this case, and one additional ASMP member. This is far from sufficient, given that FSC has a total of around 750 members while ASMP presumably has at least that many, though it has not identified how many members it has that produce visual depictions of sexually explicit conduct. Given that neither FSC nor ASMP is able to provide information about the individuals used in the visual

depictions of sexually explicit conduct produced by their members – information that the Third Circuit indicated was necessary in order to evaluate each Plaintiff's as-applied First Amendment claim in this case – I propose that FSC and ASMP dismiss their as-applied First Amendment challenges.

**Your Assertions Regarding Requests for Certain Numbers of Visual Depictions**

You complain that Defendant has sought specific numbers of visual depictions and suggest that Plaintiffs have provided a "sizeable body of information about and examples of the Plaintiffs' expression." However, each of the (now) thirteen plaintiffs in this case is raising his or her own as-applied First Amendment challenge.  Rather than asking each plaintiff to produce every image that he or she contended was subject to the 2257/2257A requirements, Defendant initially asked only for 10 examples of each plaintiff's work, as well as a breakdown of the ages of the individuals appearing in each plaintiff's work. These were very minimal requests. However, Plaintiffs' responses to these interrogatories – and in particular their failure, in most instances, to provide the breakdown of ages that Defendant had requested, as well as their reliance on providing URLs instead of records -- led Defendant to follow up by seeking Plaintiffs' 2257/2257A records and model releases, and related information. Plaintiffs have so far failed to produce *any* information or records in response to those requests. Thus, Defendant has thus far received at most 10 images per plaintiff, which is far from a "sizeable body" of any plaintiff's work.

Moreover, some of the URLs that Plaintiffs have provided (for example, videos on Marie Levine's website and the Sinclair Institute's website; Dodson and Ross's online gallery) are not accessible without payment, and I don't believe Defendant should be required to pay, nor should I be required to register at these websites, in order to access Plaintiffs' discovery responses. Nor is it reasonable for you to expect me to go to a District of Columbia public library in order to search for and check out a book that Plaintiffs have supposedly "produced" in response to Defendant's discovery requests.

You suggest that Defendant's request to identify 50 examples of depictions in certain categories is unreasonable. However, these categories were first identified by Plaintiffs in their Interrogatory No. 2 of their First Set of Interrogatories served on Defendant. By setting forth these categories, Plaintiffs presumably contend that there is a sufficient number of depictions that fit within each of these categories that the application of 18 U.S.C. §§ 2257 and 2257A in these circumstances is relevant to Plaintiffs' First Amendment claims. Yet as Defendant has explained, Defendant does not fully understand what Plaintiffs mean by their descriptions of these categories and in some instances Defendant has trouble imagining that there is any significant number of works that fit in these categories. Given this situation, it is not unreasonable for Defendant to request that Plaintiffs identify 50 examples in each category. Surely you would agree, for example, that the statutes could not possibly be deemed "substantially overbroad" based on the existence of less than 50 films showing individuals in other countries being raped. Moreover, nothing in the wording of this interrogatory suggests that Defendant intends each plaintiff to identify 50 examples that are different from the 50 examples another plaintiff has identified (as demonstrated by the fact that the responses of each plaintiff to Defendant's Interrogatory No. 23 were all identical); your suggestion that Defendant has sought 6000

depictions through this request is highly exaggerated.  I again ask that Plaintiffs respond fully to Interrogatory No. 23 by providing 50 examples for each category or by stating that they were unable to locate 50 examples.

You also suggest that Defendant's request for examples of how Plaintiffs affix 2257/2257A labels to their work is unreasonable. However, in response to Defendant's previous Interrogatory, Plaintiffs have specifically identified the labeling requirement as a subject of their challenge. Defendant therefore requires examples of how Plaintiffs have affixed labels to different formats of Plaintiffs' work. Thus far, Defendant has not received examples for any format other than online images and DVDs in response to Request for Production No. 7, and has not received even these examples from many plaintiffs.

**Your Objections to Defendant's Requests for Financial Information and Tax Returns**

We continue to disagree regarding the relevance of Plaintiffs' income to their claims, including their assertions regarding burden. In Defendant's view, this information is clearly relevant; for example, Sinclair Institute's claim to spend X dollars maintaining 2257/2257A records may be assessed differently depending on whether Sinclair Institute receives 2 times or a million times X in revenues from the sale of its visual depictions of sexually-explicit conduct. Defendant has agreed that Plaintiffs' tax returns may be considered Protected Information under the Protective Order, and if a plaintiff believes revenue amounts also should be treated as Protected, you can raise this issue with the Court. However, these issues do not justify failing to produce this information in response to Defendant's requests. You have not indicated whether plaintiff Queen will provide estimates of her revenues, or whether plaintiff Barone will break down his revenues by year, as Interrogatory No. 21 requests.

**Other issues**

Please let me know when FSC has finished searching for additional records responsive to Defendant's Request for Production No. 9, and whether any additional records were located.

Under the Protective Order, Plaintiffs are supposed to indicate whether any individuals identified in the FBI's inspection reports as present during an inspection are agents or employees of a FSC member on whose behalf FSC is purporting to bring its Fourth Amendment claim. I request that you promptly identify any such individuals.

Given that significant issues remain unresolved and that Plaintiffs have yet to produce any 2257/2257A records or model releases or to identify FSC and ASMP members, and that you have not yet identified which individuals named in the FBI inspection reports are agents or employees of FSC members, I hope that we can agree to an extension of certain upcoming deadlines, including Thursday's subpoena deadline and the deadline for exchanging expert reports.

Sincerely,
/s/
Kathryn L. Wyer