# FEDERAL BUREAU OF INVESTIGATION

## REGULATORY INSPECTION REPORT
## (18 U.S.C. §2257)

## OF

**Ghost Pro Productions, Inc.**
**6017 Pine Ridge Road #387**
**Naples, FL 34119**

**Date of Inspection:  09/18/2007**

SUBJECT TO PROTECTIVE ORDER           FBI_002995

## **TABLE OF CONTENTS**

Producer Information                          Tab    1
Inspection Summary

Findings                                      Tab    2
Producer's Response to Findings

Pre-Inspection Procedures                     Tab    3
Inspection Procedures

Records Verification Spreadsheet              Tab    4

FD-302s                                       Tab    5

Photo Log/Photos                             Tab    6

2257 Checklists                               Tab    7

Inspection Compliance Determination           Tab    8

)                                    )

# REGULATORY INSPECTIONS REPORT

Report of:     SSA Stephen G. Lawrence,
               2257 Regulatory Inspections Unit, Crimes Against Children Unit,
               Violent Crimes Section, Criminal Investigative Division

Report Date:  04/29/2008

File Number:      (F)        -FIFTHELEM

## PRODUCER INFORMATION

An inspection was conducted of Ghost Pro Productions, Inc. (hereinafter "Ghost Pro"), pursuant to Title 18, United States Code Section 2257 (18 U.S.C. §2257) and Title 28, Code of Federal Regulations Part 75 (28 C.F.R. Part 75). The inspection was initially attempted on 09/18/2007 at the business address for Ghost Pro Productions, 6017 Pine Ridge Road #387, Naples, Florida 34119. However, that address was determined to be a third-party post office box. Several attempts were made to locate the owner,                who was subsequently determined to be living in Thailand with Ghost Pro's 2257 records.

## INSPECTION SUMMARY

Initially, a company called Fifth Element was randomly selected from a database of known producers of adult products using a computerized random selection program. Five DVDs listed as being produced by Fifth Element were ordered from the Internet. Contract inspectors reviewed the five DVDs and identified all performers by stage name or by still photographs taken from the DVDs. A total of 43 performers were identified as appearing in the five DVDs. A review of the five DVDs revealed that four were produced and copyrighted by Ghost Pro, and the fifth DVD, "Creamy School Girls," was copyrighted by another company. Prior to the inspection, contract inspectors printed several still photographs of each performer's face from different camera angles. After contacting               via telephone on 09/18/2007, he confirmed that Fifth Element was a distribution company used by Ghost Pro. Accordingly, "Creamy School Girls," which was produced by another company and distributed by Fifth Element, was excluded from the inspection.               subsequently provided the requested 2257 records via email. Still photographs from the four DVDs produced by Ghost Pro were compared with the performer identification provided by               o ensure the identification was, in fact, of that performer.

Subsequent to the receipt of records from               contract inspectors identified additional performers appearing in trailers on the four DVDs whose identification was required for review. However, before the additional records could be requested, the 6th Circuit Court of Appeals ruled 18 U.S.C. §2257 unconstitutional (*Connection Distributing Co., et. al. v. Keisler*). The United States Department of Justice determined that all inspections of 18 U.S.C. §2257 records were to be held in abeyance pending their review of

SUBJECT TO PROTECTIVE ORDER                    FBI_002998

the ruling from the 6th Circuit Court of Appeals.  Accordingly, the additional 18 U.S.C. §2257 records for the performers appearing in the trailers on the four DVDs were not requested from Ghost Pro.

After the inspection, it was determined that Ghost Pro had three 2257 violations.

During this inspection, all provisions of 18 U.S.C. §2257 guidelines were followed by the inspection team.

SUBJECT TO PROTECTIVE ORDER

## FINDINGS

1.  Ghost Pro does not have a physical location in the United States, but utilizes a third-party post office box instead, which was displayed in at least one 2257 statement.

    28 C.F.R. Part 75.4 - "Any producer required by this part to maintain records shall make such records available at the producer's place of business."

    28 C.F.R. Part 75.6(b) - "Every statement shall contain:…(3) A street address at which the records required by this part may be made available…A post office box address does not satisfy this requirement."

