**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC. et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| THE HONORABLE ERIC H. HOLDER, JR. | : | 9-4607 |
| | : | |
| Defendant. | : | |

**Baylson, J.**                                                        **May 20, 2013**

**MEMORANDUM AND ORDER DENYING CROSS**
**MOTIONS FOR SUMMARY JUDGMENT**

Both Plaintiffs and Defendant have filed Motions for Summary Judgment, following the Third Circuit's remand to this Court.

As this Court has previously noted, the remand required this Court to inquire into Count I of Plaintiffs' Amended Complaint (ECF 84), insofar as it asserts both facial and as-applied claims under the First Amendment, and into Counts IV and VI of the Amended Complaint, insofar as they assert a right to injunctive relief for violations of the First and Fourth Amendments. (Agreed Order at 2) (ECF 91).[1]  Furthermore, the First and Fourth Amendment inquiries to be conducted by this Court on remand are also somewhat limited in scope. The Third Circuit affirmed this Court's conclusions that Sections 2257 and 2257A are content neutral laws and so intermediate scrutiny is the

---

[1] The Third Circuit affirmed this Court's dismissal of the portions of Count I that alleged the statutes and their implementing regulations unconstitutionally suppressed anonymous speech, imposed a prior restraint on protected expression, unconstitutionally imposed strict liability for failing to maintain the requisite records, and were unconstitutionally overbroad.  Free Speech Coal. v. Holder, 677 F.3d 519, 533-36, 545 (3d Cir. 2012). None of those issues are before this Court on remand.

appropriate standard of review, and that under the intermediate scrutiny test, the statutes further compelling government interest and leave open ample alternative channels of communication.  <u>Free Speech Coal. v. Holder</u>, 677 F.3d 519, 533-36 (3d Cir. 2012).

Accordingly, the effect of the Third Circuit's decision is that the following issues are to be explored on remand:

(1) for Plaintiffs' as-applied claim under the First Amendment in Count I, whether the statutes are narrowly tailored as applied to Plaintiffs (which, as the Third Circuit put it, requires answering "whether the Statutes burden substantially more of Plaintiffs' speech than is necessary to further the government's legitimate interest of protecting children," <u>id.</u> at 536);

(2) for Plaintiffs' facial over-breadth claim under the First Amendment in Count I, whether "'a substantial number of [a statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,'" <u>id.</u> at 537 (internal citation omitted); and

(3) for Plaintiffs' claim under the Fourth Amendment, whether the inspections under Sections 2257 and 2257A were unconstitutional either because they were unjustified warrantless "searches" of areas or items in which there is a reasonable expectation of privacy,[2] or because they involved "common-law trespass."  <u>Id.</u> at 543.

Plaintiffs move for summary judgment on two claims:  first, that the challenged statutes are unconstitutionally overbroad under the First Amendment; and second, that the statutes and regulations are unconstitutional under the Fourth Amendment.  Defendant

---

[2] Part of this analysis involves determining whether, even if the inspections were "searches" of areas in which there is a reasonable expectation of private, the administrative search exception to the Fourth Amendment warrant requirement is applicable.  The Third Circuit left that question open in its remand decision. <u>Free Speech Coal.</u>, 677 F.3d 5at 544-45.

moves for summary judgment on these same two claims as well as on Plaintiff's as-applied claim under the First Amendment. Having reviewed the parties' Cross Motions for Summary Judgment in some detail, the Court concludes there are material disputes of fact in the record developed thus far as to all three claims and that summary judgment is therefore unwarranted. The Court will enter an Order denying both Motions without prejudice to the parties raising the same issues at the trial scheduled to begin on June 3, 2013.

### A. First Amendment Claims

First, turning to Plaintiffs' facial "over-breadth" claim under the First Amendment, Plaintiffs have presented a number of factual materials showing the potentially wide reach of Sections 2257 and 2257A. For instance, their evidence demonstrates that explicit, sexual depictions are rampant in private communications and that adults regularly exchange such images with one another on devices such as smart phones, cell phones, everyday computers, and social networking websites – all outside the commercial market. Additionally, Plaintiffs' evidence shows there is a large amount of sexually explicit expression depicting adults over age 25, which, according to Plaintiffs, is an age at which individuals "generally speaking . . . cannot be confused as minors." (Pl. Br. at 10). One of Plaintiffs' experts submits that only 2 percent of "pornographic materials in the commercial domain" depicts persons that could be confused as minors, while the other 98 percent depicts persons who are clearly mature adults. (Pl. Ex. B at 6).

