# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREE SPEECH COALITION, INC., et al.** ) | Civil Action No. 2:09-4607 |
| ) | |
| Plaintiffs, ) | |
| ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- ) | |
| ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.**, ) | |
| Attorney General, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFFS' TRIAL BRIEF

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
   & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

Plaintiffs submit this trial brief in conformance with this Court's May 2, 2013 revised scheduling order. Order (Doc. No. 141) at ¶6.

I.  **PLAINTIFFS' PROPOSED EVIDENCE OF OVERBREADTH**

The Third Circuit remanded this case directing that a record be developed regarding two distinct types of expression: (1) expression depicting "performers who are obviously adults," and (2) private, noncommercial sexually explicit depictions of adults. *Free Speech Coalition v. Holder,* 677 F.3d 519, 538 (3rd Cir. 2012). A showing that the statutes burden substantial quantities of *either* category of expression demonstrates the statutes' unconstitutional overbreadth.

To begin, it is important to identify the imagery that falls under the statutes' regulation. The record keeping requirement of 18 U.S.C. § 2257 applies to anyone who produces any visual depiction of actual "sexually explicit conduct." Section 2256 of Title 18, United States Code, defines "sexually explicit conduct," in pertinent part, as actual sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; masturbation; sadistic or masochistic abuse; and lascivious exhibition of the genitals or pubic area of any person.

Section 2257A goes further and imposes record keeping requirements on anyone who produces an image that contains one or more visual depictions of *simulated* sexually explicit conduct. As a result, images that *simulate* sexual intercourse, *simulate* masturbation, *simulate* sadistic or masochistic abuse or *simulate* the lascivious exhibition of the genitals or pubic region are brought within the scope of the law.

The court in *American Library Ass'n v. Thornburgh*, 713 F.Supp. 469 (D.D.C. 1989), *vacated sub nom., Amer. Lib. Ass'n v. Barr,* 956 F.2d 1178 (D.C.Cir., 1992), in considering a challenge to the initial version of 18 U.S.C. § 2257, described its reach:

1

> The crucial term "sexually explicit conduct" is considerably broader than the dictionary definitions of the words might lead one to believe. The term, taken from existing child pornography law, covers any "lascivious exhibition of the genitals or pubic area of any person," as well as depictions of various methods of sexual intercourse, bestiality, masturbation, and sadism and masochism. See 18 U.S.C. § 2257(g) (referring to 18 U.S.C. § 2256). The key term is of course "lascivious," which has been upheld by courts in challenges that it is constitutionally too vague. *See, e.g., Hamling v. United States,* 418 U.S. 87, 112–21, 94 S.Ct. 2887, 2904–10, 41 L.Ed.2d 590 (1974). In addition, courts have held that factors used to determine whether an image is "lascivious" include whether the pose is "sexually suggestive" or "designed to elicit a sexual response in the viewer," among other factors. *See, e.g., United States v. Dost,* 636 F.Supp. 828, 832 (S.D.Cal.1986); *aff'd sub. nom. United States v. Wiegand,* 812 F.2d 1239 (9th Cir.1987). **Thus, it is fair to conclude that any frontal nude image of a person in what might otherwise be called an "erotic" pose is likely to be included as "lascivious."**

*Id*. at 474 (footnote omitted) (emphasis added) Thus, 18 U.S.C. § 2257 covers the images of sex acts, masturbation, sadomasochism, and erotic nude images.

However, its reach is even more extensive because even nudity is not always required for an image to fall within the law. The Third Circuit has held that clothed images can constitute the "lascivious exhibition of the genitals or pubic area of any person," and bring an image within the statutes' definitions. *United States v. Knox,* 32 F.3d 733, 737(3rd Cir. 1994). ("We hold that the federal child pornography statute, on its face, contains no nudity or discernability requirement, that non-nude visual depictions, such as the ones contained in this record, can qualify as lascivious exhibitions, and that this construction does not render the statute unconstitutionally overbroad.") As a result, even certain clothed images can trigger the requirements of 18 U.S.C. § 2257.

The Department of Justice confirmed as much in the preamble to the regulations implementing the statutes. In considering what constitutes the "lascivious exhibition of the genitals or pubic area," the Justice Department concluded that the factors set out by the district court in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *aff'd*, 813 F.2d 1231 (9th Cir. 1987), a child pornography case, with

2

the exception of age, should be applied to images of adults.[1] Indeed, the government has identified "the object of [its] concern" as "sexually explicit expression that, if it involved underage individuals, would qualify as child pornography." Defendant's Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. No. 177-1) at 38, 48.[2]

The Department rejected comments to the proposed regulation that the *Dost* factors were vague and "not readily transferable to an adult." Accordingly, "[i]f the acts depicted would fall within any of the remaining *Dost* factors [other than age] if they were performed by a minor, one who produces actual sexually explicit conduct must comply with the record keeping requirements." 73 Fed. Reg 77440.

