IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2:09-4607 |
| | ) | |
| v. | ) | Judge Michael M. Baylson |
| | ) | |
| THE HONORABLE ERIC H. HOLDER, JR., | ) | |
| Attorney General, | ) | **DEFENDANT'S TRIAL BRIEF** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

In accord with the Court's revised scheduling order of May 2, 2013, defendant submits this trial brief in response to plaintiffs' brief filed on May 24, 2013 (ECF No. 189). As set forth further below, plaintiffs' proposed evidence does not establish any basis for them to prevail in their First and Fourth Amendment challenges to the age verification and recordkeeping requirements of 18 U.S.C. §§ 2257 and 2257A. First, plaintiffs themselves are not entitled to an exemption from the requirements. Plaintiffs purport to be or represent adult entertainment industry filmmakers, photographers, journalists, artists, and educators who produce depictions of sexually explicit conduct for sale or public viewing. There is no reason plaintiffs should not check government identification of the individuals they depict, when they have used youthful looking individuals in the past and may do so in the future. Second, the statutes are not substantially overbroad so as to warrant facial invalidation. Plaintiffs attempt to rely on examples of "private" communications that are not private at all, such as tube and dating sites that include youthful looking individuals and fall within the plainly legitimate sweep of the statutes. The only evidence that plaintiffs offer of couples creating sexually explicit depictions for their own private

use is speculative and unreliable. Third, the 2257 records inspections that occurred in the past do not support plaintiffs' standing to raise an as-applied Fourth Amendment claim for injunctive relief, and the concrete factual contexts of those inspections do not establish a Fourth Amendment violation. Finally, plaintiffs' proposed revision of the statutes by analogy to alcohol and tobacco laws reflects a fundamental misunderstanding of the applicable legal standards and the government interests at stake.

## I.     THE 2257 REQUIREMENTS ARE NARROWLY TAILORED AS APPLIED TO PLAINTIFFS' PRODUCTION OF SEXUALLY EXPLICIT MATERIAL

None of the plaintiffs have identified any legitimate or workable basis on which they might be exempted from the 2257 requirements. The Third Circuit has held that intermediate scrutiny applies to plaintiffs' as-applied claims and that two of the three prongs of the intermediate scrutiny test are satisfied. *Free Speech Coal. v. Attorney General*, 677 F.3d 519, 535-36 & n.13 (3d Cir. 2012) ("*FSC II*"). The court held that the first prong was satisfied because "[t]he Statutes clearly advance a substantial government interest—protecting children from sexual exploitation by pornographers"—and do so "in at least four specific ways: (1) they ensure that primary producers of sexually explicit expression confirm the ages of their performers prior to filming; (2) they permit secondary producers that publish the depictions to verify that the performers were not children; (3) they prevent children from passing themselves off as adults; and (4) they aid law enforcement and eliminate subjective disputes with producers over whether the producer should have verified the age of a particular performer." *Id.* (internal quotation omitted).[1] The court held that the statutes satisfy the third prong in "leav[ing] open

---

[1] The Third Circuit expressly rejected plaintiffs' arguments that "the government failed to demonstrate that the Statutes advance that particular interest or that the problems identified are real, not conjectural," and also rejected the opinion expressed in the concurrence that "the government has not demonstrated that the Statutes advance the government's interest of

alternative channels for communication" because, while "[t]he Statutes regulate recordkeeping and labeling procedures," they "do not ban or otherwise limit speech." *Id.* at 535 n.13.

The only question before this Court, with respect to plaintiffs' as-applied First Amendment challenge, is the second prong of the intermediate scrutiny analysis— whether the 2257 requirements are "narrowly tailored" as applied to each plaintiff. That prong is satisfied "where the statute at issue does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 536 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). Under this standard, the 2257 requirements should be upheld if the government's interests "'would be achieved less effectively" if the requirements did not apply to the speech at issue in the case. *Johnson v. City & County of Philadelphia*, 665 F.3d 486, 492 (3d Cir. 2011) (quoting Ward, 491 U.S. at 799).

The age verification and recordkeeping requirements of §§ 2257 and 2257A do not burden substantially more of plaintiffs' speech than necessary. All plaintiffs who have produced depictions of sexually explicit conduct have publicly posted, published or sold depictions using young and youthful looking individuals and there is no reason to believe they will not use such individuals in their work in the future. Dr. Biro will testify that some plaintiffs have produced sexually explicit depictions that include individuals who could be confused as minors, or whose age cannot be determined based on the information available in the depiction. While some of these plaintiffs intend to testify that they are artists or educators, that fact has no bearing at all on whether the 2257 requirements legitimately apply. The fact remains that, regardless of the purported value of the material, if these plaintiffs included individuals under age 18 in their sexually explicit depictions, those depictions would be child pornography.

_____

protecting children in a direct and effective way." *Id.* at 535-36 & n.12.

The government's important interests would be served less effectively if these individuals were exempted from taking the common sense prophylactic measure of checking government-issued identifications of individuals before using them to create sexually explicit depictions. Any exception to universal age verification that this Court might attempt to create for one or more of these plaintiffs—including an exception based on a credibility determination that a particular plaintiff "would never" intentionally use an underage individual in sexually explicit work—would create loopholes and open the door to widespread circumvention of the 2257 requirements. It would be impossible for courts to evaluate the credibility of every producer who creates sexually explicit work. Moreover, absent age verification, producers may inadvertently include underage individuals in their work.[2]

## II.   PLAINTIFFS' EVIDENCE DOES NOT SUPPORT FACIAL OVERBREADTH

The evidence that plaintiffs propose to offer does not remotely demonstrate that the 2257 requirements are substantially overbroad in relation to their plainly legitimate sweep. Indeed, nearly all of what plaintiffs point to as demonstrating overbroad applications are actually

---

[2] Plaintiffs' description of their evidence in support of their as-applied challenges makes no mention of as-applied claims by the two organizational plaintiffs, Free Speech Coalition ("FSC") and the American Society of Media Photographers ("ASMP"), nor of an as-applied claim by plaintiff Thomas Hymes. Defendant has previously argued that Hymes lacks standing to assert a claim because he concedes that, for reasons unrelated to the 2257 requirements, he has not been actively maintaining the website on which his claim was focused since 2009, and has no time to do so. In addition, plaintiff ASMP lacks organizational standing to assert a claim on behalf of its members because ASMP's mission is focused on intellectual property rights and business practices of photographers in general, rather than issues relating to the content of its members' expression; and ASMP lacks information about any sexually explicit depictions that its members might create, sufficient to address the issues identified by the Third Circuit for remand. The only members that ASMP has identified use a significant number of youthful looking individuals in their sexually explicit depictions. As for FSC, its members consist of adult industry producers who lie at the heart of the plainly legitimate sweep of the 2257 requirements. FSC members also use a significant number of youthful looking individuals in their sexually explicit depictions. Three of the remaining plaintiffs—Barbara Alper, David Levingston, and Carol Queen—also fail to identify evidence sufficient to establish standing at this stage of proceedings.

publicly available depictions of sexually explicit conduct that include youthful looking

individuals. All these depictions fall within the plainly legitimate sweep of the statutes.

Meanwhile, any application of the requirements to purely private communications is speculative

and remote and, at best, might give rise to an as-applied claim. Facial invalidation is

unwarranted.

The Third Circuit identified only two questions appropriate for factual development in

regard to overbreadth: (1) whether the 2257 requirements are substantially overbroad based on

"their purported regulation of purely private conduct," consisting of "private, non-commercial

depictions created and viewed by adults in their homes"; and (2) whether the 2257 requirements

are substantially overbroad based on plaintiffs' assertion that "a 'vast quantity' of protected

sexually explicit depictions include performers who are 'clearly mature adults' that 'could not be

mistaken for children.'" *FSC II*, 677 F.3d at 538. Plaintiffs cannot establish substantial

overbreadth on either ground.

First, the "plainly legitimate sweep" of the 2257 requirements is vast. Dr. Gail Dines,

who has studied and written about the pornography industry for over twenty-five years, will

testify that pornography found on the Internet (which is by far the most popular way to view

pornography) contains an overwhelming preponderance of youthful looking performers—

including those who appear in a highly popular genre called "teen porn," where the performers

are intentionally made to appear very youthful through the use of props and other techniques. Dr.

Dines will also testify that pornography described as "MILF" or "Mature" consistently includes

youthful looking individuals as well, and that pornography advertised as "free" or "amateur" is

often part of a commercial enterprise. Thus, the evidence will leave no question that the statutes

legitimately apply to a vast array of sexually explicit images of youthful individuals.

Second, in the face of the vast legitimate sweep of the 2257 requirements, plaintiffs cannot show that facial invalidation is appropriate. Notably, the majority of the websites that plaintiffs have identified as demonstrating the extent of "private" communications—such as tube, dating, hookup, and social networking sites—have nothing to do with private non-commercial communications by intimate partners in their own home. Far from bolstering plaintiffs' claim, these sites fall well within the plainly legitimate sweep of the 2257 requirements to the extent they contain depictions of sexually explicit conduct.

Third, the sexually explicit depictions produced by those who claim to be artists, journalists, and educators similarly are not "purely private communications" between intimate couples in their home, nor is such work limited to depicting "clearly mature" adults. Instead, this work includes an array of sexually explicit materials, including depictions of youthful looking individuals, that are widely and readily available publicly. Again, the 2257 requirements properly apply in these contexts. Nothing about the artistic, journalistic, or educational nature of a depiction of sexually explicit conduct within the meaning of §§ 2257 and 2257A changes the fact that the depiction would be child pornography if it portrayed an individual under 18. *New York v. Ferber*, 458 U.S. 747, 761 (1982).

Plaintiffs identify little, if any, evidence regarding the existence of "purely private" sexually explicit depictions "created and viewed by adults in their homes." Indeed, plaintiffs have not identified a single example of "purely private" depictions created by a couple for use in their own home. This is not surprising since, by definition, such depictions would not be publicly available. As defendant has previously argued, the extent of such a practice is "not only unknown but likely unknowable." *FSC II*, 677 F.3d at 540 n.16. For this reason (even apart from the fact that the Government does not interpret the requirements to apply in a "purely private"

context), couples who do create purely private depictions for use in their home are unlikely to be chilled, and plaintiffs have identified no evidence to the contrary. Rather, plaintiffs again attempt to expand the scope of what constitutes a private communication to include posting images on the Internet, such as the images in the Genital Art Gallery maintained by plaintiffs Betty Dodson and Carlin Ross. Pl. Br. at 8 (Doc. No. 189). But images posted on the Internet are not "private." Rather, they fall within the plainly legitimate sweep of the 2257 requirements. By citing an alleged "chill" in submissions to the Genital Art Gallery, plaintiffs appear to be attempting to resurrect an "anonymous speech" claim on behalf of third parties, but that claim has already been rejected and is not before this Court on remand. *FSC II*, 677 F.3d at 545.

In an effort to demonstrate the alleged overbreadth of §§ 2257 and 2257A, plaintiffs therefore rely entirely on three experts, none of which identifies any reliable basis for assessing the prevalence of "purely private" sexually explicit depictions or demonstrate that the statutes are overbroad in relation to the statutes' plainly legitimate sweep. Plaintiffs will offer the testimony of Dr. Daniel Linz in support of the notion that there are "myriad ways in which adults privately exchange sexually explicit visual depictions in the course of their private communications." Pl. Br. at 6. Linz's analysis includes expression that is not "purely private" at all—such as tube and dating site postings—and the only basis for his extremely vague quantitative conclusion that "many millions of adult Americans" produce such material consists of site visit numbers and (to a lesser extent) membership counts for these (not really "private") sites.[3]

Plaintiffs also offer Linz's conclusion that most "adult" pornography is outside the legitimate sweep of the 2257 requirements because (1) Linz's division of [Google hits for "teen

---

[3] Linz's background in analyzing the adverse secondary effects of adult businesses does not qualify him to evaluate "the quantity" of private sexually explicit expression – which was the question that his expert report purports to answer. See ECF No. 182-2, rpt. at 2, 7-8.

pron"] by [Google hits for "porn"] yielded a ratio of .02; and (2) Linz opines that most child pornography is not commercial, is not on the Internet, and involves very young children rather than older adolescents. Again, even apart from his lack of expertise to address these questions, Linz's method for assessing the prevalence of child pornography by conducting a Google search for "child pron," or for comparing the numbers of certain types of images by dividing Google hits for certain textual search terms, has no scientific basis and is obviously unreliable. In contrast, defendant will offer the testimony of Janice Wolak, Senior Researcher at the Crimes against Children Research Center at the University of New Hampshire, an expert on child pornography crimes involving the Internet, who will explain that child pornography today can be found on what appear to be legitimate commercial websites hosting adult content; that child pornography can and does involve older adolescents; and that the 2257 requirements are an important tool for distinguishing between adult expression and child pornography.

Defendants will also offer the testimony of Dr. Francis Biro, M.D., who has conducted extensive research on how individuals mature from childhood through puberty into adulthood, and who will explain the difficulty of determining a person's age by visual inspection. Dr. Biro will testify that, even among experts in maturation assessment, there is a rate of uncertainty with respect to the determination of a person's age by visual inspection. The rate of uncertainty for nonexperts is higher, especially given that a myriad of factors—such as race and ethnicity, style of dress, makeup, hairstyle, and shaved or unshaved pubic area—affects a person's apparent age. In addition, the portrayal of an individual in a video or photography may not include sufficient information to evaluate that person's age. Given the difficulties and uncertainties involved in determining a person's age by visual inspection, a system other than the current universal age verification requirements is unworkable. For example, a requirement that producers check

identification documents for individuals who look "under 25" or any other arbitrary "cut-off" age would introduce uncertainty and subjectivity in the application of the 2257 requirements because there would be no way to establish in all cases whether a particular individual was over or under the cut-off age. The universal age verification requirements avoid these problems. Any other system would introduce other regulatory burdens by creating loopholes that could be used to exploit minors, thus serving the government's important interests less effectively.

Plaintiffs also focus on the practice of "sexting"—sexually-themed messages sent electronically—and suggest that they can prove that "sexting is a prevalent practice among young adults" based on "the testimony of two expert witnesses who have studied sexting"—Drs. Michelle Drouin and Marc Zimmerman. Pl. Br. at 6. But neither Drouin nor Zimmerman has conducted or reviewed studies focused on whether individuals "sext" pictures that meet the definition of "depictions of sexually explicit conduct" under §§ 2257 or 2257A. These experts cannot claim that people commonly sext each other depictions of actual or simulated intercourse, bestiality, sadistic or masochistic abuse, or even masturbation. Nor can they show that, to the extent people send other kinds of "sexts," those sexts would qualify as "lascivious exhibition of the genitals or pubic area" within the meaning of 2257. [4] Defendant will demonstrate, through the testimony of Dr. Philip B. Stark, Ph.D., that the opinions of Drouin and Zimmerman are

---

[4] Plaintiffs seek to portray the 2257 requirements as expansive in scope by pointing to court decisions holding that children need not be entirely nude in order for an image to qualify as a lascivious exhibition of the genitals or pubic area, or as simulated sexual conduct. Pl. Br. at 1-4. However, the cited statements demonstrate nothing more than that nudity, by itself, is not determinative when evaluating whether an image depicts "sexually explicit conduct" or not. Thus, by the same token, depictions of nudes are not necessarily "lascivious." *See United States v. Larkin*, 629 F.3d 177, 183-84 (3d Cir. 2010) (recognizing that photographs of nude children do not necessarily qualify as lascivious under the *Dost* factors); *United States v. Bunty*, 617 F. Supp. 2d 359, 368 (E.D. Pa. 2008) ("The Third Circuit has emphasized that images 'must consist of more than merely nudity' in order to constitute a 'lascivious exhibition'"); *see also United States v. Boudreau*, 250 F.3d 279 (5th Cir. 2001) (upholding finding that photograph of boy in underwear in a park setting was not lascivious).

guesses, not scientific estimates derived from sound statistical analysis. These guesses cannot establish "substantial" overbreadth in the face of the vast amount of publicly available sexually explicit images of youthful looking individuals that we know exists. Moreover, plaintiffs' suggestion that the statutes would be enforced in the context of purely private "sexting" between a couple as part of an intimate relationship is pure speculation. At best, plaintiffs identify a potential as-applied challenge.

Viewing the evidence as a whole, the 2257 requirements are not substantially overbroad, and facial invalidation of the statutes is unjustified on either ground that plaintiffs seek to advance.

## III.   PLAINTIFFS CANNOT ESTABLISH A FOURTH AMENDMENT VIOLATION WARRANTING INJUNCTIVE RELIEF

As defendant has previously explained, plaintiffs cannot meet their burden to establish standing to seek injunctive relief for their Fourth Amendment challenge, and the details of past inspections of the 2257 records kept by commercial producers of adult films establish that these inspections were reasonable. This Court has recognized that the Third Circuit remanded only an as-applied Fourth Amendment claim. Mem. Op. at 7 & n.4 (Doc. No. 185). The Third Circuit indicated that, on remand, the "concrete factual context" should be developed regarding the past 2257 records inspections that plaintiffs alleged in their proposed Amended Complaint. *FSC II*, 677 F.3d at 543-44.

Plaintiffs dispute this Court's recognition that the Third Circuit remanded only an as-applied Fourth Amendment claim, citing a different Third Circuit decision, *United States v. Mitchell*, 652 F.3d 387 (3d Cir. 2011) (en banc). However, in *Mitchell*, the Third Circuit also emphasized that "[a] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at 405 (quoting *United States v.*

10

*Salerno*, 481 U.S. 739, 745 (1987)). In this case, the Third Circuit's remand itself indicates that there are circumstances in which records inspections pursuant to § 2257 might be valid, and that the task of this Court on remand is to ascertain whether the "'concrete factual context'" in which actual inspections had occurred could support an as-applied claim or not. *FSC II*, 677 F.3d at 543 (quoting *Sibron v. New York*, 392 U.S. 40, 59 (1968)).

The concrete factual context in this case establishes that the inspections that plaintiffs seek to challenge took place in 2006 and 2007, as part of an inspection program that no longer existed by 2009, when plaintiffs filed their original Complaint.[5] Each prior inspection at issue had its own unique factual circumstances while the prior inspection program also operated under a different statutory and regulatory framework than exists now. Plaintiffs thus cannot establish standing to bring an as-applied Fourth Amendment claim for injunctive relief on this basis.

Even if Article III requirements were satisfied, the evidence shows that there are no grounds for granting injunctive relief based on the facts of past inspections. The producers whose records were inspected were all randomly selected from a list of commercial producers in the adult industry. No inspection of an FSC member involved entry into a residence. At each inspection, the lead inspector would identify the specific 2257 records that the team wanted to inspect. If the producer preferred that the team conduct the records inspection in the front reception area, the team would do so. Otherwise, the team would inspect the records in whatever location the producer requested. While a member of the team usually (though not always) took photos of the file cabinets, shelves, or computer where 2257 records were stored, there is no

---

[5] Because proceedings in the prior appeal relied only on the facts as asserted in plaintiffs' original and proposed amended Complaint, the Third Circuit did not know, at the time it decided to remand an as-applied claim, that in fact the inspections that plaintiffs were challenging had taken place in 2006 and 2007, as part of an inspection program that no longer existed when this case was filed in 2009.

indication in the record that any producer failed to consent to entry for this limited purpose. Because this Court has already recognized that producers have no expectation of privacy in the 2257 records themselves, there is no basis to conclude that the 2257 records inspections involved a "search" that implicates the Fourth Amendment. And even if one or more inspections involved a "search," the factual differences between inspections suggest that that was not always the case. Moreover, even if the Court were to conclude that the Fourth Amendment is implicated, the evidence—consisting of the inspection reports and the testimony of the two FBI agents who acted as lead inspector for all but one of the inspections that occurred—shows that any "search" was reasonable, both because the adult industry is closely regulated when it comes to the ages of its performers, and under a general evaluation of the totality of the circumstances. The inspections were limited in scope, were conducted in a reasonable manner, and served important government interests. Accordingly, the prior inspections comport with the Fourth Amendment.

## IV.  THE GOVERNMENT NEED NOT EMPLOY THE "LEAST RESTRICTIVE MEANS" TO FURTHER ITS COMPELLING INTEREST IN PROTECTING MINORS

The last section of plaintiffs' Trial Brief appears to suggest that other age verification options for producers of sexually explicit depictions would be less restrictive. Under the applicable intermediate scrutiny, it would be inappropriate for this Court to compare the means that Congress chose with other alternatives in an effort to identify the "least restrictive means" of furthering the government's compelling interest. *FSC II*, 677 F.3d at 535 (narrow tailoring does not require that the means chosen by Congress be "the least restrictive or least intrusive means" (internal quotation omitted)). Moreover, there is no parallel between age restrictions for alcohol and tobacco sales, on the one hand, and the creation of depictions of sexually explicit conduct that would involve filming children under age 18 in acts of sexual intercourse, bestiality, sado-

and masochistic abuse, masturbation, and lascivious display of genitals or pubic area, on the other. The government interest in preventing acts of child exploitation from occurring and being forever memorialized on film is of a different order from the interest in preventing a minor from buying alcohol or tobacco. In the 2257 requirements, Congress has chosen to establish a universal prophylactic age verification and recordkeeping requirement for depictions of sexually explicit conduct. Given the serious consequences of child pornography, the vast amount of sexually explicit material depicting young and youthful looking performers, and the fact that the government would achieve its goals less effectively absent such a universal age verification system, the statutes should be upheld.

Dated this 29th day of May, 2013.           Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ *Kathryn L. Wyer*
KATHRYN L. WYER
HÉCTOR G. BLADUELL
JAMES J. SCHWARTZ
NATHAN M. SWINTON
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., N.W.,
Washington, DC  20530
Tel. (202) 616-8475 / Fax (202) 616-8470
Kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Trial Brief has

been filed electronically and is available for viewing and downloading from the ECF system.  I

further certify that the foregoing document was served via ECF on counsel of record for

plaintiffs in the above-captioned case.


Dated: May 29, 2013                              /s/   *Kathryn L. Wyer*