# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC., et al.** | ) | **Civil Action No. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE ERIC H. HOLDER, JR.,** | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' POST-TRIAL REPLY BRIEF

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK &
RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    THE GOVERNMENT CONDUCTED UNCONSTITUTIONAL WARRANTLESS
      SEARCHES UNDER THE AUTHORITY OF THE INSPECTION SCHEME
      WHEN IT OCCUPIED PRIVATE PROPERTY AND TOOK POSSESSION OF
      AND EXAMINED PRIVATE RECORDS FOR THE PURPOSE OF OBTAINING
      INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE SEARCHES WERE NOT CONSENSUAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  THE STATUTES AND REGULATION AUTHORIZING WARRANTLESS
      SEARCHES ARE UNCONSTITUTIONAL ON THEIR FACE . . . . . . . . . . . . . . . . . . . 8

IV.   PLAINTIFFS HAVE STANDING TO CHALLENGE THE INSPECTION
      SCHEME UNDER THE FOURTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    THE INSPECTION REGIME CANNOT BE UPHELD BASED ON THE
      TOTALITY OF THE CIRCUMSTANCES TEST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*A Quantity of Copies of Books v. Kansas,*
    378 U.S. 205 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Big Ridge, Inc. v. Federal Mine Safety and Health*
    *Review Commission,* 715 F.3d 631 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Brock v. Emerson Elec. Co., Electronic & Space Div.,*
    834 F.2d 994 (11th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bumper v. North Carolina,* 391 U.S. 543 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Camara v. Municipal Court,* 387 U.S. 523 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Colonnade Catering Corp. v. United States,*
    397 U.S. 72 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Donovan v. Dewey,* 452 U.S. 594 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Free Speech Coalition, Inc. v. Attorney General,*
    677 F.3d 519 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 14

*G. M. Leasing Corp. v. United States,* 429 U.S. 338 (1977) . . . . . . . . . . . . . . . . . . . . . 1, 14

*Georgia v. Randolph,* 547 U.S. 103 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lewis v. United States,* 385 U.S. 206 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-8

*Marcus v. Search Warrant,* 367 U.S. 717 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Marshall v. Barlow's, Inc.,* 436 U.S. 307 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9

*Maryland v. King,* 133 S.Ct. 1958 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page</u>

*McLaughlin v. Kings Island,* 849 F.2d 990 (6th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*New York v. Burger*, 482 U.S. 691 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*NVE, Inc. v. Dep't of Health & Human Services,*
        436 F.3d 182 (3rd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Patel v. City of Los Angeles*, 686 F.3d 1085 (9th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

*Patel v. City of Los Angeles*, 708 F.3d 1075 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Payton v. New York*, 445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Roaden v. Kentucky*, 413 U.S. 496 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*See v. City of Seattle*, 387 U.S. 541 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stanford v. Texas*, 379 U.S. 476 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Biswell*, 406 U.S. 311 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Consol. Coal Co.*, 560 F.2d 214 (6th Cir.1977),
        *vacated and remanded on other grounds,*
        436 U.S. 942 (1978), *judgment reinstated*, 579 F.2d 1011
        (6th Cir.1978), *cert. denied* 439 U.S. 1069 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Jones*, 132 S.Ct. 945 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*United States v. Mitchell*, 652 F.3d 387 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Molt*, 589 F.2d 1247 (3rd Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TABLE OF AUTHORITIES (cont'd)

Page

CONSTITUTIONAL PROVISION

United States Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 14

United States Const., amend. IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-5, 8, 10-12, 14, 15


STATUTES, RULES AND REGULATIONS

18 U.S.C. § 2257  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-9, 13, 14

18 U.S.C. § 2257 (c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

18 U.S.C. § 2257 (f)(5)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

18 U.S.C. § 2257 (g)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12-14

18 U.S.C. § 2257A (c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28 C.F.R. § 28.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 C.F.R. § 75.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

28 C.F.R. § 75.5 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

28 C.F.R. § 75.5 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

28 C.F.R. § 75.5 (c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 C.F.R. 1903.4 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

73 Fed. Reg. 77446 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

The government spends a good portion of its post-trial brief trying to persuade this Court not to render a decision on the merits of Plaintiffs' Fourth Amendment claims, notwithstanding the Third Circuit's remand for the development of an evidentiary record for that purpose. Defendant's Post-Trial Brief (Doc. No. 217) at 43-55. The remand, however, anticipated a determination on the merits, so Plaintiffs will begin there.[1]

I.  **THE GOVERNMENT CONDUCTED UNCONSTITUTIONAL WARRANTLESS SEARCHES UNDER THE AUTHORITY OF THE INSPECTION SCHEME WHEN IT OCCUPIED PRIVATE PROPERTY AND TOOK POSSESSION OF AND EXAMINED PRIVATE RECORDS FOR THE PURPOSE OF OBTAINING INFORMATION.**

The evidence establishes that under the authority of 18 U.S.C. § 2257 and its implementing regulations, government agents: (1) without a warrant or probable cause; (2) entered and occupied homes and private businesses, in many cases, for several hours; (3) examined and copied private records containing personal information; and (4) took photographs of the areas and files they searched. Agent Lawrence admitted that without the authorization afforded by 18 U.S.C. § 2257, he would have needed a search warrant to accomplish what occurred during the inspections. Under well-established precedent establishing the restraints placed on the government's power to search for evidence by the Fourth Amendment, the regime allowing these inspections is unconstitutional. *See  Payton v. New York*, 445 U.S. 573, 589 (1980); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 315 (1978); *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 358 (1977); *United States v. Jones*, 132 S.Ct. 945, 950 (2012).

The government's authority does not counsel a different conclusion.

Defendant relies on *Patel v. City of Los Angeles*, 686 F.3d 1085 (9th Cir.2012) to justify the

---

[1] Plaintiffs' Post-Trial Reply Brief responds only to Defendant's discussion of the Fourth Amendment claims, in compliance with this Court's directive that Plaintiffs' Reply be limited to the Fourth Amendment claims and Defendant's Reply be limited to the First Amendment claims.

warrantless inspections here.  The government neglects to mention that on February 13, 2013, the Ninth Circuit granted rehearing en banc in *Patel* and ordered that the opinion "not be cited as precedent by or to any court" in that circuit. *Patel v. City of Los Angeles*, 708 F.3d 1075 (9th Cir. 2013).

*Patel* is readily distinguishable, however, even if it survives en banc review. The ordinance at issue there required that a motel's guest registry, which was subject to inspection by police, be "maintained in the guest reception area or guest check-in area or in an office adjacent to that area." 686 F.3d at 1090. This requirement led the Ninth Circuit panel to conclude that "the ordinance does not require intrusion into any private space." *Id.* That is not the case here.

 The evidence establishes that teams of government agents entered homes, private offices, and file rooms. The testimony of Agents Lawrence and Joyner in conjunction with the FBI inspection reports, Plaintiffs' Ex. 1-30, and photos taken during the searches, Plaintiffs' Ex. 32, document their intrusion into these private spaces and business records.  The agents looked in file cabinets–taking photos and searching through the records they contained. They spent hours sitting at dining room tables, in employee break rooms, in individuals' offices, and in conference rooms. In not a single instance, did the agents behave as ordinary members of the general public.  On those few occasions when a search took place in a business's reception area, the agents occupied the reception desk, Plaintiffs' Ex. 32 at pp.  3276-77, and spent hours sorting through business records and copying them there–conduct that would not have been tolerated from a member of the public or a business invitee.

Even in the case of retail stores that are open to the general public, the government cannot behave in a manner that exceeds the conduct of its patrons.  *Lo-Ji Sales, Inc. v. New York,* 442 U.S.

319 (1979), instructs:

> [T]here is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees. *See Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424. 427, 17 L.Ed.2d 312 (1966). The Town Justice viewed the films, not as a customer, but without payment a member of the public would be required to make. Similarly, in examining the books and in the manner of viewing the containers in which the films were packaged for sale, he was not seeing them as a customer would ordinarily see them.

442 U.S. 319, 329 (1979)

*Patel* is useful in illuminating a different point for which the government did not cite it–Plaintiffs' reasonable expectation of privacy in their 2257 records.[2] In *Patel*, the Ninth Circuit rejected "the argument of the City that hotel owners can never have a reasonable expectation of privacy in guest registries simply because the regulation informs them that the police can inspect the registries on request." *Id.* at 1088. The court described the authority underlying that conclusion:

> An individual's otherwise reasonable expectation of privacy cannot be so easily stripped away merely by the adoption of a regulation authorizing searches of an item or location. To hold otherwise would allow the government to conduct warrantless searches just by announcing that it can. *See United States v. Consol. Coal Co.*, 560 F.2d 214, 217 (6th Cir.1977), *vacated and remanded on other grounds*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978), *judgment reinstated*, 579 F.2d 1011 (6th Cir.1978), *cert. denied* 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979) ("Even where a statute requires records to be maintained and authorizes on-premises inspection of them in the normal course, no precedent sanctions direct access to the records without demand in the absence of a search warrant."); *see also McLaughlin v. Kings Island,* 849 F.2d 990, 995 (6th Cir.1988) ("[T]he concept of 'required records' is not synonymous with the absence of a privacy interest."); *Brock v. Emerson Elec. Co., Electronic & Space Div.*, 834 F.2d 994, 996 (11th Cir.1987) (concluding business had a privacy interest in records OSHA required it to keep and make available for inspection).

*Id.* at 1088-89. While the Ninth Circuit in *Patel* noted that business records are ordinarily entitled

---

[2]  See Questions 2.d, 16, Questions for Counsel for Closing Arguments/Briefs (Doc. No. 213).

to protection under the Fourth Amendment, it found that the plaintiffs in that case did not have an objectively reasonable expectation of privacy in the records at issue there.

The evidence here establishes that the subjects of the government's searches held an objectively reasonable expectation of privacy in their 2257 records.[3]  Again, Plaintiffs' Ex. 32 contains photo after photo of records stored in locked rooms, pp. 3383, 3385, 3446-47, 3453; secured in file cabinets, pp. 3261-62, 3304, 3312, 3317-19, 3325-26, 3331, 3370-71, 3395, 3406, 3459–some of them with locks, pp. 3257, 3359-62, 3400, 3430, 3432, 3443-45, 3449, 3465-68 , and some posted with "authorized personnel ONLY" signs, pp. 3378-79; others were stored in binders in private offices, pp. 3273-75, 3331-32, or closed container-bins. pp. 3341-42. These measures all evidence that the records were business records in which their owners had an objectively reasonable expectation of privacy.

Jeffrey Douglas, Marie Levine, and Barbara Nitke testified that, long before the current statutes took effect, producers in the adult industry collected the documents and information composing 2257 records together with model releases from their performers and kept them as business records.  Dian Wilson, Sinclair Institute's office manager, likewise testified that the records constituting its 2257 records were maintained as business records for other purposes as well.  Nitke and Steinberg explained that they created the records required by 18 U.S.C. § 2257 in conjunction with releases from their models for each photo shoot.

The 2257 records contain much of the same personal information found in model releases,

---

[3]  Of course under *Jones*, the fact that the agents entered and occupied private homes and businesses and took physical possession of and copied 2257 records is sufficient to establish that the government effected a warrantless search in violation of the Fourth Amendment, whether producers have a reasonable expectation of privacy in their 2257 records or not.  *Free Speech Coalition, Inc. v. Attorney General*, 677 F.3d 519, 543 (3rd Cir. 2012).

which are critical business records for a producer of expression which constitutes her agreement with her models concerning property rights and terms of use. *See* Defendant's Ex. 29 (ASMP's advice on model releases). The records contain private, personal information.  Driver's licenses contain the photographer's models' addresses, birth dates, weights, information regarding corrective lenses, and whether they wish to be an organ donor.  Their passports contain an exemplar of their signatures and their places of birth. The records are akin to employers' personnel records in which both employees and employers have an expectation of privacy. *See McLaughlin*, 849 F.2d at 995 (finding privacy interest in employer's OSHA forms).

 Wilson testified that when she needed to obtain the 2257 records for materials Sinclair published as a secondary producer, she would be given a password by the primary producer to allow access to its secure database of records. In that same vein, Nitke testified about her feeling of great responsibility in keeping the records secure since they contain private information that if made public, would have devastating consequences to her models' lives. Carlin Ross likewise testified about the privacy concerns surrounding the records required by 18 U.S.C. § 2257.

The evidentiary record meticulously documents the government's intrusion into the homes, offices, and private records of producers of constitutionally protected sexually explicit expression under the auspices of 18 U.S.C. § 2257.  These intrusions were made against the backdrop of established Supreme Court precedent requiring that the Fourth Amendment be applied so as to invoke the utmost solicitude for protected expression. *Marcus v. Search Warrant*, 367 U.S. 717, 724 (1961); *A Quantity of Copies of Books v. Kansas,* 378 U.S. 205, 213 (1964); *Stanford v. Texas*, 379 U.S. 476, 484-85 (1976); *Roaden v. Kentucky*, 413 U.S. 496, 502-06 (1973); *Lee Art Theatre, Inc. v. Virginia*, 392 U.S. 636, 637 (1968).

## II.     THE SEARCHES WERE NOT CONSENSUAL.

The government argues that the searches were consensual. Defendant's Post-Trial Brief (Doc. No. 217) at 56-58. It falls far short of its burden of proof on that claim.

Consent to a search is a "jealously and carefully drawn" exception to the warrant requirement. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). The government bears the burden of proving that consent was "freely and voluntarily" given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *United States v. Molt*, 589 F.2d 1247, 1251 (3rd Cir. 1978) ("When evidence exists to show the opposite[,] that a defendant believed he must consent[,] such evidence weighs heavily against a finding that consent was voluntarily given."). In determining that the failure of the police to advise someone that he does not have the right to refuse to allow the search is not, alone, sufficient to establish that it was not voluntary, the Court in *Schneckloth,* nonetheless, stressed that "the subject's knowledge of a right to refuse is a factor to be taken into account" in determining the voluntariness of his or her consent. *Schneckloth*, 412 U.S. at 249.

Here, the statute itself removed the option of withholding consent to the searches. On July 27, 2006, 18 U.S.C. § 2257 was amended to make it a crime "to refuse to permit the Attorney General or his designee to conduct an inspection." 18 U.S.C. § 2257 (f)(5).  All but one of the inspections occurred after this amendment.

Consistent with the protocol established in 28 C.F.R. § 75.5, in each inspection, the FBI agents presented their credentials to the subject of the inspection and advised him or her that they were there to conduct a records inspection under the statute. *Id.* at § 75.5 (c)(2); Plaintiffs' Ex. 1-30. The agents did not simply show up and ask a producer if he would be willing to allow them to come

in and examine their records; rather they asserted their authority as government agents under 18 U.S.C. § 2257 and told the producers that's what they were there to do.

Several months after the inspection program had begun, the FBI crafted a letter consistent with the statutory amendment to be provided to the subject of the inspection that cautioned: "it is a criminal violation of federal law to delay or obstruct the FBI from conducting the inspection." Plaintiffs' Ex. 31.  At the beginning of the last 15 of 29  inspections, the lead agent handed the producer a copy of this letter advising him of this fact.

The government does not deny that the subject of the inspections were given  the letter or that the letter, in fact, advised them that they had no right to refuse to permit the inspection. Rather, it parries that there is no evidence that any of the producers read the letter "***before*** agreeing to allow the inspection to proceed." Defendant's Post-Trial Brief (Doc. No. 217) at 57.  The problem with the government's claim is that not a single producer had any choice but to agree to allow the inspection.

The lead agents conducting the inspections admitted that they did not encounter anyone who was unaware that it was a crime to refuse to let them conduct the inspections, nor anyone who believed they could demand that the agents first secure a warrant.  For good reason.  Agent Joyner testified that he appeared on a panel at an adult industry trade show to advise the industry about the inspections and to let producers know that 18 U.S.C. § 2257 entitled the FBI to appear at their doors and to enter the premises for the purpose of performing inspections. He further testified that had anyone asked whether they had the right to decline the inspection, he would have told them that he was entitled by law to carry out the inspection.

*Lo-Ji Sales* is again instructive:

> Any suggestion that petitioner through its clerk consented to the sweeping search also comes too late.  After Lo-Ji's agent was placed under arrest and was aware of the presumed authority of the search warrant, his conduct complying with official requests cannot, on this record, be considered free and voluntary.   Any "consent" given in the face of the "colorably lawful coercion" cannot validate the illegal acts shown here. *Bumper v. North Carolina*, 391 U.S. 543, 549-550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968).

442 U.S. at 329.

## III.   THE STATUTES AND REGULATION AUTHORIZING WARRANTLESS SEARCHES ARE UNCONSTITUTIONAL ON THEIR FACE.[4]

18 U.S.C. § 2257 (c) provides:

> Any person to whom subsection (a) applies shall maintain the records required by this section at his business premises, or at such other place as the Attorney General may by regulation prescribe and shall make such records available to the Attorney General for inspection at all reasonable times.

Subsection (f)(5) of the statute makes it unlawful "to refuse to permit the Attorney General or his designee to conduct an inspection."  There is no ambiguity.  On its face, the statute authorizes warrantless searches in violation of the Fourth Amendment, and the record establishes that each of the 29 inspections under 18 U.S.C. § 2257 were conducted as such. Thus, in every case, it will violate the Fourth Amendment. The statute is, therefore, facially unconstitutional under the Fourth Amendment. *Marshall v. Barlow's*, Inc., 436 U.S. 307, 325 (1978) (declaring inspection scheme "unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent and ... enjoining the Act's enforcement to that extent").[5]

Even if the statutes could be interpreted as not ruling out the use of search warrants, the regulation that implements them cannot. The regulation controlling inspections under 18 U.S.C. §§

---

[4]   See Question 18, Questions for Counsel for Closing Arguments/Briefs (Doc. No. 213).

[5]   See Question 23, Questions for Counsel for Closing Arguments/Briefs (Doc. No. 213).

8

2257, 2257A authorizes government agents "to enter without delay...any establishment of a producer where [the producer's] records ....are maintained to inspect" them. 28 C.F.R. § 75.5(a). It provides that "[a]dvance notice of record inspections shall not be given." *Id.* at § 75.5(b).  The regulation, therefore, precludes the issuance of a warrant–administrative or otherwise.

The government argues that the statute and regulatory scheme can some how be salvaged by interpreting it to allow the use of administrative subpoenas or administrative warrants. Defendant's Post-Trial Brief (Doc. No. 217) at 44.  The Court in *Marshall*, however, rejected that notion, when it struck down the statute in the face of a regulation that expressly provided "that upon refusal to permit an inspector to enter the property or to complete his inspection," the agency could proceed to use compulsory process to gain access. *Id.* at 317. *See* 29 C.F.R. 1903.4 (b). That alternative did not suffice to rescue the statute permitting warrrantless inspections.

Here, of course the statutes afford no one the option of "refusal to permit an inspector to enter the propery," *Marshall*, 436 U.S. at 317; refusal to permit the inspection is a crime. Nor do they provide for the use of compulsory process as an alternative to appearing at a producer's door step and entering the premises "without delay." In fact, in promulgating the regulations, the DOJ expressly rejected the use of warrants as part of the inspection regime. 73 Fed. Reg. 77446.

Faced with the absence of any provision in the statute or regulation allowing for the use of administrative warrants or subpoenas, the government argues that even if the statute does not expressly provide for compulsory process, the inspections here can, nonetheless, be likened to those under administrative warrants, relying on *Big Ridge, Inc. v. Federal Mine Safety and Health Review Commission,* 715 F.3d 631 (7th Cir. 2013). Defendant's Post-Trial Brief (Doc. No. 217) at 45.  *Big Ridge* cannot accomplish the task that the government demands of it, however.

9

*Big Ridge* involved inspections of records of mine operators.  That statement alone should indicate the limited weight of that authority in evaluating warrantless inspections of photographers, film makers, sex educators, and others who produce sexually explicit expression protected by the First Amendment. The Seventh Circuit described the precedent guiding its analysis:

> A government agency typically must secure a warrant before conducting a search of commercial premises or a business. *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). A warrant is not always necessary, though, to search a business operating in a pervasively regulated industry because businesses in those industries have lower expectations of privacy. *New York v. Burger*, 482 U.S. 691, 702, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) (in closely regulated industries, "where the privacy interests of the owner are weakened and the government interests in regulating particular business are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment"); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).
>
> In *Donovan v. Dewey*, the Supreme Court held that mining falls into this category– it is so pervasively regulated that it should be excepted from the warrant requirement for the purposes of regulating mine safety. The Court observed that the 1977 Mine Safety Act regulated "industrial activity with a notorious history of serious accidents and unhealthful working conditions," and that the Act's regulation of mines "is sufficiently pervasive and defined that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection.'" 452 U.S. [594] at 602-05, 101 S.Ct. 2534 [(1981)], citing *Biswell*, 406 U.S. at 316, 92 S.Ct. 1593. The Court upheld the Mine Safety Act's scheme of warrantless inspections of surface and underground mines.

*Id.* at 644.

*Big Ridge's* analysis, therefore, of the government's written demand to produce records, including those of the mines' employees, was animated by the administrative search exception, confined to closely regulated industries where privacy interests are weakened.  That exception is not applicable here.

Judge Rendell in her concurring opinion in this case on appeal observed that the statutes "do not target a 'pervasively regulated" industry"–finding "that the statutes and their associated regulations are not specifically directed at any industry at all." 677 F.3d at 548.  Thus, she concluded

10

that they did not clear the threshold for the administrative search exception.

Judge Rendell went on to observe that the warrantless searches here were "not necessary to further the statutes' purpose."  She explained that "this is not a case where the government must conduct random, unannounced inspections of a business premises to ensure health and safety (as, for example, in the case of mine inspections, see *Donovan v. Dewey*, 452 U.S. 594, 603, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (noting the "notorious history of serious accidents and unhealthful working conditions" in the mining industry))"*id.* at 549–the precise circumstance presented in *Big Ridge.*

The majority did not disagree with Judge Rendell's observations, but instead determined it was appropriate to remand the issue for development of the record. *Id.* at 544. The government, in claiming that the administrative search exception applies, has ignored Judge Rendell's opinion altogether. Now that the record has been developed, it shows that the government has failed to meet its burden of establishing that the administrative search exception applies.

## IV.    PLAINTIFFS HAVE STANDING TO CHALLENGE THE INSPECTION SCHEME UNDER THE FOURTH AMENDMENT.

The gist of Defendant's argument on standing is: the FBI stopped conducting inspections when a Sixth Circuit decision found the statute to be unconstitutional in 2007;  the program was not resumed after that decision was vacated and reversed; the inspection program is not currently being funded by Congress; and there are no concrete plans by the FBI to begin it again.  On these facts, the government argues, that when the inspection program resumes, it may take another shape.  Thus, it laments, there is no basis to think that future inspections will any way resemble the prior 29 and therefore, any decision regarding the regulatory inspection scheme is simply advisory.

There are some significant pieces of the picture missing from the government's analysis, however. In its entire discussion of the inspections that have taken place and inspections yet to be,

11

the government does not once mention 28 C.F.R. § 75.5. Yet that is the regulation under which the inspection program was created, pursuant to which the 29 inspections were carried out, and with which any future inspections must conform.[6]

The version of this regulation that was in effect during the course of the prior inspections is identical to the current regulation in all substantive effect. (Plaintiffs have attached both the prior and current versions of 28 C.F.R. § 75.5 in the appendix to this Reply).

Therefore, there is no uncertainty about the parameters of future inspections compared to the previous 29. They must be carried out in consonance with 28 C.F.R. § 75.5, which sets forth the protocol for those inspections. Importantly, we know that government agents are authorized to enter producers' premises without delay, without a warrant or probable cause, and without advance notice. *Id.* at §§ 75.5 (b), 75.5 (a). It does not provide for an administrative warrant, nor an administrative subpoena.

We also know that Plaintiffs are obligated to comply with the regulations and must have their

---

[6] The government's argument that Plaintiffs' facial challenge is limited only to the **statutory** text is wrong. The statute and regulations are part and parcel, since the statutes are not self-executing but rather are implemented by the regulations. *See* 18 U.S.C. § 2257A ("The provisions of this section shall not become effective until 90 days after the final regulations implementing this section are published in the Federal Register."); 18 U.S.C. § 2257 (g) ("The Attorney General shall issue appropriate regulations to carry out this section.")

Plaintiffs were not required to challenge the regulations separately under the APA, as the government argues. *NVE, Inc. v. Dep't of Health & Human Services*, 436 F.3d 182, 185 (3rd Cir. 2006), the case cited as authority for this proposition involved a challenge to the rulemaking process brought pursuant to the APA. Nothing in that case supports the premise Plaintiffs' constitutional challenge to the regulations had to be brought under the APA. *See e.g., United States v. Mitchell*, 652 F.3d 387, 390, 415-16 (3rd Cir. 2011) (en banc) (reviewing the constitutionality of 42 U.S.C. § 14135a(a)(1)(A) and its implementing regulation, 28 C.F.R. § 28.12 under the Fourth Amendment).

Indeed, the court of appeals recognized that the regulations  inform the constitutional analysis here; the Third Circuit in remanding this case sought development of an evidentiary record on the issue of  "what specific information the government reviewed and whether the government exceeded its authority under the applicable regulation." *Free Speech Coalition*, 677 F.3d at 544.

records "in proper order at all times," 73 Fed. Reg. 77446, and ready for inspection when and if

inspections resume–which is under the DOJ's control and not Plaintiffs'– or face the prospect of

criminal prosecution.  Dian Wilson, Sinclair's employee responsible for maintaining its 2257

records, explained how the company has "fire drills,"in which she is asked to retrieve records that

they would expect an FBI agent to request in order to test her efforts in maintaining the records and

to assure that they comply.

In rejecting the government's attack on standing only last December, this Court made a

number of observations about the threat posed by the statutes to the Plaintiffs.  This Court wrote:

> Plaintiffs face a substantial possibility of injury – that is, being subjected to allegedly
> unconstitutional searches about which they complain – as a result of the plain
> operation of the statute. Sections 2257 and 2257A impose a record-keeping
> requirement on "producers" of sexually explicit materials and require that they
> "make such records available to the Attorney General for inspection at all reasonable
> times." 18 U.S.C. §§ 2257 (c) & 2257A (c). The implementing regulations authorize
> investigators to conduct warrantless searches of record-holders "during regular
> working hours and at other reasonable times," and provide that "[a]dvance notice .
> . . shall not be given." 28 C.F.R. § 75.5(a) & (b). As long as the statutes are in force,
> Plaintiffs, all of whom are "producers," stand in danger of being subjected to
> intrusive and allegedly unconstitutional searches at virtually any hour of the
> work-day.

Memorandum Re: Motion to Dismiss in Part (Doc. No. 117) at 5.  It stressed that the statutes placed

the plaintiffs "in harms way day-in and day-out, all year long," *id.* at 7, and "obligate[d] them to be

near their records–or to have a custodian near them–for substantial periods of time." *Id.* at 9.  Those

observations have been fully substantiated by the evidence adduced at trial.

The government has not suggested that the regulation controlling inspections is about to be

changed, or that Plaintiffs no longer need to maintain the records or be available for inspection.

Thus, the record that has been compiled regarding the questions that the Third Circuit specifically

wanted to be answered regarding past inspections under 18 U.S.C. § 2257 allows resolution of

Plaintiffs' Fourth Amendment challenge.  It answers who was searched, when and where the

searches occurred, and what was the conduct of the government during those searches. *Free Speech Coalition*, 677 F.3d at 543-44.

## V.   THE INSPECTION REGIME CANNOT BE UPHELD BASED ON THE TOTALITY OF THE CIRCUMSTANCES TEST.

As a final measure, the government attempts to justify warrantless searches under the statutes on the ground that they are reasonable under the "totality of the circumstances." The problem with that tack is that it relies on precedent involving "special law enforcement needs, diminished expectations of privacy, or minimal intrusions" in the context of police booking procedures or conditions of release from government custody.  *Maryland v. King*, 133 S.Ct. 1958, 1969 (2013).

The Supreme Court has never suggested that an entry into private homes or businesses to examine a person's records can be done without a warrant unless there is a well-recognized exception to that basic Fourth Amendment requirement.  *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352-53 (1977 ("(O)ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant. *Camara v. Municipal Court*, 387 U.S. 523, 528-529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967)").

## CONCLUSION

Plaintiffs respectfully request that this Court, on the evidentiary record before it, declare 18 U.S.C. §§ 2257, 2257A and their implementing regulations unconstitutional under the First and Fourth Amendments, on their face and as applied, and enjoin their operation and enforcement.

Respectfully submitted,


Dated: July 5, 2013                     /s/ J. Michael Murray_____
                                        J. MICHAEL MURRAY (0019626)
                                        jmmurray@bgmdlaw.com
                                        LORRAINE R. BAUMGARDNER (0019642)
                                        lbaumgardner@bgmdlaw.com
                                        BERKMAN, GORDON, MURRAY & DeVAN
                                        55 Public Square, Suite 2200
                                        Cleveland, Ohio  44113-1949
                                        (216) 781-5245
                                        (216) 781-8207 (Facsimile)

                                        KEVIN E. RAPHAEL (72673)
                                        KER@Pietragallo.com
                                        J. PETER SHINDEL, JR. (201554)
                                        JPS@Pietragallo.com
                                        PIETRAGALLO GORDON ALFANO BOSICK
                                          & RASPANTI, LLP
                                        1818 Market Street, Suite 3402
                                        Philadelphia, Pennsylvania 19103
                                        (215) 320-6200
                                        (215) 981-0082 (Facsimile)

                                        Attorneys for Plaintiffs

15

# ELECTRONIC CODE OF FEDERAL REGULATIONS

## e-CFR Data is current as of July 2, 2013

Title 28: Judicial Administration
PART 75—CHILD PROTECTION RESTORATION AND PENALTIES ENHANCEMENT ACT OF 1990;
PROTECT ACT; ADAM WALSH CHILD PROTECTION AND SAFETY ACT OF 2006;
RECORDKEEPING AND RECORD-INSPECTION PROVISIONS

---

**§ 75.5  Inspection of records.**

(a) *Authority to inspect.* Investigators authorized by the Attorney General (hereinafter "investigators") are authorized to enter without delay and at reasonable times any establishment of a producer where records under § 75.2 are maintained to inspect during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, for the purpose of determining compliance with the record-keeping requirements of the Act and any other provision of the Act (hereinafter "investigator").

(b) *Advance notice of inspections.* Advance notice of record inspections shall not be given.

(c) *Conduct of inspections.* (1) Inspections shall take place during normal business hours and at such places as specified in § 75.4. For the purpose of this part, "normal business hours" are from 9 a.m. to 5 p.m., local time, Monday through Friday, or, for inspections to be held at the place of business of a producer, any other time during which the producer is actually conducting business relating to producing a depiction of actual sexually explicit conduct. To the extent that the producer does not maintain at least 20 normal business hours per week, the producer must provide notice to the inspecting agency of the hours during which records will be available for inspection, which in no case may be less than 20 hours per week.

(2) Upon commencing an inspection, the investigator shall:

(i) Present his or her credentials to the owner, operator, or agent in charge of the establishment;

(ii) Explain the nature and purpose of the inspection, including the limited nature of the records inspection, and the records required to be kept by the Act and this part; and

(iii) Indicate the scope of the specific inspection and the records that he or she wishes to inspect.

(3) The inspections shall be conducted so as not to unreasonably disrupt the operations of the establishment.

(4) At the conclusion of an inspection, the investigator may informally advise the producer or his non-employee custodian of records of any apparent violations disclosed by the inspection. The producer or non-employee custodian or records may bring to the attention of the investigator any pertinent information regarding the records inspected or any other relevant matter.

(d) *Frequency of inspections.* Records may be inspected once during any four-month period, unless there is a reasonable suspicion to believe that a violation of this part has occurred, in which case an additional inspection or inspections may be conducted before the four-month period has expired.

(e) *Copies of records.* An investigator may copy, at no expense to the producer or to his non-employee custodian of records, during the inspection, any record that is subject to inspection.

(f) *Other law enforcement authority.* These regulations do not restrict the otherwise lawful investigative prerogatives of an investigator while conducting an inspection.

(g) *Seizure of evidence.* Notwithstanding any provision of this part or any other regulation, a law enforcement officer may seize any evidence of the commission of any felony while conducting an inspection.

[Order No. 2765-2005, 70 FR 29619, May 24, 2005, as amended at 73 FR 77470, Dec. 18, 2008]

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.
For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

such visual depiction, create and maintain records containing the following:

(1) The legal name and date of birth of each performer, obtained by the producer's examination of a picture identification card. For any performer portrayed in such a depiction made after July 3, 1995, the records shall also include a legible copy of the identification document examined and, if that document does not contain a recent and recognizable picture of the performer, a legible copy of a picture identification card. For any performer portrayed in such a depiction after June 23, 2005, the records shall include

(i) A copy of the depiction, and

(ii) Where the depiction is published on an Internet computer site or service, a copy of any URL associated with the depiction or, if no URL is associated with the depiction, another uniquely identifying reference associated with the location of the depiction on the Internet.

(2) Any name, other than each performer's legal name, ever used by the performer, including the performer's maiden name, alias, nickname, stage name, or professional name. For any performer portrayed in such a depiction made after July 3, 1995, such names shall be indexed by the title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, picture, URL, or other matter. Producers may rely in good faith on representations by performers regarding accuracy of the names, other than legal names, used by performers.

(3) Records required to be created and maintained under this part shall be organized alphabetically, or numerically where appropriate, by the legal name of the performer (by last or family name, then first or given name), and shall be indexed or cross-referenced to each alias or other name used and to each title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, picture, URL, or other matter.

(b) A producer who is a secondary producer as defined in § 75.1(c) may satisfy the requirements of this part to create and maintain records by accepting from the primary producer, as defined in § 75.1(c), copies of the records described in paragraph (a) of this section. Such a secondary producer shall also keep records of the name and address of the primary producer from whom he received copies of the records.

(c) The information contained in the records required to be created and maintained by this part need be current only as of the time the primary producer actually films, videotapes, or

photographs, or creates a digitally or computer-manipulated image, digital image, or picture, of the visual depiction of an actual human being engaged in actual sexually explicit conduct. If the producer subsequently produces an additional book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services) that contains one or more visual depictions of an actual human being engaged in actual sexually explicit conduct made by a performer for whom he maintains records as required by this part, the producer may add the additional title or identifying number and the names of the performer to the existing records maintained pursuant to § 75.2(a)(2).

(d) For any record created or amended after June 23, 2005, all such records shall be organized alphabetically, or numerically where appropriate, by the legal name of the performer (by last or family name, then first or given name), and shall be indexed or cross-referenced to each alias or other name used and to each title or identifying number of the book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services). If the producer subsequently produces an additional book, magazine, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services) that contains one or more visual depictions of an actual human being engaged in actual sexually explicit conduct made by a performer for whom he maintains records as required by this part, the producer shall add the additional title or identifying number and the names of the performer to the existing records and such records shall thereafter be maintained in accordance with this paragraph.

(e) Records required to be maintained under this part shall be segregated from all other records, shall not contain any other records, and shall not be contained within any other records.

(f) Records required to be maintained under this part may be kept either in hard copy or in digital form, provided that they include scanned copies of forms of identification and that there is a custodian of the records who can authenticate each digital record.

### § 75.3 Categorization of records.

Records required to be maintained under this part shall be categorized alphabetically, or numerically where

appropriate, and retrievable to: All name(s) of each performer, including any alias, maiden name, nickname, stage name or professional name of the performer; and according to the title, number, or other similar identifier of each book, magazine, periodical, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services). Only one copy of each picture of a performer's picture identification card and identification document must be kept as long as each copy is categorized and retrievable according to any name, real or assumed, used by such performer, and according to any title or other identifier of the matter.

### § 75.4 Location of records.

Any producer required by this part to maintain records shall make such records available at the producer's place of business. Each record shall be maintained for seven years from the date of creation or last amendment or addition. If the producer ceases to carry on the business, the records shall be maintained for five years thereafter. If the producer produces the book, magazine, periodical, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services) as part of his control of or through his employment with an organization, records shall be made available at the organization's place of business. If the organization is dissolved, the individual who was responsible for maintaining the records on behalf of the organization, as described in § 75.6(b), shall continue to maintain the records for a period of five years after dissolution.

### § 75.5 Inspection of records.

(a) *Authority to inspect.* Investigators authorized by the Attorney General (hereinafter "investigators") are authorized to enter without delay and at reasonable times any establishment of a producer where records under § 75.2 are maintained to inspect during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, for the purpose of determining compliance with the record-keeping requirements of the Act and any other provision of the Act (hereinafter "investigator").

(b) *Advance notice of inspections.* Advance notice of record inspections shall not be given.

(c) *Conduct of inspections.*

(1) Inspections shall take place during the producer's normal business hours

and at such places as specified in §75.4. For the purpose of this part, "normal business hours" are from 9 a.m. to 5 p.m., local time, Monday through Friday, or any other time during which the producer is actually conducting business relating to producing depiction of actual sexually explicit conduct. To the extent that the producer does not maintain at least 20 normal business hours per week, producers must provide notice to the inspecting agency of the hours during which records will be available for inspection, which in no case may be less than twenty (20) hours per week.

(2) Upon commencing an inspection, the investigator shall:

(i) Present his or her credentials to the owner, operator, or agent in charge of the establishment;

(ii) Explain the nature and purpose of the inspection, including the limited nature of the records inspection, and the records required to be kept by the Act and this part; and

(iii) Indicate the scope of the specific inspection and the records that he or she wishes to inspect.

(3) The inspections shall be conducted so as not to unreasonably disrupt the operations of the producer's establishment.

(4) At the conclusion of an inspection, the investigator may informally advise the producer of any apparent violations disclosed by the inspection. The producer may bring to the attention of the investigator any pertinent information regarding the records inspected or any other relevant matter.

(d) *Frequency of inspections.* A producer may be inspected once during any four-month period, unless there is a reasonable suspicion to believe that a violation of this part has occurred, in which case an additional inspection or inspections may be conducted before the four-month period has expired.

(e) *Copies of records.* An investigator may copy, at no expense to the producer, during the inspection, any record that is subject to inspection.

(f) *Other law enforcement authority.* These regulations do not restrict the otherwise lawful investigative prerogatives of an investigator while conducting an inspection.

(g) *Seizure of evidence.* Notwithstanding any provision of this part or any other regulation, a law enforcement officer may seize any evidence of the commission of any felony while conducting an inspection.

### §75.6   Statement describing location of books and records.

(a) Any producer of any book, magazine, periodical, film, videotape, digitally- or computer-manipulated image, digital image, or picture, or other matter (including but not limited to Internet computer site or services) that contains one or more visual depictions of an actual human being engaged in actual sexually explicit conduct made after July 3, 1995, and produced, manufactured, published, duplicated, reproduced, or reissued on or after July 3, 1995, shall cause to be affixed to every copy of the matter a statement describing the location of the records required by this part. A producer may cause such statement to be affixed, for example, by instructing the manufacturer of the book, magazine, periodical, film, videotape, digitally- or computer-manipulated image, digital image, picture, or other matter to affix the statement.

(b) Every statement shall contain:

(1) The title of the book, magazine, periodical, film, or videotape, digitally- or computer-manipulated image, digital image, picture, or other matter (unless the title is prominently set out elsewhere in the book, magazine, periodical, film, or videotape, digitally- or computer-manipulated image, digital image, picture, or other matter) or, if there is no title, an identifying number or similar identifier that differentiates this matter from other matters which the producer has produced;

(2) The date of production, manufacture, publication, duplication, reproduction, or reissuance of the matter; and, (3) A street address at which the records required by this part may be made available. The street address may be an address specified by the primary producer or, if the secondary producer satisfies the requirements of §75.2(b), the address of the secondary producer. A post office box address does not satisfy this requirement.

(c) If the producer is an organization, the statement shall also contain the name, title, and business address of the individual employed by such organization who is responsible for maintaining the records required by this part.

(d) The information contained in the statement must be accurate as of the date on which the book, magazine, periodical, film, videotape, digitally or computer-manipulated image, digital image, picture, or other matter is produced or reproduced.

(e) For the purposes of this section, the required statement shall be displayed in typeface that is no less than 12-point type or no smaller than the second-largest typeface on the material and in a color that clearly contrasts with the background color of the material. For any electronic or other display of the notice that is limited in time, the notice must be displayed for a sufficient duration and of a sufficient size to be capable of being read by the average viewer.

### §75.7   Exemption statement.

(a) Any producer of any book, magazine, periodical, film, videotape, digitally- or computer-manipulated image, digital image, picture, or other matter may cause to be affixed to every copy of the matter a statement attesting that the matter is not covered by the record-keeping requirements of 18 U.S.C. 2257(a)–(c) and of this part if:

(1) The matter contains only visual depictions of actual sexually explicit conduct made before July 3, 1995, or is produced, manufactured, published, duplicated, reproduced, or reissued before July 3, 1995;

(2) The matter contains only visual depictions of simulated sexually explicit conduct; or,

(3) The matter contains only some combination of the visual depictions described in paragraphs (a)(1) and (a)(2) of this section.

(b) If the primary producer and the secondary producer are different entities, the primary producer may certify to the secondary producer that the visual depictions in the matter satisfy the standards under paragraphs (a)(1) through (a)(3) of this section. The secondary producer may then cause to be affixed to every copy of the matter a statement attesting that the matter is not covered by the record-keeping requirements of 18 U.S.C. 2257(a)–(c) and of this part.

### §75.8   Location of the statement.

(a) All books, magazines, and periodicals shall contain the statement required in §75.6 or suggested in §75.7 either on the first page that appears after the front cover or on the page on which copyright information appears.

(b) In any film or videotape which contains end credits for the production, direction, distribution, or other activity in connection with the film or videotape, the statement referred to in §75.6 or §75.7 shall be presented at the end of the end titles or final credits and shall be displayed for a sufficient duration to be capable of being read by the average viewer.

(c) Any other film or videotape shall contain the required statement within one minute from the start of the film or videotape, and before the opening scene, and shall display the statement for a sufficient duration to be read by the average viewer.

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2013, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs