# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC. et al., | ) | Civil Action No. 2:09-4607 |
| | ) | |
| Plaintiffs, | ) | Judge Michael M. Baylson |
| | ) | |
| v. | ) | |
| | ) | |
| THE HONORABLE ERIC H. HOLDER, JR., | ) | |
| Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S POST-TRIAL REPLY

## <u>TABLE OF CONTENTS</u>

<u>INTRODUCTION</u> ........................................................................................................ 1

<u>ARGUMENT</u> ............................................................................................................. 1

      I.     2257 IS NARROWLY TAILORED AS APPLIED TO PLAINTIFFS ...... 1

          A.   NO FACIAL NARROW TAILORING ISSUE IS
               BEFORE THE COURT .................................................................... 1

          B.   2257 IS NARROWLY TAILORED AS APPLIED
               TO PLAINTIFFS ........................................................................... 3

      III.    PLAINTIFFS FAIL TO ESTABLISH SUBSTANTIAL
            OVERBREADTH ......................................................................................... 9

          A.   PLAINTIFFS FAIL TO SHOW THE UNIVERSAL APPLICATION
               OF 2257 REGARDLESS OF AGE IS SUBSTANTIALLY
               OVERBROAD, PARTICULARLY GIVEN THE VAST AMOUNT
               OF SEXUALLY EXPLICIT IMAGES OF YOUTHFUL LOOKING
               INDIVIDUALS ................................................................................ 9

          B.   PLAINTIFFS FAIL TO SHOW 2257 IS SUBSTANTIALLY
               OVERBROAD ON THE BASIS OF ITS POTENTIAL
               APPLICATION TO PURELY PRIVATE DEPICTIONS ............... 11

<u>CONCLUSION</u> ....................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Library Ass'n v. Barr*,
  956 F.2d 1178 (D.C. Cir. 1992)...................................................................................... 9

*Am. Library Ass'n v. Reno*,
  33 F.3d 78 (D.C. Cir. 1993)...................................................................................... 2, 5

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ..................................................................................................... 8

*Connection Distrib. Co. v. Holder*,
  557 F.3d 321 (6th Cir. 2009) ................................................................................... 5, 9

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998), ................................................................................. 4, 5

*Free Speech Coal. v. Gonzales*,
  406 F. Supp. 2d 1196 (D. Colo. 2005) ....................................................................... 8

*Free Speech Coal., Inc. v. Holder,*,
  677 F.3d 519 (3d Cir. 2012) ....................................................................... 2, 3, 8, 13

*Near v. Minnesota*,
  283 U.S. 697 (1931) ..................................................................................................... 9

*United States v. Marzzarella*,
  614 F.3d 85 (3d Cir. 2010) ......................................................................................... 3

## **INTRODUCTION**

Plaintiffs' post-trial brief makes clear that the heart of their concern with §§ 2257 and 2257A ("2257") is not that checking photo IDs of individuals who appear in their work prevents them from creating sexually explicit depictions of adults. Instead, plaintiffs simply regard the statutes as flawed as a matter of principle, by (in their view) forcing them to prove that their work is not child pornography. That view reflects a fundamental misunderstanding of this prophylactic regulatory law. The images at issue, produced by plaintiffs and unknown others, are made by filming real people engaging in sexual activity. These images are not prohibited as long as the individuals being filmed are adults. However, such filming raises a legitimate safety concern with respect to the ages of individuals being filmed because, if any of these individuals were under 18, filming them engaged in sexual activity would be creating child pornography.

Given this concern, it is reasonable to require ID checks and records, and a means of finding the records for a depiction no matter where the depiction ends up. After all, child pornography causes harm both at the point that it is made (highlighting the importance of prophylactic measures rather than relying solely on after-the-fact criminal laws) and by remaining as a permanent record of that act. And once an image is created, it can be disseminated through different channels, copied, and re-sent many times, making its origin difficult to trace. Plaintiffs identify no reason for exempting them from these prophylactic measures, none of which prohibit their expression. Rather, all plaintiffs in this case fall squarely within the legitimate scope of 2257 because they use youthful looking individuals in their work, and have no intention to stop doing so in the future. Nor can plaintiffs' flawed evidence establish that, relative to the vast universe of commercial, publicly available pornography, any invalid applications are substantial. Accordingly, judgment should be entered for defendant.

# ARGUMENT

## I.   2257 IS NARROWLY TAILORED AS APPLIED TO PLAINTIFFS

### A.   NO FACIAL NARROW TAILORING ISSUE IS BEFORE THE COURT

As an initial matter, the Court should note that the Third Circuit did not remand a facial narrow tailoring issue. In regard to the First Amendment, the Third Circuit remanded only "Plaintiffs' as-applied First Amendment claim," limited to the narrow tailoring prong of intermediate scrutiny as applied to plaintiffs, as well as a facial challenge under the overbreadth doctrine. *See Free Speech Coal., Inc. v. Holder* ("*FSC II*"), 677 F.3d 519, 537 (3d Cir. 2012). This limited remand was in keeping with the Third Circuit's holding that the government had already "adequately demonstrated that the Statutes advance the substantial interest of protecting children." *Id.* at 536. It is also consistent with the narrow tailoring inquiry that the Third Circuit identified – whether any of the *plaintiffs* "employs performers that no reasonable person could conclude were minors," in the nature of "'an illustrated sex manual for the elderly.'" *Id.* at 537 (quoting *Am. Library Ass'n v. Reno* ("*ALA*"), 33 F.3d 78, 90 (D.C. Cir. 1995)).

In their post-trial brief, plaintiffs ignore the Third Circuit's direction and impermissibly attempt to raise a facial narrow tailoring challenge, arguing that "the statutes burden a substantial amount of expression that depicts individuals who are obviously adults and could not be confused as minors." *See* Pl. Post-Trial Br. ("Pl. Br."), at 27. But this is simply plaintiffs' overbreadth challenge in another guise. *See FSC II*, 677 F.3d at 538 (plaintiffs' overbreadth claim asserts that "a 'vast quantity' of protected sexually explicit depictions include performers who are 'clearly mature adults' that 'could not be mistaken for children'"). By repackaging their overbreadth challenge as a question of "narrow tailoring," plaintiffs make an obvious, but improper, attempt to shift the heavy burden that they face in the overbreadth context to defendant. *See* Pl. Br. at 26-27 (incorrectly suggesting that defendant bears the burden on this issue). The Court should reject this effort, as the Third Circuit was clear that "the [only] issue before [the Court, in connection with narrow tailoring] is whether the Statutes burden substantially more of *Plaintiffs'* speech than is necessary to further the government's legitimate

interest of protecting children." *FSC II*, 677 F.3d at 536 (emphasis added).

## B.    2257 IS NARROWLY TAILORED AS APPLIED TO PLAINTIFFS

In regard to the question that is before the Court, defendant has established that 2257 is narrowly tailored as applied to plaintiffs because there is a reasonable fit between the uniform rule established by 2257 and the Government's important interests. *See United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (recognizing that, in intermediate scrutiny, narrow tailoring requires a fit that is "reasonable, not perfect"). Moreover, no plaintiff produces the equivalent of an "illustrated sex manual for the elderly," the only scenario that the Third Circuit has suggested might justify an exception to the uniform rule. *FSC II*, 677 F.3d at 537.

In considering this issue, it must be remembered that plaintiffs are seeking a declaration that 2257 is unconstitutional *as applied to them*. Thus, if any plaintiff were to prevail, they would be entirely exempt from the requirement that they check IDs for the individuals that they film engaging in sexually explicit conduct. That result cannot be justified because every single plaintiff here who has produced sexually explicit depictions has included individuals who could be confused as minors, or has produced depictions where there is simply not enough information to determine if the individuals depicted are adults. *See* Def's Ex. 314A, 316. Moreover, an exemption would allow these plaintiffs to create more such depictions in the future without complying with 2257, regardless of how old their performers or models appear. That result is untenable, as plaintiffs acknowledge that they do not know who they might film or photograph in the future, and that they might include very young individuals in their sexually explicit work. *See, e.g.*, Defendant's Proposed Findings of Fact ("Def's FOF") ¶¶ 18, 76, 86.

Relying on the testimony of defendant's expert Dr. Biro, plaintiffs suggest that 2257 is overinclusive in applying to sexually explicit depictions of individuals over age 25, and that most of their work depicts such individuals. Pl. Br. at 30.  But Dr. Biro testified that individuals as old as 30 could be confused as minors, especially if they are trying to appear younger, and that the ages of individuals may be impossible to determine if an image lacks sufficient visual cues. *Id.* ¶ 121, 124. Plaintiffs' expert Dr. Linz has also recognized that models over age 25 who appear in

"barely legal" pornography are often perceived as minors, and other testimony at trial confirmed that even individuals over 25 who are not trying to appear younger reasonably could be confused as minors. *Id.* ¶ 122.

Moreover, it does not require an expert to know that, as a general matter, no one can accurately identify people's ages just by visual inspection. Indeed, all plaintiffs admitted as much. Confirming this uncontroversial fact, Dr. Biro testified that even an expert in maturation assessment like himself may be off in identifying someone's age by up to five years, and the range of error would increase where people without such expertise are making such evaluations, or individuals are trying to appear younger or older, or when an image depicts only isolated or obscured body parts. *See* Def's FOF ¶¶ 121, 124-125, 168-170. This evidence confirms that minors may be confused with adults, and that this confusion may occur regardless of age if an image lacks sufficient information. It also highlights the subjectivity inherent in leaving it up to producers to decide on a case-by-case basis whether age verification was needed. Section 2257 would be less effective not only if it did not require plaintiffs to check IDs at all, but also if it allowed plaintiffs to determine for themselves, on a case-by-case basis, whether to check a specific person's ID or not.

This is not the first time a court has considered an as-applied claim based on a producer's argument that "the vast majority of its advertisers are well over the age of majority." *Connection Distrib. Co. v. Reno* ("*Connection I*"), 154 F.3d 281, 292 (6th Cir. 1998), *cert. denied by* 526 U.S. 1087 (1999). The Sixth Circuit denied the claim of the swingers magazine plaintiff in that case, reasoning that even though "standards based on 'obvious' maturity would lead to accurate determinations in many cases, they also would attach an ineffectual subjectivity to the age determination, which was the target of the Act in the first place." *Id.* Ten years later, the en banc court confirmed this view, and it recognized furthermore that adopting a "threshold age" would "effectively delegate[e] enforcement of this critical issue to the industry being regulated." *Connection Distrib. Co. v. Holder* ("*Connection II*"), 557 F.3d 321, 331 (6th Cir. 2009) (en banc). The court observed that these were "two of the problems Congress permissibly sought to

correct." *Id.* Similarly, in the first challenge to 2257, the D.C. Circuit observed that "[t]he entire point of the Act is to prevent subjective determinations of age by implementing a uniform procedure that applies to all performers." *ALA*, 33 F.3d at 90. Accordingly, as a means of avoiding those problems, "a universal requirement of age disclosure, regardless of the apparent age of an individual in a visual depiction, is critical to the government's interest in ensuring that no minors are depicted." *Connection I*, 154 F.3d at 292; *Connection II*, 557 F.3d at 331 (recognizing "the subjectivity inherent in ad hoc, appearance-based judgments," and the "risks of delegating enforcement of this critical issue to the subjects of the regulation [and] of human error"). The Sixth Circuit thus concluded that "[i]f the government wishes to prevent the sexual exploitation of children through the production of child pornography, application of the record-keeping provisions to all producers of sexually explicit materials is necessary." *Connection I*, 154 F.3d at 292.

The Sixth Circuit also recognized the critical point that 2257 does not ban any form of speech but simply requires ages to be verified and records to be kept; it is not, therefore, "unduly burdensome." *Connection I*, 154 F.3d at 292. Ultimately, "[b]ecause the Act supports the government's interest in fighting [child] pornography, while allowing [the plaintiff] to exercise [its] free speech rights, it satisfies the requirements of narrow tailoring." *Id.*

Here, defendant has again shown that requiring producers, including plaintiffs, to follow the age verification, recordkeeping, and labeling requirements regardless of the apparent age of the individual they are filming is reasonable. Moreover, the alternative would be less effective. As Agent Lawrence testified, allowing producers to check IDs only when an individual looks below a cut-off age (whatever that might be), or otherwise when they deem it necessary based on their own subjective assessment of an individual's apparent age, would introduce difficulties and inefficiencies into the regulatory process. Def's FOF ¶ 212; Tr. June 11, 166:7-167:17.  A producer would have to make a case-by-case decision whether to check an ID or not, based on a subjective determination of how old an individual appeared. In effect, this process would delegate the determination of whether the government regulation applies to the parties being

regulated. Law enforcement might then disagree with a producer about the apparent age of an individual appearing in the producer's work, or may simply be unable to formulate an opinion about an individual's age—if, for example, a depiction showed only isolated body parts, a person's features were obscured in the course of engaging in a sexual act, or individuals were wearing masks. This would lead to disputes between law enforcement and producers, making the process of determining compliance longer and more inefficient. Agent Lawrence explained that "loopholes or exceptions where records weren't required . . . would have just, quite honestly, created a quagmire" in carrying out inspections. Tr. June 11, 166:19-22.

No plaintiff here presents a scenario that would justify an exception from the 2257 requirements, particularly given the regulatory difficulties described above that such an exemption would entail. No plaintiff exclusively produces depictions with individuals who "no reasonable person could conclude were minors"; to the contrary, plaintiffs use substantial numbers of young and youthful looking individuals in their sexually explicit work. *See* Def's FOF ¶¶ 126-130.[1] In addition, plaintiffs commonly include individuals age 25 or younger together with older individuals in the same work. *Id* ¶¶ 86, 134; Def's Ex. 88, 116.

The only comfort that some of these plaintiffs attempt to provide is their assurance that if they did ever have a question, they would check IDs of their own accord, even though they were not required to do so or to keep records of having done so. But this alternative would leave the question of whether they had actually checked an ID unverifiable, and would allow the resulting

---

[1] Plaintiffs attempt to discount the percentages that defendant calculated (Def's Ex. 314A) by indicating that they were not based on "the universe of the models depicted in Plaintiffs' expression," but were based on "model releases and 2257 records provided by the Plaintiffs in discovery for depictions created between January 1, 2005 and December 31, 2009." Pl. Br. at 30. But this Court limited defendant's discovery requests to that date range. *See* ECF No. 130. If plaintiffs had wanted to have the ages of performers from other date ranges considered in the analysis of their as-applied claims, they were obligated to provide that information to defendant during discovery. It is too late now for plaintiffs to imply that there is other relevant information that was never provided to defendant or presented at trial. Essentially, plaintiffs are simply acknowledging here—as they already have in their testimony—that none of them depicts individuals in a particular age range that will remain fixed over time. The likelihood of fluctuations in age-range percentages from one year or one project to the next only makes it more important that 2257 apply universally.

image (which to any observer could appear to be child pornography) to be disseminated with no way of tracing any associated age verification records. Moreover, plaintiffs such as Alper and Dodson and Ross do not wish to check IDs at all. It is not reasonable to accept the risk that child pornography might be produced, or to exempt material that could very well be questionable, from the common sense prophylactic measures of the 2257 scheme.

Despite their overinclusiveness argument, no plaintiff has asked the Court, either in the Amended Complaint or in their post-trial brief, to invalidate 2257 only as applied to the portion of their work that includes individuals under a certain age. Nor is there any evidence in the record suggesting that any burdens of 2257 (to the extent they are burdensome at all[2]) would be significantly decreased if 2257 applied only to some, but not all, of plaintiffs' sexually explicit depictions. For example, no plaintiff testified that it would make any difference at all to them if they could reduce the number of instances where they had to comply with 2257. Nor do they identify burdens that are incremental in nature; those plaintiffs who claim that they must keep their 2257 records in their home, or that they are concerned about the prospect of inspections, do not indicate that would change if they had to keep fewer records. Moreover, since plaintiffs commonly include individuals age 25 or younger together with older individuals in the same work, there is even less reason to suppose a universal application is more burdensome than a partial application. No possible additional burden of any significance is entailed in checking and copying IDs for all individuals appearing in the same depiction, and the 2257 labeling requirement is unaffected by the number of records associated with a depiction.

---

[2] As defendant has explained, many of the alleged burdens described in plaintiffs' post-trial brief derive from plaintiffs' misunderstanding of the 2257 requirements, or are otherwise not properly before the Court. *See* Defendant's Post-Trial Brief, at 15-20. For example, while some plaintiffs claim not to know whether their work qualifies as a depiction of sexually explicit conduct, the Third Circuit has already upheld this Court's ruling that 2257 is not unconstitutionally vague. *FSC II*, 677 F.3d at 545. In regard to plaintiff Queen's assertion regarding her "appropriationist" art, Queen's as-applied claim focuses on her status as a sexologist, not as an artist. Am. Compl. ¶¶ 37-39 (identifying Queen as a "sociologist, sexologist and feminist sex educator" and nowhere referencing the notion that she creates "appropriationist" art). No claim regarding appropriationist art has been properly developed in this case or is properly before the Court. In any event, artists are not entitled to use appropriated images of child pornography in their work.

Plaintiffs offer nothing that could contradict this reasoning. Instead, they seek to resurrect the idea, raised and rejected at previous stages of this case and in earlier cases, that 2257 imposes an impermissible "presumption" that a producer's work is child pornography.[3] Pl. Br. at 32. But again, as the District of Colorado court recognized when FSC raised this same argument in that case, the notion that 2257 imposes such a presumption cannot be squared with the fact that, while child pornography is illegal, "the statute and regulations do not ban Plaintiffs' expression." *Free Speech Coal. v. Gonzales*, 406 F. Supp. 2d 1196, 1205 (D. Colo. 2005). Moreover, the cases that discuss a "presumption" as matter of constitutional concern have to do with presumptions of guilt in criminal trials. *Cf. Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002) (indicating that a ban on images that appear to depict children, while requiring a defendant in a criminal prosecution to invoke an affirmative defense to establish that children were not actually used, was problematic); *Near v. Minnesota*, 283 U.S. 697, 721 (1931) (also addressing statute that imposed ban but allowed affirmative defense). Nothing in 2257 allows for a similar presumption, in a child pornography prosecution, that the individuals depicted are under 18 if the producer has no 2257 records for that depiction. Indeed, such a presumption was present in the original version of 2257 but was removed, leading the D.C. Circuit to vacate the district court's decision on that point as moot. *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1186 (D.C. Cir. 1992) (recognizing that "[t]he 'rebuttable presumption,' which the district court found unconstitutional, has been eliminated" (citation omitted)). Plaintiffs' attempt to resurrect that issue should be soundly rejected, and the Court should enter judgment for defendant on plaintiffs' as-applied claims.

---

[3] Plaintiffs originally raised this "presumption" idea in connection with their claim that 2257 acts as a prior restraint on expression involving depictions of sexually explicit conduct. *See* ECF No. 3-3, at 41. That claim was properly rejected and is no longer before this Court. *See FSC II*, 677 F.3d at 545. Once again, plaintiffs are simply repackaging an old argument in a new guise for improper purposes.

### III.    PLAINTIFFS FAIL TO ESTABLISH SUBSTANTIAL OVERBREADTH

###   A.    PLAINTIFFS FAIL TO SHOW THE UNIVERSAL APPLICATION OF 2257 REGARDLESS OF AGE IS SUBSTANTIALLY OVERBROAD, PARTICULARLY GIVEN THE VAST AMOUNT OF SEXUALLY EXPLICIT IMAGES OF YOUTHFUL LOOKING INDIVIDUALS

Plaintiffs' discussion of their overbreadth claim, much like their as-applied claims, is flawed at the outset because plaintiffs simply assume that every application of 2257 to an individual over a certain age is invalid. That assumption is wrong for the same reasons explained above. The universal application of the requirements, regardless of the apparent age of the individual depicted, is necessary to avoid "injecting 'an ineffectual subjectivity' into the proof-of-age requirement," and to avoid simply "delegating enforcement of this critical issue to the industry being regulated." *Connection II*, 557 F.3d at 331. This aspect of plaintiffs' overbreadth challenge can be rejected on that basis alone.

Even if there were some "critical mass" of "obvious adults," as compared to youthful looking individuals, that could tip the scale in favor of facial invalidation, plaintiffs have failed to meet their heavy burden to demonstrate it here. Plaintiffs argue that as much as 90% of all commercially produced depictions of sexually explicit conduct depict only performers who are obviously adults. Pl. Br. at 34-35. Nothing even close to that figure can be supported by the evidence presented at trial.

In particular, the "90%" figure that plaintiffs tout comes from their purported expert, Dr. Linz, and his use of the Internet search engine, Google, to perform text-based searches for the words "porn" and "teen porn." Tr. June 14, 14:15-22. Linz's Google search for the word "porn" yielded 1,360,000,000 webpages containing that word. *Id.* 20:12-15. The search for the phrase "teen porn" yielded 136,000,000 webpages containing that phrase. *Id.* 27:4-8. Linz then divided the number of results for "porn" by the number of results for "teen porn" and obtained the figure 10%. *Id.* 27:10-14. Plaintiffs simply subtracted that 10% from 100% to get their cited 90%.

However, Linz's simple division of the numbers of Google search results, or "hits," is not a reliable method of quantifying, or even estimating, the number of sexually explicit images that

depict individuals who could not be confused as minors. As previously explained in Defendant's Post-Trial Brief and Motion to Exclude, a Google search identifies webpages containing a particular word. Thousands or millions of webpages could contain the word "porn" without having any sexually explicit images on them at all, including news articles, academic articles, encyclopedia entries, blogs, and judicial opinions. *See* Tr. June 14, 48:5-49:8, 52:3-13, 52:21-25; Def's FOF ¶¶ 144-145. Indeed, even on the very first page of Linz's "porn" search results, there is a news article, "EU votes to reject 'porn ban' proposals." Pl. Ex. 38, at 16. While Linz testified that, in his opinion, search results for "teen porn" would have the same issue, Tr. June 14, 71:9-15, implying that pages without images would simply cancel each other out in his equation, Linz provided no basis for that opinion, nor is it credible.[4] Linz's calculation does not demonstrate the amount of "teen porn" images relative to "porn" images. Def's FOF ¶ 146.

In contrast to Linz's flawed methods, defendant's expert Dr. Dines used various online analytical tools to estimate the portion of pornography that specifically claimed to be part of the "teen porn" subgenre. For example, Dines conducted searches of the top three pornographic websites in the country, Pornhub, XNXX, and Redtube, where the results would primarily, if not exclusively, identify sexually explicit images. Tr. June 7, 61:9-63:11; Def's Ex. 182. She concluded that 34% of the pages on these sites were tagged with "teen" or an allied term such as "young," "college," "schoolgirl," and "daughter." *Id*. Moreover, there is no dispute that "teen porn" is extremely popular. Def's FOF ¶¶ 140-142.[5] Indeed, as the Court recognized, producers such as Sinclair Institute and others commonly use the word "teen" to promote and advertise sexually explicit material, as a means of attracting people "interested in very young looking

---

[4] In fact, common sense leads to the conclusion that textual occurrences of a single word, such as porn, would outnumber occurrences of a phrase such as "teen porn." The same would be true regardless of the words involved. Thus, there is simply no basis to assume that the number of webpages containing the word "horse" without a picture of a horse approximates in any way the number of webpages containing the phrase "black horse" without a picture of a black horse.

[5] The focus on youthful-looking individuals is not limited to mainstream pornography. The only member that plaintiff American Society of Media Photographers identified as producing sexually explicit photographs, other than Alper, was Craig Morey, who uses very young models in 61% of his work. Def's Ex. 31-32, 314A, 316; Def's FOF ¶ 126.

performers." Tr. June 14, 111:12-23.

Plaintiffs' 90% figure is also meaningless because it assumes that only images labeled as "teen porn" might include an individual who could be confused with a minor. That assumption fails in the face of Dines' testimony that even porn genres such as "MILF" or "mature," which supposedly focus on older individuals, in fact include youthful looking individuals, and that youthful looking performers predominate in all genres of Internet pornography. Tr. June 7, 41:5-16, 52:8-20. The record supports this testimony, Def's Ex. 85C, 87, 88, 124-126, 19, 170, 172, 234, 260-284, 306, 307, including evidence of plaintiffs' own work that includes both younger and older individuals in the same image or film, as cited above. Def's FOF ¶¶ 86, 134; Def's Ex. 88, 116.  Moreover, the evidence shows that individuals might be confused as minors at least up to age 30. *See* Def's FOF ¶¶ 121-122.

The evidence that around one third of mainstream pornography is in the subgene "teen porn" alone, and the fact that youthful-looking individuals predominate and are intermingled with older individuals throughout all genres of pornography, is more than sufficient to defeat plaintiffs' overbreadth claim, particularly when the importance of universally applicable requirements is considered as well. Plaintiffs cannot establish that 2257 is substantially overbroad based on the apparent ages of individuals appearing in sexually explicit images.

### B.   PLAINTIFFS FAIL TO SHOW 2257 IS SUBSTANTIALLY OVERBROAD ON THE BASIS OF ITS POTENTIAL APPLICATION TO PURELY PRIVATE DEPICTIONS

Plaintiffs similarly fail to meet the burden required to support facial invalidation of the statutes with respect to purely private images. Plaintiffs describe four categories of depictions— husband and wife, sexting, adult dating sites, and artistic educational, and journalistic expression—as supporting their overbreadth claim based on private images. However, their description and evidence related to each category are seriously flawed. As an initial matter, plaintiffs fail to compare any of the categories they identify to the "plainly legitimate sweep" of the statutes—which covers the universe of publicly available sexually explicit images. That

11

universe is "extremely vast," even when considering only commercially-produced images, as plaintiffs' own expert Linz testified. Tr. June 14, 24:21-25:2. Even if plaintiffs had presented evidence to support the existence of a large amount of invalid applications along the lines they describe, facial invalidation would be unwarranted, given the statutes' vast plainly legitimate sweep. In any event, plaintiffs fail to provide any such evidence.

First, plaintiffs refer to images "created by husbands and wives in the privacy of their homes." Pl. Br. at 36. This is in fact the category that the Third Circuit identified as appropriate for evidentiary development on remand. *FSC II*, 677 F.3d at 538. However, plaintiffs provide no genuine examples of the existence of such depictions. Instead, they cite the work of Alper, Nitke, and Steinberg. But these plaintiffs are professional commercial photographers. Alper did not take photographs of herself and her then-future-husband as a form of private expression to be viewed only in her home, but did so as part of her body of work as a photographer. Indeed, the only examples of these images in the record are images that she published in *Cupido* magazine (and none of them actually depict sexually explicit conduct within the meaning of 2257). *See* Pl. Ex. 43, at 11-13. Steinberg also does not photograph couples having sex for the sake of the couples' own viewing in their homes. He is engaged in a project for which he seeks out couples who are willing to be photographed and to have their photographs published, as he intends that they will be. Tr. June 4, 127:1-8. Nitke also took her photographs in the BDSM community in connection with particular art projects that she has pursued, which she intends to culminate in a book or gallery exhibition, and excerpts of which she includes on her website. Tr. June 7, 170:25-171:10.

Other than their own work, plaintiffs rely on hearsay that the Court has already stated it will not consider as evidence of the truth of the existence of purely private sexually explicit depictions. *See* Pl. Br. at 36-37 (citing statements made in webpages that they submitted into evidence over defendant's objection); *see* Tr. June 14, 77:2-9 (recognizing that this material was hearsay and that it would not be considered for the truth of the matter asserted). None of this material specifies the type of conduct depicted in the alluded-to images, thus making it impossible to determine whether any such images would be subject to 2257. This material is

entirely irrelevant and unreliable as evidence of the prevalence of purely private depictions of sexually explicit conduct.

Second, plaintiffs invoke the practice of sexting, relying on their two purported experts, Drouin and Zimmerman. But as defendant has explained, the studies upon which these experts relied for their estimates regarding the prevalence of sexting did not focus on images of sexually explicit conduct. For all anyone knows, the vast majority of the sexts reported by survey respondents were limited to partial nudity not including genitals, such as images solely of breasts or cleavage. Thus, it could well be that very few of these sexts involved depictions of sexual intercourse, bestiality, sado-masochistic abuse, masturbation, or lascivious exhibition of the genitals or pubic area, which are the only types of conduct conceivably relevant to 2257.

Plaintiffs suggest these reports suffice because they need only provide a rough estimate of the amount of sexting, not a precise quantitative statement. But that suggestion misses the mark. As Dr. Stark explained, the methods that Drouin and Zimmerman employed do not even allow for a rough estimate. Not only did the studies they relied on have the definitional problem explained above, but their participants were not randomly selected. There is therefore no way to extrapolate, even roughly, from the results of these studies to any broader population. As Dr. Stark put it, there is no way to identify an appropriate discount to account for the uncertainty inherent in a non-random sample: "[T]here's no way to know how much you have to discount it in order to get a conservative estimate of the rate of sexting. It might be 50 percent, it might be 90 percent, it might be 99 percent, there's no way to know." Tr. June 17, 92:8-18. The definitional problems and the sampling problems combined mean that Drouin and Zimmerman's numbers are entirely meaningless, for purposes of this case, and certainly do not satisfy plaintiffs' burden.

Moreover, with respect to both truly private depictions and sexts, plaintiffs fail to establish that, to the extent anyone wishes to create sexually explicit depictions for purely private reasons, they are in any way chilled from doing so. Nor is any such chill realistic when, absent public availability, there is little likelihood that these private depictions would ever come to the

13

attention of the Government for purposes of evaluating 2257 compliance.

Neither of the other two categories plaintiffs mention properly fall within the scope of plaintiffs' overbreadth claim. Postings on dating or social networking sites for viewing by an unknown number of strangers have nothing to do with private, non-commercial depictions created and viewed by adults in their homes. Nor does the fact that an image is intended to be artistic, educational, or journalistic make it "private," or in any way justify an exemption from 2257's age verification scheme. Indeed, those like plaintiff Alper who would film individuals having sex for ostensibly "photojournalistic" purposes, without checking the photo IDs or even obtaining the consent of the depicted individuals, are a legitimate subject of concern under the 2257 scheme. The same is true in regard to those who wish to film individuals being raped or sexually abused, as plaintiffs questionably suggest is a subject of legitimate journalistic interest, Pl. Br. at 49.[6] After all, there is no guarantee that an individual having sex on Fire Island, or being raped in Sri Lanka, is at least 18 years old. Similarly, in the absence of 2257, there is no guarantee that individuals contributing images to a supposedly "educational" endeavor, such as Dodson and Ross's Genital Art Gallery, are adults. Nothing in these categories helps plaintiffs meet their burden to establish substantial overbreadth, and their claim should thus be rejected.

## CONCLUSION

For the foregoing reasons, judgment should be entered in favor of defendant.

Dated this 8th day of July, 2013.                    Respectfully submitted,


                                                      STUART F. DELERY

---

[6] Furthermore, plaintiffs fail to establish that a significant number of such depictions exist. Indeed, they have produced no actual examples of images of rape or sexual abuse, instead again relying on inadmissible hearsay. *See, e.g.*, Pl. Br. at 49-50 (referring to titles, including Hollywood films such as Boys Don't Cry—which obviously do not depict an actual rape occurring—without any evidence of the content of this material). To the extent that some of the cited material may include images depicting conduct covered by 2257, these images would constitute child pornography if the individuals depicted were under age 18. Given the rarity of this situation, in relation to the plainly legitimate sweep of 2257, the question of whether such images are properly exempt from 2257 should be left to an as-applied challenge by a producer of such material.

Acting Assistant Attorney General
ZANE DAVID MEMEGER
United States Attorney
ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

/s/ Kathryn L. Wyer
HÉCTOR G. BLADUELL
JAMES J. SCHWARTZ
NATHAN M. SWINTON
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Ave., N.W., Washington, DC
Tel. (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing Memorandum has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.

Dated: July 8, 2013                         /s/
                                            Kathryn L. Wyer

15