```
                    UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF PENNSYLVANIA


FREE SPEECH COALITION,      )      09-cv-04607
INC., et al.,               )
                            )
          Plaintiffs,       )      Philadelphia, PA
                            )      September 28, 2017
     vs.                    )      1:59 p.m.
                            )
THE HONORABLE ERIC H.       )
HOLDER, JR.,                )
                            )
          Defendant.        )
--------------------------
```

                  TRANSCRIPT OF ORAL ARGUMENT
             BEFORE THE HONORABLE MICHAEL M. BAYLSON
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:        J. MICHAEL MURRAY, ESQUIRE
                           BERKMAN, GORDON, MURRAY & DEVAN
                           55 Public Square, Site 2200
                           Cleveland, OH  44113


For the Defendant:         KATHRYN WYER, ESQUIRE
                           U.S. DEPT. OF JUSTICE, CIVIL DIVISION
                           20 Massachusetts Avenue
                           Washington, D.C.  20530


Audio Operator:            JANICE LUTZ




Transcribed by:            DIANA DOMAN TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           Phone:  (856) 435-7172
                           Fax:    (856) 435-7124
                           Email:  dianadoman@comcast.net




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

<u>I N D E X</u>

                                                        <u>PAGE</u>

re:  question 1, mootness                                  4

re:  question 2, scrutiny                                  7

re:  association standing                                 28

re:  evidence of minors in films                         31

re:  question #3, industry standard                      35

re:  question #6, changes in technology                  50

Summation by Mr. Murray                                  56

Summation by Ms. Wyer                                    58

Colloquy                                3

1        (The following was heard in open Court at 1:59 p.m.)

2               THE COURT:  Mr. Murray, Ms. Wyer, how are you all?

3               MS. WYER:  Good afternoon, Your Honor.

4               THE COURT:  Okay, welcome, and I apologize for the

5    delay today but we'll -- but I've left at least an hour and a

6    half for this argument if we need that much time.

7          Okay, so we're here for re-remand of the Free Speech

8    case, civil action 09-4607.  And I see Mary Catherine Roper is

9    here, good afternoon.  I thought you were here for the

10   criminal case because we had a free speech issue there too but

11   welcome.

12          MS. ROPER:  I was familiar with that case, of

13   course, but thank you.

14          THE COURT:  All right, good afternoon to you.

15          Okay, so as I've done in prior arguments, I've sent

16   out a list of questions, so I'm going to basically ask the

17   questions and then I'll give counsel a chance to sum up

18   anything that I didn't raise, and as usual I'll give you some

19   time after today to file a supplemental brief if you want to.

20   But I thought the briefs were very well done and I appreciate

21   all of the intelligence on this interesting issue.,

22          I gather, Ms. Wyer, the Government did not seek

23   *certiorari* when the Third Circuit revisited this case after

24   the <u>Reed</u> case, is that correct?

25          MS. WYER:  That's correct, Your Honor.

Colloquy                                    4

1      THE COURT:  All right.  Any particular reason for

2   that or that's -- I mean, that's generally your policy when

3   there's a remand, not to --

4      MS. WYER:  Yes, I don't -- I'm not sure I know the

5   specific reason but I think it is generally the policy that

6   when there is a remand, they allow --

7      THE COURT:  Okay, all right, well, let me just --

8   some of these questions are more important than others.  So,

9   Mr. Murray, let's start with you on question number 1,

10  mootness.

11      Is plaintiff Hymes or any other plaintiff no longer

12  involved in adult entertainment business and since the

13  complaint are there any other plaintiffs who you know are no

14  longer involved so that their claims would be moot?

15      MR. MURRAY:  Yes, Your Honor, I'll be glad to answer

16  that question, and but first, yes, it's good to see you again.

17  It's been a long time.

18      THE COURT:  Yes, good afternoon.

19      MR. MURRAY:  I want to say that the plaintiffs and I

20  all appreciate all the hard work you've done on this case for

21  all these years.  It's been quite a --

22      THE COURT:  Well, it's a very challenging case and

23  it's become more challenging as the Supreme Court has conveyed

24  new learning about the First Amendment.  So, can you just pull

25  that microphone a little closer, please.

Colloquy                                        5

1          MR. MURRAY:  Your Honor, yes, we have of course

2    remained in contact with all of our clients throughout these

3    proceedings and have reported to them any time something has

4    happened in the case.

5          And recently Ms. Baumgardner made a point of making

6    sure that she contacted everyone to make sure that we had up

7    to date information.

8          And all of the plaintiffs, even after these many

9    years, remain committed to their challenges, to these

10   statutes, and they continue to be burdened by them.  And even

11   Mr. Hymes is committed to his challenge and has not given up

12   on the possibility of using the Daily Babylon website for --

13   to talk about the adult industry and to publish images --

14          THE COURT:  Okay, if that's --

15          MR. MURRAY:  -- that would be subject to 2257.

16          THE COURT:  Ms. Wyer, any dispute you want to raise

17   with that?

18          MS. WYER:  Your Honor, the plaintiff as we stated in

19   our brief, the plaintiffs do have a continuing obligation to

20   establish a case or controversy that is live, but we assume

21   that plaintiff's counsel has made those efforts and

22   understands that they are obligated to bring any relevant

23   information --

24          THE COURT:  Well, Mr. Murray just said, you know, he

25   checked and as far as he knows, his clients still have

1    standing so -- I'm gonna come back to this but you know, both

2    of you declined a, in your briefs that I had raised the issue

3    before the briefing, whether any of you, either of you wanted

4    to reopen the record, and both of you declined.  And this is

5    another, this is one small example of it.

6         I mean if the Government has evidence that one of

7    the plaintiffs is no longer in the business, that should be

8    something we take evidence on if it's disputed, because Mr.

9    Murray says they're still all involved.

10        So I don't know how I can dispute that if you want

11   to just stand on the record as it exists.

12        MS. WYER:  Well, I --

13        THE COURT:  Pull the microphone real close.

14        MS. WYER:  I understand what you're saying, Your

15   Honor.  I think we had made our standing arguments even

16   previously which Your Honor rejected, and I'm not sure that we

17   were very confident that because any such evidence would

18   depend on what plaintiffs maintain and what they say their

19   plans are, and so it would be up to them just simply to say

20   that they do continue to have plans.

21        I think there are certainly reasons to wonder

22   whether the plaintiffs' burdens are really as great as they

23   have been.  Some of the plaintiffs at trial seem to mainly

24   concerned with obligation to keep the records available 20

25   hours a week which is now no longer an issue, given the Fourth

Colloquy                    7

1   Amendment judgment that has already been entered.

2          And we know that some of the plaintiffs were simply

3   confused about what the requirements are and now Your Honor's

4   decision has clarified that.  So there is reason to wonder

5   whether they are facing a burden.  Certainly those burdens are

6   not as great as they were at the time of trial.

7          THE COURT:  All right, well, we're gonna explore

8   that, but let me go to number 2.  So when I made specific

9   findings before under intermediate scrutiny, it appears to me

10  that the Third Circuit accepted those.

11         Now, the first question is whether you agree with

12  you, but the more important question is whether I can under

13  strict scrutiny, which the Third Circuit said I must now

14  consider, I just use the same findings and just apply strict

15  scrutiny instead of intermediate scrutiny, or do I do

16  something different?  Mr. Murray?

17         MR. MURRAY:  Your Honor, first of all, I think that

18  the Third Circuit did not accept all of your findings.  They

19  certainly accepted some of them.  They made a point of

20  explaining that they needed to do an independent review as an

21  Appellate Court in a First Amendment case, and they in fact

22  actually did reject a couple of findings that I think were

23  important and certainly remain important --

24         THE COURT:  They certainly rejected some of the

25  Fourth Circuit conclusions, and part of that may be because I

1  was wrong, but part of it may be because of the <u>Patel</u> case

2  that was also cited in the remand order.

3          But as I understand it, the Fourth Circuit issues

4  are out, that the Government has conceded, and I think I

5  entered judgment in your favor --

6          MR. MURRAY:  Yes, yes.

7          THE COURT:  -- on all of the Fourth Amendment

8  issues.  So we're just left with the First Amendment.

9          MR. MURRAY:  Right.  And on those issues, for

10  example, Your Honor, one of the things that the Circuit Court

11  did disagree with from Your Honor was on the issue of Dr.

12  Drouin's studies about sexting.  Your Honor had found that

13  those studies were really irrelevant and not probative because

14  -- well, for the reasons that Your Honor said in Your Honor's

15  opinion.

16          But the Third Circuit said that Dr. Drouin, although

17  these statistics -- and you may recall that she, her

18  conclusion was that millions of young adults sext to each

19  other.

20          THE COURT:  Right.

21          MR. MURRAY:  And the Third Circuit said that

22  nevertheless, although these statistics do not provide a

23  precise picture of just how much private sexual imagery is

24  produced in the United States, they are still informative.

25  They demonstrate that there is some substantial amount of

Colloquy                                                   9

1   private sexually explicit images that the statutes burden

2   unnecessarily.

3           So that was a finding that they made.

4           Then Your Honor also found that the other evidence

5   that we had introduced about other means through the internet

6   for husbands and wives to share intimate images with each

7   other, Your Honor did not find that relevant or persuasive.

8   But the Third Circuit said,

9           "Plaintiff's evidence of the use of internet

10  communication services for similar purposes also buttresses

11  this finding.  Accordingly, we agree with plaintiffs that they

12  had demonstrated the existence of a universe of private

13  sexually explicit images not intended for sale or trade along

14  with, to a limited degree, a universe of sexually explicit

15  images that depict only clearly mature adults."

16          Along the same lines, with respect to purely private

17  communications, for example, between husbands and wives that

18  would remain in the home, Your Honor indicated that in his

19  findings, that because it didn't seem very possible that any

20  of those would be discovered, that you didn't assign any real

21  weight to that aspect of the case.

22          THE COURT:  Wasn't one of the reasons for some of

23  those findings -- I also found that all of the plaintiffs were

24  involved in commercial businesses.

25          MR. MURRAY:  Yes.  Yes, no, that was part of it, and

Colloquy                    10

1    I don't think the Third Circuit disturbed that.

2            As I said, the Third Circuit certainly accepted many

3    of the findings that Your Honor made.  I'm just pointing out

4    that there were a couple of what I think are fairly important

5    aspects --

6            THE COURT:  Okay.

7            MR. MURRAY:  -- in which, for example, they said,

8    "Further, we do not agree with the District Court

9    that the difficulty of enforcing the statutes against purely

10   private producers of sexually explicit images counsels in

11   favor of facial validity.  As a factual matter, the District

12   Court erred when it accepted that the Government would never

13   be able to enforce the statutes against private producers.

14   Even if the Government could not target such communications,

15   it is no stretch of the imagination for the Government to

16   become aware of such images inadvertently or through the

17   investigation of other suspected crimes.

18           "More fundamentally, as the Supreme Court stated in

19   United States v. Stevens, the First Amendment protects against

20   the Government.  It does not leave us at the mercy of *noblesse*

21   *oblige*."

22           So I mean in those respects which go to whether the

23   statute under strict scrutiny is narrowly tailored, those are

24   important aspects of the Third Circuit --

25           THE COURT:  Well, I think you're right about that.

1              All right, Ms. Wyer, what's your response?

2              MS. WYER:  Your Honor, first of all, it's true that

3    the Third Circuit did accept many, most and almost all of this

4    Court's findings.  Particularly I would say the Third Circuit

5    accepted all of the findings relevant to an as applied

6    challenge; for example, the recognition of the plaintiff's

7    minimal burdens in complying with the statutes, the fact that

8    none of the plaintiffs were chilled in producing any such

9    explicit depictions with the exception of the two projects

10   where the plaintiff's goal was to do that anonymously.  The

11   fact that all of the plaintiffs were engaged in commercial

12   production --

13             THE COURT:  I don't need you to go through the ones

14   where they agree with me.  I want to know what you think about

15   Mr. Murray's argument that there are a couple they did not

16   agree.

17             MS. WYER:  Your Honor, in regard to their evaluation

18   of experts that was in the Third Circuit's over-breadth

19   analysis but ultimately they determined that nothing in the

20   record was sufficient to show substantial over-breadth, even

21   with their recognition that the experts have slightly more

22   weight than Your Honor provided, they still did not find that

23   sufficient.

24             THE COURT:  All right.

25             MS. WYER:  And that was only relevant to over-

Colloquy                    12

1    breadth.

2              THE COURT:  All right, one of the difficult issues

3    in my view is -- well, let me rephrase this, and this cuts

4    across a lot of other questions.

5              On the as applied challenge, it is clear that I must

6    now apply strict scrutiny, and a lot of cases, maybe not a

7    real lot, but there are a number of cases that go through that

8    analysis.

9              On the concept of facial over-breadth, the case law

10   does not appear to be clear as to whether applying strict

11   scrutiny is necessary on over-breadth, or whether some other

12   tests should be used.

13             Now, there happens to be a recent decision by

14   Justice Souter sitting by designation in the First Circuit

15   called United States v. Thayer, T-H-A-Y-E-R.  No?  Thayer is

16   the name of the plaintiff, excuse me.  Okay.  And that opinion

17   was vacated in light of Reed, as the Third Circuit's thinking

18   was in light of Reed.

19             So one note you might want to make is when you

20   submit something supplemental, is your views of the analysis

21   Justice Souter applied and whether that survives Reed.

22             It's my impression that the Supreme Court has not

23   explicitly stated a test for facial over-breadth that embraces

24   strict scrutiny.

25             Ms. Wyer, you have any views on that?  Or do you

1    want to think about that and put it in a post argument brief?

2            MS. WYER:   Your Honor, I do have some views now on

3    that.  I believe the over-breadth analysis is still what it

4    is, regardless of the level of scrutiny applied in the, you

5    know, scrutiny and all, as apart from over-breadth.  But the

6    over-breadth claim still requires substantial over-breadth.

7    The plaintiff still bears the burden to show over-breadth

8    because after all, over-breadth is unique exception to

9    standing requirements, and the only reason for that exception

10   is because it's the First Amendment context, that the

11   plaintiff still bears the burden.

12           There's no -- under <u>Virginia v. Hicks</u> the plaintiff

13   always bears the burden in an over-breadth claim, and the

14   analysis --

15           THE COURT:  Well, I think the most recent Third

16   Circuit opinion confirmed that, if I'm not -- I think so.

17           Go ahead, Mr. Murray, what's your view on that?

18           MR. MURRAY:  Well, I think the Third Circuit in the

19   remand decision said that it was remanding the facial over-

20   breadth precisely because the, whether it's strict or

21   intermediate, scrutiny is relevant to an analysis of that.

22           And I think what's relevant is that under the over-

23   breadth prong when you're talking about strict scrutiny, a

24   content based statute, the narrowness, the fit between the

25   Government's purpose and the coverage that the statute

1    provides has to be much tighter and much closer and much more

2    perfect a fit than it does when you're talking about

3    intermediate scrutiny.

4            And therefore, for all the reasons that we argued

5    and will argue today, that under strict scrutiny test, the

6    statute isn't narrowly tailored for all the reasons the Third

7    Circuit said in its 2015 opinion applying the intermediate

8    scrutiny, suggesting that if strict scrutiny had applied, the

9    statute would not satisfy the narrow tailoring requirement

10   because of its application to --

11           THE COURT:  Okay, but if that's true, then why did

12   the Third Circuit remand over-breadth to me?  If that -- if

13   your argument is correct, the Third Circuit would have said

14   since Reed applied, and Reed required strict scrutiny, we

15   therefore find that this statute is over broad?

16           MR. MURRAY:  Because the Court didn't want to reach

17   the merits without giving Your Honor and the parties and the

18   District Court an opportunity to argue under strict scrutiny,

19   because as the Court pointed out, everyone tried the case and

20   presented the evidence and argued it from the framework of

21   intermediate scrutiny.

22           So it's normal that the Third Circuit would then

23   remand it.  Now that the test is different, of course it

24   should go back to the District Court to give Your Honor and

25   the parties and the District Court an opportunity to get a

Colloquy                                    15

1    decision from Your Honor under strict scrutiny.  So that makes

2    perfect sense to me.

3            THE COURT:  Okay.

4            MR. MURRAY:  I would have been surprised if they had

5    gone on and ruled on the merits under strict scrutiny without

6    giving Your Honor first an opportunity to apply strict

7    scrutiny in the first instance.

8            THE COURT:  Ms. Wyer, any views on that?

9            MS. WYER:  Your Honor, in my view, where the --

10   where the over-breadth analysis might be affected is if there

11   were whole categories of applications that were now on the

12   other side of the line so that the substantial analysis was

13   considering something entirely new or different than it is

14   otherwise.

15           But the two areas of where the plaintiffs argue

16   there is substantial over-breadth is still the private,

17   clearly private depictions between couples in their own home

18   and the clearly mature adult context, and that's where the

19   Third Circuit's analysis in the 2015 decision is still very

20   much relevant because the expert testimony that the plaintiffs

21   provide simply did not establish that over-breadth was

22   substantial.

23           And so unless there's some change, some drastic

24   change in the -- in what categories we're talking about, the

25   same over-breadth analysis would apply.

1              THE COURT:  All right, well, getting to that, I

2    think you took the position before that the statute didn't

3    apply to private sexual depictions.  Isn't that the

4    Government's position?

5              That a husband and a wife in their own home, they're

6    not covered, and even if they make a video of themselves, the

7    statute doesn't cover that.  They can video themselves having

8    sex, the statute doesn't apply.  Wasn't that your position?

9              MS. WYER:  Yes, that was the Government's position

10   back in the --

11             THE COURT:  And that's still your position, that's

12   one reason why it's not over broad, right?

13             MS. WYER:  We have not argued that here because the

14   Sixth Circuit had said that it applied and we have been

15   adhering to that ruling.  But the Government's position had

16   been that the statutes do not apply where the depiction is not

17   for sale or trade, so purely private depictions of consenting

18   adults made in their own home, they never leave their home,

19   would not be covered.

20             THE COURT:  All right, well --

21             MS. WYER:  But even if they were covered, in the, I

22   believe in the post trial briefing and in the Court's decision

23   that was assumed that they were covered and yet there still

24   was not sufficient evidence of the quantity or substantiality

25   of those kinds of images to make --

Colloquy                                  17

1        THE COURT:  Well, do you think I'm free to make a

2   ruling that the statute doesn't cover videos of private sex?

3        MR. MURRAY:  No, Your Honor, the Third Circuit

4   expressly rejected Your Honor's view that, or the Government's

5   view that the statute was not applicable to purely private

6   expression.  And they went through an entire analysis and sent

7   the case back on that understanding.  The statute they said

8   covers every conceivable sexual image in the entire universe

9   including private expression which the Third Circuit has made

10  it clear is an unconstitutional type of expression, but under

11  intermediate scrutiny, the narrow tailoring requirement was

12  still satisfied.  But under strict scrutiny it isn't

13  satisfied.

14       THE COURT:  Well, Mr. Murray, getting to mature

15  adults, I mean didn't the Third Circuit there say that it

16  appeared to them that the statute was over broad because it

17  covered them without any exceptions or other circumstances?

18       MS. WYER:  Your Honor, the Third Circuit, I believe

19  the Third Circuit's statement was to the effect that it did

20  not serve the Government's interest to apply the statutes to

21  depictions that only show clearly mature adults.  But it does

22  make a difference here whether you're looking at the as-

23  applied challenge or the over breadth challenge.

24       I would just make the point that in the as applied

25  challenge, we're still in the situation where none of the

Colloquy                                    18

1      plaintiffs have demonstrated that their depictions or their

2      production has images of only clearly mature adults, and the

3      Court has already made those findings, that say that these

4      plaintiffs do not -- their production does not consist of only

5      purely private depictions or --

6             THE COURT:  Well, maybe not only but we clearly have

7      clear depictions of mature adults.  We have testimony from

8      mature adults who were performers.

9             MS. WYER:  Yes, Your Honor, and if the Court -- I

10     mean, this is going ahead to the different alternatives, but

11     if the Court were going to rule in the as applied context that

12     there was a constitutional problem with applying the statutes

13     with respect to their work where the, that only consisted of

14     adults over 30 for example, that might be a ruling in the as

15     applied context.

16            We have arguments, we believe that there are reasons

17     that that is not a less restrictive or less burdensome

18     alternative, but the Court has the power to make that kind of

19     ruling in the as applied context.

20            In the over-breadth claim, it's still the situation

21     as the Third Circuit and this Court agree that there was no

22     showing of substantial over-breadth on that basis.

23     Substantial --

24            THE COURT:  But I mean I think this is what your

25     brief argues, but your position is that the plaintiff has the

1    burden on over-breadth and if I find that the plaintiff even

2    considering that strict scrutiny applies, that the plaintiffs

3    haven't proven over-breadth, that the statute is still

4    completely valid.  Is that right?

5              MS. WYER:  Yes, Your Honor.  The --

6              THE COURT:  All right.  I mean, I want to be sure.

7    I mean that's what you argued in your brief.  I just wanted to

8    be sure.

9              But you're basically conceding that for as applied,

10   I would have to go through another different kind of analysis,

11   is that right?

12             MS. WYER:  Yes, Your Honor, the as applied challenge

13   does require the different strict scrutiny analysis so the

14   analysis would be different.  In this case, the statutes are

15   narrowly tailored, and I mean we're jumping ahead to other

16   questions that Your Honor has asked but --

17             THE COURT:  Well, they're narrowly tailored under --

18   I've said they were narrowly tailored under intermediate

19   scrutiny, okay?  But that's out the window now.  So I have to

20   rethink and re-analyze the same thing, right?  And I know your

21   position is that they still -- you think they -- what I'm

22   gathering from your argument, correct me if I'm wrong, is that

23   you're not quite as adamant that the stature satisfies strict

24   scrutiny on as applied, but you think that it clearly

25   satisfies -- even considering strict scrutiny applies, that

Colloquy                                    20

1    the statute is not over broad as a matter of law.  Do I

2    understand that correctly?

3              MS. WYER:  On the second point, yes, Your Honor,

4    because over-breadth is still strong medicine and the Court

5    has, the Supreme Court has still warned against facially

6    invalidating a statute where there are lesser, less extensive

7    remedies.  And then if the Court were to hold that the

8    plaintiffs -- that the plaintiffs prevail in their as applied

9    challenge, then there would simply be no need to reach the

10   over-breadth claim at all.

11             But if the Court, even if the Court goes to the

12   over-breadth claim, there still is not enough evidence, the

13   plaintiffs have not met their burden to show over-breadth.

14   And we do feel very strongly that that continues to be the

15   case.

16             Now, regarding the as applied challenge, the -- this

17   case is very different from the, than the Casey case that Your

18   Honor asked about.  In the Casey case, was considering a

19   facial strict scrutiny analysis of the COPPA statute.  And

20   there were there many problems in that statute that are not

21   present here.

22             For one thing, in the narrow tailoring analysis, the

23   Court was looking at the terminology in the language there

24   where there were references to harmful to minors, there was

25   some --

Colloquy                                    21

1            THE COURT:  Well, I don't want to spend a lot of

2     time on the details from the <u>Mukasey</u> case.  I agree the facts

3     are different there.  In there my former colleague, Judge Reed

4     had wrestled with that case for a number of years, longer than

5     I've had this one.

6            And they kept talking about filters which you can

7     theoretically use in an internet kind of case.  And that was

8     what was a lot of the litigation was back and forth.

9            But you can't use filters in this kind of a case.

10    But I was surprised that there was even no mention of the case

11    when I think it's the leading Third Circuit, most recent

12    leading Third Circuit case on the general topic of over-

13    breadth and strict scrutiny.

14            MS. WYER:  Well, Your Honor --

15            THE COURT:  Do you think it has no application

16    whatsoever?

17            MS. WYER:  That case did not apply to over-breadth

18    doctrine.  It was only looking at strict scrutiny and the

19    analysis --

20            THE COURT:  Okay, well, you're right about that, I

21    think.

22            Mr. Murray, what's your view of that?

23            MR. MURRAY:  Your Honor, let me respond to what

24    counsel said about the question of mature adults and whether

25    it's as applied or over-breadth.

1           First of all, the discussion about that was in the

2    as applied section of the opinion.

3           THE COURT:  Right.

4           MR. MURRAY:  And the Court could not have been

5    clearer in its opinion.  And I think that it will ultimately

6    doom this statute, unless the Third Circuit's conclusions are

7    rejected.

8           They said in the as applied challenge, that here the

9    Government's interests in enforcing the statute is to prevent

10   producers of sexually explicit material from depicting minor

11   performers.

12          But as we stated in the first time, burdening speech

13   involving performers who are obviously adults does not advance

14   the Government's interest in protecting children.  Requiring

15   identification and record keeping for clearly mature

16   performers does nothing to prevent children from appearing in

17   sexually explicit materials because by definition, a minor

18   could not be mistaken for a clearly mature adult.

19          On the next page they say,

20          "Thus, we reject the Government's contention that

21   age verification for all performers regardless of their actual

22   age always furthers the Government's interest in preventing

23   the sexual exploitation of minors.

24          "Here, given that the Government's own expert

25   testified that at a certain advanced age no individual could

1   be mistaken for a minor, the Government has not established

2   that imposing some age cutoff would necessarily undermine the

3   statute's effectiveness in preventing the exploitation of

4   children."

5            Then they say, "This observation does not mean,

6   however, that the statutes are not narrowly tailored as

7   applied to these plaintiffs.  Indeed, time and again, we have

8   stated that under an immediate scrutiny, the Government need

9   not employ the least restrictive or least intrusive needs."

10           And it's because they employed intermediate scrutiny

11  that notwithstanding what they found, under intermediate

12  scrutiny they wouldn't strike it down.

13           Indeed, if you look at their footnote number 9 --

14  and then they pointed out that giving the Government every

15  benefit of the doubt -- and they went through many statistics

16  showing that a high, a substantial percentage of the

17  plaintiffs expression involved people over 30, not entirely,

18  but a lot of them.

19           And undoubtedly, these figures demonstrate that the

20  number of performers to whom the statutes apply, yet for whom

21  requiring identification does not protect children, is not

22  insignificant.

23           And so they said, "Even if we accept that the

24  Government prove no more than that" -- in other words that you

25  could confuse somebody up to the age 30 -- "even if you accept

1   that the Government prove no more than that, and that

2   requiring record keeping for individuals 30 and older does not

3   advance the Government's interest, the evidence indeed

4   demonstrates that a significant proportion of plaintiff's

5   works fall squarely within the statute's permissible scope."

6          In other words, under immediate scrutiny.  But then

7   if you look at footnote 9,

8          "We express no view as to whether minors in fact

9   could appear to be over 30 years old.  Indeed...himself

10  equivocated on this point.  However, we need not address

11  whether the Government in a different case and in a different

12  record can prove that requiring identification even for

13  performers who appear over 30 helps protect children."

14         Well, they don't want to put on -- they've not asked

15  to put on more evidence.  The Third Circuit has spoken clearly

16  that on the as applied challenge, if strict scrutiny applies,

17  this statutory scheme is not narrowly tailored, if for no

18  other reason than it applies to clearly mature adults over age

19  30 or who could not reasonably appear to be minors, and also

20  because there's a substantial amount of private expression

21  that is embraced within the statute.  And for that reason, it

22  cannot be deemed narrowly tailored under strict scrutiny.

23         And so, I mean strict scrutiny is not -- I mean, the

24  test is pretty clear.  I mean we all know the test.  It's a

25  three-prong test and the Supreme Court has applied it in the

Colloquy                                    25

1   various cases that we think are important, Playboy

2   Enterprises, the Alvarez case, the Entertainment Merchants

3   case involving the video games, Free Speech, Ashcroft v. Free

4   Speech Coalition and the Mukasey case in the Third Circuit.

5            When you apply those tests and you look at those

6   cases, it seems to us at least to be quite clear, Your Honor,

7   that it fails the narrow tailoring test, it fails the test

8   that the Government has to prove that there was an actual

9   problem with adult film makers using minors, and it certainly

10  fails the least restrictive means test, which of course we

11  haven't gotten to yet and I'm sure we will shortly.

12           THE COURT:  Yes, we will.  All right.  Briefly, yes,

13  did you want to respond to that briefly?

14           MS. WYER:  Yes, Your Honor.  The question though in

15  regard to the age cutoff is the plaintiffs have a threshold

16  obligation to show that the alternatives that they propose

17  meet some plausibility standard, and there also has to be the

18  conclusion that the alternative is less burdensome.

19           THE COURT:  Narrow tailoring, the Government has the

20  burden.

21           MS. WYER:  Well, in the Playboy case the Supreme

22  Court said the Government has the burden once you conclude

23  that the alternative is plausible.

24           And the Court has also, the Supreme Court has also

25  made clear that the Government's burden is not to bring

1   forward empirical evidence of what would happen under one

2   alternative or another, and that's where there's a distinction

3   from the <u>Mukasey</u> case where you were looking at internet

4   filters which was a technological alternative where there was

5   something empirically necessary to show whether that

6   alternative was effective or not.

7          But here this situation is much more similar to the

8   <u>Burson</u> case where the Court recognized that the Court can

9   rely, even in the strict scrutiny context, on legislative

10  history, the history of Court decisions in the past, and

11  simple common sense to evaluate these alternatives.

12         Now with respect to the age cutoff alternative that

13  the plaintiffs have proposed, I think it is still significant

14  when you look at the trial record that not one single

15  plaintiff who testified in the case said that their burden is

16  gonna be lessened by having requirements apply to some

17  performers and not all.

18         And when you think about it, when you just use

19  common sense to evaluate that alternative, you have to

20  conclude that having a age cutoff at some point other than age

21  18 imposes its own burdens because then you have to figure out

22  whether the person is over or under that age cutoff.   So you

23  can --

24         THE COURT:  Wait, just excuse me one second.

25         (Pause)

1          THE COURT:  Sorry.

2          MS. WYER:  And when you look at the testimony of

3     some of the plaintiffs, for example, Ross testified that it

4     was not burdensome at all to keep records for videos.  Carol

5     Queen testified that she spent less than 12 hours a year even

6     for all people that she kept records for on 2257 compliance.

7     Marie Levine uses a third-party record keeping service for her

8     records.

9          And we know that Wilson and Nitke who testified,

10    Wilson on behalf of the Sinclair Institute, the burdens they

11    were describing were largely because of their misunderstanding

12    of what was required, and their failure to understand that

13    purely electronic means can be used to keep track of all these

14    records.

15         And it's simply such a minimal burden involved here,

16    and the Third Circuit recognized that when you're looking at

17    just the incremental additional burden of keeping additional

18    records when you already have to keep some records, that

19    reduces the burden you were talking about even further.

20         And the Court in <u>Burson</u> said that there was a point

21    where a burden can be so small that it is simply not of

22    constitutional significance.  That is the situation I think

23    here because there's no showing -- there's simply no evidence,

24    or the evidence that we have already shows that there is no

25    significant additional burden --

Colloquy                                    28

1        THE COURT:  Well, there was some plaintiffs who

2    complained a lot about the burdens of record keeping, but

3    we'll come back to that in a minute.

4        Let me just ask briefly on this issue of association

5    standing, I think the Third Circuit said as far as "as

6    applied" that there was some question as to whether the

7    associations had standing.  Is that right, Mr. Murray?

8        MR. MURRAY:  Yes.  In the -- well, what happened is

9    in the 2015 opinion, the Court said that they did not, we did

10   not have standing in the --

11       THE COURT:  Now you think that's out the window?

12       MR. MURRAY:  Right.  And then in the most recent

13   opinion, the Court said that that should be revisited because

14   now that we're applying strict scrutiny or intermediate

15   scrutiny, it affects whether they have standing.

16       THE COURT:  All right.  And you I think in your

17   brief demonstrated a lot of their activities that you show

18   were impacted by the record keeping and the other burdens, is

19   that correct?

20       MR. MURRAY:  Yes.  And under strict scrutiny, it's

21   no longer necessary to have every single member of the Free

22   Speech Coalition or of the ASMP come in and testify about how

23   the statute affects them individually.  Because under strict

24   scrutiny, as all the Supreme Court cases made clear, the

25   Government of course has the burden of proof on all three

1   prongs of the strict scrutiny test, and it doesn't depend upon

2   individual participation.

3           The organization itself can represent the interests

4   of its members, regardless of how they differ individually

5   when it comes to how badly they are impacted by the statute.

6           And so that's why for example the Supreme Court

7   never questioned my client's standing in Free Speech Coalition

8   v. Ashcroft.  And that's why the Supreme Court never

9   questioned the standing of the Entertainment Merchants

10  Association which was a trade association for the video people

11  in the video violence case of that case versus Brown.

12          And by the way, in terms of the burdens, Your Honor,

13  there really -- you know, there's some black letter law here

14  that I think the Government is trying to muddy up.  The law is

15  not unclear on the point of the Government has the burden of

16  proving all three parts of the strict scrutiny test.  The

17  plaintiffs have no burden.  It's all their burden.

18          And that's number one.  And number two, that's what

19  Mukasey points out.  The burden is on the Government to prove

20  that the proposed alternatives will not be as effective as the

21  challenge statute.

22          THE COURT:  I think you're right about that.

23          MR. MURRAY:  The other thing is, while we disagree

24  that these statutes are not burdensome, these are criminal

25  statutes.  These people face a felony if they make a slight

Colloquy                                    30

1    mistake.

2          And, _Playboy_ makes it clear that under strict

3    scrutiny, it is no moment that the statute does not impose a

4    complete prohibition.  The distinction between laws burdening

5    and laws banning speech is but a matter of degree.  The

6    Government's content based burdens must satisfy the same

7    rigorous scrutiny as its content based bands.

8          In other words, now that you're under strict

9    scrutiny, all of the discussion of how minimal or how

10   persuasive these burdens are as applying to individual

11   plaintiffs is irrelevant to discussion because under strict

12   scrutiny the Government bears the burden of proving their case

13   as if the whole thing were a complete total ban.

14         And as I recall in _Lorillard_, the Supreme Court

15   specifically said there's no such thing as a _de minimis_

16   exception to the First Amendment.

17         But again, the burdens are crippling on these

18   plaintiffs.

19         THE COURT:  Yes, all right.  Now, I just want to

20   turn to my second letter on, of questions, and we can come

21   back to the first one perhaps.  But, the first question I

22   have, Ms. Wyer, is it correct that on the record in this case

23   so far, there's no evidence that any primary producer has ever

24   employed a minor in a sexually explicit video or other

25   production.

Colloquy                                    31

1          MS. WYER:  No, Your Honor, that's not correct,

2     because everyone who uses a minor in the production of a

3     sexually explicit film or photograph is a producer, under the

4     2257 statute.

5          THE COURT:  But wait a minute.  But do we have in

6     evidence that in the record of this case that any one producer

7     ever actually used a minor?  That's the question.

8          MS. WYER:  If Your Honor is --

9          THE COURT:  I'm not talking about child pornography

10    where people go to jail.  I'm talking about producers of, who

11    are subject to the statute, who produce sexually explicit

12    videos.  Is there any evidence that any one of them has ever

13    used a minor?

14         MS. WYER:  If Your Honor is limiting this question

15    only to plaintiffs, but if it goes anything beyond the

16    plaintiffs, then the premise of the question is simply, if

17    Your Honor is excluding child pornography from the question,

18    then that is kind of a circular question.  The child

19    pornographers --

20         THE COURT:  Well, I agree with you, child

21    pornographers, the reason they're child pornographers is

22    because they use children.

23         MS. WYER:  Yes.  Yes, Your Honor, but --

24         THE COURT:  But it's broader than the actual

25    plaintiffs in this case.  In my mind there is a difference

1    between producers of adult pornography such as plaintiffs.

2    But the question I have is, I mean, and this is one of the

3    reasons why I'm curious as to why the Government didn't want

4    to reopen the record, because you have the burden.  And if you

5    had evidence that adult pornography producers had on some

6    occasions, and I'm not gonna do my homework for you but -- I'm

7    not gonna do your homework, that there was a likelihood that

8    producers had in the past -- there was evidence that producers

9    in the past had employed minors despite this statute, that to

10   me would be relevant.

11          And the fact that there's nothing in the record

12   about that is also relevant.  I think strict scrutiny requires

13   me to ask that question.

14          MS. WYER:  Your Honor, there's two points of

15   disagreement I would raise.  One is that the burden that the

16   Government has here can be met without that kind of empirical

17   evidence.  The burden can be met simply by the long

18   legislative history that the Third Circuit and this Court have

19   already set forth in previous opinions.  It can be met by the

20   very common sense nature of these requirements, which is --

21   which distinguishes them from cases where the Court has talked

22   about evidence, like the Alvarez case where the problem was

23   the statute involved the medal of valor criminalizing false

24   representations that you got a military medal and --

25          THE COURT:  You know, I'm familiar with that case

Colloquy                                33

1    and I'm familiar with the voting cases, but I think this is a

2    different kind of a case, I must tell you.

3             MS. WYER:  Your Honor, this is a different kind of a

4    case because there is a long history of the, that Congress

5    repeatedly in every statutory amendment that has been made,

6    and all of that legislative history is already in the statutes

7    saying that there is a problem with child pornography, there

8    is a risk created by the prevalence of usual --

9             THE COURT:  There's no question about that.  But --

10            MS. WYER:  -- that is enough to meet the

11   Government's burden on that score --

12            THE COURT:  But wait.  On the other hand, as far as

13   our research is concerned, there's no case involving adult

14   pornography that has applied strict scrutiny and upheld the

15   statute, that I'm aware of.

16            Is that right, Mr. Murray?

17            MR. MURRAY:  I'm sorry, Your Honor, I didn't hear

18   the last part of the question.

19            THE COURT:  There's no Supreme Court case or even a

20   Circuit -- well, no Supreme Court case that applying strict

21   scrutiny in an adult pornography context has upheld a

22   congressional statute limiting it.

23            MR. MURRAY:  I think that's right, Your Honor.  I

24   can't think of one --

25            THE COURT:  And the voting rights cases are, they

1   have survived strict scrutiny, and the <u>Alvarez</u> case has

2   survived strict scrutiny, and that's a more complex case.

3           MR. MURRAY:  No, Your Honor, that didn't survive.

4   They struck down the stolen valor --

5           THE COURT:  All right, yes.

6           MR. MURRAY:  -- as unconsisitutional under the First

7   Amendment.

8           MS. WYER:  Your Honor, the <u>Burson</u> case and the

9   <u>Williams-Yulee</u> case, the statutes there survived, or

10  provisions survived strict scrutiny and those are --

11          THE COURT:  Was that the voting rights case?

12          MS. WYER:  Yes.  Those are two examples where the

13  Supreme Court recognized the very common sense nature of the

14  restrictions which is very similar to this situation.

15          And the Eighth Circuit has upheld under strict

16  scrutiny a similar provision in these statutes in the <u>Anderson</u>

17  case in the 2014.

18          But the other problem with the question, the premise

19  that there's some sharp dividing line between child

20  pornography and adult pornographers is that the Third Circuit

21  has already recognized that pornography is not a monolithic

22  industry.  And that's one of the problems with having the

23  organizational plaintiffs with -- finding that they have

24  standing in the, with respect to the as applied challenges,

25  because there is no monolithic adult entertainment industry,

Colloquy                                    35

1   especially -- and the Trial Court record showed that.  The

2   Trial Court record made clear that there were two --

3            THE COURT:  Well, but the statute applies very

4   broadly.  I mean, the industry is what it is, but the statute

5   applies to anybody who is producing adult pornography and

6   applies the secondary, so-called producer, who don't actually

7   produce it but distribute it.

8            So I mean the statute is very broad in that sense.

9   But that will get to one of my questions.

10           All right, and Mr. Murray, I have a question for

11   you.  It's number 3 in my last letter.

12           You talked about self certification.  Now I know

13   there's a category of producers who are allowed to self

14   certify.  But you also mentioned industry standards.  Now is

15   there any written industry standards that you can cite that

16   would be an acceptable substitute as far as your clients are

17   concerned for the statute?

18           MR. MURRAY:  Your Honor, we do argue that the

19   certification procedure is clearly a less restrictive

20   alternative.

21           I don't think that Mr. Douglas who is the primarily

22   witness on this testified that there were written standards.

23   What was clear and unanimous by Jeff Douglas, Marie Levine,

24   and Barbara Nitke, universally the adult film industry always,

25   long before 2257, and continuing to the present, always

Colloquy                           36

1    checked IDs and got model releases and kept IDs to prove and

2    to show that their performers were over 18, and they've always

3    kept them and that's an industry standard, that continues --

4    and the --

5               THE COURT:  But is it in writing anywhere?

6               MR. MURRAY:  No, but it doesn't need to be in

7    writing, Your Honor, in order for this to be an acceptable

8    less restrictive alternative because think about it.  The --

9    if Congress had permitted all commercial producers, legitimate

10   commercial producers like my plaintiffs, to instead of the

11   burdens of this statute, certifying to the Attorney General in

12   writing yes, we keep and maintain identification of every one

13   of our performers pursuant to our industry standards, the

14   name, the address, their age, and here's where we keep them,

15   here's our name and this is who we are.

16              Now remember, if they said something along those

17   lines and it was false, that would be a violation of 18 U.S.C.

18   Section 1001, making a false statement.

19              THE COURT:  Well, I'll come back to that.

20              MR. MURRAY:  Much like --

21              THE COURT:  Well --

22              MR. MURRAY:  -- and so why isn't that just as

23   effective as 2257?  Because 2257 depends upon --

24              THE COURT:  Well, suppose I were to conclude in this

25   case that if the Free Speech Coalition, which is the named

1    plaintiff, adopted industry standards as you just said, that

2    would be a factor that I might find applying strict scrutiny

3    warranting determining that the record keeping provisions of

4    the statute were a unconstitutional burden?  I mean, would

5    your clients accept that or would you let me know about that?

6              MR. MURRAY:  Well, let me --

7              THE COURT:  Or do you think I have no business doing

8    that?

9              MR. MURRAY:  Here's the problem with that.  My

10   clients have no problem.  They maintain the records, they'd be

11   happy to --

12             THE COURT:  But you're saying that.  I don't know,

13   you're speaking for the Free Speech Coalition, but you're not

14   speaking for the entire industry.  And you tell me there is an

15   industry organization and I think that's different than the

16   Free Speech Coalition itself.  And the issue is whether they

17   would adopt written standards that would serve as a lesser

18   restrictive alterative.

19             MR. MURRAY:  Yes.  And I'm sure the Free Speech

20   Coalition would, and I'm sure ASMP would, but here's the

21   problem, Your Honor.

22             That's what happened in <u>Playboy Enterprises</u>.  And

23   you may recall that in that case the problem was the signal

24   bleed.  And the plaintiffs there argued that well, Section 504

25   of the Act provides that if a customer asks you to scramble

1   the television channel, then you must do so.  And it was

2   argued that that was a less restrictive alternative.

3          The Government says no, no, that doesn't work

4   because nobody ever uses that.  And the District Court said

5   yeah, but you've got to prove that the reason that nobody uses

6   it is because they know about it and reject it.

7          What if there were adequate notice to the public

8   that they had that option.  And the Government -- and the

9   District Court and the Supreme Court affirmed it, said that

10  the Government never proved that that wasn't a plausible

11  alternative.

12         Now what the District Court did was it struck the

13  statute down but then -- and enjoined it, but then also

14  directed the plaintiffs to send out notices to all of their

15  customers that they have the right to scramble.  And Playboy

16  Enterprises said fine, they'll do that.

17         Well, here's what the Supreme Court said about that.

18  The Supreme Court said,

19         "The Government finds at least two problems with the

20  conclusion of the District Court.  First the Government takes

21  issue with the District Court's reliance without proof on a

22  hypothetical enhanced version of Section 504.  It was not the

23  District Court's obligation, however, to predict the extent to

24  which an improved notice scheme would improve Section 504.  It

25  was for the Government, presented with a plausible less

1    restrictive alternative to prove the alternative to be

2    ineffective and Section 505 to be the least restrictive

3    available needs.

4            "Indeed, to the extent the District Court erred, it

5    was only in attempting to implement the less restrictive

6    alternative through judicial decree by requiring Playboy to

7    provide for expanded notice in its cable service contracts.

8    The appropriate remedy was not to repair the statute, it was

9    to enjoin the speech restriction."

10           THE COURT:  I read that in your brief.

11           MR. MURRAY:  And so the problem is, Your Honor, yes,

12   and you've asked questions.  If you could tinker with the

13   statute, would that satisfy many if not all of our concerns.

14   The problem is that I don't know that you have the authority.

15   I think that you have to strike it down --

16           THE COURT:  Well, let me --

17           MR. MURRAY:  -- send it back to Congress --

18           THE COURT:  Well, I'm not sure about that.  Let me

19   just ask you, and these are specifically like paragraph 4 in

20   my last letter.

21           Suppose I found the criminal penalties were

22   unnecessary and over broad?  Would your clients find that

23   acceptable?

24           MR. MURRAY:  We'd certainly find it helpful.

25           THE COURT:  Well, all right.  What about voiding the

Colloquy                                    40

1    documentation requirements, that at least the rigorous ones

2    and saying as long -- I mean, I agree with you that it's a

3    factor that it's a crime probably in most states, if not, and

4    also the Federal Government, for anybody to employ a minor to

5    appear in a sexually explicit video, all right?

6            Whether you call it child pornography or I mean,

7    most child pornography, and you may or may not know, but we

8    have a lot of cases of them, they're usually very young

9    children, like under the age of 7 or 8.  And it's really not

10   an issue of having, you know, teenagers, saying 13 and above,

11   although there may be some of that as well, but the most

12   common criminal prosecutions are for the really young

13   children.

14           So, if in recognizing that there still existed -- I

15   mean, it appears to me that the existence of a criminal

16   sanction for employing a minor in one of these is a factor

17   that I can and should consider, right?

18           MR. MURRAY:  Absolutely.

19           THE COURT:  You've argued that.  But the question is

20   that it should go beyond that.  That is should I, if I also

21   said that I accept Mr. Murray's representation that these

22   producers have kept, and he believes they will continue to

23   keep record keeping, then do I find that's a less restrictive

24   alternative which would allow me -- or require me under strict

25   scrutiny, to void the record keeping requirements of the

1    statute, which are very, very specific and detailed.

2            In my view, you know, if you were on behalf of the

3    industry as you put it, were able to provide a written

4    statement of that, I think that would be a factor that might

5    be more likely to persuade me that I should adopt that, at

6    least until Congress acts.

7            One of the problems I have, to be candid with you,

8    as I think about this, is that if I were to declare, you know,

9    let's say, the day I sign this as unconstitutional and is void

10   and everything else, that some damage could be caused to some

11   producers who might be encouraged to hire teenagers to appear

12   in some of these movies and take a risk that they're not gonna

13   get prosecuted, that they know that child pornography is

14   almost always limited to the 6 and 7 year olds, or even

15   younger, and that teenagers are fair game for so-called adult

16   pornography even though they're not adults because of all the

17   distribution and advertising about teens, and we saw that in

18   the record of this case, how so many producers talk about

19   having teens as their performers.  And anybody who knows what

20   the law is, that means they're at least 18 or 19, that if they

21   were 13 to 17, they're teens but they're not legally allowed

22   to perform.

23           But if I were to declare this statute void as of a

24   certain day, that could mean an influx of teenagers as

25   performers, which in my view would be injurious and I think

1    that Congress would certainly, the record is clear that

2    Congress did not intend such a thing, and that's one of the

3    reasons why they adopted all these rules.

4           So, then that gets into the age cutoff.  And I've

5    been wrestling with this, and that's one of the reasons one of

6    the questions I asked was whether there were any settlement

7    discussions between you and the Government, because it would

8    seem to me that given strict scrutiny, that both of you ought

9    to be interested in coming to some reproach also to -- the

10   promulgation of an industry standard that was less burdensome

11   but would still protect against the teenagers, that is people

12   13 to 17, being enticed by money or lack of a job or their

13   parents in some cases, to start becoming performers in

14   pornographic movies.

15          Okay, please.

16          MR. MURRAY:  A number of things.  First of all, the

17   testimony of every plaintiff was unanimous.  They condemn it,

18   they would never hire anybody under 18.  The industry, to the

19   extent that it is homogeneous, and there is an homogenous

20   industry, is totally against it.

21          They even put out rewards, you might remember,

22   Judge.  The Free Speech Coalition puts out rewards for tips

23   that are brought to their attention which they can turn over

24   to law enforcement if anybody observes some minor appearing in

25   a sexually explicit film.

Colloquy                                43

1          The penalties for the child pornography prosecution

2    is astronomically higher than the penalty for the 2257.  2257

3    is only up to five years --

4          THE COURT:  Well, you're right about that, but it's

5    a fact that most child pornography prosecutions are really for

6    young children.  You're right the law applies to anything

7    under 18, but those are not the child pornography cases that

8    judges see in Court.

9          MR. MURRAY:  Well, Your Honor, all I can --

10         THE COURT:  But there are, you know, what the

11   industry does is it boasts a lot of these movies, the

12   attraction of them is about teens, and the record of the case

13   clearly established that producers recognized that youthful

14   looking performers sell more videos.  That is a fact that I

15   found that was not disturbed on appeal.

16         MR. MURRAY:  Youthful looking adult performers

17   though, Your Honor, and --

18         THE COURT:  Youthful looking 18 or over.

19         MR. MURRAY:  Yes, yes.  As a matter of fact, one of

20   the questions you asked is whether there should be a notice on

21   the material that everyone's over 18.

22         I would direct your attention to Marie Levine's

23   testimony, June 5th I think was the date of her testimony, at

24   pages -- I'll give you the pages in a minute.  But she

25   specifically was asked those questions, long before 2257, even

1    as to the so-called teen porn.  Every producer universally and

2    always puts on, in that case the box cover or the DVD,

3    whatever the form is, "all models are over 18."

4              So that one of your questions was well, about

5    somebody receiving or downloading, would they have to worry

6    about the performers being under 18?  No, because the industry

7    standard there again is they always put that on there --

8              THE COURT:  Well, this is just verbal -- you're

9    right, there was verbal testimony about this, and but I don't

10   mean to be repetitive.  What I don't quite understand about

11   your argument is you keep talking about the industry standards

12   but there seems to be a reluctance to put them in writing so

13   that at some point --

14             MR. MURRAY:  No --

15             THE COURT:  It's like the AICPA, you know, Certified

16   Public Accountants --

17             MR. MURRAY:  We can put them in writing --

18             THE COURT:  What?

19             MR. MURRAY:  They can easily be put in writing.

20             THE COURT:  Well, I would like to know whether your

21   clients would authorize you to do that and that would be an --

22   and I could consider that as a less restrictive alternative.

23             MR. MURRAY:  Sure, I'm happy to get that authority

24   and I have no doubt that they would --

25             THE COURT:  All right, well, I would be interested

Colloquy                                          45

1   in your doing that.

2           Okay, all right, Ms. Wyer, your turn.

3           MS. WYER:  Your Honor, the problem here is that

4   there is no monolithic or homogenous adult industry, and that

5   is clear from the evidence at trial, that there are these --

6   there's thousands and millions of supposedly adult film images

7   and films and videos that are put up by anyone and a ruling

8   that assumes that there is some industry standard just creates

9   a huge loophole.

10          THE COURT:  Well, let me be specific.  Suppose Mr.

11  Murray comes back with a proposed industry standard as I have

12  requested that he consult with his clients about.  And you

13  have a chance to comment on it and whether you agree or not,

14  let's say that after a discussion on this, that I come up with

15  a standard and I consider that, that's within the ambit of the

16  remand to me.  And I void the statute as to producers who

17  agree in writing to adhere to this statute.  But the statute

18  remains as to a producer that doesn't adhere to it.

19          Now, is that acceptable to the Government as a less

20  restrictive alternative under strict scrutiny?

21          MS. WYER:  No, Your Honor, because there's no

22  enforcement mechanism for the standard --

23          THE COURT:  Well, there is, if they violate the

24  standard they can be prosecuted criminally for employing a

25  performer under the age of 18.

1              MS. WYER:  But Your Honor, the whole purpose of

2    these requirements is that they serve as a prophylactic

3    measure to make sure that age verification occurs before

4    the --

5              THE COURT:  Well, that would be part of the

6    standard.  Mr. Murray says they do that already.  They're

7    sure, they get some satisfaction, but it's about -- they

8    satisfy themselves.  There's some subjectivity to it, and I

9    agree with you, you've argued that some teenager who was after

10   the money could get a phony birth certificate or they get a

11   phony passport, there are a lot of possibilities to people

12   today.  But listen, that's why we have thousands of criminal

13   cases in our country every year because we have laws about

14   crime but people still go about committing crimes.

15             So there are probably going to be some adult

16   producers who violate the law, all right?  But they're running

17   a risk of going to jail, just like somebody who shoplifts or

18   murders somebody, you know, runs the risk of going to jail.

19   You know, society is not perfect.

20             Now, Congress went to a lot of effort to draft this

21   statue, but the Third Circuit has now set that it's subject to

22   different standards that are very hard to meet.

23             So one alternative that I have to consider is a less

24   restrictive alternative.  If the Third Circuit felt that this

25   statute on its face was unconstitutional, I think there's some

Colloquy                                    47

1  chance they would have said that instead of remanding it.  But

2  they specifically remanded it for me to consider less

3  restrictive alternatives because that's part of the strict

4  scrutiny.

5          So I think I've got to go through this dialogue.

6  Now if you've got a case that says I'm wrong, I'll read it and

7  I'll be -- I'll think about it, but answer my question.  Thank

8  you.

9          MS. WYER:  Thank you, Your Honor.

10         There's two issues here.  There's the organizational

11 plaintiffs and there's the other plaintiffs.

12         With respect to the individual plaintiffs who have

13 their own production that we have seen presented at trial, I

14 would strongly steer the Court away from this certification

15 idea, and if the Court really is compelled to look for a less

16 restrictive alternative, we would prefer to be frank and

17 honest.  We would prefer that the Court hold the statute

18 unconstitutional as applied to depictions of these performers

19 who are everyone and those depictions of these producers for

20 everyone in the --

21         THE COURT:  But wait, Mr. Murray went through, in

22 his brief he went through a list of possible less restrictive

23 alternatives.  And you rejected everyone of them in your

24 brief.

25         MS. WYER:  Yes, Your Honor, and I have explained

1    here why we thought the age, the age cutoff was not really

2    less burdensome, that at the same time if the Court were going

3    to choose among those, that is the one that the Government

4    would urge the Court to do on an as applied basis as applied

5    to these individuals --

6              THE COURT:  And what do you think the age cutoff

7    should be, 30?

8              MS. WYER:  That seems to be what the Third Circuit's

9    opinion is --

10             THE COURT:  You think I have the power to do that?

11             MS. WYER:  Yes, we do, Your Honor, because the -- in

12   a facial -- I mean, an as applied challenge is looking at the

13   individual plaintiffs, and there are, for example, the breadth

14   of remedy in an as applied challenge is to find something

15   unconstitutional in a particular case.  And what the Court's

16   goal is, is to enjoin only the unconstitutional applications

17   of a statute while leaving other applications in force.

18             This is -- for example, the Third Circuit's 2016

19   opinion in Constitution Party of Pennsylvania 824 F.3d 386

20   says that it's the breadth of the remedy in the as applied

21   challenge that is the important factor.

22             Now, when you're looking at these organizational

23   plaintiffs, the problem with them being plaintiffs in the as

24   applied challenge is that they -- the participation of the

25   members is still necessary in an as applied context.

1          The plaintiff has not cited any strict scrutiny

2     analysis by the Supreme Court where the challenge was an

3     applied challenge.  Those are all facial challenges that the

4     plaintiff has identified.

5          In an as applied challenge, the Third Circuit's

6     opinion in the Binderup decision, 2016 Binderup decision

7     states the well settled principle that unlike a facial

8     challenge, an as applied challenge does not contend that the

9     law is unconstitutional as written but that its application to

10    a particular person under particular circumstances is

11    unconstitutional.

12         And when you're looking at remedies, the Court's,

13    the Supreme Court's decision in Booker did something similar

14    where it held the sentencing guidelines unconstitutional as

15    applied to the plaintiff in certain respects, leaving most of

16    the guidelines intact but simply doing away with one part of

17    it and --

18         THE COURT:  That's a very unusual case that I think

19    is a so-called one-stop case.  I don't think that that problem

20    -- that resolution is really applicable in a First Amendment

21    issue.  It's an imaginative argument though.

22         MS. WYER:  Well, Your Honor, for example, the Boddie

23    v. Connecticut decision, the Court --

24         THE COURT:  Which one is this?

25         MS. WYER:  It's a 1971 Supreme Court case, Boddie v.

Colloquy                                                    50

1    <u>Connecticut</u>, B-O-D-D-I-E, where the statute at issue was a

2    state requirement that people pay for their divorce

3    proceedings, and that was a class action and the Supreme Court

4    held that it was unconstitutional only as applied to the

5    class, which were indigents who could not pay.

6           So it held the statute unconstitutional only as

7    applied to the plaintiffs who in that situation happened to be

8    an entire class, but it did not invalidate the requirements as

9    a whole.  And it did not invalidate any aspect of the

10   requirements other than that one requirement that they pay a

11   fee.  It didn't simply invalidate divorce proceeding statutes

12   on their face.

13          THE COURT:  Let me just get a brief answer to

14   question number 6.  And that is, changes in technology since

15   the statute was enacted and possibly changes in public taste

16   or community standards, are they at all relevant, and if so,

17   should the factual record be open for testimony on these?

18   Mr. Murray, any viewpoints on that?

19          MR. MURRAY:  Well, Your Honor, I think we put in a

20   lot of evidence.  It's four years old, the 2013 we did the

21   trial, we put in all of the evidence of what the technology

22   was currently and how it applied to current technology.  I

23   don't think that technology has changed that much since 2013.

24   And to the extent that it has changed, it is similar to the

25   type of technology that we tried the case on back in 2013.

Colloquy                                        51

1          So I don't think -- I can't think of anything in

2    particular that is materially different technologically --

3          THE COURT:  Well, 2013 is certainly a lot different

4    than -- when was the statute passed, 19 --

5          MR. MURRAY:  Well, originally 1988 but ultimately it

6    didn't go into effect until '95 and then it was amended in

7    '08, I think, if I'm not mistaken, when they added the

8    simulated sex --

9          THE COURT:  Right.

10          MR. MURRAY:  But I thought, Judge, that we did try

11    to keep, try to update the situation as of 2013 when we tried

12    the case instead of as of 1995.  And so I think the record is

13    pretty good on how the statute affects --

14          THE COURT:  What about changing taste or community

15    standards?

16          MR. MURRAY:  Well, I'm not sure how that's relevant

17    necessarily.

18          THE COURT:  Okay, I just wanted to ask.  Government,

19    do you have any views on that?

20          MS. WYER:  Your Honor, in this case we agree that

21    those kinds of issues I think were present in the Macaws case

22    because the terminology used in that statute whereas here

23    we're only talking about the statutory definition of child

24    pornography as it was imported into the age verification

25    standards and there's no similar issue of community standards

Colloquy                           52

1    here.

2            The technology, I think that already was highlighted

3    in the trial and that's one reason that it's clear that there

4    is no monolithic adult film industry that you can speak of.

5            And again, going back to organizational standing and

6    Your Honor's notion of industry standards, we had Barbara

7    Alper here in the trial who was a member of the ASMP testify

8    that she did not check ages of performers and that's because

9    her goal was, was actually not to do that.

10           And so whatever -- and Mr. Mopsik testified on

11   behalf of ASMP that he could not require his members to do

12   anything.  There's no certification required or you know,

13   certification in the sense of to join these organizations.

14   There's no licensing going on here that you can identify

15   someone as a member of this industry because they engage in

16   certain practices or not.

17           And Mr. Douglas at trial testified similarly that he

18   had no control over his the FFC's members' conduct and he also

19   testified about the way in which the membership of FFC swelled

20   in anticipation of certain litigation decisions with the idea

21   that people -- producers can just join these organizations in

22   order to get the benefit of the Court's decision when they are

23   not really part of any identifiable industry because there is

24   simply no uniform requirements to belong to this.

25           As the Third Circuit said in, when looking at

1    whether the production of sexually explicit depictions was a

2    closely regulated industry, anyone can pick up a camera or a

3    video camera and make these images, and you don't have to be

4    -- there is no defined industry and it's all on the internet

5    and anyone can make that.  There are not --

6                   THE COURT:  All right.

7                   MS. WYER:  -- there's just no way to enforce it.

8    And ASMP and FFC do nothing to monitor or enforce the conduct

9    of their members.  And that's why they should not -- they

10   should be held not to qualify as plaintiffs for the -- to have

11   standing in the as applied claims.

12                  THE COURT:  All right, I'm gonna take a ten-minute

13   recess and then when I come back I'll give you each a chance

14   to sum up or address any of the other questions I didn't

15   specifically cover, but I really think we covered most of

16   them.

17                  I just want to make this observation, Ms. Wyer, you

18   know.  I don't think you agree with me about this but my

19   tentative thought about this is I have to consider less

20   restrictive alternatives under strict scrutiny as part of the

21   analysis.  And in my view, that is a different test than

22   applies under intermediate scrutiny.  It's a more burdensome

23   test.

24                  And since the Government has the burden, at least as

25   to the as applied if not both standards, you know, I'm -- I'll

1    give you another opportunity to revisit your disinterest in

2    introducing any more evidence but I mean my tentative thought

3    is if you're just gonna stand on the record as it stands now,

4    I think I have problems in considering less restrictive

5    alternatives as the record exists, because it was introduced

6    under a different standard.

7              And I'm -- if your point is I've got to go back and

8    look at all that testimony and apply strict scrutiny to it as

9    to whether there are lesser alternatives, it's a different

10   kind of way, and I don't think it was fully addressed in your

11   brief.

12             And you know, if you -- so if that's your position,

13   I'd like to know if you want to file another brief where we go

14   through specific testimony where you thought you met the

15   burden under strict scrutiny, or whether after considering my

16   questions and the argument today, whether you want to reopen

17   the record and introduce some other testimony in an effort to

18   satisfy your burden under strict scrutiny.

19             I'm not gonna ask for your answer today.  One of the

20   questions is gonna be how much time you want to respond.  And

21   the same thing with Mr. Murray, how much time you'd like to

22   get back about the industry standards and things like that,

23   and I'll also allow you to file any supplemental briefs on any

24   additional cases.

25             Okay, so ten-minute recess and then we'll come back.

Colloquy                                            55

1   Thank you.

2            (Off the record at 3:19 p.m.)

3            (On the record at 3:29 p.m.)

4            THE COURT:  Okay.  Thank you, please be seated.  All

5   right, I have to leave shortly.  I have a class to teach at

6   Penn Law School so if I can give each of you four to five

7   minutes, something you haven't said yet that you think is

8   important or how much time you'd like for this further

9   submission or briefing or whatever.

10           Okay, Mr. Murray.

11           MR. MURRAY:  Your Honor, in the --

12           THE COURT:  And I think your arguments have been

13  very good and your briefs were good, and I understand the

14  importance of the case and I'm gonna do my best to sort

15  through it.

16           But I really want another submission on the

17  questions that I've asked about the less restrictive

18  alternative from both of you.  Go ahead.  And I'd like you to

19  at least think about the possibility of some kind of

20  settlement that might be fair to both sides.  Yes.

21           You know, both -- you're both in the same ball park.

22  You both want to protect children against participation in

23  adult pornography.  It's a question of how strict the

24  standards have to be, and this is something to me that could

25  be resolved by a consent decree, and I would have jurisdiction

Colloquy                                    56

1    to review it or to deal with violators that if there wasn't a

2    criminal prosecution, if it was a civil one.  You know, I

3    could see a very fairly simply consent decree that would cover

4    all this.

5                Go ahead, Mr. Murray.

6                MR. MURRAY:  Your Honor, then just in the few

7    minutes left, I just want to focus on a couple more of the

8    lesser restrictive alternatives.

9                THE COURT:  Please.

10               MR. MURRAY:  And one of them is -- and again, if

11   Your Honor is gonna have to rule on the constitutionality of

12   the statute, then obviously these are gonna have to be

13   considered; a law limited to commercial producers is obviously

14   less restrictive.

15               THE COURT:  Well, would that satisfy you?

16               MR. MURRAY:  No, Your Honor.  What I'm saying though

17   is in terms of the -- we'll discuss with the clients what Your

18   Honor is talking about --

19               THE COURT:  And I would like a definition of

20   commercial producers.  Not now but in your submission.  Go

21   ahead.

22               MR. MURRAY:  I'll give it to you.  It's the one that

23   the Government said would be fine with it, for sale or trade.

24               THE COURT:  All right.

25               MR. MURRAY:  And as a matter of fact, by the point

1    is that's a lesser restrictive alternative that makes the

2    statute unconstitutional under strict scrutiny.

3          As a matter of fact, in your own opinion, you said

4    that if you could disagree with the Third Circuit on whether

5    it should be construed to be only limited to sale or trade,

6    Your Honor said that that would fully accomplish the goals of

7    Congress.

8          If that's true, then this statute cannot stand

9    because the Government agrees that that would satisfy the

10   Congress, Your Honor agrees, it's a less restrictive

11   alternative and therefore Your Honor, if you have to write an

12   opinion and deal with these issues, I don't know how the

13   Government escapes the finding that the statutes are

14   unconstitutional in that regard.

15         And what about secondary producers?  Why are they

16   even involved in this law and why wouldn't it be less

17   restrictive to apply it only to primary producers?

18         In order for the Government to meet its burden of

19   proving that they need secondary producers, they would have to

20   prove that even if primary producers comply with 2257, got the

21   IDs, put the label on the expression, that still minors would

22   be used in productions, and the secondary producers would

23   solve the problem, I don't know how.  They couldn't solve the

24   problem.

25         So that's a lesser restrictive alternative.

1          And I won't belabor the points in the brief, Your

2    Honor, other than to say the burden is on the Government.

3    Strict scrutiny is hard to meet as the Supreme Court has said

4    over and over again, it's a rare case where strict scrutiny

5    has been met by the Government.

6          These set of statutes don't meet it.  I understand

7    your concern, Your Honor, about protecting children.  We want

8    to protect children as well, but the fact remains that what we

9    have here is a set of unconstitutional statutes.

10          And I know Your Honor is worried that if it's struck

11   down, somehow or another that's gonna lead to teenage underage

12   persons being in adult productions.  I don't think that would

13   be the case.  I think the people who would do that are the

14   same people who are gonna violate the child pornography laws

15   anyway, the same people who aren't gonna comply with 2257.

16   Like you said, there's always gonna be law breakers.  But you

17   know, they've only had nine cases under 2257 since 2002, nine.

18   And they've had thousands of successful child pornography

19   cases where people are sentenced to 10, 15, 20 years in

20   prison.

21          THE COURT:  I'm well familiar with that.

22          All right, Ms. Wyer.

23          MS. WYER:  Your Honor, there are two claims.

24   There's the as applied strict scrutiny claim and there's the

25   facial over-breadth claim.

1           And with respect to the as applied claim, it's

2    important to limit any relief to the plaintiffs before the

3    Court and not provide relief broader than necessary to address

4    the as applied challenge.

5           It's also important to recognize that the plaintiffs

6    are not burdened because none of the plaintiffs produce only

7    purely private depictions, that should not really be part of

8    the analysis when you're talking about an as applied challenge

9    with respect to these plaintiffs.

10           And when you go through these alternatives, we do

11    want to point out that the Government does think that some of

12    these alternatives would really undermine the statute, such as

13    eliminating criminal penalties.  That would basically make the

14    statutes unenforceable and would basically be equivalent to

15    removing the requirements altogether because they would become

16    purely voluntary.

17           And the same is true when you void any requirement

18    to document by keeping records, that simply makes it

19    impossible to verify whether these requirements have been

20    complied with.

21           THE COURT:  How much time do you want, two weeks,

22    three weeks, 30 -- I don't want to rush you.  It's an

23    important case, to get back to me on my questions.

24           Mr. Murray?

25           MR. MURRAY:  Are you looking for more -- I don't

```
                          Colloquy                          60
 1   think I need more briefing.  I'll be happy --
 2              THE COURT:  No, I don't want more briefs but I'm not
 3   gonna foreclose you from citing a case.  But I'd like to know
 4   what your position is on industry standards and if you want to
 5   submit something --
 6              MR. MURRAY:  I'd like three weeks for that so that I
 7   have time to do it.
 8              THE COURT:  Three weeks, done, fine.  Is that all
 9   right with you, Ms. Wyer?
10              MS. WYER:  Maybe four weeks.
11              THE COURT:  Four weeks, fine.  Okay.  So I'd like
12   you, how about within three weeks you'll submit something to
13   each other, or you'll submit the standards and you'll submit
14   whatever you want to do, if anything.  I mean, four weeks, so
15   that will be October 28th, that's a Saturday, so Friday,
16   October 27th, okay?
17              MR. MURRAY:  Yes, Your Honor.
18              MS. WYER:  Yes.
19              THE COURT:  You'll submit something by then.  All
20   right, thank you very much -- what?
21              MS. WYER:  Your Honor, can I clarify exactly what
22   you are wanting in this submission from the Government?
23              THE COURT:  You want me to clarify?
24              MS. WYER:  Yeah, I'm not sure I --
25              THE COURT:  Well, I would like to know -- I'd like
```

Colloquy                    61

1    you to consult with your colleagues or whoever is in charge

2    there now about your unwillingness to present any more

3    testimony.  I think -- I'm gonna tell you, to be honest with

4    you, I'm gonna have trouble finding that you met your burden

5    on the testimony that's in the record.

6              MS. WYER:  But, Your Honor, the point that we've

7    tried to make is that the alternatives that the plaintiff has

8    identified are not equally effective --

9              THE COURT:  All right, well, then that's another one

10   -- you've got the burden --

11             MS. WYER:  -- altogether or relying on --

12             THE COURT:  All right, look, you can disagree with

13   me.  I'm not gonna force you to do it but I'm just telling you

14   that if all you're gonna do is rely on the current record, I'm

15   having -- I thought about this.  I'm gonna have trouble

16   finding if that's narrowly tailored or under strict scrutiny.

17   I'm telling you that right now.

18             So if that's what you want to do, so be it, but

19   don't be surprised if I find you haven't met the burden on as

20   applied.

21             Okay, I don't know what else to say.  I mean, I'm

22   just telling you -- look, this is an important case, and you

23   know, no federal judge, including myself, takes any pleasure

24   out of finding an act of Congress unconstitutional, but I

25   don't think I have a choice, unless you come up with some

1    better testimony about less restrictive alternatives.

2                MS. WYER:  Well, Your Honor, the alternatives that

3    the plaintiffs have identified --

4                THE COURT:  Well, then you submit some --

5                MS. WYER:  -- do not lend themselves to evidence but

6    you can simply --

7                THE COURT:  Then you tell me what you're suggesting.

8                MS. WYER:  -- analyze them and --

9                THE COURT:  Ms. Wyer, I can't continue this right

10   now, okay?

11               MS. WYER:  Thank you, okay, Your Honor, but --

12               THE COURT:  I'm just telling you it's your burden,

13   so don't keep telling me what the plaintiffs do.  It's your

14   burden.

15               All right, thank you very much.  Have a nice day and

16   thank you for coming in.

17               MS. WYER:  Thank you, Your Honor.

18               MR. MURRAY:  Thank you, Your Honor.

19         (Proceeding concluded at 3:39 p.m.)

20                          *  *  *  *

21

22

23

24

25

63

1              **C E R T I F I C A T I O N**

2

3          I, Sandra Carbonaro, court approved transcriber,

4    certify that the foregoing is a correct transcript from the

5    official electronic sound recording of the proceedings in the

6    above-entitled matter.

7

8

9

10   _____

11   SANDRA CARBONARO

12

13   Diana Doman Transcribing, LLC          _____

14   AGENCY                                 DATE

15

16

17

18

19

20

21

22

23

24

25