IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC.,** *et al.* ) | Civil Action No. 2:09-4607 | |
| ) | | |
| Plaintiffs, ) | | |
| ) | **JUDGE MICHAEL M. BAYLSON** | |
| -vs- ) | | |
| ) | | |
| **THE HONORABLE JEFFERSON** ) | **PLAINTIFFS' RESPONSE TO** | |
| **B. SESSIONS,** Attorney General, ) | **DEFENDANT'S PROPOSAL FOR** | |
| ) | **ADDITIONAL DISCOVERY AND THE** | |
| Defendant. ) | **SUBMISSION OF ADDITIONAL** | |
| ) | **EVIDENCE AND SUPPLEMENTAL** | |
| ) | **BRIEFING** | |
| ) | | |

The Third Circuit remanded this case on June 8, 2016 for evaluation of 18 U.S.C. §§ 2257, 2257A under strict scrutiny. On remand, this Court inquired whether the parties wished to re-open the record. *See* Transcript of Hearing, Sept. 28, 2017 (Doc. 257) at 6. The Government declined.[1] On January 25, 2017, after another telephone conference, the Court set a briefing schedule. The briefing was completed on the parties' respective motions for entry of judgment in their favor on Plaintiffs' First Amendment claims on June 8, 2017. On September 28, 2017, this Court held a hearing and heard argument on the parties' motions. (Doc. 257).

At the hearing, the Court offered the Government "another opportunity to revisit [its] disinterest in introducing any more evidence" regarding less restrictive alternatives to 18 U.S.C. §§ 2257, 2257A . (Doc. 257) Tr. at 53-54. At the conclusion of the hearing, the Court reiterated its offer and instructed Government counsel "to consult with your colleagues or whoever is in charge there

---

[1] During a recorded telephone status conference on December 14, 2016, the Government stated that it saw no need for further factual development and found no need to present any additional live testimony. Plaintiffs sought and received leave to supplement the record with enforcement statistics maintained by the Department of Justice. (Doc. 246-1), DOJ Report. On January 13, 2017, during another telephone conference with the Court, the Government reiterated its position that it would be relying on the trial record.

now about your unwillingness to present any more testimony." *Id.* at 60.[2] The Court told the Government that on the current record, it would have difficulty finding that the statutes were narrowly tailored and met strict scrutiny. *Id.* at 61. It went on to note, it would have no choice but to strike the statutes down unless the Government could "come up with some better testimony about less restrictive alternatives," rather than relying on "what plaintiffs do." *Id.* at 61-62.

On Friday, October 20, 2017, the Government sent Plaintiffs a draft of Defendant's Proposal to the Court. Plaintiffs now respond.

**1.     Supplemental Written Discovery**

Rather than heed the Court's advice to "come up with better testimony" and to stop "telling [the Court] what plaintiffs do," the Government proposes that it be permitted to propound additional discovery to the Plaintiffs. Plaintiffs object to the Government's proposed supplemental discovery on several grounds.

    **a.     Proposed Written Discovery Attached to the Government's Proposal**

The written discovery attached to the Government's proposal is both irrelevant and duplicative. But beyond that, given the history of this litigation and the Government's asserted disinterest in introducing more evidence until urged to do so by the Court, it is unfair to now permit the Government to serve more time-consuming and burdensome discovery requests on the Plaintiffs.

Prior to trial, the parties engaged in extensive discovery on the factual issues that the proposed discovery addresses. The Government propounded twenty-four interrogatories, many with

---

[2] The Court also asked Plaintiffs to submit their position regarding written industry standards followed by producers of adult materials to verify the ages of the performers appearing in their expression. (Doc. 257)Tr. at 60. Plaintiffs have filed a separate pleading responding to the Court's request. *See* Plaintiffs' Supplemental Support for Motion for Entry of Judgment Declaring §§ 2257, 2257A and Their Implementing Regulations Unconstitutional Under the First Amendment.

multiple sub-parts,[3] on each of the twelve Plaintiffs, which required each to describe the measures they took to comply with 18 U.S.C. §§ 2257, 2257A and the costs and time they expended in doing so. *See*, Defendant's Second Set of Interrogatories, Interrogatory No. 8 (requiring Plaintiffs to identify all procedures that you and/or your members have employed or currently employ to ascertain or verify the ages of those persons); Interrogatory No. 13 (a)-(f) (inquiring into the number of hours spent on compliance); Interrogatory No. 14 (a)-(f), (inquiring into costs expended by Plaintiffs in compliance).

Additionally, the Government propounded twelve requests for production that sought volumes of records and other items. It also propounded 62 requests for admission.[4]

Each of the Plaintiffs answered the Government's interrogatories, collectively produced a large quantity of documents and other materials in response, and responded to the Government's requests for admission.

Following the completion of written discovery, the Government then deposed all twelve Plaintiffs, in addition to other witnesses. The depositions of Jeffrey Douglas, on behalf of the Free Speech Coalition, and Dian Wilson, on behalf of Sinclair Institute, each took close to seven hours; those of David Levingston, Barbara Nitke, and Marie Levine lasted approximately five hours, while others were somewhat shorter, but nonetheless thorough. The deposition transcripts total more than 1,900 pages.

And, of course, each of the Plaintiffs testified thoroughly and completely at trial about their

---

[3] The Government has, therefore, exceeded the limitation set forth in Fed. R. Civ. Pro. 33 (a)(1).

[4] The referenced discovery, i.e., First Set of Interrogatories and Requests for Production, Second Set of Requests for Production, Second Set of Interrogatories, and First Set of Requests for Admission, is attached.

3

compliance with the statutory scheme and the burdens and problems posed by the statutes' demands. Each Plaintiff was cross-examined at length by the Government and questioned by the Court as well.

It is one thing for the Government to offer its own evidence. But it is untenable for the Government–more than a year after remand and after repeatedly declining the opportunity to offer additional evidence–to seek to start the whole case all over again by reopening discovery and subjecting Plaintiffs to a completely unnecessary and oppressively burdensome new round of discovery.

The truth is the Government's proposed discovery is simply a retread of its prior discovery requests and of the evidence adduced at trial. It asks Plaintiffs to provide information on their compliance with the statutes–forms used, labels affixed, records kept, time spent, costs incurred. *See* Interrogatory Nos. 25-30, Defendant's Third Set of Interrogatories.

Nor is there any merit to the suggestion that review of the statutes under a different level of scrutiny requires a new round of discovery. Whether the statutes are subject to strict or intermediate scrutiny, Plaintiffs' testimony describing their expression, the ages of the individuals depicted in their expression, their efforts to comply with the statutes, the burdens compliance imposes on them, and its effects on the creation of their expression, remains the same. The trial record fully and completely contains the factual predicates for Plaintiffs' individual claims to allow this Court to review the statutes under strict scrutiny.

What strict scrutiny does require, however, is for the Government to come forward with evidence demonstrating that the statutes are narrowly tailored to address "'an actual problem" in need of solving," *United States v. Playboy,* 529 U.S. 803, 822-23 (2000), and demonstrating that each of the other less restrictive means identified by the Plaintiffs are not effective alternatives. *Id.* at 813. *See* (Doc. 257) Tr. at 32 (" evidence that producers in the past had employed minors,"); (Doc.

257) Tr. 53-54 (evidence regarding less restrictive alternatives). The Government needs to "stop telling [the Court] what the plaintiffs do," (Doc. 257) Tr. at 62, and, instead, needs to come forward with evidence relevant to the burdens it carries under strict scrutiny–that is, if any such evidence exists.

Finally, the Government asserts that its proposed discovery will "shed light on whether, in fact, any requirements of the current scheme that can be identified as unnecessarily burdensome are expressly imposed by the Statutes themselves or are instead in the implementing regulations, based on the Department's interpretation of the Statutes." Defendant's Proposal at 2.[5] But which obligations are imposed by statute and which by regulation can be determined simply by reading them. And each of the Plaintiffs testified at length about the particulars of those burdens at trial.

### b. Proposed Written Discovery Not Yet Provided

In addition to written discovery attached to its proposal, the Government has indicated that it will seek to serve written discovery, not yet provided, regarding "Plaintiffs' submission of newly-written industry standards that Plaintiff the Free Speech Coalition contends represents standards followed by its members." Defendant's Proposal at 2. But discovery regarding the written industry standards requested by the Court is unwarranted.

Plaintiffs Jeffrey Douglas, Chair of the Free Speech Coalition; Marie Levine, a long-time performer in the industry, and Barbara Nitke, a still photographer on the sets of adult productions in the early 1980s, all testified at trial that adult producers universally checked IDs to verify the ages of their performers and had them fill out model releases, long before the statutes were enforced. (Doc. 220), Douglas at 75; (Doc. 222), Levine at 37-39, 58; (Doc. 223), Nitke at 134-36. The

---

[5] The statutes expressly make violation of the regulations implementing them a criminal offense. *See e.g.* 18 U.S.C. § 2257 (b)(3), (c), (e)(1), (f)(1)-(3), (g).

Government is well aware of this testimony and had an opportunity to fully cross-examine each of these witnesses and offer evidence that refuted it.

At the September 28, 2017 hearing, the Court asked Plaintiffs' counsel:

> [S]uppose I were to conclude in this case that if the Free Speech Coalition, which is the named plaintiff, adopted industry standards as you just said, that would be a factor that I might find applying strict scrutiny warranting determining that the record keeping provisions of the statute were an unconstitutional burden? I mean, would your clients accept that or would you let me know about that?

Tr. at 36-37. Later in the hearing, the Court inquired whether Plaintiffs would consider submitting industry standards in writing and asked that they respond to that request. Tr. at 44-45, 60.

In response to the Court's request, Plaintiffs have provided the Government with the policy adopted by the Free Speech Coalition and have submitted it to the Court. The policy formalizes the industry practice before the enactment of 18 U.S.C. § 2257 and created a form for compliance. But, for now, the adult industry must fully comply with all of the burdens imposed by 18 U.S.C. §§ 2257, 2257A, not with the written adopted policy. *See* Free Speech Coalition Press Release, "FSC Formalizes Long-Standing Age Verification Practices," attached to Plaintiffs' Supplemental Support for Motion for Entry of Judgment. If and when 18 U.S.C. §§ 2257, 2257A are declared unconstitutional or otherwise are no longer in force and effect, the adult industry will, as it always did, adhere to the policy that has now been reduced to writing, as the Court requested. Thus, there is nothing for the Government to discover beyond the written policy itself.

**2.     Supplemental Witness Testimony**:

At the September 28, 2017 hearing, the Court described the type of evidence it considered to be relevant in evaluating the statute under strict scrutiny. Distinguishing producers of child pornography from producers of sexually explicit materials depicting adults, the Court remarked:

> In my mind, there is a difference between producers of adult pornography such as

> plaintiffs. But the question I have is, I mean, and this is one of the reasons I'm curious as to why the Government didn't want to reopen the record, because you have the burden. And if you had evidence that adult pornography producers had on some occasions, and ...I'm not gonna do your homework, that...there was evidence that producers in the past had employed minors despite this statute, that to me, would be relevant.

(Doc. 257) Tr. at 31-32. "Strict scrutiny," the Court said, "requires [it] to ask that question." *Id.* at 32.

The Government now indicates, however, that it wishes to offer testimony in the form of "written declarations"–not about use of minors by adult industry producers–but about the reporting of possible child pornography by Internet Service Providers, the limited resources of those acting on those reports, and the "important function" served by the statutes and regulations in combating the sexual exploitation of children. Defendant's Proposal at 2-3. From its description, the Government's supplemental testimony sounds much like the trial testimony of its expert, Janis Wolak. *See* (Doc. 224 ) Wolak at 23, 27-28, 30-36, 42. The Government has not identified which of the seven less restrictive alternatives proffered by the Plaintiffs, (Doc. 246) Plaintiffs' Brief at 19-28, this evidence is designed to overcome, and it is not at all evident.

But what is evident is that the testimony described by the Government, at the very least, does not address why 18 U.S.C. § 2257A's certification procedure is not an effective alternative, why compliance with industry standards is not an effective alternative, why an age-verification law limited to persons who might reasonably appear to be underage is not an effective alternative, why a law limited to commercial productions is not an effective alternative, nor why a law limited to primary producers is not an effective alternative. Nor does it appear to plug the gaping hole in the Government's case regarding the alleged problem of the use of underage performers in the adult

7

industry.[6] So while the Government now, more than a year after remand, proposes to supplement the evidentiary record at the Court's urging, it appears that the evidence it proposes to add does not address the issues strict scrutiny raises.

Nevertheless, if the Court allows the Government to supplement the record, the new testimony it proposes to add cannot be adduced by written declaration. The expert witness testimony described by the Government–testimony offered by individuals it claims have specialized knowledge, based on facts or data, and offering an opinion on those"facts or data," *See* Fed. R. Evid. 702, 703, and 705– is subject to the procedures afforded by the Federal Rules of Civil Procedure. The Government must first provide a written report that conforms with Fed. R. Civ. P. 26 (a)(2). Plaintiffs are then entitled to depose the expert or experts, Fed. R. Civ. Pro. 26 (b)(4), and challenge that testimony under *Daubert v. Merril Dow Pharm., Inc.*, 509 U.S. 579 (1993), if warranted. The Government's witnesses must then appear before the Court to testify and be cross-examined by Plaintiffs' counsel and answer any questions posed by the Court, as it has done throughout the course

---

[6] *See* (Doc. 257) Tr. at 30-31:

THE COURT: ....[T]he first question I have, Ms. Wyer, is it correct that on the record in this case so far, there's no evidence that any primary producer has ever employed a minor in a sexually explicit video or other production....I'm not talking about child pornography where people go to jail. I'm talking about producers of, who are subject to the statute, who produce sexually explicit videos. Is there any evidence that any one of them has ever used a minor?

The Government's ultimate response to the Court's question was that it did not need "that kind of empirical evidence" to meet its burden, *id.* at 32, and that there was no "sharp dividing line between child pornography and adult pornographers" since there is no "monolithic industry." *Id.* at 34. But that latter claim contradicts the conclusion of the Attorney General's Commission which originally proposed the recordkeeping requirements. Report of the Attorney General's Commission on Pornography at 406 ("[T]he industry of child pornography is largely distinct from any aspect of the industry of producing and making available sexually explicit materials involving adults.").

of these proceedings.[7]

3. **Supplemental Briefing / 4. Proposed Schedule**

Plaintiffs propose the following schedule, should the Court allow additional testimony.

Discovery has long been closed and should remain so.

The Government should be required to submit reports from its proposed expert witnesses within 30 days of the entry of the scheduling order. If Plaintiffs choose to respond with expert testimony of their own, they should submit those reports 30 days after receiving the Government's expert reports.

The deadline for taking depositions of the experts should be set 45-days after Plaintiffs' expert reports are due. The case should then be set for hearing. Given Plaintiffs' proposed schedule, subject to the Court's availability, the hearing should be set on a date in March 2018.

If the Court finds further briefing necessary, it can set the briefing schedule after the hearing.

Respectfully submitted,

/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio 44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)

---

[7] Plaintiffs should also be afforded the opportunity to offer evidence of their own in response, if they so choose.

JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
  &amp; RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                    /s/ J. Michael Murray
                    J. MICHAEL MURRAY (0019626)
                    LORRAINE R. BAUMGARDNER (0019642)
                    BERKMAN, GORDON, MURRAY & DeVAN

                    KEVIN E. RAPHAEL (72673)
                    J. PETER SHINDEL, JR. (201554)
                    PIETRAGALLO GORDON ALFANO BOSICK
                     & RASPANTI, LLP

                    Attorneys for Plaintiffs