## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREE SPEECH COALITION, INC.,** *et al.* | ) | **Civil Action No. 2:09-4607** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE MICHAEL M. BAYLSON** |
| -vs- | ) | |
| | ) | |
| **THE HONORABLE JEFFERSON B.** | ) | |
| **SESSIONS,** Attorney General, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S DECLARATIONS, SUPPLEMENTAL BRIEF, AND PROPOSED FINDINGS OF FACT

J. MICHAEL MURRAY (0019626)
jmmurray@bgmdlaw.com
LORRAINE R. BAUMGARDNER (0019642)
lbaumgardner@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (Facsimile)

KEVIN E. RAPHAEL (72673)
KER@Pietragallo.com
J. PETER SHINDEL, JR. (201554)
JPS@Pietragallo.com
PIETRAGALLO GORDON ALFANO BOSICK
      & RASPANTI, LLP
1818 Market Street, Suite 3402
Philadelphia, Pennsylvania 19103
(215) 320-6200
(215) 981-0082 (Facsimile)

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE GOVERNMENT HAS FAILED TO SATISFY ITS BURDEN OF
      DEMONSTRATING THE ACTUAL PROBLEM THE STATUTES WERE
      ENACTED TO ADDRESS–THE USE OF MINORS IN THE PRODUCTION OF
      ADULT FILMS–AND FURTHER, HAS FAILED TO SATISFY ITS BURDEN OF
      DEMONSTRATING A DIRECT CAUSAL LINK BETWEEN THE
      RESTRICTIONS IMPOSED BY THE STATUTES AND THE INJURY TO BE
      PREVENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   THE GOVERNMENT HAS FAILED TO SATISFY ITS BURDEN OF
      DEMONSTRATING 18 U.S.C. §§ 2257, 2257A EMPLOY THE LEAST
      RESTRICTIVE MEANS AMONG AVAILABLE, EFFECTIVE ALTERNATIVES
      TO PROTECT AGAINST THE USE OF MINORS IN SEXUALLY EXPLICIT
      MATERIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    The Government Has Failed to Produce Evidence Establishing That The
            Criminal Laws Prohibiting and Punishing Child Pornography Are Not
            Effective Alternatives to the Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    The Government Has Failed to Produce Evidence Establishing That a
            Certification Procedure like That Contained in 18 U.S.C. § 2257A (h) and
            Practices Used to Protect Intellectual Property Rights Are Not Effective
            Alternatives to the Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    The Government Has Failed to Produce Evidence Establishing That a
            Recordkeeping Law Limited to Commercial Productions Is Not an Effective
            Alternative to the Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      D.    The Government Has Failed to Produce Evidence Establishing That a
            Recordkeeping Law Limited to Primary Producers of Sexually Explicit
            Expression Is Not an Effective Alternative to the Statutes. . . . . . . . . . . . . . . . 12

      E.    The Government Has Failed to Produce Evidence Establishing a
            Recordkeeping Law Enforced by Administrative Sanction Is Not an Effective
            Alternative to the Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF CONTENTS (cont'd)**

Page

F.      The Government Has Failed to Produce Evidence Establishing That an Age-Verification Law Limited to Persons Who Might Reasonably Appear to Be Underage Is Not an Effective Alternative to the Statutes. . . . . . . . . . . . . . . . . . 14

III.      THIS COURT MUST EVALUATE THE STATUTES' OVERBREADTH UNDER STRICT SCRUTINY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.      PLAINTIFFS OBJECT TO THE SUBMISSION OF EVIDENCE BY WRITTEN DECLARATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

Page

## **CASES**

*Am. Civil Liberties Union v. Ashcroft*, 542 U.S. 656 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Am. Civil Liberties Union v. Mukasey,*
    534 F.3d 181 (3rd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011). . . . . . . . . . . . . . . . . . . . . . 3, 18

*Conchatta Inc. v. Miller*, 458 F.3d 258 (3rd Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Free Speech Coalition, Inc. v. Attorney General of U.S.,*
    677 F.3d 519 (3rd Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

*Free Speech Coalition, Inc. v. Attorney General,*
    825 F.3d 149 (3rd Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Free Speech Coalition, Inc. v. Holder,*
    957 F. Supp. 2d 564 (E.D. Pa. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pickering v. Board of Ed. of Township High School, Dist.*
    *2015, Will Cty.*, 391 U.S. 563 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Puerto Rico v. Franklin California Tax-Free Tr.,*
    136 S.Ct. 1938 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reed v. Town of Gilbert,*
    135 S.Ct. 2218 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,*
    502 U.S. 105 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

iii

**TABLE OF AUTHORITIES (cont'd)**

Page

*United States v. Alvarez*, 567 U.S. 709 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 17

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

*United States v. Stevens*, 559 U.S. 460 (2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Treasury Employees Union*,
    513 U.S. 454 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

## CONSTITUTIONAL PROVISIONS

United States Const., amend. I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

## STATUTES, RULES AND REGULATIONS

18 U.S.C. § 2252. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2252A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 2256 (5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 2257. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 10, 16

18 U.S.C. § 2257 (a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 2257(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257 (e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 2257 (f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 2257A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 16

18 U.S.C. § 2257A (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iv

## TABLE OF AUTHORITIES (cont'd)

Page

18 U.S.C. § 2257A (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257A (e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

18 U.S.C. § 2257A (h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

28 CFR § 75.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 43 (a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Evid. 801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

### <u>MISCELLANEOUS</u>

*Attorney General's Commission on Pornography, Final Report,*
    *July 1986,* p. 604-09.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. Bhattacharya, "Microsoft launches tool to rid Internet of
    child porn," money.cnn.com/2015/07/15/technology/microsoft-
    photodna/index.html (July 15, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

L. Chang, "The end of child pornography? Google's new
    web crawler could help," digitaltrends.com/web/
    google-web-crawler-blocks-child-porn/ (May 1, 2016). . . . . . . . . . . . . . . . . . 7

E. Dwoskin, "Google wants more humans to help solve the problem of
    child exploitation on YouTube," The Washington Post (Dec. 5, 2017). . . . . . . . . . . . . . . 7

"The Scourge of Child Pornography: Working to Stop the Sexual
    Exploitation of Children," www.fbi.gov/news/
    stories/the-scourge-of-child-pornography (April 25, 2017).. . . . . . . . . . . . . . . . . . . 2, 8

H. Tsukayama, "Google, Microsoft modify searches to exclude more
    child pornography results," The Washington Post (Nov. 18, 2013). . . . . . . . . . . . . . . . 7

**Introduction**

After briefing was complete on the First Amendment issues remanded by the Third Circuit, this Court heard oral argument in support of the parties' respective positions. During oral argument, this Court posed this question to Government counsel:

> [I]s it correct that on the record in this case so far, there's no evidence that any primary producer has ever employed a minor in a sexually explicit video or other production?

Transcript of Hearing, Sept. 28, 2017 (Doc. 257) at 30. It further clarified: "[D]o we have in evidence that in the record of this case that any one producer actually used a minor? That's the question." *Id.* at 31.

Government counsel was unable to identify any such evidence. *Id.*

Toward the end of the argument, this Court offered that since the Government had the burden of establishing the constitutionality of the statutes, it was going to give the Government another opportunity to introduce more evidence. *Id.* at 54. When Government counsel requested clarification, this Court explained that "on the current record," it would have trouble finding the Government had met its burden of showing that the statutes were narrowly tailored and that the less restrictive alternatives proposed by Plaintiffs were not effective. *Id.* at 60, 61-62. The Court instructed Government counsel to consult with her colleagues about supplementing the record. *Id.* at 60.

Following the argument, the Government submitted its proposal for supplementing the record. Defendant's Proposal for Additional Discovery and the Submission of Additional Evidence and Supplemental Briefing (Doc. 261). This Court granted the Government's request to file written sworn declarations, "provided they [were] relevant on the concept of strict scrutiny, and contain specific proposals or requests that the Court should adopt in fashioning a final decree...." Order, (Doc. 262), November 2, 2017, ¶2.

The Government has filed three declarations. (Doc. 265-2, 265-3, 265-4)

The two and a half-page Declaration of Janine Johansen, a Department of Justice paralegal, reports on the results of a Google search she conducted for 2257 compliance software and tools. (Doc. 265-4). She lists the urls for five websites advertising web-based applications, recordkeeping services, and record management software for 2257 recordkeeping. *Id.* at ¶¶ 3-7. Johansen says nothing about the quality or reliability of these products or services.

The two-page Declaration of SSA Jackie Dougher describes her background and position as the FBI liaison to the National Center for Missing and Exploited Children ( NCMEC), (Doc. 265-3) at ¶¶2-3, states that child pornography can be found on a variety of platforms on the Internet,[1] and offers that law enforcement has made investigations of child pornography a priority, but has not eliminated it. *Id.* at ¶ 4.

The third Declaration is from John Shehan, Vice President of the Exploited Children Division of NCMEC. It describes his credentials and the work of his non-profit employer, NCMEC, *id.* at ¶¶ 1-9, and provides information about reports received from NCMEC's CyberTipline, a national online clearinghouse for tips and leads about child exploitation that gathers reports from the public and from electronic service providers about suspected child pornography and other crimes. *Id.* at ¶¶ 10-16.

The ten pages of written declarations do not cure the deficiencies in the record recognized by this Court. They offer no evidence that producers of adult materials have used minors in the production of their material, Tr. (Doc. 257) at 30, nor do they provide any evidence demonstrating

---

[1] *But see* "The Scourge of Child Pornography: Working to Stop the Sexual Exploitation of Children," April 25, 2017, www.fbi.gov/news/stories/the-scourge-of-child-pornography: "Typically, [child pornographers' crimes] are carried out on the so-called dark web–where they can remain anonymous–and their actions are unknown to spouses, families, and associates."

2

that the statutes are the least restrictive means of preventing the appearance of minors in sexually explicit material. *Id.* at 54.

Instead, the Government has used the submission of these spare declarations as a platform to file an additional 54-pages of argument in the form of a supplemental brief and proposed findings of fact. But argument–new or re-calibrated–cannot make up for a lack of evidence.

**I. THE GOVERNMENT HAS FAILED TO SATISFY ITS BURDEN OF DEMONSTRATING THE ACTUAL PROBLEM THE STATUTES WERE ENACTED TO ADDRESS–THE USE OF MINORS IN THE PRODUCTION OF ADULT FILMS–AND FURTHER, HAS FAILED TO SATISFY ITS BURDEN OF DEMONSTRATING A DIRECT CAUSAL LINK BETWEEN THE RESTRICTIONS IMPOSED BY THE STATUTES AND THE INJURY TO BE PREVENTED.**

In their Brief in Support of Plaintiffs' Motion for Entry of Judgment (Doc. 246) at 6-14, Plaintiffs set forth the authority describing what evidence the Government must produce to satisfy its burden of demonstrating that a content-based restriction of speech serves a compelling governmental interest: the evidence must demonstrate that "an 'actual problem' in need of solving" exists, and it must demonstrate that there is "a direct causal link" between that problem and the expression sought to be regulated. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 799-800 (2011); *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 819-20 (2000); *United States v. Alvarez*, 567 U.S. 709, 725 (2012).

Noting that it believed there was a difference between child pornographers, who intentionally exploit children, and producers of sexually explicit expression depicting adults like the Plaintiffs, this Court told Government counsel:

> [T]he question I have is, I mean, and this is one of the reasons why I'm curious as to why the Government didn't want to reopen the record, because you have the burden. And if you had evidence that adult pornography producers had on some occasions, and I'm not gonna do my homework for you–I'm not gonna do your homework, that there was a likelihood that producers in the past–that there was evidence that producers in the past had employed minors despite this statute, to me that would be

3

relevant.

And the fact that there's nothing in the record about that is also relevant. I think strict scrutiny requires me to ask that question.

Tr. (Doc. 257) at 32.

Plaintiffs' evidence, in fact, affirmatively demonstrated that producers of adult materials, long before these statutes were enforced, followed a uniform practice of verifying the ages of their performers by examining photo identification to assure they were adults.  Tr. (Doc. 220), Douglas at 77; Tr. (Doc. 222), Levine at 37-39, 58; Tr. (Doc. 223), Nitke at 134-36. The record, as supplemented, contains not a jot of evidence that calls that testimony into question.

The Government's declarations say nothing about the use of minors by the adult industry. The Department of Justice's own report to Congress, attached as an exhibit to Defendant's Supplemental Brief, provides insight as to why they do not. The National Strategy for Child Exploitation and Interdiction, A Report to Congress - April 2016, U.S. Dept. Of Justice (Doc. 265-5). The DOJ Report, which sets forth key findings of its threat assessment regarding criminal offenders who produce child pornography, does not mention, much less discuss, the use of minors–negligently, recklessly, or intentionally–by producers of sexually explicit adult films or photographs. *Id.* at 71-74.

## II.   THE GOVERNMENT HAS FAILED TO SATISFY ITS BURDEN OF DEMONSTRATING 18 U.S.C. §§ 2257, 2257A EMPLOY THE LEAST RESTRICTIVE MEANS AMONG AVAILABLE, EFFECTIVE ALTERNATIVES TO PROTECT AGAINST THE USE OF MINORS IN SEXUALLY EXPLICIT MATERIAL.

In their Brief in Support of Plaintiffs' Motion for Entry of Judgment (Doc. 246) at 18-28, Plaintiffs also set forth the authority regarding the Government's burden under strict scrutiny to demonstrate that the challenged statutes employ the "least restrictive means among available, effective alternatives." *Alvarez*, 567 U.S. at 729 *quoting Am. Civil Liberties Union v. Ashcroft*, 542

U.S. 656, 666 (2004). *See also  Am. Civil Liberties Union v. Mukasey*, 534 F.3d 181, 198 (3rd Cir. 2008).

Plaintiffs identified several less restrictive means that would serve as effective measures in preventing the use of minors in sexually explicit productions. Brief in Support of Plaintiffs' Motion for Entry of Judgment (Doc. 246) at 19-28. This Court stated that, as the record stood, it would "have problems" finding the Government had met its burden of showing that the statutes were the least restrictive means. Tr. (Doc. 257) at 54. Failure to demonstrate that any one of the less restrictive alternatives identified by the Plaintiffs would not be effective is fatal to the Government's case. It, however, has failed to satisfy its burden with regard to all of them.

A.    **The Government Has Failed to Produce Evidence Establishing That The Criminal Laws Prohibiting and Punishing Child Pornography Are Not Effective Alternatives to the Statutes.**

The Government's theory in support of the statutes has never been that they serve as deterrents to the type of predator described by its expert, Janis Wolak–the coaches, family members, youth leaders who produce the vast bulk of child pornography intentionally and deliberately. Rather, its theory has always been that the statutes are needed to fill a supposed "gap" in the criminal laws to prevent the use of minors "by those who might otherwise take advantage of or rely on the inherent difficulties in determining age based on appearance alone." Defendant's Brief (Doc. 249) at 24–25. Its focus has, therefore, been on the potential use of minors by producers of adult films. Defendant's Memorandum in Support of Motion to Dismiss (Doc. 17) at 34. So it is with regard to those producers, that the Government must come forward with evidence demonstrating that the severe penalties exacted by the laws prohibiting the production of child pornography are ineffective in assuring that adult film producers do not use minors in their productions.

This record does not bear out that contention, however. Rather, it shows that the laws in the

federal criminal code and in the criminal codes of all 50 states imposing substantial prison terms, fines, and other penalties for producing, possessing, and distributing child pornography stand as extremely effective deterrents against the use of minors in sexually explicit productions and exert a powerful influence in prompting producers of sexually explicit adult content to verify that the performers depicted in their expression are all adults. Jeffery Douglas, the Chair of the Free Speech Coalition, testified that given the 15-year mandatory minimum sentence for using a minor in sexually explicit productions, it would be "utterly mindless" to risk using an underage performer. *See* Plaintiff's Reply Brief (Doc. 252) at 17-18; Tr. (Doc. 220), Douglas at 83-84.

Again, the Department of Justice's own report to Congress regarding its efforts to fight exploitation of children, its assessment of the threat, and its goals and objectives is revealing. DOJ Report (Doc. 265-5). There is nary a word about 18 U.S.C. §§ 2257, 2257A in the DOJ's 155-page review of its efforts to combat child exploitation, nor in its outline of goals and objectives in fighting it. *Id.* at 18-68, 80-96.

The only mention of 18 U.S.C. §§ 2257, 2257A in the DOJ Report appears in Appendix A, which reflects that between 2011 and 2015, not a single case was filed charging an offense under 18 U.S.C. § 2257 or 18 U.S.C. § 2257A, and a total of three defendants were found guilty of violating 18 U.S.C. § 2257 while not a single person was found guilty of violating 18 U.S.C. § 2257A. *Id.* at 110-11. *Contrast* cases and convictions under the substantive laws criminalizing the distribution of child pornography: 18 U.S.C. § 2252 (between 2011 and 2015, 7,458 cases filed; 7,238 defendants found guilty); 18 U.S.C. § 2252A (between 2011 and 2015, 2,720 cases filed; 2,592 defendants found guilty).

And as a general matter, the Government's evidence has not only failed to demonstrate that the laws criminalizing child pornography are ineffective in deterring its production, but show quite

6

the opposite.

Shehan's Declaration reports that the NCMEC "has experienced a tremendous increase in CyberTipline reports," Shehan (Doc. 265-2) at ¶ 10, which reflects that cooperation by internet service providers and average citizens in helping law enforcement root it out is robust. *See* Testimony of Jeffrey Douglas, Tr. (Doc. 220) at 76 ("In the past, the Free Speech Coalition has offered and provided a cash award for the detection and prosecution, successful prosecution of child pornography."). This is important since "the bulk of child pornography traffic is non-commercial," its production is "clandestine in character," "traffic in child pornography went underground after 1978," and "sexual exploitation of children has retreated to the shadows." *Attorney General's Commission on Pornography, Final Report, July 1986,* p. 604-09. This is as true now as it was in 1986–with child pornographers using encryption, the Dark Net, and other tools that allow them to communicate in closed and highly protected spaces. DOJ Report, (Doc. 265-5) at 71-73, 80, Appx. D. 142.

Shehan's Declaration also shows that members of the technology industry have actively partnered with law enforcement to develop technologies and increase personnel to advance that fight. *Id.* He tells us that companies have voluntarily adopted new technology to locate and remove child pornography from their platforms. Shehan (Doc. 265-2) at ¶ 12.[2] This, Shehan acknowledges, is a factor in the increase of reports to NCMEC's CyberTipline. *Id. See*

---

[2]   *See* L. Chang, "The end of child pornography? Google's new web crawler could help," digitaltrends.com/web/google-web-crawler-blocks-child-porn/ (May 1, 2016); E. Dwoskin, "Google wants more humans to help solve the problem of child exploitation on YouTube," The Washington Post (Dec. 5, 2017); A. Bhattacharya, "Microsoft launches tool to rid Internet of child porn," money.cnn.com/2015/07/15/technology/microsoft-photodna/index.html (July 15, 2015); H. Tsukayama, "Google, Microsoft modify searches to exclude more child pornography results," The Washington Post (Nov. 18, 2013).

https://www.wearethorn.org/blog/cybertipline-reports-child-abuse-imagery/.

Shenan's Declaration, SSA Dougher's Declaration, and the DOJ Report serve as potent evidence that investigation and prosecution of child pornography offenses remains a high priority for law enforcement. The DOJ Report explains that it is "advancing and expanding efforts" to protect children, hold their perpetrators accountable, and provide assistance to victims. *Id.* at 1. Specifically, it states that it is "aggressively confronting evolving threats online by prosecuting those who use the so-called 'Dark Net' in service of child pornography" and working closely with the private sector to prevent the use of technology to shield criminal activity. *Id. See also* Appx. A at 110-11.[3]

That the DOJ's efforts are effective in searching out producers of child pornography and shutting them down is evidenced by a promising set of statistics cited in Shenan's Declaration. He states:

> In 2014, approximately 18% of the reports submitted to NCMEC's CyberTipline by U.S.-based ESPs regarding apparent child pornography involved an individual located in the U.S. In 2015, approximately 6% of the reports and in 2016, approximately 5% of the reports submitted by U.S.-based ESPs concerning apparent child pornography resolved to a U.S. domestic location.

Shehan (Doc. 265-2) at ¶ 13. In the span of three years, reports pertaining to apparent child pornography in a U.S. domestic location were cut by two-thirds.[4]

---

[3]  *See also,* "The Scourge of Child Pornography," *supra* n.1 ("Investigations are conducted in each of the FBI's 56 field offices by Child Exploitation Task Forces, which combine Bureau resources with those of other federal, state, and local law enforcement agencies. Nearly 400 law enforcement partner organizations participate in these task forces and are assisted by FBI intelligence analysts, victim specialists, and subject matter experts. The task forces also work closely with the National Center for Missing & Exploited Children (NCMEC).") The FBI also notes the presence of its legal attache offices in more than 60 countries.

[4] The DOJ's Report to Congress describes the result of two law enforcement operations that resulted in taking more than 200 child sexual exploitation websites offline along with hundreds of other sites sponsoring or facilitating criminal activity, disrupting the activities of tens of thousands

(continued...)

What is completely missing from all of the reports and data is any evidence that adult film producers or photographers have been using minors in any of their works.

**B.    The Government Has Failed to Produce Evidence Establishing That a Certification Procedure like That Contained in 18 U.S.C. § 2257A (h) and Practices Used to Protect Intellectual Property Rights Are Not Effective Alternatives to the Statutes.**

The Government has failed to make the case for why a certification procedure like that set forth in 18 U.S.C. § 2257 (h) cannot apply to depictions of *actual* sexual conduct just as easily as it does to depictions of *simulated* sexual conduct. The statutory certification procedure establishes a way for commercial producers of images–photographers, film producers, website operators, publishers–to verify to the Attorney General that they keep identifiable records containing performers' dates of birth, in lieu of complying with the recordkeeping requirements. The Attorney General, therefore, has specific information from producers regarding records verifying the adulthood of their performers. It satisfies the age-verification goals of the statutes, allowing the Government to readily identify who maintains those records and where they can be found, the purpose of the statutory labeling requirement. *See* Defendant's Supplemental Brief (Doc. 265) at 11-12.

The Government argues that the certification procedure is ineffective as it pertains to depictions of actual sexual conduct because producers of adult materials are not part of a "monolithic" industry. Defendant's Supplemental Brief (Doc. 265) at 6-7. But the certification procedure of 18 U.S.C. § 2257 (h), which Congress found sufficient to verify the ages of the performers in the production of images of *simulated* sexual conduct and lascivious display of the

---

[4](...continued)
of online child pornographers, and the seizure of four million images and videos of child pornography. DOJ Report (Doc. 265-5) at 17.

genitals, is not limited to a "monolithic" industry. In fact, the Government has acknowledged that some of the Plaintiffs, whose work depicts simulated sexual conduct, are already eligible for this certification option as to their simulated sexual images, notwithstanding the fact they do not fit the Government's notion of a "monolithic" industry. *See* Defendant's Brief in Support of Motion for Entry of Judgment (Doc. 249) at 26.

Commercial producers of all expression–depicting actual sexual conduct, simulated sexual conduct, or none at all–must follow certain practices to secure protection of their intellectual property rights in their work. In order to do so, they must obtain valid releases from the persons depicted in their expression–which requires them to verify they are adults who are competent to enter into such releases in order allow the publication and distribution of their work. A procedure like that contained in 18 U.S.C. § 2257A (h), allowing producers of expression depicting actual sexual conduct to send a letter certifying to the attorney general that they keep such records and identifying where the records are located, would accomplish the statutory objectives.

**C.    The Government Has Failed to Produce Evidence Establishing That a Recordkeeping Law Limited to Commercial Productions Is Not an Effective Alternative to the Statutes.**

At the outset of this case, the Government was steadfast in its position that the statutes were limited to commercially produced expression. *See e.g.,* Defendant's Memorandum in Support (Doc. 17) at 26 n.12, 34 ("The Department of Justice–the agency responsible for administering and enforcing the requirements–has clearly stated that the requirements are 'limited to pornography intended for sale or trade,' explaining that § 2257 'speaks in terms of participants in the professional pornography industry.' 73 Fed. Reg at 77456."). It continued to advance that position in the Third Circuit in the first appeal. *Free Speech Coalition, Inc. v. Attorney General of U.S.*, 677 F.3d 519, 538 (3rd Cir. 2012) ("The government counters that, under the doctrine of constitutional avoidance, the

10

Statutes' scope should be narrowly construed as applying only to depictions of actual or simulated sexually explicit conduct *created for sale or trade*....") (Emphasis *sic*).

The Third Circuit rejected that construction, however. It found the Statutes were not susceptible to that limiting construction, but applied to all producers of sexually explicit depictions "regardless of whether those depictions were created for the purpose of sale or trade." *Id.* at 538-39.

After the trial of this matter on remand, this Court noted that it agreed with the Government's contention that the statutes should be construed as being limited to commercial productions. It wrote:

> Based on the factual record now developed, if this Court could analyze the issue on a clean slate, it would endorse the view presented by the government on appeal that depictions made for purely private, noncommercial uses are not—and never were intended to be—captured by the Statutes.

*Free Speech Coalition, Inc. v. Holder*, 957 F. Supp. 2d 564, 597 (E.D. Pa. 2013). This Court went on to note:

> [T]he government's ***proposed construction of "producer," as being limited to one who makes an image intended for sale or trade, would accomplish the goals expressed by Congress—***it would enable the government to impose record-keeping requirements on large-scale industry players, such as pornography film producers and photographers, as well as on niche players and even private individuals who choose to upload their depictions to the internet for public viewing.

*Id.* (Emphasis added). However, acknowledging it was not "interpret [ing the statutes] on a blank slate," and was bound by the Third Circuit's finding to the contrary, the Court determined it was constrained from limiting the statutes to only those images offered for sale or trade. *Id.*

Having advanced the position that the statutes should be construed to be limited to commercial productions–a construction this Court found "would accomplish the goals expressed by Congress"– the Government cannot credibly argue that a recordkeeping law so limited would not be an effective less restrictive means to the statutes as written.

The declarations offered by the Government provide no evidence to the contrary.

11

D.  **The Government Has Failed to Produce Evidence Establishing That a Recordkeeping Law Limited to Primary Producers of Sexually Explicit Expression Is Not an Effective Alternative to the Statutes.**

The Government has also failed to produce evidence demonstrating that a law limited to primary producers would be ineffective. To prove that contention, the Government must come forward with evidence demonstrating that if the laws apply only to primary producers, minors will still be used in the production of sexually explicit expression and that application of the recordkeeping provisions to secondary producers is necessary to eliminate the problem. It has produced no such evidence.

E.  **The Government Has Failed to Produce Evidence Establishing a Recordkeeping Law Enforced by Administrative Sanction Is Not an Effective Alternative to the Statutes.**

The Government has offered no evidence or explanation why the recordkeeping requirements could not be enforced as effectively by administrative sanction as opposed to criminal punishment in the form of prison terms and hefty fines. Instead, the Government engages in a bit of a misdirection: "checking performers' IDs" is not burdensome, Defendant's Proposed Findings of Fact (Doc. 265-1) at ¶¶ 8, 17; the use of third party custodians and technology minimizes the burdens, *id.* at ¶ 19; and the burdens identified with respect to the labeling requirement is based on "a misunderstanding" of the requirements. *Id.* at ¶ 49.

The testimony of every Plaintiff described just how burdensome the requirements are. To find otherwise is to ignore their testimony.

Nor are the burdens simply incremental, as the Government claims. They are substantial and severe. A misstep in keeping the records poses the risk of a five year prison term–even if the misstep involves someone who is obviously and unarguably an adult. The risk they threaten has wiped out Betty Dodson's genital art gallery, chilled Carol Queen from pursuing her collage art, caused Tom

12

Hymes to refrain from using sexually explicit images on his website, and Dave Levingston and Barbara Alper from pursuing important documentary projects.

A good example of the onerous burdens is the labeling requirement, one that the Government champions. 18 U.S.C. § 2256 (5) defines "visual depiction" to include:

> undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format

18 U.S.C. § 2256 (5).

18 U.S.C. § 2257 (a)(1) provides that the statutory requirements apply to "whoever produces any book, magazine, periodical, film, videotape, digital image, digitally- or computer-manipulated image of an actual human being, picture or *other matter which* ...contains one or more *visual depictions*... of actual sexually explicit conduct." (Emphasis added).

Producers of those images:

> shall cause to be affixed to every copy of any matter described in paragraph (1) of subsection (a) of this section, in such manner and in such form as the Attorney General shall by regulations prescribe, a statement describing where the records required by this section with respect to all performers depicted in that copy of the matter may be located. In this paragraph, the term "copy" includes every page of a website on which matter described in subsection (a) appears.

18 U.S.C. § 2257 (e)(1).

Thus, the statutes require David Steinberg, Dave Levingston, Barbara Nitke, and Barbara Alper to affix a label to each visual depiction, which is broadly defined to include undeveloped film and data capable of conversion into a visual image, meaning they must affix a label to each of the thousands of digital photos or images on film they take during their shoots. And if they don't, they are subject to criminal prosecution.

As for the various recordkeeping software and third party alternatives described in Johansen's

13

Declaration, they do not alter the fact that each of the Plaintiffs, as producers, remain individually

liable for any violation of the recordkeeping provision in the event that the software fails or a third

party record keeper fails to keep their records properly.

28 CFR § 75.2 provides:

> (h) A primary or secondary producer may contract with a non-employee custodian to retain copies of the records that are required under this part. Such custodian must comply with all obligations related to records that are required by this Part, ***and such a contract does not relieve the producer of his liability under this part.***

(Emphasis added).

So, if a Plaintiff utilizes any of the tools identified in Johansen's Declaration, and there is a

failure–human, mechanical or otherwise–the Plaintiff is subject to prosecution for violating the law.

18 U.S.C. § 2257 (f)(1).

> **F.      The Government Has Failed to Produce Evidence Establishing That an Age-Verification Law Limited to Persons Who Might Reasonably Appear to Be Underage Is Not an Effective Alternative to the Statutes.**

The Government concedes that an age-verification and recordkeeping law that is limited to

performers under the age of 30 "deserves serious consideration" as an effective, less restrictive

alternative to the statutes. Defendant's Supplemental Brief (Doc. 265) at 2. While repeating its

mantra about the need for a universal scheme and the elimination of subjectivity, it disclaims taking

the position that "minors could be confused for clearly mature adults (in most cases, adults older than

30)." *Id.* at 13. It acknowledges that "this alternative is the one most likely to qualify as a less

restrictive, effective alternative," *id.* at 14, and has offered no evidence showing it would not be

effective.

It appears the Government has thrown in the towel on this point.

Instead, the Government argues that this Court need not strike down the statutes in their

14

entirely, but can remedy their unconstitutionality by "narrowing the Statutes to the production of images showing younger-looking performers." Defendant's Supplemental Brief (Doc. 265) at 20. Essentially, the Government urges this Court to re-write the statutes and implement one of the less restrictive alternatives identified by the Plaintiffs by judicial decree. But the Supreme Court rejected that very strategy in *United States v. Playboy*, 529 U.S. 803, 823(2000).

In *Playboy*, the district court did just what the Government proposes here. Finding the statute unconstitutional because there was a less restrictive alternative, it attempted to remedy the statute by ordering compliance with that alternative. The Supreme determined that was error:

> Indeed, to the extent the District Court erred, it was only in attempting to implement the less restrictive alternative through judicial decree by requiring Playboy to provide notice in its cable service contracts. The appropriate remedy was not to repair the statute, it was to enjoin the speech restriction. Given the existence of a less restrictive means, if the Legislature wished to improve its statute, perhaps in the process giving careful consideration to other alternatives, it then could do so.

*Id.* at 823-24. *See also, United States v. Treasury Employees Union*, 513 U.S. 454, 479 (1995) (rejecting the Government's suggestion that the unconstitutional statute could be remedied by "crafting" a requirement modifying its coverage, as invading "the legislative domain").

The Government tries to sidestep *Playboy* by arguing that what it proposes is simply "a partial invalidation" of the statutes.[5] But what it proposes is not a partial invalidation; it is a rewrite. Its proposal would add the phrase, *under the age of thirty years old*, to modify the statutory term, *every performer*, in 18 U.S.C. §§ 2257 (a), (b), (e); 2257A (a), (b), (e).

Partial invalidation is a matter of adopting a limiting construction of one of the statutory

---

[5]   The Government claims that Plaintiffs "have simply disregarded" the line of authority which, it submits, supports partial invalidation. Defendant's Supplemental Brief (Doc. 265) at 18. Plaintiffs have not disregarded any such thing. Defendant makes this argument for the first time. *See* Defendant's Brief (Doc. 249).

terms, *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504-05 (1985) (plurality), or severing "problematic portions" from the remainder of the statutes. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508-09 (2010). It does not involve rewriting the law to bring an unconstitutional statute into conformance with constitutional requirements.

The Supreme Court made that clear in *United States v. Stevens*, 559 U.S. 460, 481 (2010). It rejected the Government's argument that the statute could be saved by simply modifying the statutory phrase, *animal cruelty*, with the term, *extreme*, which under the Government's logic here, would be a "partial invalidation" of the statutes' unconstitutional applications. The Supreme Court would have none of it:

> Nor can we rely upon the canon of construction that " ambiguous statutory language [should] be construed to avoid serious constitutional doubts." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, ——, 129 S.Ct. 1800, 1811, 173 L.Ed.2d 738 (2009). "[T]his Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 884, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). We " 'will not rewrite a ... law to conform it to constitutional requirements,' " *id.*, at 884–885, 117 S.Ct. 2329 (quoting *Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); omission in original), for doing so would constitute a " serious invasion of the legislative domain," *United States v. Treasury Employees*, 513 U.S. 454, 479, n. 26, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995), and sharply diminish Congress's "incentive to draft a narrowly tailored law in the first place," *Osborne*, 495 U.S., at 121, 110 S.Ct. 1691. To read § 48 as the Government desires requires rewriting, not just reinterpretation.

*See also Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S.Ct. 1938, 1949 (2016) ("[O]ur constitutional structure does not permit this Court to 'rewrite the statute that Congress enacted.'" )

The Third Circuit, in fact, rejected a different rewrite of 18 U.S.C. §§ 2257, 2257A in earlier stages of this litigation for the same reason. The Government proposed that the statutes be construed to apply only to depictions offered "for sale or trade." The court found, just as the Supreme Court did in *Stevens*, that "limiting constructions are not available where they require 'rewriting, not just

16

reinterpretation.'" *Free Speech Coalition I*, 677 F.3d at 539  (citation omitted). *See also Conchatta Inc. v. Miller*, 458 F.3d 258, 264-65 (3rd Cir. 2006) (finding terms of overbroad law not readily susceptible to proposed limiting construction).

Nor can the statutes' invalidation be limited to their unconstitutional application to the Plaintiffs.[6] When the Supreme Court has evaluated a content-based regulation of speech under strict scrutiny and found it wanting, it has invalidated the law in its entirety.

So in *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015), the Court did not just strike down the unconstitutional provisions of Gilbert's sign code as applied to Pastor Clyde Reed and the Good News Community Church, but struck down the sign code in its entirety as an unconstitutional facially content-based regulation of speech. *Id.* at 2224.

In *Alvarez*, the Court struck down the content-based Stolen Valor Act in its entirety–not simply its unconstitutional application to Defendant's false statements that involved no "legal cognizable harm." 567 U.S. at 729-30.

The same is true of *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105 (1991) (striking down New York's "Son of Sam" law in its entirety, not just its application to  Henry Hill and his publisher); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) (striking down unconstitutionally facially overbroad provisions of the Child Pornography Prevention Act and noting, "this case provides a textbook example of why we permit facial challenges to

---

[6] *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995) does not hold otherwise. *See* Defendants' Supplemental Brief (Doc. 265) at 25. At issue there, was not a content-based regulation of speech, but rather a law that precluded federal employees from being compensated for appearances, speeches, or articles. *Id.* at 468-49. The Court evaluated the law under the balancing test for weighing the expressive activities of government employees against the interest of the government as an employer set forth in *Pickering v. Board of Ed. of Township High School, Dist. 2015, Will Cty.*, 391 U.S. 563 (1968). It was in that context, the Court determined relief should be limited to the parties before it.

statutes that burden expression."); *Mukasey*, 534 F.3d at 207 (striking down 47 U.S.C. § 231 on its face); and *Entertainment Merchants Ass'n*, 564 U.S. at 805 (striking down California violent video game law on its face).

## III.   THIS COURT MUST EVALUATE THE STATUTES' OVERBREADTH UNDER STRICT SCRUTINY.

The Government also argues that if this Court finds that the statutes fail strict scrutiny because a law limited to performers who could reasonably be confused as minors serves an effective less restrictive means to accomplish the statutory objectives, it should refrain from addressing Plaintiffs' overbreadth challenge. Defendant's Supplemental Brief (Doc. 265) at 25.

But the Third Circuit remanded both the as-applied and overbreadth claims for review by this Court, noting "the level of scrutiny is a key factor in both as-applied and overbreadth challenges." *Free Speech Coalition, Inc. v. Attorney General,* 825 F.3d 149, 164 n.12 (3rd Cir. 2016).

For the reasons set forth in Plaintiffs' Brief in Support of Their Motion for Entry of Judgment (Doc. 246) and Reply Brief (Doc. 252), the statutes are unconstitutionally overbroad and should be struck down. Nothing in the declarations changes that analysis or outcome.

## IV.   PLAINTIFFS OBJECT TO THE SUBMISSION OF EVIDENCE BY WRITTEN DECLARATION.

In its Order of November 2, 2017, this Court stated it would consider the submissions of the parties and determine what further proceedings should take place, including an evidentiary hearing, if need be. Order (Doc. 262), Nov. 2, 2017, ¶ 5.

The three declarations submitted by the Government do nothing to remedy the evidentiary shortfalls in this record, and Plaintiffs urge the Court to grant their motion for entry of judgment in their favor on the First Amendment issues. However, if this Court determines the declarations offer relevant evidence under strict scrutiny, Plaintiffs object to its introduction by written declaration as

18

inadmissible hearsay under the rules of evidence. Fed. R. Evid. 801. The witnesses' testimony should

be taken in open court and be subject to cross-examination, Fed. R. Civ. P. 43 (a), after Plaintiffs

have first been given the opportunity to depose the declarants.

Respectfully submitted,


January 29, 2018          /s/ J. Michael Murray_____
                          J. MICHAEL MURRAY (0019626)
                          jmmurray@bgmdlaw.com
                          LORRAINE R. BAUMGARDNER (0019642)
                          lbaumgardner@bgmdlaw.com
                          BERKMAN, GORDON, MURRAY & DeVAN
                          55 Public Square, Suite 2200
                          Cleveland, Ohio  44113-1949
                          (216) 781-5245 / (216) 781-8207 (Facsimile)

                          KEVIN E. RAPHAEL (72673)
                          KER@Pietragallo.com
                          J. PETER SHINDEL, JR. (201554)
                          JPS@Pietragallo.com
                          PIETRAGALLO GORDON ALFANO BOSICK
                               & RASPANTI, LLP
                          1818 Market Street, Suite 3402
                          Philadelphia, Pennsylvania 19103
                          (215) 320-6200 / (215) 981-0082 (Facsimile)

                          Attorneys for Plaintiffs

19

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2018, the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ J. Michael Murray
J. MICHAEL MURRAY (0019626)
LORRAINE R. BAUMGARDNER (0019642)
BERKMAN, GORDON, MURRAY & DeVAN

KEVIN E. RAPHAEL (72673)
J. PETER SHINDEL, JR. (201554)
PIETRAGALLO GORDON ALFANO BOSICK
 & RASPANTI, LLP

Attorneys for Plaintiffs