IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al., | ) Civil Action No. 2:09-4607 |
| Plaintiffs, | ) Judge Michael M. Baylson |
| v. | ) |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE TO COURT'S DRAFT JUDGMENT**

Defendant respectfully responds to the Court's draft judgment in the correspondingly-numbered paragraphs below.[1] Following those paragraphs, Defendant also respectfully responds to other issues raised in Plaintiffs' Response to the Court's July 13, 2018 Letter and Draft Judgment Entry, and in the Court's letter of July 13, 2018. In particular, as explained in detail in Section II below, recent Supreme Court authority confirms that injunctive relief should be no broader than necessary to remedy the injuries of the plaintiffs asserting the claims at issue. *Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018). That principle is consistent with the Third Circuit's decision in *Belitskus v. Pizzingrilli*, 343 F.3d 632, 649-50 (3d Cir. 2003), and applies equally in the First Amendment context. Here, where only as-applied claims of the individual plaintiffs are at issue, any injunctive relief should be limited to those plaintiffs.

**I.   SPECIFIC RESPONSES TO THE COURT'S DRAFT JUDGMENT**

1.   Paragraph 1 of the Court's draft accurately reflects the Court's decision as stated

---

[1] Redline and clean versions of the Court's draft judgment incorporating edits suggested below are attached hereto.

1

in the Memorandum Opinion of May 21, 2018. The language in brackets should be included in the Judgment because Plaintiffs challenged the regulations as well as the statutes, and the Court's ruling applied to both.

2.  Paragraph 2 of the Court's draft accurately reflects the Court's decision as stated in the Memorandum Opinion of May 21, 2018. The language in brackets should be included in the Judgment because Plaintiffs challenged the regulations as well as the statutes, and the Court's ruling applied to both.

3.  The introductory portion of Paragraph 3 of the Court's draft accurately reflects the Court's decision as stated in the Memorandum Opinion of May 21, 2018.[2] The language in brackets should be included in the Judgment because Paragraph 2 indicates that the organizational plaintiffs' as-applied claims are dismissed, so judgment cannot be entered in their favor.

   a.  The second sentence of subparagraph 3.a. should be revised to reflect that the injunction applies only when the individual plaintiffs are acting as secondary producers. Because some individual plaintiffs act as both primary and secondary producers, this revision is necessary in order to be consistent with the first sentence of subparagraph 3.a. and the Court's Memorandum Opinion. Defendant's proposed revision is indicated in the attached redline draft judgment. The language in brackets, indicating that the judgment and injunction apply only to the individual plaintiffs, should be included in the Judgment for the reasons explained in Defendant's previous filing and Section II below and pursuant to *Belitskus*.

   b.  Subparagraph 3.b. accurately reflects the Court's decision as stated in the Memorandum Opinion of May 21, 2018. The language in brackets, indicating that the judgment

---

[2] Defendant identifies a minor non-substantive suggestion in redline in the attached redline draft judgment.

and injunction apply only to the individual plaintiffs, should be included in the Judgment for the reasons explained in Defendant's previous filing and Section II below and pursuant to *Belitskus*.

        c.        The first sentence of subparagraph 3.c. should omit references to 18 U.S.C. §§ 2257(e)(1), (e)(2) and §§ 2257A(e)(1), (e)(2) in the first clause because the Court held that "the labeling requirements of the Statutes are narrowly tailored as applied to [the individual] Plaintiffs." *FSC v. Sessions*, 2018 WL 2303071, at *32. The language in brackets, indicating that the judgment and injunction apply only to the individual plaintiffs, should be included in the Judgment for the reasons explained in Defendant's previous filing and Section II below and pursuant to *Belitskus*.

        d.        Subparagraph 3.b. accurately reflects the Court's decision as stated in the Memorandum Opinion of May 21, 2018. The language in brackets, indicating that the judgment and injunction apply only to the individual plaintiffs, should be included in the Judgment for the reasons explained in Defendant's previous filing and Section II below and pursuant to *Belitskus*.

4.        Paragraph 4 of the Court's draft accurately reflects the Court's decision as stated in the Memorandum Opinion of May 21, 2018.

5.        Paragraph 5 of the Court's draft should be omitted for the reasons explained in Defendant's previous filing: The Court's memorandum decision of May 21, 2018, did not address costs. Under 28 U.S.C. § 2412, costs "may be awarded to the prevailing party." Under the normal procedure, a party claiming to be the prevailing party on some or all claims may file a bill of costs after entry of judgment. *See* 28 U.S.C. § 1920 (incorporated into 28 U.S.C. § 2412); Clerk's Office Procedural Handbook app.R.[3] The application for costs is subject to objection and judicial review. *See* Local Rule 54.1. Ultimately, the allocation of costs is within the Court's

---

[3] In accord with that procedure, Defendant filed a bill of costs on September 27, 2013. [ECF 235.] That bill of costs remains pending. *See* Pl. response to Def. Bill of Costs [ECF 236].

sound discretion. *Croker v. Boeing Co. (Vertol Div.*), 662 F.2d 975, 998 (3d Cir. 1981) (en banc) ("The particular circumstances of a case may permit a district court to refuse to award costs altogether or to apportion them between the parties."), *overruled on other grounds*, *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 644 (3d Cir. 1982) (en banc). An award of costs by the Court before a bill of costs is filed, based solely on a proposal in Plaintiffs' proposed judgment, would be premature and unwarranted. Indeed, Plaintiffs' status as a "prevailing party" has not been determined and cannot simply be assumed, given that Defendant has prevailed in significant part, including in regard to Plaintiffs' facial First Amendment challenge and with respect to the organizational plaintiffs' First Amendment claims. The particular circumstances of this case should also be taken into account in any decision to tax costs, in light of the protracted litigation in which Defendant initially prevailed on a motion to dismiss, and then, following remand, prevailed in nearly all respects at trial. Indeed, the Court's ruling after trial was upheld by the Third Circuit and was only reconsidered when the Supreme Court issued intervening decisions that, the Third Circuit held, changed the applicable standards.

II. **PLAINTIFFS' REQUEST FOR BROAD INJUNCTIVE RELIEF, BEYOND THE INDIVIDUAL PLAINTIFFS, IS INCONSISTENT WITH SUPREME COURT AND THRD CIRCUIT AUTHORITY AND SHOULD BE REJECTED**

    A. **No Facial Strict Scrutiny Claim Is At Issue**

In their response to the Court's proposed judgment, Plaintiffs contend that they have raised a facial First Amendment challenge under strict scrutiny, and that the Court's Memorandum Opinion of May 21, 2018, effectively decided that claim in their favor. Their assertion should be rejected because it flies in the face of repeated judicial decisions in this case since at least 2012, recognizing that the only facial First Amendment claim at issue is an overbreadth challenge. *FSC v. Attorney General*, 677 F.3d 519, 537-40 (3d Cir. 2012)

4

(addressing Plaintiffs' as-applied First Amendment challenge and their facial challenge under the First Amendment's overbreadth doctrine); *FSC v. Holder*, 957 F. Supp. 2d 564 (E.D. Pa. 2013) (recognizing that "the effect of the Third Circuit's decision is that the following issues are to be explored on remand: (1) for ***Plaintiffs' as-applied claim under the First Amendment*** (Count I), whether the Statutes are narrowly tailored as to Plaintiffs; (2) for ***Plaintiffs' facial over-breadth claim under the First Amendment*** (Count I), whether the Statutes unreasonably burden a substantial amount of protected speech" (emphasis added)); *FSC v. Attorney General*, 787 F.3d 142, 151, 160 (3d Cir. 2015) (first considering "***Plaintiffs' as-applied challenge under the First Amendment***" and next turning to "***Plaintiffs' claim under the First Amendment that the Statutes are facially overbroad***" (emphasis added)); *FSC v. Attorney General,* 825 F.3d 149, 164 n.12 (3d Cir. 2016) (clarifying that it was "***remand[ing] both the as-applied and overbreadth claims***," thus making clear that no facial claim other than an overbreadth claim was being remanded (emphasis added)); *FSC v. Sessions*, No. 09-4607, 2018 WL 2303071, at *2 (E.D. Pa. May 21, 2018) ("Only Plaintiffs' First Amendment challenge remains. Specifically, . . . whether the Statutes violate the First Amendment ***as-applied*** and/or are ***facially overbroad***." (emphasis added)). Plaintiffs have waived any challenge to that understanding by failing to raise it before now, and it therefore qualifies as law of the case. *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 203 (3d Cir.2004) ("[w]e have consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings").

      Indeed, Defendant expressly stated over a year ago the understanding that "Plaintiffs' First Amendment claims at this stage of the case are twofold. First, as discussed above, Plaintiffs assert as-applied claims, which the Third Circuit has directed must be evaluated under strict

scrutiny. Second, Plaintiffs assert a facial challenge under the First Amendment's overbreadth doctrine." Def. Mem. of May 12, 2017 [ECF 249], at 33; *see also* Hr'g Tr. 58:23-59:4 (Defendant's counsel Wyer) ("Your Honor, there are two claims. There's the as-applied strict scrutiny claim and there's the facial overbreadth claim. And with respect to the as-applied claim, it's important to limit any relief to the plaintiffs before the Court and not provide relief broader than necessary to address the as applied challenge."). Plaintiffs did not contest that characterization. To the contrary, at the hearing held on September 28, 2017, Plaintiffs accepted that characterization when arguing that "[t]he Third Circuit has spoken clearly that *on the as applied challenge*, if strict scrutiny applies, this statutory scheme is not narrowly tailored." Hr'g Tr. 24:15-17 (emphasis added). The Court clearly had that same understanding when addressing, in its Memorandum Opinion of May 21, 2018, "whether the Statutes violate the First Amendment ***as-applied*** and/or are ***facially overbroad***." *FSC v. Sessions*, 2018 WL 2303071, at *2 (emphasis added). Plaintiffs cannot plausibly backtrack on this issue six years later, after a trial, an appeal, rehearing proceedings in the Court of Appeals, nearly two years' worth of proceedings in this Court following remand, and a final Memorandum Opinion.

> **B.     The Supreme Court's Recent Decision in *Gill* Is Consistent with *Belitskus* and Other Controlling Authority and Supports the Limitation of Injunctive Relief to the Individual Plaintiffs**

Plaintiffs also argue that it makes no difference that only an as-applied strict scrutiny claim was at issue here, citing a law review article. Pl. Response at 4. However, whether it makes a difference as a theoretical matter is not the question here. Rather, the question is the appropriate scope of declaratory and injunctive relief to be set forth in this Court's final judgment. [4] Recent Supreme Court authority supports the Third Circuit's decision in *Belitskus*.

---

[4] Plaintiffs' citation of cases that *did* involve facial strict scrutiny challenges, such as *United*

6

In *Gill v. Whitford*, 138 S. Ct. 1916 (2018), the Court reaffirmed that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *id.* at 1934, and it cautioned that "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," *id.* at 1933; *accord Mielo v. Steak 'n Shake Operations, Inc.*, No. 17-2678, 2018 WL 3581450, at *8 (3d Cir. July 26, 2018). The Court therefore held that, under Article III, the plaintiff's remedy in that case, a vote dilution challenge brought by an individual voter, must be limited to "revision of the boundaries of the individual's own district," not the broader remedy of "restructuring all of the State's legislative districts," notwithstanding that the alleged policy of partisan gerrymandering was "statewide in nature." *Gill*, 138 S. Ct. at 1930-31. In other words, it was the scope of the plaintiff's injury, not the scope of the alleged violation, that governed the permissible scope of the injunction.

Traditional equitable principles also require that injunctions "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see U.S. Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) (granting stay of military-wide injunction except as to individual plaintiff); *see also Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (Thomas, J., concurring) (recognizing that the tradition of equity inherited from English law was premised on "providing equitable relief only to parties" because the fundamental role of a court

---

*States v. Playboy Entmt. Group, Inc.*, 529 U.S. 803, 827 (2000), and *ACLU v. Mukasey*, 534 F.3d 181 (3d Cir. 2008)—or criminal cases, such as *United States v. Alvarez*, 132 S. Ct. 2537 (2012), where the remedy was undoubtedly vacatur of the defendant's conviction rather than any form of declaratory or injunctive relief—clearly cannot help their argument. Indeed, Plaintiffs acknowledge that the Court in *Mukasey* found the statute at issue unconstitutionally overbroad, Pl. Response at 11, yet they utterly disregard the significance of such a holding for the appropriate scope of relief. There was also no judicial determination in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), regarding the appropriate scope of injunctive relief. Rather, the parties on remand agreed to an injunction as part of a settlement. *See* Order of Dec. 30, 2015, *Reed*, No. 07-cv-522 (D. Ariz.).

was to "adjudicate the rights of 'individual[s].'"). Moreover, injunctions that reach beyond the plaintiff before the Court "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring). Such injunctions also subvert the class-action mechanism provided under Rule 23 by allowing non-parties to claim the benefit of a single favorable ruling, even though they would not have been bound by a loss. As discussed below, such a result violates the rule against one-way intervention that today's Rule 23 was intended to embody.

In the First Amendment context as well, the Supreme Court has similarly recognized that "we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 228–29 (3d Cir. 2002) (Scirica, J., dissenting on other grounds) (quoting *United States v. Nat'l Treasury Employees Union,* 513 U.S. 454, 477–78 (1995)).  Following such reasoning, the Fourth Circuit vacated an injunction that precluded an agency from enforcing, against any entity, a regulation found to have violated the First Amendment. *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379 (4th Cir. 2001). The court explained that an injunction covering the plaintiff alone "adequately protects it from the feared prosecution," and that "[p]reventing the [agency] from enforcing [the regulation] against other parties in other circuits does not provide any additional relief to [the plaintiff]." *Id.* at 393. Plaintiffs' attempt to secure broad injunctive relief therefore should be rejected. Rather, as the Court has proposed, any injunctive relief should be limited to the individual plaintiffs.

## III.     RESPONSE TO THE COURT'S PROPOSED ALTERNATIVES[5]

The Court's Letter of July 13, 2018, suggested that it might consider alternatives such as an Amended Complaint or certification of a Rule 23 class action so that its holdings with respect to the individual plaintiffs could apply to other individual producers of pornography. Defendant respectfully opposes any such alternative because it would be inconsistent with prior holdings of this Court and the Third Circuit and with the standards governing amendment and class certification under rules 15 and 23. Such an alternative would also prejudice Defendant in this case and would set a precedent that would encourage blatant forum-shopping in future cases by suggesting that individuals could wait to join a case until after a similarly-situated party has obtained a favorable ruling.

First, the Court has already held that the organizational plaintiffs lacked standing to assert as-applied First Amendment claims. *See FSC v. Sessions*, 2018 WL 2303071, at *16. In reaching that conclusion, the Court relied on the Third Circuit's reasoning in an earlier decision in this case, holding that an as-applied First Amendment analysis requires participation of the specific individual raising the claim. *See id.* at *15 (quoting *FSC IV*, 787 F.3d at 153). In particular, because the as-applied narrow tailoring inquiry requires an examination of whether an individual producer's speech was unnecessarily burdened, an "individualized inquiry" into "the nature of each [individual]'s speech" and the degree to which it "is unnecessarily burdened" is required. *See id.* (quoting *FSC IV*, 787 F.3d at 153). An after-the-fact amendment of Plaintiffs' claims to, in effect, allow other individuals, who have not themselves been subject to discovery and cross-examination in a trial, to take advantage of the Court's favorable decision on the individual

---

[5] Plaintiffs indicate that they do not regard the Court's suggestions as "workable alternatives" due to Defendant's opposition. Pl. Response at 12. Nevertheless, Defendant here sets forth the reasoning underlying Defendant's conclusion that the proposed alternatives would not be consistent with governing standards and principles.

9

plaintiffs' as-applied claims would be contrary to this reasoning and to the Court's prior holding that the organizational plaintiffs lacked standing.

Second, any amendment of the complaint would be governed by Rule 15(a), which allows a court to deny amendment "on a finding of undue delay, bad faith, prejudice to the opposing party, or futility." *Jang v. Boston Sci. Scimed, Inc.,* 729 F.3d 357, 367 (3d Cir. 2013). Delay is undue where, as here, Plaintiffs filed their Complaint over nine years ago; have had prior opportunities to amend and in fact did file an amended complaint, but failed to seek the amendment the Court now suggests; and have proceeded with this case through an appeal, a trial, another appeal, rehearing proceedings, and over a year of additional proceedings following the most recent remand. *See id.* at 368; *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 273 (3d Cir. 2001) ("Delay may become undue when a movant has had previous opportunities to amend a complaint."). The delay here is also undue because any amendment would not be based on any new information—other than the knowledge of what is contained in the Memorandum Opinion that the Court has already issued. *In re Adams Golf, Inc. Sec. Litig.,* 381 F.3d 267, 280 (3d Cir. 2004) ("The concept of undue delay includes consideration of whether new information came to light or was available earlier to the moving party."). Moreover, the Third Circuit has recognized that "judicial interests in economy and finality are heightened" when leave to amend is sought after summary judgment has already been entered. *See Cureton*, 252 F.3d at 273. Such interests are surely even stronger when nine years have passed since the initial complaint in this case was filed, and a trial was already held five years ago.

The prejudice to Defendant from allowing amendment of the complaint at this stage would also be significant. *See id.* ("[S]ubstantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."). Indeed, the Court has suggested amendment for

10

the very purpose of allowing its adverse ruling with respect to the individual plaintiffs' as-applied claims to be extended to other parties not before the Court. Defendant either would have no meaningful opportunity to contest the applicability of the Court's decision to those other parties or would have to engage in burdensome discovery and, presumably, another trial in order for the Court to conduct the individualized inquiry that the Third Circuit, as well as this Court, have said is required. *Cf. id.* (significant prejudice results when "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories"). In light of this undue delay and prejudice, it would be an abuse of discretion to allow amendment on the eve of final judgment for the sole purpose of allowing third parties to take advantage of the Court's decision.

Third, it would similarly be inappropriate to certify a class at this stage. Rule 23 states that a district court "must" rule on issues of class certification at "an early practicable time" in the litigation. Fed. R. Civ. P. 23(c)(1)(A). That time has long since passed. Indeed, the entirety of this case has proceeded without the assertion of any class claims, much less class certification by the Court, accompanied by an order defining "the class and the class claims, issues, or defenses." *See id.* 23(c)(1)(B).

Allowing class certification after the Court has issued a Memorandum Opinion addressing the merits of the individual plaintiffs' as-applied claims would violate the rule against one-way intervention—a procedure "where plaintiffs could sit out an action, choosing to opt in and be bound by the judgment only after a favorable outcome." *Knepper v. Rite Aid Corp.,* 675 F.3d 249, 255 (3d Cir. 2012). As the Third Circuit has observed, the 1966 revision of Rule 23(c) was intended to "eliminate" one-way intervention. *Id.* at 255 n.10; *see also Bertrand ex rel. Bertrand v. Maram,* 495 F.3d 452, 455 (7th Cir. 2007) ("After the 1966 amendments, treatment

of plaintiffs and defendants is supposed to be symmetric, which is possible only if a class is certified (or not) before decision on the merits."); Advisory Committee's Note to Proposed Amendments to Rule 23, 39 F.R.D. 69, 105 (1966).[6] As another court has observed, "a delay in adding class allegations deprives a defendant of fair warning as to the true stakes and, by eliminating mutuality, leaves the defendant liable on class claims (if he loses . . . ) without protecting him (if he wins)." *Kerkhof v. MCI WorldCom, Inc.,* 282 F.3d 44, 54–55 (1st Cir. 2002); *see also Bertrand,* 495 F.3d at 455 ("The larger the class, the more the litigants may invest in discovery and briefing to ensure that the case is decided correctly."). Class-action status must also "be granted (or denied) early" in order to "provide an opportunity for interlocutory review" under Rule 23(f). *See id.*

Certainly here, Defendant would be significantly prejudiced by a ruling certifying a class after an appeal, a full trial, a second appeal, rehearing proceedings, further briefing on remand, and the Court's issuance of a Memorandum Opinion, over nine years after the original complaint was filed. Such untimely intervention would allow unnamed plaintiffs to avail themselves of the Court's favorable rulings on the individual plaintiffs' as-applied claims without having risked being bound by an unfavorable one. Moreover, even the consideration of class certification at this stage—when Plaintiffs never identified this action as a putative class action before now—would prejudice Defendant either by depriving Defendant of any meaningful opportunity to contest certification by, for example, conducting discovery on certification-related issues, or by re-opening proceedings for the sole purpose of resolving the factual issues associated with

---

[6] Although Rule 23(c)(1)(C) technically allows "alter[ing] or amend[ing]" a class certification order "before final judgment," here there never was a class certification order to begin with. Moreover, the Court already issued its Memorandum Decision, which sets forth the rulings that are to be memorialized in a final judgment, even if the precise language of the judgment has not been finalized.

certification.

Moreover, even if it were appropriate to consider certifying a class after the Court has issued its Memorandum Opinion, it is far from clear that a Rule 23(b)(2) class should be certified, particularly in regard to the individual plaintiffs' as-applied First Amendment claims. Indeed, the Third Circuit has recently emphasized that classes are not to be certified without considerable deliberation, analysis, and appropriate findings of fact. *Mielo v. Steak 'n Shake Operations, Inc.*, No. 17-2678, 2018 WL 3581450, at *9–10 (3d Cir. July 26, 2018). And Plaintiffs would bear the burden of establishing that the requirements of Rule 23 are met. *See id.* at *10. Ultimately, if there is any "doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified." *Id.* Here, there is likely to be doubt, particularly given the previous holdings by this Court and the Third Circuit on the need for individualized inquiry to resolve the individual plaintiffs' as-applied claims.

The Court therefore should not further consider any measures aimed at expanding the application of its as-applied rulings to individuals other than the individual plaintiffs.

## IV. RESPONSE REGARDING LABELING REGULATIONS

Regarding the Court's inquiry with respect to the requirement set forth in the Memorandum Opinion of May 21, 2018 that the parties submit new proposed regulations for labeling, "or an agreed upon outline of them, as part of the proposed final decree," Defendant has not submitted such proposed regulations because to do so would conflict with the requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, as explained in Defendant's prior submission. Accordingly, Defendant has respectfully requested that this aspect of the Court's decision not be incorporated into a final judgment.

As explained in Defendant's prior submission: The APA generally authorizes the Court to "hold unlawful and set aside" final agency action, including on constitutional grounds. 5 U.S.C. §§ 704, 706(2)(B). However, once the Court sets aside the final agency action at issue—here, by holding the Department of Justice's ("Department's") labeling regulations invalid as applied to the individual plaintiffs—its authority is at an end. *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952) ("the function of the reviewing court ends when an error of law is laid bare"); *accord, e.g.*, *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). Thus, even when an agency's regulation is invalidated, the agency retains "broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities" to correct any legal defect identified by the court. *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007); *see also SEC v. Chenery Corp.*, 318 U.S. 80 (1943).

Here, the invalidation of the labeling regulations as applied to the individual plaintiffs will require the Department to determine how to proceed. However, if the Department decides to promulgate new regulations, it will likely do so by following notice and comment rulemaking procedures set forth in the APA, 5 U.S.C. § 553.[7] Because judicial review under the APA is

---

[7] The Department has generally implemented the Statutes through notice-and-comment rulemaking. *See, e.g.*, Department of Justice, *Final Rule: Revised Regulations for Records Relating to Visual Depictions of Sexually Explicit Conduct; Inspection of Records Relating to Depiction of Simulated Sexually Explicit Performance*, 73 Fed. Reg. 77432-01 (2008); Department of Justice, *Final Rule: Inspection of Records Relating to Depiction of Sexually Explicit Performances*, 70 Fed. Reg. 29607-01 (2005). The APA's notice-and-comment rulemaking procedures require "general notice" of the agency's rule to be published in the Federal Register, followed by an opportunity for public comment. *See* 5 U.S.C. § 553(b).

limited to *final* agency action, it would be inappropriate for the Court to review *proposed* regulations. *See* 5 U.S.C. § 704; *see also, e.g.*, *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) ("We may review final agency rules[,] [b]ut we do not have authority to review proposed rules."). It would also be inappropriate for the Court to retain jurisdiction over this case while the Department considers how to proceed and goes through any rulemaking process. Rather, the Court's judgment should simply set forth the Court's decision regarding the labeling regulations, holding that the labeling regulations may not validly be applied to the individual plaintiffs, and allow the Department to take further action consistent with the Court's opinion.

Dated this 31st day of July, 2018.          Respectfully submitted,

                                            CHAD A. READLER
                                            Acting Assistant Attorney General
                                            WILLIAM M. MCSWAIN
                                            United States Attorney
                                            JOHN R. TYLER
                                            Assistant Director, Federal Programs Branch

                                            /s/ Kathryn L. Wyer
                                            NATHAN M. SWINTON
                                            KATHRYN L. WYER
                                            U.S. Department of Justice, Civil Division
                                            20 Massachusetts Avenue, N.W.
                                            Washington, DC 20530
                                            Tel. (202) 616-8475 / Fax (202) 616-8470
                                            kathryn.wyer@usdoj.gov
                                            *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.1.2(8)(b), I hereby certify that the foregoing document has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that the foregoing document was served via ECF on counsel of record for plaintiffs in the above-captioned case.

Dated: July 31, 2018          /s/
                              Kathryn L. Wyer