2.  The photo identification for the following two performers in "Asian Insemination #3" was of poor quality and not identifiable:

    Stage name
    Stage name          (P-1)

    28 C.F.R. Part 75.2 - "…the records shall also include a legible copy of the identification document examined and, if that document does not contain a recent and recognizable picture of the performer, a legible copy of a picture identification card.

3.  Individual Excel spreadsheets for each title selected for inspection were subsequently provided. Each spreadsheet contained performers' stage names, true names, dates of birth and photograph identification. However, the cross-reference system in its entirety could not be reviewed because the company's records were located in Thailand. In addition, the cross-reference system did not specifically list the titles of the products each performer appeared in or contain information as to any other names that may have been used by the performer.

    18 U.S.C. §2257(b) – " Any person to whom subsection (a) applies shall, with respect to every performer portrayed in a visual depiction of actual sexually explicit conduct— …

        (2) ascertain any name, other than the performer's present and correct name, ever used by the performer including maiden name, alias, nickname, stage, or professional name; and

        (3) record in the records required by subsection (a) the information required by paragraphs (1) and (2) of this subsection and such other identifying information as may be prescribed by regulation. "

    28 CFR Part 75.2(a)(2) – "Any name, other than each performer's legal name, ever used by the performer, including the performer's maiden name, alias, nickname, stage name, or professional name. For any performer portrayed in such a depiction made

SUBJECT TO PROTECTIVE ORDER

after July 3, 1995, such names shall be indexed by the title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, picture, URL, or other matter. Producers may rely in good faith on representations by performers regarding accuracy of the names, other than legal names, used by performers. "

28 CFR Part 75.2(a)(3) – "Records required to be created and maintained under this part shall be organized alphabetically, or numerically where appropriate, by the legal name of the performer (by last or family name, then first or given name), and shall be indexed or cross-referenced to each alias or other name used and to each title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, picture, URL, or other matter. "

28 CFR Part 75.2(d) – "For any record created or amended after June 23, 2005, all such records shall be organized alphabetically, or numerically where appropriate, by the legal name of the performer (by last or family name, then first or given name), and shall be indexed or cross-referenced to each alias or other name used and to each title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services). If the producer subsequently produces an additional book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services) that contains one or more visual depictions of an actual human being engaged in actual sexually explicit conduct made by a performer for whom he maintains records as required by this part, the producer shall add the additional title or identifying number and the names of the performer to the existing records and such records shall thereafter be maintained in accordance with this paragraph."

28 CFR Part 75.3 - "Records required to be maintained under this part shall be categorized and retrievable to: All name(s) of each performer, including any alias, maiden name, nickname, stage name or professional name of the performer; and including the title, number, or other similar identifier of each...digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services).  Only one copy of each picture of a performer's picture identification card and identification document must be kept as long as each copy is categorized and retrievable according to any name, real or assumed, used by each performer, and according to any title or other identifier of the matter."

## PRODUCER'S RESPONSE TO FINDINGS

None.

SUBJECT TO PROTECTIVE ORDER

**PRE-INSPECTION PROCEDURES**

The following pre-inspection procedures were followed:

1.  A company called Fifth Element was randomly selected from a database of known producers of adult products using a computerized random selection program.

2.  A sample of Fifth Element DVDs was ordered via the Internet and the method of purchase was documented.

3.  All products were reviewed for 18 U.S.C. §2257 compliance and a pre-inspection analysis was conducted for each of the DVDs ordered.  A review of the DVDs revealed that four were produced and copyrighted by Ghost Pro, and one DVD was copyrighted by another company.  The owner of Ghost Pro subsequently confirmed that Fifth Element was a distribution company used by Ghost Pro.

4.  All performers depicted engaging in sexually explicit conduct were identified by either a stage name or by still photographs of their likeness taken from the DVDs.

**INSPECTION PROCEDURES**

The following inspection procedures were followed:

1.  Digital photographs of Ghost Pro's third-party post office box were taken.  A disc containing a total of two photographs was placed in an FD-340 (1A) envelope and maintained with the case file.

2.  After several unsuccessful attempts to locate the owner of Ghost Pro, SSA Lawrence was advised that the 18 U.S.C. §2257 records of Ghost Pro were maintained in Thailand.  Accordingly, no on-site inspection was conducted.

3.  The owner of Ghost Pro subsequently provided individual Excel spreadsheets for each title selected for inspection, which contained performers' stage names, true names, dates of birth and photograph identification.

4.  Contract inspectors reviewed the 18 U.S.C. §2257 records provided by Ghost Pro for the four DVDs, to include the performers appearing therein.

SUBJECT TO PROTECTIVE ORDER

# RECORDS VERIFICATION SPREADSHEET

SUBJECT TO PROTECTIVE ORDER

## GHOST PRO PRODUCTIONS, INC.

| TITLE | PRODUCTION DATE | STAGE NAME | DATE OF BIRTH | TRUE NAME |
|-------|-----------------|------------|---------------|-----------|
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| ASIAN INSEMINATION #3 | 7/7/2005 | | | |
| | | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | (P-1) | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| ASIAN INSEMINATION # 6 | 10/8/2006 | | | |
| | | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| CREAMPIE CUTIES II | 9/3/2005 | | | |
| | | | | |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | (P-1) | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| CREAMY SCHOOL GIRLS | 6/12/2006 | | NOT INSPECTED | NOT INSPECTED |
| | | | | |

FBI_003007

**GHOST PRO PRODUCTIONS, INC.**

| TITLE | PRODUCTION DATE | STAGE NAME | DATE OF BIRTH | TRUE NAME |
|---|---|---|---|---|
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | (P-1) | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |
| SWALLOW SLUTS VOL 4 | 8/14/2005 | | | |

FBI_003008

# FD-302s

SUBJECT TO PROTECTIVE ORDER          FBI_003010

FD-302 (Rev. 10-6-95)

-1-

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription   04/29/2008

███████████████████ was interviewed at her place of
employment, The UPS Store, 6017 Pine Ridge Road, Naples, Florida,
34119-3956, telephone number 239-455-6245, facsimile number 239-
455-7329, where she is employed as the Director/Store Manager.
After being advised of the identity of the interviewing agent and
nature of the interview, Svoboda provided the following
information:

█████████████ does not maintain any records or documents on
behalf of GHOST PRO PRODUCTIONS, INC. ████████ provided the
interviewing agent with the following documents:

    1)    ████████ business card;

    2)   A copy of a one page PS Form 1583 ("Application for
Delivery fo Mail Through Agent"), dated 01/24/2005, for mailbox
number 387 and GHOST PRO PRODUCTIONS, GHOST PRO, ████████
████████ and

    3)   A one page document containing the front and back
copy of a Florida driver license for ████████ born ████
of ██████████████████████ license number
█████████████ and

    4)   A copy of an undated two page "Mailbox Service
Agreement," signed by ████████ for the rental of mailbox number
387.

    The documents provided by Svoboda were placed in an FD-
340 (1-A) envelope and were placed in the case file.

---

Investigation on    09/18/2007    at  Naples, Florida

File #  ████  (F)    -FIFTHELEM - 12         Date dictated

by   SSA Stephen G. Lawrence:sgl  *S.L.*

SUBJECT TO PROTECTIVE ORDER                                    FBI_003019

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription     04/29/2008

After reviewing the one page PS Form 1583 ("Application for Delivery fo Mail Through Agent") for GHOST PRO PRODUCTIONS, INC. (hereinafter "GHOST PRO"), obtained on 09/18/2007 from ▮ ▮ Director/Store Manager of The UPS Store, 6017 Pine Ridge Road, Naples, Florida, 34119-3956, telephone number 239-455-6245, the following investigation was conducted:

Supervisory Special Agent (SSA) Stephen G. Lawrence and Contract Inspectors ▮ and ▮ proceeded to a single family residence located at ▮ which was listed as GHOST PRO's business address on the PS Form 1583. A Nissan Maxima bearing ▮ license plate ▮ was observed parked in the driveway of the residence, but there was no answer at the door.

At approximately 12:05 p.m., SSA Lawrence telephonically contacted ▮ (hereinafter "▮") at telephone number 239-838-6635, which was listed as GHOST PRO's business telephone number on the PS Form 1583. SSA Lawrence advised that he needed to speak with ▮ (hereinafter "▮"), who ▮ advised was her son. ▮ advised that ▮ (hereinafter "▮") is her husband. ▮ stated that she did not have ▮'s telephone number with her and would have to get it from home. SSA Lawrence advised ▮ that ▮ as not in any trouble.

At approximately 12:50 p.m., SSA Lawrence telephonically contacted ▮ again. ▮ advised that ▮ telephone number was at home, that she could not leave work, and does not work close to home. ▮ stated that she is not associated with her son's company, and did not know anything about identification documents or 2257 records. SSA Lawrence asked where ▮ works, and ▮ advised that he is self-employed. SSA Lawrence asked where ▮ lives, and ▮ responded that she would let ▮ provide SSA Lawrence with that information. ▮ stated she would not be home until after 3:00 p.m. SSA Lawrence asked ▮ for ▮'s cell number, and she advised it was ▮ SSA Lawrence again advised ▮ that ▮ was not in any trouble, and explained that he was attempting to conduct an inspection of GHOST PRO's identification records pursuant to Title 18 United States Code Section 2257 (18 U.S.C. §2257).

| | | | |
|---|---|---|---|
| Investigation on | 09/18/2007 | at  Naples, Florida | (telephonically) |
| File # | (F) | FIFTHELEM ~ 13 | Date dictated |
| by | SSA Stephen G. Lawrence:sgl  ℒ.ℒ. | | |

SUBJECT TO PROTECTIVE ORDER

FBI_003020

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 10-6-95)

(F)    ▇-FIFTHELEM

Continuation of FD-302 of ___ ETHEL POER and ROBERT POER ___ , On 09/18/2007 , Page __2__

          At approximately 12:56 p.m., SSA Lawrence telephonically
contacted ▇▇ at cellular number ▇▇▇▇▇▇▇▇▇▇, ▇▇▇ dvised
that ▇▇ lives in Thailand. ▇▇▇ advised he has not seen
▇▇ for approximately two years and only talks to him a few
times a year. ▇▇▇ is knowledgeable about what GHOST PRO does,
and has heard ▇▇ and ▇▇ talk about identification documents
and performers being of age. ▇▇▇ advised ▇▇ has ▇▇▇ 's
telephone number, but may not realize that it is in the call
history on her cellular phone; otherwise she may need to get
▇▇ s telephone number from home. ▇▇▇ advised that ▇▇ is
getting ready to go to Thailand to see their grandchild, and
▇▇ asked her to bring him a particular camera when she travels
to Thailand.  SSA Lawrence asked ▇▇ to call ▇▇ and have her
give SSA Lawrence ▇▇▇ 's contact information.  SSA Lawrence
explained 18 U.S.C. §2257 in general, and advised ▇▇ that
▇▇ was not in any trouble, but would be if SSA Lawrence did
not speak with him that day.

          At approximately 1:06 p.m., ▇▇▇ telephonically
contacted SSA Lawrence and advised he had misdialed and called by
mistake.

          At approximately 1:08 p.m., ▇▇▇ telephonically
contacted SSA Lawrence and advised that ▇▇ had several telephone
calls into ▇▇ and was going to email him since there was a
twelve hour time difference between Florida and Thailand. ▇▇▇
advised that he and ▇▇ do not have any 2257 records, as ▇▇
does not store anything at their home.  SSA Lawrence and ▇▇
discussed 18 U.S.C. §2257 in general, and when asked by ▇▇
about advance notice, SSA Lawrence stated that no advance notice is
provided by the Federal Bureau of Investigation ("FBI") prior to
the conduct of an inspection pursuant to 18 U.S.C. §2257, etc.

          At approximately 1:11 p.m., SSA Lawrence telephonically
contacted ▇▇ who advised she did not have any 2257 records for
GHOST PRO.  SSA Lawrence advised ▇▇ that he wished she had
initially told SSA Lawrence ▇▇ lived in Thailand. ▇▇▇
denied knowing anything about 2257 records or having any
discussions with ▇▇ regarding identification documents.  SSA
Lawrence advised ETHEL that she and ▇▇ needed to get their
stories straight, and that he would wait to hear from ▇▇

          At approximately 1:22 p.m., SSA Lawrence telephonically
contacted ▇▇ who confirmed that she does not have any 2257
records and does not know anything about them.  SSA Lawrence

FD-302a (Rev. 10-6-95)

(F)        FIFTHELEM

Continuation of FD-302 of _____ and _____ , On 09/18/2007 , Page __3__

advised ▮▮ that ▮▮▮ may be in violation of 18 U.S.C. §2257.
SSA Lawrence asked for ▮▮▮ s email address, which ▮▮ advised
was deejaydopamine@aol.com.  SSA Lawrence advised ▮▮ that he was
leaving the area and would wait to hear from ▮▮▮ SSA Lawrence
advised ▮▮ that she could look at www.avn.com for information
regarding 2257 inspections conducted by the FBI.

At approximately 2:14 p.m., SSA Lawrence telephonically
contacted ▮▮ who confirmed that she had several telephone calls
into ▮▮ SSA Lawrence asked for ▮▮▮ s telephone number,
but ▮▮ advised that she was not going to provide it until she
received permission to do so from ▮▮ SSA Lawrence asked who
▮▮ was, but ▮▮ advised that she was unfamiliar with
that name.  SSA Lawrence stated the name ▮▮ appeared
on the mailbox rental form (PS Form 1583).  ▮▮ advised that she
did not know who that individual was, but remembered the name once
SSA Lawrence mentioned the mailbox rental form.  SSA Lawrence asked
if she and ▮▮ pick up the mail from the mailbox located at
6017 Pine Ridge Road, Naples, Florida, and ▮▮ asked if it was a
federal offense.  SSA Lawrence stated that it was not, and ▮▮
replied that she would prefer not to answer the question.

FD-302 (Rev. 10-6-95)

- 1 -

### FEDERAL BUREAU OF INVESTIGATION

Date of transcription    04/29/2008

         owner of GHOST PRO PRODUCTIONS, INC.
(hereinafter "GHOST PRO"), telephonically contacted the
interviewing agent.  Present with the interviewing agent were
Contract Inspectors       and       After
being advised of the identity of the interviewing agent and nature
of the interview,    provided the following information:

      was calling from his residence in Thailand, after he
learned from his mother that the interviewing agent was trying to
contact     has not shot a pornographic movie in over a
year, and it has been approximately eighteen months since    was
last in the United States.

      FIFTH ELEMENT was the distribution company for GHOST PRO,
but FIFTH ELEMENT "screwed him over" and    ended the business
relationship.     currently has GHOST PRO's 2257 records with him
in Thailand, but he did give a copy of the records to FIFTH ELEMENT
as well.       who is an authorized recipient at GHOST
PRO's mailbox, 6017 Pine Ridge Road #387, Naples, Florida, was one
of the original models    used.

      can be contacted through Skype telephone number
    which appears to be a Las Vegas, Nevada, telephone number
but actually rings at    's residence in Thailand.  Skype allows
an individual to make telephone calls over the Internet.  When
obtaining a Skype telephone number, a subscriber can request a
number from a particular city to give the appearance that the
subscriber is physically located in that city.

Investigation on   09/18/2007   at  Naples, Florida        (telephonically)

File #        (F)        FIFTHELEM — 14        Date dictated

by   SSA Stephen G. Lawrence:sgl *S.L.*

SUBJECT TO PROTECTIVE ORDER        FBI_003023

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

# PHOTO LOG / PHOTOS

CAMERA _Nikon E995_  LENS - Normal - N

FILM : ASA _digital_   Wide - W

ROLL No. _____   Macro - M

Tele. - T

LIGHT - Available - A

Elec.Strobe - E

Flashbulb - F

| Photo No. | Lens | Light | SS | f - stop | Description |
|---|---|---|---|---|---|
| 1 | | | | | Title Sheet - Fifth Element (Ghost Prod) 7/18/2007 |
| 2 | | | | | PO Box address - 6017 Pine Ridge RD (UPS store) |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| 20 | | | | | |
| 21 | | | | | |
| 22 | | | | | |
| 23 | | | | | |
| 24 | | | | | |
| 25 | | | | | |
| 26 | | | | | |
| 27 | | | | | |
| 28 | | | | | |
| 29 | | | | | |
| 30 | | | | | |
| 31 | | | | | |
| 32 | | | | | |
| 33 | | | | | |
| 34 | | | | | |
| 35 | | | | | |
| 36 | | | | | |

REMARKS

SUBJECT TO PROTECTIVE ORDER

FBI 003027

# 2257 PROJECT
## Child Protection and Obscenity (CPO) Inspections
## Review Form

## PRE-INSPECTION PRODUCT REVIEW

Inspector ████████████████████

Date of Review: 5/23-24/2007

Title of product: Swallow Sluts Vol. 4

Producer of Product: Ghost Pro Productions (Fifth Element)

✓ 1.   Product is a
   _____ Book
   _____ Magazine
   _____ Periodical
   _____ Film
   _____ Videotape
   _____ Digitally- or Computer-manipulated image
   _____ Digital Image
   _____ Picture
   _____ Internet computer site or services
   __✗__ Other matter (Describe:_____DVD_____)

   [2257 (a) & CFR 75.2(a)]

✓ 2.   Product contains one or more visual depictions of an actual human being
       engaged in actual sexually explicit conduct described as follows:
       __✓__ Sexual intercourse, including
          __✗__ Genital-Genital
          __✗__ Oral-Genital
          __✗__ Anal-Genital
          __✓__ Oral-Anal
       _____ Bestiality
       __✗__ Masturbation
       _____ Sadistic or masochistic abuse

   [2256 (2)(a)(i-iv)]

Yes 3.   Visual depiction of sexually explicit conduct made after November 1,
         1990?

         8/14/2005

   [2257 (a)(1)]

SUBJECT TO PROTECTIVE ORDER          FBI_003066

*Yes* 4.   Is the product
_✓_   produced in whole or in part with materials that have been mailed or
     shipped in interstate or foreign commerce
     or
_✓_   is shipped or transported or intended for shipment or transportation
     in interstate or foreign commerce?

[2257 (a)(2)]

*Yes* 5.   Product is:                    8/14/2005
_✓_   produced
____   manufactured
____   published
____   duplicated
____   reproduced or
____   re-issued
on or after November 1, 1990.

[2257(h)(3)]

**If all four prior questions are answered affirmatively, continue.**

*Yes* 6.   The producer has caused to be affixed to the matter a statement describing
     the location of the records.
*NA*   For books, magazines and periodicals, the statement is either:
     *NA*   on the first page
          or
     *NA*   on the page on which copyright information appears.

[CFR 75.8(a)]

For film or videotape which contains end credits for the production,
direction, distribution, or other activity in connection with the film or
videotape, the statement is:                    No 2257
*NA*   Presented at the end of the end titles or final credits  Statements
     and                                        at the end
                                                of DVD
*NA*   is displayed for a sufficient duration to be read by the average
     viewer.

[CFR 75.8(b)]

SUBJECT TO PROTECTIVE ORDER                    FBI_003067

Any other film or videotape shall contain the required statement:
  within one minute from the start of the film or videotape, and
  before the opening scene, and
  is displayed for a sufficient duration to be read by the average viewer.

[CFR 75.8(c)]

A computer site or service or Web address containing a digitally- or computer-manipulated image, digital image, or picture, contains the required statement (or a hypertext link that opens upon the viewer's clicking a hypertext link that states, "18 U.S.C. 2257 Record-Keeping Requirements Compliance Statement") on:
  _____ Its homepage
  _____ Any known major entry points
        or
  _____ Principal URL (including the principal URL of a sub-domain)

[CFR 75.8(d)]

For all other categories not otherwise mentioned in this section, the statement is to be prominently displayed consistent with the manner of display required for the aforementioned categories.

[CFR 75.8(e)]

7.   One of the following is true.
  _____ The statement contains the title of the product.
        or
  The title is prominently set out elsewhere in the product.
        or
  If there is no title, an identifying number or similar identifier that differentiates this matter from other matters, which the producer has produced, is included on the statement.

[CFR 75.6(b)(1)]

SUBJECT TO PROTECTIVE ORDER

✓ 8.  The statement on the matter includes the date of one of the following:

    yes Production    8/14/2005
    ____ Manufacture
    ____ Publication
    ____ Duplication
    ____ Reproduction
    ____ Re-issuance

[CFR 75.6(b)(2)]

✓ 9.  The statement on the matter includes a street address at which the records required by 2257 may be made available. (A P.O. Box is not allowed.) The address is as follows:

    B. East
    13122 Saticoy St
    North Hollywood, Ca 91605

[CFR 75.6(b)(3)]

✓ 10.  If the producer is an organization, the statement provides the name, title, and business address of the individual employed by such organization who is responsible for maintaining the records required by 2257.

    Name:      B. East
    Title:      Custodian of Records
    Bus Address:    13122 Saticoy St
    North Hollywood, CA 91605

[CFR 75.6(c)]

✓ 11.  The statement is
    ✓ Displayed in typeface that is no less than 12-point type.
    or is
    ✓ No smaller than the second-largest typeface on the material.

[CFR 75.6(e)]

SUBJECT TO PROTECTIVE ORDER

*yes* 12.   The statement is in a color that clearly contrasts with the background color of the material.

[CFR 75.6(e)]

*yes* 13.   For any electronic or other display of the notice that is limited in time, the notice is displayed for:

_✓_ a sufficient duration

_✓_ and

___ of a sufficient size

to be capable of being read by the average viewer.      *Inspecter*

[CFR 75.6(e)]

*yes* 14.   Information on each person portrayed in a visual depiction engaging in, or assisting another person to engage in, actual sexually explicit conduct is identified in Attachment A to this report.  (Attachment A will include any identification information obtained from credits of the product, if available. Otherwise, printed copies of visual depictions of the performer should be attached.)

## ON-SITE INSPECTION REVIEW      *See attachment B*

*yes* 15.   For each performer portrayed in this product, records have been created and maintained containing the legal name and date of birth of each performer, obtained by the producer's examination of a picture identification card.

[2257 (b)(1), CFR 75.1(b), CFR 75.2(a)(1)]

*yes* 16.   For any performer portrayed in this product made **after July 3, 1995**, producer maintains:

_✓_ a legible copy of the identification document examined and, if that document does not contain a recent and recognizable picture of the performer,

_✓_ a legible copy of a picture identification card (with a recent and recognizable picture of the performer).

[CFR 75.2(a)(1)]

SUBJECT TO PROTECTIVE ORDER

unknown 17. For any performer portrayed in such a depiction **after June 23, 2005,** the producer maintains:

✓ A copy of the depiction, and

✓ Where the depiction is published on an Internet computer site or service, a copy of any URL associated with the depiction

or,

✓ if no URL is associated with the depiction, another uniquely identifying reference associated with the location of the depiction on the Internet.

[CFR 75.2(a)(1), CFR 75.2(a)(1)(i-ii)]

unknown 18. Producer maintains any name, other than (statute should read "in addition to the") performer's legal name (present and correct name), ever used by the performer, including the performer's maiden name, alias, nickname, stage name, or professional name,

and

✓ For depictions made **after July 3, 1995,** these names are indexed by the title or identifying number of the product.

[CFR 75.2(a)(2)]  [2257(b)(2)]

yes 19. Records required to be created and maintained under this part are organized

✓ alphabetically, or numerically where appropriate,

✓ by the legal name of the performer (by last or family name, then first or given name).

[CFR 75.2(a)(3)]

unknown 20. Records are indexed or cross-referenced:

✓ to each alias or other name used

and

✓ to each title or identifying number of the product.

[CFR 75.2(a)(3)]

yes 21. The records are current as of the time the primary producer actually creates the product.

[CFR 75.2(a)(3)(c)]

SUBJECT TO PROTECTIVE ORDER

FBI_003071

*unknown* 22.   For any record created or amended **after June 23, 2005**, if the producer
subsequently produces an additional product (including but not limited to
Internet computer site or services) that contains one or more visual
depictions of an actual human being engaged in actual sexually explicit
conduct made by a performer for whom he maintains records as required by
regulation, the producer has added the additional title or identifying number
and the names of the performer to the existing records, and such records
have been maintained as required by regulation.

[CFR 75.2(a)(3)(c)]

*yes* 23.   Records, as described above:
_____   are segregated from all other records,
_____   do not contain any other records,
and
_____   are not contained within any other records.

[CFR 75.2(a)(3)(e)]

*yes* 24.   Records (required to be maintained by regulation) which are kept in digital
form include scanned copies of forms of identification
and
_____   there is a custodian of the records who can authenticate each digital
record.

[CFR 75.2(a)(3)(f)]

*N/A* 25.   Records are maintained for seven years from the date of creation or last
amendment or addition.

[CFR 75.4]

*N/A* 26.   If the producer ceases to carry on the business, the records are maintained
for five years thereafter.

[CFR 75.4]

SUBJECT TO PROTECTIVE ORDER

Attachment A

Producer: **Ghost Pro Productions (Fifth Element)**
DVD title: **Swallow Sluts Vol 4**
Custodian of records: **B. East**
Address: **13122 Saticoy Street,**
        **North Hollywood, CA 91605**
Production date: **8/14/2005**
DVD Reviewed: **5/23-24/2007**

     Pictorial cast credits were observed by Inspector ▇▇▇▇▇▇▇▇▇ during the review of **Swallow Sluts Vol 4**. Plus, Inspecto▇▇▇▇▇ observed pictorial cast credits on the back jacket cover for **Swallow Sluts Vol** 4, and a listing of actors was observed on the front jacket cover by the Inspector. During the review, the Inspector observed ten (10) actors participating in explicit sexual activity, but all three cast lists named only eight (8) female actors.

     The front cover for **Swallow Sluts Vol 4** contained a list of actor's names, and the back cover included small identification pictures of the same actors. The following eight (8) female actors were listed on front and back cover for **Swallow Sluts Vol 4**:

(P-1)

     The Inspector observed pictorial credits in the DVD **Swallow Sluts Vol 4**, and the following names and photographs of female actors were included:

(P-1)

     Photos of these same female actors, including identifying information, were printed on the scene selection page. Again, the Inspector noted that photographs and stage names of the two male actors were not included. The male actors were not

SUBJECT TO PROTECTIVE ORDER          FBI_003073

identified in any manner within **Swallow Sluts Vol 4**. The Inspector listed the following male actors:

**Unknown male #1**
**Unknown male #2**

After reviewing **Swallow Sluts Vol 4**, the Inspector noted that **unknown male #1** performed sexual acts with seven (7) of the eight (8) female actors, and **unknown male #2**, who identified himself as ⬚(P-1)⬚ performed sexual acts only in the bonus scene with ⬚(P-1)⬚

Four 2257 statements were observed by the Inspector. Within seconds of the start of **Swallow Sluts Vol 4** and before the beginning of the DVD, the Inspector viewed a 2257 statement identifying the custodian of records as B. East, 13122 Saticoy St, North Hollywood, CA 91605. The statement also listed an 8/14/2005 production date for **Swallow Sluts Vol 4**, and the statement identified Ghost Pro Productions as the producer of the DVD. This 2257 statement ran for seven (7) seconds, but the production company failed to include the title **Swallow Sluts Vol 4**. The second 2257 statement, a duplicate of the first 2257 statement, ran six (6) seconds. This statement was inserted after the DVD's title page and before the photographic cast credits for **Swallow Sluts Vol 4**. The third and fourth 2257 statements, back jacket cover and disc of **Swallow Sluts Vol 4**, contained the same information. The only additional information was the copyright notice of 2006 for Ghost Pro Productions.

SUBJECT TO PROTECTIVE ORDER

Attachment B

Because the custodian of records for Ghost Pro Productions (Fifth Element) was located in Thailand and not in Naples, Florida, the inspectors were unable to view the company's records or filing system on the date of the inspection, 9/18/2007. The custodian of records later sent Excel spread sheets identifying the actors by true name, stage name, and date of birth, but the company's actual filing system has not been inspected. The inspectors cannot determine if the records on the actors are indexed or cross-referenced. Due to this fact, the checklist questions covering the company's record system, indexing and cross-reference system were marked unknown.

SUBJECT TO PROTECTIVE ORDER

## INSPECTION COMPLIANCE DETERMINATION

Ghost Pro Productions, Inc., was determined to be out of compliance with 18 U.S.C. §2257 and 28 C.F.R. Part 75.

SUBJECT TO PROTECTIVE ORDER