Based on this evidence, Plaintiffs argue, Sections 2257 and 2257A should be found overbroad as a matter of law. The statutes' extension to voluminous private

communications and to a vast quantity of depictions of mature-looking adults means they burden an unreasonable amount of speech.

The Court declines to grant summary judgment to either party on the facial over-breadth claim, however, because it finds there are genuine disputes of material fact that preclude judgment as a matter of law. To begin with, there is a genuine dispute on the critical question of whether the amount of expression unfairly burdened by Sections 2257 and 2257A is "substantial" in comparison to the amount of expression reasonably made subject to the statutes in order to effectuate Congress' goal of preventing child pornography.

As explained above, Plaintiffs point to a significant amount of speech that falls under Sections 2257 and 2257A but allegedly does not further Congress' goal of combatting child pornography – i.e., private communications among adults and depictions of persons who are clearly not minors.

Defendant, on the other hand, submits evidence showing "[i]t is impossible to determine a person's age based on visual observation alone" (Def. Statement of Facts ¶ 149), and that "the vast majority of women employed as performers by the pornography industry are either youthful or very youthful looking." (Def. Ex., Expert Report of Gail Dines at 1). Defendant contends these factual submissions help justify the prophylactic nature of Sections 2257 and 2257A because they show that the majority of pornographic depictions do, in fact, portray persons for whom age verification is warranted.

In summary, Plaintiffs' evidence suggests the amount of speech unreasonably burdened by the statutes is large compared to the amount of speech properly made their

subject, while Defendant's evidence suggests the exact opposite. This dispute of fact is best resolved at trial.

Furthermore, the Court finds there are also unresolved issues of fact regarding the *number* of youthful-looking adults and the *number* of mature-looking minors protected by Sections 2257 and 2257A. Even if the Court accepted the conclusion of Plaintiffs' expert that only a small proportion of the persons depicted in commercial pornography are youthful-looking adults, this would still leave open two questions: (1) first, whether the total number of such youthful-looking adults is substantial – and thus, whether Congress was justified in imposing an across-the-board record-keeping requirement despite some burden; and (2) second, whether there is a considerable number of mature-looking individuals below age 18 who might be tempted to participate in commercial pornography and who would be readily hired by producers if there were no record-keeping requirement, and who are therefore also protected by the statute. These unanswered questions are additional reasons why trial is necessary for the facial over-breadth claim.

The Court also declines to enter summary judgment on Plaintiffs' as-applied, First Amendment challenge. Defendant contends summary judgment is warranted in the Government's favor because the record demonstrates without question that "all plaintiffs that have produced sexually explicit material have included young and youthful-looking individuals in their depictions" (Def. Br. at 3), and that "even those who claim not to have focused on young individuals in the past acknowledge that the sexually explicit material they might produce in the future could include such individuals." (Id. at 40-41). Accordingly, Defendant argues, "none of the plaintiffs fall into the very narrow exception

that courts have hypothesized" might be justified for Sections 2257 and 2257A – that is, an exception for producers who use *only* clearly-mature adults in their depictions. (Id. at 41).

Meanwhile, Plaintiffs' factual submissions show that several named Plaintiffs *do* produce materials in which the majority or "vast majority" of persons depicted are adults who could not be mistaken for minors. (Pl. Statement of Undisputed Facts ¶¶ 27-31). Plaintiffs such as Barbara Alper and David Levingston also related, in their depositions and responses to Defendant's Interrogatories, that there are artistic or expressive endeavors they would like to undertake but have restrained from pursuing because of Section 2257's onerous, record-keeping requirement.

In sum, the extent to which the statutes and regulations are overbroad in their application to Plaintiffs – i.e., whether they unnecessarily burden certain artists, journalists, photographers, and producers who specialize in producing materials that do not show young-looking adults and whose speech has been chilled by Sections 2257 and 2257A – are matters best resolved after trial.

Finally, in considering both Plaintiffs' facial and as-applied challenges under the First Amendment, the Court discerns a need to take testimony, subject to in-court questioning, about the options Congress had before it when fashioning the statutes to further its stated goal of preventing juveniles from participating in the pornography business. The Court believes it (and any appellate court) would benefit from testimony presented by both parties as to whether the statutes ultimately chosen, Sections 2257 and 2257A, were a narrowly tailored alternative. From Plaintiffs, the Court would benefit from testimony by witnesses regarding what might have been a more appropriate line for

Congress to have drawn – i.e., to require record-keeping only from producers who use models over age 30 or 40 or 50. From Defendants, the Court would benefit from testimony as to why any other statutory scheme would not be appropriate, and as to why the prophylactic nature of Sections 2257 and 2257A is the most effective mechanism to further Congress's intent.[3]

**B. Fourth Amendment Claim**

Regarding Plaintiffs' Fourth Amendment claim, the Court also determines there are material disputes of fact that make summary judgment unwarranted.[4] To begin with, the parties dispute whether the items and areas searched during the 2006 and 2007 inspections were places in which there is a reasonable expectation of privacy, as well as whether those searches involved common law trespass. Plaintiffs' evidence allegedly demonstrates "that the FBI entered personal officers, employee break rooms, office conference rooms . . . locked rooms where the records . . . were stored [and] closed file cabinets." (Pl. Br. at 19).

Defendant's evidence, on the other hand, appears to show the inspections were generally limited to publicly-accessible portions of Plaintiffs' places of business; that "to the extent [the inspection] involved entering a nonpublic area, it was a consensual entry as well as a very limited one"; and that "few, if any, inspections involved the inspection

---

[3] Counsel should not assume the Court will hear testimony at the trial beginning on June 4, 2013, on the nature of injunctive relief if the Court finds for Plaintiffs in whole or in part. Some evidence on the issue may be proper. However, if there is a finding in favor of Plaintiffs as to liability, the Court would allow an additional evidentiary hearing on the content of any injunction.

[4] The Court agrees, however, with Defendant's argument at pages 10-11 of its Brief, that the only Fourth Amendment claim currently before this Court is an as-applied claim. Count IV of the Amended Complaint avers the statutes and regulations "are unconstitutional under the . . . Fourth Amendmen[t] to the United States Constitution, on their face and as applied, because they authorize unreasonable warrantless searches and seizures." (Amended Complaint ¶ 74) (ECF 84). However, the Third Circuit specifically referred to "Plaintiffs' as-applied Fourth Amendment claim" in discussing the claim being remanded, Free Speech Coal., 677 F.3d at 544 n. 22, and its emphasis on the need for a "fact-intensive inquiry" demonstrates it concluded only an as-applied Fourth Amendment claim would be appropriate, see id. at 544.

7

team searching the filing cabinet or other location where 2257 records were kept" as opposed to being given the records by the producers. (Def. Br. at 24-25). The parties also dispute the reasonableness of the inspections and whether the FBI needed to carry them out without a warrant to effectuate Congress's goal of combatting child pornography.

These questions of fact – concerning the expectations of privacy in the areas searched, the character of the searches and whether they progressed in a cooperative and consensual manner, and the overall reasonableness of the FBI's conduct – are best resolved through trial, where there is the possibility for in-court testimony, credibility assessments, and cross-examination. Given that both parties rely so heavily on FBI reports, the Court also believes it is essential that the FBI agents involved in the investigations be subjected to cross-examination and possible questioning by the Court.

### C.  General

Finally, the Summary Judgment materials themselves are so voluminous and detailed that the Court would have difficulty in rendering a fully articulated memorandum opinion prior to June 4, 2013. The material submitted by both parties on summary judgment stacked together are several feet high, representing hundreds of pages of briefs, allegedly undisputed facts, deposition excerpts, and other exhibits.  The Court cannot meaningfully digest all of this material and render a fully analytical memorandum opinion in the 14 days left until the trial begins.  Reviewing even a portion of this material in the 7 days since it has been filed has taken a great deal of time.

If the Court were to wait for the responses to Summary Judgment, the volume would only be increased, because then the Court would have to look at the responsive briefs about whether there are indeed disputes of fact material to the outcome of the

litigation. Assuredly, additional exhibits will be filed by both parties, opposing the other party's summary judgment motion. Reply briefs will add to the volume. In addition, the parties have cited over 70 cases.  Although the Court believes it is reasonably familiar with the Supreme Court and Third Circuit decisions in this area, further research may be required, and that cannot be completed by June 4, 2013.

Most importantly, this case touches upon important, controversial issues which are frequently debated in public. As the Third Circuit remanded for a factual inquiry, an open courtroom with live witnesses is the best forum to assure a full and fair exposure of the issues.

**BY THE COURT:**

**/s/ Michael M. Baylson**
**_____**
**Michael M. Baylson, U.S.D.J.**

O:\CIVIL 09\09-4607 Free Speech v. Holder\09cv4607.memo.sjm.doc.

9