Title 18 U.S.C. § 2257A, which burdens images of "simulated" sexually explicit conduct stretches the coverage of the recordkeeping scheme even further. Under the regulations promulgated by the Department of Justice, "simulated sexually explicit conduct" means "conduct engaged in by

---

[1] The *Dost* court noted that, as applicable, the following ought to be considered in determining whether an image was a lascivious exhibition of the genitals or pubic area: "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id*. at 832.

[2] This contention demonstrates the flaw in the government's argument on the narrow tailoring prong under intermediate scrutiny. In arguing that the statute is narrowly tailored to effectuate a substantial governmental interest, the government has shifted the interest purportedly advanced by the regulation under the first prong of intermediate scrutiny–that being, combating child pornography–to a different interest–requiring producers of sexually explicit expression to establish that their expression is not child pornography. That interest is, however, an illegitimate one because it reverses the presumption conferred on expressive materials by the First Amendment. *Fort Wayne Books, Inc. v. State of Indiana,* 489 U.S. 46, 67 (1989); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). The government's argument thus relies on the type of unconstitutional interest-shifting that the Court rejected in *Simon & Schuster, Inc. v. Members of the New York State Crime Board*, 502 U.S. 105, 120 (1991).

performers in a visual depiction that is intended to appear as if the performers are engaged in actual sexually explicit conduct, and does so appear to a reasonable viewer." 28 C.F.R. 75.1 (o).

In the preamble to the regulations that adopted that definition, the Department explained that the definition of simulated sexual acts did not require nudity as a precondition of its applicability. It examined three versions of state laws that similarly prohibited simulated sexual conduct, and rejected the two versions that required nudity as a precondition of its application. It stated:

> The other two definitions, which require the actual depiction of nudity, are overly restrictive in that a child may be exploited in the production of a visual depiction of simulated sexually explicit conduct even if no nudity is present in the final version of the visual depiction. The producer of the depiction may arrange the camera or the body positions to avoid depicting uncovered genitals, breasts, or buttocks yet still cause harm to the child by having him or her otherwise realistically appear to be engaging in sexually explicit conduct.

73 Fed. Reg. 77436. Thus, as applied to constitutionally protected **adult** images burdened by the expansion of the record keeping requirements to simulated sexually explicit conduct, sexual images are covered by the regulation even if the performers are not completely nude.

A law regulating speech will be struck down as overbroad "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 537 (3rd Cir. 2012) (citations omitted). In making that assessment, courts "must pose reasonable but challenging hypotheticals to determine the statute's sweep." *United States v. Stevens,* 533 F.3d 218, 235 (3rd Cir. 2008) (en banc) *aff'd* 559 U.S. 460 (2010). *Cf. United States v. Williams*, 553 U.S. 285, 301-02 (2008) (rejecting "fanciful" hypotheticals as evidence of overbreadth).

Striking down the federal criminal statute at issue in *Stevens*, the Court cited potential unconstitutional applications of the statute to hunting magazines, hunting videos, depictions of Spanish bullfighting, and Japanese dogfights in reaching the conclusion that the statute was unconstitutionally overbroad. 133 S.Ct. at 1589-90. In doing so, the Court relied on "reasonable"

4

hypotheticals provided by amici in their briefs filed in the case. *Id.; See* Brief for Professional Outdoor Media Association, at 9-10, http://www.americanbar.org/content/dam/aba/publishing/preview/publiced_preview_briefs_pdfs_07_08_08_769_RespondentAmCu6MediaOrgs.authcheckdam.pdf; Brief for Safari Club International at 12, http://www.americanbar.org/content/dam/aba/publishing/preview/publiced_preview_briefs_pdfs_07_08_08_769_RespondentAmCuSafariClub.authcheckdam.pdf.

Similarly, in *Brown v. Entertainment Merchants Ass'n*, the Court relied on "reasonable" hypotheticals provided in an amicus brief (Grimm's Fairy Tales, "penny dreadfuls," and Homer's The Odyssey) as well as applications to literary classics (Dante's Inferno, Golding's Lord of the Flies) independently provided by the Court itself in reaching the conclusion that California's statute regulating video games was unconstitutionally overbroad. 131 S.Ct. 2729, 2736-37 (2011); *see* Brief of Cato Institute at 4-7.   http://www.americanbar.org/content/dam/ aba/publishing/preview/publiced_preview_briefs_pdfs_09_10_08_1448_RespondentAmCuCATOInst.authcheckdam.pdf

In *Free Speech Coalition v. Ashcroft*, the Court offered "reasonable" hypotheticals of its own. 535 U.S. 234, 247-48 (2002) (citing Romeo and Juliet and award-winning movies, *Traffic*, and *American Beauty*, as potential unconstitutional applications rendering the challenged statute unconstitutionally overbroad). *See also, McCauley v. University of the Virgin Islands*, 618 F.3d 232, 251 (3rd Cir. 2010) ("The scenarios in which this prong may be implicated are endless: a religious student organization inviting an atheist to attend a group prayer meeting on campus could prompt him to seek assistance in dealing with the distress of being invited to the event; minority students may feel emotional distress when other students protest against affirmative action; a pro-life student may feel emotional distress when a pro-choice student distributes Planned Parenthood pamphlets on campus; even simple name-calling could be punished.")

This well-accepted means of demonstrating the substantial overbreadth of a law regulating speech–posing "reasonable" hypotheticals of the law's application to protected expression–serves as a backdrop in assessing the Third Circuit's charge to allow Plaintiffs to develop a record regarding the extent of the statutes' application to private expression depicting sexual conduct.

Plaintiffs, therefore, set about developing the record regarding the extent of the private conduct–keeping in mind the statutes' expansive definition of what constitutes sexually explicit conduct–to which the statutes apply. In doing so, they have not simply compiled "reasonable hypotheticals" demonstrating the statutes' unconstitutional incursion on private expression; rather, they have compiled evidence of the amount of private expression burdened by the statutes.

Specifically, Plaintiffs will produce the testimony of two expert witnesses who have studied sexting as part of the sexual behavior of young adults in the course of their independent academic research. See Ex. C, Report of Marc A. Zimmerman, Ph.D. (Doc. No. 146); Ex. D, Report of Michelle Drouin, Ph.D. (Doc. No. 146). Both Dr. Zimmerman and Dr. Drouin have published peer reviewed articles in which they examined the prevalence of sexting among this population. Their research revealed that a sizeable percentage of young adults exchange sexually explicit visual depictions as part of their sexual relationships. Zimmerman's and Drouin's research demonstrate that sexting is a prevalent practice among young adults and that millions of adults engage in private communications involving sexually explicit imagery.

Plaintiffs will also present the testimony of Daniel Linz, Ph.D., who will describe the myriad ways in which adults privately exchange sexually explicit visual depictions in the course of their intimate communications. In addition, Dr. Linz will testify about the substantial quantity of expression–both private and commercial–that involve depictions of mature adults who could not be confused as children.

6

On top of that, Plaintiffs have compiled a formidable body of documentary evidence establishing that many millions of adults produce explicit sexual imagery as part of their sexual relationships–on adult social networking websites, on their cell phones, on their computers, on their digital cameras, and camcorders. They will produce screen shots of web pages from websites documenting the vast quantity of private expression containing sexually explicit images. *United States v. Bansal*, 663 F.3d 634, 667 (3rd Cir. 2011) (screen shots of computer websites are admissible); *The Knit With v. Knitting Fever, Inc.,* 2012 WL 3235108 (E.D. PA 2012) (same); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (same); *Firehouse Restaurant Group v. Scurmont, LLC*, 2011 WL 3555704 (D.S.C. 2011) (same); *United States v. Standring*, 2006 WL 689116 (S.D. Ohio 2006) (same).

Additionally, Plaintiffs will offer the declaration of a government computer forensic specialist submitted in *Connection Distributing Co. v. Gonzales*, Case No. 95 CV 1993 (U.S.Dist. Ct. N.D. Ohio) likewise evidencing the vast amount of sexually explicit private expression exchanged on an adult networking website. *Marrakush Soc. v. New Jersey State Police*, 2009 WL 2366132 (D.N.J. July 30, 2009) ("[T]he court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings.'") *citing*, *Jackson v. Broad. Music, Inc.*, 2006 U.S. Dist. LEXIS 3960, at *18 (S.D.N.Y. Jan. 31, 2006).[3]

Millions of adults who share sexts or other private communications that include erotic

---

[3] In addition, Plaintiffs will offer examples of important political and artistic expression, which subject its producers–none of whom "sexually exploit children," *Free Speech Coalition*, 677 F.3d at 538–to criminal sanction for creating and publishing without collecting the proper government photo identification, maintaining the requisite records, and labeling their expression. Examples include documentaries, new reports, pictorials, and films on Abu Ghraib, on rape, and on sexual abuse as part of the atrocities of war.

imagery, therefore, are required to collect photo identification of the persons appearing in that imagery, to maintain those records, to label their images with their home address, and since they are not engaged in the business of producing sexually explicit expression, to send a notice to the Attorney General identifying what hours the records are available for inspection, which must, in any case, be at least 20 hours per week.

The government has suggested that the robust quantity of private, noncommercial sexually explicit expression shows that the recordkeeping statutes have not chilled these communications and thus, invalidation on overbreadth grounds is unwarranted. But in *Stevens*, no one suggested that because the publishers of hunting magazines with "circulations in the hundreds of thousands or millions" and annual retail sales totaling $135 million had not been chilled, the Court should not strike down the law at issue in that case. *Stevens,* 130 S.Ct. at 1589. Nor did the fact that *Traffic* and *American Beauty* were both box office successes give the Court pause in striking down the overbroad law in *Free Speech Coalition,* 535 U.S. at 247-48.

The simple truth is that millions of Americans are completely unaware of 18 U.S.C. §§ 2257, 2257A and their application to their expression. Should they become aware of the law, they would no doubt cease their sexually explicit communications, and this body of expression would be chilled. Betty Dodson's and Carlin Ross's experience demonstrates the point. When they advised visitors to their website of the law's requirements and began to require photo identification for posting to the genital art gallery, submissions all but ceased.

Plaintiffs will also offer evidence of the substantial amount of sexually explicit expression–both commercial and non-commercial–depicting mature adults, including Plaintiffs' own expression. Plaintiffs' expert, Daniel Linz, a well-recognized authority on commercial sexually explicit expression, will testify that only a very small percentage of commercial adult expression

8

depicts youthful looking performers who might be confused as adults. Buttressing Linz's testimony will be the testimony of Jeffrey Douglas, Chair of the Free Speech Coalition, and Joy King, a former adult film executive, who will testify about the longstanding practice in the adult film industry of verifying that their performers are adults.

## II.     PLAINTIFFS' PROPOSED EVIDENCE ON THEIR AS-APPLIED CHALLENGE

Plaintiffs represent an array of individuals who produce sexually explicit expression depicting adults.

Plaintiff Sinclair Institute is a primary producer of sex education material for "people who may have problems because of their health" and "people who may lack information about healthy sexual relationships among adults."[4] Its materials are developed by experts in sex education, research, therapy, and clinical practice and have received awards from numerous organizations including The Society for the Scientific Study of Sexuality, National Council on Family Relations, and International Health & Medical Media (Time, Inc. Health). The majority of the persons appearing in Sinclair Institute's films are 30 years of age or older.

Plaintiff s Betty Dodson and Carlin Ross operate a website designed to provide sex positive education. Specifically, Dodson and Ross focus on "women understanding their bodies and how to stimulate their bodies and appreciate their bodies" as part of feminist sex education. In addition, they have produced a series of sex education DVDs that contain sexually explicit visual depictions. The majority of performers in their DVDs are over the age of 25 and range up to age 60. The website includes a genital art gallery. Ross and Dodson have traveled the world as sex educators and have

---

[4] Sinclair is also a secondary producer of many films produced by others that are offered on its website as part of its catalogue of films offered for sale, some of which depict youthful looking performers. The films that Sinclair produces in its capacity as a primary producer, however, depict adults who are obviously mature.

9

found that the "number-one issue people have that keeps them from having good sex, which is about intimacy and relationships, is genital shame." The genital art gallery is designed to remove "the fig leaf." People posted photos of their genitals accompanied by essays about their sex life and sexual development; they wrote about being married, having children, and sex post-pregnancy.  Prior to the amendment to 18 U.S.C. § 2257 which applied its requirements to the lascivious display of the genitals, the genital art gallery had hundreds of images.  Some of the images had graying pubic hair. After the law's amendment, the genital art gallery was vastly reduced because people refused to provide photo identification as a condition of posting their images. The project has come to a halt.

Plaintiff Carol Queen is also a feminist sex educator who founded the Center for Sex and Culture.  As part of Queen's educational mission regarding sexual health, including masturbation, she has organized Masturbate-a-Thons, which are designed to raise awareness of masturbation and to communicate about the sexology of masturbation. The event is confined to adults and mainly attracts adults in their 30s and 40s with some participants in their 60s and 70s.  The Masturbate-a-Thons have attracted interest from media all over the world.  The event is livestreamed on the internet.

Plaintiff Marie Levine produces webcam shows that are available for viewing on her website, Nina.com. She holds a bachelors degree in nursing and has appeared in adult films as well as sex education videos, including a 38-volume series by Adam and Eve. In her webcam shows, Ms. Levine, who is 54 years old, presents important lessons on sexual health with other individuals who are also unmistakably adults.

Plaintiffs Steinberg, Levingston, Nitke, and Alper all produce artistic expression depicting mature adults who could not be mistaken as children.  Barbara Alper's work has been purchased by the New York Public Library for their collection. Her work has been exhibited and written about

nationally and internationally, most recently in Sydney, Australia in a show called "Night Vision." David Steinberg was named 2010 Erotic Photographer of the Year by the Leydig Trust (London), and was honored as one of five inaugural Masters of Erotic Art by the Seattle Erotic Art Festival in June 2012). Dave Levingston's work has been displayed at the Kinsey Institute and is featured on a number of websites. Barbara Nitke's work has been exhibited in galleries throughout the United States as well as internationally; she is a member of the faculty of the School of Visual Arts, New York. The majority of Steinberg's models are between the ages of 36 and 45. Most of Nitke's models are in their 30s and 40s and older, while Dave Levingston works with many models in their 30s, 40s and older. Steinberg and Nitke have thousands of photographs that meet the statutes' definition of sexually explicit expression. Levingston likewise has taken thousands of photographs that could be interpreted as depicting the lascivious exhibition of the genitals or pubic region and with the amendment of the statute to include this imagery, has ceased taking photos that might trigger recordkeeping obligations under the statute.

While each of the Plaintiffs has produced expression depicting persons under the age of 25, the bulk of their body of work depicts older adults.

### III. PLAINTIFFS' PROPOSED EVIDENCE ON THEIR FOURTH AMENDMENT CLAIMS

This Court has concluded that only Plaintiffs' as-applied Fourth Amendment challenge is before this Court on remand. Order (Doc. No. 185) at 7, n.4. Plaintiffs respectfully disagree. The Third Circuit noted that "Plaintiffs brought an ***as-applied and facial Fourth Amendment claim***." *Free Speech Coalition,* 677 F.3d at 542 (emphasis added). It vacated this Court's dismissal of "Plaintiffs' ***claims*** under the Fourth Amendment" and remanded them for development of a factual record. *Id.* (emphasis added). *See also, Id.* at 546 (vacating dismissal of Count 4 of Plaintiffs'

11

Amended Complaint which includes both as-applied and facial challenges).[5]  Its opinion included no instruction to this Court or the parties that the issue on remand was confined to Plaintiffs' as-applied challenge or language indicating that it was affirming the dismissal of Plaintiffs' facial challenge under the Fourth Amendment.

In *United States v. Mitchell*, an en banc decision issued less than one year before its decision in this case, the court addressed the distinction between an as-applied Fourth Amendment challenge and a facial one in evaluating the constitutionality of the DNA Act. 652 F.3d 387, 405 (3rd Cir. 2011) (en banc).  The en banc court wrote:

> As a threshold matter, we must tackle the question of whether Mitchell's attack on 42 U.S.C. § 14135a is in the form of an as-applied or facial challenge.  Following oral argument, the Court requested additional briefing to clarify this issue, which ultimately affects the burden on Mitchell....If the additional briefing makes one thing clear, it is that the parties dispute whether Mitchell's challenge was facial or as-applied.  In addition, the District Court did not specify what type of challenge it was considering, and the original briefs filed with this court are similarly ambiguous.  Given there is no consensus among the parties about the type of legal challenge being asserted, we will address both.

*Id.* (footnote omitted).  Here, there is no dispute that Plaintiffs challenged the statutes on both grounds; had the Third Circuit intended to affirm the dismissal of Plaintiffs' facial challenge under the Fourth Amendment and only remand Plaintiffs' as-applied Fourth Amendment challenge, it would have said so.

Plaintiffs' evidence will establish that the warrantless searches conducted under I8 U.S.C. § 2257 and its implementing regulations were unconstitutional under the Fourth Amendment.  All 29 inspections were conducted without a search warrant and without probable cause to believe that

---

[5] In discussing Plaintiffs' as-applied and facial challenge to the statutes under the First Amendment, the court divided its opinion into two specific sections: one titled, "As-Applied Challenge," *id.* at 533, and the other titled, "Facial Challenge." *Id.* at 537.  The court made no such distinction in addressing Plaintiffs' Fourth Amendment claims but addressed them together as a single issue.

a crime had been committed. The agents entered six private residences to perform inspections of 2257 records as well as private areas of business premises to which the general public was not given access, including private offices, office filing cabinets, employee break rooms, and locked file rooms. In two instances, the agents gained access to private storage facilities that had been rented by the producers to store the records and to which the public did not have access.

While never expressly or directly relying upon the voluntary consent exception to the warrant requirement of the Fourth Amendment, the government has suggested that there was a consensual component to the challenged inspections. However, consent to a search is a "jealously and carefully drawn" exception to the warrant requirement. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). The government bears the burden of proving that consent was "freely and voluntarily" given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *United States v. Molt*, 589 F.2d 1247, 1251 (3rd Cir. 1978) ("When evidence exists to show the opposite[,] that a defendant believed he must consent[,] such evidence weighs heavily against a finding that consent was voluntarily given."). In determining that the subject of a search need not be advised that he or she has a right to refuse to allow the search to establish the voluntariness of his or her consent, the Court in *Schneckloth,* nonetheless, stressed that "the subject's knowledge of a right to refuse is a factor to be taken into account" in determining the voluntariness of his or her consent. *Schneckloth*, 412 U.S. at 249.

Here, the statute itself removed the option of "withholding consent" to the searches. Title 18 U.S.C. § 2257 (f)(5) makes it unlawful "to refuse to permit the Attorney General or his or her designee to conduct an inspection." At the beginning of the inspections of 15 of the 27 producers, the FBI handed them a letter advising them that "it is a criminal violation of federal law to delay or obstruct the FBI from conducting the inspection." The targets of the inspection had no right to resist

the search. The searches were not consensual.

In *Bumper*, the Supreme Court explained:

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion–albeit colorably lawful coercion. Where there is coercion there cannot be consent.

391 U.S. at 550.

In the face of the statute making it a crime to refuse an inspection and the regulations authorizing the agents to enter their premises without delay or advance notice, any "consent" the government may attempt to posit here could not, as a matter of law, have been "freely and voluntarily" given. *See Camara v. Municipal Court*, 387 U.S. 523 (1967) (refusal to allow warrantless inspection resulted in prosecution); *See v. City of Seattle*, 387 U.S. 541(1967) (same). It matters not that the agents may have been polite and respectful, nor that the producers may have been accommodating, helpful, and cooperative. The situation was "instinct with coercion." The producers had no choice but to permit the FBI Agents to conduct the inspection where and how they saw fit. The government cannot rely upon consent to justify the warrantless inspections.

## IV.   OPTIONS AVAILABLE TO CONGRESS

Regulatory agencies and state legislatures regulating products or activities that are legal for adults, but illegal for children, have enacted laws that more narrowly tailor their provisions, such that the entire population of adults is not burdened by the regulation. *See e.g.,* 21 CFR § 1140.14 (providing that no age verification is required for sale of tobacco products for any person over the age of 26); N.Y. Pub. Health Law § 1399-cc (McKinney) (providing that with regard to the sale of tobacco products, "identification need not be required of any individual who reasonably appears to be at least twenty-five years of age...."); Oregon Administrative Rule 845-006-0335 (requiring age

14

verification if person appears to be under the age of 26 for sale of alcohol); Me. Rev. Stat. tit. 28-A, § 706 (prohibiting sale of alcohol to anyone under the age of 27 unless age verified by photo identification); Me. Rev. Stat. tit. 22, § 1555-B (same re: tobacco); *Walnut Brewery, Inc. v. Iowa Dep't of Commerce-Alcoholic Beverages Div.*, 775 N.W.2d 724, 730 (Iowa Ct. App. 2009) (" [A] licensee does not have to request identification when the age of the patron is known or reasonably beyond question.")

Other recordkeeping laws–most notably those designed to prevent the employment of illegal aliens–are enforced by civil penalties for paperwork violations rather than the severe criminal sanctions at stake here. *See* 8 U.S.C. § 1324a (e)(5). *See also* 8 U.S.C. § 1762 (institutions enrolling nonimmigrants); 21 U.S.C. § 6761 (chemicals that can be used in weapons).

Respectfully submitted,

Date: May 24, 2013

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio 44113-1949
(216) 781-5245 / (216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200 / (215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2013, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs